# Exhibit A
# State Court Record

1  **THE LEADER LAW FIRM, P.C.**
2  John P. Leader, SBN 012511
   698 E. Wetmore, Suite 330
3  Tucson, AZ 85705
   Phone (520) 575-9040
   Fax (520) 575-9340
4  *John P. Leader, Esq*

5

6  **IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA**
7  **IN AND FOR THE COUNTY OF PIMA**

8  LOUIS TAYLOR, a single man,

   No.   **C 20150466**
9        Plaintiff,

10 vs.                                          **DEMAND FOR JURY TRIAL**

11 PIMA COUNTY, a body politic; THE
12 CITY OF TUCSON, a body politic,             **42 U.S.C.A. §1983 /**
                                                **Punitive Damages**
13
                                               **STEPHEN VILLARREAL**
14       Defendants.

15       Plaintiff, by and through undersigned counsel, hereby demands a trial by

16 jury on all triable issues.
17

18

19       DATED this __30__ day of January, 2015.

20

21                                   THE LEADER LAW FIRM, P.C.

22

23

      John P. Leader, Esq.
24    *Attorney for Plaintiff*

25

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

15 JAN 30 PM 4:58

S. PETERSEN, DEPUTY



THE LEADER LAW FIRM, P.C.
John P. Leader, SBN 012511
698 E. Wetmore, Suite 330
Tucson, AZ 85705
Phone (520) 575-9040
Fax (520) 575-9340
*John P. Leader, Esq*

# IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF PIMA

LOUIS TAYLOR, a single man,

      Plaintiff,

vs.

PIMA COUNTY, a body politic; THE
CITY OF TUCSON, a body politic,

      Defendants.

No.    **C 20150466**

**C O M P L A I N T**

**42 U.S.C.A. §1983 /
Punitive Damages**

STEPHEN VILLARREAL

Plaintiff, for his Complaint against the Defendants, alleges as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.    Plaintiff Louis Taylor (hereafter "Taylor") is an adult residing in Pima County, Arizona.

2.    All defendants and their employees are or were residents of Pima County or were political entities located in Pima County, Arizona.

3.    Pima County is a political entity and subdivision created and existing under the laws of the State of Arizona.



4. The City of Tucson is a political entity and subdivision created and existing under the laws of the State of Arizona.

5. Both defendants, as of December, 1970, had official policies, customs or practices, created either by action or inaction, which amounted to longstanding practice having the force of law.

6. Plaintiff Taylor was arrested by officers of the Tucson Police Department December 20, 1970 in connection with a fire that occurred at the Pioneer Hotel in Tucson (hereafter, "the fire").

7. Plaintiff Taylor is of African-American descent and was arrested based at least in part on his race.

8. Taylor was arrested before any investigation had been commenced to determine whether the fire was even arson.

9. There is no adequate or scientifically reliable evidence proving that the fire was arson, and thus, that any crime was committed with respect to this fire.

10. As of October, 1970, there had been three (3) recent other fires at the Pioneer Hotel, which were believed to be arson.

11. Upon information and belief, a person by the name of Donald Anthony was the suspect in all three (3) prior fires.

12. If the subject fire was arson, Taylor should not have been the primary suspect, in light of the prior fires for whom a common suspect existed.

13. After his arrest, Taylor was interrogated by officers of the Tucson Police Department, in violation of his constitutional rights, over the

2

course of several hours in the early morning hours of December 20, 1970.

14. Near the conclusion of this interrogation, Taylor requested and was given a polygraph, during which he denied starting the fire.

15. Said polygraph did not indicate deception by Taylor.

16. Taylor was charged with twenty-eight (28) counts of murder before any investigation had been commenced to determine whether the fire was arson, despite the known polygraph results, and despite the existence of a known arson suspect in other recent prior fires.

17. In the weeks and/or months following the fire, the Tucson Fire Department conducted an investigation(s) into the fire and thereafter jointly worked with the Tucson Police Department and the Pima County Attorney's Office in Mr. Taylor's prosecution.

18. Taylor was convicted by an all-white jury of twenty-eight counts of murder on March 21, 1972, in the Arizona Superior Court of Maricopa County for the County of Pima.

19. Before, during and after trial, the above named Defendants subjected Plaintiff Louis Taylor to a deprivation of his federal constitutional rights, or caused Taylor to be subjected to such a deprivation; said constitutional rights were clearly established prior to December, 1970.

20. The deputy Pima County attorney assigned to the Taylor prosecution was Horton Weiss.

21. By the time of Mr. Taylor's trial, Weiss was well known to the Arizona judiciary as an over-zealous and unethical prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and constitutionally proper. *See e.g., State v. Lanahan*, 12 Ariz.App. 446, 448, 471 P.2d 748, 750 (1970) (Weiss reprimanded twice "for making insinuating comments and trying to take over the courtroom."); *State v. Mercer*, 13 Ariz.App. 1, 4, 473 P.2d 803, 806 (1970) ("The over-zealous tactics of Mr. Weiss are well known to this court and have been the subject of other appeals."); *State v. Moore*, 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972) ("The record herein indicates that Mr. Horton Weiss was guilty of the most unprofessional and immature conduct which impeded the orderly reception of evidence, restricted the right of cross-examination by the defendant, and measurably extended the time it took to try the case . . . In the instant case, the conduct of Mr. Weiss was so outrageous and improper that this court is required to reverse and remand the matter for new trial."); *State v. Thomas*, 110 Ariz. 120, 134, 515 P.2d 865, 879 (1973) (Weiss's "interruptions were frequent, baseless in most cases, and a hindrance to the defense. There can be no justification for such conduct."); *State v. Skinner*, 110 Ariz. 135, 147, 515 P.2d 880, 892 (1973) (discussing alleged *Brady* and *Giglio* violations involving both Weiss and Rex Angeley and noting that Weiss's trial conduct was also "short of exemplary"); *State v. Moore*, 110 Ariz. 404, 406, 519 P.2d 1145, 1147 (1974) (allegations of

4

unprofessional and improper conduct are "not a new or novel question for this court as it has been raised in numerous cases which have been prosecuted by Mr. Weiss.").

22. The above described prior misconduct by Weiss necessarily involved violating or potentially violating the constitutional rights of Pima County criminal defendants.

23. At the time Weiss prosecuted Mr. Taylor, he (Weiss) was simultaneously defending himself against five contempt of court charges related to his conduct in a 1970 trial, for which he ultimately served 15 days in jail (*See Weiss v. Superior Court of Pima County*, 12 Ariz.App. 527, 472 P.2d 950 (1971); *Weiss v. Superior Court of Pima County*, 106 Ariz. 577, 480 P.2d 3 (1971); *Weiss v. Burr*, 327 F.Supp. 1306 (1971); *Weiss v. Burr*, 484 F.2d 973 (1973); *Weiss v. Burr*, 414 U.S. 1161, 94 S.Ct. 924 (1974) (*cert denied*).

24. Prior to trial, the defendants received and possessed a written report, known as the "Trues ail" report, from a consulting expert, concluding that no evidence of "accelerants" was discovered during post fire inspections.

25. This report was exculpatory evidence that Plaintiff Taylor was entitled to have in his defense, under *Brady v. Maryland*, 373 U.S. 83 (1963).

26. The defendants, and each of them, knowingly and wrongfully withheld this report from Plaintiff Taylor and his criminal defense lawyer.

5

27. During trial, some or all of the defendants procured testimony from two jailhouse "snitches,"[1] testimony that the defendants knew or should have known was patently false.

28. One of these witnesses, Robert Jackson, falsely testified that Plaintiff Taylor admitted starting the fire and using an accelerant (lighter fluid) to do so.

29. The Defendants' failure to disclose the "Truesdail" report was, by itself, a significant violation of Plaintiff Taylor's constitutional rights.

30. This constitutional violation was magnified when the defendants, in addition to withholding the "Truesdail" report showing that no accelerants had been used, called a witness at trial (Jackson) to say that Taylor admitted using an accelerant to start the fire.

31. With actual or constructive knowledge that Jackson's testimony was false, and knowing that Jackson's testimony was contradicted by the undisclosed "Truesdail" (no accelerant) report, the defendants nonetheless caused or allowed Jackson to testify.

32. Additionally, Jackson testified as a "rebuttal" witness, at the very end of the trial, following presentation of the defense case. As such and as the defendants knew or should have known, Jackson's testimony would have a greater effect upon the jury given its timing (at the end of the trial).

---

[1] Bruce Wallmark and Robert Jackson

33. The Defendants' conduct in withholding the "Truesdail" report, calling Jackson as a witness, and doing so in the rebuttal portion of the prosecution's case, was a calculated, deliberate, and intentional violation of Plaintiff Taylor's constitutional rights, including but not limited to his due process rights and his rights to a fair trial. Taylor was railroaded.

34. Before, during, and after trial, the above named defendants and/or employees of the above named defendants, and other unnamed co-conspirators, engaged in a civil conspiracy, that is, a combination of two or more persons who, by concerted action, intended to accomplish some unlawful objective for the purpose of harming Plaintiff Taylor which in fact resulted in damage to Taylor.

35. The above mentioned co-conspirators reached a unity of purpose, a common design and understanding or a meeting of the minds in an unlawful arrangement - to arrest, charge and convict Plaintiff Taylor, knowing that the fire may not have been arson, knowing that if it was arson, another person was a more likely suspect, deliberately withholding the exculpatory "Truesdail" report, and recruiting and then calling as a rebuttal trial witness a person whose testimony was obviously false and whose testimony directly contradicted the wrongfully withheld "Truesdail" report , all in violation of Plaintiff Taylor's constitutional rights.  Each participant in the conspiracy

1    shared the common objective of the conspiracy - arresting, charging,

2    and convicting Taylor, in violation of Taylor's constitutional rights.

3    36.   Actions taken pursuant to this conspiracy included, but were not limited

4          to withholding of the "Truesdail" report, and procuring testimony that

5          the defendant/co-conspirators knew or should have known was false.

6

7    37.   But for the unconstitutional municipal policies set forth above and

8          below, the conspiracy described above likely would not have been

9          created.

10   38.   On October 23, 2012, Plaintiff Taylor filed a Petition for Post-

11         Conviction Relief pursuant to the Arizona Rules of Criminal Procedure.

12   39.   In this Petition, Taylor included findings and conclusions of the "Arson

13         Review Committee," a panel of renowned fire experts who, shortly

14         before Taylor filed his Petition for Post- Conviction Relief, reviewed

15         all evidence in this case and concluded that the Pioneer hotel fire

16         cannot be classified as arson.

17

18   40.   In a Pima County Attorney Memorandum filed April 1, 2013 in Pima

19         County Superior Court, it was stipulated that if "a review of the original

20         evidence using new advances and techniques in fire investigation is

21         legally 'newly discovered evidence' … the State would be unable to

22         proceed with a retrial, and the convictions would not stand.

23   41.   On that same date, April 1, 2013, the Pima County Attorney's Office

24         stipulated to Taylor's request for post-conviction relief, on the

25         condition that Taylor enter a "no contest" plea.

8

42. On April 2, 2013, Plaintiff Taylor's March 1972 convictions(s) were vacated.

43. On that same date, April 2, 2013, Plaintiff Taylor was released from prison, having spent approximately 42 years in prison, as the result of an unconstitutional conviction(s).

44. A §1983 cause of action for damages attributable to an unconstitutional conviction(s) does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014).

45. The §1983 claims asserted in this action thus accrued April 2, 2013, when Taylor's original, 1972 conviction(s) were vacated.

46. The statute of limitations for §1983 claims is the general personal injury statute of limitations for the State where the events in question occurred, in this case, Arizona. *Wallace v. Kato*, 549 U.S. 384, 387 (2007), *Madden-Tyler v. Maricopa County*, 189 Ariz. 462 (App. 1997)

47. Arizona's general personal injury statute of limitations is two years. A.R.S. §12-542.

48. This action is timely.


### COUNT ONE
(42 U.S.C.A. §1983 – Defendant City of Tucson; Custom of Impermissible Racial Discrimination)

49. Under *Monell v. N.Y.C. Dep't of Soc. Servc.*, 436 U.S. 658 (1978), Defendant City of Tucson is liable for action or inaction that

9

1
2
3
4
5
6
7
"unconstitutionally implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91.

8
9
10
11
12
13
14
50.     Under *Monell*, a local government body is liable under §1983 for policies of inaction as well as policies of action. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185–86 (9th Cir. 2002). A policy of inaction is based on a government body's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

15
16
17
18
19
20
21
22
23
51.     Prior to and at all times relevant to Plaintiff Taylor's arrest and prosecution, Defendant City of Tucson, through its Police Department, had a pervasive long-standing custom/practice of racial discrimination against African Americans, a practice that amounted to the force of law, that included but was not limited to a failure to implement procedural safeguards to prevent constitutional violations, including racially related safeguards.

24
25
52.     Said policies resulted in the deprivation of Plaintiff's constitutional rights.

53.    That the aforementioned policies amounted to deliberate indifference to the well-established constitutional rights of Plaintiff Louis Taylor, who is African-American, and others.

54.    Prior to December, 1970, Defendant City of Tucson, acting pursuant to and under color of state law, and pursuant to long-standing custom and practice, devised, implemented and applied customs, policies and practices amounting to deliberate indifference, that directly resulted in the deprivation of Plaintiff Louis Taylor's clearly established constitutional rights, of which a reasonable person would have known, including but not limited to Plaintiff's 5th and 14th Amendment Due Process rights.

55.    As a direct result of the above described conduct, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

56.    The violation of Plaintiff's constitutional rights could have been prevented had appropriate customs and policies been in place.

**COUNT TWO**
(42 U.S.C.A. §1983 – Defendant City of Tucson; Failure to Train)

57. Plaintiff Taylor incorporates by reference all previous allegations.

58. Pursuant to *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a municipality is liable under 42 U.S.C.A. §1983 for failing to train and or supervise its employees if the need to train or better supervise was obvious and the failure to do so made a violation of constitutional rights likely.

59. Prior to December, 1970, defendant city of Tucson failed to train and or supervise its police employees, such that the City was deliberately indifferent to the constitutional rights of criminal defendants.

60. As a direct result of the deliberate indifference described in the preceding paragraph, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

**COUNT THREE**

(42 U.S.C.A. §1983 – Defendant Pima County; Custom of Impermissible Racial Discrimination)

61. Under *Monell v. N.Y.C. Dep't of Soc. Servc.*, 436 U.S. 658 (1978), Defendant City of Tucson is liable for action or inaction that "unconstitutionally implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91.

62. Under *Monell*, a local government body is liable under §1983 for policies of inaction as well as policies of action. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185–86 (9th Cir. 2002). A policy of inaction is based on a government body's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

63. Prior to and at all times relevant to Plaintiff Taylor's arrest and prosecution, Defendant Pima County, through its County Attorney's Office, had a pervasive long-standing custom/practice of racial discrimination against African Americans, a practice that amounted to the force of law, that included but was not limited to a failure to implement procedural administrative hiring and

13

1  training safeguards, to prevent constitutional violations, including

2  but not limited to racially related safeguards.

3  64.  Said policies resulted in the deprivation of Plaintiff's

4

5  constitutional rights.

6  65.  That the aforementioned policies amounted to deliberate

7  indifference to the well-established constitutional rights of

8  Plaintiff Louis Taylor, who is African-American, and others.

9  66.  Prior to December, 1970, Defendant Pima County, acting pursuant to

10  and under color of state law, and pursuant to long-standing custom and

11  practice, devised, implemented and applied customs, policies and

12  practices amounting to deliberate indifference, that directly resulted in

13

14  the deprivation of Plaintiff Louis Taylor's clearly established

15  constitutional rights, of which a reasonable person would have known,

16  including but not limited to Plaintiff's 5th and 14th Amendment Due

17  Process rights.

18  67.  As a direct result of the above described conduct, Plaintiff Louis Taylor

19  experienced a profound deprivation of his civil rights and liberties, by

20  being wrongly charged in December, 1970 with multiple counts of

21  homicide related to arson, by later being wrongly convicted of those

22  crimes, and by later serving the vast majority of his adult life, 42 years,

23

24  in prison.

25  68.  The violation of Plaintiff's constitutional rights could have

prevented had appropriate customs and policies been in place.

14

## COUNT FOUR
(42 U.S.C.A. §1983 – Defendant Pima County; Failure to Train/Supervise)

69. Plaintiff Taylor incorporates by reference all previous allegations.

70. Pursuant to *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a municipality is liable under 42 U.S.C.A. §1983 for failing to train and or supervise its employees if the need to train or better supervise was obvious and the failure to do so made a violation of constitutional rights likely.

71. Prior to December, 1970, defendant Pima County failed to train and or supervise its employees, such that the County was deliberately indifferent to the constitutional rights of criminal defendants.

72. At all times relevant to this matter, the Defendant had polices of inaction, that is, failure to supervise/and or train Deputy County attorneys, and thus, to implement procedural safeguards to prevent constitutional violations.

73. That the aforementioned policies amounted to deliberate indifference to the constitutional rights of Plaintiff Louis Taylor and others.

74. Defendant Pima County Attorney was on actual or constructive notice that its omission would likely result in a constitutional violation.

15

75. As a direct result of the conduct described above in this count, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

## COUNT FIVE
(42 U.S.C.A. §1983 – Defendant Pima County; Custom of Deliberate Indifference to Prosecutorial Misconduct)

76. General hiring and firing decisions by County officials, including a County prosecutor and/or his staff are not protected by immunity. *Lacey v. Maricopa County*, 693 F.3d 896, 930-31, 942 (9th Cir. 2012), citing *Forrester v. White*, 484 U.S. 219, 229 (1988), *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009), and *Imbler v. Pachtman*, 424 U.S. 409, 425-26 (1976).

77. Prior to Plaintiff Taylor's original criminal trial, deputy Pima County Attorney Horton Weiss had demonstrated a continuing pattern of violating the constitutional rights of criminal defendants; Weiss was well known to the Arizona judiciary as an over-zealous and unethical prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and constitutionally proper.

78. Defendant Pima County, by failing to terminate Weiss' employment prior to Plaintiff's criminal trial, was deliberately

16

1    indifferent to the constitutional rights of Pima County criminal

2    defendants, including plaintiff Taylor.

3  79.  Had defendant Pima County not acted with the deliberate

4       difference described above in this count, Plaintiff Taylor's

5       constitutional rights would not have been violated.

6  80.  The above described unconstitutional administrative training, hiring

7       and firing policies also directly resulted in foreseeable unethical,

8       unconstitutional prosecutorial misconduct by Horton Weiss before,

9       during, and after Taylor's trial.

10 81.  As a direct result of the conduct described above in this count, Plaintiff

11      Louis Taylor experienced a profound deprivation of his civil rights and

12      liberties, by being wrongly charged in December, 1970 with multiple

13      counts of homicide related to arson, by later being wrongly convicted

14      of those crimes, and by later serving the vast majority of his adult life,

15      42 years, in prison.


                          **COUNT SIX**
                (Civil Conspiracy - 42 U.S.C.A. §1983,
                Defendants Pima County and City of Tucson)

82.  Defendants are liable under 42 U.S.C.A. §1983 if and when they

     conspire to violate a person's constitutional rights. *Gilbrook v. City

     of Westminster*, 177 F.3d 839 (9th Cir. 1999).

83.  Based in part, and as a direct result of the discriminatory practices

     alleged in the preceding counts of this Complaint, certain

                              17

employees of both the City of Tucson and Pima County unlawfully conspired and mutually agreed to violate Plaintiff Taylor's constitutional rights.

84.    The unlawful conspiratorial conduct directly resulted from unconstitutional, racially discriminatory policies or customs (including those described above) of Defendants City of Tucson and Pima County.

85.    Before, during, and after trial, employees of the above named defendants, and other co-conspirator engaged in a civil conspiracy, that is, a combination of two or more persons who, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming Plaintiff Taylor (by unconstitutionally charging and convicting him), which in fact resulted in damage to Taylor.

86.    The above mentioned co-conspirators reached a unity of purpose, a common design and understanding or a meeting of the minds in an unlawful arrangement - to convict Plaintiff Taylor, in violation of his constitutional rights. Each participant in the conspiracy shared the common objective of the conspiracy.

87.    The aforementioned civil conspiracy, included, but was not limited to improperly charging Taylor, deliberately withholding of material "exculpatory" evidence (the "Truesdail" report) and then calling a witness whose testimony was obviously false, and whose testimony directly contradicted the undisclosed "Truesdail" report.

88. By the time of Mr. Taylor's trial, prosecutor Horton Weiss was well known to the Arizona judiciary as an over-zealous prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and constitutionally proper.

89. Prior to and/or during trial, Horton Weiss became aware of a report (referenced above) prepared by Dr. C.A. Crutchfield, the Technical Director of Truesdail Laboratories.

90. The "Truesdail" report documents that, after a thorough investigation to identify "accelerants" that may have been used to intentionally start a fire at the Pioneer hotel on December 19-20, 1970, no evidence of accelerants was found.

91. Upon information and belief, in addition to Horton Weiss, others, including employees of the Tucson Fire Department, knew of and/or were in possession of the Truesdail report.

92. Under well-established principles of American constitutional law, Horton Weiss had a legal and ethical obligation to provide this report to Mr. Taylor and his attorney. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). His failure to disclose this report was, by itself, a significant deprivation of Mr. Taylor's constitutional rights that occurred as a direct result of the conduct alleged in counts one through four of this Complaint (including administrative failures to train, hire and fire).

93. A second objective of the aforementioned conspiracy was to produce testimony from jailhouse informants to incriminate plaintiff Taylor, which each co-conspirator or knew or should have known was false.

94. During Mr. Taylor's criminal trial, which took place in early 1972, detectives from the Tucson Police Department went to the jail, intending to induce one or more inmates to incriminate Mr. Taylor, regardless of whether this incriminating testimony was truthful or not.

95. The detectives did so at the direction of Horton Weiss, or, at a minimum, with Weiss' knowledge and consent.

96. The detectives then produced two witnesses, Bruce Wallmark and Robert Jackson, who were willing to give and in fact gave false but incriminating testimony against Mr. Taylor, in violation of Taylor's constitutional due process rights.

97. One witness, Jackson, falsely testified that Taylor admitted starting the fire and that he used an accelerant to do so.

98. At the time Jackson gave this testimony, the defendants were in possession of Dr. Crutchfield's "Truesdail" report, which concluded that no accelerants were used, in direct contradiction to Jackson's testimony.

99. Based on events occurring before Mr. Taylor's trial, Defendant Pima County was on notice of the deficiencies related to its training

and supervision of Deputy County attorneys, including but not limited to Deputy County Attorney Horton Weiss.

100. Had the Defendant acted appropriately and not had a policy amounting to deliberate indifference to the constitutional rights of Plaintiff Louis Taylor and others, and had Defendant terminated Weiss from the its employment or properly trained or properly supervised him, the violations of Plaintiff's constitutional rights would have been avoided.

101. By December, 1970 an accused's 5th Amendment right to a fair trial and 14th Amendment right to be free racial discrimination were clearly established, meaning the Defendant has no qualified immunity.

102. As a direct result of the deliberate indifference described in the preceding paragraph, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

## COUNT SEVEN
(Punitive Damages, 42 U.S.C.A. §1983)

103. That all defendants are subject to punitive damages under federal law (*Badia v. City of Casa Grande*, 195 Ariz. 349, 356 (App.

21

1999)) and that all defendants acted with deliberate indifference and an evil mind, such that punitive damages are appropriate.

WHEREFORE, Plaintiff respectfully requests that this Court grant him judgment against the Defendants as follows:

    a. Fair and reasonable compensatory damages, including general, special, economic and non-economic damages;

    b. Costs incurred herein;

    c. Attorney's fees (42 U.S.C. §1988)

    d. Punitive Damages, and

    e. Such other relief as the Court deems appropriate.

DATED this 30th day of January, 2015.

THE LEADER LAW FIRM, P.C.

_____
John P. Leader

**In the Superior Court of the State of Arizona
In and For the County of Pima**

Case Number _____

JAN 3 0 2015

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

C 20150466

Plaintiff's Attorney: **John P. Leader**

Attorney Bar Number: **0012511**

Plaintiff's Name(s): (List all)
**Louis Taylor**

STEPHEN VILLARREAL

Plaintiff's Address:
c/o John P. Leader
Leader Law Firm
698 E. Wetmore Road, Suite 330
Tucson, AZ 85705

_List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All): **Pima County, City of Tucson**

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT: ☐ Temporary Restraining Order ☐ Provisional Remedy ☐ OSC
☐ Election Challenge ☐ Employer Sanction ☐ Other _____
(Specify)

☐ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties. (Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

**NATURE OF ACTION**
(Place an "**X**" next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
Non-Death/Personal Injury
☐ Property Damage
☐ Wrongful Death
**TORT NON-MOTOR VEHICLE:**
Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort
☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation

☒ Other – 42 U.S.C.A. § 1983 Negligence,
Discrimination, Civil Conspiracy, Deliberate
Indifference to Prosecutorial Misconduct, Failure to
Train, False
Imprisonment, Intentional Infliction of Emotional
Distress, Punitive Damages
**MEDICAL MALPRACTICE:**
☐ Physician M.D.      ☐ Hospital
☐ Physician D.O      ☐ Other
**CONTRACTS:**
☐ Account (Open or Stated)
☐ Promissory Note
☐ Foreclosure
☐ Buyer-Plaintiff
☐ Fraud
☐ Other Contract (i.e. Breach of Contract)
☐ Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)

1

☐ Six to Nineteen Structures
☐ Twenty or More Structures
**OTHER CIVIL CASE TYPES:**
☐ Eminent Domain/Condemnation
**OTHER CIVIL CASE TYPES : (Continued)**
☐ Forcible Detainer
☐ Change of Name
☐ Transcript of Judgment
☐ Foreign Judgment
☐ Quiet Title
☐ Forfeiture
☐ Election Challenge
☐ NCC- Employer Sanction Action (A.R.S. §23-212)
☐ Injunction against Workplace Harassment
☐ Injunction against Harassment
☐ Civil Penalty
☐ Water Rights(Not General Stream Adjudication)
☐ Real Property
☐ Sexually Violent Person (A.R.S. §36-3704)
  (Except Maricopa County)
☐ Minor Abortion (See Juvenile in Maricopa County)
☐ Special Action Against Lower Courts
  (See lower court appeal cover sheet in Maricopa)
**UNCLASSIFIED CIVIL:**
☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)

☐ Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)
☐ Declaratory Judgment
☐ Habeas Corpus
☐ Landlord Tenant Dispute- Other
☐ Restoration of Civil Rights (Federal)
☐ Clearance of Records (A.R.S. §13-4051)
☐ Declaration of Factual Innocence (A.R.S. §12-771)
☐ Declaration of Factual Improper Party Status
☐ Vulnerable Adult (A.R.S. §46-451)
☐ Tribal Judgment
☐ Structured Settlement (A.R.S. §12-2901)
☐ Attorney Conservatorships (State Bar)
☐ Unauthorized Practice of Law (State Bar)
☐ Out-of-State Deposition for Foreign Jurisdiction
☐ Secure Attendance of Prisoner
☐ Assurance of Discontinuance
☐ In-State Deposition for Foreign Jurisdiction
☐ Eminent Domain– Light Rail Only
☐ Interpleader– Automobile Only
☐ Delayed Birth Certificate (A.R.S. §36-333.03)
☐ Employment Dispute- Discrimination
☐ Employment Dispute-Other
  Other (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐ Antitrust/Trade Regulation
☐ Construction Defect with many parties or structures
☐ Mass Tort
☐ Securities Litigation with many parties
☐ Environmental Toxic Tort with many parties
☐ Class Action Claims
☐ Insurance Coverage Claims arising from the above-listed case types
☐ A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)

_____

_____

_____

Additional Defendant(s)

_____

_____

**THE LEADER LAW FIRM, P.C.**
John P. Leader, SBN 012511
698 E. Wetmore, Suite 330
Tucson, AZ 85705
Phone (520) 575-9040
Fax (520) 575-9340
*John P. Leader, Esq*

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

15 JAN 30 PM 4: 58

S. PETERSEN, DEPUTY

## IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

LOUIS TAYLOR, a single man,

      Plaintiff,

vs.

PIMA COUNTY, a body politic; THE
CITY OF TUCSON, a body politic,

      Defendants.

No. **C 20150466**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

**42 U.S.C.A. §1983 /
Punitive Damages**

STEPHEN VILLARREAL

    The undersigned hereby certifies that the largest award sought by the Plaintiff,
including punitive damages, but excluding interest, attorneys' fees and costs exceeds
the limits set by local rules of practice for compulsory arbitration. This case **is not**

subject to compulsory arbitration, as provided by Rules 72 through 76 of the Ariz. R. Civ. P.

DATED this 3 0 day of January, 2015.

THE LEADER LAW FIRM, P.C.

John P. Leader, Esq.
*Attorney for Plaintiff*

2



*Pima County Clerk of Superior Court*
*Tucson, Arizona*

Receipt Number: 2438765

| | | |
|---|---|---|
| Received for: | LOUIS TAYLOR | Date: | 1/30/2015 |
| Received from: | ARIZONA PREMIER LEGAL SERVICES INC | Case Number: | C20150466 |
| Amount Received: | $244.00 | Clerk Number: | 315 |

Caption: LOUIS TAYLOR VS. PIMA COUNTY ET AL.

Cash: $0.00        Check: $244.00        Charge: $0.00        ACH: $0.00

*Begin Financial Docket*

Civil Complaint                                    $244.00    PAID

*End Financial Docket*

Change Returned: $0.00

Amount Refunded: $0.00





FILED
TOMI L. HELLON
CLERK, SUPERIOR COURT
2·10·15
15 FEB 10 PM 2:46

S. GRAHAM, DEPUTY

L

1 THE LEADER LAW FIRM, P.C.
2 John P. Leader, SBN 012511
698 E. Wetmore, Suite 330
3 Tucson, AZ 85705
Phone (520) 575-9040
4 Fax (520) 575-9340
*John P. Leader, Esq*
5

6 **IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF PIMA**
7

8 LOUIS TAYLOR, a single man,

No. **C2015 0466**
9        Plaintiff,

**FIRST AMENDED**
10 vs.                **COMPLAINT**

11 PIMA COUNTY, a body politic; THE
CITY OF TUCSON, a body politic,
      **42 U.S.C.A. §1983 /**
12       **Punitive Damages**

13        Defendants.
      **Assigned to the Honorable**
      **Stephen Villarreal**
14

15

16 Plaintiff, for his Complaint against the Defendants, alleges as follows:

17

18 **ALLEGATIONS COMMON TO ALL COUNTS**

19     1.     Plaintiff Louis Taylor (hereafter "Taylor") is an adult residing in Pima

20 County, Arizona.

21     2.     All defendants and their employees are or were residents of Pima

22 County or were political entities located in Pima County, Arizona.

23     3.     Pima County is a political entity and subdivision created and existing

24 under the laws of the State of Arizona.

25

4.   The City of Tucson is a political entity and subdivision created and existing under the laws of the State of Arizona.

5.   Pima County and the City of Tucson are both local governing bodies subject to suit under 42 U.S.C. §1983 for monetary, declaratory, or injunctive because, as discussed in more detail below, officers of each local governing body took unconstitutional actions pursuant to and in execution of customs and policies of these local governing bodies. *Silverwing at Sandpoint v. Bonner County* (D. Idaho 11-21-2014) No. 2:12-CV-00287-EJL-LMB ("F.Supp" citation unavailable), citing *Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014), *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978 )"[I]t is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 693; *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."); *See also, Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir. 2004); *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).

6. Both defendants, as of December, 1970, had official policies, customs or practices, created either by action or inaction, which amounted to longstanding practice having the force of law.

7. Plaintiff Taylor was arrested by officers of the Tucson Police Department December 20, 1970 in connection with a fire that occurred at the Pioneer Hotel in Tucson (hereafter, "the fire").

8. Plaintiff Taylor is of African-American descent and was arrested based at least in part on his race.

9. Taylor was arrested before any investigation had been commenced to determine whether the fire was even arson.

10. There is no adequate or scientifically reliable evidence proving that the fire was arson, and thus, that any crime was committed with respect to this fire.

11. As of October, 1970, there had been three (3) recent other fires at the Pioneer Hotel, which were believed to be arson.

12. Upon information and belief, a person by the name of Donald Anthony was the suspect in all three (3) prior fires.

13. If the subject fire was arson, Taylor should not have been the primary suspect, in light of the prior fires for whom a common suspect existed.

14. After his arrest, Taylor was interrogated by officers of the Tucson Police Department, in violation of his constitutional rights, over the course of several hours in the early morning hours of December 20, 1970.

3

15. Near the conclusion of this interrogation, Taylor requested and was given a polygraph, during which he denied starting the fire.

16. Said polygraph did not indicate deception by Taylor.

17. Taylor was charged with twenty-eight (28) counts of murder before any investigation had been commenced to determine whether the fire was arson, despite the known polygraph results, and despite the existence of a known arson suspect in other recent prior fires.

18. In the weeks and/or months following the fire, the Tucson Fire Department conducted an investigation(s) into the fire and thereafter jointly worked with the Tucson Police Department and the Pima County Attorney's Office in Mr. Taylor's prosecution.

19. Taylor was convicted by an all-white jury of twenty-eight counts of murder on March 21, 1972, in the Arizona Superior Court of Maricopa County for the County of Pima.

20. Before, during and after trial, the above named Defendants subjected Plaintiff Louis Taylor to a deprivation of his federal constitutional rights, or caused Taylor to be subjected to such a deprivation; said constitutional rights were clearly established prior to December, 1970.

21. The deputy Pima County attorney assigned to the Taylor prosecution was Horton Weiss.

22. By the time of Mr. Taylor's trial, Weiss was well known to the Arizona judiciary as an over-zealous and unethical prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and

4

constitutionally proper. *See e.g.*, *State v. Lanahan*, 12 Ariz.App. 446, 448, 471 P.2d 748, 750 (1970) (Weiss reprimanded twice "for making insinuating comments and trying to take over the courtroom."); *State v. Mercer*, 13 Ariz.App. 1, 4, 473 P.2d 803, 806 (1970) ("The over-zealous tactics of Mr. Weiss are well known to this court and have been the subject of other appeals."); *State v. Moore*, 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972) ("The record herein indicates that Mr. Horton Weiss was guilty of the most unprofessional and immature conduct which impeded the orderly reception of evidence, restricted the right of cross-examination by the defendant, and measurably extended the time it took to try the case . . . In the instant case, the conduct of Mr. Weiss was so outrageous and improper that this court is required to reverse and remand the matter for new trial."); *State v. Thomas*, 110 Ariz. 120, 134, 515 P.2d 865, 879 (1973) (Weiss's "interruptions were frequent, baseless in most cases, and a hindrance to the defense. There can be no justification for such conduct."); *State v. Skinner*, 110 Ariz. 135, 147, 515 P.2d 880, 892 (1973) (discussing alleged *Brady* and *Giglio* violations involving both Weiss and Rex Angeley and noting that Weiss's trial conduct was also "short of exemplary"); *State v. Moore*, 110 Ariz. 404, 406, 519 P.2d 1145, 1147 (1974) (allegations of unprofessional and improper conduct are "not a new or novel question for this court as it has been raised in numerous cases which have been prosecuted by Mr. Weiss.").

5

23. The above described prior misconduct by Weiss necessarily involved violating or potentially violating the constitutional rights of Pima County criminal defendants.

24. At the time Weiss prosecuted Mr. Taylor, he (Weiss) was simultaneously defending himself against five contempt of court charges related to his conduct in a 1970 trial, for which he ultimately served 15 days in jail (*See Weiss v. Superior Court of Pima County*, 12 Ariz.App. 527, 472 P.2d 950 (1971); *Weiss v. Superior Court of Pima County*, 106 Ariz. 577, 480 P.2d 3 (1971); *Weiss v. Burr*, 327 F.Supp. 1306 (1971); *Weiss v. Burr*, 484 F.2d 973 (1973); *Weiss v. Burr*, 414 U.S. 1161, 94 S.Ct. 924 (1974) (*cert denied*).

25. Prior to trial, the defendants received and possessed a written report, known as the "Trues ail" report, from a consulting expert, concluding that no evidence of "accelerants" was discovered during post fire inspections.

26. This report was exculpatory evidence that Plaintiff Taylor was entitled to have in his defense, under *Brady v. Maryland*, 373 U.S. 83 (1963).

27. The defendants, and each of them, knowingly and wrongfully withheld this report from Plaintiff Taylor and his criminal defense lawyer.

28. During trial, some or all of the defendants procured testimony from two jailhouse "snitches,"[1] testimony that the defendants knew or should have known was patently false.

29. One of these witnesses, Robert Jackson, falsely testified that Plaintiff Taylor admitted starting the fire and using an accelerant (lighter fluid) to do so.

30. The Defendants' failure to disclose the "Truesdail" report was, by itself, a significant violation of Plaintiff Taylor's constitutional rights.

31. This constitutional violation was magnified when the defendants, in addition to withholding the "Truesdail" report showing that no accelerants had been used, called a witness at trial (Jackson) to say that Taylor admitted using an accelerant to start the fire.

32. With actual or constructive knowledge that Jackson's testimony was false, and knowing that Jackson's testimony was contradicted by the undisclosed "Truesdail" (no accelerant) report, the defendants nonetheless caused or allowed Jackson to testify.

33. Additionally, Jackson testified as a "rebuttal" witness, at the very end of the trial, following presentation of the defense case. As such and as the defendants knew or should have known, Jackson's testimony would have a greater effect upon the jury given its timing (at the end of the trial).

---

[1] Bruce Wallmark and Robert Jackson

34. The Defendants' conduct in withholding the "Truesdail" report, calling Jackson as a witness, and doing so in the rebuttal portion of the prosecution's case, was a calculated, deliberate, and intentional violation of Plaintiff Taylor's constitutional rights, including but not limited to his due process rights and his rights to a fair trial. Taylor was railroaded.

35. Before, during, and after trial, the above named defendants and/or employees of the above named defendants, and other unnamed co-conspirators, engaged in a civil conspiracy, that is, a combination of two or more persons who, by concerted action, intended to accomplish some unlawful objective for the purpose of harming Plaintiff Taylor which in fact resulted in damage to Taylor.

36. The above mentioned co-conspirators reached a unity of purpose, a common design and understanding or a meeting of the minds in an unlawful arrangement - to arrest, charge and convict Plaintiff Taylor, knowing that the fire may not have been arson, knowing that if it was arson, another person was a more likely suspect, deliberately withholding the exculpatory "Truesdail" report, and recruiting and then calling as a rebuttal trial witness a person whose testimony was obviously false and whose testimony directly contradicted the wrongfully withheld "Truesdail" report , all in violation of Plaintiff Taylor's constitutional rights.  Each participant in the conspiracy

shared the common objective of the conspiracy - arresting, charging, and convicting Taylor, in violation of Taylor's constitutional rights.

37. Actions taken pursuant to this conspiracy included, but were not limited to withholding of the "Truesdail" report, and procuring testimony that the defendant/co-conspirators knew or should have known was false.

38. But for the unconstitutional municipal policies set forth above and below, the conspiracy described above likely would not have been created.

39. On October 23, 2012, Plaintiff Taylor filed a Petition for Post-Conviction Relief pursuant to the Arizona Rules of Criminal Procedure.

40. In this Petition, Taylor included findings and conclusions of the "Arson Review Committee," a panel of renowned fire experts who, shortly before Taylor filed his Petition for Post- Conviction Relief, reviewed all evidence in this case and concluded that the Pioneer hotel fire cannot be classified as arson.

41. In a Pima County Attorney Memorandum filed April 1, 2013 in Pima County Superior Court, it was stipulated that if "a review of the original evidence using new advances and techniques in fire investigation is legally 'newly discovered evidence' ... the State would be unable to proceed with a retrial, and the convictions would not stand.

42. On that same date, April 1, 2013, the Pima County Attorney's Office stipulated to Taylor's request for post-conviction relief, on the condition that Taylor enter a "no contest" plea.

9

43. On April 2, 2013, Plaintiff Taylor's March 1972 convictions(s) were vacated.

44. On or about that same date, although maintaining his innocence, Plaintiff Taylor pled "no contest" to charges related to the fire, on the condition that he serve no time in prison related to these new charges.

45. On that same date, April 2, 2013, Plaintiff Taylor was released from his incarceration for the unconstitutional 1972 convictions, having spent approximately 42 years in prison.

46. A §1983 cause of action for damages attributable to an unconstitutional conviction(s) does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014).

47. The §1983 claims asserted in this action thus accrued April 2, 2013, when Taylor's original, 1972 conviction(s) were vacated.

48. The statute of limitations for §1983 claims is the general personal injury statute of limitations for the State where the events in question occurred, in this case, Arizona. *Wallace v. Kato*, 549 U.S. 384, 387 (2007), *Madden-Tyler v. Maricopa County*, 189 Ariz. 462 (App. 1997)

49. Arizona's general personal injury statute of limitations is two years. A.R.S. §12-542.

50. This action is timely.

51. This action is not barred under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) because, "if successful, [it] will not

demonstrate the invalidity of any outstanding criminal judgment against" Taylor. *See Jackson v. Barnes*, 749 F.3d 755, 760-61 (9th Cir. 2014), quoting *Heck*, 512 U.S. at 487. *See also Poventud v. City of New York*, 750 F.3d 121 (2nd Cir. 2014).

**COUNT ONE**
(42 U.S.C.A. §1983 – Defendant City of Tucson; Custom of Impermissible Racial Discrimination)

52. Under *Monell v. N.Y.C. Dep't of Soc. Servc.*, 436 U.S. 658 (1978), Defendant City of Tucson is liable for action or inaction that "unconstitutionally implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91.

53. Under *Monell*, a local government body is liable under §1983 for policies of inaction as well as policies of action. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185–86 (9th Cir. 2002). A policy of inaction is based on a government body's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

11

54. Prior to and at all times relevant to Plaintiff Taylor's arrest and prosecution, Defendant City of Tucson, through its Police Department, had a pervasive long-standing custom/practice of racial discrimination against African Americans, a practice that amounted to the force of law, that included but was not limited to a failure to implement procedural safeguards to prevent constitutional violations, including racially related safeguards.

55. Said policies resulted in the deprivation of Plaintiff's constitutional rights.

56. That the aforementioned policies amounted to deliberate indifference to the well-established constitutional rights of Plaintiff Louis Taylor, who is African-American, and others.

57. Prior to December, 1970, Defendant City of Tucson, acting pursuant to and under color of state law, and pursuant to long-standing custom and practice, devised, implemented and applied customs, policies and practices amounting to deliberate indifference, that directly resulted in the deprivation of Plaintiff Louis Taylor's clearly established constitutional rights, of which a reasonable person would have known, including but not limited to Plaintiff's 5th and 14th Amendment Due Process rights.

58. As a direct result of the above described conduct, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by

12

being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

59. The violation of Plaintiff's constitutional rights could have been prevented had appropriate customs and policies been in place.

**COUNT TWO**
(42 U.S.C.A. §1983 – Defendant City of Tucson; Failure to Train)

60. Plaintiff Taylor incorporates by reference all previous allegations.

61. Pursuant to *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a municipality is liable under 42 U.S.C.A. §1983 for failing to train and or supervise its employees if the need to train or better supervise was obvious and the failure to do so made a violation of constitutional rights likely.

62. Prior to December, 1970, defendant city of Tucson failed to train and or supervise its police employees, such that the City was deliberately indifferent to the constitutional rights of criminal defendants.

63. As a direct result of the deliberate indifference described in the preceding paragraph, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by

13

1  later being wrongly convicted of those crimes, and by later serving the

2  vast majority of his adult life, 42 years, in prison.

3

4                              **COUNT THREE**

5  (42 U.S.C.A. §1983 – Defendant Pima County; Custom of Impermissible Racial
                              Discrimination)

6

7  64.  Under *Monell v. N.Y.C. Dep't of Soc. Servc.*, 436 U.S. 658 (1978),

8       Defendant City of Tucson is liable for action or inaction that

9       "unconstitutionally implements or executes a policy statement,

10      ordinance, regulation, or decision officially adopted and

11      promulgated by that body's officers," or where the action is made

12      "pursuant to governmental 'custom' even though such a custom

13      has not received formal approval through the body's official

14      decision making channels." *Id.* at 690–91.

15

16  65.  Under *Monell*, a local government body is liable under §1983 for

17      policies of inaction as well as policies of action. *Gibson v. Cnty. of*

18      *Washoe*, 290 F.3d 1175, 1185–86 (9th Cir. 2002). A policy of

19      inaction is based on a government body's "failure to implement

20      procedural safeguards to prevent constitutional violations." *Tsao*

21

22      *v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

23  66.  Prior to and at all times relevant to Plaintiff Taylor's arrest and

24      prosecution, Defendant Pima County, through its County

25      Attorney's Office, had a pervasive long-standing custom/practice

                                    14

of racial discrimination against African Americans, a practice that amounted to the force of law, that included but was not limited to a failure to implement procedural administrative hiring and training safeguards, to prevent constitutional violations, including but not limited to racially related safeguards.

67. Said policies resulted in the deprivation of Plaintiff's constitutional rights.

68. That the aforementioned policies amounted to deliberate indifference to the well-established constitutional rights of Plaintiff Louis Taylor, who is African-American, and others.

69. Prior to December, 1970, Defendant Pima County, acting pursuant to and under color of state law, and pursuant to long-standing custom and practice, devised, implemented and applied customs, policies and practices amounting to deliberate indifference, that directly resulted in the deprivation of Plaintiff Louis Taylor's clearly established constitutional rights, of which a reasonable person would have known, including but not limited to Plaintiff's 5th and 14th Amendment Due Process rights.

70. As a direct result of the above described conduct, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those

crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

71.   The violation of Plaintiff's constitutional rights could have prevented had appropriate customs and policies been in place.

**COUNT FOUR**
(42 U.S.C.A. §1983 – Defendant Pima County; Failure to Train/Supervise)

72.   Plaintiff Taylor incorporates by reference all previous allegations.

73.   Pursuant to *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a municipality is liable under 42 U.S.C.A. §1983 for failing to train and or supervise its employees if the need to train or better supervise was obvious and the failure to do so made a violation of constitutional rights likely.

74.   Prior to December, 1970, defendant Pima County failed to train and or supervise its employees, such that the County was deliberately indifferent to the constitutional rights of criminal defendants.

75.   At all times relevant to this matter, the Defendant had polices of inaction, that is, failure to supervise/and or train Deputy County attorneys, and thus, to implement procedural safeguards to prevent constitutional violations.

76. That the aforementioned policies amounted to deliberate indifference to the constitutional rights of Plaintiff Louis Taylor and others.

77. Defendant Pima County Attorney was on actual or constructive notice that its omission would likely result in a constitutional violation.

78. As a direct result of the conduct described above in this count, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

**COUNT FIVE**
(42 U.S.C.A. §1983 – Defendant Pima County; Custom of Deliberate Indifference to Prosecutorial Misconduct)

79. General hiring and firing decisions by County officials, including a County prosecutor and/or his staff are not protected by immunity. *Lacey v. Maricopa County*, 693 F.3d 896, 930-31, 942 (9th Cir. 2012), citing *Forrester v. White*, 484 U.S. 219, 229 (1988), *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009), and *Imbler v. Pachtman*, 424 U.S. 409, 425-26 (1976).

17

80. Prior to Plaintiff Taylor's original criminal trial, deputy Pima County Attorney Horton Weiss had demonstrated a continuing pattern of violating the constitutional rights of criminal defendants; Weiss was well known to the Arizona judiciary as an over-zealous and unethical prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and constitutionally proper.

81. Defendant Pima County, by failing to terminate Weiss' employment prior to Plaintiff's criminal trial, was deliberately indifferent to the constitutional rights of Pima County criminal defendants, including plaintiff Taylor.

82. Had defendant Pima County not acted with the deliberate difference described above in this count, Plaintiff Taylor's constitutional rights would not have been violated.

83. The above described unconstitutional administrative training, hiring and firing policies also directly resulted in foreseeable unethical, unconstitutional prosecutorial misconduct by Horton Weiss before, during, and after Taylor's trial.

84. As a direct result of the conduct described above in this count, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in December, 1970 with multiple counts of homicide related to arson, by later being wrongly convicted of those crimes, and by later serving the vast majority of his adult life, 42 years, in prison.

## COUNT SIX
(Civil Conspiracy - 42 U.S.C.A. §1983,
Defendants Pima County and City of Tucson)

85.  Defendants are liable under 42 U.S.C.A. §1983 if and when they conspire to violate a person's constitutional rights. *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999).

86.  Based in part, and as a direct result of the discriminatory practices alleged in the preceding counts of this Complaint, certain employees of both the City of Tucson and Pima County unlawfully conspired and mutually agreed to violate Plaintiff Taylor's constitutional rights.

87.  The unlawful conspiratorial conduct directly resulted from unconstitutional, racially discriminatory policies or customs (including those described above) of Defendants City of Tucson and Pima County.

88.  Before, during, and after trial, employees of the above named defendants, and other co-conspirator engaged in a civil conspiracy, that is, a combination of two or more persons who, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming Plaintiff Taylor (by unconstitutionally charging and convicting him), which in fact resulted in damage to Taylor.

89.  The above mentioned co-conspirators reached a unity of purpose, a common design and understanding or a meeting of the minds in an unlawful arrangement - to convict Plaintiff Taylor, in violation of his

19

constitutional rights. Each participant in the conspiracy shared the common objective of the conspiracy.

90. The aforementioned civil conspiracy, included, but was not limited to improperly charging Taylor, deliberately withholding of material "exculpatory" evidence (the "Truesdail report) and then calling a witness whose testimony was obviously false, and whose testimony directly contradicted the undisclosed "Truesdail" report.

91. By the time of Mr. Taylor's trial, prosecutor Horton Weiss was well known to the Arizona judiciary as an over-zealous prosecutor who habitually practiced on the edge of, and often beyond, what was ethically and constitutionally proper.

92. Prior to and/or during trial, Horton Weiss became aware of a report (referenced above) prepared by Dr. C.A. Crutchfield, the Technical Director of Truesdail Laboratories.

93. The "Truesdail" report documents that, after a thorough investigation to identify "accelerants" that may have been used to intentionally start a fire at the Pioneer hotel on December 19-20, 1970, no evidence of accelerants was found.

94. Upon information and belief, in addition to Horton Weiss, others, including employees of the Tucson Fire Department, knew of and/or were in possession of the Truesdail report.

95. Under well-established principles of American constitutional law, Horton Weiss had a legal and ethical obligation to provide this report to Mr. Taylor and his attorney. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). His failure to disclose this report was, by itself, a significant deprivation of Mr. Taylor's constitutional rights that occurred as a direct result of the conduct alleged in counts one through four of this Complaint (including administrative failures to train, hire and fire).

96. A second objective of the aforementioned conspiracy was to produce testimony from jailhouse informants to incriminate plaintiff Taylor, which each co-conspirator or knew or should have known was false.

97. During Mr. Taylor's criminal trial, which took place in early 1972, detectives from the Tucson Police Department went to the jail, intending to induce one or more inmates to incriminate Mr. Taylor, regardless of whether this incriminating testimony was truthful or not.

98. The detectives did so at the direction of Horton Weiss, or, at a minimum, with Weiss' knowledge and consent.

99. The detectives then produced two witnesses, Bruce Wallmark and Robert Jackson, who were willing to give and in fact gave false but incriminating testimony against Mr. Taylor, in violation of Taylor's constitutional due process rights.

100. One witness, Jackson, falsely testified that Taylor admitted starting the fire and that he used an accelerant to do so.

101. At the time Jackson gave this testimony, the defendants were in possession of Dr. Crutchfield's "Truesdail" report, which concluded that no accelerants were used, in direct contradiction to Jackson's testimony.

102. Based on events occurring before Mr. Taylor's trial, Defendant Pima County was on notice of the deficiencies related to its training and supervision of Deputy County attorneys, including but not limited to Deputy County Attorney Horton Weiss.

103. Had the Defendant acted appropriately and not had a policy amounting to deliberate indifference to the constitutional rights of Plaintiff Louis Taylor and others, and had Defendant terminated Weiss from the its employment or properly trained or properly supervised him, the violations of Plaintiff's constitutional rights would have been avoided.

104. By December, 1970 an accused's 5th Amendment right to a fair trial and 14th Amendment right to be free racial discrimination were clearly established, meaning the Defendant has no qualified immunity.

105. As a direct result of the deliberate indifference described in the preceding paragraph, Plaintiff Louis Taylor experienced a profound deprivation of his civil rights and liberties, by being wrongly charged in

22

1     December, 1970 with multiple counts of homicide related to arson, by

2     later being wrongly convicted of those crimes, and by later serving the

3     vast majority of his adult life, 42 years, in prison.

4

5

6     **COUNT SEVEN**
(Punitive Damages, 42 U.S.C.A. §1983)

7 106.     That all defendants are subject to punitive damages under federal

8     law (*Badia v. City of Casa Grande*, 195 Ariz. 349, 356 (App.

9     1999)) and that all defendants acted with deliberate indifference

10     and an evil mind, such that punitive damages are appropriate.

11

12

13     WHEREFORE, Plaintiff respectfully requests that this Court grant him

14 judgment against the Defendants as follows:

15       a. Fair and reasonable compensatory damages, including general,
         special, economic and non-economic damages;

16

17       b. Costs incurred herein;

18       c. Attorney's fees (42 U.S.C. §1988)

19       d. Punitive Damages, and

20       e. Such other relief as the Court deems appropriate.

21 DATED this 10th day of February, 2015.

22

23            THE LEADER LAW FIRM, P.C.

24

25            John P. Leader

23