# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Louis Taylor,

           Plaintiff,

v.

County of Pima, et al.,

           Defendants.

No. CV-15-00152-TUC-RM

**ORDER**

Pending before the Court are Defendants Pima County and City of Tucson's Motions to Dismiss Plaintiff's Second Amended Complaint (Docs. 54, 55), which seek dismissal under Rules 8 and 12(b) of the Federal Rules of Civil Procedure. Plaintiff filed a Combined Response (Doc. 57), and Defendants filed Replies (Docs. 60, 61).[1]

## I.    Procedural Background

This case arises out of Plaintiff's arrest, conviction of 28 counts of murder, and approximately 42-year imprisonment in connection with a fire that occurred at the Pioneer Hotel in Tucson, Arizona in December 1970. Plaintiff initiated this action in Pima County Superior Court, where he filed a First Amended Complaint raising claims against Pima County and the City of Tucson under 42 U.S.C. § 1983 and state tort law. (Doc. 1.) After removing the case to this Court, Defendants filed Motions to Dismiss Plaintiff's First Amended Complaint. (Docs. 5, 6.)

---

[1] Plaintiff filed a Request for Oral Argument (Doc. 62). The Court finds that the currently pending Motions to Dismiss are suitable for resolution without oral argument. Accordingly, Plaintiff's Request for Oral Argument is denied.

The Court partially granted the Motions to Dismiss in an Order filed on February 9, 2016.  (Doc. 35.)  In that Order, the Court found that Count Five of Plaintiff's First Amended Complaint sufficiently pled a claim against Pima County, but that Plaintiff's other claims were not supported by sufficient factual allegations.  The Court also found that Plaintiff's claims fell under an exception to *Heck v. Humphrey*, 512 U.S. 477 (1994), and that they were not barred by the statute of limitations because they did not accrue until Plaintiff's 1972 convictions were vacated on April 2, 2013.

Defendant Pima County moved for reconsideration of only "one narrow aspect" of the Court's February 9, 2016 Order.  (Doc. 39 at 1.)  Specifically, Pima County asked the Court to reconsider its holding that Plaintiff's claims fell under an exception to *Heck*, arguing that the holding had been foreclosed by a recent Ninth Circuit decision, *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015).  The Court partially granted the Motion for Reconsideration, finding that *Lyall* made it clear that "Plaintiff is *Heck*-barred from challenging the validity of his outstanding 2013 convictions," and thus withdrawing the portion of its February 9, 2016 Order finding that Plaintiff's claims fell under an exception to *Heck*.  (Doc. 48 at 2-3.)  The Court declined to dismiss Plaintiff's compensatory damages claim because "it would be premature, prior to discovery, to determine whether Plaintiff can present evidence of compensable damages arising from alleged constitutional violations underlying his 1972 convictions."  (Doc. 48 at 3.)

Plaintiff filed a Second Amended Complaint ("SAC") on March 14, 2016.  (Doc. 40.)

## II.   Allegations of SAC

The allegations of Plaintiff's SAC are as follows.

Plaintiff, an African American, was arrested by Tucson Police Department officers on or about December 20, 1970, in connection with the Pioneer Hotel fire.  (Doc. 40 at 3, ¶¶ 4-5.)  Plaintiff was 16 years old at the time.  (*Id.* at 4, ¶ 9.)  Plaintiff was arrested based on his race, before any investigation had been commenced to determine if the fire was arson.  (*Id.* at 3, ¶¶ 5-6.)  A Caucasian man suspected of starting three other fires at the

Pioneer Hotel was neither questioned nor investigated.  (*Id.* at 3, ¶ 8.)

After his arrest, Plaintiff was interrogated by at least eight Tucson Police Department officers over the course of several hours early in the morning of December 20, 1970.  (*Id.* at 4, ¶ 9.)  Plaintiff denied starting the hotel fire during a polygraph, and the polygraph did not indicate deception.  (*Id.*)

Plaintiff was initially charged with trespassing and arson, but the arson charge was dropped almost immediately.  (*Id.* at 4, ¶ 10.)  Although the deputy county attorney did not believe there was enough evidence to charge Plaintiff with any other crimes, at the urging of the director of the Pima County Juvenile Court Center, Plaintiff was charged as an adult with 28 counts of murder before any investigation had been commenced to determine if the hotel fire was arson.  (*Id.* at 4-5, ¶¶ 10-13.)

The deputy county attorney assigned to Plaintiff's prosecution was Horton Weiss, who was well known to the Arizona judiciary as an over-zealous and unethical prosecutor with a record of violating or potentially violating criminal defendants' constitutional rights.  (*Id.* at 5-7, ¶¶ 17-21.)  The county attorney was asked to remove Weiss from Plaintiff's case due to Weiss's reputation, but she refused to do so because she was under pressure to obtain a conviction given the high-profile nature of the hotel fire.  (*Id.* at 7, ¶ 22.)

In connection with Plaintiff's prosecution, Defendants (1) withheld exculpatory evidence in the form of a written report known as the "Truesdail" report, which found that no evidence of accelerants was discovered during post-fire inspections of the hotel, (2) presented false testimony from two jailhouses snitches, including testimony that was contradicted by the findings of the undisclosed Truesdail report, and (3) hired an expert who believed Plaintiff was guilty because "black boys" are more likely to start fires.  (*Id.* at 5, 8-10, ¶¶ 16, 23-33.)

On March 21, 1972, Plaintiff was convicted by an all-white jury of 28 counts of murder.  (*Id.* at 5, ¶ 15.)  Over forty years later, on October 23, 2012, Plaintiff filed a Petition for Post-Conviction Relief based in part on the findings and conclusions of a

1    panel of fire experts who, after reviewing all of the evidence in Plaintiff's case,

2    concluded that the Pioneer Hotel fire could not be classified as arson.  (*Id.* at 10, ¶¶ 35-

3    36.)  On April 1, 2013, the county attorney stipulated to Plaintiff's request for post-

4    conviction relief on the condition that Plaintiff enter a no-contest plea.  (*Id.* at 11, ¶ 38.)[2]

5    On April 2, 2013, Plaintiff's 1972 convictions were vacated, he pled no contest to

6    charges related to the fire for a stipulated sentence of time served, and he was released

7    from incarceration.  (*Id.* at 11, ¶¶ 39-41.)

8          Plaintiff's SAC raises six claims under 42 U.S.C. § 1983 and three claims under

9    state law.

10         In Count One, Plaintiff alleges that Defendant City of Tucson, through its Police

11   Department, had a custom/practice of racial discrimination against African Americans

12   that resulted in the violation of Plaintiff's constitutional rights.  (*Id.* at 12-18, ¶¶ 1-18.)[3]

13   Plaintiff alleges that only seven out of seven hundred officers in the Tucson Police

14   Department were African Americans as of 1972.  (*Id.* at 13-14, ¶ 5.)  Although the

15   Department received federal funds in 1970 to recruit more African Americans,

16   recruitment efforts failed because the Department used entrance exams that were racially

17   biased against African Americans and because African Americans did not trust the

18   Department due to the Department's longstanding policy of discrimination.  (*Id.*)  Those

19   African Americans that the Department did hire confronted stereotypes engrained in the

20   Tucson Police Department.  (*Id.* at 14, ¶ 6.)  Racial discrimination in the Department led

21   to a practice of arresting African Americans without probable cause on the basis of their

22   race and ignoring credible evidence implicating white suspects.  (*Id.* at 13, 16-17, ¶¶  4,

23   12-13.)

24         In Count Two, Plaintiff alleges that Defendant City of Tucson failed to train

25

26         [2]    The county attorney also stipulated that if "a review of the original
     evidence using new advances and techniques in fire investigation is legally 'newly
27   discovered evidence' [under Ariz. R. Crim. P. 32.1(e)]. . . the State would be unable to
     proceed with a retrial, and the convictions would not stand."  (*Id.* at 10-11, ¶ 37.)

28         [3]    The sequential numbering of the paragraphs of Plaintiff's SAC begins anew
     in Count One.

and/or supervise its police employees in deliberate indifference to the constitutional rights of criminal defendants. (*Id.* at 18-19, ¶¶ 19-24.) Plaintiff alleges that the failure to train and supervise is evidenced by the racially discriminatory customs and practices alleged in Count One, as well as by "the fact that at least eight officers interviewed Plaintiff . . . while he was in custody and his constitutional rights were being violated, and either knowingly acquiesced to the violations or were unaware" of them. (*Id.* at 19, ¶ 23.)

In Count Three, Plaintiff alleges that Defendant Pima County, through its County Attorney's Office, had a custom/practice of racial discrimination against African Americans that resulted in the violation of Plaintiff's constitutional rights. (*Id.* at 19-21, ¶¶ 25-34.) Plaintiff indicates that Pima County's discriminatory policies are evidenced by incidents described elsewhere in the SAC, including the allegation that prior to Plaintiff's trial, Weiss referred to a white lawyer representing an African American criminal defendant as a "nigger lover," and the allegation that the County Attorney's Office prosecuted cases against African Americans with a presumption of guilt and knowingly elicited unreliable testimony from "jailhouse snitches and informants." (*See id.* at 7, ¶¶ 20-21.)

In Count Four, Plaintiff alleges that Defendant Pima County failed to train and/or supervise its deputy county attorneys, in deliberate indifference to the constitutional rights of criminal defendants. (*Id.* at 21-23, ¶¶ 35-41.) Defendant alleges that the ethical and constitutional violations committed by Weiss were obvious to Pima County, but that Pima County was deliberately indifferent to the violations because "Weiss was effective in securing convictions, even when the defendant was innocent." (*Id.* at 22, ¶ 38.) Plaintiff further alleges that the county attorney failed to remove Weiss from Plaintiff's case despite a specific request that he be removed, because the case was high-profile and Weiss was successful "in securing convictions through ethical and constitutional violations when there was insufficient evidence." (*Id.*) Earlier in the SAC, Plaintiff alleges that Weiss was known to train other county attorneys to use "inherently

unreliable" testimony from "jailhouse snitches . . . when there was otherwise insufficient evidence to convict." (*Id.* at 7, ¶ 21.)

In Count Five, Plaintiff alleges that, prior to Plaintiff's trial, Weiss had demonstrated a continuing pattern of violating the constitutional rights of criminal defendants and was well known to the Arizona judiciary as an over-zealous and unethical prosecutor. (*Id.* at 23-25, ¶¶ 42-49.) Pima County's failure to terminate Weiss's employment prior to Plaintiff's trial exhibited deliberate indifference to the constitutional rights of criminal defendants and caused the violation of Plaintiff's constitutional rights. (*Id.* at ¶¶ 45-47.)

In Count Six, Plaintiff alleges that "certain employees of both the City of Tucson and Pima County unlawfully conspired and mutually agreed to violate" Plaintiff's constitutional rights, including by improperly arresting, charging, and prosecuting Plaintiff; deliberately withholding exculpatory evidence in the form of the Truesdail Report; and calling a witness whose testimony was obviously false and contradicted by the undisclosed Truesdail Report. (*Id.* at 25-29, ¶¶ 50-72.) Plaintiff alleges that Weiss and others, including employees of the Tucson Fire Department, knew of and/or were in possession of the Truesdail Report. (*Id.* at 27, ¶¶ 59-61.) Plaintiff further alleges that, at the direction of Weiss, detectives from the Tucson Police Department went to jail "to induce one or more inmates" to provide incriminating testimony against Plaintiff and ultimately produced two witnesses, Bruce Wallmark and Robert Jackson, who gave false testimony in violation of Plaintiff's due process rights. (*Id.* at 28-29, ¶¶ 63-68.)

In Counts Seven and Eight, Plaintiff raises state-law claims for negligence and wrongful arrest against City of Tucson. (*Id.* at 30-31, ¶¶ 73-81.) In Count Nine, Plaintiff raises a state-law malicious prosecution claim against Pima County. (*Id.* at 31-32, ¶¶ 81-85.)

## III.    Standard of Review

A complaint must include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require in-

depth factual allegations, it does require more than "labels[,] conclusions, [or] a formulaic recitation of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal under Rule 12(b)(6) may be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). However, only well-pleaded facts are given a presumption of truth. *Iqbal*, 556 U.S. at 679. Conclusory allegations—that is, allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements—are not "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If a complaint falls short of meeting the necessary pleading standards, a district court should dismiss with leave to amend unless the deficiencies of a pleading "could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) ("We have adopted a generous standard for granting leave to amend from a dismissal for failure to state a claim . . . ."). Failing to give leave to amend when a plaintiff could include additional facts to cure a complaint's deficiencies is an abuse of discretion. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012).

The Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a] motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicial proceedings in other courts are matters of judicial notice and may appropriately be considered on a motion to dismiss. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014).

## IV.     Discussion

Defendant City of Tucson requests that Counts One, Two and Six against the City be dismissed with prejudice.  (Doc. 54 at 12.)  Defendant Pima County requests dismissal of all claims alleged against it.  (Doc. 55 at 17.)

### A.     Claims Under 42 U.S.C. § 1983

Defendants argue that Plaintiff's § 1983 claims must be dismissed because they are barred by *Heck*, and that any portions not barred by *Heck* are barred by the statute of limitations.  Defendants further argue that the claims must be dismissed because they are not supported by sufficient non-conclusory factual allegations.  In addition, Pima County argues that it is entitled to Eleventh Amendment immunity regarding claims premised on the conduct of Weiss or the County Attorney's Office in the handling of Plaintiff's prosecution.  Finally, Pima County argues that the Court erred in previously finding that Plaintiff stated a valid municipal liability claim in Count Five.

#### 1.     Law of the Case

Plaintiff argues that this Court has already rejected Defendants' contentions regarding *Heck* and the statute of limitations, and that Defendants are precluded from re-litigating those issues because the Court's prior resolution of the issues is the law of the case.  The law of the case doctrine "counsels against reopening questions once resolved in ongoing litigation."  *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989).  Nevertheless, "a trial court has discretion to reconsider its prior, non-final decisions."  *Id.*; *see also City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (so long as district court retains jurisdiction over case, it has inherent authority "to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient").[4]  Reconsideration of a previous ruling is appropriate where "1) the first decision was clearly erroneous; 2) an intervening change in the law has

---

[4]     Furthermore, an amended complaint supersedes the original and may be attacked anew.  *See Gustavson v. Mars, Inc.*, 2014 WL 2604774, at *5 n.3 (N.D. Cal. June 10, 2014); *In re Sony Grand Wega KDF-E A10/A20 Series Real Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010); *Belshaw v. Credit Bureau of Prescott*, 392 F. Supp. 1356, 1360-61 (D. Ariz. 1975).

occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

In its February 9, 2016 Order resolving Defendants' first Motions to Dismiss, the Court found that Plaintiff's claims could proceed under an exception to *Heck* and that they were not barred by the statute of limitations because they did not accrue until April 2013, when Plaintiff's 1972 convictions were vacated. (*See* Doc. 35 at 13-15). However, on reconsideration, the Court withdrew the portion of its February 9, 2016 Order finding that Plaintiff's claims fell under an exception to *Heck*. (*See* Doc. 48 at 2-3). In doing so, the Court held that, in light of the Ninth Circuit's decision in *Lyall*, "it is now clear that Plaintiff is *Heck*-barred from challenging his 2013 convictions in this action." (*Id.*) This holding substantially changes the nature of the claims that Plaintiff may permissibly raise in this action.

In light of the Court's holding that Plaintiff's claims cannot proceed under an exception to *Heck*, the Court must now apply *Heck* in analyzing the § 1983 claims asserted in Plaintiff's SAC. In addition, reexamination of the interplay between *Heck* and the statute of limitations is appropriate.

### 2.     *Heck*-Bar

A § 1983 damages action is *Heck*-barred if "a judgment in favor of the plaintiff would necessarily imply the invalidity of the plaintiff's outstanding criminal conviction or sentence." *Heck*, 512 U.S. at 487. As the Supreme Court explained in *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486-87.

As described more fully in the Court's February 9, 2016 Order resolving

1   Defendants' first Motions to Dismiss (*see* Doc. 35 at 10-13), under certain circumstances,

2   a § 1983 plaintiff may successfully challenge the constitutionality of underlying events

3   that led to an outstanding criminal conviction without necessarily implying the invalidity

4   of that conviction.   *See generally Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014);

5   *Poventud v. City of N.Y.*, 750 F.3d 121 (2d Cir. 2014) (en banc); *Lockett v. Ericson*, 656

6   F.3d 892 (9th Cir. 2011); *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001).   Where an earlier

7   conviction is vacated or overturned but a subsequent conviction is outstanding, the

8   plaintiff may bring a § 1983 suit premised on alleged constitutional violations that

9   affected the first conviction but did not taint the subsequent, outstanding conviction.   *See,*

10   *e.g.*, *Jackson*, 749 F.3d at 758, 760-61; *Poventud*, 750 F.3d at 136-37.

11   　　　In all of the SAC's claims seeking relief under 42 U.S.C. § 1983—Counts One

12   through Six—Plaintiff alleges that Defendants' challenged actions or inactions caused

13   Plaintiff to experience "a profound deprivation of his civil rights and liberties" in that he

14   was wrongly charged and convicted of multiple counts of homicide and spent

15   approximately 42 years in prison.   (*See* Doc. 40 at 18-19, 21, 23, 25, 29, ¶¶ 17, 24, 33,

16   41, 49, 72.)   In other words, in his SAC, Plaintiff has tied all of his § 1983 claims to a

17   theory of constitutional harm that would require him to prove that he was wrongfully

18   charged and convicted of, and imprisoned for, 28 counts of felony murder.   Although

19   Plaintiff's 1972 convictions have been vacated, in 2013 Plaintiff was again convicted of

20   28 counts of felony murder and sentenced to time served.   Plaintiff's 2013 convictions

21   and sentence have not "been reversed on direct appeal, expunged by executive order,

22   declared invalid by a state tribunal authorized to make such determination, or called into

23   question by a federal court's issuance of a writ of habeas corpus."   *Heck*, 512 U.S. at 486-

24   87.   Success on the merits of the theory of constitutional harm alleged in Plaintiff's SAC

25   would necessarily undermine the validity of Plaintiff's outstanding 2013 convictions and

26   sentence.   *See id.* at 487.[5]   Accordingly, *Heck* bars Plaintiff from premising his claims on

27

28   　　　　[5]   　In its February 9, 2016 Order resolving Defendants' first Motions to
     Dismiss, the Court noted that an assertion that Plaintiff was wrongfully convicted in 1972
     is not necessarily inconsistent with his 2013 no-contest plea, because the plea did not

- 10 -

1   the alleged constitutional injuries of being wrongfully charged, convicted, and

2   imprisoned.  *See* 512 U.S. at 487.  However, as described more fully below, *Heck* does

3   not bar Plaintiff from raising claims premised on alleged constitutional violations that

4   affect his 1972 convictions but do not taint his 2013 convictions.

5   ### 3.   Statute of Limitations

6       In Arizona, a two-year statute of limitations applies to § 1983 actions.  *TwoRivers*

7   *v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  A § 1983 cause of action accrues "when the

8   plaintiff has a complete and present cause of action," e.g., when the plaintiff is able to

9   "file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal

10  quotation marks omitted).[6]  Under the *Heck* deferred-accrual rule, "a § 1983 cause of

11  action for damages attributable to an unconstitutional conviction or sentence does not

12  accrue until the conviction or sentence has been invalidated."  *Heck*, 512 U.S. at 489-90;

13  *see also Wallace*, 549 U.S. at 393 (where success in a tort action would impugn an

14  outstanding criminal judgment, "the *Heck* rule for deferred accrual . . . delays what would

15  otherwise be the accrual date of [the] tort action until the setting aside" of the conviction

16  that the action would impugn); *Rosales-Martinez*, 753 F.3d at 896 (same).

17      The Court previously found that, due to the *Heck* rule for deferred accrual,

18  Plaintiff's claims did not accrue until Plaintiff's 1972 convictions were vacated in 2013,

19  and thus that the statute of limitations did not bar Plaintiff's § 1983 action.  (Doc. 35 at

20  15.)  This finding remains true with respect to claims premised on a theory of wrongful

21  conviction and sentence.  However, because the Ninth Circuit's decision in *Lyall* makes

23  admit factual guilt.  (*See* Doc. 35 at 13.)  However, although Plaintiff's no-contest plea

24  cannot be used as an admission of factual guilt, it does represent an agreement by
    Plaintiff that his 2013 convictions and sentence are valid.   The theory alleged in

25  Plaintiff's SAC—that Plaintiff was wrongfully convicted of 28 counts of felony murder
    and sentenced to approximately 42 years in prison—necessarily implies the invalidity of

26  Plaintiff's outstanding 2013 convictions of 28 counts of felony murder and outstanding
    sentence of 42 years imprisonment.

27      [6]    Although the statute of limitations applicable to a § 1983 action is the

28  limitations period applicable to personal-injury torts under state law, "the accrual date of
    a § 1983 cause of action is a question of federal law and is *not* resolved by reference to
    state law."  *Wallace*, 549 U.S. at 387-88.

clear that *Heck* precludes Plaintiff from premising his claims on a theory that he was wrongfully convicted and sentenced, the Court now clarifies its statute-of-limitations analysis to address the accrual date applicable to other potential constitutional injuries upon which Plaintiff could frame his claims.

The *Heck* deferred accrual rule does not apply to a claim seeking damages for an arrest without probable cause in violation of the Fourth Amendment.  *See Wallace*, 549 U.S. at 390-96.  Absent state tolling rules requiring a different result, the statute of limitations on such a claim begins to run "at the time the claimant becomes detained pursuant to legal process"—for example, when "he is bound over by a magistrate or arraigned on charges."  *Id.* at 389, 394-96.  A contrary rule would require a "bizarre extension of *Heck*" whereby "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside."  *Id.* at 393-94.

By extension of the Supreme Court's reasoning in *Wallace*, the *Heck* deferred accrual rule also does not apply to claims seeking damages for an unconstitutional interrogation.  Such claims accrue at the time of the allegedly unconstitutional interrogation.  *See Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur.").[7]

Accordingly, to the extent that Plaintiff's allegations of constitutional harm are premised on him being wrongfully arrested without probable cause and/or unlawfully interrogated, the statute of limitations on such claims expired decades ago.  *See Wallace*, 549 U.S. at 390-91; *Johnson*, 925 F.2d at 1301.

. . . .

---

[7]     A different analysis might apply to a § 1983 suit challenging the admission at trial of evidence obtained as a result of an allegedly unconstitutional interrogation. However, the Court need not conduct that analysis here, for Plaintiff's SAC does not allege that Plaintiff's constitutional rights were violated during his 1972 trial by the admission of evidence obtained as a result of his allegedly unlawful interrogation. Rather, it alleges that Plaintiff's constitutional rights were violated by the allegedly unlawful interrogation itself.

### 4.     Surviving Claims

The interplay between *Heck* and the statute of limitations sharply constrains Plaintiff's § 1983 claims.   *Heck* bars claims based on allegations that Plaintiff was wrongfully charged, convicted, and imprisoned.   The statute of limitations bars claims based on allegations that Plaintiff was arrested without probable cause and unlawfully interrogated.   However, neither the statute of limitations nor *Heck* bars claims based on constitutional violations that affect the validity of Plaintiff's 1972 convictions *but not the validity of his subsequent 2013 convictions*.   *See Jackson*, 749 F.3d at 760-61; *Poventud*, 750 F.3d at 136-37.

Plaintiff's SAC alleges that his constitutional rights, including his rights to due process and to a fair trial free of racial bias, were violated during his original trial proceedings by the non-disclosure of the Truesdail Report, the hiring of an expert who believed Plaintiff was guilty because "black boys" are more likely to start fires, and the presentation of false testimony from two "jailhouse snitches."   These allegations of constitutional injury implicate the fairness of Plaintiff's 1972 trial and the validity of his 1972 convictions.   Accordingly, claims premised on these allegations of constitutional injury are not barred by the statute of limitations because, under the *Heck* deferred accrual rule, the claims did not accrue until Plaintiff's 1972 convictions were vacated. The claims are not barred by *Heck* so long as Plaintiff's 2013 convictions are untainted by the alleged constitutional harms.

Plaintiff's 2013 convictions resulted from Plaintiff's no-contest plea.  In *Lockett*, the Ninth Circuit held that a plaintiff was not *Heck*-barred from bringing a § 1983 action challenging the lawfulness of a search that led to his arrest, notwithstanding the fact that the plaintiff was ultimately convicted and the conviction had not been vacated, because the plaintiff's conviction derived from a nolo contendere plea rather than from a verdict obtained with allegedly illegally obtained evidence.   *See* 656 F.3d at 895-97.  Similarly, in *Ove*, the Ninth Circuit held that plaintiffs with outstanding convictions for driving under the influence based on guilty and nolo contendere pleas were not *Heck*-barred from

bringing a § 1983 action challenging the manner in which their blood was drawn, because the validity of their outstanding convictions did not depend upon the legality of the blood draws.  264 F.3d at 821, 823.  However, in *Szajer v. City of Los Angeles*, the Ninth Circuit held that a plaintiff with an outstanding conviction derived from a no-contest plea was *Heck*-barred from bringing a § 1983 action challenging the validity of an undercover operation that led to the discovery of evidence forming the sole factual basis of the no-contest plea.  632 F.3d 607, 608, 612 (9th Cir. 2011).

At first glance, the decisions in *Lockett*, *Ove*, and *Szajer* appear to be inconsistent. However, the decisions are reconcilable if they are understood as together standing for the proposition that a § 1983 action is *Heck*-barred when successfully proving the plaintiff's § 1983 claims would fatally undermine the factual basis of an outstanding plea-based conviction, because under such circumstances the § 1983 action challenges the validity of the outstanding conviction.  Defendants argue that such circumstances are present here, because Plaintiff's § 1983 claims are inconsistent with the factual basis of his 2013 plea.  For the following reasons, the Court disagrees.

In accepting Plaintiff's no-contest plea, the Pima County Superior Court incorporated by reference a memorandum filed by the State ("Plea Memorandum").  (*See* Doc. 6-2 at 14; *see also* Doc. 6-1 at 65-74.)  The Plea Memorandum states that Plaintiff was arrested at the Pioneer Hotel within hours of discovery of the fire, that he had no legitimate reason to be at the hotel, and that he gave inconsistent statements when questioned by hotel employees and police officers. The Plea Memorandum summarizes testimony presented at Plaintiff's original trial, including testimony by hotel employees David Johnson, Giles Scoggins, and James Holsinger; Police Officer Louis Adams; Sergeant Eugene Rossetti; Sergeant H.L. Gassaway; Detective David Smith; juveniles Bruce Walmark and Robert Jackson; and expert witnesses called by both the prosecution and the defense.   The Plea Memorandum explains that Walmark and Jackson both testified that Plaintiff admitted to them that he had started the fire, but that Jackson "later recanted his testimony and claimed police coercion."   The Plea Memorandum also

explains that expert witnesses for both the prosecution and the defense testified at Plaintiff's original trial that the fire was arson, but that this testimony is inconsistent with more recent findings by the Arson Review Committee and the Tucson Fire Department, both of which concluded—after reviewing the evidence using current fire investigation methodology—that a fire-cause determination is not possible.

As an initial matter, it is not clear that the Plea Memorandum is admissible as evidence in this case.  *See* Fed. R. Evid. 410(a).[8]  However, Ninth Circuit authority supports Defendants' contention that the Plea Memorandum should be considered in the context of a *Heck* analysis.  *See Szajer*, 632 F.3d at 612 (considering factual basis for plea as part of *Heck* analysis); *Rosales-Martinez*, 753 F.3d at 899 (suggesting district court may wish to consider, as part of *Heck* analysis, whether facts allocuted to in plea were inconsistent with allegations in § 1983 action).  Accordingly, the Court has compared the facts set forth in the Plea Memorandum with the factual allegations of Plaintiff's SAC.

Plaintiff's challenges to the fairness of his 1972 trial—specifically, the withholding of the Truesdail Report, the hiring of an expert who believed "black boys" are more likely to start fires, and the presentation of "jailhouse snitch" testimony—do not necessarily undermine the factual basis of his 2013 plea such that they call into doubt the validity of Plaintiff's 2013 convictions.  Plaintiff's allegation that Defendants presented false "jailhouse snitch" testimony is actually consistent with the Plea Memorandum, which specifically notes that Jackson recanted his trial testimony and claimed police coercion.  Accordingly, successfully proving Plaintiff's allegation that Defendants knowingly presented false testimony from Jackson during Plaintiff's 1972 trial would not undermine the factual basis of Plaintiff's 2013 plea.  Likewise, successfully proving Plaintiff's allegation that Defendants hired an expert who believed Plaintiff was guilty because "black boys" are more likely to start fires would not undermine the factual basis

---

[8]      In its Reply in Support of Motion to Dismiss Second Amended Complaint, Pima County states that the Plea Memorandum is not subject to the constraints of Rule 410, but it does not provide any specific arguments to support this statement.  (Doc. 61 at 7.)

of Plaintiff's 2013 plea; the Plea Memorandum specifies that the prosecution expert's trial testimony is contradicted by more recent findings of the Arson Review Committee and the Tucson Fire Department, and thus the factual basis of Plaintiff's 2013 plea cannot hinge on the accuracy of the expert witness's testimony at Plaintiff's original trial. Finally, Plaintiff's allegation that the Truesdail Report was exculpatory and should have been disclosed to him during his original trial proceedings does not undermine the validity of Plaintiff's 2013 convictions. Plaintiff was aware of the Truesdail report at the time of his 2013 plea, and thus his 2013 convictions are untainted by the alleged *Brady* violation. *See Poventud*, 750 F.3d at 136-37. Contrary to Defendants' arguments, the Plea Memorandum does not conclusively establish that the Truesdail Report was inculpatory. Whether the Truesdail Report was inculpatory or exculpatory is not an issue appropriate for resolution at this stage of the proceedings.

In conclusion, neither *Heck* nor the statute of limitations requires dismissal of Counts One through Six of Plaintiff's SAC to the extent that those claims are construed as alleging that Plaintiff's rights to due process and a constitutionally fair, racially unbiased trial were violated during his original trial proceedings by the non-disclosure of the Truesdail Report, the hiring of an expert who believed Plaintiff was guilty because "black boys" are more likely to start fires, and the presentation of false testimony from two "jailhouse snitches." The Court now turns to the issue of whether the claims alleged in Plaintiff's SAC, so construed, satisfy the pleading standards of Rule 8.

Defendants' arguments regarding the sufficiency of the SAC's factual allegations conflate, to some extent, the standard for pleading claims with the standard for proving claims. With respect to Counts One, Three, and Six, the new factual content contained in Plaintiff's SAC—assumed to be true for purposes of evaluating a motion to dismiss—is sufficient to permit a reasonable inference that a custom or practice of racial discrimination existed in the City of Tucson Police Department and the Pima County Attorney's Office, and that this custom/practice, in combination with pressure to secure a conviction in a high-profile case, caused the Defendants to conspire to violate Plaintiff's

constitutional rights by withholding the Truesdail report and knowingly presenting false "jailhouse snitch" testimony. Accordingly, the Court declines to dismiss Counts One, Three, and Six of Plaintiff's SAC.

Plaintiff's SAC also contains sufficient factual content to support the failure-to-train claim contained in Count Four. Plaintiff alleges that Pima County employees were trained to secure convictions even where there was insufficient evidence of guilt by using ethically and constitutionally suspect methods, including the procurement and presentation of unreliable "jailhouse snitch" testimony. Plaintiff has pleaded factual content that identifies specific deficiencies in Pima County's training and supervision of employees and connects those deficiencies to permissible allegations of constitutional injury. Accordingly, the Court declines to dismiss Count Four. However, the Court will grant Defendant City of Tucson's Motion to Dismiss with respect to Count Two, because Plaintiff's SAC does not contain sufficient non-conclusory factual allegations to (1) identify specific deficiencies in the City of Tucson's training and supervision of employees, and (2) connect those deficiencies to allegations of constitutional injury that do not run afoul of either *Heck* or the statute of limitations.

The Court found in its February 9, 2016 Order that Count Five sufficiently states a claim. Pima County argues that this Court's prior decision not to dismiss Count Five was clearly erroneous because Pima County cannot be held liable under § 1983 for failing to terminate Weiss in deliberate indifference to Weiss's prosecutorial misconduct.[9] Pima County relies upon *Hounshell v. White*, 220 Ariz. 1, 5 (App. 2008), for the proposition that it has no authority to hire or terminate deputy county attorneys and no authority or control over the training provided to them. (*See* Doc. 55 at 9 n.3, 11.)[10] *Hounshell* and

---

[9] Pima County could have, but did not, raise this argument in its Motion for Reconsideration (Doc. 39).

[10] In addition, Pima County cites to *Lacey* for the proposition that administrative hiring and training decisions regarding prosecutors are not actionable against a county. (*See* Doc. 55 at 11 (citing *Lacey*, 693 F.3d at 929).) The cited portion of *Lacey* discusses cases holding that district attorneys' hiring decisions are administrative in nature and not shielded by absolute prosecutorial immunity. *Lacey* "express[ed] no view on the merits" of any municipal liability claims. *See* 693 F.3d at 940.

the statutory provisions cited therein do not provide adequate support for Pima County's contentions.  Although *Hounshell* indicates that a county attorney has the sole authority to dismiss or discipline deputy county attorneys, it does not hold that a county has no control over the hiring or training of deputy county attorneys.  Indeed, pursuant to A.R.S. § 11-409, the county board of supervisors must consent to the county attorney's appointment of deputy county attorneys.  Furthermore, *Hounshell* does not indicate that counties lack the ability to establish policies, customs, and practices concerning the hiring, firing, training, and supervision of deputy county attorneys, nor does it hold that a county is immune from § 1983 liability with respect to such policies, customs, and practices.  Plaintiff's SAC contains sufficient factual content from which a reasonable inference could be drawn that Pima County had a deliberately indifferent practice or custom of hiring and retaining deputy county attorneys who secured convictions through unethical and unconstitutional tactics, and that this practice or custom caused the violation of Plaintiff's constitutional rights.  Pima County has not shown that the factual allegations of Plaintiff's SAC are insufficient to state a municipal liability claim in Count Five.

Pima County further argues that it is entitled to Eleventh Amendment immunity because the acts of Weiss and the County Attorney's Office in the course of Plaintiff's prosecution were taken on behalf of the state.  "[T]he Eleventh Amendment does not extend to counties."  *Eason v. Clark Cnty. School Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002).  Pima County cites to two unpublished district court decisions for the proposition that Eleventh Amendment immunity may extend to counties "where the conduct complained of involved the acts of county prosecutors exercising prosecutorial functions on behalf of the State."  (Doc. 55 at 13-14 (citing *Nazir v. Cty. of L.A.*, 2011 WL 819081, at *8 (C.D. Cal. Mar 2, 2011); *Neri v. Cty. of Stanislaus Dist. Atty's Office*, 2010 WL 3582575, at *3 (E.D. Cal. Sept. 9, 2010).)  The Court interprets these cases as applying the rule that a county cannot be liable under § 1983 for the actions of state, rather than county, policymakers.  *See McMillan v. Monroe Cnty.*, 520 U.S. 781, 783 (1997).  This

rule is relevant only to the extent that Plaintiff's claims hinge upon a final policymaker theory of *Monell* liability. *See McMillan*, 520 U.S. at 796. Plaintiff's SAC does not expressly rely upon such a theory. To the extent that any of Plaintiff's claims do hinge upon such a theory, Pima County has not shown that a county attorney acts as a state policymaker under Arizona law. *See Jett v. Dall Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("whether a particular official has final policymaking authority is a question of state law"). The cases cited by Pima County do not apply Arizona law on this issue, and Ninth Circuit precedent supports finding that an Arizona county prosecutor can act as a final county policymaker in certain circumstances. *See, e.g.*, *Gobel v. Maricopa Cnty.*, 867 F.2d 1201, 1208-09 (9th Cir. 1989) (finding that plaintiffs may be able to prove "that in Arizona the county attorney is the kind of county official whose policy decisions automatically constitute county policy"), *abrogated on other grounds by Merritt v. Cnty. of L.A.*, 875 F.2d 765 (9th Cir. 1989).[11]

Defendants also argue that Plaintiff's claim for compensatory damages must be dismissed with prejudice because Plaintiff's outstanding 2013 convictions and time-served sentence preclude Plaintiff from obtaining compensatory damages for any time he spent in prison. Defendants are correct that Plaintiff is not entitled to compensatory damages for the time he spent incarcerated. *See Jackson*, 749 F.3d at 762; *Olsen v. Correiro*, 189 F.3d 52, 66-70 (1st Cir. 1999) (plaintiff not entitled to incarceration-based damages in § 1983 lawsuit challenging actions in criminal proceedings underlying murder conviction where, after murder conviction was overturned, plaintiff pled nolo contendere to manslaughter and was sentenced to time served). However, dismissal of Plaintiff's compensatory damages claim is inappropriate at this stage of the proceedings because Plaintiff may be able to establish non-incarceration-based compensatory damages. *See Olsen*, 189 F.3d at 56-57, 71 (although precluded from recovering

---

[11]     More recent Ninth Circuit precedent has called *Gobel* into doubt. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000). However, the Arizona Supreme Court has assumed the correctness of *Gobel*. *See City of Phx v. Yarnell*, 909 P.2d 377, 387 (Ariz. 1995) (en banc).

incarceration-based damages, plaintiff could nevertheless recover compensatory damages for injuries associated with his first, overturned murder trial and conviction, such as attorney fees expended in that trial and/or damages for emotional injury not resulting from incarceration).

### B.    State-Law Claims

Defendant Pima County's Motion to Dismiss argues that the malicious prosecution claim in Count Nine of Plaintiff's SAC must be dismissed.  In his Combined Response to Defendants' Motions to Dismiss, Plaintiff concedes that Count Nine is barred because no notice of claim was filed.  Accordingly, Count Nine will be dismissed with prejudice.

Defendants' Motions to Dismiss do not make any specific arguments concerning the state-law claims asserted in Counts Seven and Eight, and the City of Tucson does not specifically request dismissal of Counts Seven and Eight.  (*See* Doc. 54 at 12 (requesting dismissal of Counts One, Two, and Six).)

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint (Docs. 54, 55) are **granted in part and denied in part as follows**:

1.  Count Four of Plaintiff's Second Amended Complaint is **dismissed without prejudice**.

2.  Count Nine of Plaintiff's Second Amended Complaint is **dismissed with prejudice**.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

3. Defendants' Motions to Dismiss are otherwise denied, but the allegations of constitutional injury and the compensable damages claim of Plaintiff's Second Amended Complaint are constrained by the limitations set forth in this Order.

Dated this 16th day of March, 2017.

Honorable Rosemary Marquez
United States District Judge