**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

LOUIS TAYLOR, a single man,<br>
*Plaintiff-Appellee,*<br><br>
v.<br><br>
COUNTY OF PIMA, a body politic;<br>
CITY OF TUCSON, a body politic,<br>
*Defendants-Appellants.*

</td><td>

No. 17-16980<br><br>
D.C. No.<br>
4:15-cv-00152-RM<br><br>
OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted August 15, 2018
San Francisco, California

Filed January 17, 2019

Before: Mary M. Schroeder, Eugene E. Siler,[*]
and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Graber;
Dissent by Judge Schroeder

---

[*] The Honorable Eugene E. Siler, Circuit Judge for the United States
Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

---

### Civil Rights

The panel dismissed, in part, an interlocutory appeal and affirmed, in part, the district court's order granting a motion to dismiss in an action brought pursuant to 42 U.S.C. § 1983 alleging violations of plaintiff's constitutional rights to due process and a fair trial.

In 1972, a jury convicted plaintiff in state court of 28 counts of felony murder on the theory that he had started a deadly fire at a Tucson hotel. In 2012, while still in prison, plaintiff filed a state post-conviction petition advancing newly discovered evidence that arson did *not* cause the hotel fire. The government and plaintiff entered into a plea agreement in 2013 under which the original convictions were vacated and, in their place, plaintiff pleaded no contest to the same counts, was resentenced to time served, and was released from prison. Plaintiff then brought his 42 U.S.C. § 1983 action against Pima County and the City of Tucson. The district court held that the County of Pima was not entitled to Eleventh Amendment immunity, but that plaintiff could not recover damages for wrongful incarceration.

The panel first gave deference to this court's previous order, issued by a motions panel, which denied the County's application for permission to appeal the denial of immunity pursuant to 28 U.S.C. § 1292(b). The panel further concluded that it lacked jurisdiction over the County's appeal under

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1291's collateral-order doctrine because the County appealed only from a denial of immunity from liability, as opposed to immunity from suit.

The panel exercised its discretion under 28 U.S.C. § 1292(b) to review the issue of whether plaintiff could recover compensatory damages for wrongful incarceration. The panel noted that a plaintiff in a § 1983 action may not recover incarceration-related damages for any period of incarceration supported by a valid, unchallenged conviction and sentence. The panel held that because plaintiff's valid 2013 conviction and sentence were the sole legal causes of his incarceration, he could not recover damages.

Concurring, Judge Graber wrote separately to explain that in *Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002), this court wrongly exercised jurisdiction over an interlocutory appeal in similar circumstances, and that, in an appropriate case, the court should overrule *Cortez* in its en banc capacity.

Dissenting in part, Judge Schroeder wrote that the panel's decision that plaintiff could not recover compensatory damages magnified an already tragic injustice. Judge Schroeder stated that plaintiff accepted the 2013 plea offer because his only alternative was to stay in prison and wait for his petition for collateral relief to wend its way through the courts, a process that could take years.

**COUNSEL**

Nancy J. Davis (argued), Deputy County Attorney, Civil Division, Pima County Attorney's Office, Tucson, Arizona, for Defendants-Appellants.

John P. Leader (argued), Leader Law Firm, Tucson, Arizona; Timothy P. Stackhouse, Peter Timoleon Limperis, and Lindsay E. Brew, Miller Pitt Feldman & McAnally P.C., Tucson, Arizona; for Plaintiff-Appellee.

---

**OPINION**

GRABER, Circuit Judge:

In 1972, a jury convicted Louis Taylor in Arizona state court of 28 counts of felony murder, on the theory that he had started a deadly fire at a Tucson hotel. In 2012, while still in prison, Taylor filed a state post-conviction petition advancing newly discovered evidence: an expert, using new and more sophisticated investigative techniques, determined that arson did *not* cause the hotel fire. The government disputed Taylor's new theory but nevertheless agreed to the following procedure. The government and Taylor entered into a plea agreement in 2013 under which the original convictions were vacated and, in their place, Taylor pleaded no contest to the same counts, was resentenced to time served, and was released from prison.

Taylor then sued Pima County and the City of Tucson in state court, under 42 U.S.C. § 1983, alleging violations of his constitutional rights to due process and a fair trial. With respect to the County, Taylor alleged unconstitutional

practices, policies, and customs regarding criminal prosecutions, including racially motivated prosecutions of African-Americans and a failure to train and supervise deputy prosecutors. The City removed the case to federal court, and the County consented to removal.

The County then moved to dismiss Taylor's operative complaint. Two of the County's arguments are relevant on appeal. First, the County argued that the relevant government officials acted on behalf of the State, not the County; the County asserted that, accordingly, it was entitled to "Eleventh Amendment immunity." Second, the County argued that, because all of Taylor's time in prison was supported by the valid 2013 criminal judgment, Taylor could not recover damages for wrongful incarceration.

The district court granted in part and denied in part the motion to dismiss. The court held that the County was not entitled to Eleventh Amendment immunity. But the court agreed with the County that Taylor could not recover damages for wrongful incarceration. The district court then certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), concluding that resolution of several legal issues "may materially advance the ultimate termination of the litigation."

Both parties applied to this court for permission to appeal. *See* 28 U.S.C. § 1292(b) (permitting an "application for an appeal hereunder"). The County sought permission to appeal the district court's denial of immunity, and Taylor sought permission to appeal the district court's ruling that he may not recover damages for wrongful incarceration.

A motions panel of this court denied both applications to appeal pursuant to § 1292(b).  But the motions panel construed the County's application, in part, as a timely notice of appeal from the denial of Eleventh Amendment immunity from suit.  *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002) (holding that we have appellate jurisdiction under the collateral-order doctrine over a denial of Eleventh Amendment immunity from suit (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993))).  The motions panel therefore ordered that the appeal proceed under the collateral-order doctrine of 28 U.S.C. § 1291.

In accordance with that order, the parties then filed briefs addressing the issue of the County's asserted immunity under the Eleventh Amendment.  At our request, the parties also filed supplemental briefs addressing whether Taylor may recover damages for wrongful incarceration.

A.  *Eleventh Amendment Immunity*

The County asserts that we have jurisdiction to review the district court's ruling on Eleventh Amendment immunity under the two jurisdictional provisions noted above: discretionary review under § 1292(b) and the collateral-order doctrine under § 1291.

"When a party seeks a section 1292(b) interlocutory appeal, the court of appeals must undertake a two-step analysis."  *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litig.*), 673 F.2d 1020, 1026 (9th Cir. 1982).  First, we determine whether the appeal meets the legal requirements of § 1292(b).  *Id.*  "If we conclude that the requirements have been met, we may, but need not, exercise

jurisdiction. The second step in our analysis is therefore to decide whether, in the exercise of the discretion granted us by the statute, we want to accept jurisdiction." *Id.*; *see* 28 U.S.C. § 1292(b) ("The Court of Appeals . . . may thereupon, *in its discretion*, permit an appeal to be taken from such order . . . ." (emphasis added)); *see also Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 906 (2015) (stating that a district court's certification under § 1292(b) "may be accepted or rejected in the discretion of the court of appeals"). Where, as here, the motions panel has decided the § 1292(b) issue in the first instance, "we give deference to the ruling of the motions panel." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318 (9th Cir. 1996). With respect to the question of Eleventh Amendment immunity, we see no reason to second-guess the motions panel's denial of interlocutory review under § 1292(b).

We therefore turn to whether we have appellate jurisdiction under § 1291. On preliminary review, the motions panel concluded that appellate jurisdiction appeared to be proper under the collateral-order doctrine because the County asserted "Eleventh Amendment immunity." "Although we defer to the ruling of the motions panel granting an order for interlocutory appeal, we have an independent duty to confirm that our jurisdiction is proper." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation marks omitted). For the reasons stated below, we now conclude that the collateral-order doctrine does not apply here.

In an interlocutory appeal, we have appellate jurisdiction under 28 U.S.C. § 1291 to consider claims of immunity from *suit*, but we lack such appellate jurisdiction to consider claims of immunity from *liability*. *SolarCity Corp. v. Salt River*

*Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725 (9th Cir. 2017).  Under *Puerto Rico Aqueduct*, 506 U.S. at 144–45, an ordinary claim of Eleventh Amendment immunity encompasses a claim of immunity from suit.  The rationale of *Puerto Rico Aqueduct* is that an interlocutory appeal is necessary to vindicate a state entity's entitlement to immunity from suit, which would be lost if a case were permitted to go to trial.  *Id.*  But an immunity from liability may be vindicated fully after final judgment, so the collateral-order doctrine does not encompass an interlocutory appeal from a denial of immunity from liability.  *See SolarCity*, 859 F.3d at 725 ("Unlike immunity from suit, immunity from liability can be protected by a post-judgment appeal.  Denials of immunity from liability therefore do not meet the requirements for immediate appeal under the collateral-order doctrine." (citation omitted)).

Before us, Taylor argued that the County, by consenting to removal of the case to federal court, waived Eleventh Amendment immunity.  *See Lapides v. Bd. of Regents of Univ. Sys.*, 535 U.S. 613, 624 (2002) (holding that the state's consenting to removal to federal court "waived its Eleventh Amendment immunity" with respect to state law claims); *Embury v. King*, 361 F.3d 562, 566 (9th Cir. 2004) (extending *Lapides* to federal law claims and announcing "a straightforward, easy-to-administer rule in accord with *Lapides*:  Removal waives Eleventh Amendment immunity.").  In response, the County cited decisions from other circuits that have held that removal waives immunity from suit but does not waive immunity from liability.  *See, e.g.*, *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013) ("We hold that although the Board's removal to federal court waived its immunity-based objection to a federal forum, the Board retained its immunity from liability . . . .").  The

County clarified that, in this case, it was asserting *only* immunity from liability. *See, e.g.*, Reply Brief at 17 ("Pima County asserted Eleventh Amendment immunity as a substantive bar to Taylor's claim . . . . In other words, it was asserted as *a bar to liability* rather than a bar to the federal court's ability to hear Taylor's claim." (emphasis added)). The County's asserted immunity from liability can be vindicated fully after final judgment; accordingly, the collateral-order doctrine of § 1291 does not apply here. *SolarCity*, 859 F.3d at 725.

In conclusion, we exercise our discretion under § 1292(b) to deny the County's application for permission to appeal, and we conclude that § 1291's collateral-order doctrine does not apply. We therefore dismiss the County's appeal.

## B. *Damages for Wrongful Incarceration*

### 1. *Appellate Jurisdiction*

Taylor asks us to exercise our discretion under § 1292(b) to reconsider the motions panel's denial of his application for permission to appeal. He asks that we review the district court's ruling that he may not recover compensatory damages for wrongful incarceration. In the highly unusual circumstances of this case, we agree to review that issue.

Taylor seeks other forms of relief, such as nominal damages, so the district court's ruling does not dispose of his case entirely. But Taylor emphasizes the importance of the incarceration-related damages. From a practical standpoint, the district court's ruling likely resolves a substantial portion of his case. Moreover, if we decline to review this issue now, he will not be able to obtain review until after discovery and,

possibly, a trial. That ordinary result from a denial of interlocutory review has, in Taylor's view, uncommon consequences here. Taylor notes that he is in his sixties, having spent most of his life—42 years—in prison. The entire basis of his complaint is that his decades in prison were unconstitutional. He characterizes having to wait additional years before this important issue is resolved as "yet another miscarriage of justice."

As noted, we ordinarily do not disturb a motions panel's determination under § 1292(b). *Kuehner*, 84 F.3d at 318. But we agree with Taylor that a departure from our ordinary practice is justified, both because his situation is rare and because our own rulings have added to the delay. We initially denied discretionary review but ordered briefing on the issue of Eleventh Amendment immunity, further forestalling final resolution of this case. We are persuaded to exercise our discretion under § 1292(b) to resolve this issue now.

### 2.  *Discussion*

Taylor seeks damages for wrongful incarceration stemming from the 42 years that he spent in prison. The Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), provides an important limitation on Taylor's claims. Under *Heck*, a plaintiff in a § 1983 action may not seek a judgment that would necessarily imply the invalidity of a state-court conviction or sentence unless, for example, the conviction had been vacated by the state court. *Id.* at 486–87. Here, Taylor's 1972 jury conviction has been vacated by the state court, so *Heck* poses no bar to a challenge to that conviction or the resulting sentence. But Taylor's 2013 conviction, following his plea of no contest, remains valid.

Accordingly, Taylor may not state a § 1983 claim if a judgment in his favor "would necessarily imply the invalidity of his [2013] conviction or sentence." *Id.* at 487. As the district court summarized, "*Heck* does not bar [Taylor] from raising claims premised on alleged constitutional violations that affect his 1972 convictions but do not taint his 2013 convictions." Recognizing that limitation, Taylor stresses that "[h]e challenges his 1972 prosecution, convictions and sentence and does not challenge his 2013 'no contest' pleas *or sentence*." (Emphasis added.)

Taylor alleges that his 1972 conviction and resulting sentence were plagued by constitutional violations and that those errors initially caused his incarceration. Critically, however, all of the time that Taylor served in prison is supported by the valid 2013 state-court judgment. The state court accepted the plea agreement and sentenced Taylor to time served. For that reason, even if Taylor proves constitutional violations concerning the 1972 conviction, he cannot establish that the 1972 conviction caused any incarceration-related damages. As a matter of law, the 2013 conviction caused the entire period of his incarceration.

Our decision in *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014), is instructive. A jury originally convicted the plaintiff of rape and murder. *Id.* at 758. His murder conviction—but not his rape conviction—was later vacated. *Id.* at 759 & n.1. He was later convicted, once again, of murder. *Id.* at 759. In his § 1983 action, we concluded that he was "not entitled to compensatory damages for any time he spent in prison" because he was "not imprisoned for any additional time as a result of his first, illegal conviction." *Id.* at 762. *Jackson* differs factually from this case in that Jackson's term of incarceration was supported fully by the original rape

conviction, which had not been overturned.  *Id.*  But the general principle applies equally here:  when a valid, unchallenged conviction and sentence justify the plaintiff's period of imprisonment, then the plaintiff cannot prove that the challenged conviction and sentence caused his imprisonment and any resulting damages.

The First Circuit reached the same result in a case that is factually indistinguishable from this one.  In *Olsen v. Correiro*, 189 F.3d 52, 55 (1st Cir. 1999), a jury found the plaintiff guilty of murder, but the state court later overturned that conviction.  The plaintiff then pleaded nolo contendere to manslaughter, and the state court sentenced him to time served.  *Id.*  In the plaintiff's § 1983 action challenging the constitutionality of the original jury conviction, the First Circuit held that he could not recover incarceration-related damages because he could not establish that the alleged constitutional violations caused his imprisonment.  *Id.* at 70. "Olsen's valid manslaughter conviction and sentence are the sole legal cause of his incarceration."  *Id.*  Similarly here, Taylor's valid 2013 conviction and sentence are the sole legal causes of his incarceration; he cannot recover damages for wrongful incarceration.

Our decision also accords with the Second Circuit's decision in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) (en banc).  A jury convicted the plaintiff of serious crimes but, seven years later, a state court vacated the conviction and sentence.  *Id.* at 124.  The plaintiff then pleaded guilty to a lesser crime, and a state court imposed a one-year sentence.  *Id.*  In the plaintiff's § 1983 action, the Second Circuit held that he could seek damages for wrongful incarceration for the years he spent in prison, *except for the one year that was supported by the valid criminal judgment*:

"Poventud cannot seek to collect damages for the time that he served pursuant to his plea agreement (that is, for the year-long term of imprisonment)." *Id.* at 136 (citing *Olsen*, 189 F.3d at 55). Applying the same principle here, Taylor cannot seek to collect damages for the time that he served pursuant to his plea agreement.

We agree with the analyses and conclusions of our sister circuits. A plaintiff in a § 1983 action may not recover incarceration-related damages for any period of incarceration supported by a valid, unchallenged conviction and sentence. We take no pleasure in reaching this unfortunate result, given Taylor's serious allegations of unconstitutional actions by the County. But we cannot disregard the limitations imposed by Congress and the Supreme Court on the scope of § 1983 actions.

**DISMISSED in part and AFFIRMED in part.** The parties shall bear their own costs on appeal.

---

GRABER, Circuit Judge, concurring:

I join the opinion in full. I write separately to explain my view that, in *Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002), we wrongly exercised jurisdiction over an interlocutory appeal in circumstances similar to those we face here and that, in an appropriate case, we should overrule *Cortez* in our en banc capacity.

"[O]nly States and arms of the State possess immunity from suits authorized by federal law." *N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006). Counties do not.

*Lincoln County v. Luning*, 133 U.S. 529 (1890). Here, the only appellant is Pima County. The County plainly is not a State, and it has not asserted that it is an "arm of the State." *See Mitchell v. L.A. Cty. Cmty. Coll. Dist.*, 861 F.2d 198, 201–02 (9th Cir. 1989) (describing the factors to consider when deciding whether a governmental entity is an "arm of the state"). Accordingly, the County is not entitled to Eleventh Amendment immunity. The analysis is truly that simple. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 756 (1999) ("[Sovereign] immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not[.]"); *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 729 (9th Cir. 2017) ("[M]unicipalities . . . may not rely on . . . Eleventh Amendment immunity."); *Eason v. Clark Cty. Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002) ("[T]he Eleventh Amendment does not extend to counties and municipal corporations.").

The County nevertheless seeks to assert Eleventh Amendment immunity and thereby to invoke our jurisdiction over this interlocutory appeal under the collateral-order doctrine. The County's attempt requires some explanation.

Plaintiff Louis Taylor has asserted claims against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which requires proof of a policy, practice, or custom by the County. He asserts that the actions of certain government officials amounted to a practice or custom by the County. The County's sole argument on

appeal is that the relevant officials were, in fact, working on behalf of the State, so the County cannot be liable.

The Supreme Court has recognized the viability of that argument: if the relevant officials were working on behalf of the State, then any practice or custom was a *State* practice or custom, not a *municipal* practice or custom. *McMillian v. Monroe County*, 520 U.S. 781 (1997). But that argument does *not* bear on whether the municipality has Eleventh Amendment immunity. Proof that the relevant officials did not work for the municipality defeats the plaintiff's case but by virtue of an ordinary failure to prove an element of a claim—here, the existence of a *municipal* policy, practice, or custom. If the defendant municipality is correct that the relevant official was a State official, then the plaintiff has failed to state a claim against the municipality. Eleventh Amendment immunity plays no role.

Nowhere in *McMillian* does the Supreme Court mention the Eleventh Amendment or immunity from suit. (Nor had the circuit court of appeals mentioned those doctrines. *McMillian v. Johnson*, 88 F.3d 1573 (11th Cir. 1996).) Not surprisingly, our cases, too, describe this doctrine in terms of whether the municipality was the actor, rather than in terms of sovereign immunity and the Eleventh Amendment. *See, e.g.*, *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("[T]he San Diego County district attorney was acting as a state official in deciding to proceed with Weiner's criminal prosecution. Weiner's § 1983 claim against the County, therefore, fails. *The County was not the actor; the state was*." (emphasis added)); *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) ("Jackson alleges, in effect, that the District Attorney's Office is liable for Murphy's unlawful prosecutorial conduct. The District Attorney's Office,

however, acts as a state office with regard to actions taken in its prosecutorial capacity, and is not subject to suit under § 1983. *Weiner*, 210 F.3d at 1030.")[1]; *United States v. County of Maricopa*, 889 F.3d 648, 651 (9th Cir. 2018) ("Because the traffic-stop policies at issue fall within the scope of a sheriff's law-enforcement duties, we conclude that Arpaio acted as a final policymaker for Maricopa County when he instituted those policies."); *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013) (lengthy analysis with no mention of the Eleventh Amendment or sovereign immunity); *Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005) (same); *Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir. 2001) ("The question is whether he is a policymaker on behalf of the state or the county; if he is a policymaker for the state, then the county cannot be liable for his actions.").

Most importantly, precisely the same issue as decided in *McMillian*—whether Alabama sheriffs act for the state or the county—arose in a case before the Supreme Court in 1995, two years before *McMillian*. In *Swint v. Chambers County Commission*, 514 U.S. 35, 41 (1995), the Supreme Court "granted certiorari to review the Court of Appeals' decision that Sheriff Morgan is not a policymaker for Chambers County." But the Court then ordered supplemental briefing on the issue of appellate jurisdiction. *Id.* In its opinion, the Supreme Court unanimously held that the court of appeals lacked appellate jurisdiction:

---

[1] The district court in *Jackson* had dismissed the case on the ground of the Eleventh Amendment, but we did not adopt that formulation; instead, we cited *Weiner*, which did not mention the Eleventh Amendment.

> The commission's assertion that Sheriff Morgan is not its policymaker does not rank, under our decisions, as an immunity from suit. Instead, the plea ranks as a "mere defense to liability." An erroneous ruling on liability may be reviewed effectively on appeal from final judgment. Therefore, the order denying the county commission's summary judgment motion was not an appealable collateral order.

*Id.* at 43 (citation omitted).

There is no doubt that the underlying substantive issue—whether the sheriff acted for the county or the state—was precisely the same two years later in *McMillian*, because the Court in *McMillian* noted that the Eleventh Circuit in *Swint* had reached the issue but that the Supreme Court had vacated the Eleventh Circuit's decision for lack of appellate jurisdiction. *McMillian*, 520 U.S. at 786 n.3 (citing "*Swint v. Wadley*, 5 F.3d 1435, 1450–51 (1993), *vacated for lack of appellate jurisdiction*, 514 U.S. 35 (1995)" (emphasis added)). Applying *Swint*, other circuit courts have held, unambiguously, that "[w]hen a county appeals asserting that a sheriff is not a county policymaker under § 1983, that presents a defense to liability issue for the county over which we do not have interlocutory jurisdiction." *Manders v. Lee*, 338 F.3d 1304, 1307 n.6 (11th Cir. 2003) (en banc); *see also Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) ("[T]he determination of which entity a defendant serves as policy maker presents a *liability* issue, not an *immunity* issue."); *accord Hunter v. Town of Mocksville*, 789 F.3d 389, 403 n.4 (4th Cir. 2015). Applying *Swint*'s rule here, we lack jurisdiction over the County's interlocutory appeal because

the County argues solely that the relevant officials were not County policymakers.

Our decision in *Cortez* overlooked this fundamental jurisdictional defect. *Cortez*, like this case, was an interlocutory appeal by a county from the denial of Eleventh Amendment immunity. 294 F.3d at 1188. We stated, correctly, that we had jurisdiction over the denial of Eleventh Amendment immunity, but we then reached the issue whether the sheriff acted on behalf of the county or the state, incorrectly characterizing that issue as pertaining to the Eleventh Amendment. *Id.* at 1188–89. We did not cite *Swint*. Accordingly, the rule in our circuit, unlike the rule in every other circuit, is that interlocutory appeals may be taken from a district court's rejection of a municipality's argument that the relevant government officials acted on behalf of the State and not the municipality.

We plainly erred in *Cortez*. In an appropriate case, we should undo this error in our en banc capacity.

---

SCHROEDER, Circuit Judge, dissenting as to Part B.2:

This decision magnifies an already tragic injustice. At the time of Tucson's Pioneer Hotel fire in 1972, Louis Taylor was an African American male of sixteen. Arrested near the hotel, he was convicted on the basis of little more than that proximity and trial evidence that "black boys" like to set fires. He has spent a lifetime of 42 years in prison following his wrongful conviction.

When he filed his state court petition the county that had prosecuted him did not even respond to his allegations of grievous deprivations of civil rights, including the withholding of evidence that the fire was not caused by arson at all, and the indicia of racial bias underlying the entire prosecution. Instead of responding, the county offered Taylor his immediate freedom in return for his pleading no contest to the original charges and agreeing to a sentence of time served.

He accepted the offer, since his only alternative was to stay in prison and wait for his petition for collateral relief to wend its way through the courts, a process that could take years. Because his original conviction had been vacated and all of the prison time he had served was as a result of that invalid conviction, he filed this action to recover damages for his wrongful incarceration.

Yet the majority holds that he can recover nothing. Why? Because it interprets the few cases with circumstances remotely similar to this one to require the admittedly unfair holding that his plea agreement somehow validates or justifies the original sentence that deprived Taylor of a meaningful life.

In my view our law is not that unjust.

Our Circuit law actually supports the award of damages for the time Taylor served in prison as a result of an unlawful, and now vacated conviction. Our leading case is *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014), where, as here, the plaintiff's original conviction was vacated on habeas review. Hence, a claim for damages resulting from wrongful incarceration was not barred by *Heck v. Humphrey*. *Jackson*,

749 F.3d at 760–61.  The majority acknowledges the same is true here.

In *Jackson* the plaintiff could not recover damages, however, because the wrongful conviction had not yet resulted in any wrongful incarceration.  This was because he was still serving other, earlier imposed sentences and never began serving the term imposed as a result of the unlawful conviction.  In other words, there was a lack of causation.  *Id.* at 762.  Taylor, by contrast, served decades of imprisonment as a result of his first, vacated conviction, so there is no lack of causation here.  Under *Jackson*, he should recover.  That Taylor later, in order to gain prompt release, pleaded no contest to the charges and to a sentence of time served, does not undo the causal sentencing chain set in motion after the original, invalid conviction.  The majority's discussion is not consistent with *Jackson*.

The Second Circuit's decision in *Poventud* also supports reversal.  *Poventud v. City of N.Y.*, 750 F.3d 121 (2d Cir. 2014) (en banc).  Poventud's conviction was vacated on collateral attack, on the basis of a *Brady* violation, and a new trial was ordered.  *Id.* at 124.  He then pleaded guilty to a lesser charge, pursuant to a plea agreement that dismissed all other charges and stipulated to a one-year sentence, with time already served.  *Id.*  The Second Circuit held that Poventud's *Brady*-based claim was not *Heck*-barred insofar as it related to his first conviction.  *Id.* at 124–25, 134–36.  As the en banc court explained, were Poventud to win at trial in his civil rights suit, "the legal status of his [second conviction] would remain preserved."  *Id.* at 138 (*quoted by Jackson*, 749 F.3d at 761).  He was permitted to pursue a claim of damages for the time he served beyond the one year plea agreement stipulation.  Judge Lynch's concurrence is also instructive, as

it focuses on the injustice of relying on the subsequent guilty plea to deny Poventud a remedy for the unfairness of the first trial. *Id*. at 138–47. The majority's decision ignores such injustice in this case.

Taylor's case is even more compelling than those of *Jackson* and *Poventud* because his first conviction was so deeply tainted that we now know the disastrous fire may not have been set by anyone, and the prosecution was without adequate foundation from the beginning. He won more than a new trial, but virtual exoneration. His situation is therefore also different from the situation in *Olsen v. Correiro*, 189 F.3d 52 (1st Cir. 1999), where the plaintiff's murder conviction was overturned but he was subsequently convicted of manslaughter.

Far from being the product of a new, constitutionally-conducted second trial, Taylor's second conviction was the product of his desperate circumstances. In his 60's, he faced acceptance of the plea offer or waiting years for a habeas petition to work its way through the courts. We should not tolerate such coercive tactics to deprive persons of a remedy for violations of their constitutional rights. To say such a plea justifies the loss of 42 years, as the majority asserts, is to deny the reality of this situation and perpetuate an abuse of power that § 1983 should redress.

Our court has spoken to this before:

> "When prosecutors betray their solemn obligations and abuse the immense power they hold, the fairness of our entire system of justice is called into doubt and public

confidence in it is undermined." *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005).

So has the Supreme Court:

> "It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby. Indeed, Congress enacted § 1983 precisely to provide a remedy for such abuses of official power." *Owen v. City of Independence*, 445 U.S. 622, 654 (1980).

I therefore regretfully and respectfully dissent.