**BARBARA LAWALL**
**PIMA COUNTY ATTORNEY**
**CIVIL DIVISION**
Nancy J. Davis, SBN 017197
Clayton R. Kramer, SBN 034258
Deputy County Attorneys
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Telephone: 520-724-5700
Nancy.Davis@pcao.pima.gov
Clayton.Kramer@pcao.pima.gov
*Attorneys for Pima County*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Taylor, a single man,<br><br>          Plaintiff,<br><br>v.<br><br>Pima County, a body politic; et al.,<br><br>          Defendants. | No. 15-CV-00152-TUC-RM<br><br>**DEFENDANT PIMA COUNTY'S MOTION FOR PROTECTIVE ORDER** |

Defendant Pima County moves for a protective order precluding or limiting discovery under Rule 26(c)(1), Fed. R. Civ. P. A protective order is necessary because Taylor is attempting to relitigate whether he is guilty of felony murder, which necessarily implies the invalidity of his 2013 no contest plea, convictions, and sentence. Moreover, Taylor is attempting to depose witnesses that have no personal or relevant knowledge of the claims at issue. Further, many of the topics included in Taylor's proposed deposition under Rule 30(b)(6), Fed. R. Civ. P., are objectionable, and despite Pima County's repeated requests, he has refused to limit its scope. Taylor's conduct establishes good cause for the Court to issue a protective order to prevent undue burden and expense.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   BACKGROUND**

As originally filed, Taylor's lawsuit raised claims under 42 U.S.C. § 1983 related to his 1970s prosecution on 28 counts of felony murder. After extensive litigation at the motion to dismiss stage, the Court concluded he stated four viable *Monell* claims against Pima County. In its ruling, this Court expressly noted that "*Heck* bars Plaintiff from premising his claims on the alleged constitutional injuries of being wrongfully charged, convicted, and imprisoned" (Doc. 63 at 10-11; *see also* Doc. 82 at 2). The Ninth Circuit affirmed this conclusion when it rejected Taylor's attempt to seek incarceration-related damages. *See Taylor v. County of Pima*, 913 F.3d 930, 935 (9th. Cir. 2019).

In Taylor's initial disclosure statement (IDS), he identified several theories of damages based on his claim of actual innocence. Based on his IDS, Taylor seeks hedonic and emotional damages caused by his allegedly wrongful conviction, and he seeks to argue the Pioneer Hotel fire was not caused by arson. He also seeks damages on a theory that he was forced to take the no contest plea even though both he and his lawyers avowed that the plea was entered knowingly, voluntarily, and intelligently, and the state court entered a finding that Taylor "knowingly, voluntarily, and intelligently enter[ed] a plea of no contest to the charges set forth in the plea agreement, and that there [was] a factual basis for the plea" (Doc. 6-2 at 9-10, 14-15).

Although the majority of the witnesses named in Taylor's IDS are problematic,[1] the following specific witnesses are currently at issue in this motion: Wayne Cummings (who

---

[1] For example, in addition to the issues discussed at length herein, several witnesses are included to support claims in the proposed amended complaint that this Court has not yet ruled are proper in this action. Moreover, Taylor indicates that he intends to pursue a theory based on the testimony of Robert Jackson, which formed the factual basis for Taylor's 2013 convictions and cannot be challenged without implying the convictions are invalid (*see* Doc 6-1 at 65-74; Doc. 6-2 at 48).

did the Tucson Fire Department's 2012-13 arson review); Robert Cannon ("Jerry Taylor's" probation officer in June of 1972, who worked with the probation officer assigned to Louis Taylor in 1972); the Arson Review Committee (ARC) members retained by the Arizona Innocence Project who drafted the report for Taylor's 2012 Rule 32 Petition (Gregory Gorbett, David Eliassen, Patrick M. Kennedy, John J. Lentini and Dennis W. Smith); and Rubin Salter (a criminal defense lawyer that believes TPD had discriminatory policies against African Americans in the 1970s).

Taylor also served Pima County with a notice of deposition under Rule 30(b)(6) enumerating 53 areas of inquiry (*see* Doc. 122). The County agreed to produce designees for most of the topics even though they are duplicative of Taylor's Requests for Admission and Production (which were timely answered) and are objectionable as such under Rule 26(b)(2)(c). But the County objected to producing a witness for topics 1, 23, 29, 37-38, 40-42, 47, 50, and 51. Despite multiple communications about these objections, Taylor refused to limit or modify the scope of his notice.

Subsequently, the parties filed a joint report outlining their disputes, and the Court later granted Defendants leave to file a motion for protective order under Rule 26(c)(1). As required by Rule 26(c)(1), Pima County certifies that it "has in good faith conferred or attempted to confer" with Taylor to resolve the disputes enumerated in the simultaneously filed Motion for Protective Order. Despite these attempts, the parties were unable to resolve the disputes without court action. The County now requests the intervention of the Court.

**II.     ARGUMENT**

Under Rule 26(c)(1), a court may, for good cause, issue an order to protect a party from an undue burden or expense by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." As described in detail below, several of Taylor's proposed depositions and lines of inquiry are improper and do not

further his permissible claims. Because they would serve no purpose but to impose an undue burden on Pima County, the Court should issue a protective order forbidding inquiry into certain matters or limiting the scope of Taylor's proposed discovery.

**A. Discovery related to the cause of the fire and Taylor's alleged innocence or belief that he is innocent should be forbidden.**

Taylor has named several members of the ARC in his IDS that he asserts will testify that the Pioneer Hotel fire would not be classified as arson using modern fire science. He has already indicated he intends to depose at least one of those individuals. Similarly, Taylor has indicated that he intends to depose Wayne Cummings, who conducted a review of the Pioneer Hotel fire on behalf of the Tucson Fire Department in 2012 to 2013 in response to Taylor's petition for post-conviction relief. It also appears Taylor intends to have Cummings testify about the cause of the fire and the fact that the destruction of physical evidence over the intervening decades precluded Cummings from being able to make a fresh determination about arson in 2012. Taylor has also indicated that he intends to depose Cyril Holmes, the State of Arizona's expert witness in the 1972 trial, but he has not agreed to limit that deposition to Holmes's role in the trial. Indeed, it appears that Taylor intends to depose Holmes about whether the Pioneer Hotel fire was caused by arson, even though Holmes was deposed in 2012 as part of Taylor's preparation of his Rule 32 petition.

Similarly, Taylor has named several witnesses in his IDS that apparently will testify that they "believe" Taylor is innocent. Already, Taylor has sought to depose Robert Cannon, who was an employee of the probation department at the time Taylor was sentenced in 1972. According to Taylor's IDS, Cannon will testify that the probation department believed that Taylor was innocent, and that Cannon believed Taylor was a thief, but not an arsonist. For the following reasons, any line of inquiry or discovery about the cause of the fire or Taylor's alleged innocence should be forbidden.

### i. *Heck* bars Taylor's theory of damages.

This Court's prior rulings, based on *Heck v. Humphrey*, 512 U.S. 477 (1994), preclude Taylor from raising any claim that he was "wrongfully charged, convicted, and imprisoned" (Doc. 63 at 10-11; *see also* Doc. 81 at 2). Taylor's new theory of damages relies on a claim that the Pioneer Hotel fire was not caused by arson and that Taylor is innocent, which is precisely the type of theory that is barred by *Heck*, Taylor's 2013 plea, and the Court's previous rulings (*see* Doc. 63 at 10-11; Doc. 81 at 2, 10). *See Taylor v. County of Pima*, 913 F.3d 930, 935 (2019).

Taylor stands convicted of 28 counts of felony murder predicated upon the commission of arson. By now alleging that the fire was not caused by arson, Taylor is calling into question the validity of the factual basis supporting his conviction (*see* Doc. 6-1 at 65-74). Similarly, by having witnesses opine that he is innocent (or that they believe he is innocent), Taylor is advancing a claim that he was wrongfully convicted and sentenced to 42 years in prison.[2] A § 1983 action is not the appropriate vehicle for Taylor to challenge his 2013 no contest plea, the resulting adjudications of guilt by the state court of felony murder predicated on arson, or the accompanying sentence that was imposed by the trial court based on those findings. Taylor abandoned his innocence claim in the appropriate arena, namely his post-conviction proceedings in state court. Indeed, he has conceded this point in his recent briefing on the issue (*see* Doc. 137). He cannot properly raise it now as part of this action.

---

[2]Such opinions would be inadmissible at trial because none of the proposed witnesses are alleged to have personally observed the events on the night of the fire. *See* Fed. R. Evid. 602 (requiring that witness has personal knowledge before testifying to matter); Fed. R. Civ. P. 701 (requiring lay opinion to be rationally based on witness's perception). However, the Court should put an end to this inquiry before trial to prevent the undue burden and expense associated with conducting discovery into areas that will have no bearing on Taylor's permissible claims.

### ii. Judicial estoppel bars Taylor's theory of damages.

Taylor's argument and proposed discovery are also barred under the doctrine of judicial estoppel. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position," particularly if it prejudices the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Judicial estoppel is not confined to inconsistent positions in the same litigation. Instead, the Ninth Circuit has "restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)).

Taylor entered a plea agreement and was convicted of 28 counts of felony murder. As the benefit of that bargain, he was sentenced to time served (*see* Doc. 6-2 at 8–10, §§ IV-V; Doc. 40 at 11, ¶ 41). During his sentencing and change of plea hearing, Taylor's counsel admitted that "the prosecution would be able to offer into evidence" a factual basis for the judgment of guilt as the state had described (*see* Doc. 6-2 at 48:8–13). Taylor's counsel also "agree[d]" that the Report by the Tucson Fire Department "provide[d] sufficient evidence to allow the Court to accept the stipulation with respect to a Rule 32 finding and proceed on the plea agreement" (*id.* at 31:17–21). The Court then accepted the plea and entered a judgment of guilt, finding it was valid and supported by a sufficient factual basis, i.e., that the fire was the product of arson (*see id.* at 15; Doc. 40 at 11, ¶¶ 39–41).

Taylor's current position, which is the only support for his attempts to conduct discovery, is in direct contradiction to his position in his criminal proceedings. Taylor conceded, as a matter of law, that the Pioneer Hotel fire was caused by arson when he entered his 2013 plea agreement and allowed the court to adjudicate him guilty of murder.

In other words, Taylor authorized the Court to treat him as though he was guilty of that offense. *See North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (citing *Hudson v. United States*, 272 U.S. 451 (1926)).[3] The state court relied on this concession in adjudicating Taylor guilty. Taylor should be estopped from claiming the fire was not caused by arson and that he is innocent.

### iii. Res judicata and collateral estoppel bar Taylor's theory of damages.

Further, as the case currently stands, Taylor's new theory of damages would also be barred by the related doctrines of res judicata and collateral estoppel. "Res judicata, or claim preclusion, 'provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). "The related doctrine of collateral estoppel, or issue preclusion, provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Id.* (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). "Both doctrines apply to criminal and civil proceedings, and both require privity between the parties." *Id.* (citations omitted).

Here, Taylor has raised several claims relating to his prosecution by the State of Arizona, and he has contended that the County may be held liable for claims stemming

---

[3]In *Hudson*, the Supreme Court discussed the history of no contest pleas. There, the Court noted that, in and of themselves, no contest pleas do not create an estoppel but are "an admission of guilt for the purposes of the case." 272 U.S. at 455. But *Hudson* does not discuss instances where the Court explicitly finds a factual basis to support the plea and the defendant agrees that the plea is supported by that factual basis, as the state court and Taylor did here. Because of this distinction, Taylor's plea and convictions do create an estoppel. *Cf. Chavez v. City of California*, 2020 WL 1234503, at *7 (E.D. Cal. Mar. 13, 2020) (relying on Ninth Circuit authority, preclusive effect of no contest plea turns on whether civil claims imply invalidity of "the factual basis of the criminal conviction").

from his prosecution. In advancing this theory, Taylor has essentially contended that the County was in privity with the State of Arizona. Although the County has disputed that it may be held liable for the actions of the State of Arizona (or the conduct of a state actor) for conduct that occurred in a criminal prosecution, this Court has allowed Taylor's suit to continue past the motion to dismiss stage to see if Taylor can show that the alleged constitutional violations were the result of county policy, practice, or custom carried out by a county actor as opposed to a state actor.[4]

As a result of his 2013 convictions, the state court entered a final judgment on the merits that Taylor is guilty of 28 counts of felony murder caused by arson. In doing so, the state court necessarily entered judgment on the ultimate issue of fact at issue in those proceedings: whether Taylor was guilty of starting the Pioneer Hotel fire that caused the death of 28 people. As a result of the 2013 convictions, any claim related to the cause of the fire or Taylor's guilt should be barred in subsequent litigation. Yet, Taylor's current attempts at discovery center around a theory that the Pioneer Hotel fire was not caused by arson and that he is actually innocent. Because of the state court's findings, his attempts to conduct discovery in furtherance of these claims should be forbidden.

### iv. Taylor's claim for damages based on his own belief in his innocence should be precluded for the same reasons.

Taylor's current claims for emotional damages are inseparable from his claim that he was wrongfully convicted. Indeed, as to each theory of damages, Taylor seeks to prove that he is innocent, which is one and the same as arguing he was wrongfully arrested, charged, and convicted. In order to establish emotional damages, Taylor must be able to separate his claim for damages from any claim that he is innocent. He has not done so. To

---

[4]To be clear, the County does not concede that it may be held liable for the actions of the State of Arizona in prosecuting Taylor or that it was in privity with the state. Rather, it continues to maintain that it is an improper party to this action.

date, Taylor has not provided any authority allowing for emotional damages under analogous circumstances, and Pima County is aware of none.

Instead, in factually analogous cases to the circumstances presented here, the plaintiff's permissible claims for damages have been substantially limited by *Heck*. For example, in *Jackson v. Barnes*, the Ninth Circuit concluded that the plaintiff could seek nominal or punitive damages without implicating *Heck* because his conviction had been overturned due to the improper admission of *Miranda* evidence at the first trial. 749 F.3d 755, 762 (9th Cir. 2017). But *Jackson* did not suggest that emotional damages could be recovered, ostensibly because those damages would have been based on a theory that implied the invalidity of the plaintiff's valid conviction. *See generally id.* Nor did *Jackson* suggest that emotional damages based on Mr. Jackson's belief that he was factually innocent would be allowed. *Id.* Significantly, *Jackson* is the most closely analogous Ninth Circuit authority to the facts of this case. And to the extent Taylor argues the alleged constitutional violations at issue in this suit caused his wrongful incarceration for 42 years, *Heck* and *Taylor* are dispositive of the claim.

The Ninth Circuit's limitation on damages makes sense, particularly considering Taylor's current arguments. It is impossible for Taylor to suggest he is innocent without implying that he was wrongfully convicted. However, as noted repeatedly, Taylor is precluded from advancing any claims grounded in an argument that he was wrongfully convicted. *See Taylor*, 913 F.3d at 935. The fact that Taylor now seeks emotional damages based on his own belief that he is innocent is nothing more than an impermissible argument that he was wrongfully convicted. Like the plaintiff in *Jackson*, Taylor should be limited to nominal damages, the only damages he has demonstrated he can plausibly establish without implying the invalidity of his 2013 convictions.[5] The Court should therefore

---

[5]Unlike the plaintiff in *Jackson*, Taylor may not recover punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

preclude discovery based on Taylor's belief that he is innocent, his claims of actual innocence, or that the fire was not arson.

**B. Discovery related to witnesses without personal knowledge should be precluded.**

Taylor has signaled his intent to depose witnesses that have no personal knowledge about the events at issue in the case. Taylor's claims deal with the alleged policies, practices, and customs of Pima County and the City of Tucson during Taylor's criminal prosecution in the 1970s. He has now indicated his intent to depose witnesses that were not involved in that prosecution, and he cannot establish how those individuals would further his claims.

Specifically, Taylor now seeks to depose Rubin Salter, who is a criminal defense attorney that will apparently opine that the Tucson Police Department had racially discriminatory practices against African Americans in the 1970s.[6] Based on what Taylor has provided, Salter would lack any basis for making this assertion. *See* Fed. R. Evid. 602 (requiring that witness has personal knowledge before testifying to matter). To the County's knowledge, Salter was never employed by TPD and he has not been disclosed as an expert on TPD's policies specifically or even police policies in general. Nor does it appear that Salter had any involvement in Taylor's criminal case. Without any foundation to opine on the practices of TPD, Salter's deposition cannot plausibly lead to admissible evidence. The burden of conducting his deposition would thus be undue and result in unwarranted expense.

---

[6]Taylor also indicates that Salter worked for the Pima County Attorney's Office in the late 1960s with Horton Weiss. But Taylor does not indicate that Salter will be testifying about his experience with Weiss.

**C. Taylor's Rule 30(b)(6) deposition should be limited.**

Finally, Taylor's proposed Rule 30(b)(6) deposition of Pima County, (*see* Doc. 122), which is duplicative of his prior discovery requests, includes several topics that are objectionable as broad or improperly directed towards other entities. After the Court directed the parties to attempt to resolve their dispute about the Rule 30(b)(6) deposition, the County agreed to produce a representative for most areas of inquiry in the notice, even though each was objectionable. The County also informed Taylor that, due to the passage of time, the County did not have any records or institutional knowledge about his proposed areas of inquiry. Despite this knowledge and the County's concessions, Taylor refused to limit or modify the notice, and several areas of inquiry are still in dispute.

The County objects to producing a witness for topics 23, 29, 37-38, 40-42, and 47 because they pertain solely to non-parties (*see* Doc. 122). For example, several topics seek information from the County Attorney, or from Horton Weiss, who is deceased, about matters that occurred 50 years ago.[7] Rule 30(b)(6) allows a party to depose *an entity* via a designee, not individuals. The County should not be charged with responding to questions about what information specific individuals knew or did not know, or the actions taken by specific individuals—as opposed to information known by and actions taken by the County itself.

The County objects to topics one, 29, and 51 as overly broad and vague because they are not described with particularity as required by Rule 30(b)(6) (*see* Doc. 122). The rule requires the entity being deposed to designate an individual to answer on its behalf. But in order to allow the entity to designate an appropriate individual, the individual serving a notice of deposition is specifically required to describe the areas of inquiry in the notice with reasonable particularity. As to the topics noted above, Taylor's notice fails to

---

[7]The County Attorney who served from 1970-1972 is also deceased.

do so, and he has not clarified or limited the scope of his areas of inquiry in response to the County's objections, so his deposition should not include these topics.

The County objects to topic 50 because Taylor has failed to disclose who Gustov Hudson is and how he relates to this action—even though Taylor lists him as witness in his disclosure statement (*see* Doc. 122). Rule 26(b)(1) governs the scope of discovery, and in pertinent part, it limits discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case." In order to determine whether information falls within the scope of the rules, several factors should be considered, including: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Even though Taylor has provided supplemental disclosure statements since receiving the County's objection to Gustov Hudson, the only information Taylor has provided is that, "Mr. Hudson will testify regarding any relevant knowledge and information he has." To the County's knowledge, Gustov Hudson was not involved in Taylor's 1970s prosecution. And without more information, it is impossible to determine whether discovery related to Hudson has any bearing on Taylor's permissible claims. Because Taylor has not provided this information, the deposition should not include inquiry related to Hudson.

### III. CONCLUSION

The Court should issue a protective order appropriately forbidding inquiry into certain areas and limiting discovery. Taylor is precluded from implying that he is innocent or that the Pioneer Hotel fire was not caused by arson. Any discovery related to those arguments is a waste of time and resources, and it imposes an undue burden and expense on the County. Any discovery related to individuals that had no relation to Taylor's

prosecution in the 1970s would likewise result in undue burden and expense, because it will not lead to relevant evidence. Taylor's misguided attempt to unreasonably expand the scope of this litigation should be rejected and his attempts at improper discovery should be precluded.

RESPECTFULLY SUBMITTED September 4, 2020.

>BARBARA LaWALL
>PIMA COUNTY ATTORNEY
>
>
>By *s/Clayton R. Kramer*
>    Nancy J. Davis
>    Clayton R. Kramer
>    Deputy County Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John P. Leader
THE LEADER LAW FIRM, P.C.
405 W. Cool Dr., Suite 107
Tucson, AZ 85704
john@leaderlawaz.com
*Attorney for Plaintiff*

J Stanley G. Feldman
Peter T. Limperis
Timothy P. Stackhouse
HARALSON, MILLER PITT FELDMAN & MCANALLY P.L.C.
One South Church Ave., Suite 900
Tucson, AZ 85701
sfeldman@hmpmlaw.com
plimperis@hmpmlaw.com
tstackhouse@hmpmlaw.com
*Co-counsel for Plaintiff*

Michelle Saavedra
Dennis McLaughlin
Principal Assistant City Attorneys
OFFICE OF THE CITY ATTORNEY
City of Tucson
P.O. Box 27210
Tucson, AZ 85726
Michelle.Saavedra@tucsonaz.gov
Dennis.McLaughlin@tucsonaz.gov
*Attorneys for Defendant City of Tucson*


By: C. Kramer