**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Taylor,<br><br>           Plaintiff,<br><br>v.<br><br>County of Pima, et al.,<br><br>           Defendants. | No. CV-15-00152-TUC-RM<br><br>**ORDER** |

Pending before the Court is Defendant City of Tucson's Motion for Reconsideration (Doc. 173) of the Court's February 16, 2021 Order (Doc. 167), as well as Defendants' Motions to Dismiss (Docs. 177, 180) Plaintiff's Third Amended Complaint ("TAC") (Doc. 169).

**I.    Background**[1]

As alleged in the TAC, Plaintiff was convicted in 1972 of 28 counts of murder in connection with a fire that he was accused of starting at the Pioneer Hotel in Tucson, Arizona. (Doc. 169 at 3-5.)[2] In 2012, he filed a state-court petition for post-conviction relief premised upon a report by fire experts who had concluded that the Pioneer Hotel fire could not be classified as arson. (*Id.* at 9.) The Pima County Attorney's Office stipulated to Plaintiff's request for post-conviction relief on the condition that Plaintiff enter a no-contest plea to charges related to the fire. (*Id.* at 9-10.) On April 2, 2013,

---

[1] More detailed recitations of the factual and procedural history of this case are set forth in previous Orders of this Court, including the February 16, 2021 Order (Doc. 167).
[2] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

Plaintiff's 1972 convictions were vacated, he was convicted based on his no-contest plea and sentenced to time-served, and he was released from prison after spending approximately 42 years incarcerated. (*See id.* at 10.)

On February 16, 2021, this Court granted Plaintiff's Motion for Leave to File TAC and partially denied Defendants' Motion for Protective Order. (Doc. 167.) Plaintiff's TAC includes a request for a declaratory judgment expunging Plaintiff's 2013 convictions "as unconstitutional, and thus invalid." (Doc. 169 at 26.) In granting Plaintiff leave to file the TAC, this Court determined that "Plaintiff's factual allegations concerning his 2013 post-conviction proceedings are sufficient to raise an inference that this case may be one of the 'unusual or extreme cases' in which expungement" is appropriate under *Shipp v. Todd*, 568 F.2d 133 (9th Cir. 1978) (per curiam) and its progeny. (Doc. 167 at 8; *see also id.* at 10 n.8.)

## II.   Defendants' Motion to Dismiss Request for a Declaratory Judgment

Defendant Pima County moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's request for a declaratory judgment expunging his 2013 convictions (Doc. 177), and Defendant City of Tucson joins in the Motion (Doc. 180). Defendants concede that *Shipp* and its progeny recognize federal courts' inherent power to expunge criminal records "in certain circumstances," but argue that such circumstances do not exist here. (Doc. 177 at 6-8.) Defendants further argue that the factual allegations of the TAC are insufficient to state a plausible claim that Plaintiff's 2013 convictions are unconstitutional. (*Id.* at 9-11.) Defendants ask that the Court either dismiss Plaintiff's request for declaratory relief or certify the issue for interlocutory appeal. (*Id.* at 12-13; *see also* Doc. 180 at 7-8.) In response, Plaintiff argues that this Court has already considered and rejected the arguments raised by Defendants. (Doc. 178 at 1, 6-10.) Plaintiff further argues that coercing a defendant to plead guilty or no-contest to unprovable charges in order to gain his freedom violates due process. (*Id.* at 2-6, 10-13.)

As an initial matter, the Court finds that Pima County's Motion to Dismiss is properly construed as a motion for reconsideration of the portion of the Court's February

16, 2021 Order finding that the factual allegations of Plaintiff's TAC are sufficient to state a claim for expungement under *Shipp* and its progeny. Defendants contend that the Motion to Dismiss is not seeking reconsideration of the February 16, 2021 Order, because in that Order the Court considered the TAC under the standard for evaluating futility under Federal Rule of Civil Procedure 15, which Defendants argue is distinct from the current Rule 8 pleading standard applicable to a Rule 12(b)(6) motion to dismiss. (Doc. 177 at 4.) Specifically, Defendants contend that an amendment is futile under Rule 15 only if a plaintiff can prove no set of facts in support of the amendment which would entitle him to relief, but that the no-set-of-facts standard is no longer synonymous with Rule 8's pleading standard. (*Id.* (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987)).) Defendants further contend that this Court did not previously apply Rule 8's pleading standard to the TAC but merely determined "that a request to expunge a state court conviction *could* be maintained under *some* hypothetical set of facts." (Doc. 186 at 1-2 (emphasis in original).)

It is true that the Ninth Circuit has indicated that an amendment is futile under Rule 15 only if no set of facts can be proved under the amendment that would constitute a valid and sufficient claim, but it has also indicated that the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6). *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Courts previously applied the no-set-of-facts standard when evaluating the sufficiency of a pleading under Rule 12(b)(6), but that standard has since been abrogated. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009). Under the current standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Contrary to Defendants' assertion, this Court did not apply the no-set-of-facts standard in evaluating futility under Rule 15 in its February 16, 2021 Order, nor was its

ruling limited to the finding that "a request to expunge a state court conviction *could* be maintained under *some* hypothetical set of facts." (Doc. 186 at 1 (emphasis in original).)[3] This Court affirmatively found that the factual allegations of Plaintiff's TAC are sufficient to state a plausible claim for expungement under *Shipp*. (*See* Doc. 167 at 8 ("Plaintiff's factual allegations concerning his 2013 post-conviction proceedings are sufficient to raise an inference that this case may be one of the 'unusual or extreme cases' in which expungement under *Shipp* is appropriate"); *see also id.* at 10 n.8 ("when considered in conjunction with the other factual allegations of Plaintiff's complaint the proposed amendment is sufficient to state a claim for expungement under *Shipp*") (internal citation omitted).) Defendants are asking this Court to reconsider that finding.

"Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." LRCiv 7.2(g)(2). Defendants did not request reconsideration of this Court's *Shipp* analysis within fourteen days of the filing of this Court's February 16, 2021 Order, nor have they shown good cause for their delay. Pima County argues in its Reply that it has shown good cause because judicial economy and the preservation of party resources favored raising its arguments in a motion to dismiss rather than a motion for reconsideration. (Doc. 186 at 2 n.1.) But if Defendants believed it was more efficient to urge reconsideration of the Court's February 16, 2021 Order in a motion to dismiss rather than a motion for reconsideration, they could have sought advance leave of Court to do so. Instead, Defendants allowed the deadline for seeking reconsideration of the February 16, 2021 Order to expire without notifying the Court of their intent to seek reconsideration of that Order's *Shipp* analysis.[4]

Even if the Court were to excuse the untimeliness of Defendants' arguments,

---

[3] Defendants are correct that this Court cited *DCD Programs* in its February 16, 2021 Order (Doc. 177 at 4; Doc. 186 at 1), but the Court cited that case for the proposition that futile amendments should not be allowed (Doc. 167 at 4); the Court never referred to the no-set-of-facts standard.

[4] Defendant City of Tucson filed a timely Motion for Reconsideration of a different portion of the February 16, 2021 Order (*see* Doc. 173 and discussion *infra*), but nowhere in that Motion did the City of Tucson indicate it was seeking or planning to seek reconsideration of the Court's *Shipp* analysis.

- 4 -

1  Defendants have not shown that reconsideration of the Court's *Shipp* analysis is
2  appropriate. Motions for reconsideration should be granted only in rare circumstances,
3  *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995), and mere
4  disagreement with a previous order is an insufficient basis for reconsideration, *see Leong*
5  *v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). Motions for
6  reconsideration will ordinarily be denied "absent a showing of manifest error or a
7  showing of new facts or legal authority that could not have been brought to [the Court's]
8  attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Motions for
9  reconsideration may not "repeat any oral or written argument made by the movant in
10 support of or in opposition to the motion that resulted in the Order." *Id.*

11         Defendants' Rule 12(b)(6) briefs impermissibly repeat arguments that Defendants
12 already raised in the briefing on Plaintiff's Motion to Amend. Defendants have not
13 presented new facts or legal authority that they could not have presented earlier with
14 reasonable diligence, nor have they shown that the Court committed manifest error in
15 finding that Plaintiff's TAC states a plausible claim for expungement under *Shipp* and its
16 progeny. Defendants argue that *Shipp* "has clearly become a relic under current law"
17 (Doc. 194 at 4), but *Shipp* has been repeatedly re-affirmed by the Ninth Circuit, and this
18 Court has no authority to overrule it. Defendants further argue that *Shipp* authorizes only
19 expungement of an arrest record and does not authorize expungement of an outstanding
20 conviction, particularly where a plaintiff makes a concomitant damages request. (Doc.
21 177 at 6-7.) But the plaintiff in *Shipp* sought to have his state conviction declared
22 "invalid on federal constitutional grounds" and expunged, and the Ninth Circuit
23 remanded "for a determination of the question of expungement." 568 F.2d at 133-34.
24 Subsequent cases applying *Shipp* have affirmed federal courts' inherent power to
25 expunge convictions. *See, e.g.*, *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991)
26 (per curiam). And Defendants fail to cite any case addressing a request for expungement
27 under *Shipp* that holds such a request is improper when a plaintiff makes a concomitant
28 damages request.

In arguing that the TAC fails to state a plausible claim that Plaintiff's 2013 convictions are unconstitutional, Defendants concede that this Court previously found the factual allegations sufficient to state a claim for expungement under *Shipp*; nevertheless, they argue that "the Court can and should consider those allegations in context." (Doc. 177 at 9-10.) Defendants do not dispute that a coerced plea violates due process, *see Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986) (citing *Brady v. United States*, 397 U.S. 742, 750 (1970)), but they argue that a plea is not coerced merely because a defendant's motivation for accepting the plea is to avoid incarceration. (Doc. 186 at 9-10.) Defendants are correct that a plea is not coerced within the meaning of due process solely because a defendant accepted the plea in order to avoid the possibility of a lengthier sentence following a guilty verdict after a trial. *See Brady*, 397 U.S. at 749-53. But that situation is distinguishable from the case at hand. Here, the factual allegations of the TAC, accepted as true for purposes of Rule 12(b)(6), raise a reasonable inference that the Pima County Attorney leveraged Plaintiff's incarceration on an existing sentence in order to coerce him into pleading no-contest to charges unprovable at a re-trial, potentially for the purpose of avoiding a civil damages judgment for wrongful conviction. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it," *Brady*, 397 U.S. at 749, and the authority cited by Defendants is simply not analogous to the unusual factual circumstances presented here.

To the extent the parties dispute whether Plaintiff can prove that his 2013 plea was coerced or that the prosecution lacked evidence to prove arson, the Court finds those arguments premature. The Court also notes that both Defendants and Plaintiff rely on exhibits attached to their briefs, including a newspaper article and an investigatory report. (*See, e.g.*, Doc. 178 at 18-60; Doc. 186-1.) "As a general rule," the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," except materials attached to the Complaint, "evidence on which the Complaint necessarily relies," and matters of judicial notice. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (internal quotations omitted). The Court may not take

judicial notice of facts subject to reasonable dispute. *Id.* at 999. At least some of the material referenced in and attached to the parties' briefs is inappropriate for consideration on a Rule 12(b)(6) motion. To consider the material, the Court would need to convert Pima County's Motion to Dismiss into a motion for summary judgment, but it declines to do so given the prematurity of the parties' arguments concerning whether evidence supports Plaintiff's request for declaratory relief. Discovery in this case is ongoing and the parties will have an opportunity to file summary judgment motions addressing the merits of Plaintiff's claims after the close of discovery.

Finding no basis for reconsideration of the *Shipp* ruling in its February 6, 2021 Order, the Court will deny Defendants' Motion to Dismiss Plaintiff's request for a declaratory judgment. The Court will further deny Defendants' request to certify the *Shipp* issue for interlocutory appeal. Interlocutory orders are typically not immediately appealable, and certification under 28 U.S.C. § 1292(b) is appropriate only in "rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). The Court has already certified issues for interlocutory appeal in this case, resulting in years of delay, and it does not find that a further interlocutory appeal at this juncture is appropriate under the standard set forth in § 1292(b).

**III.   City of Tucson's Motion for Reconsideration and Motion to Dismiss State-Law Claims**

The City of Tucson filed a timely Motion for Reconsideration asking this Court to reconsider the following portions of its February 16, 2021 Order:

> The Court also notes that discovery relating to the cause of the Pioneer Hotel fire is relevant to Plaintiff's state-law claims in Counts Seven and Eight of the Second Amended Complaint, which assert that the City of Tucson negligently investigated the fire and arrested Plaintiff without probable cause or reasonable suspicion. (Doc. 40 at 30-31.) The Court previously declined to dismiss Counts Seven and Eight of the Second Amended Complaint (Doc. 63 at 20), and Defendants did not seek reconsideration of that ruling; accordingly, Plaintiff is entitled to seek discovery relevant to those claims.
>
> . . .

- 7 -

> Whether the Tucson Police Department had racially discriminatory practices against African Americans in 1972 is relevant to the claims remaining in this litigation, including the state-law claim asserted in Count Eight of the SAC.

(Doc. 173 at 1-2 (quoting Doc. 167 at 13-14, 15).)

The City argues that the above portions of the Court's Order are factually erroneous because the Court has never specifically ruled for or against the City on the state-law claims asserted in Counts Seven and Eight of Plaintiff's Second Amended Complaint ("SAC"), including on whether the counts are barred by A.R.S. § 12-821 and 12-821.01. (*Id.* at 4.) The City further argues that the Court's ruling is inconsistent with its prior holding that Plaintiff's allegations of constitutional harm are barred by the statute of limitations to the extent they are premised on Plaintiff being arrested without probable cause or unlawfully interrogated. (*Id.*) Finally, the City asserts that the Court committed legal error by relying upon the allegations of Plaintiff's SAC to determine the permissible scope of discovery when it had granted Plaintiff leave to file a TAC. (*Id.* at 5.) The City argues that, because the TAC supersedes the SAC, the Court should have postponed ruling on Defendants' Motion for Protective Order until the "final contours" of the TAC had been determined. (*Id.*)

Contrary to the City's arguments, this Court did not commit a factual error in its February 16, 2021 Order; the Court accurately stated that Plaintiff's state-law claims against the City of Tucson had not been dismissed and remained pending. The City of Tucson had previously filed a Motion to Dismiss Plaintiff's SAC, but it failed in that Motion to request dismissal of Plaintiff's state-law claims, and the Court therefore declined to grant the Motion as to those claims. (Doc. 63 at 20-21.) The Court did not previously have an occasion to analyze the merits of the state-law claims against the City of Tucson, or of any defenses thereto, because the City of Tucson did not request the dismissal of those claims until it filed its pending Motion to Dismiss Plaintiff's TAC.

The Court also rejects the City of Tucson's argument that it committed legal error

in relying upon the allegations of Plaintiff's SAC to determine the permissible scope of discovery. When it issued its February 16, 2021 Order, the Court had reviewed Plaintiff's proposed TAC and was aware that the TAC would re-assert the same state-law claims against the City that Plaintiff had asserted in his SAC. (*Compare* Doc. 40 at 30-31 (Counts Seven and Eight of SAC), *with* Doc. 169 at 25-26 (Counts Six and Seven of TAC).) The City of Tucson has not shown any manifest error in the Court's decision not to *sua sponte* postpone ruling on Defendants' Motion for Protective Order.

Nevertheless, the Court agrees that subsequent events have affected the reasoning of the portions of the Court's February 16, 2021 Order at issue in the City of Tucson's Motion for Reconsideration. After the Court issued that Order, Plaintiff filed his TAC, the City of Tucson moved to dismiss the state-law claims asserted against it in the TAC, and Plaintiff conceded that the claims are subject to dismissal for failure to comply with Arizona's notice-of-claim statute. (Doc. 180; Doc. 189.) Given Plaintiff's non-opposition to the City of Tucson's Motion to Dismiss the state-law claims, the Court will dismiss Counts Six and Seven of Plaintiff's TAC. Plaintiff is not entitled to discovery that is relevant solely to those claims; however, discovery relating to the cause of the Pioneer Hotel fire and whether the Tucson Police Department had racially discriminatory practices against African-Americans in 1972 remains relevant to Plaintiff's pending federal claims.

**IT IS ORDERED** that Defendant Pima County's Motion to Dismiss (Doc. 177) is **denied**.

**IT IS FURTHER ORDERED** that Defendant City of Tucson's Motion for Reconsideration (Doc. 173) is **partially granted and partially denied**, as set forth above.

. . . .

. . . .

. . . .

. . . .

1 **IT IS FURTHER ORDERED** that Defendant City of Tucson's Motion to Dismiss (Doc. 180) is **granted** as to Counts Six and Seven of Plaintiff's Third Amended Complaint but **otherwise denied**.  Counts Six and Seven of Plaintiff's Third Amended Complaint (Doc. 169) are **dismissed with prejudice**.

Dated this 4th day of June, 2021.

_____
Honorable Rosemary Márquez
United States District Judge