**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Taylor,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>County of Pima, et al.,<br><br>　　　　　Defendants. | No. CV-15-00152-TUC-RM<br><br>**ORDER** |

Pending before the Court is Defendant Pima County's Motion to Exclude Testimony of Plaintiff's Expert Andrew Pacheco. (Doc. 350.)[1] Plaintiff Louis Taylor ("Taylor") filed a Response in opposition (Doc. 353; *see also* Doc. 379), and Pima County filed a Reply (Doc. 357).

**I.　　Background**

In 1972, Taylor was convicted of 28 counts of murder in connection with a deadly fire at the Pioneer Hotel in Tucson, Arizona. (Doc. 340-9 at 12.)[2] In 2012, Taylor filed a Petition for Post-Conviction Relief in which he alleged, in relevant part, that: (1) new developments in fire science undermined the evidence of arson introduced during his trial; and (2) the prosecution—led by Deputy Pima County Attorney Horton Weiss ("Weiss")—committed misconduct, in part by suppressing a report by Truesdail Laboratories (the "Truesdail Report") that found no evidence of accelerants in debris

---

[1] Other pending motions will be resolved separately.
[2] All record citations refer to the docket and page numbers generated by the Court's electronic filing system.

samples from the Pioneer Hotel. (Doc. 6-1 at 2-63.) Deputy Pima County Attorney Rick Unklesbay ("Unklesbay") and arson prosecutor Malena Acosta ("Acosta") reviewed Taylor's Petition for Post-Conviction Relief. (Doc. 335 at 62 ¶¶ 624, 631; Doc. 367 at 61 ¶¶ 624, 631.) The Pima County Attorney thereafter filed a memorandum averring that, if a review of the original evidence in Plaintiff's case using new advances and techniques in fire investigation were to be considered "newly discovered evidence" for purposes of post-conviction relief, "the state of the evidence [was] such that the State would be unable to proceed with a retrial, and [Taylor's] convictions would not stand." (Doc. 6-1 at 73.) The Pima County Attorney offered Taylor a plea agreement in which Taylor pled no contest to the original 28 counts of murder in exchange for a time-served sentence. (*Id.* at 73-74.) A change-of-plea hearing was held on April 2, 2013, and Taylor was released from prison that day. (Doc. 335 at 70-71 ¶¶ 697, 705-707; Doc. 367 at 71-72 ¶ 697, 705-707.)

Taylor thereafter filed the above-captioned lawsuit. (Doc. 1.) Taylor sues Defendants Pima County and the City of Tucson under 42 U.S.C. § 1983, seeking monetary damages for alleged constitutional violations arising from his 1972 convictions and a declaratory judgment expunging his 2013 convictions as unconstitutional. (Doc. 169.) In relevant part, Taylor alleges that Defendants deliberately withheld the Truesdail Report and procured false testimony from trial witness Robert Jackson ("Jackson"). (*Id.* at 7-9, 22-24.) Taylor also argues that Defendants suppressed exculpatory testimony from Tucson Police Department Officer Claus Bergman ("Bergman") and that the prosecution failed to disclose alternative suspects, including an individual named Mario Corral ("Corral"). (*Id.* at 3-4, 8-9; Doc. 349 at 8-11, 17.)

**II.     Andrew Pacheco's Expert Reports**

Taylor disclosed an expert report by attorney Andrew Pacheco on July 27, 2021 and a rebuttal expert report by Pacheco on November 22, 2021. (Doc. 350 at 3; *see* Docs. 350-2 and 350-3 at 2-26.) Pacheco is currently a partner in the law firm of Ryan Rapp Underwood & Pacheco PLC. (Doc. 350-2 at 17.) He previously worked as a prosecutor

for the Maricopa County Attorney's Office and the United States Attorney's Office, and in various capacities in the Arizona Attorney General's Office. (*Id.* at 16-17.) After reviewing documents provided by Plaintiff's counsel, Pacheco summarized evidence in this case and rendered the following opinions:

1. Under A.R.S. § 11-5532, the Pima County Attorney was the State of Arizona's agent in Taylor's prosecution.
2. Pima County is legally responsible for all relevant conduct of the Pima County Attorney.
3. The Pima County Attorney is a policymaker for Pima County.
4. The prosecution violated Taylor's constitutional rights by withholding the Truesdail Report, failing to disclose the existence of an alternative suspect, suppressing favorable testimony from Bergman, and engaging in an *ex parte* conversation with the trial judge.
5. Pima County and City of Tucson employees conspired to violate Taylor's constitutional rights by intimidating Jackson into testifying falsely at Taylor's trial.
6. Pima County knew of Weiss' history of unethical conduct at the time he was prosecuting Taylor's case but nevertheless continued to employ him as a prosecutor.
7. Any prosecutor's office with which Pacheco is familiar would have noted and acted upon a published appellate opinion criticizing a prosecutor by name, such as the Arizona Supreme Court's criticism of Weiss in *Arizona v. Mercer*, 473 P.2d 803, 806 (1970).
8. The Pima County Attorney's Office had a policy of deliberate indifference to prosecutorial misconduct, as evidenced by its failure to take any corrective action related to Weiss.
9. Pima County failed to train its employees, including but not limited to Weiss.

10. The constitutional violations perpetrated by Weiss resulted from Pima County's failure to adequately train and supervise its employees and from its deliberate indifference to prosecutorial misconduct.
11. Liability is appropriate under *Monell v. Department of Social Services. of New York City*, 436 U.S. 658 (178) and *City of Canton v. Harris*, 489 U.S. 378 (1989).
12. Taylor's 1972 convictions were unconstitutional.
13. It is unconstitutional and improper for a prosecutor to require a defendant to plead guilty or no contest when the prosecution knows it cannot prove the crime beyond a reasonable doubt.
14. Taylor's 2013 convictions are unconstitutional.
15. The Pioneer Hotel fire was not arson.
16. Taylor is innocent.

(*Id.* at 17-50.)

In his rebuttal report, Pacheco summarizes additional evidence and renders the following additional opinions:

1. Former Pima County Attorney Barbara LaWall ("LaWall") improperly instructed Unklesbay regarding the scope of his review of Taylor's Petition for Post-Conviction Relief.
2. The Pima County Attorney's Office violated Taylor's due process rights by not investigating the prosecutorial misconduct alleged in Taylor's Petition for Post-Conviction Relief and by requiring Taylor to plead no contest to 28 counts of murder in exchange for his release from prison.
3. Any experienced prosecutor would understand that an exonerated defendant poses a greater risk of financial exposure to the prosecutor's office than a convicted felon.
4. Financial considerations likely contributed to Pima County's decision to require a no-contest plea from Taylor in 2013.

5. Pima County's position that the Pioneer Hotel fire was arson is not scientifically defensible.

6. The prosecution violated *Brady v. Maryland* by failing to disclose evidence concerning Corral's involvement in the Pioneer Hotel fire.

7. No reasonable prosecutor could conclude that Taylor committed arson and murder.

(Doc. 350-3 at 2-26.)

## III. Legal Standard

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule imposes a special gatekeeping obligation on the trial court to ensure that "the reasoning or methodology" underlying an expert's testimony is valid and can properly "be applied to the facts in issue." *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592-93 (1993). The gatekeeping function articulated in *Daubert* applies to "all expert testimony," including testimony based on "technical" and "other specialized" knowledge in addition to testimony based on "scientific" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999). For purposes of Rule 702, the term "'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

"Expert testimony should be excluded if it concerns a subject improper for expert testimony" such as "one that invades the province of the jury." *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (internal quotation marks omitted). Determining the credibility of witnesses, resolving evidentiary conflicts, and drawing reasonable inferences from proven facts are functions within the exclusive province of

- 5 -

the jury. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam) (internal quotation marks omitted). "Resolving doubtful questions of law" and instructing the jury on the law are functions within the "exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (internal quotation marks omitted). Accordingly, expert witnesses cannot opine on other witnesses' credibility, *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006), nor can they tell the jury what result to reach, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). Furthermore, although an expert's "opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law*,"* *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation omitted, emphasis in original). Expert testimony may constitute an impermissible legal conclusion if the terms used by the expert witness "have a specialized meaning in law" or "represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017).

Expert testimony is also inadmissible if it simply "presents a narrative of the case which a lay juror is equally capable of constructing." *Taylor v. Evans*, No. 94-CV-8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997); *see also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-cv-205-MMA(MDD), 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020) ("expert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence").

**IV. Discussion**

Pima County argues that Pacheco's opinions are unreliable because they are based on speculation and subjective beliefs rather than any identifiable methodology; because Pacheco reviewed only documents cherry-picked by Plaintiff's counsel and failed to consider contradictory evidence; and because the opinions do little more than summarize Plaintiff's legal arguments. (Doc. 350 at 7-13; Doc. 357 at 4-7.) Pima County also argues that Pacheco's opinions will not assist the trier of fact in understanding the

evidence or determining a fact in issue because Pacheco constructs a factual narrative based on his own perception of documentary evidence, makes improper credibility determinations, and offers impermissible legal conclusions. (Doc. 350 at 13-17; Doc. 357 at 7-11.)

In response, Taylor argues that Pacheco is qualified and has specialized knowledge that will assist the jury, that Pima County's Motion is untimely because it was not filed before the close of discovery, that *Daubert* is inapplicable, and that Pima County's challenges to Pacheco's testimony are matters for cross-examination. (Doc. 353.) Taylor denies that Pacheco will opine on witness credibility or that his testimony will "include legal conclusions that are in doubt." (*Id.* at 7.)[3]

As an initial matter, the Court rejects Taylor's argument that Pima County's Motion is untimely. A deadline for filing motions in limine and *Daubert* motions has not yet been set, much less expired, and any attempt to file *Daubert* motions before the close of discovery would have been premature. The Court also rejects Taylor's contention that *Daubert* is inapplicable, as the Supreme Court has made clear that *Daubert* applies not only to expert testimony based on "scientific" knowledge but also to expert testimony based on "other specialized" knowledge. *Kumho Tire Co.*, 526 U.S. at 141, 147.[4]

The Court agrees with Pima County that the vast majority of Pacheco's opinions are inadmissible. In large part, Pacheco's expert reports simply construct factual narratives based on the documentary evidence that Pacheco reviewed; such expert testimony is inadmissible because a jury is equally capable of constructing factual

---

[3] Counsel for Pima County did not certify in the Motion that Pima County conferred in good faith prior to filing the Motion. *See* LRCiv 7.2(l) ("No opposed motion in limine will be considered or decided unless moving counsel certifies therein that the movant has in good faith conferred or attempted to confer with the opposing party or counsel in an effort to resolve disputed evidentiary issues that are the subject of the motion.") However, Taylor does not make any arguments concerning LRCiv 7.2(l) in his Response, and LRCiv 7.2(l) does not necessarily preclude consideration of Pima County's *Daubert* arguments. *See Alsadi v. Intel Corp.*, No. CV- 16-03738-PHX-DGC, 2019 WL 4849482, at *1 n.1 (D. Ariz. Sept. 30, 2019) (finding LRCiv 7.(l) inapplicable to *Daubert* motions).
[4] In arguing that *Daubert* is inapplicable, Plaintiff cites *McKendall v. Crown Control Corp.*, 122 F.3d 803, 806 (9th Cir. 1997). (Doc. 353 at 4.) But as the Ninth Circuit has specifically recognized, "*McKendall*'s holding that 'the *Daubert* factors are relevant only to testimony bearing on scientific knowledge . . .' has been overruled." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 987 (9th Cir. 2020).

narratives based on the documentary evidence and witness testimony presented at trial.[5] Pacheco's factual narratives also impermissibly rely upon implicit credibility determinations and Pacheco's resolution of evidentiary conflicts. In addition, Pacheco offers opinions that impermissibly invade the province of the Court to instruct the jury on the applicable law and the province of the jury to apply that law to the facts and determine what result to reach. *See Diaz*, 876 F.3d at 1199.

Pacheco offers four potentially admissible opinions: (1) that any prosecutor's office with which he is familiar would immediately note and act upon a published appellate opinion that criticized a prosecutor by name (Doc. 350-2 at 19, 38); (2) that it is improper for a prosecutor to require a defendant to plead no contest when the prosecutor knows guilt cannot be proven beyond a reasonable doubt (*id.* at 33-34); (3) that LaWall improperly instructed Unklesbay regarding the scope of his review of Taylor's Petition for Post-Conviction Relief; and (4) that any experienced prosecutor would understand that an exonerated defendant poses a greater risk of financial exposure to the prosecutor's office than a convicted felon (Doc. 350-3 at 20). The remainder of the opinions set forth in Pacheco's report are inadmissible.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

---

[5] Pacheco's report also contains factual inaccuracies. For example, Pacheco falsely states that Taylor was convicted of 29 counts of murder (Doc. 350-2 at 2-3), when Taylor was actually convicted of 28 counts of murder (Doc. 340-9 at 12). In addition, Pacheco falsely states that the prosecution's expert Cyrillis Holmes testified at Taylor's trial that an accelerant was used to start the Pioneer Hotel Fire. (Doc. 350-2 at 22, 25-26.) Pacheco even opines that the "presence of accelerants" was a "lynchpin" of Holmes's opinion that the Pioneer Hotel fire was caused by arson. (*Id.* at 25.) In actuality, Holmes testified that the evidence did not indicate an accelerant was used to start the Pioneer Hotel fire. (*See* Doc. 338-1 at 43; Doc. 338-5 at 139-140; Doc. 338-6 at 100.)

**IT IS ORDERED** that Defendant's Motion to Exclude Testimony of Plaintiff's Expert Andrew Pacheco (Doc. 350) is **partially granted and partially denied**, as set forth above.

Dated this 24th day of March, 2023.

_____
Honorable Rosemary Márquez
United States District Judge