MILLER, PITT, FELDMAN & MCANALLY, P.C.
Stanley G. Feldman, SBN 000838
Peter Timoleon Limperis, SBN 019175
Timothy P. Stackhouse, SBN 30609
One S. Church Ave., Ste. 1000
Tucson, AZ 85701-1620
(520) 792-3836
sfeldman@mpfmlaw.com
plimperis@mpfmlaw.com
tstackhouse@mpfmlaw.com
me@mpfmlaw.com

THE LEADER LAW FIRM, P.C.
John P. Leader, SBN 012511
405 W. Cool Dr. Ste. 107
Tucson, AZ  85705
Phone (520) 575-9040
Fax (520) 575-9340
john@leaderlawaz.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nina Alley,<br><br>                      Plaintiff,<br><br>vs.<br><br>Pima County, a body politic; The City of Tucson, a body politic,<br><br><br><br>                      Defendants. | No.  CV-15-00152-TUC-RM<br><br>**PLAINTIFF'S SUPPLEMENTAL STATEMENT OF FACTS IN SUPPORT OF SUPPLEMENTAL SUMMARY JUDGMENT BRIEF RE: DEPOSITIONS OF JACK CHIN AND LAURA CONOVER**<br><br>**(Filed Under Seal)** |

Plaintiff files the following Statement of Facts in support of his Supplemental Summary Judgment Brief.

1.     Chin, Conover, and perhaps the entire CSIU team, concluded Taylor did not have a fair trial in 1972 and should have been exonerated in 2013.

*Deposition Laura Conover*, *at 118:3-4; 318:4–23 (Ex. 1); Deposition Gabriel "Jack" Chin at 120:12-14 (Ex. 2)*.

2.     But Conover concluded Arizona's narrow postconviction relief statute did not allow her to file the Rule 24.2 Motion. (*Ex. 1 at 120:3–14*).

3.     In 2013 the County admitted that proof beyond a reasonable doubt was lacking.   Chin drafted and Conover endorsed a Rule 24.2 motion to dismiss Taylor's criminal charges in late May 2022. (*Ex. 1 at 58:6-20; Ex. 2 at 68:12 – 69:23; Ex. 3, 5.30.22 Rule 24.2 Motion*).

4.     That motion relied, in part, on PCAO's 2013 concession that proof beyond a reasonable doubt was lacking. (*Ex. 3 at 3, 23*).

5.     The ABA agreed and concluded "there was - and is - no proof beyond a reasonable doubt to support" Taylor's convictions.  (Doc 343-3 at 3).  Chin and Conover agreed with the ABA position. *(Ex. 1 at 23:22-25:7; Ex. 2 at 120:7-9)*.

6.     Chin and Conover testified that the charges against Taylor should have been dismissed in 2013. *(Ex. 1 at 94:15-96:8, 118:5-16; Ex. 2 at 65:14–16.)*

7.     Conover said there was CSIU consensus that requiring a no contest plea was wrong.  *(Ex. 1 at 319:4-23)*.

8.     But, they said, Arizona's postconviction relief remedies are narrower than those available in other states and limited what PCAO could do *sua sponte* in 2022.  According to Conover, Arizona postconviction alternatives are "very, very limited, very narrow." (*Ex. 1 at 70:19–22*).

9.     In other states, prosecutors have broader and "unfettered" postconviction remedies available. (*Ex. 1 at 70:10–14*).

10.     But under Arizona's rules, even a conceded absence of proof beyond a reasonable doubt does not authorize a prosecutor to seek exoneration under Rule 24.2 (e)(1).  Taylor must *prove his innocence by "clear and convincing evidence."*  Chin explained the impossible situation Taylor is in:

> Because it's a harsh and tricky point, but even if all the evidence has fallen apart, evidence that the evidence is weak is different from evidence that the person is innocent.  It's very, very hard -- **it's a brutal standard to say you've got to make some kind of showing that the person is actually innocent.**

*(Ex. 2 at 171:17–23)* (emphasis added).

11.     The burden of proof beyond a reasonable doubt is the cornerstone of our criminal justice system and demanded by our Constitution. Chin explained:

> The idea being if you're not convinced that there's proof beyond a reasonable doubt, what our system demands is that the person be let go, rather than, "Well, there's significant or some proof of a really significant crime, so we'll say that's the equivalent of proof beyond a reasonable doubt of a somewhat less significant offense or somewhat less significant penalty."

*(Ex. 3 at 117:14–21)*.

12.     As Conover described at her deposition, members of the former administration filed three bar complaints against her. *(Ex. 1 at 165:24–25)*.

13.     The first was prior to the 2020 primary election, when Amelia Cramer (formerly of the LaWall administration) filed a frivolous bar complaint (the claim was investigated and dismissed within 48 hours).  *(Ex. 1 at 165:2–18)*.

14.     Conover explained that this allegation was groundless: "the former administration had a bizarre misapprehension that I somehow actually represented Louis Taylor."  *(Ex. 1 at 213:25–214:6)*.

15.     She explained the lengthy steps she took to confirm she had no conflict,

which included retaining a renowned ethics expert, who determined there was no conflict. *(Ex. 1 at 213:14–24, 227:21–25)*.

16.     While the former administration insisted the conflict check was "routine," two prominent prosecutors publicly commented how unusual it was.  Both former Maricopa County Attorney Rick Romley and former Arizona Attorney General Terry Goddard were "shocked" by the prior administration's "conflict" determination. *(Ex. 4, Arizona Daily Star article March 6, 2021.)*

17.     Upon learning Conover would move to vacate, another prior administration member – David Berkman – warned the Board of Supervisors that Taylor was going to be exonerated and that it would "cost the County a ton."  (Doc. 575-7).

18.     He suggested that Acedo "make a stink" and that perhaps the Board could "embarrass" Conover into doing "the right thing," urging that "[t]he Board can't let this go."  (Doc. 575-7).

19.     Acedo "made a stink."  First, he placed an "agitated" call to Conover on May 27, 2022, after learning of her intent to file the Rule 24.2 Motion.  *(Ex. 1 at 162:3 – 163:5).*

20.     Prior to that call, Conover had unequivocally decided to file the Motion and began notifying "stakeholders." *(Ex. 3 at 73:10–14.)*

21.     Conover described the phone call she received from Acedo:

> His volume and speech pattern increased dramatically. He was agitated. He was zealously advocating for his cause. He said— he seemed to be beside himself that this could possibly be happening and indicated that I couldn't undertake this because I was the county attorney, and it didn't align with what he wanted,

and he referenced that he thought the state bar would have—
would have something to say about this.
*(Ex. 1 at 162:2–163:5).*

22.     This call was the "singular fact that changed the direction of the" Rule 24.2 Motion.  *(Ex. 2 at 91:24-92:2, 93:6–13).*

23.     Three days later—the day Conover met with the CSIU team to finalize the 24.2 Motion—Acedo wrote to Conover, who forwarded the letter to her ethics counsel, Scott Rhodes, asking for "a bit of help." (Ex. 5, *5/30/22 – 6/3/22 Email chain).*

24.     That same day, Conover also sent to the CSIU team the opinion of her ethics expert regarding the purported conflict. (Doc. 575-10 at No. 33) On June 3, Acedo wrote directly to Rhodes. *(Ex. 5, 5/30/22- 6/3/22 Email Chain).*

25.     Public records show Acedo also contacted the Arizona Attorney General seeking help in preventing Conover from taking any action on Taylor's criminal case.  *(Ex. 6, 6/6/22 Email).*

26.     Acedo last discussed the case with the AG's office on June 28; on June 29, he sent a letter directly to Rhodes. *(Ex. 7, 6/28/22 Email; Ex. 7, 6/29/22 Email).*

27.     Conover, uneasy about her "no further action" decision, consulted her ethics counsel. On his advice, she included multiple mentions of the prior administration's dubious conflict determination in her press release. *(Ex. 9, 7/26/22 email, Ex. 10; 8/3/22 Email.)*

28.     At her deposition, Conover repeatedly asked why she hadn't received the Declarant's sealed affidavit sooner.  *(Ex. 11 at 192:20-23, 193:14-16, 193:23-194:10, 195:8-25; 205:1-9)*

1        DATED November 2, 2023

2                                    MILLER, PITT, FELDMAN & McANALLY, P.C.

3                                    */s/ Peter Timoleon Limperis*_____
                                     Stanley G. Feldman
4                                    Peter Timoleon Limperis
                                     Timothy P. Stackhouse
5

6                                    THE LEADER LAW FIRM, P.C.

7                                    */s/ John P. Leader*_____
                                     John P. Leader
8

9        I hereby certify that on  November 2, 2023, I electronically transmitted the
attached document to the Clerk's Office using the CM/ECR System for filing and
10   transmittal of a Notice of Electronic Filing to the following CM/ECR registrants:

11

12   Daniel P. Struck
     Nicholas D. Acedo
13   Jacob B. Lee
     STRUCK LOVE BOJANOWSKI & ACEDO, PLC
14   3100 West Ray Road, Suite 300
     Chandler, Arizona 85226
15   Phone: (480) 420-1600
     dstruck@strucklove.com
16   nacedo@strucklove.com
     jlee@strucklove.com
17   *Attorneys for Defendant Pima County*

18
     Michelle Saavedra
19   Dennis McLaughlin
     Principal Assistant City Attorneys for
20   Michael G. Rankin
     CITY OF TUCSON
21   PO Box 27210
     Tucson, AZ 85726-7210
22   *Attorneys for Defendant City of Tucson*

23

24

25

                                    6