MILLER, PITT, FELDMAN & MCANALLY, P.C.
Stanley G. Feldman, SBN 000838
Peter Timoleon Limperis, SBN 019175
Timothy P. Stackhouse, SBN 30609
One S. Church Ave., Ste. 1000
Tucson, AZ 85701-1620
(520) 792-3836
sfeldman@mpfmlaw.com
plimperis@mpfmlaw.com
tstackhouse@mpfmlaw.com
me@mpfmlaw.com

THE LEADER LAW FIRM, P.C.
John P. Leader, SBN 012511
405 W. Cool Dr. Ste. 107
Tucson, AZ  85705
Phone (520) 575-9040
john@leaderlawaz.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nina Alley,<br><br>　　　　　Plaintiff,<br>vs.<br>Pima County, a body politic; The City of Tucson, a body politic,<br><br>　　　　　Defendants. | No.  15-cv-00152-TUC-RM<br><br>PLAINTIFF'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEF RE: DEPOSITIONS OF JACK CHIN AND LAURA CONOVER |

Plaintiff's summary judgment motion seeks declaratory judgment under *Shipp* that the 2013 "no contest" pleas/convictions be voided.  This would allow the Pima County Attorney to take a fresh look at Taylor's original Petition for Post Conviction Relief.

**A.　　Taylor's situation is "unusual and extreme"**

The court recognized its authority under *Shipp v. Todd*, 568 F.2d 133 (9th Cir.

1978), to expunge Taylor's convictions based on 2013 misconduct. (Doc 167, at 7-8). Expungement under *Shipp* is appropriate in "unusual or extreme cases," and the court has already found that Taylor's Third Amended Complaint "raise[s] an inference" that expungement is appropriate due to infirmities in the County's 2013 conduct. (Doc 167 at 8) The Chin and Conover depositions transform this inference into certainty.

Chin, Conover, and perhaps the entire CSIU team, concluded Taylor did not have a fair trial in 1972 and should have been exonerated in 2013. *(Supplemental Statement of Fact ("SSOF") ¶1; SSOF Ex. 1, Deposition Laura Conover*, at 118:1-4; 318:4–23; *SSOF Ex. 2, Deposition Gabriel "Jack" Chin at 120:12-14)*. But Conover concluded Arizona's narrow post-conviction relief statute did not allow her to file the Rule 24.2 Motion. (*SSOF ¶2; SSOF Ex. 1 at 120:3–14*.)

In 2013 the County admitted that proof beyond a reasonable doubt was lacking. Chin drafted and Conover endorsed a Rule 24.2 motion to dismiss Taylor's criminal charges in late May 2022. *(SSOF ¶ 3, Ex. 1 at 58:6-20; Ex. 2 at 68:12 – 69:23; Ex. 3, 5/30/22 Rule 24.2 Motion.)* That motion relied, in part, on PCAO's 2013 concession that proof beyond a reasonable doubt was lacking. (*SSOF ¶ 4, Ex. 3 at 3, 23)*. The ABA agreed and concluded "there was - and is - no proof beyond a reasonable doubt to support" Taylor's convictions. (Doc 343-3 at 3). Chin and Conover did not disagree with the ABA position. *(SSOF ¶5; Ex. 1 at 23:22-25:7; Ex. 2 at 120:7-9)*

Chin and Conover testified that the charges against Taylor should have been dismissed in 2013. (SSOF ¶6; *Ex. 1 at 94:15-96:8, 118:5-16; Ex. 2 at 65:14–16.)* Conover said there was CSIU consensus that requiring a no contest plea was wrong. *(SSOF ¶7; Ex. 1 at 319:4-23)*.

2

But, they said, Arizona's post-conviction relief remedies are narrower than those available in other states and limited what PCAO could do *sua sponte* in 2022. According to Conover, Arizona post-conviction alternatives are "very, very limited, very narrow." *(SSOF ¶8, Ex. 1 at 70:19–22)*. In other states, prosecutors have broader and "unfettered" post-conviction remedies available. *(SSOF ¶9, Ex. 1 at 70:10–14)*.

But under Arizona's rules, even a conceded absence of proof beyond a reasonable doubt does not authorize a prosecutor to seek exoneration under Rule 24.2 (e)(1). Taylor must *prove his innocence by "clear and convincing evidence."*[1]  Chin explained the impossible situation Taylor is in:

> Because it's a harsh and tricky point, but even if all the evidence has fallen apart, evidence that the evidence is weak is different from evidence that the person is innocent.  It's very, very hard -- ***it's a brutal standard to say you've got to make some kind of showing that the person is actually innocent.***

*(SSOF ¶10, Ex. 2 at 171:17–23)* (emphasis added).

The burden of proof beyond a reasonable doubt is the cornerstone of our criminal justice system and demanded by our Constitution. Chin explained:

> The idea being if you're not convinced that there's proof beyond a reasonable doubt, what our system demands is that the person be let go, rather than, "Well, there's significant or some proof of a really significant crime, so we'll say that's the equivalent of proof beyond a reasonable doubt of a somewhat less significant offense or somewhat less significant penalty."

*(SSOF ¶ 11, Ex. 3 at 117:14–21)*.

This is the essence of Taylor's claim.

---

[1] Rule 24.2(e)(2) also authorizes a motion to vacate where the conviction was based on an erroneous application of the law.  Conover's proposed 24.2 motion focused on 24.2(e)(2) and argued the 2013 convictions resulted from an erroneous application of law. Conover concluded it was inapplicable.

3

The PCAO admitted in 2013 that it lacked sufficient evidence to convict. But now, the prosecution can move to vacate the convictions only if Taylor proves innocence by clear and convincing evidence or demonstrates the conviction was based on an erroneous application of law. Chin correctly described this as a "brutal" standard, making Taylor's situation "unusual," warranting and demanding relief under *Shipp*.

Taylor's case is both "unusual and extreme" because though it was undisputed in 2013 that proof to convict wasn't there, the prosecutor required Taylor to prove his innocence by clear and convincing evidence; Conover thus believes there was no error of law in 2013 and therefore no relief under 24.2(e)(2).  It is more than unusual that a defendant should have to prove innocence.  Such a requirement violates the US Constitution.

**B.      Under *Shipp*, Taylor's case is "unusual" for other reasons**

In particular, the prior County Attorney's administration continues to wrap its tentacles around Taylor's case. As Conover described at her deposition, members of the former administration filed three bar complaints against her. (*SSOF ¶12, Ex. 1 at 165:24–25)*.  The first was prior to the 2020 primary election, when Amelia Cramer (formerly of the LaWall administration) filed a frivolous bar complaint (the claim was investigated and dismissed within 48 hours). (*SSOF ¶13, Ex. 1 at 165:2–18)*.

Although this court has precluded discovery into the prior administration's "conflict" determination, Conover volunteered information on this subject.  Conover explained that this allegation was groundless: "the former administration had a bizarre misapprehension that I somehow actually represented Louis Taylor." (*SSOF ¶14, Ex. 1 at 213:25–214:6)*. She explained the lengthy steps she took to confirm she had no

conflict, which included retaining a renowned ethics expert, who determined there was no conflict. (SSOF ¶15, Ex. 1 at 213:14–24, 227:21–25).

While the former administration insisted the conflict check was "routine," two prominent prosecutors publicly commented how unusual it was. Both former Maricopa County Attorney Rick Romley and former Arizona Attorney General Terry Goddard were "shocked" by the prior administration's "conflict" determination. (*SSOF* ¶*16; Ex. 4, Arizona Daily Star article March 8, 2021*).

Upon learning Conover would move to vacate, another prior administration member – David Berkman – warned the Board of Supervisors that Taylor was going to be exonerated and that it would "cost the County a ton." *(SSOF ¶17*, Doc. 575-7). He suggested that Acedo "make a stink" and that perhaps the Board could "embarrass" Conover into doing "the right thing," urging that "[t]he Board can't let this go." (*SSOF ¶18,* Doc. 575-7).

Acedo "made a stink." First, he placed an "agitated" call to Conover on May 27, 2022, after learning of her intent to file the Rule 24.2 Motion. *(SSOF ¶19, Ex. 1 at 162:3 – 163:5).* Prior to that call, Conover had unequivocally decided to file the Motion and began notifying "stakeholders." (SSOF ¶20, *Ex. 3 at 73:10–14.)*

Conover described the phone call she received from Acedo:

> His volume and speech pattern increased dramatically. He was agitated. He was zealously advocating for his cause. He said—he seemed to be beside himself that this could possibly be happening and indicated that I couldn't undertake this because I was the county attorney, and it didn't align with what he wanted, and he referenced that he thought the state bar would have—would have something to say about this.

(SSOF ¶21, Ex. 1 at 162:2–163:5)

What Acedo wanted, of course, was to win the damage action and prevent the

5

24.2 motion from being filed. This call was the "singular fact that changed the direction of the" Rule 24.2 Motion.   (*SSOF ¶22, Ex. 2 at 91:24-92:2, 93:6–13*).

Three days later—the day Conover met with the CSIU team to finalize the 24.2 Motion—Acedo wrote to Conover, who forwarded the letter to her ethics counsel, Scott Rhodes, asking for "a bit of help." (*SSOF ¶23, Ex. 5 5/30/22 Email*). That same day, Conover also sent to the CSIU team the opinion of her ethics expert regarding the purported conflict. (Doc. 575-10 at No. 33) On June 3, Acedo wrote directly to Rhodes. (*SSOF ¶24, Ex. 5*).

Public records show Acedo also contacted the Arizona Attorney General seeking help in preventing Conover from taking any action on Taylor's criminal case. (*SSOF ¶25, 6/6/22 Email, Ex. 6*).  Acedo last discussed the case with the AG's office on June 28; on June 29, he sent a letter directly to Rhodes. (*SSOF ¶26, Ex. 7 6/28/22 Email; Ex. 8 6/29/22 Email*) The County objected to any discussion of these and claimed privilege to prevent their disclosure. Taylor requests that the Court draw a negative inference from those claims of privilege and conclude that it is evidence of the County's attempt to improperly influence Conover's decision.

As Berkman urged, the County did not let this go.  Conover had determined to file the Rule 24.2 Motion on May 27.  Then came the Acedo call, the Berkman email, the June 3 letter to Rhodes, Acedo's efforts with the Attorney General, and the June 29 letter to Rhodes.  The Board held an executive session to discuss Taylor's case on August 2, 2022. The next day Conover announced her investigation was closed.

Conover, uneasy about her "no further action" decision, consulted her ethics counsel. On his advice, she included multiple mentions of the prior administration's

6

dubious conflict determination in her press release. (*SSOF* ¶27, Ex. 9, 7/26/22 email, Ex. 10; 8/3/22 Email.)

At her deposition, Conover repeatedly asked why she hadn't received the Declarant's sealed affidavit sooner. (*SSOF* ¶28, Ex. 11 at 192:20-23, 193:14-16, 193:23-194:10, 195:8-25; 205:1-9) The reason is that the County objected to providing it to her in June 2022—the same time it was contacting the AG's office, Conover, and Rhodes about the Rule 24.2 Motion. So, Conover never learned of the Declarant's affidavit until after she "changed her mind."

Taylor was incarcerated longer than other wrongfully convicted persons. Frequent media reports of wrongly convicted African-American defendants being exonerated and compensated are numerous.[2] *Shipp* demands intervention here.

C. **Voiding Taylor's 2013 convictions returns the parties to pre-plea positions**

Taylor's 2013 written plea agreement provides that if his plea is vacated, withdrawn or reversed by any court, "the parties to the plea agreement shall return to the positions they were in before executing the plea agreement." (Plea at § F(3)). If the court voids the plea, Taylor's relief petition is reinstated and the PCAO decides the response, including the new material evidence related to ▮▮▮▮▮▮▮▮

Chin and Conover said Taylor's 2013 Petition should have been granted even without the new and critical data.

---

[2] [Baltimore to pay $48 million after wrongful convictions, imprisonment of Alfred Chestnut, Ransom Watkins, Andrew Stewart | CNN](#)

Taylor highlighted the new evidence's vital significance. *See* Doc 632.

## CONCLUSION

This court should vacate 2013 conviction under *Shipp*, which would return Taylor to his pre 2013 plea positions.

DATED November 2, 2023   REDACTED brief filed 11/22/2023 per Doc 806

        MILLER, PITT, FELDMAN & McANALLY, P.C.

        /s/ Peter Timoleon Limperis
        Stanley G. Feldman
        Peter Timoleon Limperis
        Timothy P. Stackhouse

        THE LEADER LAW FIRM, P.C.

        /s/ Peter Timoleon Limperis *for*
        John P. Leader

I hereby certify that on November 2, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECR System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECR registrants:

REDACTED brief filed 11/22/2023 per Doc 806

Daniel P. Struck
Nicholas D. Acedo
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
*Attorneys for Defendant Pima County*

Michelle Saavedra
Dennis McLaughlin
CITY OF TUCSON
PO Box 27210
AZ 85726-7210
*Attorneys for Defendant City of Tucson*

8