**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nina Alley, | No. CV-15-00152-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendants. | |

Pending before the Court is a Motion to Transfer Venue filed jointly by Defendants Pima County and the City of Tucson. (Doc. 886.) Plaintiff Nina Alley responded in opposition (Doc. 900), and Defendants filed a Reply (Doc. 923). For the following reasons, the Motion will be denied.

**I.   Background**

Former Plaintiff Louis Taylor[1] was convicted on March 21, 1972 of 28 counts of murder arising from a fatal fire that occurred at the Pioneer Hotel in downtown Tucson, Arizona. (Doc. 340-9 at 10–12.) In 2012, Taylor filed a Petition for Post-Conviction Relief (Doc. 348-3), which was resolved in 2013 via a plea agreement in which Taylor plead no-contest to the original 28 counts of murder in exchange for a time-served sentence (Doc. 348-10). After his release from prison, Taylor filed the above-captioned civil lawsuit, raising claims under 42 U.S.C. § 1983 premised on alleged violations of his

---

[1] Taylor's guardian and conservator has been substituted in his place as the named plaintiff in this action. (Doc. 624.) The Court uses the term "Plaintiff" herein to refer interchangeably to Taylor.

constitutional rights during his criminal proceedings. (Docs. 1, 169.) Trial is scheduled for April 22, 2024. (Doc. 853.)

## II. Discussion

Defendants argue that this Court should transfer the upcoming trial to the Phoenix Division to ensure an impartial jury. (Doc. 886.) They argue that press coverage of Taylor's case has been extensive since the 1970s and that, over the last ten years, press coverage has echoed Taylor's claims, vilified key defense witnesses, and unfairly and sometimes incorrectly discussed evidence in the case. (*Id.*) Defendants further argue that the involvement of Pima County Attorney Laura Conover as a witness in this case during her campaign for reelection will prevent Defendants from receiving a fair trial. (*Id.* at 15–16.)

Plaintiff argues that Defendants have shown no real risk of prejudice and that any potential prejudice will effectively be mitigated through juror questionnaires and voir dire. (Doc. 900 at 5–8.) Plaintiff further argues that transferring venue to Phoenix would inconvenience and unnecessarily burden the parties, witnesses, and the Court. (*Id.* at 3–4.) Plaintiff also accuses Defendants of delaying the filing of their Motion and of attempting to obtain a change in judge. (*Id.* at 2–3, 5.)

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Furthermore, "[a] district court may order any civil action to be tried at any place within the division in which it is pending." 28 U.S.C. § 1404(c).

Under Local Rule of Civil Procedure 83.8(b), the Court may, in "a widely publicized or sensational case . . . issue a special order similar to that provided for by Rule 57.2(f)" of the Local Rules of Criminal Procedure. Rule 57.2(f) authorizes the use of a variety of techniques to manage the effects of pretrial publicity and ensure an impartial jury, including "change of venue" as well as "individual voir dire of prospective

jurors, cautionary instructions to the jury," and orders proscribing extrajudicial statements by parties, lawyers, and witnesses.

"[A] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).  Due process requires a change of venue when it is impossible to "seat an impartial jury because of prejudicial pretrial publicity or an inflamed community atmosphere." *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988).  However, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Skilling v. United States*, 561 U.S. 358, 384 (2010) (internal quotation marks omitted).  A trial judge has discretion in determining "whether a change of venue is compelled by pervasive prejudicial publicity." *Wash. Pub. Utilities Grp. v. U.S. Dist. Ct. for W. Dist. of Wash.*, 843 F.2d 319, 324 (9th Cir. 1987).

A motion to transfer venue may be supported by actual or presumed prejudice. *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011).  Actual prejudice "exists when voir dire reveals that the jury pool harbors actual partiality or hostility . . . that cannot be laid aside." *Id.* (internal quotation and alteration marks omitted).  "A presumption of prejudice" arises only in "extreme case[s]," *Skilling*, 561 U.S. at 381, where a "barrage of inflammatory publicity immediately prior to trial" amounts to a "huge wave of public passion," *Harris*, 885 F.2d at 1362 (internal quotation and alteration marks omitted).  The United States Supreme Court found a presumption of prejudice in a case in which at least one third of a small town's population had viewed a local television station broadcast of a detailed confession made by the defendant while in jail and surrounded by law enforcement.  *See Rideau v. Louisiana*, 373 U.S. 723, 724–27 (1963).  The Supreme Court also found a presumption of prejudice in a case in which pretrial publicity created a "carnival atmosphere" that permeated the trial.  *See Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966).  In contrast, in *Skilling*, the Supreme Court affirmed a district court's denial of a venue change in a criminal trial of a former executive of the Enron Corporation, finding that "news stories about Enron did not present the kind of vivid, unforgettable information" that is "particularly likely to produce prejudice," and that the "size and

diversity" of the city in which the trial was held "diluted the media's impact." *Skilling*, 561 U.S. at 384. The Court clarified that the likelihood of juror prejudice from pretrial proceedings is diminished when: (1) the venire is drawn from a large population; (2) news stories contain no indelibly prejudicial information; and (3) a significant period has elapsed between the event at issue and trial, with "the decibel level of media attention" diminishing over that period. *Skilling*, 561 U.S. at 382–83.

### B. Analysis

Conducting the trial of this matter in Phoenix would significantly inconvenience the parties and witnesses, almost all of whom reside in Tucson. Accordingly, transferring venue to Phoenix for trial is appropriate only if required by due process.

Defendants have failed to show that due process requires granting their Motion to Transfer Venue. As the jury panel has not been called in this case, Defendants do not and cannot at this time show actual prejudice, and the Court's analysis turns on whether Defendants have made a showing of presumptive prejudice. Defendants identify negative news coverage, but they fail to identify any coverage containing "the kind of vivid, unforgettable information" that would support a presumption of prejudice. *Skilling*, 561 U.S. at 384. Furthermore, most of the news coverage is "largely factual in nature, rather than inflammatory." *Monterrosa v. City of Vallejo*, No. 2:20-cv-01563-TLN-DB, 2021 WL 516736, at *6 (E.D. Cal. 2021) (internal quotation marks omitted). The coverage does not rise to the level of a "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion." *Harris*, 885 F.2d at 1362 (internal quotation and alteration marks omitted).

Furthermore, the size of the community from which this Court draws the venire diminishes the likelihood of juror prejudice. *See Skilling*, 561 U.S. at 382. So does the passage of time. *See id.* at 383. Decades have elapsed since news coverage of the Pioneer Hotel fire saturated the Tucson community in the 1970s. Much of the press coverage of which Defendants complain occurred at the time of Taylor's 2013 plea agreement, over a decade ago. The "decibel level" of recent media attention does not

support a presumption of prejudice. *Id.* Pima County Attorney Conover's status as a witness during an election year is also insufficient to give rise to presumptive prejudice. The Court's use of written juror questionnaires to prescreen the venire, combined with careful voir dire, will effectively identify any biases in potential jurors resulting from media coverage of this case or from Conover's campaign. *See United States v. Carona*, 571 F. Supp. 2d 1157, 1162 (C.D. Cal. 2008) ("[v]oir dire is the prime safeguard" for identifying juror bias, and "[t]he power of the voir dire process to illicit honest answers should not be underestimated" (internal quotation marks omitted)).[2]

Because Defendants have failed to establish actual or presumptive juror prejudice, the Court finds that denying their Motion to Transfer Venue will not violate their constitutional rights to a fair trial.

Accordingly,

**IT IS ORDERED** that the Motion to Transfer Venue (Doc. 886) is **denied**.

Dated this 28th day of March, 2024.

                                      Honorable Rosemary Márquez
                                      United States District Judge

---

[2] Plaintiff argues in response to the Motion to Transfer Venue that this Court "should consider imposing an extrajudicial statement prohibition." (Doc. 900 at 12.) Defendants suggest in reply that a gag order should be placed on Plaintiff's attorneys. (Doc. 923 at 11.) No party has formally moved for an order prohibiting extrajudicial statements and the Court therefore declines to address the issue at this time.