**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nina Alley,<br><br>        Plaintiff,<br><br>vs.<br><br>Pima County, a body politic; The City of Tucson, a body politic,<br><br>        Defendants. | No.  CV-15-00152-TUC-RM<br><br>**JOINT PROPOSED FINAL PRETRIAL ORDER** |

The following is the Joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference.

**A. TRIAL COUNSEL FOR THE PARTIES**

Plaintiff:     MILLER, PITT, FELDMAN & McANALLY, P.C.
                    Stanley G. Feldman, SBN 000838
                    Peter Timoleon Limperis, SBN 019175
                    Timothy P. Stackhouse, SBN 030609

                    THE LEADER LAW FIRM, P.C.
                    John P. Leader, SBN 012511
                    405 W. Cool Dr. Ste. 107
                    Tucson, AZ  85705

Defendant Pima County:

> STRUCK LOVE BOJANOWSKI & ACEDO, PLC
> Daniel P. Struck
> Nicholas D. Acedo
> Jacob B. Lee
> 3100 West Ray Road, Suite 300
> Chandler, Arizona 85226

Defendant City of Tucson:

> Michelle Saavedra
> Dennis McLaughlin
> Principal Assistant City Attorneys for
> Michael G. Rankin
> CITY ATTORNEYPO Box 27210
> Tucson, AZ 85726-7210
> Telephone: (520) 791-4221
> Fax: (520) 791-4188
> Michelle.Saavedra@tucsonaz.gov
> State Bar No. 25728
> Dennis.McLaughlin@tucsonaz.gov
> State Bar No. 09197

**B. STATEMENT OF JURISDICTION**

This Court has "federal question" jurisdiction pursuant to 28 U.S.C. §1331 because Taylor's claims are based on a federal statute, 42 U.S.C. §1983.

**C. STIPULATIONS OF UNCONTESTED FACT AND LAW**

**1.** **The Pioneer Hotel fire occurred on or about December 19-20, 1970.**

**2.** **Bruce Wallmark was called as a prosecution witness at the Taylor trial, on February 25, 1972.**

**Defendant City of Tucson: This is already addressed as Plaintiff's No. 115 factual contention. See the City's response to No. 115.[1]**

---

[1] It is the Defendants' position that Nos. 2-7 included in Section C, here, are contested issues of fact and they belong under the contested section. See the Defendants' contentions immediately following each. Defendant Pima County joins in Defendant City of Tucson's responses. The City joins in the County's responses.

**Defendant Pima County:**[2]  This is a contested issue.  See Pima County's response to Plaintiff's No. 115 contested issue of fact.

3.  He then fled before the defense finished its cross-examination.  (Doc. 869 at 8, n. 10).

**Defendant City Tucson:** This contradicts Plaintiff's factual contention No. 121. See the City's response to No. 121.

**Defendant Pima County:** This is a contested issue.  See Pima County's response to Plaintiff's No. 121 contested issue of fact.

4.  He was later apprehended, and the defense concluded its cross-examination.  *Id.*

**Defendant City Tucson:** See Plaintiff's factual contention No. 121. See also the City's response to Plaintiff's factual contention No. 121.

**Defendant Pima County:** See prior response.

5.  Wallmark also testified on February 28 and 29, 1972.  (*Id.* and also Bates 4959-4965)

**Defendant City Tucson:** See Plaintiff's factual contentions Nos. 115 and 121. See also the City's response to Plaintiff's factual contentions Nos. 115 and 121.

**Defendant Pima County:** This contention is disputed.  Wallmark did not testify on February 29, 1972.

6.  In summary, Wallmark testified that Taylor told him that he and two others had been in the Pioneer Hotel the evening of the fire to steal wallets and money from rooms, and that the fire had started from a lit book of matches

---

[2] Defendant Pima County joins in Defendant City of Tucson's responses to all contentions.

**or a lighter that dropped on the carpet as they were running away from a hotel employee. (Doc. 869 at 8, citing 338-10 at 57-60, 64-65, 91-92)**

**Defendant City Tucson: This is repetitive to Plaintiff's factual contention No. 120. See the City's response to Plaintiff's No. 120.**

**Defendant Pima County: This contention is disputed.  It does not fully state Wallmark's testimony.**

**7.      After the defense rested, the prosecution successfully moved to reopen its case-in-chief to present testimony from Robert Jackson. (Doc. 340-3 at 219-221).**

**Defendant City Tucson: See Plaintiff's factual contentions Nos. 93, 99 and 116. See the City's responses to Plaintiff's factual contentions Nos. 93, 99 and 116. See also the City's factual contentions Nos. 147, 149, 152.**

**Defendant Pima County: This contention is disputed.  The prosecution moved to reopen its case to allow for Jackson's testimony before the defense rested, but Taylor opposed that motion and the superior court denied the motion without prejudice.**

**D.  CONTESTED FACT AND LAW**

**Plaintiffs' Contested Issues of Law**

1.      The County and City Defendants conspired to violate Taylor's constitutional rights, as alleged in Count Five of the Third Amended Complaint.

Plaintiff Taylor alleges (Doc. 169, TAC, ¶91) that before during and after trial, the County and City and other co-conspirators engaged in a racially based civil conspiracy that violated his (Taylor's) constitutional rights. With regard to his allegation that the conspiracy existed "after" trial, Taylor alleges that the conspiracy continued through 2013 and that the decision forcing him to plead "no contest" was part of the ongoing conspiracy.  See also Doc. 366 at 3-4 and Doc. 869 at 54.

Defendant Pima County:[3] This is a factual contention, not a legal contention. Nonetheless, Pima County contends that there was no conspiracy at any time between Pima County and the City of Tucson to violate Taylor's constitutional rights or force him to plead no contest in 2013.  Moreover, Taylor did not allege a "racially based" conspiracy in the Third Amended Complaint ("TAC") or that Defendants conspired to force him to plead no contest in 2013.  Finally, Taylor was not forced to plead no contest in 2013.

Defendant City of Tucson[4]: This is a factual contention, not a contested issue of law. Defendant City of Tucson (hereafter "the City") contends that Plaintiff's conspiracy claims against the Defendants are limited to the allegations that "the City of Tucson and Pima County reached an agreement to violate Taylor's constitutional rights by suppressing the Truesdail Report and by procuring false testimony from jailhouse informants while failing to disclose the circumstances under which the testimony was procured." (*See* Dkt. 869, 50:9-12; *see also* 58:10-12). Plaintiff's Third Amended Complaint did not allege that the City was involved in the 2013 plea proceedings. (*See* Dkt. 169). The City had no involvement in the 2013 plea proceedings. The City joins in the County's response to No. 1.

2. *Shipp* expungement is appropriate and whether, as a factual matter, (1) whether the prosecution in 2013 leveraged Taylor's existing incarceration in order to obtain a no-contest plea to charges that it knew could not be proven beyond a reasonable doubt at a retrial, or (2) whether the prosecution did so for purposes of creating a Heck bar to civil liability.  (Doc. 869 at 27).

---

[3] Defendant Pima County joins in all of the Defendant City of Tucson's responses to Plaintiff's Contested Issues of Law.

[4] Defendant City of Tucson joins in all of the Defendant Pima County's responses to Plaintiff's Contested Issues of Law.

1   Defendant Pima County:  Pima County contends that the Court has no authority
2   to expunge Taylor's 2013 convictions.  (*See* Dkt. 107, 177.)  The remainder of this
3   contention is factual, not legal.   Nonetheless, Pima County contends that the Pima
4   County Attorney's Office (on behalf of the State) did not: leverage Taylor's
5   incarceration to obtain a no-contest plea; believe that the charges could not be proven
6   beyond a reasonable doubt at a retrial; or offer the 2013 plea for purposes of creating a
7   *Heck* bar to civil liability.

8   Defendant City of Tucson: This is a factual contention, not a contested issue of
9   law. See also the City's response to No. 1, above. The City joins in the County's
10   response to No. 2.

11   3.    Even if the jury does not find (1) that the prosecution in 2013 leveraged
12   Taylor's existing incarceration in order to obtain a no-contest plea to charges that it
13   knew could not be proven beyond a reasonable doubt at a retrial, and/or (2) that the
14   prosecution did so for purposes of creating a *Heck* bar to civil liability, whether *Shipp*
15   expungement is still appropriate, if, as a matter of law, proof of guilt beyond a
16   reasonable doubt does not exist.

17   Defendant Pima County: Pima County contends that the Court has no authority
18   to expunge Taylor's 2013 convictions.  (*See* Dkt. 107, 177.)  As a factual matter, Pima
19   County contends that Taylor's 1972 convictions are supported by proof beyond a
20   reasonable doubt and that the Pima County Attorney's Office (on behalf of the State)
21   believed that the charges could be proven beyond a reasonable doubt at a retrial in
22   2013.  The Court has ruled: "The issue is not whether there is proof beyond a reasonable
23   doubt that the Pioneer Hotel fire was arson or that Taylor is guilty.  The issue is whether
24   the Pima County Attorney's Office believed it could have presented proof beyond a
25   reasonable doubt at a new trial, and the bases for that belief."  (Dkt. 869 at 24.)

1    Defendant City of Tucson: This is a factual contention, not a contested issue of

2    law. See also the City's response to No. 1, above. The City joins in the County's

3    response to No. 3.

4        4.     The manner and procedure for the Court to addresses a potential *Heck*

5    bar at and after trial.

6        Taylor proposes that he be allowed to argue for all damages, including

7    incarceration-based damages, at trial.  If the jury answers the *Shipp* determinative

8    questions included in the Court's January 19, 2020 for summary judgment ruling in the

9    affirmative (Doc. 869 at 27) and the jury's damage award includes incarceration

10   damages, the Court will enter judgment on those findings.  Taylor further proposes that

11   if the jury does not answer all *Shipp* determinative questions included in the Court's

12   January 19, 2020 for summary judgment ruling in the affirmative (Doc. 869 at 27), then

13   the Court would decide, after trial, if proof beyond a reasonable doubt is lacking as a

14   matter of law and whether *Shipp* expungement is still appropriate.

15       Defendant Pima County: This is an improper motion in limine and/or request

16   for procedural relief, not a legal contention.  If Taylor files a proper motion on these

17   issues, Pima County will respond in kind.  Nonetheless, Pima County maintains that

18   Taylor should not be permitted to argue or present evidence of any damages at trial .

19       Defendant City of Tucson: This is not a contested issue of fact it is a request for

20   relief that should be argued and litigated through motions. Nevertheless, the City

21   contends that damages should be bifurcated given the Court's ruling on the

22   expungement claim and her intention to lift the *Heck* bar if she determines that

23   expungement is warranted. (*See* Dkt. 869, 24:1-8). The City joins in the County's

24   response to No. 4.

25

5.      The City had policies of racial discrimination that caused or contributed to the violation of Taylor's civil rights, as alleged in Count One of Taylor's TAC (Doc. 169 at 11).  See also Doc. 869 at 51.

Plaintiff Taylor alleges defendant City of Tucson had a long-standing practice or custom of racial discrimination that resulted in the violation of his constitutional rights (Doc. 869 at 51- 52).

Pima County: This contention is not directed at Defendant Pima County. As a factual matter, Pima County maintains that racial discrimination played no part in Taylor's arrest or prosecution.  (*See also* Dkt. 869 at 53.)

Defendant City of Tucson: This is a factual contention, not a contested issue of law.  The City denies having "a long-standing practice or custom of racial discrimination that resulted in the violation of [Taylor's] constitutional rights." The City joins in the County's response to No. 5.

6.      The County failed to properly train and supervise deputy county attorneys and acted recklessly, intentionally, or with gross negligence, and that the lack of training was so reckless or grossly negligent that deprivation of persons' constitutional rights was substantially certain to result, under *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), as alleged in Count Three of Taylor's TAC (Doc. 169 at 18). See also Doc. 869 at 53-56.

Plaintiff Taylor alleges defendant Pima County is liable under *Canton* and that Horton Weiss's prior misconduct and ethical violations were so widespread and well-known that a reasonable jury could find that Pima County was deliberately indifferent. (Doc. 869 at 54, Doc. 366 at 3-4.) In support of this argument, Plaintiff relies on Pacheco's testimony and appellate opinions criticizing Weiss. (Id. at 4-11.) Plaintiff further argues that Pima County had no training program, that its failure to train and supervise Weiss caused violations of Taylor's constitutional rights and deprived him

1  of a fair trial, and that Pima County's pattern of deliberate indifference to prosecutorial

2  misconduct under former Pima County Attorney LaWall's administration continued

3  through at least 2013. (Id. at 3, 11-14.)  See Doc. 869 at 51- 54.

4      Defendant Pima County: This is a factual contention, not a legal contention.

5  Taylor also did not allege in the TAC that "the lack of training was so reckless or

6  grossly negligent that deprivation of persons' constitutional rights was substantially

7  certain to result."  That is also not the correct standard.  *See Connick v. Thompson*, 563

8  U.S. 51, 61 (2011) (a failure to train must amount to "deliberate indifference").  Pima

9  County also maintains that it cannot be held liable based on allegations that the Pima

10  County Attorney's Office failed to train or supervise its prosecutors regarding

11  prosecutions that are conducted on behalf of the State.  Notwithstanding, Pima County

12  contends that the Pima County Attorney's Office had an adequate training program, it

13  did not fail to train or supervise Horton Weiss, it did not disregard a known or obvious

14  consequence of Weiss' alleged actions (i.e., it was not deliberately indifferent in any

15  way), and that any alleged failure to train or supervise Weiss did not cause a violation

16  of Taylor's constitutional rights or deprive him of a fair trial.  Weiss did not have a

17  documented history of violating the constitutional rights of criminal defendants prior

18  to Taylor's 1972 prosecution, and the conduct of one individual cannot support a

19  custom-or-practice claim.   Pima County further contends that Andrew Pacheco's

20  opinions are irrelevant and/or inadmissible and that the referenced appellate opinions

21  are not material.  Finally, Count Three in the TAC did not allege that the Pima County

22  Attorney's Office's "pattern of deliberate indifference to prosecutorial misconduct

23  under former Pima County Attorney [Barbara] LaWall's administration continued

24  through at least 2013." (*See also* Dkt. 300 at 3–7.)  This claim is grounded solely on

25  the alleged training and supervision at the time of Taylor's 1972 prosecution and

Weiss' alleged conduct.

1   Defendant City of Tucson: This is a factual contention, not a contested issue of
2   law. This factual contention relates to the County, not the City. The City joins in the
3   County's response to No. 6.

4   7.   The County had a custom of deliberate indifference to prosecutorial
5   misconduct, as alleged in Count Four of Taylor's TAC (Doc. 169 at 19) as shown by
6   its continued employment of Weiss. (Doc. 869 at 53-56).

7   Taylor alleges the County had such a policy that caused violations of his
8   constitutional rights; his allegations relating to Count Four are discussed in detail at
9   pages 53-56 of the Court's January 19, 2020 for summary judgment rulings (Doc. 869).

10   Defendant Pima County: This is a factual contention, not a legal contention.
11   Pima County also maintains that it cannot be liable based on allegations that the Pima
12   County Attorney's Office had a custom or practice of prosecutorial misconduct
13   regarding prosecutions conducted on behalf of the State or based on the allegations
14   against Weiss.   Notwithstanding, Pima County contends that the Pima County
15   Attorney's Office did not have a custom, practice, or policy of prosecutorial
16   misconduct as alleged in Count Four of the TAC or as allegedly "shown by its
17   continued employment of Weiss."   Pima County further contends that any alleged
18   custom or policy caused a violation of Taylor's constitutional rights.   Weiss did not
19   have a documented history of violating the constitutional rights of criminal defendants
20   prior to Taylor's 1972 prosecution, and the conduct of one individual cannot support a
21   custom-or-practice claim.   Pima County further contends that Andrew Pacheco's
22   opinions are irrelevant and/or inadmissible and that the referenced appellate opinions
23   are not material.

24   Defendant City of Tucson: This is a factual contention, not a contested issue of
25   law. This factual contention relates to the County, not the City. The City joins in the
County's response to No. 7.

8.      The County and the City conspired to violate Taylor's constitutional rights.

Defendant Pima County:  This is a factual contention, not a legal contention. Notwithstanding, Pima County contends that it did not conspire with the City of Tucson to violate Taylor's constitutional rights.

Defendant City of Tucson: This is a factual contention, not a contested issue of law, and Plaintiff already stated this in No. 1, above. See the City's response to No. 1, above. The City joins in the County's response to No. 8.

9.      The County and the City withheld exculpatory evidence in violation of Taylor's *Brady* rights.

Defendant Pima County:  This is a factual contention, not a legal contention. Notwithstanding, Pima County contends that neither Defendant withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or Taylor's constitutional rights.

Defendant City of Tucson: This is a factual contention, not a contested issue of law, and this factual contention related to Plaintiff's conspiracy claim against Defendants. The City denies conspiring to withhold exculpatory evidence in violation of Taylor's *Brady's* rights. See also the City's response to No. 1, above. The City joins in the County's response to No. 9.

10.      The County Board pressured Conover not to dismiss Taylor's criminal charges at or after the August 2, 2022 Pima County Board of Supervisors meeting,

Defendant Pima County:  This is a factual contention, not a legal contention. This contention is also irrelevant to the claims in this case and was not alleged in the TAC.  Nonetheless, Pima County contends that the Pima County Board of Supervisors did not pressure Pima County Attorney Laura Conover not to dismiss Taylor's criminal charges. The contents of the August 2, 2022 Executive Session meeting are confidential

by statute.  Moreover, Pima County Attorney Laura Conover testified that she did not attend the August 2, 2022 Regular or Executive Session meetings.

Defendant City of Tucson: This is a factual contention, not a contested issue of law. This factual contention relates to the County, not the City. But the City contends that the evidence at trial will prove that Pima County Attorney Laura Conover's decisions relating to Taylor's criminal case were not due to any pressure on the part of the Pima County Board of Supervisors, or anyone else. The City joins in the County's response to No. 10.

11.    It was legal, under A.R.S. §11-532 and other Arizona statutes, for the County Board to influence/pressure Conover regarding Taylor's criminal case.

Defendant Pima County:  This contention is irrelevant to the claims in this case and was not alleged in the TAC.  Nonetheless, the Pima County Board of Supervisors did not do anything illegal under Arizona law regarding Taylor's criminal case. Moreover, Pima County Attorney Laura Conover testified that Pima County did not influence her decision not to take action in Taylor's criminal case or threaten her in any way.

Defendant City of Tucson: This is a factual contention, not a contested issue of law. See the City's response to No. 10, above. The City joins in the County's response to No. 11.

12.    This conduct was akin to public corruption and improperly influencing public officials.

Defendant Pima County:  This contention is irrelevant to the claims in this case and was not alleged in the TAC.  Nonetheless, the Pima County Board of Supervisors did not engage in any conduct akin to public corruption or otherwise improperly influence public officials.

1    Defendant City of Tucson: This is a factual contention, not a contested issue of
2  law. See the City's response to No. 10, above, and the City further contends that there
3  is no "public corruption" or "improper[] influencing [of] public officials" claim in this
4  lawsuit. The City also contends that the evidence disclosed in this case shows that
5  Plaintiff's counsel attempted to pressure the Pima County Attorney's Office and Laura
6  Conover regarding Taylor's criminal case. The City joins in the County's response to
7  No. 12.

8    13.    The County's civil lawyers were complicit in this.

9    Defendant Pima County:  This contention is irrelevant to the claims in this case
10  and was not alleged in the TAC.  Nonetheless, for the same reasons stated above, Pima
11  County denies this contention.

12    Defendant City of Tucson: This is a factual contention, not a contested issue of
13  law. See the City's response to No. 12, above. The City contends that the County's civil
14  lawyers are not the subject of this lawsuit. The City further contends that this factual
15  contention, and Plaintiff's factual contentions relating to the Pima County Board of
16  Supervisors, are unfounded and not supported by the evidence in this case. The City
17  joins in the County's response to No. 13.

18    14.    Conover, under A.R.S. §11-532, has sole authority and responsibility to
19  prosecute all Pima County criminal cases, on behalf of the State of Arizona.

20    Defendant Pima County:  Pima County contends that, under A.R.S. § 11-
21  532(A)(1), "[t]he county attorney … shall … on behalf of the state, conduct all
22  prosecutions for public offenses."  Pima County further contends that, under A.R.S. §
23  41-193(A), the Arizona Attorney General must "[e]xercise supervisory powers over
24  county attorneys of the several counties in matters pertaining to that office," and, "[if]
25  deemed necessary, assist the county attorney of any county in the discharge of the
county attorney's duties."

1    Defendant City of Tucson: This is not an issue in this lawsuit, and does not relate

2  in any way to the City. The City joins in the County's response to No. 14.

3    15.    The County's 2022 conduct was part of the ongoing conspiracy to violate

4  Taylor's civil and constitutional rights.

5    Defendant Pima County:  This is a factual contention, not a legal contention.

6  This contention is also irrelevant to the claims in this case and was not alleged in the

7  TAC.  Nonetheless, Pima County contends that it did not engage in any conduct—in

8  2022 or at any other time—that violated Taylor's civil or constitutional rights or that

9  was part of a conspiracy to do so.

10    Defendant City of Tucson: This is a factual contention, not a contested issue of

11  law. Plaintiff did not allege facts or a claim of conspiracy stemming from any period

12  of time other than 1972 in his Third Amended Complaint, and he cannot add claims

13  now. See also the City's response to No. 1, above. The City joins in the County's

14  response to No. 15.

15    16.    The County improperly influenced Conover for the sole purpose of

16  protecting its financial interests.

17    Defendant Pima County:  This is a factual contention, not a legal contention.

18  This contention is also irrelevant to the claims in this case and was not alleged in the

19  TAC.  Nonetheless, Pima County contends that it did not improperly influence Pima

20  County Attorney Laura Conover for the sole purpose of protecting its financial

21  interests. Moreover, Conover testified that Pima County did not influence her decision

22  not to take action in Taylor's criminal case or threaten her in any way.

23    Defendant City of Tucson: This is a factual contention, not a contested issue of

24  law. This factual contention relates to the County, not the City. The City contends that

25  the evidence at trial will prove that Pima County did not improperly influence Laura

Conover regarding Taylor's criminal case. The City joins in the County's response to No. 16.

17.     The County's 2022 efforts to protect its civil monetary interests at Taylor's expense is evidence that in 2013, the County acted to protect its financial interests by requiring Taylor to plead no contest.

Defendant Pima County:  This contention is irrelevant to the claims in this case and was not alleged in the TAC.  Pima County further maintains that alleged conduct in 2022 is not admissible to establish conduct in 2013 or to prove that the Pima County Attorney's Office acted to protect Pima County's financial interests when it offered the 2013 no-contest plea.  In addition, Pima County contends that neither it nor the Pima County Attorney's Office required Taylor to plead no contest or offered the 2013 no-contest plea to protect its financial interests.  Pima County further contends that it did nothing improper in 2022.

Defendant City of Tucson: This is a factual contention, not a contested issue of law. See also the City's responses to Nos. 15-16, above. The City joins in the County's response to No. 17.

18.     *Heck* does not bar any of Taylor's claims, other than his claim for incarceration damages.

Defendant Pima County: Pima County contends that Taylor is barred from recovering any damages.

Defendant City of Tucson: The City also contends that Taylor is barred from recovering any damages.

19.     Given that Taylor pled "no contest," even if the *Heck* bar applies, *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001), *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) and Lockett v. Ericson, 656 F.3d 892, 896-97 (9th Cir. 2001) allow

1 Taylor to assert  all other claims for damages, except his claim for incarceration
2 damages.

3      Defendant Pima County:  Pima County contends that Taylor is barred from
4 recovering any damages.

5      Defendant City of Tucson: The City also contends that Taylor is barred from
6 recovering any damages.

7      20.    Whether polygraphs are admissible evidence.

8      Defendant Pima County:  Pima County cannot adequately respond to this
9 contention because Taylor does not identify which polygraph he is referring to.

10      Defendant City of Tucson: The Defendant City of Tucson: The City disputes
11 this contention and joins in the County's response.

12

13 **Defendants' Contested Issues of Law[5]**

14      21.    Whether Plaintiff's claims are barred as a matter of law by the statute of
15 limitations.

16      Defendants' contention:  Defendants maintain that Plaintiff's claims are time
17 barred.

18      Taylor's contention: The Court has already decided that they are not, and there
19 is no basis for this to be considered a contested issue of law. Notwithstanding
20 Defendants' footnote, this contention is included in bad faith.

21      22.    Whether Plaintiff's claims are barred as a matter of law by principles of
22 judicial estoppel.

23

24 _____

25 [5] Defendants acknowledge that many of these legal issues have been decided. However, Defendants include them here for purposes of preserving the record and in the event evidence introduced at trial warrants their reexamination.

1    Defendants' contention: Defendants maintain that Plaintiff's claims are barred

2 by principles of judicial estoppel.

3    Taylor's contention: The Court has already decided that they are not, and there

4 is no basis for this to be considered a contested issue of law. Notwithstanding

5 Defendants' footnote, this contention is included in bad faith.

6    23.  Whether Plaintiff's claims are barred as a matter of law by law-of-the-

7 case principles.

8    Defendants' contention: Defendants maintain that Plaintiff's claims are barred

9 by law-of-the-case principles.

10    Taylor's contention: The Court has already decided that they are not, and there

11 is no basis for this to be considered a contested issue of law. Notwithstanding

12 Defendants' footnote, this contention is included in bad faith.

13    24.  Whether Plaintiff's claims are barred as a matter of law by principles of

14 collateral estoppel/issue/claim preclusion.

15    Defendants' contention: Defendants maintain that Plaintiff's claims are barred

16 by collateral estoppel/issue/claim preclusion.

17    Taylor's contention: The Court has already decided that they are not, and there

18 is no basis for this to be considered a contested issue of law. Notwithstanding

19 Defendants' footnote, this contention is included in bad faith.

20    25.  Whether Plaintiff's claims are barred as a matter of law by the principles

21 enunciated in *Preiser v. Rodriguez*, *Heck v. Humphrey*, and their progeny.

22    Defendants' contention: Defendants maintain that Plaintiff's claims are barred

23 by *Preiser*, *Heck*, and their progeny.

24    Taylor's contention: Neither *Preiser* nor *Heck* bars any of Taylor's claims.

25 Rather, they are limitations on incarceration damages, based on issues of causation.

They do not bar Taylor's non-incarceration damages, and if the Court vacates Taylor's convictions under *Shipp*, they are irrelevant.

26.     Whether Pima County is entitled to Eleventh Amendment immunity.

Defendant Pima County's contention: Pima County maintains that it is entitled to Eleventh Amendment immunity.

Taylor's contention: The Court and the Ninth Circuit have already decided that they are not, and there is no basis for this to be considered a contested issue of law. Notwithstanding Defendants' footnote, this contention is included in bad faith.

Defendant City of Tucson: The City does not need to respond to this contention.

27.     Whether Pima County is entitled to prosecutorial immunity.

Defendant Pima County's contention:  Pima County maintains that it is entitled to prosecutorial immunity.

Taylor's contention: The Court has already decided that they are not, and there is no basis for this to be considered a contested issue of law. Notwithstanding Defendants' footnote, this contention is included in bad faith. Moreover, none of Taylor's claims are based solely on the actions of a prosecutor, but Pima County's failure to train and supervise, and the ongoing conspiracy between the County and City to deprive Taylor of his constitutional rights.

Defendant City of Tucson: The City does not need to respond to this contention.

28.     Whether, given Plaintiff's claims, Pima County is a "person" for purposes of 42 U.S.C. § 1983.

Defendant Pima County's contention: Pima County maintains that it is not a "person" for purposes of 42 U.S.C. § 1983.

Taylor's contention: The Court has already decided that they are, and there is no basis for this to be considered a contested issue of law. Notwithstanding Defendants' footnote, this contention is included in bad faith.

1    Defendant City of Tucson: The City does not need to respond to this contention.

2    29.    Whether, as a matter of law, the Pima County Attorney acted as a County

3    official rather than a State official in creating and/or implementing the practices and

4    policies at issue in this case.

5    Defendant Pima County's contention: Pima County maintains that the Pima

6    County Attorney does not act as a County official when creating and/or implementing

7    the practices and policies at issue in this case.

8    Taylor's contention: The Court and the Ninth Circuit have already decided that

9    they are not, and there is no basis for this to be considered a contested issue of law.

10   Notwithstanding Defendants' footnote, this contention is included in bad faith.

11   Defendant City of Tucson: The City does not need to respond to this contention.

12   30.    Whether, as a matter of law, Pima County had the authority to hire,

13   supervise, or terminate the Pima County Attorney or the Pima County Attorney's

14   Deputy prosecutors.

15   Defendant Pima County's contention: Pima County maintains that it did not

16   have the authority to hire, supervise, or terminate the Pima County Attorney or the

17   Pima County Attorney's Deputy prosecutors.

18   Taylor's contention: The Court has already decided that they do, and there is no

19   basis for this to be considered a contested issue of law. Notwithstanding Defendants'

20   footnote, this contention is included in bad faith.

21   Defendant City of Tucson: The City does not need to respond to this contention.

22   31.    Whether, as a matter of law, Pima County had the authority to train,

23   supervise, or implement policies regarding the Pima County Attorney or the Pima

24   County Attorney's Deputy prosecutors for purposes of prosecutions on behalf of the

25   State.

1    Defendant Pima County's contention:  Pima County maintains that it did not

2   have the authority to train, supervise, or implement policies regarding the Pima County

3   Attorney  or  the  Pima  County  Attorney's  Deputy  prosecutors  for  purposes  of

4   prosecutions on behalf of the State.

5    Taylor's contention: The Court has already decided that they do, and there is no

6   basis for this to be considered a contested issue of law. Notwithstanding Defendants'

7   footnote, this contention is included in bad faith.

8    Defendant City of Tucson: The City does not need to respond to this contention.

9    32.    Whether Plaintiff's claims are barred as a matter of law by the principles

10  enunciated in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

11    Defendants' contention:  Defendants maintain that Plaintiff's claims are barred

12  by *Monell*.

13    Taylor's contention: The Court has already decided this issue in denying

14  Defendants' motions for summary judgment on Taylor's *Monell* claims.

15    33.    Whether Plaintiff's claims against Pima County are barred as a matter of

16  law by the principles enunciated in *Connick v. Thompson*, 563 U.S. 51 (2011).

17    Defendant Pima County's contention:  Pima County maintains that Plaintiff's

18  claims are barred by *Connick*.

19    Taylor's contention: *Connick* does not "bar" claims, so Taylor cannot

20  meaningfully respond to this contention. As alleged in the Third Amended Complaint,

21  the City and County are liable under *Connick and Monell*, and the Court has denied

22  Defendants' motions for summary judgment on this issue.

23    Defendant City of Tucson: The City does not need to respond to this contention.

24    34.    Whether there was probable cause to arrest Taylor.

25

1    Defendants' contention: Defendants contend there was probable cause to arrest

2  Taylor and that the United States Supreme Court vacated the Ninth Circuit's decision

3  in *Cardwell v. Taylor*.

4    Taylor's contention: As determined by the 9th Circuit in *Cardwell v. Taylor*

5  *(dated September 15, 1982)*, Taylor's arrest at the Pioneer Hotel violated the Fourth

6  Amendment, while that ruling is not binding it is persuasive.

7    35.    Whether Taylor's statements to law enforcement were voluntary.

8    Defendants' contention: Defendants contend that Taylor's statements to law

9  enforcement were voluntary.

10    Taylor's contention: They were not. The former state court and habeas decisions

11  on this issue are not binding. Taylor will be filing a motion in limine on this subject.

12    36.    Whether Taylor was subjected to a *Miranda* violation.

13    Defendants' contention: Defendants contend that Taylor was not subjected to a

14  *Miranda* violation.

15    Taylor's contention: He was. The former state court and habeas decisions on

16  this issue are not binding. Taylor will be filing a motion in limine on this subject.

17    37.    Whether Plaintiff's conspiracy claim is barred as a matter of law absent

18  evidence that the conspiracy was committed by employees acting pursuant to their

19  employers'/entities' established customs, practices, or policies of entering into

20  conspiracies to violate the constitutional rights of criminal defendants.

21    Defendants' contention:  Defendants maintain that Plaintiff's conspiracy claim

22  is barred because there is no evidence that the conspiracy was committed by employees

23  acting pursuant to their employers'/entities' established customs, practices, or policies

24  of entering into conspiracies to violate the constitutional rights of criminal defendants.

25    Taylor's contention: This purported legal issue assumes facts that have not been

decided and contradicts the Court's ruling denying Defendants' motion for summary

judgment on this issue. Taylor contends that a conspiracy was committed and the evidence to be presented at trial is sufficient to establish the conspiracy.

38.     Whether, as a matter of law, and assuming City of Tucson officials or employees were in possession of information that qualified as *Brady* material, whether their possession or knowledge can be imputed to the State prosecution or Pima County.

Defendants' contention:  Defendants contend that any alleged possession or knowledge of *Brady* material by City of Tucson officials or employees cannot be imputed to the State prosecution or Pima County.

Taylor's contention: This is not a disputed legal issue. Long-standing precedent establishes that the State and all its entities, including law enforcement, fire department officials, and prosecutors, are treated as one entity for the purposes of *Brady* violations. Moreover, there is evidence that the PCAO had possession of the Truesdail Report, as it was discovered in the PCAO's file when the CSIU reviewed Taylor's file in 2022.

39.     Whether Plaintiff is barred as a matter of law from recovering any damages in this lawsuit.

Defendants' contention: Defendants maintain that Plaintiff is barred from recovering any damages in this lawsuit.

Taylor's contention: This is not a disputed legal issue. Even if *Heck* applies, Taylor is not precluded from recovering non-incarceration-based damages. Given that Taylor pled "no contest," even if the *Heck* bar applies, whether *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001), *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) and *Lockett v. Ericson*, 656 F.3d 892, 896-97 (9th Cir. 2001) allow Taylor to assert all other claims for damages, except his claim for incarceration damages.

40.     Whether the Court has the authority to expunge Talyor's 2013 convictions.

1   Defendants' contention:  Defendants maintain that the Court does not have the
2   authority to expunge Taylor's 2013 convictions.

3   Taylor's contention: The Court has already decided that it does, and there is no
4   basis for this to be considered a contested issue of law.  Notwithstanding Defendants'
5   footnote, this contention is included in bad faith.

6   41.   Whether, to succeed on his expungement claim, Plaintiff must prove that
7   Pima County had a policy or practice of inducing unconstitutional plea agreements.

8   Defendants' contention: Defendants contend that, to succeed on the
9   expungement claim, Plaintiff must prove that Pima County had a policy or practice of
10   inducing unconstitutional plea agreements.

11   Taylor's contention: The Court has already decided that he does not, and there
12   is no basis for this to be considered a contested issue of law. Notwithstanding
13   Defendants' footnote, this contention is included in bad faith. Additionally, Taylor
14   contends that there is no need to prove a practice or policy because the declaratory
15   relief claim is separate from the *Monell* claims.

16   42.   Whether Taylor's 1972 convictions are automatically reinstated if his
17   2013 convictions are vacated or expunged.

18   Defendants' contention: Defendants contend that Taylor's 1972 convictions are
19   automatically reinstated if his 2013 convictions are vacated or expunged.

20   Taylor's contention: This not an issue to be decided at trial, but a matter for the
21   State and state courts to decide. The boilerplate language in the plea deal is inapplicable
22   to Taylor's plea, and even if it were, because the plea was coerced, that provision is
23   not enforceable.

24

25   **Plaintiff's Contested issues of fact:**

1.     On October 9, 1970, Tucson Fire Chief Slagle wrote a letter to the Pioneer Hotel, confirming a conversation between Dick Darling of the Pioneer Hotel and Inspector Martin of TFD, stating, in part:

- ". . . there have been several fires on the premises of the Pioneer International Hotel, which have apparently both been intentionally set. We have talked to several employees regarding a suspicious looking person who has been seen by them. Until proven otherwise, we will assume that this person is possibly responsible for setting these fires.  Whoever is setting the fires may start more of them"

- It was further pointed out to you that if a fire should occur that were to produce any amount of smoke and/or heat the end result could be as serious life hazard to the occupants of the hotel. All persons on any floor above, as well as those on the floor where a fire occurred, would be in serious jeopardy because of the open stairway – which permits the smoke and heat to travel to all floors. The open stairway would act as a chimney for the fire.

- …it should be obvious that in order to prevent a fire from becoming a disaster, it is extremely important that your Fire Department be notified immediately of an emergency situation.

- DO NOT DISPATCH EMPLOYEES TO CHECK THE EMERGENCY BEFORE CALLING THE FIRE DEPARTMENT!

(Bates TAYLOR012138)

1    Defendant City of Tucson[6]: The content of this letter speaks for itself. The letter

2   and Plaintiff's theories about it were the subjects of the summary judgment briefings.

3   Furthermore, the Court already ruled that Plaintiff cannot pursue any allegations

4   relating to "[a]lternative [s]uspects" (*id.*, 44:10-46:3), and the Court further noted the

5   following:

6       "Kashman possessed the October 9, 1970 letter prior to trial (see Doc. 339-5 at

7       196-201); that Plaintiff has not identified any police reports or other documents

8       showing that Anthony was investigated as an alternative suspect; and that police

9       records indicate Taylor identified Corral in 1970 as a suspect, and Corral

10      implicated Taylor as a guilty party (see Doc. 333-10 at 79-84)." (*Id.*, fn 29).

11   For all these reasons, this factual contention is not relevant to the remaining

12  issues in this lawsuit. The City joins in the County's response to No. 1.

13   Defendant Pima County:[7]  This contention is irrelevant to the claims in this case

14  and was not alleged in the TAC.  (*See* Dkt. 869 at 19, 28, 45–46.)  In addition, the letter

15  speaks for itself and states more than what Taylor excerpts.

16   2.    Prior to December 20, 1970, there had been multiple fires in downtown

17  Tucson for which Donald Anthony was a suspect known to the City Fire Department.

18   Defendant Pima County:  This contention is irrelevant to the claims in this case

19  and was not alleged in the TAC.  (*See* Dkt. 869 at 19, 28, 45–46.)  In addition, Pima

20  County disputes this contention.

21   Defendant City of Tucson: This factual contention is not accurate. It is also not

22  relevant to the remaining issues in this lawsuit. See the City's response to No. 1, in this

23  section, above. The City joins in the County's response to No. 2.

24  ─────────────────────

25  [6] The City joins in all of the County's responses to Plaintiff's Contested Issues of Fact. Unless specifically
    admitted, the City disputes each contention.
    [7] Defendant Pima County joins in all of Defendant City of Tucson's responses to Plaintiff's Contested Issues of
    Fact.  Unless specifically admitted, Pima County disputes each contention.

3.     The Pioneer Hotel lacked numerous safety features, such as sprinkler systems, smoke sensors, or fire alarms, and contained carpet manufactured by Monsanto Company that was unreasonably danger. *D'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 889, 894 (9th Cir. 1977).

Defendant Pima County:   This contention is irrelevant to the claims in this case and was not alleged in the TAC.  (*See* Dkt. 869 at 19, 24, 28.)  Furthermore, the cited appellate decision does not support this contention.

Defendant City of Tucson: Not relevant to the remaining issues in this lawsuit. The parties and attorneys in this civil lawsuit did not participate or litigate the facts or circumstances surrounding the civil case Plaintiff cites to above. Whatever was determined in that case is irrelevant and inadmissible here. The City joins in the County's response to No. 3.

4.     A number of other conditions contributed to the tragic outcome, including fire truck ladders that could not reach the top floors and interior doors that were locked but should not have been.

Defendant Pima County:  This contention is irrelevant to the claims in this case and was not alleged in the TAC.  Nonetheless, a jury determined in 1972 that Taylor set the fire and killed 28 people and his 2013 plea constitutes an admission of guilt to the murder of those same 28 people.

Defendant City of Tucson: See the City's response to No. 3 in this section, above.

5.     Hotel personnel first received notice of the fire between 12:10 and 12:15 a.m. on December 20, when a hotel busboy informed a desk clerk that a man was yelling "fire" from an upper floor hotel window. *State v. Taylor*, 112 Ariz. 68, 72 (1975).

1          Defendant Pima County:  The Arizona Supreme Court's opinion at 537 P.2d

2    938 is merely a summary recitation of facts and does not provide all the evidence that

3    was presented at Taylor's 1972 trial.  Indeed, the Court noted at the outset: "Any

4    attempt at summarizing the facts is aggravated not only by the enormity of the record,

5    which includes over ten thousand pages of transcript."  *State v. Taylor*, 537 P.2d 938,

6    941 (Ariz. 1975).  Evidence presented at the 1972 prosecution is instructive.

7          Defendant City of Tucson: Plaintiff's factual contention, according to the

8    citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.

9    68(1975). The Court noted in its decision the difficulty it had in summarizing the facts,

10   as determined at that time. Even if Plaintiff correctly states what is included in the cited

11   decision, the City contends that the facts relating to the remaining issues in this lawsuit

12   will be introduced at trial, which will include the prior sworn testimony from a number

13   of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in

14   Taylor's criminal case. The jury in this civil trial will decide what facts they believe to

15   be true and accurate, and it will be the jury that applies said facts to the issues and law

16   they are instructed to apply at the end of this trial. The jury will determine what, if any,

17   importance they place on the facts presented. The City joins in the County's response

18   to No. 5.

19         6.    Claus Bergman testified at his deposition that he was the first TPD Ofc.

20   on the scene and that shortly after his arrival, he saw Taylor walking north on Stone

21   Avenue. Bergman at 43:6-45:5

22         Defendant Pima County:  Pima County disputes this contention.  For example,

23   Claus Bergman testified during Taylor's 1972 prosecution that he first saw Taylor

24   standing on the third floor of the Hotel.  Numerous other people saw Taylor on the

25   third floor staring at the fire before police arrived.  And Taylor testified at his 1972

trial that he was inside the Hotel when the fire started and on the third floor when Bergman arrived.

Defendant City of Tucson: The City will refute this fact at trial. The City alleges that Claus Bergman's deposition testimony is inconsistent with his prior sworn testimony provided in Taylor's criminal case, and Bergman did not review his testimony from the Probable Cause hearing or the criminal trial prior to being deposed. This fact will also be refuted with other evidence that will be presented at trial. The City joins in the County's response to No. 6.

7.    Bergman also testified at his deposition that upon seeing Taylor, he instructed Taylor to begin helping guests escape.  Bergman at 43:6-45:5.

Defendant Pima County: Pima County disputes this contention.  For example, Claus Bergman testified during Taylor's 1972 prosecution that he first saw Taylor standing on the third floor, that he (Bergman) went down to the mezzanine, where he saw Taylor again, and that he grabbed Taylor at that point and took him onto the third-floor roof to help.

Defendant City of Tucson: The City will refute this fact at trial. Claus Bergman's deposition testimony is inconsistent with his prior sworn testimony provided in Taylor's criminal case. Bergman did not review his testimony from the probable cause hearing or the criminal trial prior to being deposed. This fact will also be refuted with other evidence that will be presented at trial. The City joins in the County's response to No. 7.

8.    Bergman thus provides a reasonable and entirely legal explanation for Taylor's presence on the third floor after the fire started.

Defendant Pima County:   This is argument, not a factual contention. Nonetheless, Pima County disputes it.  Taylor was standing on the third floor before

Bergman arrived and when Bergman first saw him.   Bergman's contradictory testimony during his 2022 deposition is not credible.

Defendant City of Tucson: This is argument, not a factual contention. See the City's response to No. 7 in this section, above. The City joins in the County's response to No. 8.

9.     Hotel employee David Johnson saw Taylor on the third floor at approximately 12:20 a.m., looking at the flames. *State v. Taylor*, 112 Ariz. 68, 73 (1975).

Defendant Pima County: This misstates and understates the opinion.   The opinion estimates that Johnson "returned downstairs and reported the seriousness of the fire to the desk clerk who in turn called the fire department at approximately 12:20." 537 P.2d at 942.  The opinion also states:  "Johnson had headed north in the third-floor hallway until he encountered Taylor standing alongside the north staircase looking up at the flaming stairs and fourth-floor landing. Taylor continued to merely observe the developing holocaust as Johnson, with limited effectiveness, tried to combat the raging fire with a fire extinguisher from a nearby cabinet."  537 P.3d at 943.  In addition, David Johnson testified that he first saw Taylor standing on the third floor "[l]ooking up toward the fire" that was raging on the third-floor-to-fourth-floor stairway.  He then grabbed a fire extinguisher and started spraying the fire.  When the extinguisher ran out, Johnson went downstairs to get another one.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number

of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 9.

10.    Johnson left and returned to the third floor a short time later, with hotel beverage manager Giles Scoggins.  *Id*. at 73.

Defendant Pima County:  The Arizona Supreme Court's opinion at 537 P.2d 938 is merely a summary recitation of facts and does not provide all the evidence that was presented at Taylor's 1972 trial.  Evidence presented at the 1972 prosecution is instructive.  For example, Johnson testified that, a little after 12:00 p.m., he told Scoggins that there was a fire on the third floor and asked Scoggins for a fire extinguisher.  Johnson, Scoggins, and Glenn Idail (another Hotel custodian) then went up to the third floor.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will

1  determine what, if any, importance they place on the facts presented.  The City joins

2  in the County's response to No. 10.

3        11.      Johnson and Scoggins again saw Taylor on the third floor.  Taylor made

4  statements that Johnson and Scoggins overheard. *Id*. at 73.

5  Defendant Pima County:  This understates the opinion.  The opinion states:

6  "Upon arrival Johnson dropped the two extinguishers he was carrying and

7  unsuccessfully attempted to operate a kinked fire hose the appellant had apparently

8  pulled out of a nearby wall cabinet. At this point Scoggins arrived, whereupon Taylor

9  exclaimed 'I saw two colored boys with African hairdos and they were fighting and

10 they started the fire.'" 537 P.2d at 943.  In addition, Scoggins testified that, when they

11 got to the third floor, Scoggins saw Taylor "[j]ust standing there."  Taylor told him,

12 "There is fire up there."

13 Defendant City of Tucson: Plaintiff's factual contention, according to the

14 citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

15 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts,

16 as determined at that time. Even if Plaintiff correctly states what is included in the cited

17 decision, the City contends that the facts relating to the remaining issues in this lawsuit

18 will be introduced at trial, which will include the prior sworn testimony from a number

19 of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in

20 Taylor's criminal case. The jury in this civil trial will decide what facts they believe to

21 be true and accurate, and it will be the jury that applies said facts to the issues and law

22 they are instructed to apply at the end of this trial. The jury will determine what, if any,

23 importance they place on the facts presented. The City joins in the County's response

24 to No. 11.

25        12.      In the hours after the fire began, Taylor helped guests escape. *Id*. at 73.

1    Defendant Pima County:  This understates the opinion.  The opinion states:

2  "[Taylor], along with numerous other civilians, aided to a disputed degree in rescue

3  efforts directed by the Tucson Police and Fire Departments."  537 P.2d at 943.  In

4  addition, Claus Bergman testified that Taylor began helping guests only after he

5  grabbed him and directed him to help.  And contrary to Taylor's trial testimony that he

6  helped carry two children from their room, the children's father testified that Taylor

7  did not help them.

8    Defendant City of Tucson: Plaintiff's factual contention, according to the

9  citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.

10  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

11  facts, as determined at that time. Even if Plaintiff correctly states what is included in

12  the cited decision, the City contends that the facts relating to the remaining issues in

13  this lawsuit will be introduced at trial, which will include the prior sworn testimony

14  from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

15  hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

16  they believe to be true and accurate, and it will be the jury that applies said facts to the

17  issues and law they are instructed to apply at the end of this trial. The jury will

18  determine what, if any, importance they place on the facts presented. The City joins in

19  the County's response to No. 12.

20    13.    Between 2:00 and 2:10 a.m., Scoggins approached a Tucson Police

21  officer at the hotel and informed him that a black youth present in the early stages of

22  the fire (Taylor) and that the black youth had made statements that Scoggins overheard.

23  *Id*. at 73.

24    Defendant Pima County: This misstates and understates the opinion.  The

25  opinion states: "At approximately 2:00—2:10 a.m. Scoggins approached Officer

Sedlymeyer at police operations headquarters in the street southwest of the hotel and

informed him that a black youth present at the early stages of the fire had claimed to have seen two other youths set the fire."   537 P.2d at 943.   In addition, Scoggins testified that he told several police officers that Taylor had told him that he (Taylor) saw "two colored boys" start the fire.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.   The City joins in the County's response to No. 13.

14.     Based on Scoggins' comments, Tucson police officers began searching for Taylor.  *Id*. at 73.

Defendant Pima County:  This contention requires additional context.  Officer Lewis Adams testified that he began searching for Taylor because he believed he had critical information regarding the origin of the fire: Scoggins told police that Taylor said he (Taylor) saw someone set the fire.  At that moment, Officer Adams was not suspicious of Taylor.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 14.

15.     Between 2:35 and 2:40 a.m., the police located Taylor near the ramp entrance to the third-floor roof area. *Id*. at 73.

Defendant Pima County:  This misstates the opinion.  The opinion states: "At about 2:35—2:40 a.m. Taylor, wearing a white busboy jacket, was spotted by Scoggins near the ramp entrance to the third-floor roof area in the northeast section of the hotel." 537 P.2d at 943.  In addition, the evidence shows that police did not locate Taylor until approximately 3:15 a.m.  When they found him, Taylor was wearing a white jacket, the "type we use in hotels and places, bus jackets," not the green jacket he was wearing when he first saw him near the fire, and he immediately took it off upon seeing Scoggins.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in

Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 15.

16.     One of the officers who located Taylor was Tucson Police officer Lewis Adams.

Defendant Pima County:  Pima County does not dispute this contention with the previous context.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 16.

17.     Adams followed Taylor and then encountered Giles Scoggins, when Scoggins told Adams "that's the boy we are looking for." *Id.* at 73.

Defendant Pima County:  This misstates the opinion.  The opinion states that, after Taylor saw Scoggins and removed the white bus-boy jacket, Taylor approached Officer Adams, tapped him on the shoulder and stated, "There are seven boys on the

seventh floor or eighth floor running around and they don't belong there." After that exchange, Scoggins remarked to Officer Adams, "that's the boy we are looking for." 537 P.3d at 943.  In addition, Scoggins testified that when he saw Taylor, Scoggins said to him: "You are the one that was on the third floor with me at the fire."  Taylor replied, "Yes."  At that point, Scoggins told Officer Adams, "This is the young man we are look for."

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 17.

18.     Taylor then went outside with officer Adams and officer Carstensen.  *Id.* at 73.

Defendant Pima County:  This contention omits critical evidence. Officer Adams testified that, as they walked back down to the lobby, Taylor said to him: "It sure is bad about all those people. It's terrible that somebody would set a fire like that." Once downstairs, Officer Adams asked Taylor if he would accompany him to the police station since he allegedly saw the individuals who started the fire, and Taylor agreed.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 18.

19.    Adams then reported to his supervisor that he had found Taylor. *Id*. at 73.

Defendant Pima County:  This misstates the opinion.  The opinion states that Adams reported to his supervisor "that he had found the individual to whom the manager had referred" and that Taylor agreed to providing a statement.  537 P.2d at 943.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to

1   be true and accurate, and it will be the jury that applies said facts to the issues and law

2   they are instructed to apply at the end of this trial. The jury will determine what, if any,

3   importance they place on the facts presented. The City joins in the County's response

4   to No. 19.

5         20.   Adams then brought Taylor to the police station. *Id*. at 73.

6       Defendant Pima County: This misstates the opinion.  The opinion states that,

7   "After a one-block walk to Adams' vehicle, [Taylor] asked 'You want me to sit in the

8   back seat?' [Officer Adams] responded 'No. I don't see any reason for you to have to

9   sit in the back seat. You are not under arrest. You can sit up front. Well I don't know

10  you. I want to search you for my own protection.' Adams then conducted a 'patdown'

11  search after which they proceeded to the police station."  537 P.2d at 943.

12      Defendant City of Tucson: Plaintiff's factual contention, according to the

13  citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

14  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

15  facts, as determined at that time. Even if Plaintiff correctly states what is included in

16  the cited decision, the City contends that the facts relating to the remaining issues in

17  this lawsuit will be introduced at trial, which will include the prior sworn testimony

18  from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

19  hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

20  they believe to be true and accurate, and it will be the jury that applies said facts to the

21  issues and law they are instructed to apply at the end of this trial. The jury will

22  determine what, if any, importance they place on the facts presented. The City joins in

23  the County's response to No. 20.

24      21.   Taylor was not read his *Miranda* warnings at the hotel or during transport

25  to the police station.

1    Defendant Pima County:  This contention is irrelevant to the claims in this case

2   and the Court has ruled that Taylor cannot recover damages based on his arrest.  (Dkt.

3   869 at 35.)  Nonetheless, the Arizona Supreme Court held that *Miranda* warnings were

4   not necessary at that time, 537 P.2d at 81, and the Federal District Court and Ninth

5   Circuit held that his statements were voluntary.

6    Defendant City of Tucson: Plaintiff's factual contention, according to the

7   citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

8   68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts,

9   as determined at that time. Even if Plaintiff correctly states what is included in the cited

10   decision, the City contends that the facts relating to the remaining issues in this lawsuit

11   will be introduced at trial, which will include the prior sworn testimony from a number

12   of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in

13   Taylor's criminal case. The jury in this civil trial will decide what facts they believe to

14   be true and accurate, and it will be the jury that applies said facts to the issues and law

15   they are instructed to apply at the end of this trial. The jury will determine what, if any,

16   importance they place on the facts presented. The City joins in the County's response

17   to No. 21.

18    22.    Before leaving for the police station, Adams conducted a pat down

19   search of Taylor.  *Id*. at 73.

20    Defendant Pima County: This misstates the opinion.  The opinion states that,

21   "After a one-block walk to Adams' vehicle, [Taylor] asked 'You want me to sit in the

22   back seat?' [Officer Adams] responded 'No. I don't see any reason for you to have to

23   sit in the back seat. You are not under arrest. You can sit up front. Well I don't know

24   you. I want to search you for my own protection.' Adams then conducted a 'patdown'

25   search after which they proceeded to the police station."  537 P.2d at 943.  This

contention is also irrelevant to the claims in this case.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 22.

23.     Ofc. Adams did not report finding anything as a result of this pat-down search including matches.

Defendant Pima County: This contention is pure speculation and not relevant to the claims in this case.  It is also not supported by the evidence.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will

determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 23.

24.   Adams and Taylor arrived at the police station at approximately 2:44 a.m.  *Id*. at 73.

Defendant Pima County: The Arizona Supreme Court's opinion at 537 P.2d 938 is merely a summary recitation of facts and does not provide all the evidence that was presented at Taylor's 1972 trial.  Evidence presented at the 1972 prosecution is instructive.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 24.

25.   Sgt. Rosetti, in the presence of 3 to 5 other officers, then questioned Taylor in a "coffee room" about why he was at the Pioneer Hotel. *Id*. at 74.

Defendant Pima County:  This misstates the opinion.  The opinion states: "Upon entering the station at approximately 2:44 a.m., [Officer Adams] told Taylor to 'have a seat' in the coffee room.  Adams then briefed Desk Sgt. Kenneth Krieger, who in turn said he would get detectives.  After entering the coffee room, a Sgt. Rossetti, who

had had previous contacts with [Taylor], asked [Taylor], who was seated in the room with three to five police officers, whether he recognized him (Rossetti) and 'how he had occasion to be at the Pioneer Hotel.' Taylor stated that he did not recognize the sergeant and that he had gone to the hotel around 10:00 p.m. to see a friend named Tatum employed there as a dishwasher; that the rear door security guard stated Tatum had already gone home; that he proceeded to enter the building anyway through the parking garage and headed towards a party he knew would be going on because he had seen people decorating the previous night; that two blacks with Afro hairstyles (whom he later said were Mexicans) were fighting on the third floor and that he saw fire; that 'it was a very bad fire. I don't know why anyone would want to do a thing like that'; and that he helped firemen by yelling in Spanish to guests who were about to jump from upper-floor windows." 537 P.2d at 944. Sgt. Rossetti also testified that Taylor said that the people fleeing the Hotel and jumping out of the windows were "paranoid."

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 25.

26.     Taylor made statements in response to those questions, about why he was at the hotel prior to the fire and what he did earlier that day.  *Id*. at 74.

Defendant Pima County:  This misstates the opinion.  The opinion states: "After entering the coffee room, a Sgt. Rossetti, who had had previous contacts with [Taylor], asked [Taylor], who was seated in the room with three to five police officers, whether he recognized him (Rossetti) and 'how he had occasion to be at the Pioneer Hotel.' Taylor stated that he did not recognize the sergeant and that he had gone to the hotel around 10:00 p.m. to see a friend named Tatum employed there as a dishwasher; that the rear door security guard stated Tatum had already gone home; that he proceeded to enter the building anyway through the parking garage and headed towards a party he knew would be going on because he had seen people decorating the previous night; that two blacks with Afro hairstyles (whom he later said were Mexicans) were fighting on the third floor and that he saw fire; that 'it was a very bad fire. I don't know why anyone would want to do a thing like that'; and that he helped firemen by yelling in Spanish to guests who were about to jump from upper-floor windows."  537 P.2d at 944.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will

determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 26

27.    At approximately 3:05 a.m., officer Adams took Taylor to another room, where Adams again questioned Taylor about the evening's events. *Id*. at 74.

Defendant Pima County:  This misstates the opinion.  The opinion states: "At approximately 3:05 a.m. Officer Adams asked the appellant to accompany him to the main floor briefing room and, once there, to relate the evening's events."  537 P.2d at 944.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 27.

28.    Taylor made statements in response to those questions.  *Id*. at 74.

Defendant Pima County:  This misstates the opinion.  The opinion states: "[Taylor] stated he had gone to the Pioneer in search of an employee named Tatum whom he discovered was not there; that he hung around a party he discovered on the second floor until an unknown woman stated she smelled smoke which could then be seen coming from air vents; and that he ran to the third floor and saw a Mexican boy

and a Caucasian boy running."  537 P.2d at 944.  This contention also understates the evidence.  Officer Adams testified that Taylor told him the following: he went to the Hotel "to see Mr. Tatum who works at the hotel" (but he did not know his first name); when he got the Hotel, Tatum was not there but noticed the party on the second floor of the hotel and hung around there for a while when a female, who he did not know (and could not provide a description), said that she smelled smoke; he saw smoke coming out of a vent, and then went to the third floor and saw "two boys running."; one of the boys was a "Mexican male" about 19, six foot 160 pounds, and the other one was a white male who he could give … no description of."; he then saw Scoggins, who asked him to help; when asked again about the two boys he saw running, Taylor said that he had seen them earlier in the Hotel "and had tried to run them out because he thought they were trying to rob somebody."; he lied to Officer Adams earlier (about seeing seven boys on the seventh or eighth floor) because he "didn't want to rat on anyone; and he entered the Hotel through the elevator in the back and knew the Hotel very well because he used to work there.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any,

importance they place on the facts presented. The City joins in the County's response to No. 28.

29. Adams then responded that Taylor's 3:05 a.m. statements were inconsistent with Taylor's earlier statements, and he read Taylor his *Miranda* rights. *Id.* at 74.

Defendant Pima County:  This misstates the opinion.  The opinion states: "Adams then interjected that this sounded inconsistent with what he had previously been told and proceeded to read the departmental rights card."  537 P.2d at 944. This contention also understates the evidence.  Officer Adams testified that Taylor's statements were "quite different than what Mr. Scoggins had" told him Taylor said, which made Officer Adams "suspicious."  At that point, Officer Adams read Taylor his *Miranda* rights.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 29.

30. Taylor then made additional statements.  *Id.* at 74.

1      Defendant Pima County:   This misstates the opinion   The opinion states:

2 "According to Adams' testimony, [Taylor] responded 'sure' indicating that he

3 understood these rights and agreed to go through his story again. Taylor then stated he

4 had gone to the third floor and saw two men, one of them the manager, trying to

5 extinguish a fire and that he was asked to turn the hose valve on in what proved to be

6 an unsuccessful attempt to get it to work; that at the manager's request he obtained fire

7 extinguishers from downstairs but they had little effect on the fire and he thus resorted

8 to helping people evacuate the hotel; that he had, prior to this, seen two boys running

9 in the halls and had tried to run them out thinking they were planning to rob patrons

10 and had lied to Adams about them in the previous conversation because he did not

11 want to 'rat' on anyone; and that he had entered the hotel that evening through the rear

12 parking garage and was extremely familiar with the layout of the Pioneer because he

13 had worked there in the past."  537 P.2d at 944.

14      Defendant City of Tucson: Plaintiff's factual contention, according to the

15 citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

16 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

17 facts, as determined at that time. Even if Plaintiff correctly states what is included in

18 the cited decision, the City contends that the facts relating to the remaining issues in

19 this lawsuit will be introduced at trial, which will include the prior sworn testimony

20 from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

21 hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

22 they believe to be true and accurate, and it will be the jury that applies said facts to the

23 issues and law they are instructed to apply at the end of this trial. The jury will

24 determine what, if any, importance they place on the facts presented. The City joins in

25 the County's response to No. 30.

31.     At approximately 3:30 a.m. Tucson Police detective Gassaway arrived and was briefed by Adams about Taylor's prior statements.  *Id*. at 74.

Defendant Pima County:  This misstates the opinion.  The opinion notes that Gassaway "arrived at the police station at 3:00 a.m."  537 P.2d at 960 n.7 (Lockwood, J., dissenting).  It further states that Officer Adams briefed Det. Gassaway "as to the statements made by Scoggins and Taylor" and Sgt. Rossetti briefed Gassaway "as to what had been discussed in the coffee room," and that Taylor was "turned over to Gassaway and Det. Milan Murcheck" at approximately 3:30 a.m.  *Id*. at 944.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 31.

32.     Taylor was then turned over to Gassaway and Detective Murchek. *Id*. at 74.

Defendant Pima County:  Pima County does not dispute this contention with the previous context.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 32.

33.      Prior to that conversation, Rosetti briefed Gassaway about the statements Taylor made in the coffee room earlier.  *Id*. at 74.

Defendant Pima County:  Pima County does not dispute this contention with the previous context.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 33.

34.     Taylor was then taken to another room and questioned by Gassaway and Murchek.  *Id*. at 75.

Defendant Pima County:  This understates the opinion.  The opinion states: "Taylor was led upstairs to a second-floor detective-division interview room and, in the presence of Gassaway and Murchek, asked to describe what he had seen and done since the previous afternoon."  537 P.2d at 944.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 34.

35.     They asked Taylor to describe his actions since the previous afternoon and Taylor made statements.  *Id*. at 75.

Defendant Pima County:  This understates the opinion.  The opinion states: "[Taylor was] asked to describe what he had seen and done since the previous afternoon. Taylor stated that he had ridden downtown to a pool hall in the afternoon with a friend name Mike Tatum; that he walked to the bus station, back to the pool hall, and then to the Pioneer around 10:30 p.m. in order to get a ride with Mike's brother; that, after the security guard had said Tatum had already left, he hung around

a second-floor party for which he had previously seen people prepare; that while talking to some Mexican friends, a Mexican lady stated 'I smell smoke' and saw the manager running up the stairs with a fire extinguisher; that, after following the manager to the third floor, he was told to remove the fire hose from its cabinet but water would not come out when the valve was turned on; that the manager said 'let's get out of here' when the fire got out of control, and so he went down to the lobby and there spoke in Spanish with a burned Mexican girl; and that he had seen a Caucasian male and a long-haired Mexican male fighting near the scene of the fire but had seen only the backs of their heads. At this point Taylor drew a diagram for Det. Murchek in order to illustrate the location of the fire and the unknown individuals. Murchek testified the appellant used this diagram to illustrate two separate fires he had allegedly seen: one on the north staircase steps between the third and fourth floors and another on steps leading from the third floor down to the second floor." 537 P.2d at 944–45. Sgt. Gassaway testified to more: "[Taylor] stated he had ridden down with Mike Tatum to the pool hall downtown and left the pool hall and gone to the bus station; that upon his leaving the bus station he returned to the pool hall and Mike Tatum wasn't there; that he then walked to the Pioneer Hotel; that he had been by there the previous evening and seen them setting up tables and assumed there was going to be a teenage party. He said he went to the Pioneer Hotel for that reason, and then another reason he wanted to see a friend of his whose last name was Tatum. He didn't know the first name, but this friend was a brother of Mike Tatum. He stated that when he went over he thought it might be a little late to see tatum; that Tatum usually got off work at 10:00, 10:15, and it was 10:30 at that time."; Taylor said that he got to the Pioneer Hotel and talked to the security guard, who told him that Tatum had already gone home; Taylor said that he then went to the second floor, where there was a party in progress and he "hung around the party talking to friends of his."; Taylor said that, while talking to these friends, a

"Mexican lady" said, "I smell smoke."; Taylor said that he then saw Scoggins running up the stairs carrying two fire extinguishers; Taylor said that he followed Scoggins upstairs and upon reaching the third floor, Scoggins instructed him to remove the fire hose; while he was attempting to do this, Taylor said that he saw "a Mexican male and a white male with long hair run from the area."; Det. Gassaway asked Taylor if he knew the "Mexican male" and "white male with long hair," and Taylor said, "Well, I don't want to fink on anybody."; when Det. Gassaway pressed Taylor, Taylor said, "Well, I just saw the back of their heads. I don't know."

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 35.

36.     At approximately 3:55 a.m., Gassaway left the room to speak with Scoggins.  *Id*. at 75.

Defendant Pima County:  This understates the opinion. The opinion states: "At approximately 3:55 a.m. Det. Gassaway was called out of the interview room to talk to Scoggins and a hotel security guard who had come down to the station.  537 P.2d at 945.

1       Defendant City of Tucson: Plaintiff's factual contention, according to the
2  citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.
3  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the
4  facts, as determined at that time. Even if Plaintiff correctly states what is included in
5  the cited decision, the City contends that the facts relating to the remaining issues in
6  this lawsuit will be introduced at trial, which will include the prior sworn testimony
7  from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial
8  hearings in Taylor's criminal case. The jury in this civil trial will decide what facts
9  they believe to be true and accurate, and it will be the jury that applies said facts to the
10  issues and law they are instructed to apply at the end of this trial. The jury will
11  determine what, if any, importance they place on the facts presented. The City joins in
12  the County's response to No. 36.

13       37.    Gassaway reentered the interrogation room, told Taylor he was not
14  telling the truth and advised him of his *Miranda* rights.  *Id*. at 75.

15     Defendant Pima County:  This understates the opinion.  The opinion states:
16  "Upon reentering at approximately 4:15 a.m., Gassaway told [Taylor] he was not
17  telling the truth or was holding back the identity of the individuals allegedly seen
18  fighting in the hotel and proceeded to advise him of his rights from the departmental
19  rights card."  537 P.2d at 945.

20     Defendant City of Tucson: Plaintiff's factual contention, according to the
21  citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.
22  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the
23  facts, as determined at that time. Even if Plaintiff correctly states what is included in
24  the cited decision, the City contends that the facts relating to the remaining issues in
25  this lawsuit will be introduced at trial, which will include the prior sworn testimony
from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 37.

38.     Taylor then made additional statements about the same subjects he previously gave statements about. *Id.* at 75.

Defendant Pima County:  This understates the opinion.  The opinion states: "Taylor allegedly responded that he understood these rights and agreed to answer the detective's questions. [Taylor] began repeating his story stating that he had walked downtown the previous afternoon, walked back home, rode downtown to a poolhall with Mike Tatum, gone to the bus station, back to the poolhall and found Tatum had gone, and then proceeded to the Pioneer in search of him. Challenged by Gassaway, the appellant admitted lying about Tatum working at the hotel because 'you were making hard faces on me and I just wanted to get you off my back.' He then stated that he went to the Pioneer because he knew there would be a party there and possibly might see some friends whom he later admitted he did not encounter. Confronted with Scoggins' version of [Taylor's] statements, a heated exchange ensued during which Taylor said he now remembered having gone to the third floor before the manager, but that the manager was mistaken as to what had been said and that the police could not prove otherwise, and that he would not 'fink' on whom he actually saw. He eventually admitted that he saw no one run from the scene of the fire. [Taylor] then asserted that he had seen three Caucasians and two Mexicans unsuccessfully attempting to enter the hotel's liquor storage room and that the Mexican, who looked mean and had a gun in his waistband, probably started the fire. Taylor refused to 'fink' on their identities saying only that one of the individuals sold drugs in a local park or poolhall. Another

heated exchange occurred when Gassaway suggested the fire was set in conjunction with a plan to burglarize rooms, the appellant repeatedly screaming that the police could not prove anything and that 'I didn't kill those people.'   Taylor initially said he put on the white jacket in order to pass as an employee and steal drinks, but subsequently stated he put the jacket on only upon finding it after the fire broke out. [Taylor] at first rejected and then confirmed Scoggins' assertion that he already had the fire hose out of the cabinet and was attempting to operate it when Scoggins arrived at the third floor north staircase. Gassaway testified Taylor admitted having set fire in the past to garbage receptacles, one or two trees, and had considered burning down an old empty house, but repeatedly denied responsibility for the Pioneer fire."  537 P.2d at 945–46. Sgt. Gassaway actually testified to more: when Det. Gassaway told Taylor that he believed that Taylor started the fire, "not intending to hurt anybody, but to cause a little smoke … a little confusion," Taylor denied it and said that Det. Gassaway "didn't have any witnesses" and "couldn't prove anything."; and during his interview, Taylor smoked cigarettes and used his own matches to light his cigarettes.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will

determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 38.

39.     Between 5:40 and 6:00 a.m., Detective Rex Angeley, who had been briefed by other officers about Taylor's earlier statements, again interviewed Taylor. *Id*. at 76.

Defendant Pima County: This misstates the opinion.   The opinion states: "Between 5:40 and 6:00 a.m., Det. Rex Angeley, who had been briefed by Murcheck, Moore and Gassaway, entered the interview room in which the appellant was now seated alone. Angeley testified that he had encountered Taylor between forty and fifty times since 1965 when he was working in the juvenile division and was recognized upon entering the room."  537 P.2d at 946.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68, 73, the Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 39.

40.     Angeley asked Taylor why he was at the hotel and Taylor made statements. *Id*. at 76.

1    Defendant Pima County:  This understates the opinion.  The opinion states:

2    "[Taylor] stated he had gone to the Pioneer to see an employee named Grigsby but the

3    security guard would not let him in; that he returned later to see an employee named

4    Tatum and was again denied admission but nevertheless was able to get inside and

5    hung around a second-floor party; that he saw two black boys with Afro hairstyles on

6    the fourth floor, who he later said were two Mexican boys, and that one had a gun and

7    looked suspicious and that he witnessed them set the fire but was unable to give a

8    description; that it actually was a long-haired Caucasian boy and a hippy Mexican

9    whom he saw on the fourth floor and that he saw the Mexican whom he recognized as

10   a dope-pusher in a local park and poolhall, set the fire."  537 P.2d at 946.  In addition,

11   Det. Angeley testified that Taylor admitted to making false statements to the other

12   officers/detectives.

13   Defendant City of Tucson: Plaintiff's factual contention, according to the

14   citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.

15   68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

16   facts, as determined at that time. Even if Plaintiff correctly states what is included in

17   the cited decision, the City contends that the facts relating to the remaining issues in

18   this lawsuit will be introduced at trial, which will include the prior sworn testimony

19   from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

20   hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

21   they believe to be true and accurate, and it will be the jury that applies said facts to the

22   issues and law they are instructed to apply at the end of this trial. The jury will

23   determine what, if any, importance they place on the facts presented. The City joins in

24   the County's response to No. 40.

25   41.   Angeley's interrogation lasted 35 to 40 minutes.  *Id*. at 76.

1       Defendant Pima County:  Det. Angeley testified that he interviewed Taylor for

2   approximately 15 to 20 minutes.

3       Defendant City of Tucson: Plaintiff's factual contention, according to the

4   citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

5   68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

6   facts, as determined at that time. Even if Plaintiff correctly states what is included in

7   the cited decision, the City contends that the facts relating to the remaining issues in

8   this lawsuit will be introduced at trial, which will include the prior sworn testimony

9   from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

10  hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

11  they believe to be true and accurate, and it will be the jury that applies said facts to the

12  issues and law they are instructed to apply at the end of this trial. The jury will

13  determine what, if any, importance they place on the facts presented. The City joins in

14  the County's response to No. 41.

15      42.    At the conclusion of that interview, Taylor asked to take a lie detector

16  test, which the police agreed to.  *Id*. at 76.

17      Defendant Pima County:  Pima County does not dispute this contention with

18  the previous context.

19      Defendant City of Tucson: Plaintiff's factual contention, according to the

20  citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

21  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

22  facts, as determined at that time. Even if Plaintiff correctly states what is included in

23  the cited decision, the City contends that the facts relating to the remaining issues in

24  this lawsuit will be introduced at trial, which will include the prior sworn testimony

25  from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 42.

43.     Taylor was then again questioned, this time by Tucson Fire Department Capt. Lynden Gilmore and Taylor made statements. *Id*. at 76.

Defendant Pima County:  This understates the opinion.  The opinion states: "Taylor stated he had heard a woman mention she smelled smoke and ran up to the fourth floor and saw the fire."  537 P.2d at 946.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 43.

44.     The polygraph examination was administered between 6:50 and 7:00 a.m. *Id*. at 76.

Defendant Pima County:  This misstates the opinion.  The opinion states: "At approximately 6:50—7:00 a.m. the appellant was taken to a nearby building for a

1    polygraph examination which was administered by Officer Douglas Scoopmire at 7:15
2    a.m." 537 P.2d at 946.

3         Defendant City of Tucson: Plaintiff's factual contention, according to the
4    citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.
5    68 (1975).  The Court noted in its decision the difficulty it had in summarizing the
6    facts, as determined at that time. Even if Plaintiff correctly states what is included in
7    the cited decision, the City contends that the facts relating to the remaining issues in
8    this lawsuit will be introduced at trial, which will include the prior sworn testimony
9    from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial
10   hearings in Taylor's criminal case. The jury in this civil trial will decide what facts
11   they believe to be true and accurate, and it will be the jury that applies said facts to the
12   issues and law they are instructed to apply at the end of this trial. The jury will
13   determine what, if any, importance they place on the facts presented. The City joins in
14   the County's response to No. 44.

15        45.    Ofc. Douglas Scoopmire administered the polygraph.  *Id*. at 76.

16        Defendant Pima County:  Pima County does not dispute this contention with
17   the previous context.

18        Defendant City of Tucson: Plaintiff's factual contention, according to the
19   citation included therein is taken from the 1975 decision *State v. Taylor*, 112 Ariz. 68
20   (1975).  The Court noted in its decision the difficulty it had in summarizing the facts,
21   as determined at that time. Even if Plaintiff correctly states what is included in the cited
22   decision, the City contends that the facts relating to the remaining issues in this lawsuit
23   will be introduced at trial, which will include the prior sworn testimony from a number
24   of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in
25   Taylor's criminal case. The jury in this civil trial will decide what facts they believe to
     be true and accurate, and it will be the jury that applies said facts to the issues and law

they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 45.

46.     The examination showed no signs of deception, according to Scoopmire's report and in fact Taylor denied setting the fire during all the questioning.

Defendant Pima County:  The polygraph report does not state that there were no signs of deception. Moreover, Pima County contends that the polygraph report shows that Taylor admitted to "being arrested about 30 times for various reasons, admitted stealing several cars and not getting caught," "[a]dmitted starting fires when he was 'younger,' including garbage cans and x-mas trees," "admitted reporting several false fire alarms also when he was 'younger,'" stated "he was at the Hotel Saturday during the day 'scoping it out' and returned at night because he knew there was going to be a party," and stated "he stole a coke and some food," (PIMA COUNTY 017260.) The report also states that Taylor "kept repeating 'I wouldn't kill no one' (or words to that effect) over and over rather than denying lighting a fire."  (*Id*.)

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any,

importance they place on the facts presented. The City joins in the County's response to No. 46.

47.     Taylor was formally arrested, for arson, at approximately 8:00 a.m.  *Id*. at 76.

Defendant Pima County:  This misstates the opinion.  The opinion states: "Sgt. Patrick McGuire arrived at the station shortly before 8:00 a.m. to assume supervisory duties from Sgt. Moore. Det. Angeley then briefed them both as to his knowledge of the case. Soon thereafter Sgt. McGuire instructed the detectives to place Taylor under arrest for arson." 537 P.2d at 946.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 47.  The City adds that this statement is incorrect.  Taylor was not charged with arson until weeks later.

48.     After his formal arrest for arson, Taylor was again questioned about why he had been at the Pioneer Hotel, this time by Tucson Police detective Dave Smith, at approximately 9:00 a.m.

1    Defendant Pima County:  This misstates the opinion.  The opinion states: "At

2    approximately 9:00 a.m. Det. David Smith, who had been briefed by Sgt. McGuire,

3    interrogated the defendant in a second-floor detective-division interview room for

4    about ten minutes."  537 P.2d at 946.  In addition, Det. Smith testified that he was

5    asking Taylor questions while waiting for transportation to the Pima County Juvenile

6    Court Center.

7    Defendant City of Tucson: Plaintiff's factual contention, according to the

8    citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz.

9    68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

10   facts, as determined at that time. Even if Plaintiff correctly states what is included in

11   the cited decision, the City contends that the facts relating to the remaining issues in

12   this lawsuit will be introduced at trial, which will include the prior sworn testimony

13   from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

14   hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

15   they believe to be true and accurate, and it will be the jury that applies said facts to the

16   issues and law they are instructed to apply at the end of this trial. The jury will

17   determine what, if any, importance they place on the facts presented. The City joins in

18   the County's response to No. 48.  The City adds Taylor was not charged with arson

19   until weeks later.

20   49.    Smith read Taylor his *Miranda* warnings and Taylor made statements.

21   *Id.* at 76. He still denied setting the fire.

22   Defendant Pima County:  This understates the opinion.  The Opinion states:

23   "Smith read the departmental rights card, and Taylor responded that he understood and

24   agreed to answer the detective's questions. [Taylor] stated that he had gone to the

25   Pioneer for a party about which he had heard; that he had tried to restrain one of four

Mexicans looting rooms but was unable to because a police officer told him to go

home; that this Mexican must have started the fire because of the look in his eye; and when asked if he set the fire Taylor stated, 'No, I didn't want to kill all those people.'" 537 P.2d at 946.  In addition, Det. Smith testified that: Taylor did not know who was hosting the party; during their conversation, Taylor asked Det. Smith for a cigarette, which Det. Smith obliged and asked Taylor if he had a match, to which Taylor stated "no," so Det. Smith lit the cigarette for him; Taylor told Det. Smith that he "didn't set the fire"; and that, during their conversation, Taylor was "erratic," "one time calm and the next time extremely belligerent."

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 49.

50.     Smith then took Taylor to the juvenile center, at approximately 9:30 a.m. *Id*. at 76.

Defendant Pima County:  Pima County does not dispute this contention with the previous context.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.

68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 50.

51.     At that time, Taylor requested a lawyer.  *Id*. at 76.

Defendant Pima County:  Pima County does not dispute that Taylor requested a lawyer once at the Pima County Juvenile Court Center.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 51.

52. The 9th Circuit found that Taylor was arrested at the hotel and that his statements made during the all-night interrogation should have been excluded under *Dunaway v. New York*, 442 U.S. 200 (1979). *Taylor v. Cardwell*, No. 81-5570 (9th Cir. Sept. 15, 1982) (Doc. 341-5), at 2-3

 Defendant Pima County: This ruling is irrelevant and inadmissible. This decision was later reversed by the United States Supreme Court, and, on remand, the Ninth Circuit held that the statements were voluntary.

Defendant City of Tucson: This ruling is irrelevant and not admissible. This Ninth Circuit 1982 decision was later reversed by the United States Supreme Court. *Cardwell v. Taylor*, 461 U.S. 571 (1983). The final Ninth Circuit ruling after remand from the United States Supreme Court is at *Taylor v. Cardwell*, No. 81-5570 (9th Cir. Apr. 30, 1984). (TAYLOR010713–10719). The City joins in the County's response to No. 52.

53. Shortly thereafter, Smith searched Taylor, finding five packs of matches. *Id*. at 76-77.

Defendant Pima County: This understates the evidence.  Det. Smith testified that he found four books of matches in Taylor's pockets and Taylor pulled a fifth book of matches from his underwear. When Det. Smith asked Taylor where he had gotten the matches, Taylor said he "didn't know; that a police officer gave him one of them." Det. Smith returned to the station and asked the other detectives whether any of them had given Taylor a book of matches; nobody said they did.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony

from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 53.

54.     Several of the packs of matches were partial and used.

Defendant Pima County:  This understates the evidence.  One book (Van Wyck) had 17 matches; one book (Royal Inns of America) had four matches; one book (Lucky's Supermarket) had one match; one book (Van Wyck) had no matches; and one book (Spanish Trail Motel) had 9 matches.  A book of Royal Inns of America matches was found in the burnt rubble in the Hotel.

Defendant City of Tucson:  Plaintiff's factual contention, according to the citation included therein is taken from the 1975 decision in  *State v. Taylor*, 112 Ariz. 68 (1975).  The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented.  The City joins in the County's response to No. 54.

55.     During the police questioning, Taylor never admitted to setting the fire.

1      Defendant Pima County:  Pima County disputes this contention.  Taylor made

2  many statements to investigators suggesting that he set the fire.

3      Defendant City of Tucson: Plaintiff's factual contention, according to the

4  citation included therein is taken from the 1975 decision in *State v. Taylor*, 112 Ariz.

5  68 (1975).  The Court noted in its decision the difficulty it had in summarizing the

6  facts, as determined at that time. Even if Plaintiff correctly states what is included in

7  the cited decision, the City contends that the facts relating to the remaining issues in

8  this lawsuit will be introduced at trial, which will include the prior sworn testimony

9  from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial

10  hearings in Taylor's criminal case. The jury in this civil trial will decide what facts

11  they believe to be true and accurate, and it will be the jury that applies said facts to the

12  issues and law they are instructed to apply at the end of this trial. The jury will

13  determine what, if any, importance they place on the facts presented.  The City joins

14  in the County's response to No. 55.

15      56.     No one from the Tucson Police Department or Tucson Fire Department

16  ever interviewed or attempted to interview Donald Anthony about the fire.

17      Defendant Pima County:  This contention is irrelevant to the claims in this case

18  and was not alleged in the TAC.  (See Dkt. 869 at 19, 28, 45–46.)  Nonetheless,

19  investigators did not have any reason to believe that Anthony was involved.

20      Defendant City of Tucson: This fact is not relevant to the remaining issues in

21  this case. The Court already ruled that Plaintiff cannot pursue any allegations relating

22  to "[a]lternative [s]uspects" (Dkt. 869, 44:10-46:3), and the Court further noted "that

23  Plaintiff has not identified any police reports or other documents showing that Anthony

24  was investigated as an alternative suspect…" (*Id.*, fn 29). The City joins in the

25  County's response to No. 56.

      57.     None of Taylor's multiple interviews were tape-recorded.

Defendant Pima County:  This fact is not relevant to the issues in this case.

Defendant City of Tucson: This fact is not relevant to the remaining issues in this case. (*See* Dkt. 869). The City intends to file a motion in limine to limit or preclude Plaintiff from arguing or insinuating that the lack of audio recordings from those interviews violated Taylor's constitutional rights. The officers' interviews or interrogations of Taylor were determined to be lawful, and his statements were allowed at the 1972 trial. The City joins in the County's response to No. 57

58.     Officers did not preserve any rough notes from these interviews.

Defendant Pima County:  This fact is not relevant to the issues in this case.

Defendant City of Tucson: This fact is not relevant to the remaining issues in this case. (See Dkt. 869). The City intends to file a motion in limine to preclude Plaintiff from arguing or insinuating that the lack of "rough notes" from those interviews violated Taylor's constitutional rights. The officers' interviews or interrogations of Taylor were determined to be lawful, and his statements were allowed at the 1972 trial. The City joins in the County's response to No. 58.

59.     On December 30 and 31, 1970, C.W. Holmes, Jr., collected debris from the fire remnants. Holmes letter to City Attorney 1/15/1971 Bates 9985-87;  Transcript of 2/2/1971 Probable Cause Hearing at page 382-383, Bates TAYLOR010575-76.

Defendant Pima County:  This contention is too general.  Cy Holmes stated that he conducted an examination and investigation of the Pioneer Hotel on December 30 and 31, 1970, and removed, tagged for identification, and "retained in the locked security protection" very specific "physical evidence."

Defendant City of Tucson: Holmes's letter to the City Attorney dated January 15, 1971, speaks for itself.  And this is also not an accurate or sufficient description of Holmes's cited testimony at the probable cause hearing.  The City joins in the County's response to No. 59.

60.     TFD Fire Captain Gilmore also collected samples, which he sent to the Truesdail Laboratory. See Truesdail report and Plf SOF ¶3.

Defendant Pima County:  This is not accurate.  The Truesdail Report does not state who collected  the "[s]ix quart mason jars of charred debris" or when they were collected.

Defendant City of Tucson: This is inaccurate.  On December 23, 1970, (TFD Captain) Lyn Gilmore and Glen Miller removed floor debris samples from the Pioneer Hotel.  It is not exactly clear who sent The samples were submitted to the Truesdail Laboratory, and the Laboratory's report was sent to Glen Miller. The City joins in the County's response to No. 60.

61.     On December 20, 1970 and December 24, TFD Captain L.D. Gilmore conducted burn tests of representative areas from the Pioneer Hotel. (TAYLOR010563, TAYLOR010562).  Holmes conducted tests at his house. (Transcript of 2/2/1971 Probable Cause Hearing at page 473-475, Bates TAYLOR001418-20) Smyth also conducted tests at his home on 7/9/1974 – including on carpet (Smyth Affidavit at p. 75 BATES TAYLOR9816 (Entire Affidavit is 9742-9843)) and at the hotel on 7/13/1974, on the carpet (*Id*. at p. 78 et seq).

Defendant Pima County:  This is inaccurate.  Cpt. Gilmore was present during a burn test in the Hotel by igniting a book of matches and placing them flat against the vertical run of the carpet, and that the carpet ignited and a fire spread.  Cy Holmes conducted a burn test on a carpet sample at his home.  Marshall Smyth contends in his November 4, 2011 Affidavit that, upon his recommendation to "the attorneys for the Pioneer Hotel and insurance adjusters, he conducted "small exploratory ignition and flammability tests of carpet in the hotel and at home" between December 23, 1970 and February 1, 1972, that he conducted another "small sized exploratory fire test[])in his back yard on July 9, 1974, and that he conducted a "large scale 'carpet, jute pad and

cotton pad only' fire test simulation "on behalf of the Pioneer Hotel" on July 13, 1974, in preparation of the "pending October 1974 Civil Federal Court Case 71CIV20 (d'Hedouville vs. Pioneer Hotel Company et. al.)."

Defendant City of Tucson: The cited documents speak for themselves. And this is an inadequate description of Holmes' testimony at the probable cause hearing.  The City joins in the County's response to No. 61.

62.    These tests revealed that the fire could have been started by the dropping of a single match. Transcript of 2/2/1971 Probable Cause Hearing at page 475-476, Bates TAYLOR001420-21.

Defendant Pima County:  This is not accurate.  Cy Holmes testified that when he conducted the burn test at his home, a "single paper match placed on the horizontal carpet would not ignite the carpet," but that "[t]wo paper matches placed within a half-inch of each other would consistently ignite."  He further testified that a "single paper match" and a single wooden match would ignite the "vertical" surfaces, and that it took "very little" to ignite.

Defendant City of Tucson: This is argument, not a factual contention. Holmes made no such statement in the testimony that is the sole cited source. The City joins in the County's response to No. 62.

63.    The City of Tucson Fire Department retained Cyrillus Holmes to investigate the cause of the fire on or about December 23 or 25, 1970.  (Transcript of 2/2/1971 Probable Cause Hearing at page 403-405; Bates TAYLOR01349-1351)

Defendant Pima County:  This is not accurate.  Cy Holmes testified that, on December 23, 1970, the City of Tucson asked him to investigate "the point of origin and determine the cause."

1    Defendant City of Tucson: This is inaccurate. The City hired Holmes to
2 investigate the "origin and cause" of the Pioneer Hotel fire. The City joins in the
3 County's response to No. 63.

4    64.    On December 30, 1970, Holmes traveled to Tucson to inspect the hotel
5 and other evidence as part of his investigation. (Transcript of 2/1/1971 Probable Cause
6 Hearing at page 307; Bates TAYLOR01250)

7    Defendant Pima County:  This contention is too general.  Holmes arrived in
8 Tucson in the early morning of December 30, 1970 "to examine the physical evidence
9 remaining at the fire scene and to draw a conclusion as to the origin of the fire and the
10 cause of the fire based on the physical evidence."

11    Defendant City of Tucson: This is inaccurate.  Holmes indeed traveled to
12 Tucson on December 30, 1970, but investigated on both December 30 and 31, 1970.
13 The City joins in the County's response to No. 64.

14    65.    Before completing his investigation, Holmes told City officials that he
15 had included the fire was arson and that was probably set by a young black boy. On
16 November 1, 2012, Holmes, was deposed as part of Taylor's post-conviction relief
17 action.  Holmes testified:

18        And so I gave [City of Tucson officials], I believe, it was seven conditions
19        that would address the type of person. And the only two I really remember
20        are the two I missed. And I had indicated I felt that the culprit was
21        probably black and that he was probably 18. And I missed both of those
22        because he was half black and half Mexican and he was 16. So those are
23        the only two I really remember. (Holmes depo at 82:23–83:4).

24    Defendant Pima County:   Pima County disputes this contention.   Holmes
25 arrived in Tucson in the early morning of December 30, 1970. He first met with Chief
Slagel and Cpt. Gilmore, and then Holmes toured and inspected the fire scene. Holmes

did not discuss "anything about the nature of the fire at all, what might have caused it or where any origin was," and they had "an agreement … that this would be a completely independent investigation on [his] part without any knowledge of the fire other than what [he] could actually see and observe during [his] investigation." Holmes also did not know that there was a suspect in custody. By the afternoon, Holmes reached a "preliminary determination that the fire was arson." That afternoon, he met with several City representatives, one of whom asked, "Do you have an idea of what type of person might be involved?" In response, Holmes testified: "I had indicated I felt the culprit was probably black and that he was probably 18"), adding "the circumstances surrounding the fire, just the physical circumstances, gave me the race and the age." When asked to "elaborate" on that testimony by Taylor's counsel, Holmes testified: "Well, in my experience up to this point in the fire service, I dealt with a lot of different people and a lot of different races. And I found certain characteristics that the different races use in the method they use fire. And blacks at that point, their background was the use of fire for beneficial purposes. In other words, they were used to clearing lands and doing cleanup work and things like that and fire was a tool. So it was just a tool for them. And then as far as age goes, it's the time of the fire and the locations of the fire. They kind of tell you what the age is. And at that time I was working with Patton State Hospital in San Bernardino, the administrator there, Dr. Otto Gericke, and there was an -- one of the fellows from Atascadero State Hospital that I was working with and a couple other people on this very thing, trying to determine if we could, from the manner in which the fires were set, give us an idea of where to go in our investigation. And so as a result of all of that work, that's what I came up with and it was a tentative conclusion when I went to the city council, I purposely said, my initial impressions of this fire are these things. And then of course

1  I hadn't had a chance yet to validate them, to confirm them, but those were my initial

2  conclusions."

3          Holmes said this in a 2012 deposition—40 years after the trial—in connection

4  with Taylor's Rule 32 proceeding. Obviously, by that time, he knew that Taylor had

5  been charged and convicted—he testified at several pretrial hearings and at Taylor's

6  criminal trial. But when Holmes started his investigation on December 30, 1972, he

7  did not know that Taylor had been arrested (on December 20, 1972), and he concluded

8  that the fire was arson still not knowing that Taylor had been arrested. Thus, his

9  conclusion that the fire was arson was not based on the fact that Taylor had been

10  arrested nor was it motivated by Taylor's race.

11          Defendant City of Tucson: The evidence at trial will prove that Holmes's

12  opinions and conclusions about the cause and origin of the fire were not related to any

13  opinion he may have held regarding the potential race of an arson suspect. In addition,

14  the City will present evidence that will prove that "the City officials" Holmes was

15  referring to when he was deposed in 2012 were not involved in Taylor's criminal case.

16  The City joins in the County's response to No. 65.

17          66.    Holmes further testified (in 2012) that when forming his opinions about

18  the fire's cause, he believed that black people used fire as a tool.

19          And blacks at that point, their background was the use of fire for

20          beneficial purposes. In other words, they were used to clearing lands and

21          doing cleanup work and things like that and fire was a tool. So it was just

22          a tool for them. (Holmes depo at 84:3–7).

23          Defendant Pima County:  See above contention.

24          Defendant City of Tucson: The evidence at trial will prove that Holmes's

25  opinions and conclusions about the cause and origin of the fire were not related

to the statements provided in his 2012 deposition testimony. See also the City's response to No. 65, above.

67.    Rick Unklesbay and Malena Acosta attended the deposition.

Defendant Pima County:  Pima County does not dispute that Rick Unklesbay attended Cy Holmes' November 1, 2022 deposition.

Defendant City of Tucson: This factual contention relates to Pima County, not the City. The City joins in the County's response to No. 67.

68.    Malena Acosta took the deposition.

Defendant Pima County:  Pima County does not dispute that Malena Acosta attended Cy Holmes' November 1, 2022 deposition and examined Holmes on behalf of the State.

Defendant City of Tucson: This factual contention relates to Pima County, not the City. The City joins in the County's response to No. 68.

69.    The prosecution did not disclose Holmes' racially-based theories to Taylor prior to trial.

Defendant Pima County:  Pima County denies that Holmes' opinions or theories were "racially-based."  Pima County further contends that it was not aware of Holmes' profiling theories prior to trial.

Defendant City of Tucson: The City denies the allegation that Holmes's opinions were "racially-based" and the City will prove that Holmes's opinions regarding the cause and origin of the fire were not based on race. Further, Plaintiff will not be able to meet Plaintiff's burden to prove that the City conspired with the County to withhold what is being characterized as Holmes's alleged "racially-based" or biased "theories." The City joins in the County's response to No. 69.

70.    As part of his investigation, Holmes did a "char depth" analysis using a pocketknife.

1    Defendant Pima County:   Pima County does not dispute that Cy Holmes
2    measured depth of char in some areas of the Hotel by using a pocketknife.

3    71.    Defendant City of Tucson: The City does not dispute this specific
4    contention. Holmes eventually concluded that the fire was arson, and he determined
5    there were two points of origin by analyzing relative char depths.

6    Defendant Pima County:   Pima County does not dispute that Cy Holmes
7    concluded that the fire was arson and that there were at least two points of origin, but
8    it disputes the contention that those opinions were based on relative depths of char.

9    Defendant City of Tucson: This is inaccurate.  Holmes concluded that the fire
10   was arson, and determined there were two points of origin, based on the entirety of his
11   investigation, not simply "by analyzing relative char depths." The City joins in the
12   County's response to No. 71.

13   72.    Truesdail laboratories completed the report of its analysis of fire
14   remnants; the report is dated February 16, 1971.

15   Defendant Pima County:   Pima County does not dispute that the Truesdail
16   Report is dated February 16, 1971, but stamped "Received" on February 19, 1971.
17   Pima County further does not dispute that the Report is signed by C.A. Crutchfield,
18   Technical Director.

19   Defendant City of Tucson: The City joins in the County's response to No. 72.

20   73.    That report concluded no evidence of accelerants was found.

21   Defendant Pima County:  Pima County disputes this contention.  The Truesdail
22   Report's "conclusions" section states: "No voltaile [sic] flammable compounds such
23   as kerosene, gasoline, naptha, methyl alcohol, ethyl alcohol, isopropyl alcohol or
24   nitromethane were detected in any of the six samples submitted." The Report does not
25   indicate where the six samples were taken from.

1      Defendant City of Tucson :   Accelerant cannot always be detected, especially

2  when there is a fire of this magnitude, and this report was not exculpatory, favorable,

3  or material. The City joins in the County's response to No. 73.

4      74.     The report was sent to the Tucson Fire Department in or around February

5  1971.

6      Defendant Pima County: Pima County disputes that the Truesdail Report was

7  sent to the Tucson Fire Department in or around February 1971.  Pima County further

8  contends that it did not have the Truesdail Report prior to trial.

9      Defendant City of Tucson: Plaintiff cannot prove this. The fact that a copy of

10  the report was found in boxes that the Tucson Fire Department ("TFD") kept, along

11  with other post-trial items, is not proof that the City or TFD possessed said report in

12  February 1971 or at any time prior to Taylor's criminal trial. The City joins in the

13  County's response to No. 74.

14      75.     The undisclosed Truesdail report would have been critical for Taylor's

15  lawyer to cross examine Jackson, because the absence of accelerants was inconsistent

16  with Jackson's testimony.

17      Defendant Pima County:  Pima County disputes this contention.  The State was

18  not aware of the contents of the Truesdail Report.   There is no evidence that the

19  prosecution received a copy of the Truesdail Report prior to trial or knew of its

20  contents.  To the contrary, the record conclusively demonstrates that Weiss did not

21  have a copy of the Report.  The evidence also shows that Taylor's attorney, Howard

22  Kashman, and expert, Marshall Smyth, were aware of the Report, had access to it, and

23  likely knew its contents.  Kashman did not want to use the Truesdail Report because it

24  was inconsistent with Smyth's opinions, Taylor's statements to police that he saw

25  someone/people set the fire, and his theory of the case.

1    Defendant City of Tucson: This is argument, not a factual contention. The

2    evidence at trial will refute this contention, including but not limited to evidence

3    relating to Taylor's fire expert, Marshall Smyth, and his civil and criminal trial

4    testimony. The City joins in the County's response to No. 75.

5    76.    Much later, in 2021 or 2022, Prof. Jack Chin found a copy of the

6    Truesdail report and the County Attorney file.

7    Defendant Pima County:  Pima County disputes this contention.  The Truesdail

8    Report was only in the State's prosecution file because it was attached to Taylor's 2012

9    Rule 32 petition for post-conviction relief and provided to the State by Taylor.

10   Defendant City of Tucson: Plaintiff's counsel was in communication with Jack

11   Chin while he was conducting his review of Taylor's criminal case, and the evidence

12   relating to those communications proves that they were providing Jack Chin

13   information and documentation. Additionally, this factual contention is not probative

14   of Plaintiff's claims regarding the Truesdail report in this lawsuit. The City joins in the

15   County's response to No. 76.

16   77.    Sometime after the report was completed, there was a recorded phone

17   conversation between a Truesdail laboratories engineer and TFD Capt. Miller,

18   regarding Truesdail's lab analysis.  (Doc. 343 ¶ 5 and 6).

19   Defendant Pima County:  Pima County disputes this contention.  There is no

20   TFD Capt. Miller.   Moreover, the date of this alleged conversation is unknown and

21   only a purported transcript of the call exists.  There is no audio recording. Pima County

22   disputes the authenticity and accuracy of the transcript.

23   Defendant City of Tucson: This is inaccurate. There is no TFD Capt. Miller in

24   this case.  The City joins in the County's response to No. 77.

25   78.    During that call, Miller confirmed with Gilmore that no evidence of

accelerants was found. (Doc. 343 ¶ 5 and 6).

1       Defendant Pima County:  Pima County disputes the authenticity and accuracy

2  of the transcript. Nonetheless, the transcript reflects that Glenn Miller recited certain

3  "conclusions" during this purported conversation, but Miller added that they "didn't

4  take the samples – at least we didn't take all of them from the right place."

5       Defendant City of Tucson:  The City joins in the County's response to No. 78.

6       79.    During that call, Gilmore stated to Miller that the prosecutor on the case

7  was aware that no accelerants had been found. *Id.*

8       Defendant Pima County:  Pima County disputes the authenticity and accuracy

9  of the transcript.  Nonetheless, the transcript reflects that Cpt. Gilmore did not tell

10  Miller that the prosecutor was aware that no accelerants had been found.  To the

11  contrary, Miller, confirmed that he had not sent the Report to anyone.

12       Defendant City of Tucson:  The City joins in the County's response to No. 79.

13       80.    During that call, Gilmore stated that Taylor's defense lawyer had

14  requested a copy of the lab report, and he told him to contact the attorney for the hotel's

15  insurer.

16       Defendant Pima County:  Pima County disputes the authenticity and accuracy

17  of the transcript. Nonetheless, Pima County does not dispute that the transcript reflects

18  that Kashman had called Miller and asked him for a copy of the Truesdail Report, and

19  that Miller told Kashman he "would be happy to send him a copy of my report on

20  instructions from Mr. Everett" or Kashman could simply "go and talk to Mr. Everett"

21  himself.

22       Defendant City of Tucson:  The City joins in the County's response to No. 80.

23       81.    This call acknowledges that the report was never provided to Taylor's

24  defense lawyer.

25       Defendant Pima County:  Pima County disputes the authenticity and accuracy

of the transcript. Nonetheless, the transcript confirms that Kashman knew about the

Truesdail Report, had access to the Truesdail Report, and likely had a copy of the Truesdail Report or at least knew its contents.

Defendant City of Tucson: This is argument, not a factual contention. The City joins in the County's response to No. 81.

82. Prior to trial, it is alleged that Taylor was detained with Robert Jackson and Bruce Wallmark at the Pima County Juvenile Court Center starting in around January 1971.

Defendant Pima County: Pima County does not dispute that Taylor, Robert Jackson, and Bruce Wallmark were all detained at the Pima County Juvenile Court Center for certain periods of time.

Defendant City of Tucson: There were many juveniles that were detained at the Pima Couty Juvenile Court Center where Taylor was also housed or detained for some time prior to his criminal trial in 1972. Taylor spoke to many of them about the Pioneer Hotel fire or made comments to them that related to said fire. The City joins in the County's response to No. 82.

83. Prior to trial, and for more than two years after the fire, no one from the prosecution spoke with Jackson or Wallmark.

Defendant Pima County: This contention is too vague to discern. Moreover, the record reveals that certain individuals did speak with Jackson or Wallmark prior to trial.

Defendant City of Tucson: It is not clear who Plaintiff is referring to as "the prosecution." The evidence shows that several police officers from the Tucson Police Department spoke with Bruce Wallmark in August 1971, he provided a signed statement during that time, and he participated in a polygraph examination that showed he was being truthful about what Taylor told him. Tucson Police Department officers first discovered that Robert Jackson had evidence relating to Taylor and the fire in

1   February 1972, when they were attempting to locate Bruce Wallmark after he fled from
2   Phoenix during the criminal trial. The City joins in the County's response to No. 83.

3       84.    Horton Weiss, the prosecutor who brought them to the witness stand,
4   had demonstrated in multiple prior cases how little his zealotry to achieve convictions
5   was constrained by ethical requirements and rules of court. See *State v. Mercer*, 13
6   Ariz 1, 4 (Ariz. App. 1970) ("The over-zealous tactics of Mr. Weiss are well known to
7   this court and have been the subject of other appeals"); *Weiss v. Superior Court*, 106
8   Ariz. 577, 578 (1971) (upholding the findings of contempt in a 1970 trial for which he
9   served 15 days in jail); *State v. Moore*, 108 Ariz. 215, 222 (1972) (describing conduct
10  in a 1970 trial "so outrageous and improper that this court is required to reverse and
11  remand').

12      Mr. Weiss' tactics in the Taylor trial were detailed at pp. 35-48 of the 2012 PCR.
13  In addition to grossly obstructive behavior, they included the failure to turn over the
14  potentially exculpatory Truesdail Report (detecting no volatile chemical compound
15  tracings in test samples), Weiss' *ex parte* call to the court to forecast and justify his
16  likely non-compliance with an order to provide defense access to carpet samples from
17  the hotel, and his dismissive reference during the call to the defense's anticipated *voir*
18  *dire* "yapping" about a likely sparsity of black members in the jury pool.

19      Less than three weeks after the Taylor trial was concluded, Mr. Weiss was
20  excoriated by the Supreme Court for his behavior in the 1970 *State v. Moore* case. 108
21  Ariz. at 215. And in the coming months, his conduct in *Moore* resulted in State Bar
22  Disciplinary proceedings, a Supreme Court order of censure, and the loss of his job as
23  a prosecutor with PCAO. (Horton Weiss State Bar Record).

24      Weiss' disregard for his obligation to provide defendants a fair trial was, in short,
25  well established before the Taylor case, well demonstrated within it, and adds to the

1   many reasons to be skeptical of the testimony that Wallmark and Jackson were

2   compelled and coached to give in 1972.

3          In addition to these, there are other cases, not resulting in reversal but recounting

4   Weiss's antics, such as a large number of objections, misuse of evidence, etc.  See:

5          *State v. Thomas*, 110 Ariz. 120

6          *State v. Skinner*, 110 Ariz. 125

7          *State v. Lenahan*, 12 Ariz.App. 446

8          Defendant Pima County:  This is argument, not a factual contention.  Pima

9   County disputes Taylor's characterization of Weiss's conduct in this and prior

10  prosecutions.  Weiss's alleged conduct in this prosecution did not deny Taylor a fair

11  trial or violate his constitutional rights.  The Arizona Supreme Court, Federal District

12  Court, and Ninth Circuit all held that it did not.  The cited appellate decisions are

13  grossly mischaracterized.  In *State v. Mercer*, the issue pertained to Weiss's objections

14  at trial.  473 P.2d 803, 806 (Ariz. App. 1970). The court concluded that there was "no

15  prejudice or reversible error." *Id*.  Similarly, the issue in *State v. Lenahan*, 471 P.2d

16  748, 750 (Ariz. App. 1970), also related to Weiss's objection at trial and the courts

17  found no prejudice. *Weiss v. Superior Court*, 106 Ariz. 577, 578 (1971), involved: (1)

18  a sarcastic remark; (2) a snarky remark; (3) an inappropriate remark; (4) showing the

19  jury a portion of the defendant's statement that had been precluded; and (5) a statement

20  during closing argument. *See Weiss v. Burr*, 484 F.2d 973, 976 (9th Cir. 1973). The

21  Ninth Circuit ultimately reversed and remanded—in 1973, after Taylor's trial—the

22  district court's order denying Weiss's petition for writ of habeas from the resulting

23  contempt citations. *Id*. at 988.  In *State v. Thomas*, 515 P.2d 865, 877 (Ariz. 1973), the

24  defendant accused Weiss of "continued objections to defendant's cross-examination of

25  the State's witnesses."  The court held that "the entire transcript does not reveal that

    the defense was effectively prevented from presenting his case and we find no

reversible error." *Id.* at 879.  In *State v. Skinner*, 515 P.2d 880, 892 (Ariz. 1973), the defendant accused Weiss of failing to disclose impeachment witnesses. The court found no error. *Id.* In *State v. Moore*, 495 P.2d 445, 449 (Ariz. 1972), the defendant accused Weiss of "arguing with the judge and interrupting defense counsel with repeated objections." None of these decisions involved conduct or findings like that alleged in this case, i.e., the failure to disclose exculpatory evidence or suborning perjured testimony.  *See also Taylor*, 537 P.2d at 948 ("Appellant's counsel takes great comfort from State v. Moore, Supra, but the situations are not the same.").  Finally, prosecutorial misconduct is not a stand-alone claim in this case.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's responses to No. 84.

85.    In particular, as former Tucson lawyer John Neis will testify, Horton Weiss was well known for recruiting snitches to lie.

Defendant Pima County:  Pima County disputes this contention.  Weiss was not known for, and did not in this case, suborning false testimony.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's responses to No. 85.

86.    Trial commenced February 8,1972.

Defendant Pima County:  Pima County does not dispute that a jury was empaneled in Taylor's prosecution on February 8, 1972.

Defendant City of Tucson: The City does not dispute this factual contention. .

87.    Neither the prosecution prosecution nor TPD ever disclosed the existence of the Truesdail lab report to Taylor or his lawyer.

Defendant Pima County:  Pima County did not have possession of the Truesdail Report prior to trial.  Moreover, Taylor's attorney and/or expert were aware of the Truesdail Report.

1    Defendant City of Tucson: The City denies being in possession of the Truesdail

2    lab report prior to the 1972 criminal trial. Plaintiff cannot prove that a  copy of the

3    report  was  located in TFD boxes in 2004, nor can Plaintiff prove that a copy of that

4    lab report was actually in TFD's possession prior to the criminal trial. Furthermore,

5    Plaintiff cannot prove that the County and City conspired to withhold the report from

6    Taylor's criminal defense lawyers. The evidence shows that Taylor's criminal defense

7    lawyer and Taylor's fire expert were both aware of the lab and its testing of samples

8    prior to the trial. They could have obtained the report themselves and failed to do so.

9    The City joins in the County's response to No. 87.

10    88.    Neither the prosecution nor TPD ever disclosed that Donald Anthony

11    was a suspect in other recent downtown fires to Taylor or lawyer.

12    Defendant Pima County:  This contention is irrelevant to the claims in this case.

13    (See Dkt. 869 at 19, 28, 45–46.)  Pima County also disputes this contention.  There is

14    no evidence to support it.

15    Defendant City of Tucson: There is no evidence to support this allegation.

16    Furthermore, the Court already ruled that Plaintiff cannot pursue any allegations

17    relating to "[a]lternative [s]uspects" (id., 44:10-46:3) including Donald Anthony. The

18    Court further noted that "Plaintiff has not identified any police reports or other

19    documents showing that Anthony was investigated as an alternative suspect...." (Id., fn

20    29). For all these reasons, this fact is not relevant to the remaining issues in this lawsuit,

21    and Plaintiff should be precluded from attempting to make this an issue at trial. The

22    City joins in the County's response to No. 88.

23    89.    The prosecution called Cy Holmes as a witness on February 16, 17, and

24    18, 1972.

25

1        Defendant Pima County:  This contention understates the evidence. Holmes

2   testified at Taylor's prosecution over several days, including February 16, 17, 18, 19,

3   21, and 22, 1972, and even more before trial.

4        Defendant City of Tucson: This is inaccurate.  The State called Holmes as a

5   witness on February 15, 16, 17, and 18, 1972.  Taylor's counsel cross-examined him

6   on February 18, 19, and 21, 1972.  Redirect and re-cross examination of Holmes by the

7   State and Taylor's counsel occurred on February 21 and 22, 1972. The City joins in the

8   County's responses to No. 89.

9        90.    Various Tucson police officers were called to testify about statements

10   they claim Taylor made on December 20, 1970.

11        Defendant Pima County:  This contention understates the evidence.  Many

12   Tucson police officers testified as to the statements Taylor made to them.

13        Defendant City of Tucson: The City contends that numerous Tucson Police

14   Department officers, and numerous civilian witnesses, testified about statements

15   Taylor made to them regarding the Pioneer Hotel fire incident at the various pretrial

16   hearings, the trial itself, and post-trial hearings. This evidence will be presented at trial.

17   The City joins in the County's response to No. 90.

18        91.    Claus Bergman testified at his deposition that Taylor was arrested

19   because "he was the wrong color." (Bergman 1/14/22 deposition at 100:19-22).

20        Defendant Pima County:  This contention is irrelevant to any claim in this case.

21   Nonetheless, Pima County contends that Taylor was not arrested because "he was the

22   wrong color."  Bergman's belief lacks any evidentiary basis and is inadmissible.

23        Defendant City of Tucson: The City will refute this fact at trial. The City

24   contends that Claus Bergman's deposition testimony is inconsistent with his prior

25   sworn testimony provided in Taylor's criminal case, and Bergman did not review his

testimony from the Probable Cause hearing or the criminal trial prior to being deposed.

This factual contention will also be refuted with other evidence that will be presented at trial. The City joins in the County's response to No. 91.

92.    Prior to trial, this racial bias and improper motive for the arrest was not disclosed to Taylor or his lawyer.

Defendant Pima County:  This contention is irrelevant to any claim in this case. Nonetheless, Pima County contends that there was no racial bias or improper motive for arresting Taylor.

Defendant City of Tucson: See the City responses to No. 91, above. The City denies Plaintiff's allegation that there was a racial bias or improper motive for Taylor's arrest. The evidence at trial will prove that there was probable cause for Taylor's arrest, which has been consistently upheld in his criminal case. Further, Taylor was arrested for criminal trespass and was later charged with arson and felony murders after it was determined that there was probable cause for those criminal charges. The City joins in the County's response to No. 92.

93.    The prosecution rested its case in chief on February 28, 1972.

Defendant Pima County:  Pima County disputes this contention.  Although the State rested on February 28, 1972, it later moved to reopen its case-in-chief to examine Robert Jackson on March 15, 1972.

Defendant City of Tucson: The State did originally rest its case-in-chief on February 28, 1972, but later reopened it to examine Robert Jackson. The City joins in the County's response to No. 93.

94.    Taylor testified in his own defense at trial.

Defendant Pima County:  Pima County does not dispute this contention.

Defendant City of Tucson: The City does not dispute this contention.

95.    Taylor called arson expert Marshall Smyth as his arson expert.

Defendant Pima County:  Pima County does not dispute this contention.

1    Defendant City of Tucson: The City contends that Marhsall Smyth, who was

2    first hired by the Pioneer Hotel's insurance company to investigate the fire, was later

3    hired by Taylor's criminal defense team. The City joins in the County's response to

4    No. 95.

5    96.    Smyth concluded that the fire was arson.

6    Defendant Pima County:  Pima County does not dispute this contention.

7    Defendant City of Tucson: The City does not dispute this contention.

8    97.    In reaching that opinion, Smyth did not receive or review the Truesdail

9    report prior to the trial testimony (because the prosecution never disclosed it).

10    Defendant Pima County:  Pima County disputes this contention.  The State did

11    not fail to disclose the Truesdail Report and Smyth was at least aware of the contents

12    of the Truesdail Report at the time of his testimony.

13    Defendant City of Tucson: The evidence at trial will show Marshall Smyth knew

14    about the sample sent to the Truesdail lab, and that he too could have requested the

15    results of the testing that was completed. The City joins in the County's response to

16    No. 97.

17    98.    Had Smyth been able to review and consider that report, he would not

18    have concluded that the fire was arson.

19    Defendant Pima County:  This contention is irrelevant to the claims in this case.

20    Nonetheless, Pima County disputes this contention.  Smyth provided the same opinions

21    to the insurance company, and it was consistent with Taylor's defense. Moreover, all

22    of the reports established that it was arson.

23    Defendant City of Tucson: Plaintiff cannot prove that this is true, and the City

24    will present evidence that shows his opinions may not have changed. The City joins in

25    the County's response to No. 98.

99.    The prosecution did not call Robert Jackson in its case in chief.

1      Defendant Pima County:  Pima County disputes this contention.  Jackson was

2  called in the State's case-in-chief.

3      Defendant City of Tucson: The State moved to reopen its case in chief after

4  learning about Robert Jackson and his statement to police, which was not known until

5  just days before. Taylor's defense attorney objected, and the Court denied the State's

6  motion without prejudice. After Taylor's defense rested, the State again moved to

7  reopen its case in chief and the Court allowed it. The City joins in the County's

8  response to No. 99.

9      100.    Before the trial commenced, Weiss called the trial court judge *ex parte*

10  to discuss pending and anticipated defense motions. (undated Phone Transcript (Bates

11  TAYLOR010747).

12      Defendant Pima County:  Pima County disputes this contention. Pima County

13  also maintains that this allegation is irrelevant to the claims in this case and was not

14  included in the TAC.  Moreover, Kashman had several ex parte communications with

15  Judge Hardy as well.

16      Defendant City of Tucson: This factual contention relates to the County, not the

17  City. The City joins in the County's response to No. 100.

18      101.    At some point around March 8 or 9, Weiss's investigator, Rex Angely,

19  contacted at least two of the dismissed jurors. (Angeley-Hartlauer Transcript 300034

20  at TAYLOR010755-69)

21      Defendant Pima County: Pima County disputes this contention. Pima County

22  also maintains that this allegation is irrelevant to the claims in this case and was not

23  included in the TAC.

24      Defendant City of Tucson: This factual contention relates to the County, not the

25  City. The City joins in the County's response to No. 101.

102.    During a recorded call with one of the dismissed jurors, Angely and the juror discussed which way the juror felt the remaining jurors were leaning, and that several appeared to be leaning towards the defense. (Bates TAYLOR010758–10761)

Defendant Pima County:  Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 102.

103.    The juror was also very critical of the bailiff, stating that she was biased in favor of the defense, and controlled several of the jurors, who would vote however she wanted them to. (Bates TAYLOR010758–10761)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 103.

104.    Angely and the juror then discussed whether Weiss should move for a mistrial, with the benefit of knowing that some jurors may not vote to convict. (Bates TAYLOR010758–10761)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 104.

105.    The juror informed Angely that she inferred excluded evidence was favorable to the prosecution. (Bates TAYLOR010755)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 105.

106.    Angeley mentions telling Weiss what the juror told him "last night." (Bates TAYLOR010755)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 106.

107.    Angeley gave the juror Weiss's phone number and hotel room number so she could contact him with more information. (Exhibit 39, at Bates TAYLOR010756)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 107.

108.    The juror stated she would contact Weiss. (Bates TAYLOR010755–56)

Defendant Pima County: Pima County disputes this contention. Pima County also maintains that this allegation is irrelevant to the claims in this case and was not included in the TAC.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City joins in the County's response to No. 108.

1       109.    Angeley also stated that he had contacted another dismissed juror to
2 discuss the case. (Bates TAYLOR010757)

3       Defendant Pima County: Pima County disputes this contention. Pima County
4 also maintains that this allegation is irrelevant to the claims in this case and was not
5 included in the TAC.

6       Defendant City of Tucson: This factual contention relates to the County, not the
7 City. The City joins in the County's response to No. 109.

8       110.    There is no record of what Angely discussed with the other dismissed
9 juror, discussed with the juror prior to the recorded call, or what Weiss discussed with
10 the juror.

11       Defendant Pima County: Pima County disputes this contention. Pima County
12 also maintains that this allegation is irrelevant to the claims in this case and was not
13 included in the TAC.

14       Defendant City of Tucson: This factual contention relates to the County, not the
15 City. The City joins in the County's response to No. 110.

16       111.    Weiss never informed the Court of this contact with the juror.

17       Defendant Pima County: Pima County disputes this contention. Pima County
18 also maintains that this allegation is irrelevant to the claims in this case and was not
19 included in the TAC.

20       Defendant City of Tucson: This factual contention relates to the County, not the
21 City. The City joins in the County's response to No. 111.

22       112.    The phone call is undated, but the dismissed juror mentions a
23 conversation with the judge in chambers that happened "the day before [yesterday]."
24 (Bates TAYLOR010761)

25

1    Defendant Pima County: Pima County disputes this contention. Pima County

2    also maintains that this allegation is irrelevant to the claims in this case and was not

3    included in the TAC.

4    Defendant City of Tucson: This factual contention relates to the County, not the

5    City. The City joins in the County's response to No. 112.

6    113.   The juror was dismissed on March 7, 1972, meaning the recorded call

7    likely occurred on March 9, and the unrecorded call on March 8. (Trial Transcript

8    Volume 32A, RT 3/8/72 at 2:18–26 (Bates Pima County 058935)

9    Defendant Pima County: Pima County disputes this contention. Pima County

10   also maintains that this allegation is irrelevant to the claims in this case and was not

11   included in the TAC.

12   Defendant City of Tucson: This factual contention relates to the County, not the

13   City. The City joins in the County's response to No. 113.

14   114.   On March 9, two days after the jurors had been dismissed, Weiss

15   objected to the removal and asked to question the bailiff and one of the remaining

16   jurors, who the dismissed juror believed to be swayed by the bailiff. (Trial Transcript

17   Vol. 33 at 3-6 (Bates TAYLOR008578-8582)

18   Defendant Pima County: Pima County disputes this contention. Pima County

19   also maintains that this allegation is irrelevant to the claims in this case and was not

20   included in the TAC.

21   Defendant City of Tucson: This factual contention relates to the County, not the

22   City. The City joins in the County's response to No. 114.

23   115.   Prosecutor Weiss advised on February 25, 1972, that his next witness

24   would be Bruce Wallmark.  (Bates TAYLOR004693) Mr. Wallmark testified on that

25   day and in late February 1972.  (*Id.* and also Bates 4959-4965).  On March 1 1972,

1   Weiss moved to re-open the State's case for the testimony of Robert Jackson (Bates

2   TAYLOR57706-57734 with no jury, 5994-600053 to the jury)

3       Defendant Pima County:  This contention is not entirely accurate.  Wallmark

4   was called to testify on February 25, 1972.  He resumed and concluded his testimony

5   on February 28, 1972.  The State moved to reopen its case-in-chief on March 1, 1972,

6   to allow Jackson to testify.

7       Defendant City of Tucson: This factual contention relates to the County, not the

8   City. The City joins in the County's response to No. 115.

9       116.    The court initially denied the prosecution's request to reopen.  March 1,

10  1972, trial transcript at page 27; Taylor Ex 268, Bates TAYLOR005634.

11      Defendant Pima County:  This contention is not entirely accurate.  The court

12  denied the prosecution's request to re-open without prejudice to renew in its rebuttal

13  case.

14      Defendant City of Tucson: The Court initially denied the State's motion to

15  reopen its case in chief, after Taylor objected, but did so without prejudice. The fact it

16  was initially denied is not relevant to the issues in this lawsuit. The City joins in the

17  County's response to No. 116.

18      117.    Weiss, knowing that the jury was leaning for the defense, proceeded to

19  call Robert Jackson as a witness.

20      Defendant Pima County:   Pima County disputes this contention. The State

21  moved to reopen its case-in-chief once it became aware that Jackson had relevant

22  testimony.

23      Defendant City of Tucson: This is argument and speculation. See responses to

24  Nos. 99 and 116, above. The City joins in the County's response to No. 117.

25

118.    On March 15, 1972, the court granted the prosecution's motion, allowing them to call Jackson and Wallmark as a witness. Taylor Exhibit 285, March 15, 1972 trial transcript at page 2, Bates TAYLOR007347

Defendant Pima County:  Pima County disputes this contention.  Wallmark was called as a witness on February 25 and 28, 1972.  On March 15, 1972, the prosecution renewed its motion to reopen its case-in-chief and the court granted that motion.  As a result, the prosecution called Jackson in its case-in-chief that same day.

Defendant City of Tucson: This is inaccurate. Bruce Wallmark testified in the State's initial case-in-chief, and he had been listed as witness to testify at this trial since September 24, 1971. The State just learned about Robert Jackson's knowledge regarding Taylor's involvement with starting the fire just days before it moved to reopen its case-in-chief. Taylor objected to the State's initial request to reopen its case in chief, and after the defense rested the State again moved to reopen and this time the motion was granted. The City joins in the County's response to No. 118.

119.    At trial, Jackson testified that while they were detained together at Pima County Juvenile Center, Taylor supposedly admitted to Jackson that he started the fire by squirting lighter fluid on a wall and then igniting it with a match. (Doc. 340-3 at 222-224,228-230; Doc. 340-4 at 7, 27.)

Defendant Pima County:  This contention understates the evidence.  Jackson testified that he had known Taylor for a year and a half prior to their incarceration together at the Pima County Juvenile Court Center.  Jackson further testified that: Taylor told him that he went to the Pioneer Hotel to attend a party; Taylor told him that he (Taylor) found a can of lighter fluid in one of the Hotel rooms and began squirting lighter fluid on the wall, lighting it with a match, and putting the fire out with his hand; Taylor told him that he did that "a number of times"; Taylor said that he squirted an "extra amount" of lighter fluid on the wall—motioning a circle with two dots in the

middle—lit it, and then heard someone coming, so he took off; Taylor said that when he looked back, nobody was there but the fire was "too big" to put out, so he fled; Taylor said that he did not intend to "burn the Hotel down, but the fire got out of control."; and when Jackson asked Taylor why he did not think Jackson would tell police what he had said, Taylor responded, "there was no way [he] could prove it."

Defendant City of Tucson: The transcript of Robert Jackson's criminal trial testimony speaks for itself, and the City intends to present it  at this trial. His testimony was not that "Taylor supposedly admitted." The City joins in the County's response to No. 119.

120.   At trial, Wallmark testified that Taylor supposedly told him that he and two acquaintances had been in the Pioneer Hotel the evening of the fire to steal wallets and money from rooms, and that the fire had started from a lit book of matches or a lighter that dropped on the carpet as they were running away from a hotel employee. (Doc. 338-10 at 57-60, 64-65, 91-92.)

Defendant Pima County:  Pima County disputes this contention.  Wallmark testified that Taylor told him that *the police* said that the fire started from a lit book of matches or a lighter dropped on the carpet.  Wallmark further testified that Taylor never told him that he (Taylor) started the fire or that he (Taylor) saw how it started.

Taylor told him (Wallmark) that he (Taylor) and two others were at the Hotel to steal wallets and money; that they almost got caught on the fourth floor by a maintenance man, so they took off running; that they ran down the stairs when the fire started on the fourth floor; that the only reason he got caught was because they found matches on him; and he (Wallmark) overheard Taylor bragging to another detainee that he was going to "get[] off the rap" for the arson and murder charges.

Defendant City of Tucson: The transcript of Robert Jackson's criminal trial testimony speaks for itself, and the City intends to present it  at this trial. His testimony

was not that "Taylor supposedly told him…" The City joins in the County's response to No. 120.

121.    After Wallmark completed his direct examination, court adjourned, and Wallmark fled Phoenix so he could not be called to testify further.  (County SOF 424)

Defendant Pima County:  Pima County disputes this contention.  Wallmark absconded because he received threats not to testify.

Defendant City of Tucson: See the City's response to No. 118, above. The evidence is that Bruce Wallmark did flee after his first day of testimony and he was located in Tucson, AZ, and he returned to testify for the second day of his testimony. The City joins in the County's response to No. 121.

122.    Taylor's trial jury was all white.

Defendant Pima County:  This contention is irrelevant to the claims in this case.

Defendant City of Tucson: This is not relevant to the claims against the Defendants. There is no evidence that suggests that this was due to any wrongdoing on the part of either Defendant. The City joins in the County's response to No. 122.

123.    On March 21, 1972 the jury convicted Taylor of arson and 28 counts of felony murder.

Defendant Pima County:  This is not accurate.  The jury convicted Taylor of 28 counts of felony murder, the predicate offense being arson.

Defendant City of Tucson: The jury convicted Taylor of 28 counts of felony murder. The arson charge was dismissed prior to trial. The City joins in the County's response to No. 123.

124.    On March 28, 1972, Pima County Superior Court Judge Charles Hardy sentenced Taylor to life imprisonment on each count of felony murder, to run concurrently.

Defendant Pima County:  Pima County does not dispute this contention.

125.    Defendant City of Tucson: The City does not dispute this contention. On March 22, 1972 Judge Hardy publicly commented that he would not have convicted Taylor.

Defendant Pima County: This contention is not relevant to the claims in this case.  (Dkt. 869 at 19, 28.)  Nonetheless, Judge Hardy stated, on March 25, 1972, that he "shouldn't have made the statement," and that, "The decision on the verdict was their responsibility – they made it on the evidence presented to them, which is the way it should be."  Judge Hardy later stated, "When I reflected back, it made sense. It added up to me that he had set the fire." (See Dkt. 374, ¶ 143.)

Defendant City of Tucson: The City contends that this is not what Judge Hardy said. The City joins in the County's response to No. 125.

126.    In approximately 2001, the Arizona Justice Project began investigating Taylor's convictions.

Defendant Pima County: This contention has not been corroborated by the evidence.

Defendant City of Tucson: This factual contention is not relevant to the remaining issues or claims against the Defendants. The City joins in the County's response to No. 126.

127.    Marshall Smyth, Taylor's trial expert in 1972, assisted AJP.

Defendant Pima County:  Pima County does not dispute this contention.

Defendant City of Tucson: This factual contention is not relevant to the remaining issues or claims against the Defendants. The City joins in the County's response to No. 127.

128.    Sometime in 2010, Smyth reviewed the Tucson Fire Department file and for the first time saw the Truesdail lab report. Deposition of Smyth at 46:15 – 47: 4.

1    Defendant Pima County:  Pima County disputes this contention.  Smyth was

2    aware of the Truesdail Report prior to Taylor's 1972 trial.

3    Defendant City of Tucson: Plaintiff cannot prove this factual contention. The

4    City denies being in possession of the Truesdail lab report prior to the 1972 criminal

5    trial. Marshall Smyth reviewed TFD's boxes in 2004 and he did not mention seeing the

6    Truesdail report therein. Even if a copy was in those boxes, this fact does not prove

7    that TFD possessed said report prior to the 1972 trial. Furthermore, Plaintiff cannot

8    prove that the County and City conspired to withhold the report from Taylor's criminal

9    defense lawyers in 1972. The evidence shows that Taylor's criminal defense lawyer

10   and Taylor's fire expert, Marshall Smyth, were both aware of the lab and its testing of

11   sample prior to the trial. They could have obtained the report themselves and failed to

12   do so. The City joins in the County's response to No. 128.

13   129.   In 2002 Mr. Bergman was interviewed by "Court TV" and described

14   what happened that night.  He was a TPF officer, on patrol when he was called to the

15   Pioneer Hotel.  When he arrived, there were no fire personnel on scene.  He began to

16   take people out of the hotel.  On one of these trips, he saw Louis Taylor outside the

17   hotel, and knew him from his patrol area.  Officer Bergman took Louis inside with

18   him, and Louis helped Officer Bergman to get hotel guests out of the hotel to safety.

19   When Officer Bergman collapsed, Louis took him to safety.  Bergman told Court TV

20   that after his release from the hospital, when he returned to the police station, he was

21   told not to talk about Louis helping. He was later subpoenaed to the Juvenile Court,

22   where he was given forms for Louis's arrest to review; he was told that his signature

23   was on the forms, but the signature was not his.  Later, Officer Bergman was called by

24   Louis Taylor's attorney to testify at the trial in 1972.  He told Court TV that when he

25   arrived in Phoenix for the trial, and checked in with the prosecution, he was told that

     he was not to talk to the defense, and that he was to be a "hostile witness' to the defense,

1  and that if he failed to follow these instructions his job would be in jeopardy.   Officer

2  Bergman told Court TV that he regretted taking Louis in to help him – if he had not

3  done so, Louis would have been a free man, would have "just been another bystander

4  outside." (Bates TAYLOR9508-95113)

5       Defendant Pima County:  Pima County disputes this contention.  Bergman's

6  statements to Court TV are contradicted by his sworn testimony and other evidence.

7       Defendant City of Tucson: This interview is inadmissible hearsay. It is also

8  inconsistent and contradicted by Bergman's sworn testimony at Taylor's probable

9  cause hearing and criminal trial, both of which will be presented at this trial either in

10  their entirety (if Bergman is unavailable) or during cross-examination of this witness

11  (if he testifies live, which the City will insist occurs if he is still alive). The statements

12  made during this interview are also contradicted by other evidence presented at

13  Taylor's criminal trial in 1972, which will be presented in this trial. The City joins in

14  the County's response to No. 129.

15       130.  On October 23, 2012, Taylor filed a state court petition for

16  postconviction relief, alleging newly discovered evidence (that is, that the fire was not

17  arson applying modern scientific principles). (Petition for Post-Conviction Relief

18  (Bates TAYLOR009586).

19       Defendant Pima County:  Pima County does not dispute that Taylor filed a Rule

20  32 petition for post-conviction relief in state court.  The allegations are stated therein.

21       Defendant City of Tucson: Taylor filed a Petition for Post-Conviction Relief on

22  October 23, 2012, and the content speaks for itself. There was never a finding that the

23  proffered alleged newly discovered evidence actually entitled Taylor to a new trial.

24  Rather than choosing to proceed with his petition, Taylor, after consulting with his

25  team of defense lawyers, decided to take the plea offer to plead no contest to the same

felony murders he was previously convicted for in 1972. The City joins in the County's response to No. 130.

131.   In support of that petition Taylor provided the report from the Arson Review Committee.  (Taylor Ex 431, Bates 10597-10624)

Defendant Pima County:  Pima County does not dispute that Taylor submitted the Arson Review Committee ("ARC") Report with his Rule 32 Petition.

Defendant City of Tucson: Taylor filed a Petition for Post-Conviction Relief on October 23, 2012, and the content of that petition speaks for itself. Taylor did submit a report authored by the Arson Review Committee (who works for Arizona Justice Project) with said petition and the contents speak for itself. There was never a finding that the proffered alleged newly discovered evidence actually entitled Taylor to a new trial. Rather than choosing to proceed with his petition, Taylor, after consulting with his team of defense lawyers, decided to take the plea offer to plead no contest to the same felony murders he was previously convicted for in 1972. Whether the fire was arson or not is not at issue in this lawsuit. (Dkt. 869, 28:19-21). The City joins in the County's response to No. 131.

132.   That committee was comprised of: Gregory Gorbett, David Eliassen, Patrick M. Kennedy, John J. Lentini, and Dennis W. Smith.  The report concludes that the Pioneer Hotel Fire was a flashover event.

Defendant Pima County: Pima County does not dispute the names of the individuals who signed onto the ARC Report.  Pima County disputes the remaining contentions.

Defendant City of Tucson: Taylor filed a Petition for Post-Conviction Relief on October 23, 2012, and the content of that petition speaks for itself. Taylor did submit a report authored by the Arson Review Committee (who works for Arizona Justice Project) with said petition and the contents speak for itself. There was never a finding

1   that the proffered alleged newly discovered evidence actually entitled Taylor to a new

2   trial. Rather than choosing to proceed with his petition, Taylor, after consulting with

3   his team of defense lawyers, decided to take the plea offer to plead no contest to the

4   same felony murders he was previously convicted for in 1972. The City joins in the

5   County's response to No. 132.

6        133.   It further concludes that debris/remnants from flashover fire are

7   scientifically useless for evaluating fire cause and origin.

8        Defendant Pima County: Pima County disputes that the debris/remnants from

9   flashover fire are scientifically useless for evaluating fire cause and origin.

10       Defendant City of Tucson: Taylor filed a Petition for Post-Conviction Relief on

11   October 23, 2012, and the content of that petition speaks for itself. Taylor did submit

12   a report authored by the Arson Review Committee (who works for Arizona Justice

13   Project) with said petition and the contents speak for itself. There was never a finding

14   that the proffered alleged newly discovered evidence actually entitled Taylor to a new

15   trial. Rather than choosing to proceed with his petition, Taylor, after consulting with

16   his team of defense lawyers, decided to take the plea offer to plead no contest to the

17   same felony murders he was previously convicted for in 1972. Whether the fire was

18   arson or not is not at issue in this lawsuit. (Dkt. 869, 28:19-21). The City joins in the

19   County's response to No. 133.

20       134.   As part of that petition, Taylor took the deposition of Cy Holmes, on

21   November 1, 2012.

22       Defendant Pima County:  Pima County does not dispute this contention.

23       Defendant City of Tucson: The City does not dispute this contention. But the

24   City was not a party in Taylor's criminal case. The City did not participate in any of

25   the post-conviction petition proceedings. No one from the City had the opportunity to

1    cross-examine Holmes regarding his testimony during that deposition in 2012. The

2    City joins in the County's response to No. 134.

3        135.   At that deposition, Holmes testified -

4        A well, my current opinion is based on the same

5        factors that I used back in 1970, they haven't changed.

6        None of the factors that I looked at, recorded and used in

7        forming my opinions has changed since that -- that point.

8        (Holmes depo at 53:13-16)

9

10       . . . . And one of the questions they asked me was, Do

11       you have an idea of what type of person might be involved?

12       And so I gave them, I believe, it was seven

13       conditions that would address the type of person. And the

14       only two I really remember are the two I missed. And I had

15       indicated I felt that the culprit was probably black and

16       that he was probably 18. And I missed both of those because

17       he was half black and half Mexican and he was 16. so those

18       are the only two I really remember.

19       Q This was before you had concluded -- at least your

20       recollection is this was the afternoon of December 30?

21       A Correct.

22       (Holmes depo 82:21-83:7)

23

24       had you reached a determination on the afternoon of the 30th

25       that the fire was arson?

        A I had reached a preliminary determination that the

1      fire was arson and the circumstances surrounding the fire,

2      just the physical circumstances, gave me the race and the

3      age.

4      Q can you elaborate for me on that? Start with on

5      those two factors, race and age.

6      A Yes. well, in my experience up to this point in

7      the fire service, I dealt with a lot of different people and

8      a lot of different races. And I found certain

9      characteristics that the different races use in the method

10      they use fire.

11      And blacks at that point, their background was the

12      use of fire for beneficial purposes. In other words, they

13      were used to clearing lands and doing cleanup work and

14      things like that and fire was a tool. so it was just a tool

15      for them.

16      (Holmes depo 83:15-84:7)

17

18      Q Your -- your experience indicated to you that

19      black people used fire as a tool for beneficial purposes?

20      A correct.

21      Q what -- what -- what did you hypothesize was the

22      beneficial purpose here, assuming the fire had been set by a

23      black person?

24      A well, when you use something for a beneficial

25      purpose, it's something you're used to using. In other

     words, you're comfortable with it. And if they get mad at

1     somebody, the first thing they do is use something they're

2     comfortable with, fire was one of them.

3     (Holmes depo 85: 3-13)

4

5     Q Any other factors which, in your experience, would

6     indicate to you that the individual setting the fire was a

7     black person?

8     A No. Just the -- the physical surroundings and my

9     experience in studying them and this type of thing.

10    (Holmes depo 87:5-9)

11    Defendant Pima County:  Pima County disputes this contention because it omits

12 critical context and other testimony and evidence.

13    Defendant City of Tucson: The City was not a party in Taylor's criminal case.

14 The City did not participate in any of the post-conviction petition proceedings or

15 related proceedings. No one from the City had the opportunity to cross-examine

16 Holmes regarding his testimony during that deposition in 2012. The City joins in the

17 County's response to No. 135.

18    136.   In the months leading up to April 2013, several lawyers (including Mike

19 Piccarreta and Noel Fidel) with the Arizona Justice Project had discussions with both

20 Barbara Lawall and Rick Unklesbay.

21    Defendant Pima County:  Pima County does not dispute that several of Taylor's

22 lawyers, including Michael Piccarreta and Noel Fidel, sent and/or received

23 communications from Barbara LaWall and/or Rick Unklesbay.

24    Defendant City of Tucson: This factual contention relates to the County, not the

25 City. The City was not involved in any of the 2012-2013 post-conviction relief

proceedings or related proceedings. The City joins in the County's response to No. 136.

137.   During these conversations, Lawall acknowledged that prosecutor Horton Weiss had violated Taylor's constitutional rights and that his conduct was appalling.

Defendant Pima County:  Pima County disputes this contention.  LaWall did not acknowledge that Weiss violated Taylor's constitutional rights.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to 137.

138.   In March 2013, Lawall was interviewed by CBS News and stated: "Nobody can say for sure whether it was or it wasn't" (video at 1:45).

Defendant Pima County:  Pima County disputes this contention, which is taken out of context.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 138.

139.   Claus Bergman's 2002 comments were or should have been available to Rick Unklesbay and Malena Acosta in 2013.

Defendant Pima County:  Pima County disputes this contention. There is no evidence to support it.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 139.

140.   At some point prior to April 2, 2013, the Pima County Attorney in Taylor entered into a written plea agreement which Taylor signed on March 27, 2013.

Defendant Pima County:  This contention is not accurate.  The plea agreement was consummated on April 2, 2013.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 140.

141.   The written plea agreement includes the new charges to which Taylor entered pleas. Plea Agreement at 1-5.

Defendant Pima County:  This contention is not accurate.  The plea agreement includes 28 charges (felony murder), which Taylor "agrees to plead NO CONTEST."

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 141.

142.   The written plea agreement included Sec. III," "Standard Terms and Conditions."

Defendant Pima County:  Pima County does not dispute this contention.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 143.

143.   Sec. III(F) is titled "Rejection of or Withdrawal From the Plea Agreement" provides, in part:

> "… if at any time before or after sentencing, the defendant's plea is rejected, withdrawn, vacated, or reversed by any court, the plea agreement will become void and the parties to the plea agreement shall return to the positions they were in before executing the plea agreement. Any charges that were dismissed because of the plea agreement will be automatically reinstated."

Defendant Pima County:  Pima County disputes this contention because it does not accurately and fully recite Section III(F)(3) of the plea agreement.

1    Defendant City of Tucson: This factual contention relates to the County, not the
2    City. The City was not involved in any of the 2012-2013 post-conviction relief
3    proceedings or related proceedings. The City joins in the County's response to No. 143.

4    144.    On April 2, 2013, Taylor entered "no contest" pleas to the 29 charges
5    made in the plea agreement.

6    Defendant Pima County:  This contention is not accurate.  On April 2, 2013,
7    Taylor pleaded no contest to the charges and the court found that Taylor knowingly,
8    voluntarily, and intelligently entered the plea and that there is a factual basis for the
9    plea.

10    Defendant City of Tucson: This factual contention relates to the County, not the
11    City. The City was not involved in any of the 2012-2013 post-conviction relief
12    proceedings or related proceedings. The City joins in the County's response to No. 144.

13    145.    Taylor was coerced into this deal because rejecting it would have
14    required him to spend additional years in prison, even though his pending petition had
15    merit.

16    Defendant Pima County:  Pima County disputes this contention.  Taylor was not
17    coerced into accepting the plea agreement.  Taylor could have rejected the plea and
18    pursued his Rule 32 petition but he elected to avoid the risk of his petition being denied
19    and wanted his release from prison to be certain.

20    Defendant City of Tucson: This is argument, not a factual contention. This
21    factual contention relates to the claim against the County, not the City. The City joins
22    in the County's response to No. 145. The City adds that there is no evidence showing
23    that Taylor was coerced into taking the plea in 2013. The Court did not decide whether
24    or not the petition had merit. Taylor was represented by a number of criminal defense
25    attorneys who could and should have advised him not to take the plea if they believed
his petition had merit, or if they believed he was being coerced into taking the plea.

146.   During Taylor's April 2, 2013 change of plea hearing, Deputy County Attorney Unklesbay stated:

> Nonetheless, if it went to a post-conviction hearing, and, in short, if the Court did, in fact, find that this was, in fact, legally, newly discovered evidence, the State would be unable to proceed to a new trial given the passage of time, the destruction of evidence, and the death of many of the witnesses who testified.

Defendant Pima County:  This contention is out of context.  Unklesbay first stated: "The State would present evidence that we believe that, in spite of the arson review committee's report that the Court has seen reference to in the Defense petition, in addition to the Tucson Fire Department report that the Court has seen, I know, and their conclusions, that there is significant other evidence to show, in fact, that an arson did occur on December 20th of 1970. That's laid out in the State's memorandum." And he later stated: "But it is the State's belief, based on the trial testimony, and much of it that I've cited in the memorandum, that the evidence showed that Mr. Taylor was, in fact, guilty of these crimes."  Talyor's attorney agreed that "the prosecution would be able to offer into evidence information as Mr. Unklesbay has described it" and "[did not] contest the State's ability or its willingness to make that offer at a trial."

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 146.

147.   Judge Richard Fields conducted a change of plea hearing on April 2, 2013, during which he ordered that: (1) there was sufficient newly discovered evidence for a new trial; (2) that the previous sentence was vacated; (3) that a plea was entered; and (4) Taylor was to be released from custody.

Defendant Pima County:  Pima County disputes this contention.  The State's stipulated only to the following: "As part of the Defense petition we had supplied them with the report from the Tucson Fire Department. I know that's part of the record at this point in time. And I think we can handle the Rule 32 aspect based on that pleading that is, or that document that's part of the pleadings already. And we would be willing to stipulate with Mr. Novak that the document provided to the Court provides and I want to be real careful about what the Court makes a finding on, because what we're stipulating to is that under the unique circumstances of this particular case, and the facts of this case, that that report is sufficient under Rule 32 for the Court to grant Mr. Taylor a new trial. I don't want this to be taken that, that this type of evidence is overall a sweeping cause for other post-conviction petitions. Because we are agreeing, in the circumstances of this case, as I said, under the specific circumstances of this case, that the Court can consider that in finding newly discovered evidence in Mr. Taylor's case." Taylor's counsel agreed that "the Tucson Fire Defendant report provides sufficient evidence to allow the Court to accept the stipulation with respect to a Rule 32 finding and proceed on the plea agreement."  The court ruled: "Then, by stipulation, I will find sufficient evidence, newly discovered evidence to grant a new trial pursuant to Rule 32.1."  The court vacated the previous sentence.  It then accepted the plea and ordered Taylor's release.

Defendant City of Tucson: This factual contention relates to the County, not the City. The City was not involved in any of the 2012-2013 post-conviction relief proceedings or related proceedings. The City joins in the County's response to No. 147.

148.   As part of the plea agreement, Taylor's original convictions were vacated.  *Taylor v. Cnty. Of Pima*, 913 F.3d 930, 932, 935, 939 (9th Cir. 2019)

Defendant Pima County:  Pima County does not dispute that the Ninth Circuit's opinion states that "Taylor's 1972 jury conviction has been vacated by the state court."

1     Defendant City of Tucson: The plea agreement and its supporting documents
2     from the April 2, 2013, plea proceeding speak for themselves. The City does not
3     dispute that the Ninth Circuit made this statement in the case cited. The City joins in
4     the County's response to No. 148.

5     149.    Malena Acosta was present at the April 2, 2013 hearing and would likely
6     have heard Unklesbay say that the County lacked sufficient evidence to convict Taylor.

7     Defendant Pima County: Pima County does not dispute that Malena Acosta was
8     present at the April 2, 2013 hearing, but disputes Taylor's characterization of what was
9     said and speculation as to what Acosta heard.

10    Defendant City of Tucson: This is speculation, and this factual contention
11    relates to the claim against the County, not the City. The City joins in the County's
12    response to No. 149. The City was not involved in these proceedings.

13    150.    The County, in its June 5, 2020 Initial Disclosure Statement, disclosed
14    the April 1, 2013 sentencing memorandum and April 2, 2013 Change of Plea transcript
15    (where Mr. Unklesbay stated the County would be unable to retry Taylor)

16    Defendant Pima County:  This contention is irrelevant to the claims in this case.
17    Nonetheless, Pima County does not dispute that it disclosed the Memorandum in
18    Support of Stipulated Finding on Post-Conviction Relief and Plea Agreement dated
19    April 1, 2013, and Reporter's Transcript dated April 2, 2013, on June 5, 2020.

20    Defendant City of Tucson: This includes argument, which the City disputes.
21    These items from Taylor's criminal case were disclosed in this case, and Mr.
22    Unklesbay is a disclosed witness in this case. The City joins in the County's response
23    to No. 150.

24    151.    The County made no changes or revisions to Unklesbay's comments in
25    that disclosure statement.

1     Defendant Pima County:  This contention is irrelevant to the claims in this case.

2 Nonetheless, Pima County notes that the plea agreement (and Unklesbay's comments)

3 did not become relevant (at least for purposes of Taylor's theory) until February 24,

4 2021, when he filed his TAC that included the expungement claim.

5     Defendant City of Tucson: See the City's response to No. 150, above. The City

6 joins in the County's response to No. 151.

7     152.   The County did not even list Unklesbay as a witness in its Initial

8 Disclosure Statement.

9     Defendant Pima County:  This contention is irrelevant to the claims in this case.

10 Nonetheless, Pima County notes that Unklesbay's testimony did not become relevant

11 (at least for purposes of Taylor's theory) until February 24, 2021, when he filed his

12 TAC that included the expungement claim. Unklesbay was timely disclosed as a

13 witness.

14     Defendant City of Tucson: This is not relevant. See the City's response to No.

15 150, above. The City joins in the County's response to No. 152.

16     153.   On October 23, 2020, Nick Acedo of the Struck Love law firm filed a

17 notice of appearance as co-counsel for Defendant Pima County.

18     Defendant Pima County:  This contention is irrelevant to the claims in this case.

19 Nonetheless, Pima County does not dispute that Daniel P. Struck, Nicholas D. Acedo,

20 and Jacob B. Lee filed a notice of appearance on behalf of Pima County in this civil

21 suit.

22     Defendant City of Tucson: This is not relevant to the remaining claims and

23 issues in this lawsuit. The City joins in the County's response to No. 153.

24     154.   On December 29, 2020, Deputy County Attorneys Nancy Davis and

25 Clayton Kramer moved to withdraw from representing the County

1    Defendant Pima County:  This contention is irrelevant to the claims in this case.

2    Nonetheless, on December 29, 2020, Deputy County Attorneys Nancy Davis and

3    Clayton Kramer, who were the only attorneys from the Pima County Attorney's Office

4    who appeared as counsel of record for Pima County filed a motion to withdraw.

5    Defendant City of Tucson: This is not relevant to the remaining claims and

6    issues in this lawsuit. The City joins in the County's response to No. 154.

7    155.   On January 7, 2021, the Court granted the Davis/Kramer motion to

8    withdraw.

9    Defendant Pima County:  This contention is irrelevant to the claims in this case.

10   Nonetheless, on January 7, 2021, the Court granted the motion to withdraw.

11   Defendant City of Tucson: This is not relevant to the remaining claims and

12   issues in this lawsuit. The City joins in the County's response to No. 155.

13   156.   On April 8, 2021, the County's new lawyers (Struck, Love) served the

14   County's First Supplemental Disclosure Statement.

15   Defendant Pima County:  This contention is irrelevant to the claims in this case.

16   Nonetheless, Pima County does not dispute that, on April 8, 2021, Pima County served

17   its First Supplemental Disclosure Statement.

18   Defendant City of Tucson: This is not relevant to the remaining claims and

19   issues in this lawsuit. The City joins in the County's response to No. 156.

20   157.   There, the County first disclosed Unklesbay as a witness, but made no

21   changes or revisions to Unklesbay's 2013 comments that the County would be unable

22   to retry Taylor in 2013.

23   Defendant Pima County: This contention is irrelevant to the claims in this case.

24   Nonetheless, Pima County does not dispute that, on April 8, 2021, Pima County served

25   its First Supplemental Disclosure Statement and identified Unklesbay as a person likely

to have discoverable information.  Pima County noted that Unklesbay "had contacts

and communications with Plaintiff's defense counsel regarding his 2012 Post-Conviction Petition and Plaintiff's 2013 guilty plea. Mr. Unklesbay is expected to testify regarding all non-privileged knowledge and information he may have regarding Plaintiff's criminal prosecution."

Defendant City of Tucson: See the City's response to No. 150, above. The City joins in the County's response to No. 157.

158.   The County served its Sixth Supplemental Disclosure on September 22, 2021; there, for the first time, they disclosed Mr. Unklesbay to testify (p. 41) he believed in 2013 that "Taylor was guilty beyond a reasonable doubt."

Defendant Pima County:  This contention is irrelevant to the claims in this case. Nonetheless, Pima County does not dispute that, on September 22, 2021, Pima County served its Sixth Supplemental Disclosure Statement and disclosed Unklesbay's proposed testimony in accordance with Rule 26(a)(2)(C).

Defendant City of Tucson: See the City's response to No. 150, above. The City joins in the County's response to No. 158.

159.   And, in this September 22, 2021 Disclosure Statement, the County for the first time disclosed Unklesbay to testify there was not only probable cause to pursue a retrial but "admissible" proof beyond a reasonable doubt that Taylor committed an arson and started the Pioneer Hotel fire that killed 28 people.

Defendant Pima County: This contention is irrelevant to the claims in this case. Nonetheless, Pima County does not dispute that, on September 22, 2021, Pima County served its Sixth Supplemental Disclosure Statement and disclosed Unklesbay's proposed testimony in accordance with Rule 26(a)(2)(C).

Defendant City of Tucson: See the City's response to No. 150, above. The City joins in the County's response to No. 159.

160.   The County later submitted affidavits from both Unklesbay and Acosta indicating they believed in 2013 that proof of guilt beyond a reasonable doubt existed and that Taylor could have been retried.

Defendant Pima County:   This contention understates the evidence.   Pima County does not dispute that, in conjunction with its summary-judgment briefing, it submitted affidavits from Unklesbay and Acosta. The affidavits state that they believed in 2013 that there was admissible proof beyond a reasonable doubt that Taylor committed an arson and started the Pioneer Hotel fire.

Defendant City of Tucson: See the City's response to No. 150, above. Ms. Acosta is a listed witness in this case. The City joins in the County's response to No. 160.

161.   The Court has concluded that these affidavits "are contradicted by the memorandum that Unklesbay filed with the court in support of Taylor's 2013 no-contest plea, and that "[i]n that memorandum to Judge Fields, Unklesbay averred that, if a new trial were ordered, 'the State would be unable to proceed with a retrial, and the convictions would not stand.' (Doc. 344-2 at 9.) At Taylor's change-of-plea hearing, Unklesbay again averred to the court that the prosecution would be unable to proceed with a retrial. (Doc. 348-11 at 21.) Unklesbay now states in his affidavit that his prior statement to the court regarding the prosecution's inability to proceed with a retrial was "inartful." (Doc. 341-4 at 8.) However, if Unklesbay and Acosta could have, and were prepared to, retry Taylor in 2013, then Unklesbay's statement in the memorandum in support of the no-contest plea, and his similar statement to the court at the change-of-plea hearing, were not simply inartful but false."  (Doc. 869 at 21-22.)

Defendant Pima County:  This is argument, not a fact contention for the jury. Moreover, the Court also noted that Unklesbay "provides some explanation for the inconsistency."  (Dkt. 869 at 22–23.)

1    Defendant City of Tucson: The Court denied Taylor's summary judgment on

2    the expungement claim, and the jury must now determine the factual disputes relating

3    to said claim. The City was not involved in the 2012-2013 criminal proceedings. This

4    factual contention relates to the County, not the City. The City joins in the County's

5    response to No. 161.

6        162.    The Court has thus concluded either that Unklesbay's 2013 statements

7    in state court were false or that his disclosure and affidavit from this litigation are false.

8        Defendant Pima County:  This is argument, not a fact contention for the jury.

9    Nonetheless, Pima County disputes this contention.  Unklesbay's statements and

10   avowals are not false.

11       Defendant City of Tucson: This is argument. See the City's response to No. 161,

12   above. The City joins in the County's response to No. 162.

13       163.    Laura Conover ran for Pima County Attorney around 2020.

14       Defendant Pima County:  Pima County does not dispute this contention, but it

15   is only admissible if certain other evidence in this case is admitted.

16       Defendant City of Tucson: This factual contention relates to the claim against

17   the County, not the City. The City joins in the County's response to No. 163.

18       164.    Mrs. Conover, before her election, stated:

19   • "The criminal justice system makes mistakes, and the office I'm

20   running for has seen its fair share, including the way it mishandled

21   Louis's exoneration and further harmed him."

22   • "Prison destroyed Louis, his health, his mind, his future."

23   • "I still pray for Louis."

24   • "He should have been compensated, in my humble opinion. The case

25   caused outrage in me at an early age and has stayed with me."

1     • "I have always understood that there was a serious conflict in

2     arresting him, in charging him, in trying the child as an adult, in

3     convicting him, in denying him parole decade after decade, and then

4     in refusing to make him whole. This case has haunted me and fueled

5     me."

6     • "Louis was 16, and he did not get a fair trial. And he became the

7     30th victim, in my humble view of the evidence."

8     Defendant Pima County: Pima County does not dispute this contention, but it is

9 only admissible if certain other evidence in this case is admitted.

10    Defendant City of Tucson: This factual contention relates to the claim against

11 the County, not the City. The City joins in the County's response to No. 164.

12    165.   Mrs. Conover, after her election in November 2020, appointed Jack

13 Chin, Esq. as a senior advisor.

14    Defendant Pima County: This is not entirely accurate.  Conover appointed Jack

15 Chin to be, among other things, her Senior Counsel.  He also served other roles in her

16 administration.  But these contentions are only admissible if certain other evidence in

17 this case is admitted.

18    Defendant City of Tucson: This factual contention relates to the claim against

19 the County, not the City. The City joins in the County's response to No. 165.

20    166.   In early 2021, Mrs. Conover directed Chin to review Taylor's civil and

21 criminal cases.

22    Defendant Pima County:  This is not entirely accurate.  Chin and Conover

23 testified that Conover asked Chin to look into Taylor's civil case.  Chin does not recall

24 who directed him to review Taylor's criminal case.  These contentions are only

25 admissible if certain other evidence in this case is admitted.

1          Defendant City of Tucson: This factual contention relates to the claim against

2    the County, not the City. The City joins in the County's response to No. 166.

3          167.   The outgoing administration failed to inform Mrs. Conover, before

4    Conover took office, that the Pima County Attorney's office had been "conflicted" off

5    the case and replaced by an outside (Phoenix) law firm.

6          Defendant Pima County:  This contention is irrelevant to Taylor's claims, and

7    the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless,

8    Pima County disputes that Conover was never informed of the conflict.

9          Defendant City of Tucson: This factual contention relates to the claim against

10   the County, not the City. The City joins in the County's response to No. 167.

11         168.   The outgoing administration never informed Conover that outside

12   counsel had been retained.

13         Defendant Pima County: This contention is irrelevant to Taylor's claims, and

14   the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless,

15   Pima County disputes that Conover did not know that outside counsel represented Pima

16   County in this civil case.

17         Defendant City of Tucson: This factual contention relates to the claim against

18   the County, not the City. The City joins in the County's response to No. 168.

19         169.   Mr. Chin, at Conover's direction and before learning outside counsel had

20   been retained, contacted Taylor's civil lawyers to discuss the case, including

21   preliminary discussions about possible settlement.

22         Defendant Pima County: This contention is irrelevant to Taylor's claims, and

23   the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless,

24   Pima County does not dispute this contention.

25         Defendant City of Tucson: This factual contention relates to the claim against

the County, not the City. The City joins in the County's response to No. 169.

170.   Conover and Mr. Chin then learned, through Nancy Davis (formerly of the County Attorney's office) that the County Civil Division no longer represented the County and Taylor's case.

Defendant Pima County: This contention is irrelevant to Taylor's claims, and the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless, Pima County disputes that Conover's administration did not know that outside counsel represented Pima County in this civil case.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 170.

171.   Conover and Chin, at that time, stopped working on Taylor's civil case.

Defendant Pima County: This contention is irrelevant to Taylor's claims, and the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless, Chin testified that he stopped working on Taylor's civil case at some point in time.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 171.

172.   Conover then retained ethics counsel to determine whether she could represent the State on Taylor's criminal case.

Defendant Pima County: This contention is irrelevant to Taylor's claims, and the Court has ruled that this conflict issue is inadmissible in this case.  Nonetheless, Pima County does not dispute that Conover retained ethics counsel, but the precise parameters of that inquiry are unknown (Conover would not extrapolate during her deposition, asserting it was privileged).

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 172.

173.   Ethics counsel concluded Conover could do so.

Defendant Pima County: This contention is irrelevant to Taylor's claims, and the Court has ruled that this conflict issue is inadmissible in this case. Nonetheless, Pima County does not dispute that Conover's retained ethics counsel provided her legal advice, but the precise parameters of that advice are unknown (Conover would not explain during her deposition, asserting it was privileged).

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 173.

174.   Conover then continued working on Taylor's criminal case, as required by A.R.S. §11 – 532.

Defendant Pima County:   Pima County maintains that this contention is irrelevant to the claims in this case. Nonetheless, Pima Couty does not dispute that, at some point in time, Conover reviewed a report and a draft prepared by Chin, but she did not substantively work or investigate on any aspect of Taylor's criminal prosecution.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 174.

175.   Prof. Chin, at Conover's behest, then completed an exhaustive evaluation of Taylor's criminal case.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case. Nonetheless, Pima County disputes the contention that Chin completed an exhaustive evaluation of Taylor's criminal case. His deposition testimony shows otherwise.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 175.

176.   Prof. Chin then concluded that Taylor's criminal charges should be dismissed.

1      Defendant Pima County: Pima County maintains that this contention is
2  irrelevant to the claims in this case.  Nonetheless, Pima County disputes the over-
3  generalized contention that Chin concluded that Taylor's criminal charges should be
4  dismissed.  His deposition testimony shows otherwise.

5      Defendant City of Tucson: This factual contention relates to the claim against
6  the County, not the City. The City joins in the County's response to No. 176.

7      177.    Conover agreed and continues to agree.

8      Defendant Pima County: Pima County maintains that this contention is
9  irrelevant to the claims in this case.  Nonetheless, Pima County disputes the contention
10  that Conover agreed and continues to agree.

11      Defendant City of Tucson: This factual contention relates to the claim against
12  the County, not the City. The City joins in the County's response to No. 177.

13      178.    Prof. Chin and/or Conover concluded Taylor's criminal charges should
14  be dismissed.

15      Defendant Pima County:  Pima County maintains that this contention is
16  irrelevant to the claims in this case.  Nonetheless, Pima County disputes the over-
17  generalized contention that Chin and Conover concluded Taylor's criminal charges
18  should be dismissed.

19      Defendant City of Tucson: This factual contention relates to the claim against
20  the County, not the City. The City joins in the County's response to No. 178.

21      179.    In late May 2022, Mrs. Conover drafted a document announcing Taylor's
22  exoneration.

23      Defendant Pima County: Pima County maintains that this contention is
24  irrelevant to the claims in this case.  Nonetheless, Pima County disputes the over-
25  generalized contention that Conover drafted a document announcing Taylor's
exoneration.

1    Defendant City of Tucson: This factual contention relates to the claim against

2    the County, not the City. The City joins in the County's response to No. 179.

3    180.   Around   that   time   both   Conover   and   Chin   began   contacting

4    "stakeholders" to let them know that Taylor's criminal case would be dismissed.

5    Defendant Pima County: Pima County maintains that this contention is

6    irrelevant to the claims in this case.  Nonetheless, Pima County does not dispute that

7    Conover testified that, around May 27, 2022, she began contacting "stakeholders" and

8    informing that she was considering filing a motion to vacate Taylor's convictions.

9    Defendant City of Tucson: This factual contention relates to the claim against

10    the County, not the City. The City joins in the County's response to No. 180.

11    181.   David Berkman is a former Pima County Attorney and was so employed

12    in 2012 and 2013 in a senior management capacity.

13    Defendant Pima County: Pima County maintains that this contention is

14    irrelevant to the claims in this case.  Nonetheless, Pima County does not dispute that

15    David Berkman is a former Deputy Pima County Attorney.  His dates of employment

16    or titles have not been disclosed in this case.

17    Defendant City of Tucson: This factual contention relates to the claim against

18    the County, not the City. The City joins in the County's response to No. 181.

19    182.   Around the time that Conover and Chin decided to dismiss Taylor's

20    criminal charges and began notifying stakeholders, Berkman emailed Rex Scott, the

21    District 1 Supervisor on the County Board, and County Administrator Jan Lesher,

22    stating in part:

23    "Rex, Wednesday Conover is going to file a motion to set aside the

24    Taylor Pioneer fire case. Right now, Taylor is not entitled to damages. If

25    the conviction is set aside he will be able to get damages which may cost

1    the County a ton. She has been conflicted off the federal case. This will

2    impact that case …

3

4    The lawyer for Pima County needs to be directed to get involved. Her

5    position is in direct conflict the Pima County.  If someone wants to review

6    the case it needs to be an impartial agency …

7

8    The Board needs to take a position. This is outrageous if Acedo makes a

9    stink, perhaps the judge flicked her off …

10   Perhaps the Board can embarrass her to do the right thing. Board can't let

11   this go."

12   Defendant Pima County: Pima County maintains that this contention is

13   irrelevant to the claims in this case.  Nonetheless, Pima County disputes this contention.

14   Defendant City of Tucson: This factual contention relates to the claim against

15   the County, not the City. The City joins in the County's response to No. 182.

16   183.   Around this time, Conover had a telephone conversation with Nick

17   Acedo, who represents Pima County in this civil action, and advised him that a motion

18   to exonerate would likely be filed in Taylor's case. (Doc. 810-1 at 43.)

19    Defendant Pima County: Pima County maintains that this contention is

20   irrelevant to the claims in this case.  Nonetheless, Pima County does not dispute that

21   Conover testified that she had a conversation with Pima County's civil counsel on May

22   27, 2022, and told him that she was considering filing a motion to vacate Taylor's

23   convictions.  Pima County disputes the substance of that conversation as relayed by

24   Conover.

25   Defendant City of Tucson: This factual contention relates to the claim against

the County, not the City. The City joins in the County's response to No. 183.

184.   Conover testified that Acedo's "volume and speech pattern increased dramatically," and "he seemed to be beside himself that this could possibly be happening and indicated that [Conover] couldn't undertake this because [she] was the county attorney, and it didn't align with what he wanted, and he referenced that he thought the state bar . . . would have something to say about this." (*Id.*)

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County does not dispute that Conover testified that she had a conversation with Pima County's civil counsel on May 27, 2022.  Pima County disputes the substance of that conversation as relayed by Conover.  Moreover, Conover testified that Pima County's civil counsel did not threaten her or reference a bar complaint during their conversation, and she acknowledged that counsel's voice was likely raised because he was out to dinner with his family and it was difficult to hear him.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 184.

185.   Conover, after speaking to Acedo, changed her mind and decided not to file the motion to exonerate.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County disputes that Conover changed her mind and decided not to file the motion to vacate Taylor's convictions after speaking with Pima County's civil counsel in this case.  Conover denied that allegation at her deposition and explained that she did not take any action on Taylor's criminal case after meeting with her executive team and collectively deciding that Arizona law did not allow her to.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 185.

186.   Conover later stated to a friend that Acedo "threatened" her with disbarment, and that threat was the reason she did not move forward with vacating Taylor's conviction.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County disputes that Conover told anyone that Pima County's counsel in this case "threatened" her with disbarment, and that that threat was the reason she did not move forward with vacating Taylor's conviction.  Conover denied that allegation at her deposition and explained that she did not take any action on Taylor's criminal case after meeting with her executive team and collectively deciding that Arizona law did not allow her to.  She further testified that her decision was not influenced by anyone from Pima County.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 186.

187.   Prof. Chan testified that if this phone conversation between Conover and Acedo had not occurred, the motion to dismiss Taylor's charges would have been filed.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County disputes this contention.  Conover testified that the draft motion was never authorized to be filed, and that she did not take any action on Taylor's criminal case after meeting with her executive team and collectively deciding that Arizona law did not allow her to, not because of anything stated during her conversation with Pima County's counsel.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 187.

188.   Conover then "paused" her decision to dismiss Taylor's criminal charges.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County disputes this contention.

Conover testified that she never made a final decision and that she did not take any action on Taylor's criminal case after meeting with her executive team and collectively deciding that Arizona law did not allow her to, not because of anything stated during her conversation with Pima County's counsel.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 188.

189.   The Pima County Board of Supervisors held an executive session meeting on August 2, 2022; the County has refused to disclose who was present at that meeting, despite a Court order finding that the persons present are not confidential.

Defendant Pima County: Pima County maintains that this contention is irrelevant to the claims in this case.  Nonetheless, Pima County does not dispute that the Pima County Board of Supervisors held an Executive Session on August 2, 2022. Pima County also does not dispute that it has refused to provide Taylor's counsel the Executive Session minutes because they are confidential by statute.  Pima County also does not dispute that it refused to provide Taylor's counsel a list of the names of those who attended the Executive Session because that information derives only from the confidential minutes and Pima County is not required "tally," "compile," or "create" a public record in response to a public records request. *Humphrey v. State*, 249 Ariz. 57, 68, ¶ 42 (App. 2020).  Finally, Pima County disputes that there is a court order finding that the persons who attended the Executive Session is not confidential.  No such order exists.

Defendant City of Tucson: This factual contention relates to the claim against the County, not the City. The City joins in the County's response to No. 189.

190.   As reflected in the Arizona Supreme Court decision, Detective Gassaway is the one who, during Taylor's 7-hour interrogation, first suggested the fire

was set in conjunction with a plan to burglarize rooms.  *State v. Taylor*, 112 Ariz. 68, 75 (1975).

Defendant Pima County: Pima County disputes this contention.  The evidence supports that Taylor did plan to burglarize rooms.

Defendant City of Tucson: Plaintiff's factual contention, according to the citation included therein, is taken from the Arizona Supreme Court's decision in *State v. Taylor*, 112 Ariz. 68 (1975). The Court noted in its decision the difficulty it had in summarizing the facts, as determined at that time. *Id.* at 71. Even if Plaintiff correctly states what is included in the cited decision, the City contends that the facts relating to the remaining issues in this lawsuit will be introduced at trial, which will include the prior sworn testimony from a number of witnesses that testified at the numerous pre-trial, trial, and post-trial hearings in Taylor's criminal case. The jury in this civil trial will decide what facts they believe to be true and accurate, and it will be the jury that applies said facts to the issues and law they are instructed to apply at the end of this trial. The jury will determine what, if any, importance they place on the facts presented. The City joins in the County's response to No. 190.

191.    Taylor never stated or even suggested this occurred.

Defendant Pima County: Pima County disputes this contention.  The evidence supports that Taylor did plan to burglarize rooms.

Defendant City of Tucson: Whether Taylor states this or not, there is evidence that Taylor was with other juveniles at the Pioneer Hotel on the day/evening of the fire to steal property from the patrons and hotel guests.

192.    Not by coincidence, Wallmark's testimony fit nicely with Gassaway's theory that a fire was set in conjunction with the plan to burglarize rooms during Taylor's 7-hour interrogation.  (Doc. 869 at 8, citing 338-10 at 57-60, 64-65, 91-92.)

1    Defendant Pima County:   This is argument, not a factual contention.   The

2 evidence supports that Taylor did plan to burglarize rooms.

3    Defendant City of Tucson: This is argument, not a factual contention. See the

4 City's response to No. 191, above.

5    193.    Gassaway testified at Taylor's trial that he suggested to Taylor that a fire

6 was set in conjunction with the plan to burglarize rooms.  (Doc. 335, ¶151-52)

7    Defendant Pima County: Pima County disputes this contention.  The evidence

8 supports that Taylor did plan to burglarize rooms.

9 Defendant City of Tucson: See the City's response to No. 192, above. The City joins

10 in the County's response to No. 193.

11    194.    Wallmark testified Taylor told him that he and two others had been in

12 the Pioneer Hotel the evening of the fire to steal wallets and money from rooms, and

13 that the fire had started from a lit book of matches or a lighter that dropped on the

14 carpet as they were running away from a hotel employee. (Doc. 869 at 8, citing 338-

15 10 at 57-60, 64-65, 91-92.

16    Defendant Pima County:   Pima County disputes this contention. Wallmark

17 testified that Taylor told him that *the police* said that the fire started from a lit book of

18 matches or a lighter dropped on the carpet.  Wallmark further testified that Taylor never

19 told him that he (Taylor) started the fire or that he (Taylor) saw how it started.

20    Defendant City Tucson: This is repetitive to Plaintiff's factual contention No.

21 120. See the City's response to Plaintiff's No. 120.

22    195.        The total amount of full and fair compensation necessary to

23 compensate Taylor.

24    Defendant Pima County: Pima County contends that Taylor is not entitled to

25 any compensation.

1    Defendant City of Tucson: The City contends that Taylor is not entitled to any
2    compensation.

3    196.    Taylor's full and fair compensation for all damages caused by some or
4    all counts in Taylor's Third Amended Complaint, including but not limited to his 42
5    years of incarceration.

6    Defendant Pima County:    Pima County contends that Taylor is not entitled to
7    any compensation, including arising out of his incarceration.

8    Defendant City of Tucson: The City contends that Taylor is not entitled to any
9    compensation, including arising out of his incarceration.

10   197.    Separate and apart from Taylor's incarceration damage claim, full and
11   fair damages available for "no contest" pleas under *Ove v. Gwinn*, 264 F.3d 817, 823
12   (9th Cir. 2001), *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) and *Lockett v.
13   Ericson*, 656 F.3d 892, 896-97 (9th Cir. 2001), set forth below.

14   Defendant Pima County:  Pima County contends that Taylor is not entitled to
15   any compensation, including arising out of the no-contest plea.

16   Defendant City of Tucson: The City contends that Taylor is not entitled to any
17   compensation, including arising out of the no-contest plea.

18   198.    Taylor's full and fair compensation for all damages, regardless of
19   the *Heck* bar, caused by some or all counts in Taylor's Third Amended Complaint,
20   including but not limited to the Truesdail report *Brady* violation.

21   Defendant Pima County: Pima County contends that Taylor is not entitled to
22   any compensation and that there was no *Brady* violation involving the Truesdail
23   Report.

24   Defendant City of Tucson: The City contends that Taylor is not entitled to any
25   compensation and that there was no *Brady* violation involving the Truesdail Report.

199.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by some or all counts in Taylor's Third Amended Complaint, including but not limited to the presentation of perjured testimony to convict Taylor.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and that there was no presentation of perjured testimony to convict Taylor.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation and that there was no presentation of perjured testimony to convict Taylor.

200.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the some or all counts in Taylor's Third Amended Complaint, including but not limited to the *Giglio* violations/threats and coercion of witnesses.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and that there was no *Giglio* violations/threats and coercion of witnesses. There is also no such claim in the TAC.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation and that there was no *Giglio* violations/threats and coercion of witnesses. There is also no such claim in the TAC. Like other claims that were not alleged in the TAC, this claim is barred too.

201.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by some or all counts in Taylor's Third Amended Complaint, including but not limited to prohibiting Claus Bergman from truthfully testifying at trial.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and that there was no prohibition on Claus Bergman from truthfully testifying at trial. There is also no such claim in the TAC.

1    Defendant City of Tucson: The City contends that Taylor is not entitled to any
2    compensation and that there was no prohibition on Claus Bergman from truthfully
3    testifying at trial. There is also no such claim in the TAC. Like other claims that were
4    not alleged in the TAC, this claim is barred too.

5    202.   Taylor's full and fair compensation for all damages, regardless of
6    the *Heck* bar, caused by some or all counts in Taylor's Third Amended Complaint,,
7    including but not limited to forcing Robert Jackson to withdraw his recantation.

8    Defendant Pima County: Pima County contends that Taylor is not entitled to
9    any compensation, Robert Jackson did not recant, and Jackson was not forced to do
10   anything. There is also no such claim in the TAC.

11   Defendant City of Tucson: The City contends that Taylor is not entitled to any
12   compensation, Robert Jackson did not recant, and Jackson was not forced to do
13   anything. There is also no such claim in the TAC. Like other claims that were not
14   alleged in the TAC, this claim is barred too.

15   203.   Taylor's full and fair compensation for all damages, regardless of
16   the *Heck* bar, caused by the County/City conspiracy, including but not limited to the
17   City's failure to act on Kathy Higgins report of Wallmark and Jackson's lies
18   approximately 20 years ago.

19   Defendant Pima County: Pima County contends that Taylor is not entitled to
20   any compensation, there was no conspiracy, and there was no failure to act on Kathy
21   Higgins' alleged report of Wallmark.  There is also no such claim in the TAC.

22   Defendant City of Tucson: The City contends that Taylor is not entitled to any
23   compensation, there was no conspiracy, and there was no failure to act on Kathy
24   Higgins' alleged report of Wallmark.  There is also no such claim in the TAC. Like
25   other claims that were not alleged in the TAC, this claim is barred too.

204.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including the County Board requiring "no contest" pleas in 2013 to protect its financial interests.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation, there was no conspiracy, and the County Board did not require the no-contest plea. There is also no such claim in the TAC.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation, there was no conspiracy, and the County Board did not require the no-contest plea. There is also no such claim in the TAC. The City was not a party to Taylor's 2012-2013 criminal proceedings and not represented during those proceedings. Like other claims that were not alleged in the TAC, this claim is barred too.

205.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including the County retaining outside counsel in 2020.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation, and there was no conspiracy involving retaining outside counsel in 2020.  There is also no such claim in the TAC.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation, and there was no conspiracy involving retaining outside counsel in 2020.  There is also no such claim in the TAC. The City was not involved in the County's  decision to retain outside counsel. The Court already ruled that this is not an issue in this lawsuit. Like other claims that were not alleged in the TAC, this claim is barred too.

206.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including some subsequent conduct of County counsel.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and there was no conspiracy involving conduct by outside counsel. There is also no such claim in the TAC.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation and there was no conspiracy involving conduct by outside counsel. There is also no such claim in the TAC. Like other claims that were not alleged in the TAC, this claim is barred too.

207.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including County counsel refusing to ever allow Taylor access to full County prosecution file.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and there was no conspiracy involving refusing to allow Taylor access to the prosecution file.  There is also no such claim in the TAC. And outside counsel did not refuse to ever allow Taylor access to the prosecution file.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation and there was no conspiracy involving refusing to allow Taylor access to the prosecution file.  There is also no such claim in the TAC. And outside counsel did not refuse to ever allow Taylor access to the prosecution file. Like other claims that were not alleged in the TAC, this claim is barred too.

208.   Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including County counsel threatening Laura Conover with a bar complaint if she dismissed Taylor's criminal charges.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and there was no conspiracy involving outside counsel threatening Laura Conover with a bar complaint if she dismissed Taylor's criminal charges. There is also no such claim in the TAC. And outside counsel did not threaten Conover.

Defendant City of Tucson: The City contends contends that Taylor is not entitled to any compensation and there was no conspiracy involving outside counsel threatening Laura Conover with a bar complaint if she dismissed Taylor's criminal charges. There is also no such claim in the TAC. And outside counsel did not threaten Conover. Like other claims that were not alleged in the TAC, this claim is barred too.

209. Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County/City conspiracy, including County counsel refusing to provide Laura Conover with the new sealed declaration.

Defendant Pima County: Pima County contends that Taylor is not entitled to any compensation and there was no conspiracy involving outside counsel refusing to provide Laura Conover with the Sealed Declaration. There is also no such claim in the TAC. And outside counsel did not refuse to provide Conover with the declaration.

Defendant City of Tucson: The City contends that Taylor is not entitled to any compensation and there was no conspiracy involving outside counsel refusing to provide Laura Conover with the Sealed Declaration. There is also no such claim in the TAC. And outside counsel did not refuse to provide Conover with the declaration. The City is and was prohibited from providing a copy of the Sealed Declaration to anyone, and it was only given permission to share it with one witness in this case. Like other claims that were not alleged in the TAC, this claim is barred too.

210. Taylor's full and fair compensation for all damages, regardless of the *Heck* bar, caused by the County pressuring Laura Conover into not dismissing Taylor's criminal charges in June-August 2022, to protect its civil interests.

1   Defendant Pima County: Pima County contends that Taylor is not entitled to

2   any compensation and Pima County did not pressure Laura Conover into not

3   dismissing Taylor's criminal charges. There is also no such claim in the TAC.

4   Defendant City of Tucson: The City contends that Taylor is not entitled to any

5   compensation. The City also contends that there is no credible evidence that supports

6   this claim.

7   211.   Taylor's full and fair damages, regardless of the *Heck* bar, for Weiss'

8   other abusive litigation tactics.

9   Defendant Pima County: Pima County contends that Taylor is not entitled to

10   any compensation and Horton Weiss did not engage in abusive litigation tactics.

11   Defendant City of Tucson: The City contends that Taylor is not entitled to any

12   compensation and there is no credible evidence to support the allegation that Horton

13   Weiss engaged in abusive litigation tactics.

14   The following issues raised by Albert Jackson's August 30, 1972 affidavit:

15   Defendant Pima County: This is not a contention or a complete

16   sentence.  Pima County disputes it.

17   Defendant City of Tucson: The City joins in the County's contention

18   and adds that Albert Jackson's affidavit is inadmissible hearsay and rebutted

19   by Lawrence Hust's testimony. If this contention comes from another

20   affidavit, it too is inadmissible hearsay.

21   212.   Whether and how many times he (Albert) and Robert discussed

22   Robert's 1972 trial testimony against Taylor.

23   Defendant Pima County: This is not a contention and there is no

24   competent, admissible evidence to support it.

25

Defendant City of Tucson: The City joins in the County's contention and adds that Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

213.   Whether Robert told Albert that Taylor stated he tried to save as many people as possible during the fire.

Defendant Pima County: There is no competent, admissible evidence to support this contention.

Defendant City of Tucson: The City joins in the County's contention and adds that this is double hearsay. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

214.   Whether, after being released from Ft. Grant, Robert was approached by members of the County Attorney staff, Detective Hust and Rex Angeley.

Defendant Pima County: Pima County disputes this contention. There is no competent, admissible evidence to support this contention and it is refuted by the evidence. There is also no timeframe for a point of reference.

Defendant City of Tucson: The City joins in the County's contention. The City adds that Lawrence Hust's testimony rebuts this allegation. No such meeting occurred. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

215.   When and where this occurred.

Defendant Pima County: This is not a contention.  See prior response.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

another affidavit, it too is inadmissible hearsay. The City adds that Lawrence

Hust's testimony rebuts this allegation.

216.    Whether Horton Weiss attended this meeting.

Defendant Pima County: Pima County disputes this contention. There is

no competent, admissible evidence to support this contention and it is refuted

by the evidence.

Defendant City of Tucson: The City joins in the County's contention. See also

the City's contention No. 218, above. Albert Jackson's affidavit is inadmissible

hearsay. If this contention comes from another affidavit, it too is inadmissible

hearsay. Hust never spoke to Robert Jackson about the fire or Taylor.

217.    Whether Robert told Weiss that all Taylor said about the fire was

that he tried to save as many people as he could.

Defendant Pima County: Pima County disputes this contention. There is

no competent, admissible evidence to support this contention and it is refuted

by the evidence

Defendant City of Tucson: The City joins in the County's contention.

Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

another affidavit, it too is inadmissible hearsay.

218.    Whether Hust then told Robert he (Hust) knew Taylor set the fire.

Defendant Pima County: Pima County disputes this contention. There is

no competent, admissible evidence to support this contention and it is refuted

by the evidence .

Defendant City of Tucson: The City joins in the County's contention.

Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

rebuts this allegation. Hust never spoke to Robert Jackson about the fire or Taylor.

219.    Whether Robert then stated he had nothing to talk about and that Taylor never admitted starting the fire.

Defendant Pima County: Pima County disputes this contention. There is no competent, admissible evidence to support this contention and it is refuted by the evidence .

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this allegation. Hust never spoke to Robert Jackson about the fire or Taylor.

220.    Whether Hust then told Robert he (Hust) knew Taylor set the fire.

Defendant Pima County:  Pima County disputes this contention. There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this allegation. Hust never spoke to Robert Jackson about the fire or Taylor.

221.    Whether Angeley told Robert that Bruce Wallmark had agreed to testify.

Defendant Pima County: Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay, and this is double hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

222.     Whether Angeley then threatened to arrest Robert on the spot for being an accessory and charged him with withholding evidence about the fire

Defendant Pima County: Pima County disputes this contention. There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

223.     Whether at that point, Hust or Angeley told Robert that unless he cooperated, they would put Robert in prison stating that a pretty young white boy didn't have a chance in prison.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention. Hust never spoke to Robert Jackson about the fire or Taylor.

224.     Whether Hust stated he would arrest Robert if he did not cooperate.

1    Defendant Pima County:  Pima County disputes this contention. There
2  is no competent, admissible evidence to support this contention and it is refuted
3  by the evidence.

4    Defendant City of Tucson: The City joins in the County's contention.
5  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
6  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
7  rebuts this contention. Hust never spoke to Robert Jackson about the fire or
8  Taylor.

9    225.    Whether Robert then agreed to testify.

10    Defendant Pima County:  Pima County disputes this contention. There
11  is no competent, admissible evidence to support the contention that Jackson
12  agreed to testify because of any threat and it is refuted by the evidence.

13    Defendant City of Tucson: The City joins in the County's contention.
14  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
15  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
16  rebuts this contention. Hust never spoke to Robert Jackson about the fire or
17  Taylor.

18    226.    Whether, in late February 1972, Albert was present for a meeting
19  between Hust and Robert.

20    Defendant Pima County:  Pima County disputes this contention. There
21  is no competent, admissible evidence to support this contention and it is refuted
22  by the evidence.

23    Defendant City of Tucson: The City joins in the County's contention.
24  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
25  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

rebuts this contention. Hust never spoke to Robert Jackson about the fire or Taylor.

227.   Whether, at this meeting, Robert was told to be ready to go to Phoenix on a minute's notice.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence .

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention. Hust never spoke to Robert Jackson about the fire or Taylor.

228.   Whether Hust stated he would call Robert later that evening to make sure he was still in Tucson.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention. Hust never spoke to Robert Jackson about the fire or Taylor.

229.   Whether Hust then told Robert he (Hust) knew Taylor set the fire.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

1    Defendant City of Tucson: The City joins in the County's contention.
2  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
3  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
4  rebuts this contention. Hust never spoke to Robert Jackson about the fire or
5  Taylor.

6    230.    Whether Wallmark called that evening and spoke to Albert, and
7  told Albert that he (Wallmark) wasn't going to live for the County and that he
8  knew nothing about the fire.

9    Defendant Pima County:  Pima County disputes this contention.  There
10  is no competent, admissible evidence to support this contention and it is refuted
11  by the evidence.

12    Defendant City of Tucson: The City joins in the County's contention.
13  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
14  another affidavit, it too is inadmissible hearsay.

15    231.    Whether Wallmark told Albert that Weiss, Hust and Angeley had
16  seen him (Wallmark) at Ft. Grant earlier and threatened to bring additional
17  criminal charges against Bruce if he didn't testify.

18    Defendant Pima County:  Pima County disputes this contention.  There
19  is no competent, admissible evidence to support this contention and it is refuted
20  by the evidence.

21    Defendant City of Tucson: The City joins in the County's contention.
22  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
23  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
24  rebuts this contention. Hust never threatened Bruce Wallmark. Hust's testimony
25  is that this never happened.

   232.    Whether Hust then told Robert he (Hust) knew Taylor set the fire.

1    Defendant Pima County:  Pima County disputes this contention. There

2  is no competent, admissible evidence to support this contention and it is refuted

3  by the evidence.

4    Defendant City of Tucson: The City joins in the County's contention.

5  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

6  another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

7  rebuts this contention.

8    233.   Whether Wallmark told Albert that Weiss had falsely told him

9  (Wallmark) that Robert had agreed to testify and that Robert also said Wallmark

10  would testify.

11    Defendant Pima County:  Pima County disputes this contention.  There

12  is no competent, admissible evidence to support this contention and it is refuted

13  by the evidence.

14    Defendant City of Tucson: The City joins in the County's contention.

15  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

16  another affidavit, it too is inadmissible hearsay. Hust never spoke to Robert

17  Jackson about the fire or Taylor.

18    234.   Whether Albert then overheard a conversation between Wallmark

19  and Robert.

20    Defendant Pima County:  Pima County disputes this contention.  There

21  is no competent, admissible evidence to support this contention and it is refuted

22  by the evidence .

23    Defendant City of Tucson: The City joins in the County's contention.

24  Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

25  another affidavit, it too is inadmissible hearsay.

235.   Whether, after that call, whether Robert told Albert that Robert and Bruce had agreed not to testify against Taylor as they knew Taylor wasn't guilty of setting the fire.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

236.   Whether, after that call, Albert loaned Robert his car and money, to drive to Phoenix to help Bruce escape.

Defendant Pima County:  Pima County disputes this contention. There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

237.   Whether Robert was arrested later that evening in Tucson.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

238.   Whether Hust asked Albert to go to the police station where Robert was.

1    Defendant Pima County:  Pima County disputes this contention.  There
2    is no competent, admissible evidence to support this contention and it is refuted
3    by the evidence .

4    Defendant City of Tucson: The City joins in the County's contention.
5    Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
6    another affidavit, it too is inadmissible hearsay.

7    239.   Whether Weiss wanted to speak to Robert and Albert together
8    about Bruce's escape and that Albert let Robert use Albert's car.

9    Defendant Pima County:  Pima County disputes this contention.  There
10   is no competent, admissible evidence to support this contention and it is refuted
11   by the evidence.

12   Defendant City of Tucson: The City joins in the County's contention.
13   Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
14   another affidavit, it too is inadmissible hearsay.

15   240.   Whether Hust and Angeley showed up at this meeting, at the
16   police station.

17   Defendant Pima County:  Pima County disputes this contention.  There
18   is no competent, admissible evidence to support this contention and it is refuted
19   by the evidence.

20   Defendant City of Tucson: The City joins in the County's contention.
21   Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
22   another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
23   rebuts this contention.

24   241.   Whether Hust and Angeley threatened to file one hell of a lot of
25   charges against Robert, Bruce and Albert

1    Defendant Pima County:  Pima County disputes this contention.  There
2    is no competent, admissible evidence to support this contention and it is refuted
3    by the evidence .

4    Defendant City of Tucson: The City joins in the County's contention.
5    Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
6    another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
7    rebuts this contention.

8    242.   Whether Wallmark, who had just escaped from Phoenix, was at
9    this meeting.

10   Defendant Pima County:  Pima County disputes this contention.  There
11   is no competent, admissible evidence to support this contention and it is refuted
12   by the evidence .

13   Defendant City of Tucson: The City joins in the County's contention.
14   Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
15   another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
16   rebuts this contention.

17   243.   Whether Hust and Angeley told Albert and Robert (and possibly
18   Wallmark) they could count on coming to prison with "the nigger Taylor."

19   Defendant Pima County:  Pima County disputes this contention.  There
20   is no competent, admissible evidence to support this contention and it is refuted
21   by the evidence .

22   Defendant City of Tucson: The City joins in the County's contention.
23   Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
24   another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
25   rebuts this contention.

244.   Whether Hust and Angeley called Albert, Robert and Bruce a bunch of "nigger lovers."

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

245.   Whether Hust and Angeley said that they would make sure that in prison Albert, Robert and Bruce had "a nigger for a daddy."

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence .

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

246.   Whether Hust and Angeley said that Albert, Robert and Bruce would be "nigger punks" in prison and that white inmates killed "nigger punks."

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

247.    Whether Hust and Angeley said that they would make sure that in prison Albert, Robert and Bruce and "a nigger for a daddy."

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

248.   Whether Angeley or Hust then clarified that unless Robert testified to the facts Weiss supplied, Louis Taylor was going to be the case.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

249.    Whether Weiss stated he was going to put Taylor away and he didn't care how he did it.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

1    Defendant City of Tucson: The City joins in the County's contention.

2 Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

3 another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

4 rebuts this contention.

5    250.   Whether Hust then threatened that if Robert didn't testify, he

6 would arrest Robert and Albert for the escape of Wallmark, that warrants would

7 issue and that they would be put in jail.

8    Defendant Pima County:  Pima County disputes this contention.  There

9 is no competent, admissible evidence to support this contention and it is refuted

10 by the evidence.

11    Defendant City of Tucson: The City joins in the County's contention.

12 Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

13 another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

14 rebuts this contention.

15    251.   Whether Robert and Bruce agreed at that point to testify, with

16 Weiss' agreement not to bring criminal charges.

17    Defendant Pima County:  Pima County disputes this contention.  There

18 is no competent, admissible evidence to support this contention and it is refuted

19 by the evidence.

20    Defendant City of Tucson: The City joins in the County's contention.

21 Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from

22 another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony

23 rebuts this contention.

24    252.   Whether Hust and Angeley then brought Albert out of the room

25 and told him to stay out of Tucson until the trial was over.

1    Defendant Pima County:  Pima County disputes this contention.  There
2    is no competent, admissible evidence to support this contention and it is refuted
3    by the evidence.

4    Defendant City of Tucson: The City joins in the County's contention.
5    Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
6    another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony
7    rebuts this contention.

8    253.    Whether Albert and Robert discussed Robert's trial testimony
9    after trial.

10    Defendant Pima County:  Pima County disputes this contention. There
11    is no competent, admissible evidence to support this contention and it is refuted
12    by the evidence.

13    Defendant City of Tucson: The City joins in the County's contention.
14    Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
15    another affidavit, it too is inadmissible hearsay.

16    254.    Whether Robert stated he was warned not to change his story and
17    that arrest warrants were ready if he did.

18    Defendant Pima County:  Pima County disputes this contention.  There
19    is no competent, admissible evidence to support this contention and it is refuted
20    by the evidence.

21    Defendant City of Tucson: The City joins in the County's contention.
22    Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from
23    another affidavit, it too is inadmissible hearsay.

24    255.    Whether Robert told Albert he spoke with Howard Kashman after
25    trial.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

256.    Whether Robert told Albert he signed an affidavit for Kashman after trial and whether Robert agreed to testify in a posttrial hearing.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

257.    Whether, after Robert gave an affidavit to Kashman, Albert was present when Hust and Angeley came to see Robert and showed Robert bogus statements implicating Robert in rapes and armed robberies.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

258.    Whether, thereafter, Robert affirmed that his trial testimony was truthful.

1      Defendant Pima County:  Pima County disputes this contention.  There

2  is no competent, admissible evidence to support the contention that Robert

3  Jackson affirmed that his trial testimony was truthful due to a threat from Hust

4  or Angeley and it is refuted by the evidence.

5      Defendant City of Tucson: The City joins in the County's contention. Albert

6  Jackson's affidavit is inadmissible hearsay. If this contention comes from

7  another affidavit, it too is inadmissible hearsay.

8      259.   Whether Robert was told that if any of the Jackson family were

9  ever arrested in Pima County they would be prosecuted to the fullest extent of

10  the law.

11      Defendant Pima County:  Pima County disputes this contention.  There

12  is no competent, admissible evidence to support this contention and it is refuted

13  by the evidence.

14      Defendant City of Tucson: The City joins in the County's contention. Albert

15  Jackson's affidavit is inadmissible hearsay. If this contention comes from

16  another affidavit, it too is inadmissible hearsay.

17      260.   Whether Albert's affidavit states to Judge Hardy that the Pima

18  County Attorney's office obtained Robert and Bruce's testimony with force in

19  the promise of outrageous prosecution

20      Defendant Pima County:  Pima County disputes this contention.  There

21  is no competent, admissible evidence to support this contention and it is refuted

22  by the evidence.

23      Defendant City of Tucson: The City joins in the County's contention. Albert

24  Jackson's affidavit is inadmissible hearsay. If this contention comes from

25  another affidavit, it too is inadmissible hearsay.

261.   Whether Albert's affidavit states to Judge Hardy that Hust and Angeley threatened both Albert and Robert with prison and a promise that both will be subjected to homosexual attacks inside prison.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay. Lawrence Hust's testimony rebuts this contention.

262.   Whether Albert's affidavit states to Judge Hardy his motives were not to get out of prison, but in the hopes that the truth will come out and that Judge Hardy would deal with the prosecutor who only cares to put people in prison, doesn't care how he does it just as long as he gets the morning headlines in the newspaper.

Defendant Pima County:  Pima County disputes this contention.  There is no competent, admissible evidence to support this contention and it is refuted by the evidence.

Defendant City of Tucson: The City joins in the County's contention. Albert Jackson's affidavit is inadmissible hearsay. If this contention comes from another affidavit, it too is inadmissible hearsay.

263.   Whether, as set forth in Albert Jackson's August 30, 1972 affidavit, he (Albert) and Robert discussed Robert's 1972 trial testimony against Taylor.

1     Defendant Pima County:  Pima County disputes this contention.  There

2 is no competent, admissible evidence to support this contention and it is refuted

3 by the evidence.

4     Defendant City of Tucson: The City joins in the County's contention. Albert

5 Jackson's affidavit is inadmissible hearsay. If this contention comes from

6 another affidavit, it too is inadmissible hearsay.

7

8     **Defendant Pima County's Issues of Fact**[8]:

9     Taylor's general contention: Taylor objects to the inclusion of immaterial facts

10 that are not to be decided by the trial of fact and/or are irrelevant. Due to the inclusion

11 of 824 separate factual contentions by Defendant Pima County, and 207 by Defendant

12 City of Tucson, Taylor cannot meaningfully respond to each and every contention, and

13 therefore, unless otherwise stated, does not admit that any contention is undisputed.

14 Taylor incorporates his statement of contested facts to his contentions to the County's

15 Issues of Facts.

16     Additionally, Taylor contends that the court documents, trial testimony, and

17 other evidence on which the County bases its contentions speak for themselves, and

18 Taylor does not adopt the County's summary of them as accurate or complete, nor does

19 Taylor admit that they are admissible unless otherwise stated in Taylor's objections to

20 the exhibits listed in Part F. Prior state court and habeas rulings are not binding. Where

21 the County asserts certain evidentiary matters were admitted or conceded in prior

22 proceedings, they are not binding, and Taylor does not admit those matters now.

23 Further, each contention based on prior testimony or statements are hearsay. Moreover,

24 where the County summarizes or quotes testimony, exhibits, rulings, or other

25

---

[8] Defendant City of Tucson herein joins in Pima County's Issues of Fact.

occurrences from various hearings and trial, it is unclear whether the County has listed them because it is "contested" whether that testimony was given or are asserting the truth of the matter asserted.

Unless specifically stated that Taylor does not contest a listed factual issue, Taylor disputes that each fact can be established at trial.

**Defendant Pima County contends the following:[9]**

1.     On December 20, 1970, at approximately 8:30 a.m., the Tucson Police Department formally arrested Louis Taylor for committing the crime of arson involving the Pioneer International Hotel ("Pioneer Hotel").  (TAYLOR000929.)

Taylor contends: It is an issue of fact and law when Taylor was arrested. Taylor was  arrested earlier in the morning, when he was first encountered by Officer Adams.

2.     On December 21, 1970, a petition for delinquent adjudication was filed charging Taylor with trespass and curfew violations because he was at the Pioneer Hotel without consent and after midnight on December 20, 1970.  (TAYLOR000301.)

3.     On December 31, 1970, the juvenile court—the Honorable Lloyd C. Helm—held a hearing on Taylor's petition to transfer these charges to adult court and detention in the Pima County Juvenile Court Center pending adjudication.  See In the Matter of Louis C. Taylor, No. 6358-4.  (R.T. 12/31/70, at 1.)

4.     The State was represented by Deputy Pima County Attorney Fred Belman.  (Id.)

5.     Taylor was represented by the Pima County Public Defender, Howard Kashman.  (Id.)

---

[9] Defendant City of Tucson joins in all of Defendant Pima County's Issues of Fact.

6.      Howard Kashman argued that Taylor was "not amenable to treatment," noting that Taylor's juvenile record, "as supplemented by the industrial school for boys at Fort Grant and the Arizona State Hospital and the Pima County Hospital is absolutely replete with evidence that from age 11 in 1965 Louis has been subject to and amenable to the jurisdiction of the Juvenile Court without sufficient success." (Id. at 5–6.)

7.      Taylor's criminal history included: two counts of larceny in 1965; two counts of burglary and two counts of loitering in 1967; a car theft in 1968, and armed robbery and burglary in 1970.  (Id. at 7–8.)

8.      Those adjudications resulted in four separate commissions to Fort Grant. (Id.)

9.      Regarding the Pioneer Hotel fire, Kashman stated that Taylor was "at a place when, for our purposes today I'll concede he should not have been."  (Id. at 6–7.)

10.     Paul Charters, The Director of Juvenile Court Services for Pima County, testified that Taylor had three runaway referrals filed against him, one of which was to avoid a court hearing, and that, if released, he "in all probability will continue to have further law violations."  (Id. at 17–18.)

11.     Charters further testified that Taylor's Arizona State Hospital records indicate that he was diagnosed with anti-social personality disorder," which means that "he has no particular loyalty to any group or to any particular individual, that he will in all probability have continuing conflict with the law and with the rules of society, and that … he will have many problems in the future."  (Id. at 21–23.)

Taylor's contention: Taylor does not contest that Taylor suffered from mental health disorders, but disputes the conclusions drawn by Charters regarding the impact on his behavior and propensity to commit arson or other crimes, or that the deficiencies

1   in any suggest or prove that Taylor committed arson. Charters' conclusions are also

2   inflammatory and not based on modern medical science.

3        12.    Judge Helm dismissed the petition to transfer and ruled that Taylor

4   should remain detained until adjudication because there was reason to believe that he

5   would not be present for future hearings, that he was likely to commit an offense

6   injurious to himself or others, and it was in the interests of Taylor and the public.  (Id.

7   at 8–9, 27–28.)

8        13.    A subsequent psychological evaluation ordered by Judge Helm revealed

9   that Taylor had "firmly entrenched" "[s]ociopathic features" and was "prone to take

10   impulsive action to relieve tension and is likely to be oblivious to the consequences of

11   his behavior." (TAYLOR000241-000243.)

12        Taylor's contention: Taylor does not contest that Taylor suffered from mental

13   health disorders, but disputes the conclusions drawn by the examiner regarding the

14   impact on his behavior and propensity to commit arson or other crimes, or that the

15   deficiencies in any suggest or prove that Taylor committed arson.

16        14.    On January 12, 1971, the State prosecutor, Deputy Pima County

17   Attorney Fred Belman, filed an amended petition adding 28 counts of murder.

18   (TAYLOR000278.)

19        15.    At the January 13, 1971 detention hearing, Judge Helm ordered that

20   Taylor remain detained pending a petition to transfer.   (R.T. 1/13/71, at 11;

21   TAYLOR000303.)

22        16.    On January 21, 1971, the State prosecutor, Pima County Attorney Chief

23   Deputy David Dingeldine, filed a petition to transfer the case for criminal prosecution

24   as an adult.  (TAYLOR000236.)

25        17.    At the time, Rose Silver was the Pima County Attorney, the first woman

to hold that position.  (Id.)

18.    On January 28, 1971, the juvenile court—the Honorable Lawrence W. Galligan—held a hearing on the petition to transfer.  (R.T. 1/28/71, at 1.)

19.    The State was represented by Belman and Dingeldine.  (Id.)

20.    Charters testified that Taylor was classified as "a sociopathic personality, which means it's a basic character disorder not amenable to treatment."   (Id. at 3–4.)

Taylor's contention: Taylor does not contest that Taylor suffered from mental health disorders, but disputes the conclusions drawn by Charters regarding the impact on his behavior and propensity to commit arson or other crimes, or that the deficiencies in any suggest or prove that Taylor committed arson. Charters' conclusions are also inflammatory and not based on modern medical science.

21.    Charters testified that Taylor had received an absolute discharge from the Arizona State Hospital on December 2, 1970.  (Id. at 4–5.)

22.    Charters testified that, while previously committed at Fort Grant, Taylor faked having epilepsy by eating a bar of soap to give the impression that he was having some type of seizure, and that Taylor "learned to use this as a device to manipulate the treatment facilities."  (Id. at 19.)

Taylor's contention: Taylor does not contest that Taylor suffered from mental health disorders, but disputes the conclusions drawn by Charters regarding the impact on his behavior and propensity to commit arson or other crimes, or that the deficiencies in any suggest or prove that Taylor committed arson. Charters' conclusions are also inflammatory and not based on modern medical science.

23.    Charters testified that Taylor would "force his will on them and refuse to do anything that was required by the institutional staff simply by having these [fake] seizures, and they were real enough that about five medical doctors consecutively diagnosed them as epileptic seizures."  (Id.)

1    Taylor's contention: Taylor does not contest that Taylor suffered from mental
2 health disorders, but disputes the conclusions drawn by Charters regarding the impact
3 on his behavior and propensity to commit arson or other crimes, or that the deficiencies
4 in any suggest or prove that Taylor committed arson. Charters' conclusions are also
5 inflammatory and not based on modern medical science.

6    24.    A neurological examination, however, showed that Taylor does not
7 suffer from epilepsy.  (Id. at 19–20.)

8    25.    Charters testified: "You are never going to change the fact that he is a
9 sociopathic personality."  (Id. at 24.)

10    Taylor's contention: Taylor does not contest that Taylor suffered from mental
11 health disorders, but disputes the conclusions drawn by Charters regarding the impact
12 on his behavior and propensity to commit arson or other crimes, or that the deficiencies
13 in any suggest or prove that Taylor committed arson. Charters' conclusions are also
14 inflammatory and not based on modern medical science.

15    26.    Charters testified that Taylor "is a hard core delinquent, had many
16 opportunities of rehabilitation, and has profited by none," and that he is "extremely
17 likely to act out in a deviant manner and will continue to be incarcerated."  (Id. at 32.)

18    Taylor's contention: Taylor does not contest that Taylor suffered from mental
19 health disorders, but disputes the conclusions drawn by Charters regarding the impact
20 on his behavior and propensity to commit arson or other crimes, or that the deficiencies
21 in any suggest or prove that Taylor committed arson. Charters' conclusions are also
22 inflammatory and not based on modern medical science.

23    27.    Charters testified that Taylor had established a pattern of law violations
24 and that his incarceration at Fort Grant has not helped rehabilitate him.  (Id. at 35.)

25    Taylor's contention: Taylor does not contest that Taylor suffered from mental
health disorders, but disputes the conclusions drawn by Charters regarding the impact

on his behavior and propensity to commit arson or other crimes, or that the deficiencies in any suggest or prove that Taylor committed arson. Charters' conclusions are also inflammatory and not based on modern medical science.

28.     Judge Galligan also conducted a probable cause hearing—over nine days—to determine whether there was probable cause that Taylor committed the arson. (R.T. 1/28/71 (Vol. I) at 1.)

Taylor's contention: There was substantial evidence that was withheld from Taylor at the hearing, including testimony from Officer Bergman about why Taylor remained at the hotel, and included the statements Taylor made after his illegal arrest at the hotel that should have been precluded, and that the matches found on him were given to him by police during the illegal interrogation.

29.     Taylor stipulated that 28 people died from the fire.  (Id. at 2.)

Taylor's contention: this is not a contested issue; 28 people did die from the fire.

30.     Dingeldine was the prosecutor for the State and presented the following evidence.  (Id. at 2.)

31.     On December 19, 1970, at approximately 5:00 p.m., Frank Armenta saw Taylor standing at the corner of Church and Alameda in front of the TransAmerica building and approached him.  (Id. at 74.)

32.     Armenta knew Taylor from when Armenta previously worked at the Pima County Juvenile Court Center.  (Id. at 73–74.)

33.     Taylor told Armenta that he was on his way to work at the Pioneer Hotel, and said, "I got to go. I'm kind of late to work."  (Id. at 75, 80.)

34.     Art Camacho was a bartender at the Pioneer Hotel.  (R.T. 1/29/71 (Vol. III), at 273.)

35.    Between 9:30 p.m. and 10:30 p.m., Camacho saw a young African American walking down a hallway in the Hotel wearing striped pants.  (Id. at 274–275.)

36.    On Saturday, December 19, 1970, the Pioneer Hotel was hosting a Christmas party for Hughes Aircraft employees.  (R.T. 1/29/71 (Vol. I), at 40–41.)

37.    Rodney Dingle was one of between 300 and 400 Hughes Aircraft employees in attendance.  (Id. at 40–41, 47.)

38.    Between 11:00 p.m. and 11:45 p.m., Dingle left the ballroom to purchase cigarettes.  (Id. at 42–43.)

39.    As he went looking for a cigarette machine, Dingle saw Taylor sitting on a stool outside the men's restroom.  (Id. at 43, 45–46.)

40.    Dingle asked Taylor if he knew where the cigarette machine was, and Taylor said, "Yes, right around the corner."  (Id. at 44.)

41.    Dingle went and purchased cigarettes and then walked back by Taylor, who asked him if he could have a cigarette.  (Id. at 45.)

42.    Dingle opened the pack, gave Taylor a cigarette, and asked Taylor if he needed a light.  (Id.)

43.    Taylor said no and held up a book of matches.  (Id. at 45, 56.)

44.    Dingle thought it was a "strange" encounter.  (Id. at 55–56.)

45.    Robert Cooper was working at the front lobby desk at the Pioneer Hotel on the night of Saturday, December 19, 1970.  (Id. at 3.)

46.    There were 112 guests registered (in 68 rooms) at the Hotel that night.  (Id. at 30.)

47.    A bellman was stationed in the lobby watching for anyone unusual coming into the Lobby.  (Id. at 17.)

48.      The bellman did not report anyone unusual coming in through the front doors that night.  (Id.)

49.      At about 12:15 p.m., Cooper received a call from a woman on the third or fourth floor of the hotel who said: "I smell smoke. I think there is a fire."  (Id. at 5–6.)

50.      Right then, the switchboard was flooded with calls from the third and fourth floors.  (Id. at 7.)

51.      Cooper had not previously received any electrical complaints at the Pioneer Hotel.  (Id. at 30.)

52.      Cooper reported the fire to the bellman, Andy Palm, who left, came back, and said: "It looks bad. Call the fire department."  (Id. at 7.)

53.      Cooper called the operator, and the operator connected him to the fire department.  (Id. at 8.)

54.      The fire department arrived within five minutes.  (Id. at 12–13.)

55.      David Johnson was a custodian at the Pioneer Hotel.  (Id. at 84–85.)

56.      Johnson overheard Cooper tell Palm that there was a fire on the third floor.  (Id. at 87.)

57.      Johnson and Palm took the elevator to the third floor to investigate.  (Id. at 87–88.)

58.      Once they encountered smoke, Palm went back downstairs because he had asthma.  (Id. at 88.)

59.      Johnson saw the fire raging on the third-floor-to-fourth-floor stairway and saw Taylor standing at the stairway "[l]ooking up toward the fire."  (R.T. 1/28/71 (Vol. I), at 88–91, 95–97; R.T. 1/29/71 (Vol. II), at 114.)

Taylor's contention: Taylor was attempting to extinguish the fire.

60.     Taylor was wearing a jacket with yellow stripes on the arm.   (R.T. 1/29/71 (Vol. II), at 121.)

61.     Johnson grabbed a fire extinguisher and started spraying the fire.  (Id. at 91.)

62.     Taylor was not helping or saying anything.  (Id. at 91–92.)

Taylor's contention: Taylor was attempting to extinguish the fire.

63.     When the extinguisher ran out, Johnson went downstairs to get another one.  (Id. at 92.)

64.     When Johnson got back up to the third floor, Taylor was still there.  (Id. at 92–93.)

65.     Johnson and Taylor removed a fire hose to spray the fire, but the faucet did not work.  (Id. at 93–94.)

66.     Johnson went back downstairs because he could not do anything more. (Id. at 94–95.)

67.     Johnson did not see Taylor again.  (Id. at 96.)

68.     Johnson had seen Taylor at the Pioneer Hotel a week before the fire.  (Id. at 96.)

69.     Johnson did not smell gasoline or kerosine while on the third floor. (Exhibit 5, R.T. 1/29/71 (Vol. II), at 143.)

70.     Giles Scoggins was the beverage manager at the Pioneer Hotel.  (Id. at 149–150.)

71.     A little after 12:00 p.m., Johnson told Scoggins that there was a fire on the third floor and asked Scoggins for a fire extinguisher.  (Id. at 152, 154.)

72.     Johnson, Scoggins, and Glenn Idail (another Hotel custodian) went up to the third floor.  (Id. at 155.)

73. When they got to the third floor, Scoggins saw Taylor "[j]ust standing there." (Id. at 158, 172–173.)

74. Taylor was wearing a jacket with "check bands or something around his arm." (Id. at 176.)

75. Taylor then told him: "I saw two colored boys with African hairdos and they were fighting and scuffling and they started the fire." (Id. at 159.)

76. Scoggins could see the fire on the fourth floor. (Id. at 160.)

77. Scoggins attempted to spray the fire with a hose but left after hearing an explosion. (Id. at 160–161.)

78. As he was going downstairs, he saw firefighters inside the hotel. (Id. at 167.)

79. Scoggins told several police officers what Taylor had told him about seeing "two colored boys" fighting and starting the fire and gave them a description of Taylor. (R.T. 1/29/71 (Vol. II), at 178; R.T. 1/29/1971 (Vol. III), at 250–254.)

80. Scoggins and officers then went searching for Taylor, both inside and outside the Hotel, to talk to him, but they could not find him. (R.T. 1/29/71 (Vol. II), at 179–180.)

Taylor's contention: Taylor was a suspect at this point and the purpose of searching for him was to arrest him, not merely to "talk" to him.

81. Scoggins and officers eventually found Taylor in the Hotel near the entrance to the third-floor roof. (Id. at 180.)

82. This time, he was wearing a white jacket, the "type we use in hotels and places, bus jackets. They're white, buttoned, high collar, straight buttons, patch pockets." (Id.)

83. When Taylor saw Scoggins, he "immediately" took the white jacket off. (Id. at 181.)

1      84.    Scoggins said, "You are the one that was on the third floor with me at

2 the fire," to which Taylor replied, "Yes."  (Id.)

3      85.    Scoggins then told the officers, "This is the young man we are looking

4 for."  (Id. at 183.)

5      86.    Taylor was not a Pioneer Hotel employee.  (Id. at 184.)

6      87.    Scoggins did not see any containers or smell anything unusual, including

7 gasoline, and he did not smell gasoline on Taylor.  (R.T. 1/29/1971 (Vol. III), at 211–

8 212.)

9     Taylor's contention: not disputed.

10      88.    City of Tucson police officer Lewis Adams was one of the officers who

11 searched for Taylor with Scoggins.  (R.T. 2/4/71 (Vol. VI), at 571; R.T. 2/8/71 (Vol.

12 IX), at 820.)

13      89.    They finally found Taylor at around 3:15 a.m.  (R.T. 2/8/71 (Vol. IX), at

14 820.)

15     Taylor's contention: Taylor spent significant time prior to this with Tucson

16 Police Department officer Klaus Bergman.

17      90.    When Scoggins identified Taylor, Officer Adams believed that Taylor

18 was a "very important witness."  (Id. at 830–831.)

19     Taylor's contention: Officer Adams believed Taylor was a suspect.

20      91.    Officer Adams was not suspicious of Taylor, and he had no reason to

21 believe it was arson.  (Id. at 830–831, 833.)

22     Taylor's contention: Officer Adams assumed the fire was arson and believed

23 Taylor was a suspect.

24      92.    Taylor told Officer Adams that there was "seven boys on the seventh or

25 eighth floors running around that did not belong there."  (Id. at 820.)

Taylor's contention: All of Taylor's statements to police officers on December 20, 1970 should be precluded. This contention applies to all of Defendants' contested issues based on Taylor's statements to police.

93.     As they walked back down to the lobby, Taylor said to Officer Adams: "It sure is bad about all those people.  It's terrible that somebody would set a fire like that." (Id. at 822.)

94.     Once downstairs, Officer Adams asked Taylor if he would accompany him to the police station since he allegedly saw the individuals who started the fire, and Taylor agreed.  (R.T. 2/4/71 (Vol. VI), at 579–580; R.T. 2/8/71 (Vol. IX), at 823.)

Taylor's contention: This was an illegal arrest in violation of Taylor's Fourth Amendment rights.

95.     When they arrived at the police station at about 3:30 a.m., Officer Adams and Taylor went into the coffee room, and Officer Adams left Taylor there while he spoke with the desk sergeant.  (R.T. 2/4/71 (Vol. VI), at 583, 602.)

96.     Several officers, including Sgt. Eugene Rossetti, were in the coffee room as well.  (Id. at 584.)

97.     Sgt. Rossetti asked Taylor what he thought about the fire.  (R.T. 2/8/71 (Vol. IX) at 867.)

98.     Taylor said that he "didn't know why anyone would want to do such a thing like that." (Id. at 867.)

99.     Taylor also said that the fleeing Hotel guests, and those jumping out of the windows, were "paranoid." (Id.)

100.    After about five minutes, Officer Adams returned and took Taylor into a briefing room.  (R.T. 2/4/71 (Vol. VI), at 584, 603.)

101.    In the briefing room, Officer Adams asked Taylor why he was at the Pioneer Hotel.  (R.T. 2/8/71 (Vol. IX), at 824–825.)

102.   Taylor said that he had went to the Hotel "to see Mr. Tatum who works at the hotel." (Id. at 825.)

103.   Officer Adams asked Taylor what Tatum's first name was, and Taylor stated that he did not know. (Id.)

104.   Taylor said that when he got the Hotel, Tatum was not there but noticed the party on the second floor of the hotel and hung around there for a while when a female, who he did not know, said that she smelled smoke. (Id.)

105.   Taylor could not provide a description of the female. (Id. at 832.)

106.   Taylor said that he saw smoke coming out of a vent, and then went to the third floor and saw "two boys running." (Id. at 825.)

107.   Taylor described one of the boys as a "Mexican male" about 19, six foot 160 pounds, and the other one was a white male who he could give … no description of." (Id. at 825–826.)

108.   Taylor said that he then saw Scoggins, who asked him to help. (Id. at 826.)

109.   When asked again about the two boys he saw running, Taylor said that he had seen them earlier in the Hotel "and had tried to run them out because he thought they were trying to rob somebody." (Id. at 827.)

110.   Taylor said he lied to Officer Adams earlier (about seeing seven boys on the seventh or eighth floor) because he "didn't want to rat on anyone." (Id.)

111.   Taylor told Officer Adams that he entered the Hotel through the elevator in the back and knew the Hotel very well because he used to work there. (Id.)

112.   As Taylor told his story, it became apparent to Officer Adams that what Taylor was describing was "quite different than what Mr. Scoggins had" told him Taylor said. (R.T. 2/4/71 (Vol. VI), at 587.)

113.   This was "suspicious" to Officer Adams. (Id. at 604.)

1      Taylor's contention: Officer Adams already suspected Taylor had set the fire.

2      114.   At that point (around 4:00 a.m.), Officer Adams read Taylor his Miranda

3  rights, and he turned him over to Detective Henry Gassaway.  (Id. at 587–589, 602,

4  605–606.)

5      115.   Officer Adams told Det. Gassaway about the conflicting statements that

6  Scoggins and Taylor had told him.  (R.T. 2/8/71 (Vol. IX), at 835.)

7      116.   Det. Gassaway was a Tucson Police Department detective.  (R.T. 2/4/71

8  (Vol. VI), at 630–631.)

9      117.   Det. Gassaway took Taylor upstairs to an interview room in the detective

10 division.  (Id. at 633.)

11     118.   As far as Det. Gassaway knew, Taylor had aided and assisted at the Hotel

12 and had information as to who started the fire.  (R.T. 2/4/71 (Vol. VI), at 634–635;

13 R.T. 2/8/71 (Vol. IX), at 839.)

14     119.   Taylor then told Det. Gassaway this story:  "He stated he had ridden

15 down with Mike Tatum to the pool hall downtown and left the pool hall and gone to

16 the bus station; that upon his leaving the bus station he returned to the pool hall and

17 Mike Tatum wasn't there; that he then walked to the Pioneer Hotel; that he had been

18 by there the previous evening and seen them setting up tables and assumed there was

19 going to be a teenage party.  He said he went to the Pioneer Hotel for that reason, and

20 then another reason he wanted to see a friend of his whose last name was Tatum.  He

21 didn't know the first name, but this friend was a brother of Mike Tatum.  He stated that

22 when he went over he thought it might be a little late to see Tatum; that Tatum usually

23 got off work at 10:00, 10:15, and it was 10:30 at that time."  (R.T. 2/8/71 (Vol. IX), at

24 840.)

25     120.   Taylor said that he got to the Pioneer Hotel and talked to the security

guard, who told him that Tatum had already gone home.  (Id. at 841.)

121.    Taylor said that he then went to the second floor, where there was a party in progress and he "hung around the party talking to friends of his."  (Id.)

122.    Taylor said that, while talking to these friends, a "Mexican lady" said, "I smell smoke."  (Id.)

123.    Taylor said that he then saw Scoggins running up the stairs carrying two fire extinguishers.  (Id.)

124.    Taylor said that he followed Scoggins upstairs and upon reaching the third floor, Scoggins instructed him to remove the fire hose.  (Id.)

125.    While he was attempting to do this, Taylor said that he saw "a Mexican male and a white male with long hair run from the area."  (Id. at 842.)

126.    Det. Gassaway asked Taylor if he knew the "Mexican male" and "white male with long hair," and Taylor said, "Well, I don't want to fink on anybody."  (Id.)

127.    When Det. Gassaway pressed Taylor, Taylor said, "Well, I just saw the back of their heads. I don't know."  (Id. at 842–843.)

128.    At this point, Det. Gassaway left the room to interview Scoggins.  (Id. at 843.)

129.    After speaking with Scoggins, Det. Gassaway returned and read Taylor his Miranda rights again.  (Id. at 843, 855.)

130.    Det. Gassaway told Taylor that he did not think he was telling the truth and asked Taylor again to explain his whereabout and actions.  (Id. at 843.)

131.    Taylor told Det. Gassaway that he arrived at the Hotel at 10:30 p.m.  (Id. at 844.)

132.    Taylor said that he went to the Pioneer "to see Tatum and get a ride and I thought this party was there."  (Id.)

133.    Det. Gassaway told Taylor that no one by the name of "Tatum" worked at the Hotel.  (Id.)

134.   Taylor initially insisted that Tatum did work there, but then admitted he "didn't know anybody named Tatum that worked there. … I don't know why I lied about it then." (Id. at 844–845.)

135.   Det. Gassaway told Taylor that his description of the two individuals he allegedly saw on the third floor ("a Mexican and a white one") was contrary to the description he had given to someone else earlier (Scoggins).  (Id. at 846.)

136.   At that point, Taylor because "quite irate and began to curse at" Det. Gassaway.  (Id.)

137.   Taylor yelled, "I do not want to help you … You don't know.  You weren't there.  How could you know?  You haven't got any witnesses."  (Id.)

138.   Taylor then admitted that he had not seen anybody run.  (Id.)

139.   Det. Gassaway asked Taylor where he had gotten the white busboy jacket, and Taylor told him that he found it.  (Id. at 846–847.)

140.   Det. Gassaway then asked Taylor why he was wearing it.  (Id. at 847.)

141.   At first, Taylor said that he "just put it on," but then said he "had to put it on so that he could mingle with the people around the hotel and maybe steal drinks while he was with his friends around there."  (Id.)

142.   When Det. Gassaway asked Taylor to name some of the friends that he had seen and talked to, Taylor could not do so and then finally admitted that he "didn't talk to anybody there."  (Id.)

143.   Taylor also admitted that he did not talk to any girls at the Hotel.  (Id.)

144.   When Det. Gassaway confronted Taylor with Scoggins' statement that Taylor was already on the third floor when Scoggins got there, Taylor initially denied it but then admitted that Scoggins was correct.  (Id. at 847–848.)

145.   Taylor then told Det. Gassaway that he had seen "five people … three white and two Mexicans" walking toward a room that kept liquor and a "Negro lady"

told them they had better not go inside because there were police officers inside the room.  (Id. at 848.)

146.    Taylor said that one of the people "looked real mean" and had a "gun in the waistband of his pants," and Taylor "believed he started the fire."  (Id.)

147.    Det. Gassaway then told Taylor that he believed that Taylor started the fire, "not intending to hurt anybody, but to cause a little smoke … a little confusion." (Id. at 848–849.)

148.    Taylor denied it and said that Det. Gassaway "didn't have any witnesses" and "couldn't prove anything."  (Id. at 849.)

149.    Det. Gassaway asked Taylor, "[H]ave you ever started any fires?"  (Id.)

150.    Taylor admitted he had: "Yes. … Well, I have started fires in some garbage cans. … like these old dumpsters around town.  … I might start a fire in an old house, but not where people were that would get hurt."  (Id. at 849–850.)

151.    At that point, Det. Gassaway accused Taylor of setting the Hotel ablaze to create a diversion so that he could burgle some of the rooms, and that he put on the bus boy jacket to be able to "mingle freely so that the firemen wouldn't question his presence."  (Id.)

152.    In response, Taylor said over and over, "I didn't kill those people."  (Id.)

153.    During his interview, Taylor smoked cigarettes and used his own matches to light his cigarettes.  (Exhibit 9, R.T. 2/4/71 (Vol. VI), at 649.)

Taylor's contention: the matches were provided to Taylor by TPD officers.

154.    Det. Rex Angeley was a detective for the Tucson Police Department. (R.T. 2/4/71 (Vol. VII), at 697.)

155.    Det. Angeley had known Taylor for several years.  (Id. at 700.)

156.    Det. Angeley interviewed Taylor in the detective division for approximately 15 to 20 minutes.  (R.T. 2/4/71 (Vol. VII), at 698, 700; R.T. 2/8/72 (Vol. IX), at 877.)

157.    Taylor told Det. Angeley that he "had been [at the Hotel] earlier in the evening looking for one of the Grigsby boys and was approached by the security guard and told to leave.  And later he was again approached by a security guard and asked what he was doing in the area.  He was hunting one of the Tatum boys."  (R.T. 2/8/71 (Vol. IX), at 877.)

158.    Det. Angeley asked Taylor where the fire started.  (Id. at 879.)

159.    Taylor said he was "in the area of the third and fourth floor of the Pioneer Hotel; that on the fourth floor he had seen a couple of Negro boys on the fourth floor. Then later he [said] he had seen a Mexican boy, long hair, who started the fire … on the third floor; … and then … he said … there was a white boy and a Mexican boy, the long-haired hippie-type boy.  He said he had seen him around the pool hall out on South Sixth.  And also he was the one that sold dope up on Himmel Park."  (Id.)

160.    Taylor told Det. Angeley that the "Mexican long-haired hippie-type boy" started the fire, and that he had "seen him around" the pool hall.  (Id.)

161.    Taylor admitted to Det. Angeley that he made false statements to the other officers/detectives.  (Id. at 887.)

162.    Det. Smith was a City of Tucson Police Department Detective.  (R.T. 2/4/71 (Vol. VI), at 652.)

163.    Det. Smith arrived at the police station at 8:00 a.m. on December 20, 1970.  (R.T. 2/8/71 (Vol. IX), at 890.)

164.    It had already been determined that Taylor was to be taken to the Pima County Juvenile Court Center.  (Id. at 892.)

165.    Det. Smith prepared the Juvenile Interim Report.  (Id. at 902.)

166.    Det. Smith was then directed to take Taylor to the Pima County Juvenile Court Center.  (R.T. 2/4/71 (Vol. VI), at 654.)

167.    While Det. Smith waited for a transportation unit, he asked Taylor why he was at the Hotel.  (R.T. 2/8/71 (Vol. IX), at 892–893.)

168.    Taylor said that he was going to a party.  (Id.)

169.    Det. Smith asked who was hosting the party, but Taylor said that he did not know.   (Id.)

170.    Det. Smith asked Taylor where he had heard about the party, and Taylor said he "just heard about it around."  (Id.)

171.    During their conversation, Taylor asked Det. Smith for a cigarette.  (Id. at 903.)

172.    Det. Smith gave him a cigarette and asked him if he had a match.  (Id.)

173.    Taylor responded, "no."  (Id.)

174.    Det. Smith then lit the cigarette for him.  (Id. at 904.)

175.    Taylor told Det. Smith that he "didn't set the fire" and that he "didn't want to kill anybody."  (Id. at 893.)

176.    Det. Smith asked him, "Well, who did set the fire then, Louis?"  (Id.)

177.    Taylor said that "the Mexican did it."  (Id.)

178.    During their conversation, Taylor was "erratic," "one time calm and the next time extremely belligerent."  (R.T. 2/4/71 (Vol. VII), at 669–670.)

179.    On the way to the Juvenile Center, Taylor told Det. Smith that if he "was going to be kept at the Juvenile Court Center he was going to kill some guy."  (R.T. 2/4/71 (Vol. VII), at 667–668; R.T. 2/8/71 (Vol. IX), at 893–894.)

180.    Taylor made that threat several more times at the Pima County Juvenile Court Center.  (R.T. 2/4/71 (Vol. VII), at 668.)

181. They arrived at the Pima County Juvenile Court Center at about 9:00 a.m., and Det. Smith read Taylor his Miranda rights again. (R.T. 2/4/71 (Vol. VI), at 655–656.)

Taylor's contention: Taylor disputes that his Miranda rights were read to him at this time or previously, and even if they were, it does not render the illegal arrest valid nor allow for admission of his statements.

182. Once at the Pima County Juvenile Court Center, Det. Smith processed his detention. (R.T. 2/8/71 (Vol. IX), at 894–895.)

183. When Det. Smith reached into Taylor's pockets, he found four books of matches. (Id. at 898–899.)

184. There were two detention officers present when Det. Smith discovered the matches. (Id. at 900.)

185. Det. Smith and another officer then accompanied Taylor back for a shower, where Taylor pulled out a fifth book of matches from his underwear. (Id. at 901.)

Taylor's contention: As stated in the police report, the matches were only in his pocket; none were in his underwear.

186. When Det. Smith asked Taylor where he had gotten the matches, Taylor said he "didn't know; that a police officer gave him one of them." (Id. at 903.)

187. Det. Smith returned to the station and asked the other detectives whether any of them had given Taylor a book of matches; nobody said they did. (Id.)

Taylor's contention: TPD officers gave Taylor matches.

188. Det. Smith did not find any containers for carrying any liquids or any other incendiary device in Taylor's possession. (Id. at 904.)

Taylor's contention: Admit.

189.   When asked if he felt "any hostility toward Louis Taylor," Det. Smith replied, "None whatsoever."  (R.T. 2/4/1971 (Vol. VII), at 667.)

190.   Officer Gerald Soop was the receiving officer at the Pima County Juvenile Court Center.  (R.T. 2/4/1971 (Vol. VII), at 716.)

191.   Taylor told Officer Soop that he "saw a person who did it."  (Id. at 731.)

192.   Officer Beryl Kohlman was a Tucson police officer.  (Id. at 732.)

193.   Officer Kohlman had known Taylor for at least 2 ½ years.  (Id. at 735.)

194.   On December 21, 1971, Officer Kohlman contacted Taylor at the Pima County Juvenile Court Center.  (Id. at 735.)

195.   Taylor told Kohlman that "Mike Tatum" "could prove that he did not start the fire, indicating that Mike was with him on that evening."  (Id. at 738.)

196.   James Holsinger oversaw payroll for the Pioneer Hotel.  (R.T. 2/5/1971 (Vol. VIII), at 767.)

197.   Holsinger testified that neither Taylor nor anyone named "Tatum" were or had been employed by the Pioneer Hotel.  (Id. at 768–770.)

198.   Charles McGee was the Chief Engineer for the Pioneer Hotel.  (Id. at 794.)

199.   McGee testified that there were no electrical malfunctions at the Pioneer Hotel from December 10 to December 19, 1970, and no fuse shortages on December 19, 1970.  (Id. at 795–796.)

200.   McGee further testified that there had been a fire inspection at the Hotel two weeks before the fire.  (Id. at 810–811.)

201.   The State called fire investigator Cyrillis Holmes.  (R.T. 2/1/71 (Vol. IV), at 292.)

202.   Holmes was a 41-year-old resident of Elk Grove, California.  (Id. at 292–293.)

203.   Holmes was a fire prevention officer for the California Division of Forestry ("CDIF") for the previous one and a half years and coordinated civil claims against the State or on behalf of the State involving fire losses or damages.  (Id.)

204.   Holmes was a member of the Arson Investigation Unit and performed special assignments for CDIF, the Governor's Office, and other governmental agencies.  (Id.)

205.   The CDIF was a statewide organization that contracted with California's 27 counties and seven California cities to provide fire protection, which included fire protection outside of city limits, e.g., large industrial complexes, agricultural and steel plants, grain elevators, warehouses, rural subdivisions, shopping centers, and yacht harbors.  (Id. at 302–304.)

206.   With 4,400 employees and 430 fire stations, CDIF was one of the largest fire departments in the world.  (Id. at 302–303.)

207.   Holmes' work with CDIF focused on providing fire protection for urban areas, as well as conducting cause-and-origin investigations.  (Id. at 304–305.)

208.   He had been able to determine a fire's cause and origin in approximately 80%-90% of his investigations.  (Id.)

Taylor's contention: Holmes applied junk science and unreliable methods, including using a pocketknife to measure char depth, and guessing the depth without the aid of any measuring device. Holmes was also motivated by racial biases and prejudices, which included the belief that Black people were more likely to start fires because it was a "tool" they were "familiar with." This belief led to his determination that the Pioneer Hotel fire was arson, and the suspect was a Black teenager after only a preliminary view of the hotel. Additionally, the parties have "no need to present the testimony of Holmes at trial for the purposes of proving that the Pioneer Hotel fire was

arson or that Taylor started the fire." (Dkt. No. 869 at 19). This contention applies to all testimony citations and opinions of Cy Holmes.

209. Prior to that job, Holmes was chief law enforcement officer for CDIF in Southern California for five years, where he was responsible for all cause-and-origin investigations, civil and criminal, and assisted with and coordinated arson investigations for Ventura, Los Angeles, Orange, San Bernardino, Riverside, and Imperial Counties. (Id. at 294.)

210. Prior to that job, Holmes was Deputy County Fire Warden in San Bernardino, California for approximately five years, where he advised the county board of supervisors on fire matters, he was the technical adviser to the planning commission on fire safety standards, he supervised the fire prevention section and two fire protection districts, acting as chief officer, and assisted military bases and law enforcement agencies within the county on all fire investigations. (Id. at 294–295)

211. Prior to that job, Holmes was an Associate State Forest Ranger in Fresno County for one year, where he provided structural and county fire department protection for Mid Valley Fire District and West Side Fire District, which operated approximately 40 fire stations. (Id. at 296.)

212. Prior to that job, Holmes was an assistant state forest director for four years, spending one year as office manager and head dispatcher in the alarm system for Orange County and three years as a battalion chief for city departments, where he was in command of nine fire departments and 125 personnel and responsible for the operations of approximately 750 fires per year. (Id. at 296–297.)

213. Prior to that job, Holmes was the fire captain for the Santa Rosa District Office for three years, where he trained in all operations of the division of forestry. (Id. at 297.)

214.   Prior to that job, Holmes was the fire captain for San Diego County for two years, where he was in charge of two fire control stations and responded and commanded forces at the scene and conducted investigations as to the origin of the fires, and was also the acting Assistant Forest Ranger in the absence of an injured officer.  (Id. at 297–298.)

215.   Prior to that job, Holmes was a sergeant in the coast fire department at Camp Pendleton during the Korean War for one and a half years, where he was in charge of NCO personnel at the headquarters station.  (Id. at 298.)

216.   Prior to that job, Holmes was a fire apparatus engineer in Riverside County (for three years) and San Diego County (for one year), where he was in charge of several fire stations and a 25-person volunteer paid call department for several stations (for Riverside).  (Id.)

217.   Prior to that job, Holmes was a fire fighter at La Mesa Headquarters in San Diego County.  (Id.)

218.   Holmes had attended approximately 3,600 fires over his career, and he conducted approximately 2,800 cause-and-origin investigations.  (Id. at 299.)

219.   Holmes had been qualified to testify as an expert in several California superior courts.  (Id. at 299.)

220.   Holmes had testified as a cause-and-origin fire expert in nine previous trials and in approximately 75 to 100 pretrial hearings.  (Id. at 299.)

221.   Holmes had conducted several hundred in-service training classes within the Division of Forestry and approximately 50 courses to outside police and fire departments.  (Id. at 300.)

222.   Holmes held a teaching credential in fire science in California.  (Id.)

223.   Holmes was a member of numerous police agencies, the California Police Officers Association, and the International Association of Arson Investigators. (Id. at 300–301.)

224.   Holmes was Chairman of the Governor's Study Group on Arson Investigation and Information.  (Id.)

225.   Holmes was a member and President of the California Conference of Arson Investigators, an organization of approximately 640 arson investigators across the country.  (Id.)

226.   Holmes was the Chairman of the education and mental hygiene committees for the California Conference of Arson Investigators.  (Id. at 301.)

227.   The primary purpose of the California Conference of Arson Investigators' mental hygiene committee was "to do research and studies and attempt to determine why people set fires; in other words, what are the conditions and the atmosphere and the background of the individuals involved that cause a fire to become part of their habit or part of their actions."  (R.T. 2/2/71 (Vol. V), at 418.)

228.   In connection with that chairmanship, Holmes worked with Dr. Otto Ghericky and the Patton State Hospital near San Bernadino, California, as well as the Atascadero State Mental Hospital, "compiling research in past cases on known fire–known people that have fire in their behavior and their background" and "attempt[ing] to gather as much material as has been written in all languages and in all nations in the world on this subject, the mental disorders involving fires, and fires involving persons with mental disorders, and cases involving fire-setters in general to attempt to predict what types of fires certain types of people or certain groups of people are responsible for, and to identify those factors or conditions which surround each fire and which tell us what type of person or what motive may be involved in setting or causing a particular fire."  (Id. at 418–419.)

229.    Holmes testified: "Most people are creatures of habit.  If they set a fire, they do it using the means that their background gives them for setting a fire.  You can pretty well tell if they are from the deep south or north because they use different methods of setting a fire."  (Id. at 428.)

Taylor's contention: Holmes opinions regarding the nature and habits of people who set fires was racially motivated.

230.    Holmes testified: "Epileptics are susceptible for setting fires."  (Id. at 423.)

231.    For the previous five to six years, Holmes lectured at the University of California on pathological fire setting and performed mock trials and demonstrations on cause-and-origin.  (R.T. 2/1/71 (Vol. IV), at 301–302.)

232.    On December 23, 1970, Holmes received a phone call from Tucson Fire Department Chief Robert Slagel, who informed Holmes of the Pioneer Hotel fire and asked him "as to who might be able to assist in the investigation as to the origin and cause."  (Id. at 306.)

233.    Chief Slagel called Holmes again on the evening of December 25 and asked if he "could assist to come to Arizona and assist the city in determining the origin and cause of that particular fire."  (Id.)

234.    During that call, they did not discuss "anything about the nature of the fire at all, what might have caused it or where any origin was."  (Id.)

235.    Holmes was not told that there was an arson suspect charged or in custody.  (R.T. 2/2/1971 (Vol. V), at 404–405.)

236.    Holmes traveled to Tucson in the early morning of December 30, 1970.  (R.T. 2/1/71 (Vol. IV), at 307.)

237.   Holmes was asked "to examine the physical evidence remaining at the fire scene and to draw a conclusion as to the origin of the fire and the cause of the fire based on the physical evidence." (Id. at 345.)

238.   Holmes met with Chief Slagel, and they discussed the layout of the Hotel and its general location. (Id.)

239.   Holmes and Chief Slagel then went to the fire scene, walked around the exterior of the building, took photographs, and recorded positions of windows. (Id. at 307–308.)

240.   Holmes testified that, to trace back how the fire developed and spread, you "have to have a knowledge of the travel that the fire took and of any drafts or exits to the outside that it might have obtained during the fire." (Id. at 309.)

241.   Holmes testified that broken windows provide "possible sources of oxygen from outside the building." (Id. at 310.)

242.   Holmes drew diagrams of each wall and familiarized himself with the building and the structure. (Id. at 310–311.)

243.   The Pioneer Hotel is 11 stories, with poured concrete exterior walls; most of the interior walls were concrete tile or clay tile block; the floors were poured concrete; and the ceilings were metal lath with plaster. (Id. at 311–312.)

244.   Each room had wooden doors, closets, and utility cabinets. (Id. at 312.)

245.   The Hotel ran North and South with a wing that ran East and West up to the sixth floor. (Id. at 312.)

246.   There were two stairwells running from the third through the eleventh floors on the North end and a stairwell running from the second through the sixth floor on the South end. (Id. at 312.)

247.    There was also a utility hall on the North end of the Hotel that ran East and West, and it had a service elevator, a trash chute, and a laundry chute.  (Id. at 312–313.)

248.    The third floor had access to a terrace roof.  (Id. at 313.)

249.    The seventh floor had access to the roof on the South end.  (Id.)

250.    There was access to the fire escape on the North end of the North-South hallway on the 11th floor down to the fourth floor.  (Id.)

251.    There was also a fire escape on the East-West wing starting at the sixth floor on the North side of the building, which went down to the roof of the second floor.  (Id.)

252.    The Hotel had three elevators: a service elevator in the utility hall at the North end, and two passenger elevators at the junction of the North-South and East-West hallways.  (Id. at 313–314.)

253.    Each room had its own individual and independent heat pump system and thermostat.  (Id. at 315–316.)

254.    The passage of air from room to room through central ducts bears on the possible travel of fire gasses and smoke.  (Id. at 316.)

255.    The hallways had a dropped ceiling, a metal framework, and non-combustible ceiling panel, with vinyl-coated wallpapering down to approximately 27 inches from the floor.  (Id. at 316.)

256.    Below that, there was a 9-inch board covered in decorative vinyl and then 18 inches of carpet glued to the wall.  (Id. at 316–317.)

257.    Holmes testified that, in determining cause-and-origin of a fire, the first step is to walk around the perimeter and get a feel for the building or area; smoke patterns on the building can indicate the direction of the wind at the time; tall buildings across the street can indicate eddies and turbulence; venting on the top of the building

can indicate vertical columns within the building; and the status of windows can indicate the flow of air and oxygen.  (Id. at 317–318.)

258.    The second step is to go to the highest portion of the building and work back toward the point of origin; in other words, "start at the extreme perimeter where the fire ceased to travel and work backwards."  (Id. at 318.)

259.    After walking the exterior, Holmes went inside the Hotel with Chief Slagel, Captain Lynden Gilmore, and Sgt. Moore (City of Tucson Police Department). (Id. at 321.)

260.    There had been no discussion between them "about where they thought the origin would be or what they thought the cause of the fire had been."  (Id. at 321.)

261.    In fact, "[t]here had been an agreement between us that this would be a completely independent investigation on my part without any knowledge of the fire other than what I could actually see and observe during my investigation."  (Id.)

262.    Holmes started on the 11th floor and discovered that the fire progressed near Rooms 23 and 24, which were on the Southeast portion of the Hotel, and Rooms 18 and 20 in the South portion.  (Id. at 322, 324.)

263.    The fire did not go any higher.  (Id. at 325.)

264.    On the 11th floor, the fire came up from the 10th floor through the stairwell, traveled North and the East into the service hall, with the main travel South down the main hallway past the elevators.  (Id. at 333–334.)

265.    Holmes concluded that the fire traveled in the same pattern on floors seven through 10.  (Id. at 323, 334–337.)

266.    Holmes concluded that the fire did not originate on the seventh through 11th floors.  (Id. at 337, 349–354.)

267.   Holmes concluded that the fire on the sixth floor had come up the stairwell from the fifth floor, and that the fire on the fifth floor had come up the stairwell from the fourth floor.  (Id. at 340–345, 354–370.)

268.   Holmes concluded that the fire did not originate on the fifth or sixth floors.  (Id. at 370–371.)

269.   On the fourth floor, near Rooms 32 and 34, the Tucson Fire Department had previously conducted a flammability test.   (Id. at 374–376.)

270.   Holmes concluded that the fire originated on the fourth floor and did not originate from inside any of the rooms.  (Id. at 371–382.)

271.   Holmes returned to the fourth floor the next morning, on December 31, 1970, and conducted a detailed examination of the burned material.  (Id. at 382–383.)

272.   Holmes found no evidence of fire, heavy accumulation of smoke, or flammable gas in the attic spaces of each room.  (Id. at 384–385.)

273.   Holmes found no evidence that the fire was caused by an electrical event, either from an outlet or a light fixture, or by natural gas or liquid petroleum outlets.  (Id. at 386–393.)

274.   There were no other heat sources that caused the fire.  (Id. at 393.)

275.   Holmes ruled out "all accidental sources of ignition from things that would normally be present in the hotel, either by design or manufacture or use in the premises."  (Id.)

276.   Holmes opined that the fire's point of origin was the fourth floor.  (Id. at 393–394.)

277.   Holmes opined that there were at least two points of origin on the fourth floor, approximately 60 feet apart: (1) the North-South hallway between Rooms 2 and 4; and (2) the North-South hallway opposite of Room 14.  (Id. at 394–395.)

278.   Holmes believed that the two fires converged outside of Room 4. (Exhibit 8, R.T. 2/2/71 (Vol. V), at 545.)

279.   Holmes conducted testing on the horizonal carpet and "[t]wo paper matches placed within half-inch of each other would consistently ignite."  (Id. at 474.)

280.   Holmes conducted testing on the vertical carpet and "a single paper match would ignite the carpet."  (Id. at 475.)

281.   Holmes concluded that the fire was a "man-made fire," which could include either deliberateness or accidental conduct.  (R.T. 2/1/71 (Vol. IV), at 400–401; R.T. 2/2/71 (Vol. V), at 410–411.)

282.   Holmes believed that this fire was intentionally set but that "the party responsible for the fire had no idea this fire was going to develop to the stage that it did or that it would take lives."  (R.T. 2/2/71 (Vol. V), at 436–438.)

Taylor's contention: Holmes believed that the fire was arson and set by a Black teen for the racially motivated reasons stated in his 2012 deposition.

283.   Holmes testified that it is "possible" but "highly improbable" that someone accidentally discarded matches or a cigarette at two separate locations at about the same time.  (Id. at 567–569.)

284.   Holmes "made no determination at the areas of origin as to whether there were accelerants used to ignite the fire."  (R.T. 2/2/71 (Vol. V), at 496.)

285.   However, Holmes "eliminated the possibility that there was a liquid accelerant used in the starting of this fire."  (Id. at 505.)

286.   Holmes was paid by the City of Tucson.  (Id. at 406.)

287.   Holmes prepared a January 15, 1971 report for the City of Tucson.  (Id. at 507.)

Taylor's contention: Holmes had previously provided his opinions, including his racially motivated opinions, to the City of Tucson.

288.    Kashman called several witnesses, including Cpt. Gilmore, the Captain of the Tucson Fire Department's Fire Prevention Division.  (R.T. 2/9/71 (Vol. X), at 976.)

289.    Cpt. Gilmore spoke to Taylor for approximately 10 minutes in the detective division after Det. Angeley.  (Id. at 980–981.)

Taylor's contention: this statement fails to identify when this conversation occurred.

290.    Taylor told Cpt. Gilmore that a woman, who he believed was a hotel employee, had said she smelled smoke.  (Id. at 1085.)

291.    Taylor kept telling Cpt. Gilmore that he "did not kill all those people." (Id. at 1085–1086.)

292.    Cpt. Gilmore investigated the cause and origin of the fire over the next 10 days.  (Id. at 982–983.)

Taylor's contention: The fire investigation methods applied by Cpt. Gilmore were inaccurate and unreliable. This contention applies to all of Defendants' statements of contested facts that state a conclusion about the cause, origin, or nature of the fire.

293.    Cpt. Gilmore concluded that the point of origin was on the fourth floor, and that there were two points of origin.  (R.T. 2/9/71 (Vol. X), at 987, 1058, 1078; Exhibit 162, COT1011.)

294.    Cpt. Gilmore opined that the fire was "manmade" and "intentional." (R.T. 2/9/71 (Vol. X), at 1093–1094; COT1011.)

295.    This was based on "the fact of two areas of origin coupled with the lack of any accidental or natural causes evidenced."  (Id. at 1095–1096.)

296.    Even if there were only one point of origin, Cpt. Gilmore was still of the opinion that it was a "man-made" fire.  (Id. at 1096.)

297.   There are many ways a "man-made" fire can be started, including accidental.  (Id. at 1098.)

298.   Cpt. Gilmore conducted a burn test in the Hotel by igniting a book of matches and placing them flat against the vertical run of the carpet—the carpet ignited and a fire spread.  (Id. at 991–993, 1090.)

299.   While in the Hotel, Cpt. Gilmore did not detect any odors that gave him a reason to believe that an accelerant had been used.  (Id. at 1003.)

300.   Cpt. Gilmore did not conduct any tests for accelerants.  (Id. at 1046.)

301.   Cpt. Gilmore did not relate his cause-and-origin opinion to Cy Holmes.  (Id. at 1093.)

302.   Kashman called Chief Slagel, who was the Chief of the Tucson Fire Department's Fire Prevention Division.  (R.T. 2/10/71 (Vol. XI), at 1149.)

303.   Kashman called City of Tucson police officer Claus Bergman.  (R.T. 2/8/1971 (Vol. IX), at 928.)

304.   Officer Bergman and Officer William Briamonte were dispatched to the Pioneer Hotel at 12:21 a.m. on December 20, 1970.  (Id. at 929.)

305.   When they arrived at the hotel, there were "[v]ery few people" on the scene.  (Id. at 948.)

Taylor's contention: Officer Bergman encountered Taylor outside the hotel when he first arrived and asked him to come with him to help with the rescue efforts. Officer's Bergman trial testimony is inaccurate and unreliable due to coercion placed on him by Defendants. Taylor contends that Bergman's deposition testimony accurately describes his and Taylor's actions on December 20, 1970. This contention applies to all of Defendants' statements of contested facts that recite, summarize, or otherwise rely on Officer Bergman's trial testimony.

306. They went into the lobby, up the stairway to the mezzanine, and then up the stairway to the third floor.  (Id. at 930–931.)

307. As Officer Bergman exited the stairway on the third floor, Taylor passed him and went down the stairs.  (Id. at 949–950; see also id. at 933–934.)

308. That was the first time that Officer Bergman saw Taylor: on the third floor, right at the base of the steps.  (Id. at 949–950; see also id. at 933–934.)

309. Officer Bergman testified that Taylor was wearing a green jacket.  (Id. at 940–941, 949.)

310. After checking the North corridor and East-West corridor, Officers Bergman and Briamonte went back down to the mezzanine, where they saw Taylor again, just standing there.  (Id. at 935.)

311. At that point, Bergman grabbed Taylor and took him out onto the third-floor roof to help.  (Id. at 936–937.)

312. Officer Bergman recounted that, when he initially pulled up to the Hotel, he had seen a Caucasian man and a Mexican-American man stop and park their vehicle across the street, and get out of the car.  (Id. at 937–938, 947–948.)

313. He saw those two individuals on the mezzanine and commandeered them to help as well, but they were very afraid and "completely useless," so Bergman instructed Taylor to take them outside.  (Id. at 938–939.)

314. Taylor escorted them out and then came back to the third-floor roof area. (Id. at 939–940.)

315. Officer Bergman then handed off several Hotel guests to Taylor and Taylor escorted them downstairs.  (Id. at 940–941.)

316. The last time Officer Bergman saw Taylor was at approximately 2:30 a.m. on the fourth or fifth floor, prior to Bergman passing out.  (Id. at 942.)

Taylor's contention: Taylor rescued Officer Bergman from the hotel after he had succumbed to smoke inhalation; Officer Bergman credits Taylor with saving his life.

317.   Officer Bergman went to the hospital and then returned to the police station.  (Id. at 943.)

318.   When he arrived at the station, he went into the coffee room and had a cup of coffee.  (Id. at 943.)

319.   As he did, Officer Adams brought Taylor into the coffee room.  (Id. at 943.)

Taylor's Contention: Officers Adams was dragging Taylor through the police station while Taylor was handcuffed and while forcing Taylor's head down.

320.   Officer Bergman did not participate at all in the questioning of Taylor at the police station on December 20.  (Id. at 944.)

321.   Bergman never saw any other "young Negro males on the third floor." (Id. at 950–951.)

322.   Kashman also called Officer William Briamonte.  (R.T. 2/9/71 (Vol. X), at 954.)

323.   Officer Briamonte similarly testified that he and Officer Bergman went into the lobby and up the stairwell to the third floor.  (Id. at 958–959.)

324.   Once on the third floor, he saw Taylor "standing there like he was waiting for someone to come up."  (Id. at 959.)

Taylor's contention: Officers Bergman and Briamonte initially encountered Taylor outside the hotel and enlisted him to assist with the rescue efforts.

325.   Officer Briamonte estimated that he first reached the third floor at approximately 12:30 p.m.  (Id. at 972.)

326.   On April 22, 1971, Judge Galligan ruled that there was probable cause that Taylor committed the arson and transferred the case for criminal prosecution. (TAYLOR000238–000249, 000398.)

Taylor's contention: Taylor does not contest the fact that the Court ruled there was probable cause, but disputes the basis for that conclusion, the admissibility of the evidence relied on, and the inferences drawn from it.

327.   Judge Galligan also found that Taylor had at least 11 previous contacts with juvenile authorities (three involving larceny, three involving burglary, and two involving robbery), and four previous commitments to Fort Grant, and was recently discharged from the Arizona State Hospital on December 2, 1970.  (Id.)

328.   Judge Galligan further found that Taylor had feigned seizures "to manipulate situations when disciplinary procedures were being utilized against him," resulting in an improper epileptic diagnosis.  (Id.)

329.   The Arizona Court of Appeals affirmed Judge Galligan's probable cause ruling: "The only complaint that the minor has concerning the evidence of the crimes is that it fails to show any connection between himself and the setting of the fires.  We do not agree. The minor was first seen at 5:00 p.m. across from the hotel by Armenta. He told Armenta that he was going to the hotel and that he worked there as a busboy. This was a falsehood.  He was next seen on the mezzanine about an hour before the fire. It is significant that he never gave a reason for being there.  He next mysteriously appeared on the third floor at the staircase where the flames were visible.  This floor contains only rooms for guests as opposed to the mezzanine which has several banquet rooms.  At times he was seen dressed in a white jacket similar to those used by busboys in the hotel.  He claimed to have seen how the fire started, but gave contradictory statements. After the fire was extinguished, an experiment was run to determine its origin. It showed that a person could have started the fire by opening a matchbook,

lighting all the matches and setting the book on the carpet with the matches facing against the carpet. When ultimately searched, the minor was in possession of five books of matches. All of the foregoing is enough to satisfy the probable cause requirements as set forth in Dodd v. Boies, supra." In re Anonymous, Juv. Ct. No. 6358-4, 484 P.2d 235, 241 (Ariz. 1971).

330.   The Arizona Supreme Court denied Taylor's petition for review.  (R.T. 12/21/71, at 16.)

331.   Beginning on June 17, 1971, Pima County Superior Court—the Honorable Jack G. Marks presiding—conducted a 10-day preliminary hearing.  See State v. Taylor, No. A-19672. (R.T. 6/17, 18, 23/71 (Vol. I), at 1, 19.)

332.   Dingeldine was the prosecutor for the State.  (Id. at 1.)

333.   The parties stipulated that 28 people died from the fire.  (Id. at 2.)

334.   The parties also stipulated to submit as evidence the prior testimony and exhibits in the juvenile court proceedings.  (R.T. 6/17, 18, 23/71 (Vol. I), at 5–13; R.T. 6/29, 30/71, 7/2/71 (Vol. V), at 448–449.)

335.   Kashman called additional witnesses and cross-examined the State's witnesses further.  (R.T. 6/17, 18, 23/71 (Vol. I), at 21, 55; R.T. 6/23, 24/71 (Vol. II), at 197; Exhibit 17, R.T. 6/24/71 (Vol. III), at 215, 237, 245, 277; R.T. 6/29/71 (Vol. IV), at 322, 350, 395; R.T. 6/29, 30/71, 7/2/71 (Vol. V), at 413, 426, 473; R.T. 7/2, 6, 8/71 (Vol. VI), at 517, 535.)

336.   On further cross-examination, Cy Holmes reiterated that the City of Tucson wanted Holmes to conduct an independent investigation without any knowledge of its own investigation.  (R.T. 6/23, 24/71 (Vol. II), at 147.)

337.   Holmes reiterated that he was not told that police had an arson suspect at any time prior to formulating his cause-and-origin opinions.  (R.T. 6/17, 18, 23/71 (Vol. I), at 57–58.)

338.   Holmes explained: "A man-caused fire is a fire that is kindled from the act of a human being. In other words, it is not an accidental fire from a mechanical failure, such as faulty electric wiring or some other natural cause. In other words, it is something that a person had to have done himself."  (Id. at 60.)

339.   He testified that arson fits in that category, but that the term man-caused fire is not limited to arson.  (Id.)

340.    Holmes described the North point of origin as being at the fourth floor North-South corridor, North of the stairwell, with the Southernmost part of the point of origin approximately four feet from the top of the third-floor stairwell, with an area of approximately eight feet (going North) and the width of the hallway.  (Id. at 98–101.)

341.   Holmes described the South point of origin as being at the fourth floor North-South corridor, approximately 50 to 60 feet south of the North point of origin, with an area of approximately 12 to 15 feet (going South) and the width of the hallway.  (Id. at 103–104.)

342.   Holmes repeated that there was no evidence of an accelerant at either point of origin, and that there was no odor of liquid petroleum.  (Id. at 111–112, 114.)

343.   Holmes repeated that there was no evidence of electrical malfunctions or explosions at either point of origin.  (Id. at 115–116.)

344.   Holmes testified that his opinions had not changed since his prior testimony.  (R.T. 6/23, 24/71 (Vol. II), at 177.)

345.   David Johnson reiterated that Taylor was wearing a green jacket with yellow stripes on the arm and just looking up towards the fire.  (R.T. 6/24/71 (Vol. III), at 260, 268.)

346.   Giles Scoggins reiterated that he saw Taylor on the third floor, standing there; that Taylor told him that he "saw two colored boys with afro haircuts fighting

and they set the fire"; that Taylor was originally wearing a green jacket but was later wearing a white jacket and threw it off once Taylor saw Scoggins with police officers; and Scoggins did not smell gasoline on the third floor.  (R.T. 6/24/71 (Vol. III), at 282–283, 286, 301, 313–315.)

347.   Scoggins testified that he never saw any "young negro males with afro haircuts" on the night of the fire.  (Id. at 312.)

348.   Glenn Idail, the other Hotel custodian, testified that he saw Taylor on the third floor near the stairwell when he, Scoggins, and Johnson arrived.  (R.T. 6/29/71 (Vol. IV), at 331–332.)

349.   Idail testified that Taylor was wearing striped pants and a green jacket.  (Id. at 339.)

350.   Idail testified that he did not smell anything unusual, and that Taylor was not holding any containers.  (Id. at 340.)

351.   Officer Adams reiterated what Scoggins and Taylor had told him.  (R.T. 6/29/71 (Vol. IV), at 356–357, 359, 371–372, 359, 377–378, 386, 387–389.)

352.   Officer Adams testified that, when they were searching for Taylor, he did not come across any other "young negro" or "young Mexican" males."  (Id. at 391.)

353.   Sgt. Rossetti reiterated what Taylor had told him in the coffee room.  (R.T. 6/29/71 (Vol. IV), at 401–402.)

354.   Det. Gassaway reiterated what Taylor had told him.  (R.T. 6/29, 30/71, 7/2/71 (Vol. V), at 437–330.)

355.   During the hearing Judge Marks toured the Pioneer Hotel.  (R.T. 6/24/71 (Vol. III) at 232–234; R.T. 6/29, 30/71, 7/2/71 (Vol. V) at 423.)

356.   Judge Marks also traveled to the City of Tucson Communications Center to listen to the calls received by the fire department beginning at 11:30 p.m. on December 19, 1970.  (R.T. 7/2, 6, 8/71 (Vol. VI), at 532–535, 552.)

357.   The first calls about the fire came in between 12:19 and 12:22 a.m. on December 20, 1970.  (Id. at 561.)

358.   Taylor elected not to make a statement to the Court.  (R.T. 6/29, 30/71, 7/2/71 (Vol. V) at 447–448.)

359.   Kashman said on the record: "I'm the first to admit there is a lot of suspicious circumstances connecting Louis Taylor to the fire at the Pioneer Hotel." (R.T. 6/29, 30/71, 7/2/71 (Vol. V), at 460.)

360.   Judge Marks stated that he was making an "independent re-examination of the facts" and that he was not bound by the juvenile court's ruling or the court of appeals' holding.  (R.T. 6/29, 30/71, 7/2/71 (Vol. V), at 455.)

361.   On July 8, 1971, Judge Marks ruled that there was probable cause to believe that Taylor was guilty of arson and 28 counts of murder.  (PC039553–039560.)

362.   On August 5, 1971, Dingeldine—on behalf of the State—filed an Information, charging Taylor with one count of arson and 28 counts of murder. (PC036631-036639.)

Taylor's contention: To the extent this statement asserts that the PCAO was acting as a State actor, that is a legal issue and Taylor contends the County is responsible for the PCAO's acts and omissions.

363.   After the filing of the Information, the case was transferred to the Honorable Mary Anne Richey.  (R.T. 9/7/71 at 1.)

364.   The prosecution was handed off to Horton Weiss and Carmine Brogna. (R.T. 9/7/71, at 18–19; R.T. 1/31/72 (Vol. 1), at 2.)

365.   Taylor was represented by Kashman and William Lane.  (R.T. 1/31/72 (Vol. 1), at 2.)

366.   Judge Richey presided over 5 hearings and ruled on various motions. (R.T. 9/7/71; R.T. 9/16/71; R.T. 9/22/71; R.T. 9/27/71; R.T. 10/4/72.)

367.   On September 27, 1971, Taylor moved to change venue to Maricopa County, which the State joined.  (R.T. 9/27/71, at 1–2.)

368.   Judge Richey granted the motion.  (Id. at 9–10.)

369.   The case was then transferred to the Honorable Charles L. Hardy in Maricopa County Superior Court.  See State v. Taylor, No. C.R. 69983.  (R.T. 10/15/71 (Vol. 1), at 1.)

370.   Judge Hardy conducted two separate voluntariness hearings over the course of six days to determine the voluntariness of Taylor's statements to police. (R.T. 10/15/71 (Vol. I); R.T. 10/16, 18/71 (Vol. II); R.T. 10/26/71; R.T. 1/10/72 (Vol. 1); R.T. 1/10/72 (Vol. 2); R.T. 1/11/72 (Vol. I); R.T. 1/11/72 (Vol. 2); R.T. 1/11/72 (Vol. 3).)

371.   Judge Hardy considered testimony already given in the case, as well as testimony from 18 witnesses.  (Id.)

372.   Tucson police officer William Shoemaker testified that he saw Taylor in the Hotel lobby as evacuation and rescue efforts were underway, ordered him to leave, and escorted him out the front door, but that he later saw Taylor on the third floor. (R.T. 10/16, 18/71 (Vol. II), at 480–486.)

373.   Detective Milan Murchek, who also interviewed Taylor at the detective division, testified that Taylor said he saw two fires in two locations.  (R.T. 1/11/71 (Vol. 3), at 203–294, 298.)

374.   Kashman conceded that there was "no evidence of gasoline or any inflammable or incendiary liquid."  (R.T. 10/15/71 (Vol. II), at 507.)

375.   During these and other pretrial hearings, Pima Deputy County Attorney Bill Druke also assisted in the prosecution.  (R.T. 10/26/71, at 1–2; R.T. 11/3/71, at 1–2; R.T. 12/21/71, at 1–2; R.T. 1/10/1972 (Vol. 1), at 1–2; R.T. 1/11/72 (Vol. 1) at 1–2.)

376.    Judge Hardy ruled: "The Court finds that the defendant understood his constitutional rights not to incriminate himself and to be represented by counsel and that his statements to the police officers were made voluntarily."  State v. Taylor, 537 P.2d 938, 951 (Ariz. 1975).

377.    On December 21, 1971, Judge Hardy held Kashman in contempt for violating a court order and allowing Taylor to talk to the media.  (R.T. 12/21/71, at 165–174.)

378.    On January 11, 1972, Judge Hardy granted Taylor's motion to quash the arson charge, which focused the prosecution on the 28 murder charges and a theory of felony murder by arson.  (R.T. 1/11/72 (Vol. 1), at 88; R.T. 2/1/72, at 78.)

379.    On January 21, 1972, Judge Hardy denied Taylor's motion to suppress the matchbook evidence, ruling that there was probable cause for Taylor's arrest based solely on evidence that: "1. The fire was man made. This evidence came from the defendant himself. 2. The defendant had no apparent business in the hotel. 3. The defendant had the opportunity to set the fire. 4. The defendant's accounts of what he had observed were inconsistent."  (PC000932–000933.)

380.    Judge Hardy sequestered the jury.  (R.T. 2/3/72 at 255.)

381.    Jury selection commenced on February 2, 1972.  (R.T. 2/2/72 (Vol. 3), at 2.)

382.    The parties gave their opening statements on February 9, 1972.  (R.T. 2/9/72 (Vol. 8), at 21, 65.)

383.    Kashman's defense theory was that someone other than Taylor set the fire.  (Id. at 68.)

384.    Kashman admitted that Taylor's varying accounts to police were "based partly on fantasy and partly on fact" and "admittedly untrue accounts."  (Id. at 85, 88.)

385.   The jury then heard 34 days of testimony.  (R.T. 2/9/72 (Vol. 8) through 3/18/72 (Vol. 41).)

386.   Frank Armenta testified that Taylor told him that he was going to work at the Pioneer Hotel.  (R.T. 2/22/72 (Vol. 19) at 42–46.)

387.   Rodney Dingle testified that, between 11:00 p.m. and 11:45 p.m., he ran into Taylor inside the Hotel while purchasing cigarettes; Taylor asked if he could have a cigarette; Dingle asked if he needed a light; and Taylor said, "No, I have a book of matches."  (R.T. 2/22/72 (Vol. 19) at 63–65.)

388.   Dingeldine read in David Johnson's testimony from the probable cause hearing—that Johnson saw Taylor standing on third floor, staring at the fire, and Taylor said: "Get an extinguisher. Get an extinguisher."  (R.T. 2/22/72 (Vol. 19), at 125–128, 133–134.)

389.   Giles Scoggins testified that he saw Taylor on the third floor; Taylor said, "There's a fire," and that he saw "two colored boys with afro haircuts and they were fighting and they were the ones who started the fire"; and Scoggins told officers what Taylor had said, they set out to find him, and ultimately found him wearing a white bus boy jacket.   (R.T. 2/23/72 (Vol. 20), at 83–86, 106–117.)

390.   Officer Adams testified that Scoggins told him what Taylor had said; while searching for Taylor, Taylor tapped Officer Adams on the shoulder and told him, "There are seven boys on the seventh or eighth floor running around there and they don't belong there"; while walking downstairs, Taylor told him: "It is sure bad about all those people. It's terrible somebody–it's awful that somebody would set a fire like that"; at the station, Taylor related his stories about Tatum, hanging out at a party on the second floor when he smelled smoke, seeing a Mexican boy and a white boy running around on the third floor, and then recanting his story about seeing two boys robbing people.  (R.T. 2/24/72 (Vol. 21), at 12–13, 15, 18, 29–34.)

391.   Sgt. Rossetti testified that Taylor told him a story about Tatum, that he saw "two negros" fighting on the third floor, he then described them as two Mexican males, and said, "I don't know why anyone would want to do anything like that."  (R.T. 2/24/72 (Vol. 21), at 96–97.)

392.   Det. Gassaway testified that Taylor told him a story about hanging out with Tatum, then losing Tatum and going to find him at the Hotel, and then attending a party on the second floor and following the manager up to the third floor after smelling smoke; Taylor said he saw a Mexican male and a white male near the fire; when Det. Gassaway confronted Taylor, Taylor admitted that he made up the story about Tatum; Taylor then admitted that he arrived at the fire first and the manager arrived after; Taylor became belligerent; he said, "You've got no witnesses. … You can't prove anything"; Taylor admitted he did not see anyone running, but he saw five people near the liquor supply and that he believed two of them had set the fire (two Mexicans) because one had a look in his eye and a gun in his waistband; when Det. Gassaway said that he believed that Taylor set the fire, Taylor said, "I didn't kill those people" and that Gassaway could not prove anything; Taylor said that he wore the bus boy jacket to try and steal drinks; Taylor admitted that he had been going through cars in the parking lot and that he had previously set fires in garbage dumpsters and trash cans, to trees, and to an old house; and during the interview, Taylor lit a cigarette with matches he pulled from his pocket.  (R.T. 2/24/72 (Vol. 21), at 120–135,177–178.)

393.   Det. Angeley testified that Taylor told him that he went to the Hotel to pick up one of the Grigsby boys; Taylor said he saw two "colored" boys on the fourth floor; Taylor then said they were two Mexican boys and one had a gun; and then he said it was a Mexican boy (with long hair and who sold dope at Himmel Park) and a white boy and the Mexican boy started the fire.  (R.T. 2/25/72 (Vol. 22), at 14–16.)

394.   Det. Smith testified that Taylor told him that he went to the Hotel to go to a party but he did not know whose party it was; when Det. Smith asked Taylor if he set the fire, Taylor said, "No. I didn't want to kill all those people"; Taylor said a Mexican did it and he knew because of the look in his eye; Taylor said he saw five Mexicans running around and looting rooms and that he grabbed one but police arrived and told him to leave; Det. Smith removed four books of matches from Taylor's pockets, and when Taylor undressed he "smirked" and pulled another book of matches out of his underwear.  (R.T. 2/25/72 (Vol. 22), at 96–98, 103–105.)

395.   Det. Smith testified that one book (Van Wyck) had 17 matches; one book (Royal Inns of America) had four matches; one book (Lucky's Supermarket) had one match; one book (Van Wyck) had no matches; and one book (Spanish Trail Motel) had 9 matches.  (R.T. 2/25/72 (Vol. 22), at 107; PC035297–035298.)

396.   A book of Royal Inns of America matches was found in the burnt rubble in the Hotel.  (PC035320–035329.)

397.   James Holsinger testified that Taylor was not employed by the Hotel, and that no one by the names of Tatum or Grigsby worked at the Hotel in 1970.  (R.T. 2/25/72 (Vol. 22) at 63–68.)

398.   Charles McGee's prior testimony was read to the jury.  (R.T. 2/28/72 (Vol. 24), at 9–10.)

399.   Cy Holmes testified consistently with his prior testimony.  (R.T. 2/15/72 (Vol. 13), at 94–172; R.T. 2/16/72 (Vol. 14), at 3–158; R.T. 2/17/72 (Vol. 15), at 3–177; R.T. 2/18/72 (Vol. 16), at 3–158; R.T. 2/19/72 (Vol. 17), at 3–110; R.T. 2/21/72 (Vol. 18), at 4–170; R.T. 2/22/72 (Vol. 19), at 4–33.)

400.   Holmes reiterated that, at the time he investigated the fire, he was not aware that Taylor (or anyone) was charged with arson or in custody.  (R.T. 2/18/72 (Vol. 16), at 12.)

401.   Holmes reiterated that there were no electrical issues that started the fire, and that the fire did not originate in any of the rooms or from the heating/cooling system.  (R.T. 2/17/72 (Vol. 15), at 35–58.)

402.   Holmes reiterated that the two fires were man-caused.  (R.T. 2/17/72 (Vol. 15) at 165–166; R.T. 2/18/72 (Vol. 16), at 3.)

403.   Holmes reiterated that he did not find any incendiary devices or evidence of liquid accelerants or containers.  (R.T. 2/19/72 (Vol. 17), at 90–93.)

404.   The State also presented testimony from Hotel guests, Hotel employees, firefighters, and police officers that they did not smell gasoline or petroleum or find any accelerant containers on Taylor.  (R.T. 2/10/72 (Vol. 9), at 95–96; R.T. 2/12/72 (Vol. 11), at 43; R.T. 2/14/72 (Vol. 12), at 46–47, 113; R.T. 2/15/72 (Vol. 13), at 27; R.T. 2/23/72 (Vol. 20), at 129, 210; R.T. 2/24/72 (Vol. 21), at 78–79; R.T. 2/25/72 (Vol. 22), at 119, 122; R.T. 3/15/72 (Vol. 38), at 168.)

405.   Taylor's witnesses testified similarly.  (R.T. 2/29/72 (Vol. 25), at 109, 151–152; R.T. 3/4/72 (Vol. 29), at 74.)

406.   One firefighter, Angel Carranzo, testified that he did not find any incendiary devices and that there was no evidence of a liquid accelerant.  (R.T. 2/15/72 (Vol. 13), at 84–84.)

407.   The State also called Bruce Wallmark on February 25, 1972.  (R.T. 2/25/72 (Vol. 22), at 139–188.)

408.   Wallmark was in the Pima County Juvenile Court Center from January 1971 to March 1971.  (Id. at 140–141.)

409.   In February 1971, Taylor, who was also detained at the Pima County Juvenile Court Center at the time, had several conversations with Wallmark and others about the Hotel fire.  (Id. at 141–144, 149–158.)

Taylor's contention: Taylor never told Wallmark or others about the fire, and Wallmark was coerced to testify falsely as instructed by Defendants. This contention applies to all of Defendants' listed contested factual issues based on purported conversations between Taylor and Wallmark.

410.   During their conversations, Taylor told Wallmark that he (Taylor) and two others were at the Hotel to steal wallets and money; that they almost got caught on the fourth floor by a maintenance man, so they took off running; that they ran down the stairs when the fire started on the fourth floor; and that the only reason he got caught was because they found matches on him.  (Id. at 141–144, 149–158.)

411.   Wallmark testified that Taylor told him that the police told Taylor that the fire started on the fourth floor by someone dropping a lit book of matches on the carpet.  (Id. at 157–158.)

412.    On another occasion, Wallmark overheard Taylor bragging to another detainee that he was going to "get[] off the rap" for the arson and murder charges.  (Id. at 158–167.)

413.   Wallmark testified that he had not talked to "any police authorities" about Taylor or the Pioneer Hotel fire before August 11, 1971.

414.   After Wallmark concluded his direct examination and court adjourned for the day, Wallmark fled, and Weiss conveyed that both Wallmark and Larry Kern had received threats not to testify.  (R.T. 2/26/72 (Vol. 23), at 2–5.)

415.   TPD located Wallmark and he resumed his cross-examination on February 28, 1972.

416.   During his cross-examination, Wallmark testified that Taylor never admitted to starting the fire or say who started the fire.

417.   The State also called Larry Kern, another Pima County Juvenile Court Center detainee.  (Id. at 20–40.)

418.    Kern testified that, on March 23, 1971, he overheard Taylor tell another detainee that he and another guy were on the second floor; that they both had matches; that the other guy "took off when the cops and everything started coming up to the second floor -- third floor"; and that the other guy got away.  (Id. at 22.)

419.    The State rested on February 28, 1972.  (R.T. 2/28/72 (Vol. 24), at 37.)

420.    Taylor moved for a directed verdict, but Judge Hardy denied the motion, ruling that, "considering all the evidence," there was "sufficient evidence established, which, if believed, might convict the defendant."  (Id. at 39, 80–81.)

421.    On March 1, 1972, two days into Taylor's case, the State moved to re-open its own case to present the testimony of Robert Jackson.  (R.T. 3/1/72 (Vol. 26), at 2–3.)

422.    Jackson's testimony was brought to the prosecution's attention on February 27 by the Tucson Police Department.  (Id.)

423.    After receiving the information, the prosecution conducted an investigation into his purported testimony before making a decision to call him as a witness.  (Id.)

Taylor's contention: the PCAO knew that Jackson did not have any information about the fire, and participated with the City to coerce Jackson into testifying falsely. This contention applies to all of Defendants' contested factual issues based on testimony or statements provided by Jackson.

424.    The State disclosed Jackson as a witness on February 29, 1972.  (PC021930.)

425.    Judge Hardy then questioned Jackson under oath.  (R.T. 3/1/72 (Vol. 26), at 6.)

426.    Jackson testified that he had not discussed the case with anyone from the Tucson Police Department prior to February 27, 1972.  (Id. at 6.)

427.   On February 27, 1972, police had been searching for Wallmark in his neighborhood and stopped Jackson to ask if he knew where Wallmark was.  (Id. at 8–13.)

428.   Jackson, who knew Wallmark, told the officers that he did not know Wallmark's whereabouts.  (Id.)

429.   The officers then asked Jackson if he knew anything about Taylor or the Pioneer Hotel fire.  (Id.)

430.   Jackson said he did and agreed to give a statement.  (Id.)

431.   Jackson testified that he was not promised anything for his statement. (Id. at 17.)

432.   Judge Hardy denied the motion to reopen without prejudice to re-raise for purposes of rebuttal.  (Id. at 27.)

433.   Kashman pursued his theory that someone else started the fire, pointing out the presence of other youths inside and outside the Hotel at the time of the fire. (R.T. 2/11/72 (Vol. 10), at 45; R.T. 3/2/72 (Vol. 27), at 24–77, 103, 128, 224–225; R.T. 3/3/72 (Vol. 28), at 3–50; R.T. 3/6/72 (Vol. 30), at 54–86, 133–158.)

434.   Kashman called Det. Milan Murchek, who testified that Taylor told him that he had set fires in the past.  (R.T. 3/4/72 (Vol. 29), at 122.)

435.   Kashman called Leroy Brockbank, Vice President of the Pioneer Hotel, who testified that, when Scoggins told him that Taylor had seen the people involved in the fire, Taylor turned around and looked scared and then left the mezzanine area in a "hurried manner."  (R.T. 3/1/72 (Vol. 26), at 197–199; R.T. 3/2/72 (Vol. 27), at 22.)

436.   Kashman called Lawrence Estrada, another Pima County Juvenile Court Center detainee, who testified that a detainee (Fernie Mendez) yelled to Taylor that he "couldn't even burn down a hotel right," and that Taylor responded: "I'm getting out of it … I'm going to get off my rap."  (R.T. 2/29/72 (Vol. 25) at 65.)

437.    Kashman retained and called fire expert Marshall Smyth as a witness. (R.T. 3/8/72 (Vol. 32b), at 2–215; R.T. 3/9/72 (Vol. 33), at 140–154; R.T. 3/10/72 (Vol. 34), at 2–147; R.T. 3/11/72 (Vol. 35), at 3–139; R.T. 3/13/72 (Vol. 36), at 71–157; R.T. 3/14/72 (Vol. 37), at 2–121.)

438.    Smyth testified that he was first retained by the Pioneer Hotel's insurance company to conduct an investigation.  (R.T. 3/8/72 (Vol. 32b), at 13.)

439.    Smyth testified that there was a single point of the fire's origin on the North end of the fourth floor.  (R.T. 3/10/72 (Vol. 34), at 53–56; R.T. 3/13/72 (Vol. 36), at 134; R.T. 3/14/72 (Vol. 37), at 50.)

440.    Smyth testified that an accelerant was used to ignite the fire.  (R.T. 3/10/72 (Vol. 34), at 123–124; R.T. 3/13/72 (Vol. 36), at 134; R.T. 3/14/72 (Vol. 37), at 50.)

441.    Smyth testified that the fire ignited on the horizontal carpet, not on the vertical walls.  (R.T. 3/8/72 (Vol. 32b), at 114, 119–120.)

442.    Smyth testified that the wallpaper was not flammable.  (R.T. 3/11/72 (Vol. 35), at 45–46.)

443.    Smyth testified that the fire was "intentionally man set."  (R.T. 3/14/72 (Vol. 37), at 13, 110–111.)

444.    When Kashman indicated that he was going to call Taylor to the stand, Judge Hardy advised Taylor of his right not to testify; Taylor acknowledged his right but stated that he wanted to testify.  (R.T. 3/6/1972 (Vol. 30), at 179–180.)

445.    Taylor testified that he woke up around noon on December 19, 1970, hung around his neighborhood for a little bit, walked to the pool hall, which was about three blocks from the Pioneer Hotel, played a few games, walked around downtown, and then went to the Pioneer Hotel.  (Id. at 191, 194–197.)

446.   Taylor testified that he entered the Hotel from the parking garage, which led to the second floor of the Hotel, spent about "a minute" in the ballroom, and then left.  (Id. at 199, 202–203.)

447.   At the time, he was wearing a white and purple shirt and striped jeans.  (Id. at 204–205.)

448.   Taylor testified that he then walked back to his neighborhood and played ping pong.  (Id. at 204–206.)

449.   At this point, it was still light outside.  (Id. at 205.)

450.   Taylor testified that he "stayed around his neighborhood," "went to the park," and then went home to get a jacket—a green jacket with white and yellow stripes.  (Id. at 206–207.)

451.   Taylor testified that he had a bite to eat and then walked to Mike Tatum's house, but he was not there, so he walked toward the downtown area.  (Id. at 207–208, 210.)

452.   Once downtown, Taylor ran into Armenta.   (Id. at 211.)

453.   Taylor admitted that he told Armenta that he was going to the Pioneer Hotel to work, and that it was a lie.  (Id. at 213–215.)

454.   Taylor admitted that he never worked at the Pioneer Hotel.  (Id. at 184.)

455.   Taylor testified that he then went looking for Roger Wheeler, first walking to Roger's house, then Christine Bradley's house, and then "Joyce's house," but he could not find him.  (Id. at 215–218.)

456.   Taylor testified that he then drove with Joyce and her husband to the Esquire bar.  (Id. at 218–219.)

457.   Taylor testified that he popped in, but then walked to the pool hall that he had been at earlier and played a few more games.  (Id.)

458.   Taylor testified that he left the pool hall after some time, went to the Manhattan bar, and then went back to the pool hall, where he found his brother (William Taylor), Mike Tatum, Roger Wheeler, and another acquaintance (Ronnie Wooten), and played nine or 10 games of pool.  (Id. at 219–221.)

459.   Taylor testified that he then left the pool hall and went to the Greyhound bus station by himself, had a coke, watched television, and played some games.  (Id. at 222–223.)

460.   Taylor testified that, after a while, he left the bus station and went back to the Esquire bar to look for "Johnnie Cue."  (Id. at 223.)

461.   Taylor testified that Johnnie Cue was there, but he did not stay long and then he "walked around a little bit" before going to the Pioneer Hotel.  (Id. at 224.)

462.   Taylor testified that he "wasn't keeping track" of time and did not know what time he arrived at the Hotel.  (Id. at 224–225.)

463.   Taylor testified that he entered from the parking garage and onto the second floor.  (Id. at 225.)

464.   Taylor testified that he heard music and went to the ballroom, where he saw a lot of people dancing.  (Id. at 226.)

465.   Taylor testified that he sat down and watched them for about 20 minutes; he did not recall whether he had anything to drink.  (Id. at 224–225, 228.)

466.   Taylor testified that he then went to the restroom and then walked to the other side of the ballroom and sat near the cigarette dispenser.  (Id. at 228–230.)

467.   Taylor testified that he recalled the interaction with Dingle, and he lit the cigarette that Dingle gave him.  (Id. at 230–232.)

468.   Taylor testified that he then walked back to the other side of the ballroom onto the mezzanine near the balcony that overlooked the lobby and sat down near the cloak room.  (Id. at 233–237.)

469.    Taylor testified that he watched two women get their coats from the cloak room.  (Id.)

470.    Taylor testified that he then saw a man come down the stairs and tell the employee in the cloak room that there was a fire.  (R.T. 3/6/72 (Vol. 30), at 241–244; R.T. 3/7/72 (Vol. 31.), at 4–6.)

471.    Taylor testified that the man went back up the stairs and he followed him. (Id.)

472.    Taylor testified that when he reached the third floor, he smelled and saw smoke rising near the lighting.  (Id.)

473.    Taylor testified that he started pounding on doors notifying people.  (R.T. 3/7/73 (Vol. 31), at 6.)

474.    Taylor testified that he saw the fire on the wall of the (North) third-floor stairway (going up).  (Id. at 7.)

475.    Taylor testified that, at that point, Johnson came up to him and Taylor told him to get some fire extinguishers.  (Id. at 8.)

476.    Taylor testified that, after Johnson left, Taylor grabbed two kids in a room, one under each arm, and brought them to the elevator.   (Id. at 12.)

477.    Taylor testified that he saw Scoggins when he went back to the stairway. (Id. at 13–14.)

478.    Taylor admitted telling Scoggins that he saw two boys running and start the fire, but he testified on the stand that he did not see anyone.  (Id. at 15–16.)

479.    When asked why he lied to Scoggins, Taylor testified, "I don't know." (Id. at 16.)

480.    Taylor testified that, at some point, he found the white bus boy jacket and put it on.  (Id. at 44.)

481.    Taylor admitted to having conversations with Wallmark at the Pima County Juvenile Court Center.  (Id. at 82.)

482.    Taylor admitted that he talked to Wallmark about "things that were going on in [his] preliminary hearing."  (Id. at 84.)

483.    Taylor admitted to talking to other boys about his case while in the Pima County Juvenile Court Center.  (Id. at 84–85.)

484.    Taylor admitted knowing Robert Jackson for several months before the fire and being in contact with him from January 29 to February 3, 1971, while at the Pima County Juvenile Court Center.  (Id. at 86–87.)

485.    On cross-examination, Taylor testified that he "can't recall" a lot of things that happened while he was in the Hotel.  (Id. at 124.)

486.    Taylor admitted: "I was just watching the fire."  (Id. at 143.)

487.    Taylor testified that he did not need permission to go in the Hotel.  (Id. at 148.)

488.    Taylor admitted to telling Sgt. Rossetti that he was at the Hotel the night before to decorate for a party.  (Id. at 172.)

489.    Taylor admitted to lying to Det. Gassaway at "some points" and that he did tell Det. Gassaway that he had no witnesses and could not prove anything.  (Id. at 175–176.)

490.    Taylor admitted to lying when he said he went to the Hotel to get a ride from Tatum.  (Id. at 175.)

491.    Taylor admitted to telling Det. Gassaway: "[I]f I wanted to set a fire that I would set a garbage can on fire instead of a hotel on fire where people were living." (Id. at 176–177.)

492.    Taylor admitted that the matches came from both his pants and jacket pockets and that he had seen some of them before.  (Id. at 180.)

493.   Taylor admitted handing Det. Smith a book of matches in the shower. (Id. at 180.)

494.   When asked, if he "knew that a fire in a hotel might injure people," Taylor testified, "I didn't know that, no."  (Id. at 177.)

495.   For the duration of the trial, Kashman assumed custody of Taylor and Taylor stayed with Kashman at his hotel.  (R.T. 2/14/72 (Vol. 12), at 107; R.T. 2/15/72 (Vol. 13), at 75.)

496.   After Taylor rested his defense, the prosecution re-raised its request to re-open its case and call Robert Jackson, adding that it had administered a polygraph on Jackson to ensure that his testimony was truthful.  (R.T. 3/14/72 (Vol. 37), at 206–225.)

Taylor's contention: Defendants knew that Jackson's testimony was false and coerced him to testify as they instructed. The polygraph was a sham, and even if it were not, it is unreliable and not evidence of the truthfulness of Jackson's statement.

497.   Judge Hardy granted the request and clarified that Jackson would be a witness in the State's case-in-chief, not a rebuttal witness.  (R.T. 3/15/72 (Vol. 38), at 2–3.)

498.   Jackson testified that he had been detained at the Pima County Juvenile Court Center from January 29, 1970, through February 3, 1971, while Taylor was also detained there.  (Id. at 5–6.)

Taylor's contention: Defendants' coerced Jackson to testify falsely. This contention applies to each of Defendants' listed contented factual issues based on Jackson's testimony or other statements.

499.   Jackson had known Taylor for a year and a half prior to that time.  (Id. at 6.)

500.    Jackson testified that Taylor told him that he went to the Pioneer Hotel to attend a party.  (Id. at 20.)

501.    Jackson testified that Taylor told him that he (Taylor) found a can of lighter fluid in one of the Hotel rooms and began squirting lighter fluid on the wall, lighting it with a match, and putting the fire out with his hand.  (Id. at 11–12, 44.)

502.    Taylor did this "a number of times."  (Id. at 23.)

503.    Jackson testified that Taylor said that he squirted an "extra amount" of lighter fluid on the wall—motioning a circle with two dots in the middle—lit it, and then heard someone coming, so he took off.  (Id. at 12–13, 43.)

504.    When Taylor looked back, nobody was there but the fire was "too big" to put out, so he fled.  (Id. at 13.)

505.    Jackson testified that Taylor said he did not intend to "burn the Hotel down, but the fire got out of control."  (Id. at 18.)

506.    When Jackson asked Taylor why he did not think Jackson would tell police what he had said, Taylor said "there was no way [he] could prove it."  (Id. at 18.)

507.    Jackson testified that when he gave his statement on February 27, 1972, nobody promised him anything in exchange and nobody threatened him.  (Id. at 14, 24.)

508.    Jackson testified that police told him that Taylor was going to "get off scott free if someone didn't witness."  (Id. at 34.)

509.    In its rebuttal case, the State called Tadeo Iruretagoyena Caranza.  (R.T. 3/15/72 (Vol. 38), at 64.)

510.    Mr. Caranza testified that, contrary to Taylor's testimony, he (Mr. Caranza) and his wife, not Taylor, ushered their two children out of their room to the elevator.  (Id. at 72.)

511.   The State also called Freda Lampton in rebuttal.  (R.T. 3/16/72 (Vol. 39), at 192–244.)

512.   Lampton worked in the cloak room on the mezzanine on the night of the fire.  (Id. at 193.)

513.   Lampton testified that Taylor had not been hanging out on the mezzanine that evening.  (Id. at 199–200.)

514.   She testified that she first saw Taylor come out of the double door entrance/exit to the stairway next to cloak room, yelling: "There's a fire up there and smoke. … Right up there in the hall."  (Id. at 196, 198.)

515.   Taylor then turned and went back up the stairs.  (Id. at 197.)

516.   Lampton testified that she called the front desk.  (Id.)

517.   Taylor then came down the stairway again and said, "There's a lot of fire and a lot of smoke up there," and he mentioned it was on the seventh floor.  (Id. at 198.)

518.   Nobody else was with Taylor.  (Id.)

519.   David Johnson came out of the doors asking for a fire extinguisher after Taylor did the second time, but "way later."  (Id. at 226–272.)

520.   The State also called Herbert Bay, a former detention officer at the Pima County Juvenile Court Center.  (R.T. 3/17/72 (Vol. 40), at 55–56.)

521.   Bay testified that Taylor approached Bay and asked, "Can I rap to you, brother?"  (Id. at 57–59.)

522.   Bay obliged.  (Id.)

523.   Taylor then told Bay: "I want your opinion of something.  I want you to listen to what I have to say and tell me who you think was the hero."  (Id. at 59.)

524.   Bay testified that Taylor then began talking about the day of the fire, explaining that he went to the Hotel to "crash the Hughes party there" and "get[] … a few drinks."  (Id. at 60.)

525.   Bay testified that Taylor said that he went to the party and then left and went to the fourth floor of the Hotel and "saw a little fire."  (Id. at 60.)

526.   Bay testified that Taylor said he grabbed a fire extinguisher and tried to put the fire out, but it did not work, so he ran down to the front desk and yelled, "There's a fire upstairs."  (Id. at 60–61.)

527.   Bay testified that Taylor also said that "if the fire extinguisher … worked the whole thing would have never gotten out of hand."  (Id. at 63.)

528.   Bay testified that the juvenile detainees at the Pima County Juvenile Court Center would smoke in their rooms and when officers searched them for matches and cigarettes, Taylor would laugh and say "[they would] never find them all" because "he was too sly."  (Id. at 78–79.)

529.   After the State rested its rebuttal case, Judge Hardy allowed Taylor to recall Taylor.  (R.T. 3/17/72 (Vol. 40), at 115–120.)

530.   Taylor admitted to talking to Jackson about the Hotel fire but denied telling him that he started the fire.  (Id. at 116–118.)

531.   Judge Hardy also permitted Taylor to call Officer Bergman.   (R.T. 3/18/72 (Vol. 41), at 3–49.)

532.   Bergman testified that he was one of the first officers on the scene.  (Id. at 8.)

Taylor's contention: Bergman was threatened and coerced by Defendants to not testify fully and truthfully; he testified truthfully at his deposition in this case. This contention applies to all of Defendants' listed contested factual issues based on Bergman's trial testimony or other statements.

533.   Bergman entered the hotel lobby, proceeded through the lobby and up the stairs to the mezzanine area, and then up the stairs to the third floor.  (Id. at 8, 10.)

534.   When he got to the third floor, he saw Taylor for the first time, just standing there.  (Id. at 11–12.)

535.   After engaging in rescue and evacuation efforts with Taylor, Bergman was taken to the hospital for smoke inhalation.  (Id. at 43.)

536.   Bergman saw Taylor with Officer Adams at the police station when Officer Bergman returned from emergency treatment.  (Id. at 44.)

537.   Bergman testified: "Mr. Taylor walked through the door of the coffee shop in–or coffee room into the coffee room and Officer Adams walked in behind him, then walked over to me."  (Id. at 48.)

538.   During his closing argument, Kashman admitted that "somebody started that fire.  Somebody started that fire. … [H]e's not coming in here and saying that it was just an accident…."  (R.T. 3/20/72 (Vol. 42), at 16.)

539.   Kashman further argued: "The reason the defendant puts on an expert to show that there was an intentional fire with an accelerant is because nowhere ever was any evidence found that can tie him to an accelerant.  Nowhere."  (Id. at 41.)

540.   Kashman further argued that Jackson's testimony was inconsistent with Holmes' testimony.  (Id. at 17.)

541.   The jury was instructed that: "If after considering all the evidence and the instructions of the court in this case you have in your mind only that the defendant had an opportunity to commit all the acts or acts herein charged against him, then you must render a verdict of not guilty. The law does not permit in a case of this kind a verdict of guilty to stand on the mere fact that the defendant had an opportunity to commit the act or acts charged against him."  (Id. at 134.)

542.   The jury was further instructed that: "It is the law that no verdict of guilty can stand on mere suspicion of probability or supposition for these alone do not warrant a conviction." (Id. at 135.)

543.   The jury began its deliberations on March 20, 1972. (Id. at 141.)

544.   On March 21, 1972, the jury returned a guilty verdict on all counts. (R.T. 3/21/72 (Vol. 43), at 2–3.)

545.   Judge Hardy sentenced Taylor to life imprisonment. (Id. at 21.)

546.   Judge Hardy added: "First of all, I think this case was as well defended as any criminal case I've ever seen. Mr. Kashman and his staff in my judgment did just about everything they possibly could do in your behalf. I've never seen a criminal case in which there were 40 defense witnesses brought from as far away as New Hampshire down to Mexico. There was obviously a lot of time spent in looking for witnesses. There was very careful and thorough work on the law of the case. As I say, I never have seen a case better defended. In my judgment the trial was completely fair. … I know myself that you did not intend what happened at this trial, and I know myself that if you could change it in any way you certainly would. You're no different really than many other kids in this country. They do so many things so thoughtlessly, without thinking of what might happen, and in your case it just worked out much worse than it works out for most kids." (Id. at 19–20.)

547.   Indeed, on several occasions over the course of the proceedings, Judge Hardy commended both counsel for their work and abilities. (R.T. 12/21/71, at 1781; R.T. 1/11/71 (Vol. 2), at 116.)

548.   On March 23, 1972, Taylor filed a motion for new trial, raising 25 points of error, including a challenge to the sufficiency of the evidence and accusing Weiss of failing to turn over Brady material. (PC007523–007526.)

549.   Judge Hardy denied the motion, adding: "Well, ever since the jury's verdict I have seriously reflected on this case and the various legal issues that came up during the trial.  If we were to do the whole thing over again I can't think of any ruling I made on a significant point that I'd change, so on that. basis I'm going to have to deny the motion for a new trial."  (R.T. 3/28/72, at 18.)

550.   On April 21, 1972, Taylor filed a motion for new trial in the Arizona Supreme Court, alleging that Jackson and Wallmark had recanted their trial testimony. (016753–016754.)

551.   On May 18, 1972, at the direction of the Arizona Supreme Court, Judge Hardy held a hearing on Taylor's motion for new trial.  (R.T. 5/18/72; PC016750.)

552.   Kashman had resigned as Public Defender but associated in as private counsel for Taylor along with Lane.  (R.T. 5/18/72, at 3–4, 7, 11–12.)

553.   Judge Hardy appointed Jackson counsel and, over the State's objection, granted Jackson and Wallmark immunity if they recanted their trial testimony.  (Id. at 33–44, 46–48, 64–67, 74–75.)

554.   Jackson and his attorney conferred privately before taking the stand.  (Id. at 69–70.)

555.   Kashman asked Jackson whether his trial testimony was true.  (Id. at 74.) Under oath, Jackson answered, "Yes," and reiterated that Taylor told him that he (Taylor) started the fire at the Pioneer Hotel.  (Id. at 76–78, 115.)

Taylor's contention: After recanting his testimony in a detailed statement, Defendants' further coerced Jackson to testify falsely. This contention applies to each of Defendants' listed contented factual issues based on Jackson's testimony or other statements.

556.    Jackson went on to testify that he previously told Kashman's investigator (Tucker) that Taylor never admitted to starting the fire because he felt threatened: "I don't like people on my back, you know, I don't like to be threatened."  (Id. at 80.)

557.    Jackson further testified, "[I]f I got up here and told you I lied, then I would just be perjuring myself and I'm not going to do it. ... if I got up and said I did lie, that would be perjury[.]"  (Id. at 80–81.)

558.    Jackson testified that, if he were to testify again in a retrial, his testimony would be the same as it was in the original trial.  (Id. at 115.)

Taylor's contention: Defendants were aware of Jackson and Wallmark's false testimony, and coerced them to testify falsely.

559.    Kashman agreed that "[no]body associated with the prosecution or law enforcement agency was aware that these witnesses, before the end of the trial, ... lied."  (Id. at 95.)

560.    Kashman did not make an offer of proof for Wallmark.  (Id. at 135–144.)

561.    Wallmark originally provided a statement on August 11, 1971.  (PC023155–023156.)

562.    Wallmark also passed a polygraph examination that same day, which concluded that the information in his statement was the truth.  (PC023114; TAYLOR002635.)

563.    Jackson originally provided a statement on February 27, 1972.  (PC036469–036470.)

564.    Jackson also passed a polygraph examination on February 28, 1972, which concluded that his statement was the truth.  (PC015161–015162; PC015159–015158.)

565.    Weiss submitted affidavits from both Jackson and Wallmark, swearing that their trial testimony was the truth.  (PC022257–022260; PC022244.)

566.   Wallmark signed two affidavits, one on May 5, 1972, and one on May 23, 1972.  (PC022257–022258; PC016651.)

567.   Judge Hardy denied the motion for new trial.  (R.T. 5/18/72, at 152.)

568.   On September 16, 1972, Taylor filed another motion for new trial in the Arizona Supreme Court, alleging that Robert Jackson's brother, Alfred Jackson, would testify that Robert's trial testimony was false.  (PC016759–016764.)

569.   On October 5, 1972, the Arizona Supreme Court denied the motion for new trial.  (PC005713.)

570.   On direct appeal to the Arizona Supreme Court, Taylor "raised eighteen allegations of error in this appeal, with numerous subheadings, dealing with almost every stage of the prosecution, from the transfer proceedings through denial of his motion for a new trial."  (PC022261–022370.)  See State v. Taylor, 537 P.2d 938, 947 (Ariz. 1975).

571.   Dennis DeConcini was the Pima County Attorney and he, along with Weiss and Attorney General Bruce Babbitt, represented the State.  Taylor, 537 P.2d at 941.

572.   On July 8, 1975, the Arizona Supreme Court rejected all of Taylor's claims of error and affirmed his convictions and sentence.  Taylor, 537 P.2d at 954.

573.   The Arizona Supreme Court rejected Taylor's claim that Weiss withheld evidence in violation of Brady: "The appellant further asserts that the prosecutor failed to disclose evidence helpful to the defendant pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the court's order.  He asks us to take judicial notice that the particular prosecutor in this case neither believes in nor abides by the doctrine of disclosure.  We decline to do so as being wholly inappropriate. Appellant seems to argue that because the prosecutor made no further voluntary disclosures after a September 13, 1971, disclosure hearing, it is incongruous to believe

that the prosecutor complied with the law and the order of the court. The appellant's bare assumption that something was withheld does not show the requisite prejudice. We do not reverse on conjecture alone." Taylor, 537 P.2d at 948.

574.    The Arizona Supreme Court rejected Taylor's claim that Weiss engaged in prosecutorial misconduct that deprived him of a fair trial: "The alleged misconduct concerns the prosecutor's opening statement and his numerous disruptive objections and speeches. He claims the court erred in denying appellant's motion to substitute prosecutors.  Appellant contends that there were 2,043 objections or interruptions by the prosecutor in the course of the 42-day trial.  The county attorney asserts that there were 1,737 objections and interruptions on behalf of the state and 1,111 by the appellant's counsel.  Over half of the objections by either side were overruled.  We did not make a statistical count but in reading the trial transcript in its entirety we saw that both prosecution and defense interposed numerous objections which were lacking in validity.  The prosecutor was overzealous and at times overly insistent in asserting his position.  In State v. Moore, 108 Ariz. 215, 495 P.2d 445 (1972), we said: '. . . Misconduct alone will not cause a reversal, as a new trial should not be granted to punish counsel for his misdeeds, but where the defendant has been denied a fair trial as a result of the actions of counsel, we will reverse. . . .' 108 Ariz. at 222, 495 P.2d at 452.  The conduct of the prosecutor was not so outrageous and improper as to deny the appellant a fair trial.  The able and experienced trial judge while exhibiting commendable patience fully controlled the trial.  Defense counsel was most capable and provided a good match for the prosecutor.  Appellant's counsel takes great comfort from State v. Moore, Supra, but the situations are not the same.  … It is interesting to note that appellant's counsel was found in contempt of court (though fined only five dollars) for making the appellant available for press interview, contrary to the court order.  We refer to this only to indicate that in this hard-fought battle Both counsel

became emotionally involved, and often conducted themselves with excessive zeal." Taylor, 537 P.2d at 948.

575.    The Arizona Supreme Court rejected Taylor's claim that the evidence did not support the jury's verdict: "We do not agree with appellant's evaluation of the evidence. There is substantial evidence to uphold the verdict."  Taylor, 537 P.2d at 949.

576.    The Arizona Supreme Court rejected Taylor's claim that his statements to law enforcement were involuntarily made and therefore inadmissible: "Our examination of the record convinces us that Taylor's statements were voluntarily made."  Taylor, 537 P.2d at 952.

577.    The Arizona Supreme Court rejected Taylor's claim that Judge Hardy erred in permitting the State to reopen its case to admit the testimony of Robert Jackson: "Appellant had his chance to hear the testimony of Jackson before he was well into his own case.  After he objected to the state's attempt to reopen at that time, he knew the court would entertain the motion again at the close of his case.  It would make no difference in the result if Jackson's testimony came in in rebuttal rather than in the case in chief."  Taylor, 537 P.2d at 953.

578.    The Arizona Supreme Court rejected Taylor's claim that Judge Hardy should have granted him a new trial based on Jackson's alleged recantation: "At the hearing, the position of appellant was not borne out. Jackson, even though granted appointed counsel and immunity from prosecution, unequivocally affirmed his trial testimony.  In addition, appellant asserts machinations, intimidation and subornation of perjury on the part of the prosecutor and his investigator. These charges are supported only by conjecture and innuendo, and if they have any basis, in fact, they are matters for a totally different proceeding."  Taylor, 537 P.2d at 954.

579.   On February 23, 1976, the United States Supreme Court denied Taylor's petition for writ of certiorari.  Taylor v. Arizona, 424 U.S. 921 (1976).

580.   On October 8, 1976, Taylor filed a petition for writ of habeas corpus, again challenging the voluntariness of his statements, Weiss' conduct at trial, the alleged failure to disclose Brady evidence, and Weiss' alleged role in suborning Jackson's testimony. Taylor v. Cardwell, No. CIV 76-734 PHX–CAM (D. Ariz. Feb. 18, 1977) (Muecke, J.).  (TAYLOR10697–10702.)

581.   On February 18, 1977, the Honorable Charles Muecke denied Taylor's claims and petition.  (Id.)

582.   Regarding Taylor's allegation that Weiss suborned false testimony from Jackson, Judge Muecke ruled: "Most of the allegations with respect to this issue can be disposed of summarily.  The evidence simply does not support petitioner's claim that the prosecutor misled or lied to the Court about witnesses, or that the prosecutor caused witnesses to change their testimony and commit perjury at trial. … Petitioner's final allegation is that the prosecutor tampered with Witness Jackson and allowed his perjured testimony to stand.   Jackson came forward with critical testimony after the State had rested, and after being permitted by the Court to re-open their case, the prosecution put Jackson on the stand to testify that petitioner had told him that he, petitioner, had started the fire.  After the jury had returned a guilty verdict, Jackson made a recorded but unsworn statement in which he said that he had lied at trial because the prosecutor had induced him to do so. Petitioner therefore moved for a new trial and at the hearing on that motion, Jackson testified that he had in fact told the truth at trial and only given the unsworn statement to get petitioner off his back.  This evidence of misconduct presented to this Court could not even be introduced to impeach this witness.  Petitioner has had an opportunity to ask Jackson if he told the truth at trial,

and he testified that he did. This Court will not call Jackson to testify a third time about a matter which he has always testified consistently." (TAYLOR10699–10701.)

583.   Regarding Weiss' alleged Brady violations, Judge Muecke ruled: "Petitioner also alleges that the Brady doctrine was violated through incomplete disclosure, however, petitioner has presented no examples of favorable evidence that was not either disclosed or somehow obtained by defense counsel prior to trial and has, therefore, shown no prejudice." (TAYLOR10700.)

584.   Regarding Weiss' alleged conduct at trial, Judge Muecke ruled: "Petitioner's allegation that he was deprived of a fair trial by the prosecutor's numerous objections and interruptions is likewise without merit.  Both the State and defense counsel interposed more than 1000 objections each in this lengthy trial, however, from the record it appeared certain that defense counsel was most capable and more than able to properly offset any possible prejudice caused by the numerous objections." (Id.)

585.   Regarding Taylor's statements, Judge Muecke ruled that they were properly admitted.  (TAYLOR10698–10699.)

586.   Judge Muecke further ruled: "IT IS FURTHER ORDERED that since this Court has before it, transcripts of all proceedings relating to this petition from the inception of juvenile proceedings through the affirmance of the conviction, and this Court has made an independent review of those proceedings, and it appears that due process was afforded the petitioner in all stages of the proceedings, this Court adopts the find[ings] of fact of the state court …. In the opinion of this Court, the conclusions of law expressed by the state courts did not deny any constitutional guarantees of the petitioner." (TAYLOR10701–10702.)

587.   Taylor appealed the denial of habeas corpus relief to the Ninth Circuit Court of Appeals.  See Taylor v. Cardwell, 579 F.2d 1380 (9th Cir. 1978).

588.   Stephen Neely was the Pima County Attorney, and he and Stefani Gabroy represented the State.  (PC039425–039479.)

589.   The Ninth Circuit affirmed the district court's ruling regarding Jackson's testimony: "A key witness against Taylor gave an unsworn statement after the trial that his testimony had been false and that the prosecutor knew it was false. However, in a posttrial hearing he swore that his testimony was true.  The state court found that the prosecution did not knowingly use perjured testimony.  The district court appropriately accepted this finding of a historical fact; none of the grounds for rejecting it applies."  Id. at 1383.

590.   The Ninth Circuit also affirmed the district court's ruling regarding Weiss conduct at trial: "Taylor asserts that other prosecutorial misconduct deprived him of a fair trial, but he does not show specifically how the prosecutor's actions prejudiced him.  His allegations therefore do not call for habeas relief."  Id. at 1383.

591.   The Ninth Circuit, however, remanded for additional findings surrounding Taylor's statements to law enforcement.  Id. at 1383.

592.   On remand, the district court—the Honorable Manual Real—ruled that Taylor's statement were voluntarily made.  Taylor v. Cardwell, CIV 78-277-TUC (D. Ariz. May 18, 1981).  (PC1485.0644–1485.0650.)

593.   The Ninth Circuit disagreed and vacated that ruling.  Taylor v. Cardwell, No. 81-5570 (9th Cir. Sept. 15, 1982).  (TAYLOR9493–9495.)

Taylor's contention: The Supreme Court did not find that Taylor's arrest was constitutional, but only that Fourth Amendment violations do not provide grounds for habeas relief from state court convictions.

594.   The State filed a petition for writ of certiorari, which the United States Supreme Court granted, set forth the correct standard, and remanded.  Cardwell v. Taylor, 461 U.S. 571, 572–73 (1983).

595.   On remand, the Ninth Circuit held that Taylor's statements were voluntary. Taylor v. Cardwell, No. 81-5570 (9th Cir. Apr. 30, 1984). (TAYLOR010713–10719.)

596.   On December 31, 1984, Taylor filed a Rule 32 petition for post-conviction relief, again challenging the voluntariness of his statements. (PC001485.0661–1485.677.)

597.   The Honorable Robert Hertzberg denied the petition on May 1, 1985. (TAYLOR010737.)

598.   The Arizona Supreme Court denied Taylor's petition for review on October 4, 1985.  (TAYLOR010740.)

599.   On October 23, 2012, Taylor filed another Rule 32 petition for post-conviction relief.  (Dkt. 6-1 at 2–63.)

600.   He was represented by 14 attorneys, including Stanley Feldman, and "numerous" law students.  (Id. at 2.)

601.   Taylor claimed that he compiled an Arson Review Committee ("ARC"), which purportedly analyzed the evidence using "current fire investigation science and technology" and concluded that, under those modern standards, the Pioneer Hotel fire "would not be classified as incendiary."  (Id. at 25.)

602.   According to its Report, ARC concluded that there was only one point of origin and that a phenomenon known as "flashover" produced "misleading artifacts" that led Holmes to erroneously conclude that there were multiple points of origin.  (Dkt. 6-1 at 25–26; TAYLOR010597–010624.)

603.   Taylor argued that these "[a]dvancements in fire science and investigative methodologies" qualified as newly discovered evidence under Arizona Rule of Criminal Procedure 32 and would have changed the verdict, therefore warranting a new trial.  (Dkt. 6-1 at 30–41.)

604.    Taylor also alleged that, on December 23, 1970, a fire investigator retained by the Pioneer Hotel's insurance company (Glen Miller) removed six samples of debris from the Hotel; he sent those samples to Truesdail Laboratories for testing; and, on February 16, 1971, Truesdail issued a Report stating that "[n]o volatile flammable compounds such as kerosene, gasoline, naphtha, methyl alcohol, isopropyl alcohol or nitromethane were detected in any of the six samples submitted."  (Dkt. 6-1 at 26; TAYLOR000001–000002.)

605.    The Truesdail Report does not indicate where the samples were taken from.  (TAYLOR00001–00002.)

606.    The Truesdail Report is signed by Truesdail Laboratories' Technical Director C.A. Crutchfield.  (Id.)

607.    Taylor alleged that Smyth discovered the Truesdail Report when he was reviewing Tucson Fire Department records in 2004.  (Dkt. 6-1 at 27.)

608.    Taylor alleged that Weiss had to have been aware of the Truesdail Report as early as September 1971 and failed to disclose it in violation of Brady.  (Id. at 27.)

609.    Taylor argued that the existence of the Truesdail Report entitled him to a new trial.  (Id. at 41–44.)

610.    Deputy Pima County Attorney and Chief Trial Counsel Rick Unklesbay was asked to review the petition and Taylor's claims. (Decl. of Rick Unklesbay, ¶ 10.)

611.    Unklesbay had been a career prosecutor, since July 1981, during which he served as a line prosecutor, general felony team supervisor, head of the Violent Crimes Section, Chief Criminal Deputy, and Chief Trial Counsel.  (Id., ¶ 2.)

612.    In his career, Unklesbay had tried more than 200 felony jury trials, including more than 100 first-degree murder jury trials, over 20 of which were capital cases.  (Id., ¶ 3.)

613.   He also started the Conviction Integrity Unit at the Pima County Attorney's Office, which reviewed cases for wrongful convictions and unjust sentences.  (Id., ¶ 4.)

614.   During his tenure as a prosecutor, he was the recipient of many honors and awards, including but not limited to: Arizona Prosecutor of the Year (2005), the Arizona State Bar Michael Cudahy award (2006), the Pima County John Roll award, and an award from the Association of Government Lawyers in Capital Litigation (2005).  He was inducted into the American College of Trial Lawyers in 2009.  (Id., ¶ 5.)

615.   Over the years, he has provided education and training on a variety of topics to the public, law enforcement, and students at the University of Arizona.  (Id., ¶ 6.)

616.   For 10 years ending in 2020, he was an adjunct professor at the James Rogers College of Law and taught a class about prosecution, including the ethical responsibilities of a prosecutor.  (Id.)

617.   Because the case involved an arson, Unklesbay brought in an experienced arson prosecutor, Malena Acosta, to assist in the review of Taylor's Rule 32 petition.  (Id., ¶ 12.)

618.   Acosta had been a Deputy Pima County Attorney since November 2003, where she served as a line prosecutor, a supervisor of the Property Crimes Unit, and an Operations Bureau Chief, and managed the Charging Unit and Arson caseloads. (Decl. of Malena Acosta, ¶ 2.)

619.   In her career, she had tried more than 60 jury trials, including more than a dozen arson/explosive cases.  (Id., ¶ 3.)

620.   From 2006 to 2021, she was a member and instructor for the Arizona Chapter of the International Association of Arson Investigators; from 2008 to 2021,

she was a member of the Southern Arizona Arson & Explosives Taskforce; and in 2008 and 2010, she was a recipient of the Bill Dickinson Arson Prosecutor of the Year Award.  (Id., ¶ 4.)

621.   At the outset of their review, Unklesbay met with County Attorney Barbara LaWall.  (Unklesbay Decl., ¶ 10.)

622.   Ms. LaWall instructed Unklesbay to advise her as soon as possible if he believed either that the fire was not arson or that Taylor was wrongfully convicted; if he believed either one, Ms. LaWall would have endeavored to exonerate Taylor.  (Id., ¶ 10.)

623.   Unklesbay was also fully prepared to pursue Taylor's exoneration if the evidence and his review showed that Taylor was wrongfully convicted.  (Id., ¶ 11.)

624.   Unklesbay had done that on several occasions for other individuals both before and after Taylor's Rule 32 petition.  (Id.)

625.   As part of his review, Unklesbay meticulously examined the Pima County Attorney's Office's prosecution file, including all juvenile, pretrial, trial, and post-trial transcripts.  (Id., ¶ 13.)

626.   That review (of thousands upon thousands of pages) took many weeks to complete.  (Id.)

627.   Unklesbay consulted with survivors and/or victims of the fire.  (Id., ¶ 16.)

628.   Unklesbay also requested that the Tucson Fire Department ("TFD") conduct another investigation into the Pioneer Hotel fire.  (Id., ¶ 15.)

629.   Acosta primarily focused on the arson aspect of Taylor's claims, but she also reviewed portions of Taylor's criminal prosecution file and several boxes of documents at TFD.  (Acosta Decl., ¶ 8.)

630.    Acosta also met with Cyrillis Holmes and conducted his deposition that was taken in conjunction with Taylor's Rule 32 proceeding on November 1, 2012. (Id., ¶ 9.)

631.    Unklesbay attended and/or reviewed Holmes' deposition.  (Unklesbay Decl., ¶ 14.)

632.    Holmes convincingly maintained that the Pioneer Hotel fire was arson, and he stood by his original findings, even in light of modern fire investigation advancements.  (Unklesbay Decl., ¶ 14; Acosta Decl., ¶ 9.)

633.    Holmes explained that an incendiary fire is one that his caused by non-accidental (deliberate) human action.  (R.T. 11/1/12, at 37.)

634.    Holmes explained that a fire is classified as "undetermined" when you cannot determine the point of origin and therefore cannot eliminate all the potential heat sources or conclude that one particular heat source was more likely than the others to cause the fire.  (Id.)

635.    Holmes testified that multiple points of origin could be evidence of an incendiary fire, but it is also possible that a fire with multiple points of origin was accidentally set or naturally caused (e.g., lightning).  (Id. at 37–39.)

636.    Holmes testified that, after reviewing his original report, his trial testimony, photographs, diagrams, and other evidence from the trial, it was still his opinion that there were at least two points of origin, and that the Hotel Pioneer fire was man-caused.  (Id. at 50–56.)

637.    Holmes testified that he does not believe that flashover occurred on the fourth floor.  (Id. at 60–61.)

638.    Holmes testified that nothing in the current research or methodologies changed his mind regarding his opinions, and that the cause-and-origin methodology he employed in 1970 is still acceptable today.  (Id. at 65.)

639.   Holmes testified that he was unaware of any prior arson allegations at the Hotel prior to formulating his opinions.  (Id. at 79–80.)

640.   Holmes testified that he had never seen the Truesdail Report.  (Id. at 134.)

641.   Unklesbay and Acosta also considered the ARC report.  (Unklesbay Decl., ¶ 20; Acosta Decl., ¶ 11.)

642.   Neither of them believed that it qualified as newly discovered evidence, rather it was merely a subjective reinterpretation of the evidence.  (Unklesbay Decl., ¶ 20; Acosta Decl., ¶ 12.)

643.   They also concluded that the Report was not credible: Unklesbay believed it was suspect because it ignored the fact that Smyth had opined at trial that the fire was arson, it erroneously stated that Taylor had been interrogated for 30 hours, and then it failed to explain any connection between Taylor's questioning and the two experts' findings of arson.  (Unklesbay Decl., ¶ 21.)

644.   The ARC's conclusion that, because there was only one point of origin the fire could not have been arson, was also perplexing to him; many intentionally set fires have only one point of origin.  (Id.)

645.   Acosta believed that the ARC report was biased and inaccurate, and that it was obvious that the authors did not review all material evidence.  (Acosta Decl., ¶ 11.)

646.   She did not agree with the ARC's conclusions, including its conclusions regarding cause, origin, and flashover.  (Id.)

647.   TFD concluded that a cause-of-fire determination was not possible largely due to the lack of available information.  (Unklesbay Decl., ¶ 15; Acosta Decl., ¶ 10; PC001611–001654.)

648.   After Unklesbay and Acosta concluded their review, and based on the evidence presented at trial, they were firmly convinced that Taylor was guilty of the crimes he was convicted of.  (Unklesbay Decl., ¶¶ 17–19; Acosta Decl., ¶¶ 13, 15.)

649.   Acosta also believed that Taylor fit the profile of an arsonist, based on his familiarity with the Pioneer Hotel, his actions after setting the fire, and his history of setting fires before and during his incarceration in the Arizona Department of Corrections.  (Acosta Decl., ¶ 14; PC038398–38399.)

650.   If either Unklesbay or Acosta had any doubt about Taylor's guilt, they would have recommended that he be fully exonerated, but they had no doubt that he was rightfully convicted by the jury.  (Unklesbay Decl., ¶ 19; Acosta Decl., ¶ 15.)

651.   On February 20, 2013, Unklesbay wrote a letter to Taylor's counsel, explaining that they had "considered the facts, the law and our ethical and moral duties" and that we were "very mindful of both our authority and our duty to the public and to Mr. Taylor. … We take our ethical duties seriously and do not hesitate to act when the facts so warrant."  (Unklesbay Decl., ¶¶ 28–31.)

652.   He further wrote: "Our decision with Mr. Taylor's case is that the new forensic evaluations of the arson evidence, both by Mr. Lentini and the Tucson Fire Department, do not exonerate Mr. Taylor and should not lead to a dismissal of his charges.  Neither examination precludes the possibility of arson and, unlike DNA, these new evaluations do not clear Mr. Taylor of criminal culpability.  If we had any doubt of that we would certainly and swiftly bring this case before the court for dismissal."  (Id.)

653.   He further wrote: "We are mindful of what our decision might be if a new trial should ultimately be granted, and the difficulties of such a presentation.  For that reason we still believe that a plea of no contest to time served on the charges in the conviction would be a just result.  That would, of course, result in Mr. Taylor's

release as soon as he could be brought from prison for entry of the plea.  However, we believe his conviction was proper.  At sentencing, Judge Hardy told Mr. Taylor that the trial was completely fair, but that the court believed your client did not intend the result that came about, meaning the deaths that resulted from the fire he started.  For much the same reasons as stated by the court, we are prepared to defend the conviction."  (Id.)

654.   He concluded by stating that the State had "solid legal and factual grounds, not technical ones, to argue that [Taylor's] petition should not be granted" and that "the verdict was just and must be defended."  (Id.)

655.   Despite their strongly held belief that Taylor failed to establish that he was entitled to Rule 32 relief on any basis, it was possible that the state criminal court could have disagreed and, after conducting an evidentiary hearing, vacated his 1972 convictions and set the matter for a new trial.  (Unklesbay Decl., ¶¶ 22–24; Acosta Decl., ¶¶ 16–18.)

656.   If that occurred, although not ideal, a new trial could have been conducted largely through reading in the original transcripts, re-admitting available photographs and other exhibits, and calling live witnesses, including the State's expert, Cyrillis Holmes, and those Hotel patrons and employees who were still alive.  (Id.)

657.   Unklesbay and Acosta would have, and were prepared to, retry Taylor if the state criminal court concluded that Taylor was entitled to a new trial.  (Id.)

658.   They believed there was not only probable cause to pursue a retrial but admissible proof beyond a reasonable doubt that Taylor committed an arson and started the Pioneer Hotel fire that killed 28 people.  (Unklesbay Decl., ¶ 35; Acosta Decl., ¶ 24.)

659.   They believed there was sufficient evidence (admissible proof beyond a reasonable doubt) to secure Taylor's conviction in a retrial—even without Robert

1   Jackson's testimony and even if Taylor introduced as evidence the Truesdail report,

2   the ARC report, and/or the TFD report.  (Unklesbay Decl., ¶¶ 36–37; Acosta Decl., ¶¶

3   25–26.)

4   660.   Nonetheless, to avoid the risk of a retrial and maintain the integrity of

5   the convictions, Unklesbay offered Taylor a no-contest plea, in which Taylor would

6   be convicted of the original 28 counts of first-degree murder and sentenced to time

7   served.  (Unklesbay Decl., ¶ 25; Acosta Decl., ¶ 19.)

8   661.   Acosta agreed with that decision, and it was approved by County

9   Attorney Barbara LaWall.  (Acosta Decl., ¶ 19.)

10   662.    In discussing and considering whether to offer that plea agreement, they

11   never consulted with PCAO's civil division, and they never considered Taylor's ability

12   to sue Pima County for damages or any civil liability or financial impact that may

13   ensue.  (Unklesbay Decl., ¶ 26; Acosta Decl., ¶ 20.)

14   663.   The plea was not offered to avoid a civil damages judgment and avoiding

15   a civil damages judgment was never a motivation or even a consideration.  (Id.)

16   664.   In offering the no-contest plea, Unklesbay and Acosta complied with all

17   ethical and constitutional standards.  (Unklesbay Decl., ¶ 35; Acosta Decl., ¶ 23.)

18   665.   Taylor initially rejected the plea offer, but then he ultimately accepted it.

19   (Unklesbay Decl., ¶ 32; Acosta Decl., ¶ 21; PC001656; SMYTH000046–000050.)

20   666.   Indeed, Taylor faced the prospect of the state criminal court denying his

21   Rule 32 petition.  (Unklesbay Decl., ¶ 32.)

22   667.   At the time, there was very little precedent on whether the ARC's

23   conclusions constituted newly discovered evidence, and the outcome was uncertain.

24   (Id.)

25   668.   In his April 1, 2013 Memorandum, Unklesbay offered the testimony

cited therein to support a judicial finding that sufficient evidence existed to accept the

plea, and he asked the state criminal court to accept the plea "to maintain the integrity of the defendant's conviction, and based on the evidence presented." (Unklesbay Decl., ¶ 33.)

669.    On April 2, 2013, the Honorable Richard Fields held a change of plea hearing. (Dkt. 6-1 at 27–52.)

670.    At the hearing, Unklesbay reiterated that, despite the ARC report, "there is significant other evidence to show, in fact, that an arson did occur on December 20, 1970" and that "it is the State's belief, based on the trial testimony, and much of it that [he] cited in the memorandum, the evidence showed that Mr. Taylor was, in fact, guilty of these crimes." (Dkt. 6-2 at 2–10, 47–48.)

671.    Taylor's counsel then conceded that "the prosecution would be able to offer into evidence information as [the prosecutor] has described it," and that Taylor "[did not] contest the State's ability or its willingness to make that offer at a trial." (Id. at 48.)

672.    On that record, the state criminal court found a sufficient factual basis to support the convictions (it incorporated PCAO's Memorandum into the plea) and stated that it was "in the interest of justice to accept the plea in achieving finality of these proceedings." (Id.)

673.    Taylor stated on the record that he reviewed the plea agreement with his team of criminal defense attorneys, that he understood the agreement and its consequences, and that no one threatened or forced him to agree to the plea. (Id. at 38–41.)

674.    The plea agreement itself, which Taylor and his criminal defense team signed, acknowledged that Taylor was "satisfied that [his] defense attorney ha[d] represented [him] in a competent manner," that the plea was "not the result of force, threats, assurances or promises other than those contained in this agreement," that

Taylor voluntarily accepted the plea, and that Taylor's criminal defense team "advised [Taylor] in all matters" and believed it was "in the best interests" of Taylor.  (Id. at 8–10.)

675.    Unklesbay also agreed that the plea was "appropriate and in the interests of justice."  (Id. at 10.)

676.    Taylor stated that he understood that by entering into the plea, he was waiving his right to a jury trial and to file a direct appeal.  (Id. at 40–41.)

677.    Taylor pleaded no contest to each of the 28 counts of murder.  (Id. at 41–46.)

678.    Taylor executed his plea agreement.  (Id. at 2–10.)

679.    He was released from prison that same day.  (Id. at 11–25.)

680.    The no-contest plea was in no way coerced.  (Unklesbay Decl., ¶ 38; Acosta Decl., ¶ 22.)

681.    Unklesbay has always believed that there was sufficient admissible evidence to prove beyond a reasonable doubt at any retrial that Taylor was guilty of arson and first-degree murder, and he would have retried Taylor had he not accepted the plea agreement and the state criminal court ordered a new trial.  (Id., ¶ 39.)

682.    Unklesbay's belief and his intentions are supported by his February 20, 2013 letter, the entirety of the April 1, 2013 Memorandum, and both his statements and Taylor's counsel's statements at the April 2, 2013 plea hearing.  (Id.)

683.     Jack Chin agrees there is not clear and convincing evidence of Taylor's innocence.  (Dkt. 838, ¶ 39.)

684.    Jack Chin agrees that, in 2013, under the proper standard, there was evidence supporting every element of Taylor's convictions beyond a reasonable doubt. (Dkt. 838, ¶¶ 59–60.)

685.   Laura Conover does not agree with the assertion that "no reasonable factfinder could find every element of the offense of arson or felony murder beyond a reasonable doubt." (Dkt. 838, ¶ 71.)

686.   Jack Chin agrees that Taylor's criminal counsel "stipulat[ed] that there was sufficient evidence" to retry him and secure a guilty verdict if a retrial had been ordered in 2013. (Dkt. 838, ¶ 76.)

687.   Laura Conover referred to PCAO's remarks in its April 1, 2013 Memorandum of Stipulated Finding on Post-Conviction Relief and Settlement Agreement ("unable to proceed with a retrial") as "off-the-cuff remarks," and she testified that she could not say that she would not have offered Taylor the no-contest plea.  (Dkt. 838, ¶ 77.)

688.   Laura Conover admitted that Unklesbay's remarks during the April 2, 2023 plea hearing and in his February 20, 2013 Letter support Unklesbay's belief that he could have and would have retried Taylor's case in 2013 if necessary.  (Dkt. 838, ¶ 78.)

689.   Neither Laura Conover nor Jack Chin could or would say that Taylor was innocent.  (Dkt. 838, ¶¶ 83–84.)

690.   Neither Laura Conover nor Jack Chin believe that PCAO offered the 2013 no-contest plea to protect Pima County from civil liability.  (Dkt. 838, ¶ 40.)

691.   Jack Chin does not believe it was unethical for Unklesbay to offer the no-contest plea; rather, he believes it was a difficult "dilemma," a "litigable issue," and not a "completely black and white question."  (Dkt. 838, ¶¶ 74–75.)

692.   Jack Chin did not find "a shred" of evidence that PCAO's conduct in offering the no-contest plea was "improperly influenced."  (Dkt. 838, ¶ 81.)

693.    Jack Chin did not find "any evidence one way or another whether [PCAO's decision to offer the no-contest plea] was motivated by protecting the county's civil financial interests."  (Dkt. 838, ¶ 79.)

694.    Laura Conover did not find any evidence that Taylor was coerced into taking the no-contest plea, and she agreed that Taylor could have rejected the 2013 plea offer and that his criminal counsel "[m]ost assuredly" was competent.  (Dkt. 838, ¶ 82.)

695.    Defendants took Taylor's deposition in this civil matter on September 30, 2021.  (R.T. 9/30/21.)

696.    Taylor testified that his mother is Mexican American, and his dad is African American.  (Id. at 62.)

697.    Taylor testified that he has no mental health issues and that he has never been diagnosed with any mental illness.  (Id. at 22–23.)

Taylor's Contention: Taylor testified that he has never received mental health treatment, and that he was not aware that psychiatrists had diagnosed him as having antisocial personality disorder and recently Mavis Donnelly, M.D. has also diagnosed Mr. Taylor with mental conditions.

698.    Taylor admitted that he faked epileptic seizures when he was younger.  (Id. at 27–28.)

Taylor's Contention: Taylor testified that "sometimes [he] told them that [he] did fake seizures to get out of "Fort Grant." (28).

699.    Taylor testified that he knew there was going to be a party at the Pioneer Hotel on December 20, 1970.  (Id. at 29.)

700.    Taylor testified that, on December 19, 1970, he went to Mike Tatum's house and that Mike was at the house.  (Id. at 31.)

701.   Taylor testified that he was at the pool hall hustling people when he heard sirens.  (Id. at 32–33.)

702.   When he looked outside, he saw ambulances and fire trucks going towards the Pioneer Hotel, and he decided to follow them.  (Id. at 33.)

703.   Taylor testified that, when he arrived at the Hotel, he heard people saying that they had called the fire department and he could hear people screaming from the upper floors and smelled smoke.  (Id. at 34–37, 39.)

704.   Taylor testified that he "went to the corner and [he] pulled this lever down" to call the fire department (an alarm), and then he crossed the street when an officer pulled up and asked him if he spoke Spanish and knew his way around the Hotel.  (Id. at 34–37.)

705.   Taylor testified that he was "really familiar" with the Hotel's layout.  (Id. at 190.)

706.   Taylor testified that, because he spoke Spanish and knew his way around the Hotel, he went inside with the officer.  (Id.)

707.   Taylor testified that that was the first time he stepped foot inside the Hotel.  (Id. at 37–38.)

708.   Taylor testified that he and the officer went up to the sixth or seventh floor and started banging on doors.  (Id. at 38.)

709.   Taylor testified that they continued to work their way down to the second or third floor, helping people out of their rooms and onto the elevator.  (Id. at 38, 40.)

710.   Taylor testified that he did not see any fire in the stairwells but did see fire on the third and fourth floors and "all over the place on the upper floors."  (Id. at 40.)

711.   Taylor testified that the officer who he was with kept asking him, "where did [you] start helping," and Taylor told him that he "came from the front and went in through the front door."  (Id. at 43.)

712.   Taylor admitted that he told someone at the police station that he had seen "some guys fighting in the stairwell," but that his statement was a lie.  (Id. at 55–58.)

713.   Taylor admitted that he went to the Pioneer Hotel with matches.  (Id. at 68.)

714.   Taylor denied ever encountering either Wallmark or Jackson at the Pima County Juvenile Court Center.  (Id. at 84–85.)

715.   When asked if he thought he was going to be acquitted, Taylor testified, "Well, I was hoping I would win."  (Id. at 90.)

716.   Taylor testified that he wanted to testify at trial.  (Id. at 205.)

717.   Taylor admitted that he "wasn't no angel or nothing like that" while he was incarcerated.  (Id. at 93.)

718.   Taylor admitted to setting his pillow on fire when he was in prison.  (R.T. 9/30/21, at 80–81; PC038398–038399.)

719.   Taylor admitted that he was found guilty of sexually assaulting a male inmate while in prison (inserting his finger into another inmate's rectum against his will).  (Id. at 93–95.)

720.   Taylor testified that he wanted to take the 2013 plea deal and get out of prison as opposed to having a new trial.  (Id. at 221–222.)

721.   Taylor testified that he does not regret taking the plea because he "didn't want to stay another minute, another hour, another day. … I wasn't thinking about money.  I wanted my freedom. … that's the fastest way to get out."  (Id. at 222.)

722.   Taylor admitted to robbing a hotel night clerk with a baseball bat in June 2017.  (Id. at 170.)

723.   Taylor testified that, at the time of that robbery, he was drunk and on drugs ("Meth, wee, everything.").  (Id. at 170–171.)

724.   Taylor admitted that he pleaded guilty to attempted robbery and in exchange the State dropped the kidnapping and armed robbery charges.  (R.T. 9/30/21, at 174; PC061184–061219.)

725.   As a result, Taylor was sentenced to prison (and released in January 2020).  (Id. at 174–175.)

726.   Taylor took Kashman's deposition in this civil matter on September 9, 2021.  (Dkt. 271.)

727.   Kashman believes that Judge Hardy was "fair throughout the trial."  (Id. at 155.)

728.   Kashman testified that Taylor's inconsistent statements were the "primary evidence" of Taylor's guilt and were "devastating" to his defense.  (Id. at 28, 93.)

729.   Kashman agrees that Taylor's many inconsistent statements were "tantamount to a confession" and "very incriminating."  (Id. at 113–114.)

730.   Kashman agrees that Taylor "had to be lying about some of" his statements to police.  (Id. at 168.)

731.   Kashman agrees that the fact that Taylor had 5 packs of matches on him was a "difficult fact" to overcome at trial.  (Id. at 114.)

732.   Kashman agrees that Taylor "didn't do very well" on the stand.  (Id. at 121.)

733.    Kashman admitted that, because nobody smelled any accelerant on Taylor or found any accelerant on him, he wanted to show that the fire was caused by an accelerant to differentiate it from the State's case.  (Id. at 87–88.)

734.    Kashman hired Smyth after the preliminary hearing.  (Id. at 139–140.)

735.    Kashman testified that "Tucson didn't have a whole lot of fire investigators that weren't part of the fire department" in 1970 and 1971.  (Id. at 144.)

736.    Kashman testified that he did not know that Smyth had been hired by Home Insurance.  (Id. at 144–145, 170–171.)

737.    Kashman testified that he thought that Holmes testified that an accelerant was used to ignite the fire.  (Id. at 74, 80.)

738.    Kashman admitted that the Truesdail Report is inconsistent with Smyth's opinion.  (Id. at 88.)

739.    Kashman testified that he knew that Leonard Everett represented Home Insurance Company.  (Id. at 140.)

740.    Kashman testified that he did not recall discussing the Pioneer Hotel fire with Everett or requesting any reports from him.  (Id. at 75.)

741.    Kashman admitted that he had subpoena power and that he did not subpoena any reports.  (Id. at 147–149.)

742.    Kashman admitted that he never moved for material in Everett's possession, including any expert reports.  (Id. at 150.)

743.    Kashman testified that he has no specific knowledge that the Pima County Attorney's Office ever had the Truesdail Report.  (Id. at 79.)

744.    Kashman agrees that the prosecution had no obligation to turn over exculpatory information that was in the possession of a third party.  (Id. at 180–181.)

745.   Kashman agrees that, if he knew that the Truesdail Report (or some other report) existed, he had an obligation to obtain it through court process or otherwise. (Id. at 181–182.)

746.   Kashman testified that, in 1972, "there really was no criminal disclosure." (Id. at 151–152.)

747.   Kashman testified that he had no obligation to disclose his witnesses or expert opinions to the State. (Id. at 154–155.)

748.   Kashman testified that, in response to Kashman's request for exculpatory evidence, Judge Richey reviewed everything and ordered one photograph to be turned over. (Id. at 23–24.)

749.   Kashman believed that Jackson and Wallmark were rebuttal witnesses. (Id. at 89–90.)

750.   Kashman did not recall Larry Kern's or Lawrence Estrada's testimony. (Id. at 91.)

751.   Kashman did not recall Taylor's statement to Scoggins. (Id. at 91–93.)

752.   Kashman did not remember Taylor's statement, "Why would anybody start a fire like that? (Id. at 93.)

753.   When asked if Kashman advised Taylor about whether to take the 2013 plea, Kashman responded, "Unfortunately, no." (Id. at 56.)

754.   Kashman testified that he would have advised Taylor to proceed with his Rule 32 petition for post-conviction relief. (Id. at 58.)

755.   Kashman testified that Taylor's 2012 attorneys told him that there was authority to support a claim for damages notwithstanding his no contest plea. (Id. at 174.)

756.   On December 20, 1970, at approximately 7:15 a.m., Taylor voluntarily took a polygraph test, and, during that test, he admitted to the examiner to starting fires

in the past, including garbage cans and Christmas trees, and instead of denying starting the Pioneer Hotel fire, he kept repeating, "I wouldn't kill no one."  (PC036102–036103.)

757.    Taylor also admitted that, while he was in the Hotel, he stole food and beverage.  (Id.)

758.    The polygraph examination was "INCONCLUSIVE."  (Id.)

759.    On August 30, 1971, Larry Kern gave police a statement, in which he stated that Taylor would "burn rolls of toilet paper" while at the Pima County Juvenile Court Center.  (COT2339–2340.)

760.    On July 2, 1971, Kashman made a request for any information that could benefit Taylor, including any statements from "insurance companies … that has fallen in the hands of the Prosecutor."  (R.T. 7/2, 6, 8/71 (Vol. VI), at 524–525, 569–570, 574.)

761.    Judge Marks asked Dingeldine if there was "anything you know of in your file which would exculpate the defendant in any way."  (Id. at 526.)

762.    Dingeldine said, "I know of nothing," and offered to give the court all his files.  (Id. at 527–528.)

763.    Dingeldine also said, "I have hidden nothing that could be attributed to another person."  (Id. at 529.)

764.    Judge Marks later asked Dingeldine again if he had "any evidence favorable to the accused which is available."  (Id. at 581–582.)

765.    Dingeldine stated: "No, I do not."  (Id. at 582.)

766.    On August 13, 1971, Taylor filed a Motion for Disclosure by Prosecutor.  (PC061141–061146.)

767.   In that Motion, Taylor requested, among other things, "[a]ny reports by fire or arson investigators that indicate that the Pioneer Hotel fire of December 20, 1970, was not man-caused or had only one point of area of origin."  (Id.)

768.   At a September 7, 1971 hearing on Taylor's Motion for Disclosure, Kashman acknowledged that there were 17 civil suits pending against the Pioneer Hotel and that "the liability of the Pioneer Hotel hinges in part on the factual matters and conclusions of this criminal case, in that the question of arson as an intervening cause to some liability aspects of the Pioneer, and the carpet manufacturers, and various defendants, in those cases and cross-defendants and third party defendants." (R.T. 9/7/71, at 22.)

769.   Kashman also acknowledged that there had been four different fire investigations.  (Id. at 70.)

770.   Kashman stated: "I know that the hotel insurance company interviewed twenty-some odd people.  The attorney for the hotel will not release these things to me. … The insurance company's attorney representing the Pioneer will not furnish these things to me.  I think if they are in the possession of the prosecutor that I am entitled to them."  (Id. at 60.)

771.   Kashman further stated: "I want to know if the prosecutor has any other experts' reports or other investigators' reports that might either be in conflict with or dispute entirely the report of Mr. Holmes and Capt. Gilmore from the local fire department. I don't know if they exist, but experts do tend to vary in their opinions, and I would like to know that.  I will avow that I have contacted the attorney for the insurance company for the hotel and it was not allowed, and I think he is probably justified, but I was not permitted to have access to or copies of the experts that were called in at their request.  I don't know whether those reports have been furnished the police department or Mr. Weiss or not, but if they have, I would like them.  I do know

that the attorney handling the case for the Home Insurance Company said that there was one expert who found one area, and although he concluded it was arson, it nonetheless differed from the Home report.  If those are available, I would like them."  (Id. at 70–71.)

772.   On September 22, 1971, Judge Richey ordered Weiss to provide the Court items responsive to 1 through 14, after which she would review in camera and give whatever she determined to be exculpatory to Taylor.  (R.T. 9/22/71, at 8–14; PC003332.)

773.   On September 27, 1971, Weiss submitted all responsive documents (but photographs/video) to the court as ordered.  (R.T. 9/27/71, at 17–19; PC003871–003925.)

774.   In response to Taylor's request for other fire investigation reports that indicated that the fire was not man-caused or had only one point of origin, Weiss stated he had "[n]one."  (PC061147–061148.)

775.   On September 30, 1971, the State furnished to Kashman a list of witnesses and their addresses.  (TAYLOR010799–010805.)

776.   That witness list included Glenn Miller and C.A. Crutchfield.  (TAYLOR10804.)

Taylor's Contention: The witness list furnished to Kashman included around 650 witnesses in addition to Glenn Miller and C.A. Crutchfield.

777.   On October 5, 1971, Judge Richey ruled that, other than statements from seven individuals, "[n]o additional evidence was found by the Court in the statements and materials submitted which in the Court's opinion would be favorable to the Defendant."  (PC003321–003322.)

778.   On October 26, 1971, Judge Hardy noted that nothing in his experience with Weiss gives him reason not to believe what Weiss says.  (R.T. 10/26/71 at 118.)

779.   On February 17, 1972, Weiss stated that "Kashman has all the reports that I have."  (R.T. 2/17/72 (Vol. 15) at 167–176.)

780.   At his September 2012 deposition, Smyth testified that he was originally contacted by Home Insurance Company's third-party adjuster, General Adjustment bureau, on December 21, 1970, to investigate the fire on behalf of Home Insurance, which insured the Pioneer Hotel.  (R.T. 9/21/12, at 8, 10.)

781.   At his September 2012 deposition, Smyth testified that Leonard Everett was, indirectly, his employer for purposes of the civil investigation and trial.  (Id. at 52.)

782.   At his September 2012 deposition, Smyth testified that Home Insurance Company was seeking to "limit their liability."  (Id. at 82.)

783.   At his September 2012 deposition, Smyth testified that he knew that Glenn Miller was also hired by Home Insurance Company to conduct an investigation into the fire.  (Id. at 85.)

784.   At his September 2012 deposition, Smyth testified that he "ran into" Miller in the Pioneer Hotel on December 23, 1970, when he was taking samples.  (Id. at 85, 115–116.)

785.   At his September 2012 deposition, Smyth testified that he had a telephone conversation with the Truesdail Lab on December 28, 1970.  (Id. at 115–116.)

786.   Smyth's fire investigation chronology also states that he had a telephone conversation with Truesdail Laboratories on December 28, 1970. (TAYLOR009956–009957.)

787.   On January 15, 1971, Smyth sent Everett a letter providing an update on the progress of his investigation.  (COT0000910–0000912.)

788.   In his January 15, 1971 letter to Everett, Smyth suggested that his investigation remain independent from the City's and Miller's.  (Id. at 93–94.)

789.   Smyth prepared a Fire Investigation Report-Preliminary, which is dated February 8, 1971.  (COT000913–000922.)

790.   In that preliminary report, Smyth noted that samples of the carpet had been taken for accelerant testing.  (COT0000921.)

791.   Smyth submitted his February 1971 preliminary report to Home Insurance Company.  (R.T. 9/21/12, at 88–89.)

792.   Smyth sent his final May 20, 1971 report to Everett.  (COT000929–000949.)

793.   In that final report, Smyth noted that no flammable liquids or containers of liquid were found in the Hotel.  (COT000930.)

794.   Taylor's statements to police were voluntary.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

795.   Taylor's Miranda rights were not violated.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

796.   Police had probable cause to arrest Taylor for arson and first-degree murder.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

797.   The State had probable cause to try Taylor for arson and first-degree murder.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

798.   The State did not fail to disclose any Brady material prior to Taylor's 1972 trial.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

799.    The State did not have the Truesdail Report in its possession, nor was it aware of its contents, prior to trial.

Taylor's contention: The State, through the City of Tucson, if not others, possessed the Truesdail Report, was aware of its contents, and had an obligation to disclose it.

800.    The Truesdail Report is not exculpatory, favorable, or material information.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

801.    Taylor's defense team either had the Truesdail Report or knew its contents prior to trial.

Taylor's contention: Taylor only knew that a report may have been commissioned but did not know of its contents.

802.    Taylor's defense team had access to the Truesdail Report prior to trial.

Taylor's contention: Taylor did not have access to the Truesdail Report prior to trial because Defendants concealed it and refused to disclose it, despite a request.

803.    The State was not aware of Cy Holmes' "profiling" testimony prior to trial.

Taylor's contention: Holmes told a meeting with City of Tucson Officials, and possibility others, of his racist beliefs and how they informed his opinions prior to trial.

804.    Cy Holmes' "profiling" testimony was not exculpatory, favorable, or material information.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

805.    The State did not engage in prosecutorial misconduct during Taylor's 1972 prosecution.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

806.   The State's alleged conduct during Taylor's 1972 prosecution did not increase the prejudice allegedly arising from Taylor's alleged Brady violations.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

807.   The 1972 testimony of Robert Jackson and Bruce Wallmark was not false.

Taylor's contention: Their testimony was false and coerced by Defendants.

808.   The State did not coerce false testimony from Jackson or Wallmark.

Taylor's contention: Their testimony was false and coerced by Defendants.

809.   The State did not offer or secure any non-prosecution agreements with either Jackson or Wallmark.

Taylor's contention: Defendants made promises to drop charges against Wallmark, and other promises and threats to coerce them to testify falsely.

810.   The State was not involved in any conspiracy to deprive Taylor of his constitutional rights, either before, during, or after Taylor's 1972 trial.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

811.   Pima County was not involved in any conspiracy to deprive Taylor of his constitutional rights, either before, during, or after Taylor's 1972 trial.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

812.   At the time of Taylor's 1972, prosecution, Pima County (or the Pima County Attorney's Office) did not fail to train deputy county attorneys prosecuting on behalf of the State, as alleged in Taylor's Third Amended Complaint

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

813.   At the time of Taylor's 1972 prosecution, Pima County (or the Pima County Attorney's Office) did not fail to supervise deputy county attorneys prosecuting on behalf of the State, as alleged in Taylor's Third Amended Complaint

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

814.   At the time of Taylor's 1972 prosecution, Pima County (or the Pima County Attorney's Office) did not have a custom, practice, or policy of prosecutorial misconduct or failing to terminate deputy county attorneys prosecuting on behalf of the State, as alleged in Taylor's Third Amended Complaint.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

815.   At the time of Taylor's 1972 prosecution, Pima County (or the Pima County Attorney's Office) was not deliberately indifferent to the constitutional rights of criminal defendants, either through its training, supervision, or termination of deputy county attorneys prosecuting on behalf of the State or its customs, practices, or policies regarding deputy county attorneys prosecuting on behalf of the State, as alleged in Taylor's Third Amended Complaint.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

816.   At the time of Taylor's 1972 prosecution, Pima County (or the Pima County Attorney's Office) was not deliberately indifferent to the risk that a failure to train, supervise, and/or terminate deputy county attorneys prosecuting on behalf of the State, including Horton Weiss, would result in a violation of the constitutional rights of criminal defendants, as alleged in Taylor's Third Amended Complaint.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

817.   At the time of Taylor's 1972 prosecution, Pima County (or the Pima County Attorney's Office) was not deliberately indifferent to a custom, practice, or policy regarding deputy county attorneys prosecuting on behalf of the State, as alleged in Taylor's Third Amended Complaint.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

818.   At the time of Taylor's 1972 prosecution, Pima County's (or the Pima County Attorney's Office's) training, supervision, and termination of deputy county attorneys prosecuting on behalf of the State, and its customs, practices, and policies of

regarding prosecutions on behalf of the State did not cause a violation of Taylor's constitutional rights.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

819.    The State did not act unethically or unconstitutionally in offering Taylor a no-contest plea in 2013.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

820.    The State did not consider, nor was it motivated by, Pima County's financial interests when it offered the 2013 no-contest plea.

Taylor's contention: the PCAO was motivated by protecting the County's and City's financial interests when it demanded Taylor plea no-contest in 2013 or remain imprisoned while the PCAO litigated his case "all the way to the Supreme Court."

821.    Laura Conover did not attend the August 2, 2022 Executive Session. (Dkt. 838, ¶ 106.)

Taylor's contention: The County has claimed privilege to preclude Taylor from discovering who was present at the August 2, 2022 Executive Session, leaving Taylor with no means to refute this assertion. The County should be prohibited from offering any such evidence and an adverse inference should be drawn.

822.    Laura Conover's 2022 decision not to take action in Taylor's criminal matter was not the result of any influence or threat by Pima County or its counsel.

Taylor's contention: To protect its financial interest, the County impermissibly threatened or otherwise influenced Conover to reverse course and not vacate Taylor's conviction. The County has claimed privilege to preclude Taylor from discovering any details about the August 2, 2022 Executive Session, and the County should be prohibited from offering any such evidence and an adverse inference should be drawn. The County has also prevented discovery of numerous communications between the

County's outside counsel, Laura Conover, and her ethics counsel during the relevant period.

823.   Laura Conover's 2022 decision not to take action in Taylor's criminal matter was not influenced by Pima County's financial considerations.

Taylor's contention: To protect its financial interest, the County impermissibly threatened or otherwise influenced Conover to reverse course and not vacate Taylor's conviction. The County has claimed privilege to preclude Taylor from discovering any details about the August 2, 2022 Executive Session, and the County should be prohibited from offering any such evidence and an adverse inference should be drawn. The County has also prevented discovery of numerous communications between the County's outside counsel, Laura Conover, and her ethics counsel during the relevant period.

824.   Laura Conover's 2022 decision not to take action in Taylor's criminal matter was based solely on her evaluation of the legal merits of the draft motion to vacate and existing Arizona law.

Taylor's contention: To protect its financial interest, the County impermissibly threatened or otherwise influenced Conover to reverse course and not vacate Taylor's conviction. The County has claimed privilege to preclude Taylor from discovering any details about the August 2, 2022 Executive Session, and the County should be prohibited from offering any such evidence and an adverse inference should be drawn. The County has also prevented discovery of numerous communications between the County's outside counsel, Laura Conover, and her ethics counsel during the relevant period.

**Defendant City of Tucson's issues of fact:**[10]

Taylor's general contention: Taylor objects to the inclusion of immaterial facts that are not to be decided by the trial of fact and/or are irrelevant. Due to the inclusion of 824 separate factual contentions by Defendant Pima County, and 207 by Defendant City of Tucson, Taylor cannot meaningfully respond to each and every contention, and therefore, unless otherwise stated, does not admit that any contention is undisputed. Taylor incorporates his statement of contested facts to his contentions to the City's Issues of Facts.

Additionally, Taylor contends that the court documents, trial testimony, and other evidence on which the City bases its contentions speak for themselves, and Taylor does not adopt the City's summary of them as accurate or complete, nor does Taylor admit that they are admissible unless otherwise stated in Taylor's objections to the exhibits listed in Part F. Prior state court and habeas rulings are not binding. Where the City asserts certain evidentiary matters were admitted or conceded in prior proceedings, they are not binding and Taylor does not admit those matters now. Further, each contention based on prior testimony or statements are hearsay. Moreover, where the City summarizes or quotes testimony, exhibits, rulings, or other occurrences from various hearings and trial, it is unclear whether the City has listed them because it is "contested" whether that testimony was given, or are asserting the truth of the matter asserted.

Unless specifically stated that Taylor does not contest a listed factual issue, Taylor disputes that each fact can be established at trial.

---

[10] Defendant Pima County joins in Defendant City of Tucson's issues of fact.

Taylor contends that all Defendants' factual contentions citing to the prior record are hearsay and there is no exception under Rule 804(b)(1) because Taylor did not have an opportunity to meaningfully develop the testimony by direct, cross-, or redirect examination. This contention is incorporated into all such citations appearing below.

1. The City contends: On March 21, 1972, the jury returned its verdict finding Taylor "guilty of 28 counts of murder in the first degree and set the penalty at life imprisonment."

Taylor contends: these convictions have been vacated.

2. The City contends: Taylor sought relief in his criminal case as follows:

Direct Appeals:

*State v. Taylor*, 112 Ariz. 68, 537 P.2d 938 (1975) (conviction affirmed), *cert denied, Taylor v. Arizona,* 424 U.S. 921 (1976)

Previous Rule 32 Proceedings:

*State v. Taylor,* No. CR-69983 (Maricopa County Superior Court, filed Dec. 31, 1984) (petition denied)

Habeas Corpus or Other Petitions in Federal Court:

*Taylor v. Cardwell,* No. CIV 76-734 PHX (D. Ariz., filed October 8, 1976) (petition denied)

*Taylor v. Cardwell,* 579 F.2d 1380 (9th Cir. 1978) (convictions vacated, remanded to district court for evidentiary hearing on voluntariness of statements to police) *Taylor v. Cardwell,* No. CIV 78-277. TUC (D. Ariz., on remand from 579 F.2d 1380) (petition denied)

*Taylor v. Cardwell,* --- Fed.Appx. --- (9th Cir. 1982) (convictions reversed)

*Cardwell v. Taylor,* 461 U.S. 571 (1983) (Ninth Circuit decision reversed, convictions affirmed), *rehearing denied, Cardwell v. Taylor,* 463 U.S. 1236 (1983).

1       *Taylor v. Cardwell*, No. 81-5570 (9th Cir. Apr. 30, 1984) (final Ninth Circuit

2 ruling after remand from the United States Supreme Court).

3       Taylor contends: *Taylor v. Cardwell,* --- Fed.Appx. --- (9th Cir. 1982) found

4 that Taylor's arrest violated the Fourth Amendment and his in-custody statements

5 should have been precluded and his conviction vacated. It was reversed based on a

6 procedural rule prohibiting federal courts from hearing arguments related to evidence

7 admitted in violation of the Fourth Amendment in habeas cases.

8       3.    The City contends: On December 27, 1972, Taylor filed an Appellate

9 Opening Brief, which was an appeal of the Maricopa County Superior Court's denial

10 of his Motion for New Trial after he was convicted of 28 counts of murder.

11       4.    The City contends: Taylor did not challenge whether the fire was caused

12 by arson. Instead, he stated the following:

13       "Although there may have been probable cause to believe that arson was the

14 cause of the hotel fire, there was no evidence to show any criminal agency by

15 Appellant."

16       Taylor contends: At the time of the appeal and post-conviction proceedings,

17 Taylor was without crucial evidence, including the Truesdail Report, and still relied on

18 the inaccurate fire science investigation methods used in the 1970s.

19       5.    The City contends: Taylor challenged Robert Jackson and Bruce

20 Wallmark's credibility in his Opening Brief.

21       6.    The City contends: Taylor challenged the lower court's decision to allow

22 Taylor's statements to police officers into evidence at his criminal trial.

23       7.    The City contends: Taylor admitted in his Openign Brief that the

24 appellate court had previously considered (and ruled on) "one-phase of the issue of the

25 voluntariness statements Appellant made to the police in the early morning hours of

December 20, 1970 at the Tucson Police Department." *citing State v. Hardy*, 107 Ariz. 583, 491 P.2d 17 (1971).

8.    The City contends: Taylor asked that Taylor's statements be determined to be involuntary and a ruling that they should have been excluded from his criminal trial.

9.    The City contends: Taylor's Opening Brief challenged Judge Hardy's decision to allow the State to  re-open its case in chief and introduce the testimony of Robert Jackson.

10.    The City contends: Taylor's Opening Brief challenged the denial of his Motion for New Trial dated April 21, 1972 (filed in Supreme Court) based on newly discovered evidence.

11.    The City contends: Taylor presented Robert Jackson's post-trial affidavit to the appellate court and argued that both Bruce Wallmark and Robert Jackson lied to the jury.

12.    The City contends: Taylor also alleged that "more undue influence and misconduct by Mr. Weiss and Mr. Angeley was exerted against defense witnesses resulting in intimidation and subornation of further perjury."

13.    The City contends: On May 1, 1985, Maricopa County Superior Court denied Taylor's Petition for Post-Conviction Relief ruling as follows:

"That, in light of the action taken by the United States Supreme Court in this matter, the findings of the Ninth Circuit Court of Appeals are not a binding determination by a higher court;

That the factual findings previously made by the Superior Court and appellate courts: in this matter under the Fifth Amendment effectively resolve the issue of "detention" under the Fourth Amendment; and

That, therefore, this Court is bound by these previous findings even though they predate *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed 2d 824 (1979. *See also*, *Hayes v. Florida*, __ U .S.__ (53 LW 4382, March 20, 1985).

Accordingly, IT IS ORDERED denying Petition for Post-Conviction Relief."

14.     The City contends: On June 26, 1985, the Maricopa County Superior Court

denied Taylor's Motion for Rehearing on the court's May 1, 1985, decision and ruled, in part, as follows:

"That the sole determination made by the Court in its Order of May 1, 1985 related to the *Dunaway* factual issue having been subsumed by the previous factual findings that the Defendant was a witness and not in custody when taken from the hotel to the police station."

15.     The City contends: On October 4, 1985, Taylor's Petition for Review of the Court's denial of his Petition for Post-Conviction Relief was denied.

16.     The City contends: Taylor agreed to the factual basis for his plea in 2013, as set forth in the State's "Memorandum in Support of Stipulated Finding on Post-Conviction Relief and Plea Agreement" (hereafter "Memorandum"), filed on April 1, 2013.

Taylor contends: The plea was coerced and offered to create a *Heck* bar and protect the County's financial interest, and Taylor did not agree to the factual basis by pleading no-contest. As admitted by Rick Unklesbay, there was insufficient evidence to convict Taylor.

17.     The City contends: There is an entire section in the Memorandum that addresses the Tucson Police Department's ("TPD") officers' contact with Taylor at the hotel on the night of the subject fire, and later at the police station, and statements Taylor made to them.

18.     The City contends: A fact included in the Memorandum was:

"At trial both the State and the defense called experts who testified the fire was arson."

19.     The City contends: Another fact included in the Memorandum was:

"For some reason ARC all but ignored the expert called by the defense who had also testified at trial that the fire was intentionally set. ARC erroneously stated that the defendant was interrogated by the police for 30 hours (defendant was in police custody for 6 hours before being booked into juvenile) and then failed to explain any connection between defendant's questioning by the police and the two experts finding of arson."

20.     The City contends: The following was agreed to in the Memorandum:

"The legal question presented to the court today is whether a review of the original evidence using new advances and techniques in fire investigation is legally 'newly discovered evidence.' Although this question hasn't been addressed in Arizona, and it appears no Arizona court has ruled on the legal question of new arson techniques being 'newly discovered evidence,' at least one jurisdiction has determined that such advances in fire investigation techniques would constitute 'newly discovered evidence.' If that were the result in the instant case, the state of the evidence is such that the State would be unable to proceed with a retrial, and the convictions would not stand.

Pursuant to Rule 32 of the Rules of Criminal Procedure, the State concedes, in agreement with the conclusions of the ARC and TFD reports, and solely under the singular and unique facts of this particular case, that advances in fire science investigation constitute newly discovered evidence."

21.     The City contends: On December 21, 1970, Marshall Smyth was hired by Home Insurance Company (insurer of the Pioneer Hotel), through the General Adjustment Bureau, to investigate the Pioneer Hotel Fire.

22.     The City contends: Smyth testified about how he became involved in investigating the Pioneer Hotel fire at Taylor's criminal trial, and the insurance adjuster for the hotel contacted him on December 21, 1970, and he went to the hotel that same day.

23.     The City contends: Smyth testified that he spent 4 hours at the hotel on December 21, 1970.

24.     The City contends: Smyth testified that he returned to the hotel the next day on December 22, 1970.

25.     The City contends: Smyth testified about the samples he took from the hotel, and he said that these items were still preserved in storage. Smyth removed carpeting from the hotel on the first or second week of January, 1971.

26.     The City contends: Smyth testified that he spent sixty-eight hours inspecting and sifting through the debris of the fourth-floor hallway.

27.     The City contends: In Answers to Interrogatories in *Simon v. Pioneer Hotel Co.*, Pima County Civil Case No. 125881, received by the Co-Defendant City's Attorney [William Kimble of Lesher and Scruggs] on December 13, 1971 (COTMSJ0336-0385), the Pioneer Hotel admitted:

a.     That Pioneer Hotel's attorney [Leonard Everett of Everett and Bury, PC] retained Glenn [sic] Miller and Marshall Smyth to investigate the Pioneer Hotel fire;

b.     That any reports by Smyth or Miller went to Leonard Everett, and

c.     There is also a listing of specific reports sent to Everett by Smyth and Miller

Taylor contends: Pioneer Hotel's answers to interrogatories in a civil case are hearsay and not binding or otherwise imputable to Taylor, nor is any knowledge obtained by Smyth in his role as an expert for the Pioneer Hotel.

28.     The City contends: Smyth knew December 31, 1970, that Len Everett was the attorney for Home Insurance Company, and that all reports, communications, and bills were to go to Everett.

Taylor's contention: Smyth's actions and knowledge obtained while working as an expert for the Pioneer Hotel—which had an interest in a declaration that the fire was arson and therefore a conflict with Taylor—are not imputed to Taylor, whether such knowledge was obtained or actions taken before or after Taylor hired Smyth. This contention applies to all contentions based on Smyth's testimony, opinions, reports, or other documents.

29.     The City contends: Smyth knew that Glen Miller was also investigating the Pioneer Hotel fire. In a letter to Leonard Everett dated January 15, 1971 ("Progress Report #1"), Smyth states the following on page 1 regarding his activities on December 22, 1970:

Discussions were held with Captain Gilmore and Assistant Chief Slagel of the Tucson Fire Department, and with Mr. Glen Miller of California. It was agreed that it would be best that our investigations be conducted separately insofar as possible to insure a maximum of independent thought in arriving at conclusions.

30.     The City contends: Smyth's January 15, 1971 letter to Everett also states that on December 22, 1970 "[a] search was made for containers that could have been used for flammable liquids, but none were found."

31.     The City contends: Smyth was aware that on December 23, 1970, (TFD Captain) Lyn Gilmore and Glen Miller had removed floor debris samples from the

Pioneer Hotel (Smyth's Chronology entries in parentheses indicate actions by someone else).

32.    The City contends: Taylor's 2012 Petition for Post-Conviction Relief, at text page 20, specifically admits:

On December 23, 1970, TFD Captain Gilmore, assisted by Glen Miller, a private mechanical engineer, removed six samples of debris from the Pioneer Hotel (*See* Truesdail report at 1). These samples were sent to Truesdail Laboratories for testing to determine whether an accelerant had been used to start the fire.

33.    The City contends: Smyth knew at the time that Truesdail Laboratories was testing debris for accelerants. Smyth had begun to "[s]earch for lab to analyze residue" on the morning of December 28, 1970, just a week after the fire, and he had a "Telephone conversation to Truesdale [sic—misspelled by Smyth] lab" that same afternoon. (Chronology entries not in parentheses indicate actions by Marshall Smyth himself).

34.    The City contends: On January 15, 1971, Smyth confirmed to Everett that "initial contacts had been made with material testing laboratories on the west coast"—clearly referring to his contact with Truesdail Laboratories.

35.    The City contends: On February 8, 1971, Smyth's preliminary report to Everett referred, under the specific heading "Tests for Accelerants," to "tests currently being conducted on samples from other floor areas." Again, this was the Truesdail accelerant testing:

A sample of the carpet and pad ashes from a point directly over the center of the #1 charred spot previously mentioned has been retained. If tests currently being conducted on samples from other floor areas prove negative, it will be advisable to have this particular sample tested as a last resort in the effort to identify a specific accelerant.

36.     The City contends: On February 9, 1971, Kashman knew that "materials from the areas of origin" that "were collected by another investigator" "might have been submitted to a laboratory."

Taylor contends: Kashman specifically asked for all tests and reports that had been prepared and City and County deliberately withheld them, including the Truesdail Report, and Taylor had nether actual nor constructive knowledge of the Truesdail Report's existence.

37.     The City contends: On February 16, 1971, the Truesdail report was issued, showing the results of analysis of floor debris samples collected by Gilmore and Miller on December 23, 1970, with C.A. Crutchfield, Truesdail's Technical Director, as maker and Glenn Miller, who is also investigating the fire for Home Insurance along with Smyth, as recipient. No accelerant is found in the samples tested.

38.     The City contends: On February 19, 1971, the Truesdail report was stamped received by RJM Associates, Glen Miller's firm.

39.     The City contends: Kashman hired Smyth to assist with Taylor's defense after Taylor's preliminary hearing.

40.     The City contends: Taylor's nine-day preliminary hearing concluded on July 8, 1971.

41.     The City contends: Kashman called Glen Miller, seeking a copy of Miller's report before the criminal trial. Miller "told [Kashman] that I would be happy to send him a copy of my report on instructions from Mr. Everett or why didn't he just go and talk to Mr. Everett. And I didn't hear anymore from anybody."

42.     The City contends: Kashman contacted Len Everett and knew about the testing Home Insurance's expert did on an area of the hotel before Taylor's criminal trial, as well as about expert reports in Len Everett's possession. This is evident

because Kashman described that contact and his related knowledge at a hearing on September 7, 1971:

It is my understanding that at least four different experts, arson investigators, examined the scene at the Pioneer Hotel within 10 or 11 days after the fire…. I will avow that I have contacted the attorney for the insurance company for the hotel and it was not allowed, and I think he is probably justified, but I was not permitted to have access to or copies of the experts [sic] that were called in at their request. I don't know whether those reports have been furnished the [sic] police department or Mr. Weiss or not, but if they have, I would like them. I do know that the attorney handling the case for the Home Insurance Company said that there was one expert who found one area, and although he concluded it was arson, it nonetheless differed from the Home report. If those are available, I would like them.

Taylor contends: The County and City both had possession of the Truesdail report, or at least knew of its findings and conclusions, as demonstrated by the transcribed call between Miller and Gilmore.

43.    The City contends: On or about September 23, 1971, Horton Weiss provided Kashman a list of witnesses that included Glen Miller, the named recipient of the Truesdail report.

Taylor's Contention: The witness list furnished to Kashman included around 650 witnesses in addition to Glenn Miller and C.A. Crutchfield.

44.    The City contends: On or about September 30, 1971, Horton Weiss provided Kashman a list of witnesses that included both: (1) C.A. Crutchfield, the author of the Truesdail report (and his Truesdail Laboratories business address: 4101 N. Figueroa, Los Angeles, California); and (2) Glen Miller, the named recipient of the Truesdail report (with the address San Diego, California).

45.     The City contends: On February 8, 1971, in his "Fire Investigation Report—Preliminary" (Report No. 36-1), page 1, under "Basic Cause of the Fire," Section 3.2, Smyth states the following:

The basic cause of the fire is attributed to the ignition of a liquid fuel or accelerant saturating portions of the floor carpeting.

46.     The City contends: Kashman also cross-examined Holmes about his conclusion that no accelerant was used.

47.     The City contends: Kashman made it clear that there were several tests for determining accelerants, which Holmes did not perform, and Holmes testified during the probable cause hearing that he did not do the tests when he was investigating the fire because of the passage of the ten days since the fire.

Taylor's contention: Holmes applied junk science and unreliable methods, including using a pocketknife to measure char depth, and guessing the depth without the aid of any measuring device. Holmes was also motivated by racial biases and prejudices, which included the belief that Black people were more likely to start fires because it was a "tool" they were "familiar with." This belief led to his determination that the Pioneer Hotel fire was arson, and the suspect was a Black teenager after only a preliminary view of the hotel. Additionally, the parties have "no need to present the testimony of Holmes at trial for the purposes of proving that the Pioneer Hotel fire was arson or that Taylor started the fire." (Dkt. No. 869 at 19). This contention applies to all testimony citations and opinions of Cy Holmes.

48.     The City contends: Smyth testified that the fire did not originate from the vertical carpeting on the walls, and then Kashman specially asked him:

"Would that opinion be the same if someone had spread the accelerant on the vertical carpet and then ignited it?"

49.     The City contends: Smyth's response was that it would and then he proceeded to explain why.

50.     The City contends: Smyth was asked if he had "performed any tests on the carpet materials from the hotel in an effort to determine the manner in which the fire was or would have had to have been ignited" to which Smyth responded, "Well, I've run tests to determine the manner in which that carpet can be ignited."

51.     The City contends: Smyth testified that "the nature of these tests was to get some insight into what it took to get the floor carpet burning, and I made a series of different tests actually with this -- at this one point."

52.     The City contends: Kashman argued that Symth's testimony about "[t]he spread of the fire is significant in that without an accelerant this fire will just stop after it burns to about twelve or sixteen inches."

53.     The City contends: Kashman asked Smyth:

"From your tests and observations, do you have an opinion as to whether the fire in the area of origin as you've described it in the fourth floor was started without additional fuels other than carpet material?"

54.     The City contends: Smyth responded to the question posed above as follows:

"My opinion is that additional materials were required to ignite the carpet in this case."

55.     The City contends: Smyth elaborated on the answer above after Kashman asked him to, and Smyth also told the jury about the specific flammable liquids he used, which included lighter fluid, and how he assimilated similar conditions and performed the testing with the various accelerants at his home.

56.     The City contends: Included in Smyth's testimony referenced above was the following statement:

"when an accelerant, such as gasoline or lighter fluid, is spread on it the character of it-- the response is entirely different and the carpet starts to burn very violently and flames on a three foot sample like that will jump to three and four feet high."

57.    The City contends: When Weiss asked Smyth "can you give us the distance from the north wall to the northerly edge of this area of origin you talked about," Smyth responded as follows:

"My best estimate is that it extended to within about four feet of the end of that hall. Now, I'm talking about the presence of the accelerant when I say the origin. In other words, the extent of the accelerant I feel was ended, if you will, at a point approximately four feet from the end of the hall."

58.    The City contends: Smyth referred to "how far the accelerant extended," "the extent of the accelerant," and "that accelerant could have extended even beyond the archway" in his testimony to the jury.

59.    The City contends: Smyth also testified as follows:

"well, in my opinion the original -- the accelerant in that area could have been as large as we've described, from the four foot mark to the end of the hall -- or the end of the archway, or it could have been in a much more confined space within that envelope…It could -- it did not require complete saturation, if you will, of that area to produce these effects."

60.    The City contends: Weiss asked Smyth about his opinion regarding a point of origin and Smyth responded as follows:

"Let me put it in this context. In my opinion the outstanding physical evidence tells me that the north end of that fourth floor was subjected to an accelerant. Now, that accelerant in that area could have been ignited in a number of different ways and from

a number of different locations, so there are a large number of possibilities as to how that accelerant in the north end got going."

61.    The City contends: Smyth provided additional testimony to the jury about his tests with lighter fluid on the carpeting, which included the following testimony regarding the amount to time it took to ignite:

"Well, it's -- it's very rapid. It's just a matter of a few seconds. The lighter fluid ignites immediately when the match touches it, and then the carpet is ignited just a few seconds later."

62.    The City contends: On redirect Smyth testified as follows in response to Kashman's question:

"Q BY MR. KASHMAN: You have established there was an accelerant fire in the north end of the fourth floor?

A Yes."

63.    The City contends: Smyth also told the jury the following:

"All right. The physical evidence that I found in the hotel identified for me very clearly that an accelerant had been used in the north end in the dead end of the north end of the north-south hallway."

64.    The City contends: Smyth continued his answer to provide that "any number of ways in which that accelerant in that area could have been ignited," which included "a trail of accelerant" or "matches thrown into the area [of the accelerant]," and he said "I found no specific evidence as to the specific manner in which ignition actually occurred."

65.    The City contends: Judge Hardy questioned Holmes, outside the presence of the jury, about flammable liquids and the fact that the fire would consume the liquid and its odor.

66.     The City contends: Kashman asked Holmes about an indicator of accelerant, and Holmes says, "But the other indicators that were surrounding this indicator did not support that there in fact was a flammable liquid there."

67.     The City contends: Kashman asked Holmes about liquid accelerant and runners, and Holmes testified that there was no evidence of these.

68.     The City contends: Kashman asked Holmes whether he tested for petroleum products, cleaning solvents, insecticides, or testing of the cleaning solvents found in a closet for flammability, and whether he took "testing equipment such as a hydrocarbon detector" with him during his investigations, and Holmes testified in the negative to all these questions.

69.     The City contends: Kashman then asked Holmes to explain to the jury how a hydrocarbon detector works, and over Weiss' objection, Holmes explained how this equipment is used to determine whether flammable vapors are present and how much.

70.     The City contends: Holmes explained the factors that could affect the testing using the equipment, which included an explanation that flammable materials can dissipate and when odor cannot be detected the equipment does not usually detect it either.

71.     The City contends: As part of his questioning regarding hydrocarbon detectors, Kashman specifically asked Holmes if "this…piece of equipment would…have any validity used 10 days after a fire," and Holmes stated that "[i]t would depend on the circumstances surrounding the fire origin….on the amount of flammable liquids present at the time the fire was ignited…on the amount of heat and burning as to whether the flammable liquids had been consumed…after the fire was extinguished...on whether these vapors were protected and kept in the area or whether they were allowed to dissipate and dissipate away from the area."

72.     The City contends: Kashman asked Holmes whether he would have used this equipment for testing if he arrived sooner to investigate, and Weiss objected because "the evidence is that the people at the time of the fire didn't detect any indication [of flammable liquids]," Weiss' objection was sustained.

73.     The City contends: Kashman specifically asked Holmes, "Did you find any evidence of liquid fuel or accelerant in any of these three places?" to which Holmes responded, "No sir, there was no evidence of a liquid accelerant."

74.     The City contends: Kashman asked Holmes if an alcoholic beverage could be used as an accelerant, and during argument as to the relevancy of that question, Kashman stated the following in front of the jury:

"We also have evidence that a small amount of accelerant would have been consumed in the fire and not have been found by Mr. Holmes."

75.     The City contends: TFD Chief Robert B. (aka "R.B.") Slagel (hereafter "Chief Slagel") testified at Taylor's probable cause hearing in his criminal case and Kashman knew about TFD's inspections and correspondences records relating to the Pioneer Hotel, and the October 9, 1970 letter, no later than at this hearing, which is evidenced in his questions to Chief Slagel during the probable cause hearing.

76.     The City contends: Chief Slagel testified that there was nothing in TFD's records that reflected that the other fires in September or October were the result of arson.

77.     The City contends: Kashman, called Richard (aka "Dick") Darling, who worked at the Pioneer Hotel, to testify at Taylor's criminal trial, and Kashman brought up the October correspondences with that witness.

78.     The City contends: The prosecutor, Horton Weiss (hereafter "Weiss"), objected to Kashman's line of questioning during his examination of Darling because

Weiss said, "I think he is going into correspondence between Mr. Darling and the fire department" to which Kashman responded, "That's correct."

79.    The City contends: Judge Hardy had not yet seen the correspondences that the parties were referencing.

80.    The City contends: Kashman specifically asked, "In October of 1970, did you have any communications with Chief Robert Slagel of the Tucson Fire Department?"

81.    The City contends: Weiss objected, and Judge Hardy recessed the jury while the parties argued their positions on the issue.

82.    The City contends: Kashman stated that Darling had "contacted Chief Robert Slagel of the, I believe, fire prevention department of the Tucson Fire Department regarding three small fires that were suspected arsons."

83.    The City contends: Kashman stated the following to Judge Hardy:

"It's my desire through these documents and testimony of Mr. Darling to establish that at a time when Louis Taylor was out of Pima County that the Pioneer Hotel had had three arson attempts, that the fire department was aware of these things and had communicated with the hotel regarding them, establishing that this was their belief based on their own investigation. This is very material and relevant to the case involving murder as a result of alleged arson within sixty days of that time, that there had been other attempts at a time when Louis Taylor couldn't possibly have been at fault. These are business records from the files of the hotel."

84.    The City contends: The parties argued their positions regarding these letters and whether they or the information contained therein should be admitted, and Judge Hardy ruled that the letters and information in them was not admissible at this point of the trial.

85.     The City contends: Kashman's argument included the following statement to Judge Hardy:

"Your Honor, I've got Chief Slagel subpoenaed and Captain Gilmore – fire inspectors -- and perhaps it should be done out of the presence of the jury first to see whether I can establish that those fires were intentional because the communications certainly indicate that the fire department thought they were intentional."

86.     The City contends: On March 4, 1972, during Taylor's criminal trial, Chief Slagel was called to testify, outside the presence of the jury, about the prior fires at the Pioneer Hotel and the communications TFD had with the Pioneer Hotel prior to the subject fire.

87.     The City contends: Before Chief Slagel provided any testimony, Judge Hardy informed him as follows:

"…what the court is interested in, Chief Slagel, is what knowledge or how the Tucson Fire Department gained knowledge of some fires which apparently were set or occurred in, say, around the Pioneer Hotel in October of 1970. Do you know what I'm talking about?"

88.     The City contends: Chief Slagel testified that two prior fires were considered to be "natural or accidental fires."

89.     The City contends: Kashman asked Chief Slagel about actions "taken by the fire department as far as investigating the possible arson that the hotel had reported," and over Weiss' objections Judge Hardy permitted him to answer.

90.     The City contends: R.B. Slagel responded to Kashman as follows:

"We talked to several of the employees in the hotel in an attempt to determine what had happened, if anything. These stories were very vague. They did identify or describe one suspicious person who had been around the hotel and had been seen two or three times. There was no information on which any further action could be taken."

91.    The City contends: Kashman acknowledged while Chief Slagel was on the stand that Judge Hardy had already ruled that the letters between TFD or Chief Slagel and the Pioneer Hotel "will not be admissible."

92.    The City contends: At the conclusion of Chief Slagel's testimony, Judge Hardy told Kashman:

"I really don't believe there is anything to gain going any further with this Mr. Kashman," to which Kashman responded "I will accept Chief Slagel's statement under oath that nothing further is."

93.    The City contends: The excerpt from "Tape No. 1087 transcript," which is described therein as "covering the fire at the Pioneer Hotel (recorded 20 December 1970 from 0001 to 0300 hours)" shows Ofc. [Lewis] Adams was "en route to the station with a subject we need a statement from" at around 2:41 a.m.

94.    The City contends: The record in Taylor's criminal case reflects that Taylor had two transfer hearings. (*See* Motion for Transfer Hearing, December 31, 1970, Juvenile Transfer Hearing, January 28, 1971.

95.    The City contends: The record reflects Taylor's charges at his first transfer hearing were trespass and curfew violations.

96.    The City contends: At the first transfer hearing, Kashman conceded to the transfer and conceded for the purposes of moving for the transfer that Taylor had committed the crimes of trespass and curfew violations.

97.    The City contends: At the second transfer hearing Taylor was facing arson and 28 counts of murder charges.

98.    The City contends: Detective Thom Hacker's police report shows that on "January 13, 1971, LEWIS (sic) TAYLOR was charged with ARSON of the PIONEER HOTEL and 28 counts of homicide resulting from that fire" and that the case was reclassified "to ARSON and HOMICIDE, from Underdetermined."

99.     The City contends: On January 13, 1971, Taylor had a hearing on the State's Petition to Amend Charges.

100.     The City contends: At the Petition to Amend Charges hearing, the parties discussed whether a transfer hearing was appropriate because Taylor was still in custody at the Pima County Juvenile Center, and at that time the Judge said that hearing would include a determination of whether there was probable cause to charge Taylor with arson and 28 counts of murder.

101.     The City contends: At the same hearing mentioned above, Fred Belman, Deputy County Attorney, stated, "Without exaggeration, I would say thousands of hours have been put into the investigation in regard to this matter."

102.     The City contends: Fred Belman then requested that the hearing be set four to six weeks out to allow two Pima County Deputies adequate time to "assimilate all the reports" and "interview witnesses" to be prepared "adequately" for the hearing on transfer and probable cause.

103.     The City contends: Officer Claus Bergman responded to the Pioneer Hotel fire and his police report narratives set forth his actions, observations, and personal knowledge and account of his involvement with the Pioneer Hotel fire on December 19-20, 1970.

104.     The City contends: Kashman called Officer Claus Bergman to testify at Taylor's probable cause hearing, and his testimony was consistent with his police reports.

105.     The City contends: Kashman also called Officer Claus Bergman to testify at Taylor's criminal trial, and his testimony was consistent with his police reports.

Taylor contends: Bergman was threatened and coerced by Defendants to not testify fully and truthfully; he testified truthfully at his deposition in this case. This

contention applies to all of Defendants' listed contested factual issues based on Bergman's trial testimony or other statements.

106.    The City contends: Officer Claus Bergman did not testify at Taylor's transfer hearings.

107.    The City contends: Officer Lewis Adams responded to the Pioneer Hotel fire and his police report narratives set forth his actions, observations, and personal knowledge and account of his involvement with the Pioneer Hotel fire on December 19-20, 1970.

108.    The City contends: The prosecutor, David Dingeldine, called Officer Lewis Adams to testify at Taylor's probable cause hearing and he provided testimony about his involvement with investigating the fire and Taylor.

109.    The City contends: Officer Lewis Adams also testified at Taylor's preliminary hearing about his involvement with the criminal investigation.

110.    The City contends: Det. Henry Gassaway responded to the Pioneer Hotel fire and his police report narrative sets forth his actions, observations, and personal knowledge and account of his involvement with the Pioneer Hotel fire on December 19-20, 1970.

111.    The City contends: The prosecutor, David Dingeldine, called Detective Henry Gassaway to testify at Taylor's probable cause hearing.

112.    The City contends: Detective Henry Gassaway testified at Taylor's preliminary hearing.

113.    The City contends: Detective Milan Murchek was with Detective Gassaway at the police station with Taylor. \

114.    The City contends: Howard Kashman, Taylor's criminal defense attorney, called Detective Milan Murchek to testify at Taylor's probable cause hearing.

115.   The City contends: Detective Milan Murchek testified at Taylor's preliminary hearing.

116.   The City contends: The prosecutor, David Dingeldine, called Detective David N. Smith to testify at Taylor's probable cause hearing.

117.   The City contends: Detective David N. Smith testified at Taylor's preliminary hearing.

118.   The City contends: Sergeant Eugene Rossetti spoke with Taylor at the police station and his police report narrative includes details from that conversation.

119.   The City contends: Kashman called Sergeant Eugene Rossetti to testify at Taylor's probable cause hearing and David Dingeldine, the prosecutor, recalled him at that hearing.

120.   The City contends: Sergeant Eugene Rossetti testified at Taylor's preliminary hearing.

121.   The City contends: Sergeant Patrick McGuire's narrative police report sets forth why, after speaking with Det. Murchek and Det. Scoopmire, he believed there was "reasonable grounds" to believe that Taylor was involved with the fire.

122.   The City contends: Kashman called Sergeant Patrick McGuire to testify at Taylor's probable cause hearing

123.   The City contends: Bruce Wallmark (hereafter "Wallmark") was listed as a witness for Taylor's criminal trial in "Additional Witnesses' Addresses" dated September 24, 1971.

124.   The City contends: Taylor conceded long ago that Wallmark was known to him as a potential witness prior to trial, and that he knew Wallmark was in the Marines.

Taylor contends: This assertion is vague and ambiguous; to the extent is based on the witness list, that list included approximately 650 other witnesses and did not give any knowledge of who PCAO intended to call at trial.

125.   The City contends: TPD Detective Lawrence Hust "was sent to Ft. Grant Industrial School for Boys by Sgt. Jack Moore reference interview of people who were in the same living quarters with LOUIS TAYLOR" in August 1971.

126.   The City contends: Detective Lawrence Hust's police report narrative provides details about who he interviewed, and his report notes that Bruce Wallmark (hereafter "Wallmark") was one person interviewed. Det. Hust's report also references Wallmark's signed statement.

127.   The City contends: Wallmark signed a typed question and answer statement, which details Det. Hust's questions and Wallmark's responses.

128.   The City contends: Wallmark's signature indicates that he provided the answers voluntarily and "without promise of reward, threat, or duress so that the true facts of this case may be known."

Taylor contends: this is a legal conclusion and Taylor disputes it. Wallmark was threatened and coerced.

129.   The City contends: Weiss, called Bruce Wallmark to testify at Taylor's criminal trial and Kashman cross-examined him.

130.   The City contends: Wallmark testified that he was at the Pima County Juvenile Court Center from approximately January 1971 to March, 15, 1971, and that he came into contact with Louis Taylor while living there.

131.   The City contends: Wallmark testified that he and Taylor had several conversations pertaining to the Pioneer Hotel fire while in the living unit of the Pima County Juvenile Court Center.

132.    The City contends: Wallmark testified about what Taylor told Wallmark during these conversations.

133.    The City contends: Wallmark was asked to testify about what Taylor told him during these conversations and the Wallmark told the jury about those conversations.

134.    The City contends: Wallmark was asked, "What did he tell you about the fire starting – about starting the fire?" to which he responded:

"He said it was either started by a lit book of matches burning, dropped on a carpet or a lit lighter – as best I can remember it was a lit both of matches."

135.    The City contends: Wallmark was then asked, "Did he indicate what floor this occurred on?", to which Wallmark responded: "The Fourth."

136.    The City contends: Wallmark authenticated his August 1971 signed statement during his direct examination testimony at Taylor's criminal trial, and it was marked as Exhibit 144.

137.    The City contends: Wallmark's signed statement was admitted into evidence, and then read verbatim to the jury, in its entirety, over Kashman's objection.

138.    The City contends: On cross-examination, Kashman specifically asked Wallmark about his conversation with the police officers on August 11, 1971, and he asked Wallmark about another occasion when Wallmark accompanied Det. Hust and Sgt. Moore to Ft. Grant to talk to other witnesses.

139.    The City contends: Kashman asked Wallmark if he had "been in contact with any members of the Tucson Police Department since [he] left the State of Arizona." He responded, "No, I wasn't."

140.    The City contends: Kashman continued his cross-examination of Wallmark the following Monday and questioned him in more detail about his conversations with police and his August 11, 1971, signed statement.

141.    The City contends: On February 26 and 27, 1972, TPD Det. R. Sulzbach was "assigned to try to locate friends of BRUCE WALLMARK in an attempt to locate him as he left Phoenix without permission during the LOUIS TAYLOR trial."

142.    The City contends: Det. Sulzbach's narrative police report sets forth his personal account of his contact with Robert Jackson and the statement Jackson provided to the detective during that initial contact.

143.    The City contends: Robert Jackson participated in a polygraph examination, which was administered to determine whether he was telling the truth about his conversation with Taylor.

144.    The City contends: The questions posed to Robert Jackson during the polygraph examination are listed on the "Report of Polygraph Examination" document.

145.    The City contends: The polygrapher noted the following: "No reactions indicative of deception were noted in response to the above questions, leading the examiner to the conclusion that JACKSON was truthful in his answers to the above questions."

146.    The City contends: On February 27, 1972, Robert Jackson provided a statement to TPD Detective R. Sulzbach, and Robert Jackson signed that statement.

147.    The City contends: On March 1, 1972, Weiss moved to reopen the State's case-in-chief during Taylor's criminal trial on March 1, 1972, to call the witness Robert Jackson.

148.    The City contends: Weiss informed the Court that "Mr. Jackson came to the attention of the State as a witness on the 27th of February, which was Sunday evening…through the Tucson City Police Department…"

149.    The City contends: Judge Hardy asked to hear from Jackson before the court made its decision on whether to allow the State to reopen and call him to testify.

150. The City contends: Robert Jackson was sworn in and then Judge Hardy questioned him about his contact with TPD.

151. The City contends: Judge Hardy also questioned Jackson about when he was at the juvenile center.

152. The City contends: After hearing the parties' arguments, Judge Hardy ruled as follows:

"All I'm doing now is denying your motion to reopen. You may again make your motion and then I'll have to make another determination at that time."

153. The City contends: Judge Hardy brought Mr. Jackson back in court and instructed him that he was still under subpoena, he was not to talk to anyone except the lawyers or their investigators if he desired.

154. The City contends: On March 15, 1972, Judge Hardy ruled that the State would be allowed to re-open its case and call Robert Jackson to testify.

155. The City contends: Robert Jackson testified at Taylor's criminal trial and Kashman cross-examined him.

156. The City contends: Robert Jackson testified that he was not coerced, promised anything, forced, or pressured to give the statement to the police about what Taylor told him while in the juvenile detention center, nor was he in custody or under arrest at the time.

157. The City contends: Jackson's testimony reflects that while at Pima County Juvenile Court Center he had a conversation with Taylor in the bathroom of living unit regarding the Pioneer Hotel fire.

158. The City contends: Jackson identified the signed statement that he provided to the police on February 27, 1972 during his testimony at Taylor's criminal trial.

159.    The City contends: Jackson was asked, "Would you relate (sic) the conversation that you had with him as you recall it at this time?" to which Jackson responded:

"Well, Taylor told me he had found a can of lighter fluid in the hotel. Told me he was squirting lighter fluid on the wall and putting it out with his hand."

Jackson also told the jury the following in response to Weiss' questions:

Q. BY MR. WEISS: What was he doing? Did he tell you what he was doing after he put the lighter fluid on the wall?

A. Yes, he said he was lighting it with the

Q. All right. Continue.

A. Then he said he squirted it -- an extra amount of lighter fluid on the wall, put a couple of dots in it and lit it, then he said he saw or he heard a man coming, so he started to take off. By the time he -- he said it wasn't the man. He wasn't coming, but that he had heard someone coming, but he didn't come, but by the time that -- he told me by the time that it was too late. He said he was running, took off to the party or wherever he was."

160.    The City contends: Jackson also testified that Taylor told Jackson: "[Taylor] didn't mean to burn the hotel down, but the fire got out of control."

161.    The City contends: Kashman cross-examined Jackson about how his conversation with Taylor at the Pima County Juvenile Center started and whether Taylor shared more information during this conversation.

162.    The City contends: Kashman asked Jackson if he knew other individuals named David Salas or Solas and Bruce Wallmark, and Kashman elicited that Bruce Wallmark was Jackson's friend.

163.    The City contends: Kashman crossed examined Jackson about the statement he provided the police officers on February 27, 1972, and about whether he

had spoken to the police before, and Jackson said he "[h]ad no reason" to talk to police before.

164.    The City contends: Kashman asked Jackson "[h]ow did Taylor say he ignited this fire?" and asked him other details about what Taylor told him about starting the fire.

165.    The City contends: Kashman was provided a copy of Det. Sulzbach's police report while Jackson was on the stand, and Kashman asked questioned based on that report.

166.    The City contends: Kashman continued to cross-examine Jackson about the details of his contact with police and how he came about providing a statement to the police.

167.    The City contends: Kashman was allowed to inquire about Jackson's friendship with Bruce Wallmark, and Kashman specifically confronted Jackson with the question of whether he volunteered to provide his statement "to take Wallmark's place so he wouldn't get rearrested and that [he'd] testify against Taylor."

168.    The City contends: On September 18, 1972, Kashman filed a Motion for New Trial where he argued, in part, the following:

"that new and material evidence which if introduced at the trial would probably have changed the verdict has been discovered which the Appellant, defendant below, could not with reasonable diligence have discovered and produced upon

167.    The City contends: Kashman included Albert Jackson's affidavit(s) in support of his Motion for New Trial.

168.    The City contends: On May 18, 1972, the trial court had a hearing on Taylor's Motion for New Trial and the veracity and truthfulness of Robert Jackson's trial testimony was addressed.

169.    The City contends: Robert Jackson was placed under oath and testified that his trial testimony was true and that he would testify the same if called again.

Taylor contends: As described in his detailed statement, and admitted to multiple people following the trial, Jackson's testimony was coerced by Defendants' and fabricated.

170.    The City contends: The Court denied Taylor's Motion for New Trial on May 18, 1972.

171.    The City contends: Wayne Cummings' review and report was based on guidelines provided in a publication titled, National Fire Protection Association (NFPA) 921, Guide for Fire and Explosions Investigations, 2011 edition.

172.    The City contends: The first edition of this publication was not even published until 1992.

173.    The City contends: TFD Wayne Cummings concluded the following regarding his review of the Pioneer Hotel in 2012/2013:

"Due to the lack of an exact point of origin determination and the lack of elimination of all accidental fire causes, a fire cause determination is not possible reviewing the material provided to me. This is complicated by the full room involvement (or flashover) conditions experienced, the lack of the actual fire scene to physically examine, and the attempted interpretation of post-fire fire patterns from inconsistent photographs."

174.    The City contends: Taylor disclosed that his prior criminal defense attorney Ed Novak "will testify (excluding privileged communications) about work he did for Mr. Taylor, including taking the November 1, 2012, deposition of Cyrillis Holmes."

175.    The City contends: The State's fire expert, Cyrillis Holmes, testified at Taylor's probable cause hearing on February 1, 1971 and February 2, 1971.

176.    The City contends: The State's fire expert, Cyrillis Holmes, testified at Taylor's criminal trial on February 15th, February 16th, February 17th, February 18th, February 19th, February 21st, and February 22, 1972.

177.    The City contends: R.B. Slagel first contacted Cyrillis Holmes on December 23, 1970, "apprising [him] of the fire and asking assistance as to who might be able to assist in the investigation as to the origin and cause."

178.    The City contends: R.B. Slagel called Holmes again on December 25, 1970, asking him if he "could assist to come to Arizona and assist the city in determining the origin and cause of that particular fire."

179.    The City contends: Holmes arrived early in the morning on December 30, 1970, and he met with Chief Slagel and then went to the hotel to start his investigation.

180.    The City contends: The individuals that were with Holmes while he did his physical inspections of the hotel were Chief Slagel, Capt. Gilmore, Sgt. Moore, and Inspector Bill Martin.

181.    The City contends: Holmes was hired to determine the origin and cause of the fire.

182.    The City contends: Holmes did not discuss "where they thought the origin would be or what they thought the cause of the fire had been."

183.    The City contends: Holmes learned more details about what happened during the fire after he completed his investigation and after he already came to his conclusions and opinions about the origin and cause of the fire.

184.    The City contends: Kashman asked Holmes about modus operandi for man-made fires at Taylor's probable cause hearing, and Holmes testified about three types of modus operandi; race is never mentioned.

185.    The City contends: Kashman asked Holmes about motives for man-made fires at Taylor's probable cause hearing, and Holmes provided several examples; race is not mentioned.

186.    The City contends: Taylor's expert, Marshall Smyth, was asked about his understanding of what Holmes opinions were based on and Smyth did not mention race.

187.    The City contends: The City looked for TPD's policies and procedures from the 1970s, but none could be located.

188.    The City contends: The parties do not know what TPD's written policies and procedures were in the 1970s.

189.    The City contends: Rubin Salter, Jr. never worked for TPD or the City.

190.    The City contends: Rubin Salter, Jr. lacks the personal knowledge to testify about the City's or TPD's policies and procedures in the 1970s.

Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is an objection to a witness, not a factual contention.

191.    The City contends: Rubin Salter, Jr.'s proffered testimony is based on speculation and inadmissible.

Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is an objection to a witness, not a factual contention.

192.    The City contends: Plaintiff did not disclose what, if any, documentation Tommy Tunson relied on in his formulating his alleged expert opinions in this case.

Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is an objection to a witness, not a factual contention.

193.    The City contends: Tommy Tunson's alleged expert opinions as set forth in the disclosed report are conclusory.

1   Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is

2   an objection to a witness, not a factual contention.

3   194. The City contends: Tommy Tunson failed to state what facts or date he

4   relied upon in formulating his opinions in this case pursuant to Fed.R.Evid. 702 and

5   703.

6   Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is

7   an objection to a witness, not a factual contention.

8   195. The City contends: Tommy Tunson was not involved in the law

9   enforcement community from 1970 to 1972, when the Pionner Hotel fire occurred.

10   Taylor's contention: This is a legal conclusion, and Taylor disputes it. This is

11   an objection to a witness, not a factual contention.

12   196.   The City contends: Taylor's statements to police were voluntary.

13   Taylor's contention: This is a legal conclusion, and Taylor disputes it.

14   197.   The City contends: Taylor's *Miranda* rights were not violated.

15   Taylor's contention: This is a legal conclusion, and Taylor disputes it.

16   198.   The City contends: TPD had probable cause to charge Taylor with arson

17   and first-degree murder.

18   Taylor's contention: This is a legal conclusion, and Taylor disputes it.

19   199.   The City contends: The City did not fail to disclose any *Brady* material

20   prior to Taylor's 1972 trial.

21   Taylor's contention: This is a legal conclusion, and Taylor disputes it.

22   200.   The City contends: The City did not have the Truesdail report in its

23   possession, prior to trial.

24   Taylor's contention: The City had possession of the Truesdail Report, or at least

25   knew of its existence and findings, and had access to it.

201.    The City contends: The Truesdail report is not exculpatory, favorable, or material information.

Taylor's contention: This is a legal conclusion, and Taylor disputes it.

202.    The City contends: Taylor's defense team either had the Truesdail report or knew its contents prior to trial.

Taylor's contention: Taylor did not have the Truesdail Report, did not know its findings, and did not have access to it, despite making a specific request for its production.

203.    The City contends: Taylor's defense team had access to the Truesdail report prior to trial.

Taylor's contention: Taylor did not have the Truesdail Report, did not know its findings, and did not have access to it, despite making a specific request for its production.

204.    The City contends: The City was not aware of Cy Holmes' "profiling" testimony prior to trial.

Taylor's contention: Cy Holmes gave the City the racist basis for his belief that the fire was arson, including his belief that it was a Black teen that set the fire, after his initial viewing of the fire scene.

205.    The City contends: The "City officials" that Holmes testified about in 2012 had no involvement in the arrest or prosecution of Taylor for arson and felony murder in the 1970s.

Taylor contends: The City has never disclosed who those "City officials" were. Regardless of their role in prosecuting Taylor, their knowledge is imputed to the City, and to the State. The City hired Holmes and knew of his racist biases.

206.    The City contends: Cy Holmes' "profiling" testimony was not exculpatory, favorable, or material information.

1     Taylor's contention: This is a legal conclusion, and Taylor disputes it.

2     207:   The City contends: The City was not involved in any conspiracy to deprive Taylor of his constitutional rights, either before, during, or after Taylor's 1972 trial

5     Taylor's contention: This is a legal conclusion, and Taylor disputes it.

## E.  LIST OF WITNESSES

Each party shall separately list the names (and, if not previously disclosed, the telephone numbers and addresses) of witnesses, separately identifying those that the party expects to present at trial and those it may call if the need arises.  For each witness, state whether the witness is a fact or expert witness and provide a brief description of the witness's testimony.

**<u>Plaintiff</u>**:

A.     Anyone deposed and not objected to by Plaintiff.

B.     Custodians of records necessary to authenticate documents.

C.     Employees past or present of all named defendants with relevant knowledge and not object to by Plaintiff.

*D.*     All witnesses (including experts) named by any party (including in disclosure statements, supplements, and discovery responses or in exhibits), whether withdrawn or not, and not objected to by Plaintiff.

1. Louis Taylor

Mr. Taylor will testify as a fact and damage witness.  He will testify (as permitted by his plea agreement with the County) that he is innocent and did not set any fire at the Pioneer Hotel. He will testify about the 42 years of his life that he lost because of his wrongful conviction. He will also testify regarding the County's failure to disclose the "Truesdail" report and the mental and emotional suffering he experienced as a result of knowing he was wrongly convicted. He will testify regarding the County and

City's failure to disclose Donald Anthony as a suspect in recent other Tucson arson fires, and the mental and emotional suffering he experienced as a result. He will testify regarding the how the County and City's policies of racial discrimination caused him mental and emotional suffering. He will testify that the Defendants' constitutional violations proximately caused his 1972 convictions and he will testify regarding the mental and emotional suffering he experienced as a result.

2. Howard Kashman

Mr. Kashman will testify as a fact witness.  He will explain the history of Taylor's case and any other matters discussed at his deposition. He is expected to testify that at the time of trial, he was unaware of the "Truesdail" no accelerant report, which he has now seen. He is further expected to testify that in his opinion, the result of the trial would probably have been different had the Truesdail report been disclosed, in part because this report would have significantly impugned the credibility of witness Robert Jackson.

Mr. Kashman is further expected to testify that in his opinion, the result of the trial would probably have been different if the Defendants had disclosed that Donald Anthony was a suspect in prior arson fires, including prior arson fires at the Pioneer Hotel.

He will further discuss Horton Weiss, Weiss' improper trial behavior and his reputation for violating the constitutional rights of defendants. He is further expected to testify Louis Taylor is innocent, based not only on the undisclosed Truesdail report and undisclosed information about Donald Anthony, but also based on Taylor passing a polygraph examination, based on the Arson Review Committee report, based Taylor's probation officer believing he was innocent, and based on the public comments immediately following the trial from the Hon. James Hardy, who stated he would not have convicted Taylor based on the evidence presented.

1      3.  Bruce Wallmark

2      Mr. Wallmark will testify as a fact witness regarding all aspects of his

3  involvement in the Taylor criminal matter.  He is expected to testify as to any and all

4  contacts and communications he may or may not have had with Plaintiff, TPD

5  personnel, PCAO personnel, Howard Kashman, Plaintiff's criminal defense team,

6  and/or any other individual regarding Plaintiff and/or the Pioneer Hotel fire.

7      4.  Jack Chin

8      Mr. Chin will testify as a fact witness.  Mr. Chin was Senior Counsel at the Pima

9  County Attorney. He is expected to testify regarding all relevant matters including, but

10  not limited to, all aspects of Mr. Taylor's prosecution including but not limited to

11  statements he has made regarding Mr. Taylor, and Mr. Taylor's civil case. His

12  examination will comply with the Court's orders.

13      It is expected he will also testify that shortly after taking office in January 2021,

14  new Pima County Attorney Laura Conover enlisted him to head a new department, the

15  Conviction and Sentencing Integrity Unit, which was tasked with reviewing old cases

16  and remedying any unjust convictions and sentences. Taylor's conviction was one of

17  the cases Chin reviewed, which took 17 months. He concluded that Taylor's

18  convictions were improper and that he should be exonerated. He communicated this

19  information to Conover. Conover agreed Taylor should be exonerated. He drafted a

20  Rule 24.2, Ariz. R. Crim. P. motion to vacate Taylor's conviction. Conover then

21  announced Taylor's exoneration may be forthcoming. It is believed he may testify that

22  the County's retained civil lawyers threatened — directly or indirectly — Conover and

23  possibly him, the exact nature of which is not currently known. About two months

24  later, Conover publicly announced Taylor would not be exonerated.

25      5.  Laura Conover

Mrs. Conover will testify as a fact witness. She is expected to testify regarding all relevant matters including, but not limited to, all aspects of Mr. Taylor's prosecution (both before and after she was elected as Pima County Attorney), including but not limited to statements she has made regarding Mr. Taylor, and Mr. Taylor's civil case. Her examination will comply with the Court's orders.

Mrs. Conover is expected to testify consistently with and as to any matters addressed at her deposition, including but not limited to, the creation of the Pima County Attorney's Office's Conviction and Sentencing Integrity Unit, the previous administration's erroneous conclusion that she had a "conflict of interest" in the Taylor matter, the draft Rule 24.2 Ariz. R. Crim. P. motion to vacate Taylor's convictions, her office's press release/ op ed explaining the exoneration of Louis Taylor, and any direct or indirect threats she received from the County's retained civil lawyers concerning the Taylor matter. Additionally, Mrs. Conover will testify concerning her public announcement that Taylor would not be exonerated, and the reasoning for that announcement.

6. Jan Lesher

Ms. Lesher will testify as a fact witness. Ms. Lesher is expected to testify regarding her knowledge of the 2013 plea deal, any communications with the PCAO or other County officers regarding the propriety of offering a no contest plea, and the potential for civil liability if a plea was not accepted. She is also expected to testify about her knowledge of the PCAO's intent to vacate Taylor's 2013 conviction in 2022, including any communications with the PCAO, outside counsel, former PCAO employees, and other County officials, her knowledge of potential civil liability if the conviction was vacated, any direction she gave to the PCAO, outside counsel, or other County officials relating to Taylor, and any efforts to dissuade the PCAO from vacating Taylor's convictions.

7.  Nicholas Acedo

Mr. Acedo will testify as a fact witness.  Mr. Acedo is expected to testify regarding all non-privileged documents, phone calls and other communications with Laura Conover and anyone else regarding the Taylor matter, including but not limited to communications occurring in late May 2022 and thereafter.  Mr. Acedo will also testify regarding his emails, telephone calls and video conferences with anyone at the Arizona Attorney General's Office (past and present), including Beau Roysden, Allyson Flanagan, Joe Kanefield, John Johnson, Terry Olsen, Joshua Credit, Nicholas Klingerman, and Lisa Rodriguez.

8.  Tamera Mulembo

Ms. Mulembo will testify as a fact witness.  Ms. Mulembo was the Chief Deputy County Attorney. She is expected to testify regarding all relevant matters including, but not limited to, all aspects of Mr. Taylor's prosecution including but not limited to statements she has made regarding Mr. Taylor, and Mr. Taylor's civil case. Her examination will comply with the Court's orders.

9.  Rubin Salter

Mr. Salter will testify as a fact witness.  Mr. Salter is an African American criminal defense lawyer who worked at the County Attorney's Office in the late 1960s with Horton Weiss.  He spent most of his career thereafter doing criminal defense and will testify that the City Police Department had policies of racial discrimination against Blacks.

10. John Neis

Mr. Neis will testify as a fact witness.  Mr. Neis is a retired criminal defense lawyer who, in and around the time of the Taylor prosecution, defended clients being prosecuted by Horton Weiss.  Neis is expected to testify regarding Weiss' reputation

in the Tucson legal community as an unethical prosecutor and that Weiss was known for the improper and abusive use of "snitch" testimony.

11. Lesley Hoyt-Croft

Dr. Hoyt-Croft will testify as a fact and damage witness. Dr. Hoyt-Croft is part of the Justice Project and has a Ph.D. in behavioral science. Dr. Hoyt-Croft is also a documentary filmmaker who will testify about Mr. Taylor's history, his damages, her experiences with him and about the documentaries she produced. She will lay foundation for various audio and visual clips regarding Mr. Taylor's case and the Pioneer Hotel fire.

12. Andrew Pacheco

Mr. Pacheco will testify as an expert witness. Mr. Pacheco is Plaintiff's expert regarding the conduct of Pima County in the investigation and prosecution of Louis Taylor. He will testify in accordance with his report (informally provided on July 26, 2021, and formally disclosed thereafter) and any supplements thereto. Mr. Pacheco will also testify regarding his November 22, 2021, Rebuttal Expert Report. His testimony will comply with the Court's prior order regarding his testimony.

13. Dr. Thomas Tunson

Dr. Tunson will testify as an expert witness. Mr. Tunson is Plaintiff's law enforcement expert who will address the conduct of the Tucson Police Department and the Tucson Fire Department; he will testify in accordance with his report (informally provided on July 26, 2021, and formally disclosed thereafter) and any supplements thereto. Mr. Tunson will also testify regarding his November 22, 2021, Rebuttal Expert Report.

14. Gregory Gorbett (Arson Review Committee)

15. David Eliassen (Arson Review Committee)

16. Patrick M. Kennedy (Arson Review Committee)

17. John Lentini (Arson Review Committee)

18. Dennis Smith (Arson Review Committee)

Members of the Arson Review Committee will testify as fact witnesses, based on their training and expertise with arson.  These witnesses investigated, authored and/or participated in the preparation of the "Report on the Peer Review of the Expert Testimony in the Case of State of Arizona v. Louis C. Taylor" (Report disclosed at Bates TAYLOR 010597-10624) and are expected to testify regarding the investigation, and the contents and conclusions of the report. Their testimony will include that the Pioneer Hotel fire was not arson and that Cy Holmes' methodology was flawed and unreliable.

19. Robert Cannon

Mr. Cannon is expected to testify as a fact witness.  Mr. Cannon worked for the adult probation department at the time of Taylor's sentencing and will testify regarding his interactions and familiarity with Mr. Taylor before and after the Pioneer Hotel fire convictions. He will testify to the probation department's belief that Taylor was innocent.

20. Sherry Van Camp

Ms. Van Camp will testify as a fact witness.  Ms. Van Camp is an employee of Miller, Pitt, Feldman & McAnally PC and was an employee in 2016 when she spoke with Judge Michael Brown about the Taylor case and the prosecution of Louis Taylor. Ms. Van Camp will testify in accordance with her Affidavit and in accordance with the video of Judge Brown discussing Horton Weiss.

21. Mike Piccarreta

Mr. Piccarreta will testify as a fact witness, but based on his many years of training and experience in criminal law.  Mr. Piccarreta will be called to testify

regarding Mr. Taylor's criminal prosecution and post-conviction relief proceedings and all interactions with members of the Pima County Attorney.

22. Noel Fidel

Mr. Fidel will testify as a fact witness, but based on his many years of traiing and experience in criminal law.  Mr. Fidel will be called to testify regarding Mr. Taylor's criminal prosecution and post-conviction relief proceedings and all interactions with members of the Pima County Attorney.

23. Bud Foster

Mr. Foster will testify as a fact witness.  Mr. Foster is a Tucson resident expected to testify about his relationship with Louis Taylor and efforts he has made to assist Mr. Taylor after his release from prison.

24. Lindsay Herf

Ms. Herf will testify as a fact and damage witness.  Ms. Herf is part of the Justice Project.  Ms. Herf will testify about her work on Mr. Taylor's behalf with the Arizona Justice Project.  As part of her work with the Justice Project, Ms. Herf evaluated and analyzed the psychological effects on Mr. Taylor of being wrongly convicted.  She will also testify as a damage witness to explain the impacts on Taylor from his wrongful convictions, including but not limited to matters discussed in "This Damn Town" disclosed herewith.

25. Rick Gonzalez

Mr. Gonzalez will testify as a fact witness.  Mr. Gonzales was an intern with the public defender's office when Louis was prosecuted, and he worked with Howard Kashman.  He will testify regarding his knowledge and recollection of the Taylor prosecution.

26. Wayne Cummings

Mr. Cummings will testify as a fact witness. Mr. Cummings was an investigator with the Tucson Fire Department and authored the investigative report of the Pioneer Hotel Fire, at the request of the County Attorney in late 2012 or early 2013. He will further testify about his conclusion that the Pioneer Hotel fire cannot be classified as arson.

27. Jeanette Mare

Ms. Mare will testify as a fact witness. Ms. Mare is expected to testify regarding Mr. Taylor's damages, including her thoughts and observations about Mr. Taylor including his difficulties he encountered reentering society.

28. Mavis J. Donnelly, M.D.

Dr. Donnelly will testify as a fact witness, but also based on her medical training and experience. Dr. Donnelly is expected to testify regarding her December 14, 2022, Report and her observations, analysis, diagnosis, conclusions, and treatment regarding Louis Taylor as well as Taylor's damages.

29. Rick Unklesbay

Mr. Unklesbay will testify as a fact witness. Mr. Unklesbay was a Deputy Pima County Attorney from July 1981 to March 2021. He will testify generally regarding his knowledge of Mr. Taylor's prosecution, and his involvement in Mr. Taylor's post-conviction relief proceedings.

30. Kathy Lynn Higgins

Ms. Higgins is expected to testify consistently with her previously disclosed (July 2023) affidavit/declaration.

31. Charlene Smith

Ms. Smith is expected to testify regarding her previously disclosed affidavit.

32. Nina Trasoff

Ms. Trasoff is expected to testify regarding her previously disclosed affidavit.

33. Ed Novak

Mr. Novak is a practicing Arizona attorney who represented Mr. Taylor as part of his work through the Arizona Justice Project.  Mr. Novak will testify (excluding privileged communications) about work he did for Mr. Taylor, including taking the November 1, 2012, deposition of Cyrillis Holmes.

He will testify regarding any and all matters communicated to Steve Kroft of 60 Minutes in the March 2013 feature, and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes" / Court TV and/or CBS.  Plaintiff may also utilize these programs pursuant to the "previous statements" provisions of Fed.R.C.P. Rule 26(b)(3)(C).

Mr. Novak will testify that Louis Taylor is innocent.

34. Glen Miller

It is unknown if Mr. Miller is still alive,  Plaintiffs will inform Defendants once that information is ascertained.

Mr. Miller was employed by Truesdail Laboratory or an associated entity, and will testify regarding the Truesdail's retention, any and all conversations between Truesdail and County or City officials, Truesdail's investigation, the report it prepared, and the conclusions of the report, including that no evidence of accelerants, including no evidence of lighter fluid, were found.

35. Detective Dave Smith

Mr. Smith was a Tucson Police officer who spoke with Louis Taylor in the hours following the fire. He will testify regarding any knowledge relevant the Taylor prosecution. Specifically, he is expected to testify that there is no documentation, other than Smith saying so, regarding statements Taylor allegedly made to him.

Plaintiff will rely on Smith's statements made in media interviews pursuant to Rule 801(d)(2). Det. Smith is also expected to testify regarding the statements he made

and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes" / Court TV and/or CBS. Plaintiff may also utilize these programs pursuant to the "previous statements" provisions of Fed.R.C.P. Rule 26(b)(3)(C).

36. Andy Silverman

Prof. Silverman is expected to testify regarding his relationship with Louis Taylor and his work through the Arizona Justice Project on Taylor's case.

37. Claus Bergman

Mr. Bergman was a Tucson police officer discussed in the March 31, 2013 60 Minutes piece. Plaintiff will rely on Bergman's statements made in media interviews pursuant to Rule 801(d)(2). Mr. Bergman is also expected to testify regarding the statements he made and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes" / Court TV and/or CBS. Plaintiff may also utilize these programs pursuant to the "previous statements" provisions of Fed.R.C.P. Rule 26(b)(3)(C).

38. Jack Frye

Mr. Frye is an arson expert hired by CBS and Court TV (60 Minutes) to conduct his own investigation of the fire; he will testify about his investigation and findings, regarding the statements he made and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes" / Court TV and/or CBS. Plaintiff may also utilize these programs pursuant to the "previous statements" provisions of Fed.R.C.P. Rule 26(b)(3)(C).

Mr. Frye will testify about the mysterious, obstructionist unidentified subject who was present at the fire scene who Tucson police and fire investigators completely failed to investigate. He will testify about other known arsonists in Tucson who were not investigated, including but not limited to Donald Anthony.

39. William Jerome Martin

Mr. Martin was a fire inspector for the City of Tucson at the time of the fire. Mr. Martin is expected to testify regarding the statements he made and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes" / Court TV and/or CBS. Plaintiff may also utilize these programs pursuant to the "previous statements" provisions of Fed.R.C.P. Rule 26(b)(3)(C).

**Defendant Pima County's List of Will Call Witnesses:**

1. Malena Acosta

Ms. Acosta will be called as a fact witness and as a non-retained expert, pursuant to Fed. R. Civ. P. 26(a)(2)(C).  Ms. Acosta will testify regarding her background, training, and experience as a lawyer and a prosecutor, her time at the Pima County Attorney's Office ("PCAO"), the positions she held and her responsibilities, and the cases she prosecuted, tried, supervised, and/or participated in.  Ms. Acosta will also testify regarding her involvement in Taylor's 2012 Rule 32 post-conviction proceeding, including his review of Taylor's prosecution, the prosecution file, and Taylor's Rule 32 Petition and his conclusions and beliefs thereon, to the contents of her Rule 26(a)(2)(C) disclosure, and to the contents of her February 10, 2022 Declaration.

2. Bill Dickinson

Mr. Dickinson is expected to testify regarding his career, his employment and responsibilities with the Pima County Attorney's Office ("PCAO"), his knowledge of other prosecutors in the PCAO, including Bill Schafer, Rose Silver, David Dingeldine, Randy Stevens, Horton Weiss, and Carmine Brogna, his knowledge of PCAO policies and practices during his employment, including training, supervision, and prosecutorial decisions, his knowledge and understanding regarding the law at the time

governing evidentiary disclosures and other prosecutorial functions, and his knowledge of or work on Taylor's criminal prosecution.  Mr. Dickinson is expected to testify that PCAO did not have a policy or practice of racial discrimination or unethical or unlawful prosecutions.

3.  Bill Druke

Mr. Druke is expected to testify regarding his career, his employment and responsibilities with the Pima County Attorney's Office ("PCAO"), his knowledge of other prosecutors in the PCAO, including Bill Schafer, Rose Silver, David Dingeldine, Randy Stevens, Horton Weiss, and Carmine Brogna, his knowledge of PCAO policies and practices during his employment, including training, supervision, and prosecutorial decisions, his knowledge and understanding regarding the law at the time governing evidentiary disclosures and other prosecutorial functions, and his knowledge of or work on Taylor's criminal prosecution.  Mr. Druke is expected to testify that PCAO did not have a policy or practice of racial discrimination or unethical or unlawful prosecutions.

4.  Cyrillis Holmes

Mr. Holmes is believed to be deceased.  If necessary, he will testify via his January 15, 1971 report, (*see* TAYLOR009985), and all his testimony at Taylor's prosecution, including but not limited to, on  February 1, 1971, February 2, 1971, February 15, February 16, 1971, February 17, 1971,  February 18, 1971, February 19, 1971, February 21, 1971, February 22, 1971, June 17, 1971, June 18, 1971, June 23, 1971, June 24, 1971, February 15, 1972, February 16, 1972, February 17, 1972, February 18, 1972, February 19, 1972, February 21, 1972, February 22, 1972, and November 1, 2012.

5.  Detective Lawrence Hust

Detective Hust will testify regarding his contacts and communications with

Bruce Wallmark, Lawrence Estrada, Christopher Eskew, William McKenzie, and Thomas Haskins (*see* COT002333–2334, COT002347, COT002348, COT003302–3303, COT003039–3040, COT002349).  Detective Hust will testify consistent with his prior testimony.

6.  Robert Jackson

Mr. Jackson is believed to be deceased. If necessary, Mr. Jackson will testify via his prior statements and sworn affidavits (*see* TAYLOR005608 – 5636, TAYLOR005637 – 5665; TAYLOR005666 – 5875, TAYLOR007346 – 7554, TAYLOR007555 – 7766, TAYLOR008525 – 8569, TAYLOR008570 – 8575, TAYLOR009680 – 9724, TAYLOR009725 – 9730, and TAYLOR009731) and his prior sworn testimony given in Taylor's prosecution, including on March 1, 1972, March 15, 1972, and May 18, 1972.

7.  Steve Neely

Mr. Neely is expected to testify regarding his career, his employment and responsibilities with the Pima County Attorney's Office ("PCAO"), his knowledge of other prosecutors in the PCAO, including Bill Schafer, Rose Silver, David Dingeldine, Randy Stevens, Horton Weiss, and Carmine Brogna, his knowledge of PCAO policies and practices during his employment, including training, supervision, and prosecutorial decisions, his knowledge and understanding regarding the law at the time governing evidentiary disclosures and other prosecutorial functions, and his knowledge of or work on Taylor's criminal prosecution.  Mr. Neely is expected to testify that PCAO did not have a policy or practice of racial discrimination or unethical or unlawful prosecutions.

8.  Ronald Stolkin

Mr. Stolkin is expected to testify regarding his career, his employment and responsibilities with the Pima County Attorney's Office ("PCAO"), his knowledge of

other prosecutors in the PCAO, including Bill Schafer, Rose Silver, David Dingeldine, Randy Stevens, Horton Weiss, and Carmine Brogna, his knowledge of PCAO policies and practices during his employment, including training, supervision, and prosecutorial decisions, his knowledge and understanding regarding the law at the time governing evidentiary disclosures and other prosecutorial functions, and his knowledge of or work on Taylor's criminal prosecution. Mr. Stolkin is expected to testify that PCAO did not have a policy or practice of racial discrimination or unethical or unlawful prosecutions.

   9. Rick Unklesbay

   Mr. Unklesbay will be called as a fact witness and as a non-retained expert, pursuant to Fed. R. Civ. P. 26(a)(2)(C). Mr. Unklesbay will testify regarding his background, training, and experience as a lawyer and a prosecutor, his time at the Pima County Attorney's Office ("PCAO"), the positions he held and his responsibilities, and the cases he prosecuted, tried, supervised, and/or participated in, and the cases he reviewed for wrongful convictions and disproportionate/unlawful sentences. Mr. Unklesbay will also testify regarding his involvement in Taylor's 2012 Rule 32 post-conviction proceeding, including his review of Taylor's prosecution, the prosecution file, and Taylor's Rule 32 Petition and his conclusions and beliefs thereon, to the contents of his Rule 26(a)(2)(C) disclosure, and to the contents of his February 9, 2022 Declaration.

**Defendant Pima County's List of May Call Witnesses:**

   1.   Officer Ernest Abbott (No. 4436)

   Officer Abbott will testify regarding his activities on December 20, 1970, participation in assisting fire victims, and his activities at Veterans Hospital as memorialized in his report (marked as Plaintiff's Trial Exhibit 578, TAYLOR012240–12242). If necessary, Officer Abbott will also testify consistent with his testimony

given at Taylor's criminal prosecution, including on March 16, 1972 (marked as Pima County's Trial Exhibit 626).

2.  Officer Louis Dwight Adams

Officer Adams is expected to testify regarding Giles Scoggins' identification of Plaintiff at the scene.  Officer Adams is expected to testify regarding his knowledge of and observations made when he placed Plaintiff in custody and transported him to the detective division on December 20, 1970, as memorialized in TPD's investigative report (marked as Plaintiff's Trial Exhibits 238, 522, 535, 545, COT003017–3018, COT003177, and COT002624). Officer Adams is expected to testify regarding his initial interview of Plaintiff at the detective division as memorialized in his report at COT003017–3018.  If necessary, Officer Adams will also testify consistent with his testimony given at Taylor's prosecution, including on February 4, 1971 (marked as Pima County's Trial Exhibit 553), February 8, 1971 (marked as Pima County's Trial Exhibit 556), June 29, 1971 (marked as Pima County's Trial Exhibit 562), October 15, 1971 (marked as Pima County's Trial Exhibit 570), January 11, 1972 (marked as Pima County's Trial Exhibit 578), and February 24, 1972 (marked as Pima County's Trial Exhibit 600).

3.  Officer Alison (No. 6961)

Officer Alison will testify regarding his activities on December 20, 1970, including his activities with crowd control as memorialized in his report (marked as Plaintiff's Trial Exhibit 576, TAYLOR012236–12237).

4.  Rex Angeley

Mr. Angeley's involvement is memorialized in his report (marked as Plaintiff's Trial Exhibit 545, TAYLOR011717–11875).  Mr. Angeley's contacts with Robert Jackson's mother, Katherine Jackon, are memorialized in Pima County's Trial Exhibits 771, 798, 799, and 838.   Mr. Angeley's contacts with Bruce Wallmark are

memorialized in Pima County's Trial Exhibits 833 and 837.  Mr. Angeley is believed to be deceased.  If necessary, Mr. Angeley will testify via his testimony given at Taylor's prosecution, including on February 4, 1971 (marked as Pima County's trial Exhibit 554), February 8, 1971 (marked as Pima County's Trial Exhibit 556), October 15, 1971 (marked as Pima County's Trial Exhibit 571), January 11, 1972 (marked as Pima County's Trial Exhibits 578 and 579), and February 25, 1971 (marked as Pima County's Trial Exhibit 601).

5.  Frank G. Armenta

Mr. Armenta will testify regarding his interactions with Taylor prior to and on the day of the Pioneer Hotel fire, any other knowledge and information he may have regarding Taylor, and any contacts and communications he may have had with Tucson Police Department personnel, PCAO personnel, and/or any other person regarding the Pioneer Hotel fire and/or Taylor.  Mr. Armenta's contacts with TPD officers are memorialized in TPD's reports at COT003165.  If necessary, Mr. Armenta will testify consistent with his testimony given at Taylor's prosecution, including on January 28, 1971 (marked as Pima County's Trial Exhibit 548), and February 22, 1972 (marked as Pima County's Trial Exhibit 598).

6.  Detective R. Armentrout.

Det. Armentrout's involvement, including his attempts to locate Bruce Wallmark, his contacts with Robert Jackson, and statements made by Robert Jackson, are memorialized at COT002335–2336, COT003311–3312.  Det. Armentrout is believed to be deceased.  If necessary, Det. Armentrout will testify via those reports.

7.  Helen Irene Bailey

Ms. Bailey is expected to testify regarding any contacts and communications she may have had with PCAO personnel, TPD personnel, and/or other witnesses regarding the Pioneer Hotel fire and/or Taylor's criminal prosecution.  Ms. Bailey is

expected to testify consistent with her testimony given at Taylor's prosecution, including on February 10, 1972 (marked as Pima County's Trial Exhibit 588).

8.  Miguel Baldenegro

Mr. Baldenegro is expected to testify regarding all relevant knowledge he may possess regarding the Pioneer Hotel fire and Taylor, including any contacts and communications he may have had with PCAO personnel, TPD personnel, and/or other witnesses (*see also* TAYLOR012742, COT002652).

9.  William H. Ball

Mr. Ball is expected to testify as to any knowledge and information he may have regarding Taylor's juvenile police contacts and incarceration and any contacts and communication he may have had with PCAO personnel, TPD personnel, and/or other individuals regarding Taylor and/or the Pioneer Hotel fire.  If necessary, Mr. Ball will testify consistent with his testimony given at Taylor's prosecution, including on January 28, 1971 (marked as Pima County's Trial Exhibit 574).

10. Grace H. Ballesteros

Ms. Ballesteros is expected to testify regarding her observations and/or interactions with Taylor prior to, during, and after the Pioneer Hotel fire.  If necessary, Ms. Ballesteros will testify consistent with her testimony given and Taylor's prosecution, including on March 1, 1972 (marked as Pima County's Trial Exhibit 605).

11. Lieutenant O. Barnett (No. 111)

Lieutenant Barnett will testify regarding his knowledge of Mario Corral and his contacts with Olivia Vargas, Corral's sister, who heard Corral say "he is just as guilty as Taylor," as memorialized in his report marked as Plaintiff's Trial Exhibit 575 (TAYLOR012234 – 12235).

12. Officer Herbert E. Bay

If necessary, Officer Bay will testify consistent with his testimony given at

Taylor's prosecution, including on March 17, 1972 (marked as Pima County's Trial Exhibit 620).

13. Officer Beaty (No. 7617)

Officer Beaty is expected to testify regarding photographs he took in Room 906 and the fourth floor of the Pioneer hotel, as memorialized in his report marked as Plaintiff's Trial Exhibit 588 (TAYLOR012233).

14. Vincente Beccerra

Mr. Beccerra will testify regarding any knowledge and information relating to Bruce Wallmark and Wallmark's statements to Public Defender Lane, as memorialized in his Affidavit (TAYLOR012736–12737).  Mr. Beccerra is expected to testify as to any contacts and communications he may have had with PCAO personnel and/or other individuals regarding Taylor's criminal prosecution and/or the Pioneer Hotel fire.

15. Lieutenant Bedient (No. 252)

Lieutenant Bedient is expected to testify regarding his activities on December 20, 1970, including assigning personnel to call-out rosters, obtaining additional medical facilities, assigning units, processing lists of known injured and dead individuals, and arranging for the identification of Mr. d'Houdeville, as memorialized in his report marked as Plaintiff's Trial Exhibit 574 (TAYLOR 012233).

16. Officer Claus Bergman

Officer Bergman will testify via his testimony given at Taylor's prosecution, including on February 8, 1971 (marked as Pima County's Trial Exhibit 556) and March 19, 1972 (marked as Pima County's Trial Exhibit 621).  Officer Bergman will also testify to the counter-designations to his January 14, 2022 deposition.

17. Thomas Bertie

Mr. Bertie is expected to testify regarding his contacts with Arizona State Prison Official Mr. Brandfast and Taylor's relationship with Albert Jackson, as memorialized

in his Affidavit (marked as Pima County Trial Exhibit 765).  Mr. Bertie is expected to testify regarding his contacts with Robert Jackson and Katherine Jackson, as memorialized in Pima County's Trial Exhibit 797, 798, 799, and 838.  Mr. Bertie is expected to testify as to any contacts and communications he may have had with PCAO personnel and/or other witnesses regarding Taylor and/or the Pioneer Hotel fire.

18. Lieutenant Birmingham (No. 115)

Lieutenant Birmingham will testify regarding his command of the incident on December 20, 1970, as memorialized in his report marked as Plaintiff's Trial Exhibit 570 (TAYLOR012220–12223).

19. Sandy Bowling

Mr. Bowling will testify to the statements Taylor made to him while they were incarcerated at the Fort Grant Detention Center, as memorialized at COT003028–3029.  Mr. Bowling is expected to testify as to any contacts and communications he may have had with PCAO personnel, TPD personnel, and/or other witnesses regarding Taylor.

20. Officer William F. Briamonte

Officer Briamonte is believed to be deceased.  If necessary, Officer Briamonte will testify via his testimony given at Taylor's prosecution, including on February 9, 1971 (marked as Pima County's Trial Exhibit 557) and March 15, 1972 (marked as Pima County's Trial Exhibit 618).

21. Leroy Brockbank

Mr. Brockbank is believed to be deceased.  If necessary, Mr. Brockbank will testify via his testimony given at Taylor's prosecution, including on March 1, 1972 (marked as Pima County's Trial Exhibit 605) and March 2, 1972 (marked as Pima County's Trial Exhibit 606).

22. Detective L. Brooks (No. 266)

Officer Brooks will testify regarding his activities at the morgue, his assistance

with the identification of bodies, his activities at the Pioneer Hotel, his contacts with TFD members on the third and fourth floor of the Hotel on December 20, 1970, who indicated they believed the fire started at the easterly most fire casing, his contacts with David M. Johnson, Giles Scoggins, Andy Palm, and Dora Odeja, who related she was missing a small diamond ring from her room, and the families staying in rooms 406 and 408, as memorialized in his report (marked as Plaintiff's Trial Exhibit 568, TAYLOR012215–12216).

23. Sergeant Larry Bunting

Sergeant Bunting is believed to be deceased.  Sergeant Bunting involvement is memorialized in his reports (COT003142, COT003185–3187, (COT003212–3213).  If necessary, Sergeant Bunting will testify via those reports.

24. Sergeant Clark Burnett (No. 47723)

Sergeant Burnett will testify that Taylor's girlfriend was an individual subject to a Mental Health Revocation (*see* Pima County's Trial Exhibit 1029).

25. Ian Burnette

Mr. Burnette is expected to testify regarding his contacts with Bruce Wallmark. Mr. Burnette is expected to testify regarding his investigation into the Pioneer Hotel fire, including his public records request to the Tucson Police Department (*see* COT002371). Mr. Burnette is expected to testify as to any nonprivileged contacts and communications he had with Taylor, Taylor's counsel, witnesses, and/or any other person regarding the Pioneer Hotel fire, Taylor's criminal prosecution, and/or Plaintiff.

26. Art Camacho

Mr. Camacho will testify consistent with his testimony given at Taylor's prosecution, including on January 29, 1971 (marked as Pima County's Trial Exhibit 550).

27. Albert Canez

Mr. Canez will testify to statements that Taylor made to him about his and Mario Corral's involvement in the Pioneer Hotel fire. Mr. Canez is expected to testify as to any knowledge and information he has regarding Taylor. Mr. Canez is expected to testify regarding his contacts with TPD as memorialized in TPD's investigative report (COT003023).

28. Officer Cantonwine (No. 124)

Officer Cantonwine will testify regarding his search for valuables in the Pioneer Hotel on the 10th Floor, as memorialized in his report (marked as Plaintiff's Trial Exhibit 567, TAYLOR012213–12214).

29. Angel Carranza

Mr. Carranza will testify consistent with this testimony given at Taylor's prosecution, including on February 15, 1972 (marked as Pima County's Trial Exhibit 592).

30. Officer Gary Carstensen

Officer Carstensen will to testify that he was with Officer Adams when they came in contact with Taylor on the third floor of the Pioneer Hotel, and that he accompanied Taylor and Officer Adams outside of the building, as memorialized in his report (COT003175–3176). Officer Carstensen will also testify consistent with his testimony given at Taylor's prosecution, including on October 15, 1971 (marked as Pima County's Trial Exhibit 571). Officer Carstensen is believed to be deceased. If necessary, Officer Carstensen will testify via his report and testimony.

31. Mike Castillo

Mr. Castillo is expected to testify that he was with Taylor at the Pioneer Hotel on the night of the fire, as memorialized in TPD's investigative report (COT002333–2334). Mr. Castillo is expected to testify as to any knowledge and information he has regarding Taylor and/or the Pioneer Hotel fire.

32. Lonnie Castone

Mr. Castone is expected to testify regarding his contacts with TPD officers, as memorialized in TPD's investigative report (COT003270–3271).  Mr. Castone is expected to testify regarding his knowledge of Taylor's sister starting the fire and/or being involved in the fire.  Mr. Castone is expected to testify as to any contacts and communications he may have had with Taylor.

33. Paul Charters.

Mr. Charters is believed to be deceased.  If necessary, Mr. Charters will testify via his testimony given at Taylor's prosecution, including on January 28, 1971 (marked as Pima County's Trial Exhibit 547), February 4, 1971 (marked as Pima County's Trial Exhibit 554), October 15, 1971 (marked as Pima County's Trial Exhibit 571), and January 10, 1972 (marked as Pima County's Trial Exhibit 575).

34. Officer Clark (No. 6665).

If necessary, Officer Clark is expected to testify regarding the crowd control he performed at the Pioneer Hotel, as memorialized in his report (marked as Plaintiff's Trial Exhibit 561, TAYLOR012201).

35. Officer Condiss (No. 6269)

If necessary, Officer Condiss is expected to testify regarding his observations of the Pioneer Hotel fire when he arrived on scene and his assistance in rescuing victims, as memorialized in his report (marked as Plaintiff's Trial Exhibit 561, TAYLOR012195).

36. Desk Clerk Cook (No. 7737)

Desk Clerk Cook is expected to testify consistent with her report (marked as Plaintiff's Trial Exhibit 562, TAYLOR012197–12199).

37. Robert Edgar Cooper

If necessary, Mr. Cooper will testify consistent with his testimony at Taylor's

prosecution, including on January 28, 1971 (marked as Pima County's trial Exhibit 548), and February 12, 1971 (marked as Pima County's Trial Exhibit 590).

38. Officer Corona (No. 4602)

Officer Corona will testify regarding his search of the ninth and tenth floors of the Pioneer Hotel for valuables, as memorialized in his report (marked as Plaintiff's Trial Exhibit 560, TAYLOR012193–12194).

39. Kenneth Lee Cotton

Mr. Cotton is expected to testify regarding comments Taylor made to him regarding his involvement in the Pioneer Hotel fire and his contacts with police officers, as memorialized in TPD's investigative report (COT002341–2342).

40. Wayne Cummings

Mr. Cummings is expected to testify to his 2012–2013 investigation into the Pioneer Hotel fire and his resulting report.

41. Dick (Richard) Darling

Mr. Darling is believed to be deceased.  If necessary, Mr. Darling will testify consistent with his testimony given at Taylor's prosecution, including on March 3, 1972 (marked as Pima County's trial Exhibit 607).

42. Officer J. Davies (No. 4447)

Officer Davies is expected to testify regarding his activities and observations during crowd control on December 20, 1970, as memorialized in his report (marked as Plaintiff's Trial Exhibit 565, TAYLOR012204–12206).

43. Frederick S. Dean

Mr. Dean is expected to testify regarding his knowledge of the Pioneer Hotel civil litigation.   Mr. Dean is expected to testify regarding his contacts and communications with experts, opposing counsel, and/or other witnesses regarding the civil litigation, criminal proceedings, and/or the Pioneer Hotel fire.

44. Chief Richard Lopez Delahanty

Mr. Delahanty is believed to be deceased.  If necessary, Mr. Delahanty will testify consistent with his testimony given at Taylor's prosecution, including on March 9, 1972 (marked as Pima County's Trial Exhibit 591).

45. Bill (Richard) Prue Delgado

Mr. Delgado is expected to testify as to any knowledge and information he has regarding Taylor and/or the Pioneer Hotel fire (*see* COT002333–2334).

46. Paul d'Hedouville

Mr. d'Hedouville is expected to testify regarding his victim impact statement at the April 3, 2013 Change of Plea Hearing.  Mr. d'Hedouville is expected to testify regarding the Pioneer Hotel Fire Project and his duties as Chairman of the Fire Memorial Committee.  Mr. d'Hedouville is expected to testify regarding his knowledge about the civil lawsuits against the Pioneer Hotel.  Mr. d'Hedouville is expected to testify as to any relevant contacts and communications he may have had with victims, City of Tucson personnel, Pima County Attorney's Office personnel, and/or any other person regarding the Pioneer Hotel fire.

47. Officer Dotseth (No. 133)

Officer Dotseth will testify consistent with his report (marked as Plaintiff's Trial Exhibit 558, TAYLOR012175–12176).

48. Sergeant Glen Doze (No. 153)

Sergeant Doze will testify consistent with his report (marked as Plaintiff's Trial Exhibit 557, TAYLOR012173–12174).

49. Officer Dunagan (No. 7353)

Officer Dunagan will testify regarding the room searches conducted by him on the second through ninth floors of the hotel and the personal property he found placed in pillow cases that were tied shut, as memorialized in his report (marked as Plaintiff's

1    Trial Exhibit 556, TAYLOR012172).

2       50. Detective J. Dunfee (No. 326)

3          Detective Dunfee will testify consistent with his report (marked as Plaintiff's

4    Trial Exhibit 555, TAYLOR012160–12171).

5       51. Captain Clarence Dupnik

6          Captain Dupnik will testify regarding his involvement in supervising the

7    investigation into the Pioneer Hotel fire.

8       52. Officer Edwards (No. 6125)

9          Officer Edwards will testify regarding his involvement in impounding victim's

10   property, as memorialized in his report (marked as Plaintiff's Trial Exhibit 553,

11   TAYLOR012154–12155).

12      53. Officer Elias (No. 3348)

13         Officer Elias will testify regarding his contact with Reynaldo Ramos regarding

14   food left on the windowsill of Room 305, his contacts with Hermosillo's Chief of

15   Police Landa, and his request to Chief Landa to obtain written statements, as

16   memorialized in his report (marked as Plaintiff's Trial Exhibit 554, TAYLOR012156–

17   12158).

18      54. Lawrence (Larry) Estrada

19         Mr. Estrada is believed to be deceased.  If necessary, he will testify via his

20   testimony given at Taylor's prosecutions, including on February 29, 1972 marked as

21   Pima County's Trial Exhibit 604 (*see also* TPD investigative report,

22   TAYLOR013240–13241.

23      55. Officer Michael R. Farley (No. 6257)

24         Officer Farley will testify regarding his activities at the Pioneer Hotel on

25   December 20, 1970, his observations at the Pioneer Hotel, his involvement in rescuing

     victims, clearing the building, and conducting crowd control, as memorialized in his

report (marked as Plaintiff's Trial Exhibit 552, TAYLOR012149–12153). If necessary, Officer Farley will also testify consistent with his testimony given at Taylor's prosecution, including on March 2, 1972 (marked as Pima County's Trial Exhibit 606) and March 6, 1972 (marked as Pima County's Trial Exhibit 609).

56. Norma Feldman

Mrs. Feldman is expected to testify regarding the damage Taylor caused to her vehicle on April 17, 2017.  Mrs. Feldman is expected to testify as to her belief that Taylor was on drugs during their interaction on April 17, 2017, and her statement that Taylor "lies all the time." Mrs. Feldman is expected to testify as to all additional contacts and communications she may have had with Taylor since 2013.

57. Officer Fragoso (No. 4596)

Officer Fragoso will testify regarding his activities at St. Mary's Hospital on December 20, 1970, as memorialized in his report (marked as Plaintiff's Trial Exhibit 551, TAYLOR012143–12148).

58. Willis John Fry

Mr. Fry is believed to be deceased.  If necessary, Mr. Fry will testify via his testimony given in Taylor's prosecution, including on March 1, 1972 (marked as Pima County's Trial Exhibit 605).

59. Officer Fugate (No. 7688).

Officer Fugate will testify regarding his contacts with Officers Bergman, Briamonte, and Condiss, who were originally dispatched to the Pioneer Hotel, his observations when he first arrived that the Hotel was smoking heavily but there were not visible flames, his deployment of necessary units, call for ambulances and fire units, evacuation of fire victims, and crowd control, as memorialized in his report (marked as Plaintiff's Trial Exhibit 551, TAYLOR012143–12148).

60. Pedro Galaz

Mr. Galez had contacts and communications with Mario Corral. Mr. Galez is expected to testify regarding his knowledge and information related to Mario Corral's and Taylor's involvement in the Pioneer Hotel fire (*see also* COT002345–2346).

61. Armando A.C. Garcia

Mr. Garcia will testify about Taylor setting fire to rolls of toilet paper at the juvenile detention center (*see* COT002339–2340). Mr. Garcia is expected to testify as to any contacts and communications he may have had with Taylor and other inmates at the juvenile detention center. If necessary, Mr. Garcia will testify consistent with his testimony at Taylor's prosecution, including on October 26, 1971 (marked as Pima County's Trial Exhibit 572).

62. Sergeant H. L. Gassaway

Sergeant Gassaway is believed to be deceased. Sergeant Gassaway's involvement is memorialized in his reports (*see* COT003270–3271 -3334–3336, -3337–3338). Sergeant Gassaway will testify via his testimony given at Taylor's prosecution, including on February 4, 1971 (marked as Pima County's Trial Exhibit 553), February 8, 1971 (marked as Pima County's Trial Exhibit 556), July 2, 1971 (marked as Pima County's Trial Exhibit 563), October 15, 1971 (marked as Pima County's Trial Exhibit 1070), January 11, 1972 (marked as Pima County's Trial Exhibit 1078), and February 24, 1972 (marked as Pima County's Trial Exhibit 1100).

63. Officer Gerhardt (No. 7358)

Officer Gerhardt will testify regarding his involvement in crowd control and assisting Officer Livingston to Carl Hayden Hospital due to injuries, as memorialized in his report marked as Plaintiff's Trial Exhibit 483 (TAYLOR011155).

64. Officer Gomez (No. 6582)

Officer Gomez will testify consistent with his report (marked as Plaintiff's Trial Exhibit 484, TAYLOR011156–11157).

65. Rosie Gonzales

Ms. Gonzales is expected to testify regarding all contacts and communications she may have had with Taylor and/or Mario Corral (*see* TAYLOR013105–13107).

66. Officer Goodnight (No. 148)

Officer Goodnight will testify consistent with his report (marked as Plaintiff's Trial Exhibit 482, TAYLOR011153–11154).

67. Officer Greving (No. 7375)

Officer Greving will testify regarding his efforts to evacuate victims from the Pioneer Hotel, his observations of a fireman falling off the ladder, and assisting in crowd control, as memorialized in his report (marked as Plaintiff's Trial Exhibit 481, TAYLOR011151–11152).

68. Officer Grider (No. 6959)

Officer Grider will testify he was assigned as a security officer at the Pioneer Hotel and that, while he was providing security, only fire department personnel, police personnel, and outside fire investigators were on the floor, as memorialized in his report (marked as Plaintiff's Trial Exhibit 480, TAYLOR011150).

69. Detective T. Hacker (No. 4587)

Detective Hacker will testify he prepared a report stating that Taylor was charged with arson of the Pioneer Hotel and 28 counts of murder resulting from the fire, that the case was cleared by formal charges, the case would be pending final disposition, and the investigation will be continuing, and that the case was reclassified as arson and homicide from undetermined, as memorialized in his report (marked as Plaintiff's Trial Exhibit 530, TAYLOR011339).   Detective Hacker will testify regarding his involvement in the Pioneer Hotel fire investigation including all interviews and follow up conducted by him, as memorialized in his report (marked as Plaintiff's Trial Exhibit 530, TAYLOR011340–11375).

70. Thomas Allen Haskins

Mr. Haskins is expected to testify about his knowledge of Taylor, as memorialized in TPD's investigative report (TAYLOR012581 and COT002333, - 2334).  Mr. Haskins is expected to testify regarding any contacts and communications he may have had with Taylor and/or other inmates regarding Taylor and/or the Pioneer Hotel fire.

71. Officer Hardyman (No. 5137)

Officer Hardyman will testify regarding his check for personal property at the Pioneer Hotel, as memorialized in his report (marked as Plaintiff's Trial Exhibit 478, TAYLOR011145).

72. Officer Harrell (No. 4679)

Officer Harrell will testify regarding his involvement in evacuating victims from the hotel as memorialized in his report (marked as Plaintiff's Trial Exhibit 477, TAYLOR011142–11144).

73. Officer Harris (No. 6954)

Officer Harris will testify regarding his involvement in crowd control and assisting victims down from the roof, as memorialized in his report (marked as Plaintiff's Trial Exhibit 477, TAYLOR011137–11138).

74. Officer Hay (No. 5341)

Officer Hay will testify regarding his attempts to retrieve blankets and first aid supplies from hospitals and fire stations, as memorialized in his report (marked as Plaintiff's Trial Exhibit 476, TAYLOR011139–11141).

75. Officer Hildebrand (No. 7368)

Officer Hildebrand will testify regarding his involvement in traffic control and crowd control, as memorialized in his report (marked as Plaintiff's Trial Exhibit 474, TAYLOR011136).

76. DPS Officer Holloway

Officer Holloway will testify he arrived at this hotel and was assigned to traffic and crowd control, that he observed two male Black youths going in and out of the hotel and then one of the youths returned in different clothes, and that he never observed a Black male assisting people leave the hotel, as memorialized in his statement (marked as Plaintiff's Trial Exhibit 474, TAYLOR011135).

77. James Marcus Holsinger

Mr. Holsinger is believed to be deceased.  If necessary, Mr. Holsinger will testify consistent with this testimony given at Taylor's prosecution, including on February 5, 1971, and February 25, 1972.

78. Johnny Howard

Mr. Howard is expected to testify that he provided matches to Taylor to burn toilet paper rolls in the bathroom, as memorialized in Larry Kern's statement to TPD officers (COT002339–2340. Mr. Howard is expected to testify as to any contacts and communications he may have had with Taylor and/or other inmates.

79. Glenn Idail

Mr. Idail is believed to be deceased.  If necessary, Mr. Idail will testify via his testimony given at Taylor's prosecution, including on June 29, 1971, and February 29, 1972.

80. Firefighter Clarence J. Jacome.

Mr. Jacome is believed to be deceased.  If necessary, Mr. Jacome will testify via his testimony given at Taylor's prosecution, including on March 16, 1972.

81. Officer A. Johnson (No. 5960)

Officer Johnson will testify regarding his involvement in traffic control, as memorialized in his report (marked as Plaintiff's Trial Exhibit 525, TAYLOR011280–11281).

82. David Marion Johnson

Mr. Johnson is believed to be deceased.  If necessary, Mr. Johnson will testify via his testimony given in Taylor's prosecution, including on January 28, 1971 (marked as Pima County's Trial Exhibit 1048), January 29, 1971 (marked as Pima County Trial Exhibit 1049), June 24, 1971 (marked as Pima County Trial Exhibit 1061), and February 23, 1972 (marked as Pima County Trial Exhibit (1099).

83. Officer Kalak (No. 168)

Officer Kalak will testify he went to the third level of the hotel and assisted in evacuating victims and his other involvement at the hotel, as memorialized in his report (marked as Plaintiff's Trial Exhibit 526, TAYLOR011282–11284).

84. Howard Kashman

Mr. Kashman will testify to the counter-designations to his September 9, 2021 deposition.

85. Commander Kassler (Misidentified as Commander "Assler" in Defendant's Disclosure Statement)

Commander Kassler will testify he was a Field Commander for City of Tucson Fire Department and was at the scene of the Pioneer Hotel Fire on December 20, 1970 (*see* COT000789, -805).

86. Officer Keeley (No. 170)

Officer Keeley will testify consistent with his report (marked as Plaintiff's Trial Exhibit 524, TAYLOR011278–11279).

87. Larry Gene Kern

Mr. Kern is believed to be deceased.  If necessary, Mr. Kern will testify via his testimony given at Taylor's prosecution, including on February 26, 1972.

88. William Kimble

Mr. Kimble is expected to testify regarding all aspects of his involvement in the

1  civil lawsuit against the City of Tucson, including all contacts with witnesses and/or

2  experts.

3      89. Detective Beryl Kohlman

4          Detective Kohlman is expected to testify regarding his interview of Taylor on

5  January 21, 1970, as memorialized in his report (COT003142, COT003185–3187).

6  Detective Kohlman is expected to testify regarding his contacts with Rosie Gonzalez

7  related to Taylor's and Mario Corral's involvement in the Pioneer Hotel fire, as

8  memorialized in his report COT003212–3213).  Detective Kohlman is expected to

9  testify regarding his interview of Pete Galoff, who told Detective Kohlman he bought

10  a watch from Mario Corral, who said he stole the watch from the Pioneer Hotel, as

11  memorialized in his report (COT003214–3215).  Detective Kohlman is expected to

12  testify regarding his interview of Albert Canez who stated he spoke with Mario Corral

13  about the fire and Mario Corral stated he set the fire with Taylor by lighting paper and

14  throwing it on the floor, that Mario Corral may have worked at the Pioneer Hotel and

15  was possibly in possession of the white jacket, and that Mario Corral kept the jacket to

16  wear and act like a bellhop and commit burglaries, as memorialized in his report

17  (COT003022).  Detective Kohlman is expected to testify he interviewed Pedro Galaz

18  who stated Mario Corral attempted to sell him a watch and pistol and told him the

19  watch was stolen from the Pioneer Hotel, that Mario Corral said he was with "Negrito"

20  and that "Negrito" had stayed when they started the fire, Mario ran, and "Negrito" got

21  caught; and that he showed Pedro Galaz a photo of Taylor and identified Taylor as

22  "Negrito," as memorialized in his reports (COT003024, COT002345–2346).

23  Detective Kohlman is expected to testify regarding his contacts with Albert Canez who

24  told Detective Kohlman he was at the County Hospital when they brought Taylor in

25  and Taylor said, "They are blaming everything on me when they should be blaming

Mario.  He's the one that started the fire," as memorialized in his report (COT002345–

2346).  Detective Kohlman is expected to testify regarding his contact with Larry Kern who said he overheard Taylor telling Thomas Haskins that a friend was with him the night of the fire who also had matches but wasn't caught and his friend wasn't caught because he went a floor or two above Taylor.  Detective Kohlman is expected to testify that, during his interview with Larry Kern, Kern told him that Taylor would take rolls of toilet paper into the bathroom and light them on fire during their incarceration at the juvenile detention center, as memorialized in his report (COT003224–3225, COT002339–2340).  Detective Kohlman is expected to testify that Mario Corral admitted to participating in a previous burglary with Taylor and Mr. Grigsby, as memorialized in his report (COT003219–3221).  Detective Kohlman is expected to testify regarding his interviews of Anne Marie Riesgo and Rosie Gonzalez, as memorialized in his report (COT003257–3258).  If necessary, Detective Kohlman is expected to testify consistent with his testimony given at Taylor's prosecution, including on February 4, 1971.

90. Sergeant Kenneth Krieger (No. 252)

Sergeant Krieger is believed to be deceased.  If necessary, he will testify via his report (marked as Plaintiff's Trial Exhibit 522, TAYLOR011270–11275), and testimony given at Taylor's prosecution, including on March 4, 1972.

91. Freida Lampton

Ms. Lampton is believed to be deceased.  She will testify via her testimony given at Taylor's prosecution, including on March 16, 1972.

92. Freddie Langlois

Mr. Langlois will testify that he made statements to individuals stating TPD had the right Pioneer Hotel fire suspect in jail, as memorialized in TPD's investigative report (COT003078).

93. Assistant Chief Robert Lehner

Assistant Chief Lehner is expected to testify regarding the Tucson Police Department's 2002 review of the Pioneer Hotel fire.

94. Officer Leverenz

Officer Leverenz will testify consistent with his report (marked as Plaintiff's Trial Exhibit 523 , TAYLOR011276–1277).

95. Lieutenant Lexchinshy

Officer Lexchinshy will testify consistent with his report (marked as Plaintiff's Trial Exhibit 521, TAYLOR011269).

96. Officer Alfred Lingham (No. 181)

If necessary, Officer Lingham will testify consistent with his testimony given at Taylor's prosecution, including on October 15, 1971, and March 16, 1972.

97. Officer M. Livingston (No. 7365)

Officer Livingston will testify consistent with his report (marked as Plaintiff's Trial Exhibit 50, TAYLOR011265–11268).

98. Officer R. Manriquez (No. 6258)

Officer Manriquez will testify consistent with his report (marked as Plaintiff's Trial Exhibit 518, TAYLOR011257–11260).

99. Captain Wes Maudlin.

Captain Maudlin is believed to be deceased.  He will testify via his report, memorialized at COT002510–2511.

100. Officer Molchan (No. 7835)

Officer Molchan will testify consistent with his report (marked as Plaintiff's Trial Exhibit 517, TAYLOR011256).

101. Sergeant Jack Moore

Sergeant Moore's involvement is memorialized in his reports (*see* Plaintiff's Trial Exhibit 527, COT003331, COT003139–3141, TAYLOR009883–9893).

Sergeant Moore is believed to be deceased.  If necessary, he will testify via his reports.

102.     Officer Morris (No. 7070)

Officer Moore will testify consistent with his report (marked as Plaintiff's Trial Exhibit 515, TAYLOR011246–11249).

103.     Officer Morrison (No. 3697)

Officer Morrison will testify consistent with his report (marked as Plaintiff's Trial Exhibit 514, TAYLOR011244–11245).

104.     Officer F. Muhl (No. 248)

Officer Muhl will testify consistent with his report (marked as Plaintiff's Trial Exhibit 513, TAYLOR011242–11243).

105.     Officer Mulleneax (No. 4349)

Officer Mulleneax will testify consistent with his report (marked as Plaintiff's Trial Exhibit 511, TAYLOR011236–11237).

106.     Officer Milan Paul Murchek

Officer Murchek will testify regarding his interviews of Taylor on December 20, 1970 (as memorialized in his reports, COT003019, COT003334–3336, COT00333–3340), his interview of Robert Carillo (as memorialized in his report, COT002324–2325), and his contacts and communications with TFD personnel, TPD personnel, PCAO personnel, experts, public defender personnel, and/or other individuals regarding the Pioneer Hotel fire and/or Plaintiff's criminal proceedings.  If necessary, Officer Murchek will testify consistent with the testimony given at Taylor's prosecution, including on February 4, 1971, June 29 and 30, 1971, January 11, 1972, and on March 4, 1972.

107.     Lieutenant Colonel Carl Needham

Lieutenant Needham will testify consistent with his report (*see* COT002510–2511).

108.     Officer O'Sullivan (No. 6535)

Officer O'Sullivan is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 512, TAYLOR011238–11241).

109.     Angelo (Andy) Palm

Mr. Palm is believed to be deceased.  He will testify via his testimony given in Taylor's prosecution, including on June 24, 1971, and February 29, 1972.

110.     Officer Pascal (No. 4874)

Officer Pascal is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 509, TAYLOR011233).

111.     Officer Patton (No. 5100)

Officer Patton is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 510, TAYLOR011234–11235).

112.     Officer Pierce

Officer Pierce will testify regarding his activities on December 20, 1970, including his activities with crowd control, as memorialized in Officer Alison's report (marked as Plaintiff's Trial Exhibit 576, TAYLOR012236–12237).

113.     Officer Pupkoff (No. 4592)

Officer Pupkoff is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 505, TAYLOR011218–11221).

114.     Officer Rees (No. 3800)

Officer Rees is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 506, TAYLOR011222–11223).

115.     Officer Reyna

Officer Reyna is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 529, TAYLOR011317–11338).

116.     Nicholas P. Richardson

Mr. Richardson is expected to testify that individuals informed him that Taylor was the correct Pioneer Hotel fire suspect, as memorialized in TPD's investigative report (COT003078).

117.    Anne Marie Riesgo

Ms. Riesgo will testify as to Taylor's involvement in the Pioneer Hotel fire, including as memorialized in TPD's investigative report (TAYLOR013105–13107, COT003212–3213).  Ms. Riesgo is expected to testify regarding all contacts and communications she may have had with Taylor and/or Mario Corral.

118.    Firefighter William F. Ricketts

Mr. Ricketts is believed to be deceased.  Mr. Ricketts will testify via his testimony given at Taylor's prosecution, including on February 12, 1972.

119.    Officer Roche

Officer Roche is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 503, TAYLOR011213–11214).

120.    Officer Rogers

Officer Rogers is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 531, TAYLOR011376–11377).

121.    Sergeant Eugene Rossetti

Sergeant Rossetti's involvement is memorialized in his report (marked as Plaintiff's Trial Exhibit 668, TAYLOR013057–13059).  Sergeant Rossetti will testify consistent with his report and his testimony given at Taylor's prosecution, including on February 4, 1971,  February 8, 1971, June 29, 1971, October 15, 1971, January 11, 1972, and February 24, 1972.

122.    Officer Sanders

Officer Sanders is expected to testify consistent with his report (marked as Plaintiff's Trial Exhibit 504, TAYLOR011215–11217).

1    123.    Officer Schwartz

2        Officer Schwartz is expected to testify consistent with his report (marked as

3    Plaintiff's Trial Exhibit 502, TAYLOR011211–11212).

4    124.    Giles Scoggins

5        Mr. Scoggins is believed to be deceased.  He will testify via his testimony given

6    at Taylor's prosecution, including on January 29, 1971, June 24, 1971, and February

7    23, 1972.

8    125.    Douglas Scoopmire

9        Mr. Scoopmire is expected to testify regarding the polygraph examinations he

10   conducted on Taylor, Victor Simental, Bruce Wallmark, Miguel Balldenegro, Manny

11   Soto, and F. J. Castillo, including as memorialized at TAYLOR000464–476,

12   TAYLOR000903–920,        TAYLOR010545–10546,        TAYLOR012816–12817,

13   TAYLOR010550–10560, COT002652, COT002653, COT002654.  Mr. Scoopmire is

14   expected to testify consistent with his affidavit regarding his polygraph examination

15   of Bruce Wallmark (*see* TAYLOR012391).  If necessary, Mr. Scoopmire is expected

16   to testify consistent with this testimony given at Taylor's prosecution, including on

17   February 4, 1971 (marked as Pima County's Exhibit 1054, TAYLOR00113 –1230,

18   TAYLOR001614–1718. Mr. Scoopmire is expected to testify regarding any additional

19   investigation conducted by him related to the Pioneer Hotel fire.  Mr. Scoopmire is

20   expected to testify as to any contacts and communications he had with Taylor, TPD

21   personnel, PCAO personnel, witnesses, and/or any other individual regarding the

22   Pioneer Hotel fire and/or TPD's investigation.

23   126.    Walter R. Seaman

24       Mr. Seaman is believed to be deceased.  Mr. Seaman will testify via his

25   testimony given at Taylor's prosecution, including on June 29, 1971, and June 30,

1971, July 2, 1971, July 6, 1971, July 8, 1971, and February 29, 1971.

1    127.    Officer Sedlmayr

2         Officer Sedlmayr is expected to testify consistent with his report (marked as

3    Plaintiff's Trial Exhibit Ex 500, TAYLOR011207–11208).

4    128.    Officer Seitsinger

5         Officer Seitsinger is expected to testify consistent with his report (marked as

6    Plaintiff's Trial Exhibit 501, TAYLOR011209–11210).

7    129.    Officer Shoffner

8         Officer Shoffner is expected to testify consistent with his report (marked as

9    Plaintiff's Trial Exhibit 498, TAYLOR011204).

10   130.    Officer Skuta

11        Officer Skuta is expected to testify consistent with his report (marked as

12   Plaintiff's Trial Exhibit Ex 499, TAYLOR011205–11206).

13   131.    Dr. Lars Slette

14        Dr. Slette is believed to be deceased.  He will testify regarding his treatment and

15   diagnosis of Taylor prior to his incarceration for the Pioneer Hotel fire via TPD's

16   investigative report (*see* COT002510-2511).

17   132.    Detective David Smith

18        Detective Smith will testify regarding any communications he has had with

19   Taylor, Taylor's defense counsel, Taylor's experts, Taylor's post-conviction experts,

20   Taylor's civil counsel, reporters, and/or any other individual regarding the Pioneer

21   Hotel fire, Taylor, and/or Taylor's criminal proceedings.   This will include his

22   interactions and dealings with Claus Bergman; his interview of Taylor on December

23   20, 1970; his search of Taylor on December 20, 1970, and impoundment of match

24   books found on Taylor's person; his contacts and communications with Taylor's

25   mother, Mary Mills; and his interview of Taylor's brother.  (*See also* COT002721,

COT002385,   COT002755–2756,   COT003288–3290,   COT003152–3154).   If

1   necessary, Detective Smith will testify consistent with his testimony at Taylor's

2   prosecution, including on February 4, 1971, February 8, 1971, June 24, 1971, February

3   25, 1971.

4        133.      Detective Robert Sulzbach

5        Detective Sulzbach is expected to testify regarding his attempts to locate Bruce

6   Wallmark on February 26, 1972, and his interview of Robert Jackson on February 27,

7   1972, as memorialized in his report (COT002335–2336, Pima County 022693–22694).

8   Detective Sulzbach is expected to testify that Robert Jackson told him about his

9   conversation with Taylor, including that Taylor stated that he found a can of lighter

10  fluid and that Taylor burned a book of matches to light his cigarette.  Detective

11  Sulzbach is expected to testify that Taylor told Robert Jackson he was playing with

12  matches and the lighter fluid and Talor would squirt some lighter fluid on the wall ,

13  would light a match, and set the lighter fluid on fire.  Detective Sulzbach is expected

14  to testify that Taylor told Robert Jackson that when he lit the lighter fluid, Taylor heard

15  someone coming, didn't have time to put out the fire, and the fire was pretty big.

16  Detective Sulzbach is expected to testify that Taylor told Robert Jackson he didn't

17  want to get in trouble so he left and thought the fire would go out.  Detective Sulzbach

18  is expected to testify consistent with his Affidavit dated May 8, 1972 (*see* Pima County

19  022249).  Detective Sulzback is expected to testify he took a voluntary statement of

20  Robert Jackson on February 27, 1972 (*see* Pima County 010406–10407).  Detective

21  Sulzbach is expected to testify he took Robert Jackson in for a polygraph examination

22  (*see* Pima County 010408).

23       134.      Arzula Tatum

24       Mr. Tatum is believed to be deceased.  If necessary, Mr. Tatum will testify

25  consistent with his testimony at Taylor's prosecution, including on February 28, 1972.

         135.      Officer Thompson (No. 7067)

1    Officer Thompson will testify consistent with his report (marked as Plaintiff's

2    Trial Exhibit 496, TAYLOR011200–11201).

3    136.    Bruce Wallmark

4    Wallmark may testify to the contents of his August 11, 1971 statement, his May

5    5, 1972 and May 23, 1972 affidavits, his May 23, 1972 interview with Rex Angeley,

6    his May 5, 2022 interview with Randy Downer and Taylor's criminal counsel, and his

7    testimony given in Taylor's prosecution on February 25, 1972, and February 28, 1972.

8    137.    Detective M. Walsh (No. 2939)

9    Detective Walsh will testify consistent with his report (marked as Plaintiff's

10   Trial Exhibit 494, TAYLOR011193–11196).

11   138.    John A. Wasley

12   Mr. Wasley is expected to testify regarding all aspects of his involvement during

13   the civil litigation against the Pioneer Hotel, including all contacts with witnesses

14   and/or experts.

15   139.    Officer Webb (No. 7069)

16   Officer Webb will testify consistent with his report (marked as Plaintiff's Trial

17   Exhibit 493, TAYLOR011191–11192).

18   140.    Joe B. Welborn

19   Mr. Welborn is believed to be deceased.  Mr. Welborn will testify via his

20   testimony given at Taylor's prosecution, including on July 2,1971, July 6, 1971, and

21   July 8, 1971.

22   141.    Officer White

23   Officer White will testify consistent with his report (marked as Plaintiff's Trial

24   Exhibit 492, TAYLOR011188–11190).

25   142.    John Williams

If necessary, Mr. Williams will testify consistent with his testimony given in

Taylor's prosecution, including on June 17, 1971, June 18, 1971, and June 23, 1971.

143.   Officer T. Wilson

Officer Wilson will testify consistent with his report (marked as Plaintiff's Trial Exhibit 489, TAYLOR011181–11182).

144.   Officer Woodard

Officer Woodard will testify consistent with his report (marked as Plaintiff's Trial Exhibit 490, TAYLOR011183–11186).

145.   Officer Woolison

Officer Woolison will testify consistent with his report (marked as Plaintiff's Exhibit 488, TAYLOR011172–11180).

146.   Officer Zaches

Officer Zaches will testify consistent with his report (marked as Plaintiff's Exhibit 487, TAYLOR011170–11171).

147.   Officer Zimmerman

Officer Zimmerman will testify consistent with his report (marked as Plaintiff's Exhibit 486, TAYLOR011167–11169).

148.   Officer Zylstra

Officer Zylstra will testify consistent with his report (marked as Plaintiff's Exhibit 485, TAYLOR011158–11166).

149.   Myles Braccio

Myles Braccio will testify regarding the Pima County Attorney's Office's 2021-2022 review of Taylor's convictions, his involvement in the draft motion to vacate and the decision process surrounding that draft motion, and his experience working with Jack Chin.

150.   Custodians necessary to authenticate and/or lay foundation and/or chain of custody for documents and exhibits at trial.

151.     Any witness listed by Plaintiff and/or by Defendant City of Tucson.

**Defendant City of Tucson's Witnesses:**

1. Lawrence Hust

Mr. Hust is expected to testify consistent with the police reports he authored pertaining to the Pioneer Hotel fire case/investigation, consistent with his disclosed affidavit, and his independent recollection of his involvement with the Pioneer Hotel investigation in the 1970s

2.   Molly Wise, Tucson Police Department Records Superintendent,

Ms. Wise is expected to testify, if necessary, consistent with her disclosed Declaration, regarding some of the topics listed in Plaintiff Taylor's 30(b)(6) Deposition Notice to the City in this case.

3. Carol Van Gelder, Lead Human Resources Analyst, City of Tucson Human Resources Department

Ms. Van Gelder is expected to testify, if necessary, consistent with her disclosed Declaration, regarding some of the topics listed in Plaintiff Taylor's 30(b)(6) Deposition Notice to the City in this case. Ms. Van Gelder is also expected to testify regarding: (1) the public records request from Peter Limperis to the City of Tucson regarding Claus Bergman dated November 23, 2021, disclosed herewith; and (2) a personnel card of Claus Bergman she located.

The following witnesses testified at Taylor's criminal trial in 1972, and if unavailable to testify live, the City intends to present their sworn testimony as noted below. If still alive and available to testify live, it is anticipated that they will testify consistent with what they said under oath in the cited sworn testimony below.

4. Rodney Lee Dingle

Mr. Dingle worked for Hughes Aircraft for a little over 16 years and he was at the Pioneer Hotel for Hughes's Christmas dance on the night of the fire. Mr. Dingle's prior sworn testimony regarding his interaction with Taylor in the hotel, and Mr. Dingle's actions and observations during the fire, are detailed in his prior sworn testimony, which will be presented at trial, and can be located as follows: Probable Cause hearing testimony at Taylor000974-1004; criminal trial testimony at County021092:22-021132:12.

5.  Frank Armenta

Mr. Armenta knew Taylor prior to the Pioneer Hotel fire from working at the Pima County Juvenile Center while Taylor had been previously detained there. He testified that he saw Taylor the evening of December 19, 1970, in the downtown area of Tucson, AZ, and had a conversation with Taylor about what he was doing downtown. Mr. Armenta's prior sworn testimony regarding his interaction with Taylor will be presented at trial and can be located as follows: Probable Cause hearing testimony at Taylor1004-1015:5; criminal trial testimony at Taylor4567, 4569:12-4614:25.

6.  David Johnson

Mr. Johnson worked at the Pioneer Hotel and was working the night of the fire. He came upon Taylor in the hotel after the fire started. Mr. Johnson's prior sworn testimony regarding his interaction with Taylor, and Mr. Johnson's actions and observations during the fire, are detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause hearing testimony at Taylor1015:13-1083:8; criminal trial testimony at County021228:24-021298:22 (note his deposition was read to the jury).

7.  Giles Scoggins

Mr. Scoggins worked at the Pioneer Hotel as the beverage manager, and he was working the night of the fire. He came into contact with Taylor in the hotel after the fire. Mr. Scoggins's prior sworn testimony regarding his interaction with Taylor, and Mr. Scoggins's actions and observations during the fire, are detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause hearing testimony at Taylor1084:4-1135:26, 1140:1-1211:15; criminal trial testimony at County021298:23-021443:6.

8. Art Camacho

Mr. Camacho was a bartender at the Pioneer Hotel and was working the night of the fire. Mr. Camacho came upon Taylor in the hotel sometime between 9:30-10 p.m. the night of the fire. Mr. Camacho's prior sworn testimony regarding his interaction with Taylor, and Mr. Camacho's actions and observations during the fire, are detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause hearing testimony at Taylor1211:21-1228:21.

9. Cyrillis Holmes, Jr.

Mr. Holmes was the State's fire expert and he provided testimony relating to his investigation of the fire, to include his conclusions about the cause and origin of the fire both at Taylor's probable cause hearing and at the criminal trial. His prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause hearing testimony at Taylor1235:1-1514:18; criminal trial testimony on February 15, 16, 17, 18, 19, 21 and 22, 1972 at Feb 15: County020175-20256, Feb 16: County020257-020414, Feb 17: County020416-020594, Feb 18: County 020595-020753, Feb 19: County 020754-020864, Feb 21: County 020865-021036, Feb 22: County 021037-021070; 021040-021069.

10. Louis Dwight Adams

TPD Officer Adams first contacted Taylor at the scene of the Pioneer Hotel fire. His contact with Taylor and his involvement with the investigation of the fire, to include Giles Scoggins' identification of Taylor at the scene and Adams knowledge of and observations when he transported Taylor to the detective division on December 20, 1970, and his actions and personal observations, as detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause Hearing testimony Taylor1515-1562 at 1519:1-1562:14 and PimaCounty050887:3-050905:25, criminal trial testimony at Taylor4330, 4334:8-4335:19, 4336:2-4364:4, 4374:9-4414:19, 4415:18-4421:4.

11.  Milan Murchek

TPD Sergeant Murchek responded to the police station in response to the Pioneer Hotel incident. He partly participated in Taylor's interview. Sgt. Murcheck participation in this interview and his involvement with the investigation of the fire, to include his actions and personal observations, are detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause Hearing testimony at Taylor1563:12-1578:9; criminal trial testimony at Taylor006667-6696

12. Henry Gassaway

TPD Sergeant Gassaway responded to the police station in response to the Pioneer Hotel incident. He eventually came into contact with Taylor at the police station. Sgt. Murchek's contact with Taylor and his involvement with the investigation of the fire, to include his actions and personal observations, are detailed in his prior sworn testimony, which will be presented at trial and can be located as follows: Probable Cause Hearing testimony at Taylor1578:13-1599:13; criminal trial testimony at Taylor004443-4511.

13. David Smith

1    Detective Smith reported to the police station at around 8 a.m. on December 20,

2  1970. He first saw Taylor in the detective division in one of the conference rooms in

3  the police station at about 9 a.m. Det. Smith was asked to take Taylor to the Pima

4  County Juevile Center, which he did at around 9:30 a.m. Det. Smith's involvement

5  with the investigation of the fire, to include his actions and personal observations, are

6  detailed in his prior sworn testimony, which will be presented in their entirety and

7  can be located as follows: Probable Cause Hearing testimony at Taylor1600:1-

8  1613:26, 1617:1-1630:2 and Pima County050958:10-050974:15; criminal trial

9  testimony at Taylor004567,4659-4693. Detective Smith is also expected to testify

10  regarding his contacts and communications with Plaintiff's mother, Mary Mills, as

11  memorialized in his report at COT003152 – 3154, and his interview with Plaintiff's

12  brother, as memorialized in his report at COT002755 – 2756.

13    14. Paul Charters

14    Mr. Charters was the director of court services at Pima County Juvenile Detention

15  Center. Mr. Charters has knowledge and information regarding Taylor. Mr. Charters

16  is expected to testify consistent with his probable cause testimony bates-stamped as

17  TAYLOR001614 – 1718.

18    15. Rex Angeley

19    Mr. Angeley was an investigator for Pima County Attorney's Office and assisted

20  in investigating the Pioneer Hotel fire during the criminal prosecution of Taylor. Mr.

21  Angeley's involvements are memorialized in his report Bates-stamped as

22  TAYLOR011717 – 11875. Mr. Angeley testified at Plaintiff's probable cause hearing

23  and is expected to testify consistent with that testimony, Bates-stamped as

24  TAYLOR001614 –1718 and Pima County050944:6-050958:8. Mr. Angeley testified

25  at Plaintiff's criminal trial and is expected to testify consistent with his trial testimony,

Bates-stamped as TAYLOR004567 – 4755.

16. Douglas Scoopmire

Mr. Scoopmire was a polygraph examiner at all relevant times. Mr. Scoopmire is expected to testify regarding the polygraph examinations he conducted on Plaintiff, Victor Simental, Bruce Wallmark, Miguel Balldenegro, Manny Soto, and F. J. Castillo, as memorialized at TAYLOR000464 – 476, TAYLOR000903 – 920, TAYLOR010545 10546, TAYLOR012816 – 12817, TAYLOR010550 – 10560, COT002652, COT002653, COT002654. Mr. Scoopmire is expected to testify consist with his testimony provided at the probable cause hearing, Bates-stamped as TAYLOR001137 – 1230 and TAYLOR001658:24-001666:20. Mr. Scoopmire provided an affidavit regarding his polygraph examination of Bruce Wallmark, Bates-stamped as TAYLOR012391. Mr. Scoopmire is expected to testify regarding any additional investigation conducted by him related to the Pioneer Hotel fire. Mr. Scoopmire is expected to testify as to any and all contacts and communications he had with Plaintiff, TPD personnel, PCAO personnel, witnesses, and/or any other individual regarding the Pioneer Hotel fire and/or TPD's investigation. Mr. Scoopmire is expected to testify as to any additional relevant information he may possess.

17. Gerald Soop

Mr. Soop was a receiving officer at the Pima County Juvenile Court Center on December 20, 1970, when Taylor was taken there. He spoke with Taylor and made personal observations about his demeanor on that day. Mr. Soop testified about his personal knowledge regarding these matters at Taylor's probable cause hearing. His sworn testimony is memorialized at Taylor001666:24-1684:19, which the City intends to present at trial.

18. Beryl Kohlman

1      TPD Officer Kohlman was involved in the investigation into the Pioneer Hotel fire.

2  His involvement is memorialized in his testimony at Taylor's probable cause hearing,

3  which the City intends to present at trial, at Pima County001684:21-1694:2

4      19.  Eugene Rossetti

5      TPD Detective Rossetti was involved in the investigation into the Pioneer Hotel

6  fire. His involvement is memorialized in his testimony at Taylor's probable cause

7  hearing, which the City intends to present at trial, at Taylor001694:5-1702:9 and Pima

8  County050931:8-050943:5. He also testified at the criminal trial, which will also be

9  presented and can be found at County17666:8-017687:25.

10      20.  Patrick McGuire

11      TPD Sgt. McGuire saw Taylor at the police station on December 20, 1970, he did

12  not participate in questioning Taylor, but he was called to testify at Taylor's probable

13  cause hearing and the City intends to present that testimony at trial as memorialized at

14  Taylor1702:12-1709:18.

15      21.  James Holsinger

16      Mr. Holsinger was a Pioneer Hotel employee. He was the timekeeper and payroll

17  person. He testified at Taylor's probable cause hearing and the City intends to present

18  his testimony at trial, which can be found at Pima County050831:13-050857:18. He

19  also testified at the criminal trial, which will also be presented and can be found at

20  County017811:15-017854:18.

21      22.  Charles McGee

22      Mr. McGee was the Chief Engineer at the Pioneer Hotel in charge of all the

23  maintenance and mechanical equipment in the building. He was at the hotel when the

24  fire occurred. He testified at Taylor's probable cause hearing and his testimony can be

25  found at PimaCounty001747:19-001771:4, which will be presented at trial at this trial.

      23.  Oscar Montano

1    Mr. Montano was a detention officer and the Pima County Juvenile Detetion

2    Center. He was the officer who brought Taylor back into the center to be formally

3    detained there. He testified about his detention of Taylor, his own actions and

4    conversations during that process and personal observations.  His testimony helped

5    form the basis to charge Taylor with arson and felony murder. His prior sworn

6    testimony, which will be presented in their entirety and can be located as follows:

7    Probable Cause Hearing testimony at Pima County050975:5-050993:7.

8    24. William Briamonte

9    Former TPD Officer Briamonte responded to the Pioneer Hotel fire on December

10   20, 1970 at approximately 12:21 a.m. Ofc. Briamonte's prior sworn testimony about

11   his involvement with the hotel fire will presented at trial in their entirety and can be

12   found as follows: Probable Cause Hearing testimony at Pima County 051026:8-

13   051047:26; criminal trial testimony at County009553:12-009585:18.

14   25. Lynden Gilmore

15   Captain Gilmore was employed by Tucson Fire Department at all relevant

16   times. Captain Gilmore is expected to testify regarding his investigation of the Pioneer

17   Hotel fire. Captain Gilmore is expected to testify he was at the Pioneer Hotel directly

18   after the fire and collected samples of fire debris for laboratory testing as memorialized

19   in Sgt. Moore's report at COT003139 – 3141. Captain Gilmore is expected to testify

20   he did not assist Glen Miller in his investigation as memorialized at COT003139 –

21   3141. Captain Gilmore is expected to testify regarding the burn test conducted by him

22   and Tucson Fire Department. Captain Gilmore completed a fire cause report for

23   Tucson Fire Department as memorialized at COT001101 and TAYLOR009448 - 9452.

24   Captain Gilmore is expected to testify regarding his contact with Glen Miller as

25   memorialized at TAYLOR010741 – 10746 and Pima County 000012-000017. Captain

Gilmore testified at Taylor's probable cause hearing at PimaCounty051048:8-

51170:26 and at Taylor's criminal trial at TAYLOR004935-4944, and is expected to testify consistent with his testimony. Captain Gilmore may possess additional relevant information.

26. Gregary Chmara

Mr. Chmara was a newsman for KVOA, Channel 4, in Tucson, AZ and he responded to the Pioneer Hotel fire to provide news coverage. He provided testimony at Taylor's probable cause hearing, and his testimony helped form the basis to charge Taylor with arson and felony murder.  His testimony, which will be presented at trial can be found as follows: Probable Cause hearing at Pima County051177:10-051223:5. He also testified at the criminal trial, which will also be presented and can be found at County009189:5-009199:10.

27. Mary Mills

Ms. Mills is Taylor's mother and Taylor's defense attorney called her to testify at the probable cause hearing. That testimony may be presented at trial and can be found at Taylor1709:22-1716:6 and PimaCounty051223:7-051224:20.

28. Robert Slagel

TFD Fire Chief Slagel testified at Taylor's probable cause hearing at Pima County051224:22-51234:15, and at Taylor's criminal trial at COT000649–661; TAYLOR006562–6571. If necessary, the City will present his testimony in their entirety at trial.

The City may also call any witness listed by Co-Defendant Pima County, either live, if available, or by presenting that witness's prior sworn testimony transcript if they testified at Taylor's criminal hearings or criminal trial.

**F.  LIST OF EXHIBITS**

1.     Provide a numbered list of all exhibits that the parties agree are admissible in evidence.  List Plaintiff's and Defendant's exhibits separately, provide sufficient information to identify the exhibit, and separately identify those items that the party expects to offer and those it may offer it the need arises:

     *A.*  Relevant portions/excerpts from all depositions taken[11].

     *B.*  Relevant and material answers to discovery.

     *C.*  Disclosure statements, supplements, and attachments thereto.

     *D.*  All materials produced in response to subpoenas and not objected to by Plaintiff.

     *E.*  Any other discovery utilized or produced in this case and not objected to by Plaintiff.

     *F.*  All exhibits to be utilized by any party to this litigation and not object to by Plaintiff.

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 1 | Truesdail Lab Report | TAYLOR000001-2 | City Objections: Lacks chain of custody. Rule 802, whether the fire was arson is not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, |

---

[11] The City contends that Plaintiff's inclusion of A-F boilerplate language herein is not compliant with the Court's Order, Dkt. 113, and Plaintiff is precluded from using any exhibit not specifically listed in the Joint Proposed Pretrial Order in compliance with the Court's Order.
[12] Defendant City of Tucson joins in the County's objections to Plaintiff's exhibits.
[13] Defendant Pima County joins in Defendant City of Tucson's objections.

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | at issue (Dkt. 869, 28:19-21)) | 602, 802, 901, 1002–1005 |
| 2 | DOC time records | TAYLOR000003-30 | City's Objections: FRE 106, 402, 403, 802 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 3 | April 2, 2013 transcript | TAYLOR000031-56 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 4 | Weiss October 22, 1973 Censure Order | TAYLOR000057 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 402, 403, 404(a), 404(b), 602, 608, 609, 802, 901, 1002–1005 |
| 5 | Formal Complaint regarding Weiss | TAYLOR000058-61 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 404(a), 404(b), 602, 608, 609, 802, 901, 1002–1005 |
| 6 | Arizona Daily Star article dated January 14, 1970 | TAYLOR000062 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 7 | Arizona Daily Star article dated April 14, 1970 | TAYLOR000063 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 8 | Arizona Daily Star article dated August 13, 1970 | TAYLOR000064 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 9 | Arizona Daily Star article dated December 3, 1970 | TAYLOR000065 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 10 | Arizona Daily Star article dated December 10, 1970 | TAYLOR000066 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 602, 608, 609, 802, 901, 1002–1005 |
| 11 | Arizona Daily Star article dated February 9, 1970 | TAYLOR000067 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 12 | Arizona Daily Star article dated February 26, 1970 | TAYLOR000068 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
|  |  |  |  | 609, 802, 901, 1002–1005 |
| 13 | Arizona Daily Star article dated February 27, 1970 | TAYLOR000069 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 14 | Arizona Daily Star article dated January 9, 1970 | TAYLOR000070 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 15 | Arizona Daily Star article dated January 10, 1970 | TAYLOR000071 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 16 | Arizona Daily Star article dated January 13, 1970 | TAYLOR000072 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 17 | Arizona Daily Star article dated January 14, 1970 | TAYLOR000073 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 18 | Arizona Daily Star article dated January 17, 1970 | TAYLOR000074 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 19 | Arizona Daily Star article dated January 20, 1970 | TAYLOR000075 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 20 | Arizona Daily Star article dated January 25, 1970 | TAYLOR000076 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 21 | Arizona Daily Star article dated July 10, 1970 | TAYLOR000077 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 22 | Arizona Daily Star article dated July 21, 1970 | TAYLOR000078 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 23 | Arizona Daily Star article dated July 22, 1970 | TAYLOR000079 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 24 | Arizona Daily Star article dated June 4, 1970 | TAYLOR000080 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 25 | Arizona Daily Star article dated May 9, 1970 | TAYLOR000081 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 26 | Arizona Daily Star article dated May 22, 1970 | TAYLOR000082 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 27 | Arizona Daily Star article dated May 30, 1970 | TAYLOR000083 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 28 | Arizona Daily Star article dated November 24, 1970 | TAYLOR000084 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 29 | Arizona Daily Star article dated October 1, 1970 | TAYLOR000085 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 30 | Arizona Daily Star article dated October 13, 1970 | TAYLOR000086 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 31 | Arizona Daily Star article dated October 30, 1970 | TAYLOR000087 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 32 | Arizona Daily Star article dated September 19, 1970 | TAYLOR000088 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 33 | Arizona Daily Star article dated February 13, 1971 | TAYLOR000089 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 34 | Arizona Daily Star article dated January 4, 1971 | TAYLOR000090 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 35 | Tucson Citizen article dated October 3, 1963 | TAYLOR000091 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 36 | Tucson Citizen article dated July 7, 1965 | TAYLOR000092 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 37 | Tucson Citizen article dated July 12, 1965 | TAYLOR000093 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 38 | Tucson Citizen article dated July 8, 1966 | TAYLOR000094 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 39 | Tucson Citizen article dated January 10, 1970 | TAYLOR000095 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 40 | Tucson Citizen article dated August 25, 1970 | TAYLOR000096 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 41 | Tucson Citizen article dated August 31, 1970 | TAYLOR000097 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 42 | Tucson Citizen article dated August 31, 1970 (second) | TAYLOR000098 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 43 | Tucson Citizen article dated September 3, 1970 | TAYLOR000099 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 44 | Tucson Citizen article dated September 3, 1970 (second) | TAYLOR000100 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 45 | Tucson Citizen article dated December 21, 1970 | TAYLOR000101 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 407, 602, 802, 901, 1002–1005 |
| 46 | Tucson Citizen article dated December 31, 1970 | TAYLOR000102 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 47 | Tucson Citizen article dated January 1, 1971 | TAYLOR000103 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 | Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 48 | Tucson Citizen article dated January 28, 1971 | TAYLOR000104 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 49 | Tucson Citizen article dated January 29, 1971 | TAYLOR000105 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 407, 602, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005 |
| 50 | Tucson Citizen article dated February 25, 1971 | TAYLOR000106 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 51 | Tucson Citizen article dated June 24, 1971 | TAYLOR000107 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 602, 608, 609, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 52 | Tucson Citizen article dated June 12, 1972 | TAYLOR000108 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 602, 608, 609, 802, 901, 1002–1005 |
| 53 | Taylor Sentencing Order 4-2-2013 | TAYLOR000109 -122 | City's Objections: FRE 402, 403, 802, 805 | |
| 54 | Pioneer-Tales From The Morgue | TAYLOR000123 -196 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002– 1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 55 | Tucson Fire Dept Pioneer Hotel letter dated October 9, 1970 | TAYLOR000197-202 | City's Objections: FRE 402, whether the fire was arson is not at issue (Dkt. 869, 28:19-21); other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 407, 602, 802 |
| 56 | Evidence of other fires set at Pioneer Hotel dated October 6, 1970 | TAYLOR000203-204 | City's Objections: FRE 402, 403, other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 407, 602, 802 |
| 57 | Juvenile Detention Center Roster dated January 15-18, 1971 | TAYLOR000205-234 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 401, 402, 403, 802 | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 58 | Taylor juvenile records from 1971 | TAYLOR000235-382 | City's Objections: some documents within this range are not "juvenile records" to the extent Plaintiff seeks to use or admit any that fall outside "juvenile records" the City reserves all | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | applicable evidentiary objections for trial. | |
| 59 | Minute Entry dated May 18, 1972 | TAYLOR000383 -387 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 60 | Minute Entry dated October 26, 1971 | TAYLOR000388 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 61 | State v. Moore dated April 7, 1972 | TAYLOR000389 -396 | City's Objections: FRE 401, 402, 403. The Court will instruct the jury as to the law they | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | are to apply in this case. | 602, 608, 609, 802, 901, 1002–1005 |
| 62 | Order dated June 23, 1971 | TAYLOR000397-422 | City's Objections: The documents in this range include items beyond the mentioned Order. To the extent that the documents included in this exhibit are not the Order, the City reserves all applicable evidentiary objections for trial. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 63 | Change of Plea transcript dated April 4, 2013 | TAYLOR000423-448 | City's Objections: Duplicative of Plaintiff's Ex. 3, above | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 64 | Plea Agreement dated April 2, 2013 | TAYLOR000449-457 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 65 | Donald Anthony Did Teen Set Fatal Fire - CBS News dated March 1, 2002 | TAYLOR000458-460 | City's Objections: FRE 401, 402, 403, 802, 805, other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 701, 702, 802, 901, 1002–1005 |
| 66 | Arizona's Pioneer Hotel fire re-examined - CBS News dated March 31, 2013 | TAYLOR000461-463 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 401, 402, 403, 802, 805 | because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 802, 901, 1002–1005 |
| 67 | Scoopmire Polygraph Report and Notes | TAYLOR000464-476 | City Objections: The documents in this range may include items beyond the mentioned polygraph report and notes. To the extent that the documents included in this exhibit are not the | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | stated items, the City reserves all applicable evidentiary objections for trial. | |
| 68 | Appellant's Opening Brief | TAYLOR000477-578 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 69 | Motion for Rehearing decision 6-25-85 | TAYLOR000579-581 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 70 | Petition for Review denial 10-01-85 | TAYLOR000582 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | the City joins in the County's objections | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 71 | Attachment A – Petition for Writ of Habeas Corpus Ad Prosequendum | TAYLOR000583-587 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit, standing along, is inadmissible under Rule 106 |
| 72 | Attachment B – Release Date Calculation | TAYLOR000588-615 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit, standing along, is inadmissible under Rule 106.  It is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | also inadmissible under Rules 402, 403, 802, 901 |
| 73 | Attachment C – 2013 03 08 Email from Donny Villarente to Katherine Puzauskas | TAYLOR000616 -617 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 802, 901 |
| 74 | Attachment D – 2013 03 28 Email from Herbert Haley to Katherine Puzauskas | TAYLOR000618 -621 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 802, 901 |
| 75 | NFPA 1033 Standard for Professional Qualifications for Fire Investigator 2009 Edition | TAYLOR000622 -643 | City's Objections: FRE 401, 402, 403, 802, 805; whether the | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | fire was arson is not at issue (Dkt. 869, 28:19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 76 | Flammability and Carpet Safety Technical Bulletin 11/98 | TAYLOR000644-646 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 77 | Article – Up in Smoke by Douglas Starr | TAYLOR000647-654 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28:19-21) | 702, 704, 802, 901, 1002–1005 |
| 78 | Defendant's Motion and Memo in Support of Motion for Relief from Judgment with Lentini comments | TAYLOR000655 -709 | City's Objections: FRE 401, 402, 403, 802, 805; this filing does not relate to Louis Taylor. It relates to a criminal defendant named David Lee Gavitt and was filed in a Michigan state court. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 79 | State of New Hampshire v. David McLeod, Order - Lentini methodology excluded | TAYLOR000710 -715 | City's Objections: FRE 401, 402, 403, 802, 805; | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | this filing does not relate to Louis Taylor. It relates to a criminal defendant named David McLoed and was apparently issued in a New Hampshire state court. | under Rules 105, 106, 402, 403, 602, 702, 704, 802, 901, 1002–1005, and *Daubert* |
| 80 | ISFI 2006 Article 'The Pitfalls, Perils and Reasoning Fallacies of Determining the Fire Cause in the Absence of Proof: The Negative Corpus Methodology' | TAYLOR000716 -728 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28:19-21) | 802, 901, 1002–1005 |
| 81 | Negative Corpus Delecti per John A. Kennedy's 1962 book | TAYLOR000729-732 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson and Taylor's alleged innocence are not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 82 | Article 'NFPA 921: Past Present and Future' by Daniel L. Churchward, ISFI, 2006 | TAYLOR000733-744 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28:19-21) | 802, 901, 1002–1005 |
| 83 | NFPA Feb 2002 – Fire Patterns RF White Paper | TAYLOR000745 -766 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 84-219 | Pioneer Hotel photos 041007 001 – 041007 136 | TAYLOR000767 -902 | As long as victims are redacted, the City does not object. | Defendant objects because these Exhibits are inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 220 | Taylor Polygraph Exam Notes typed | TAYLOR000903-907 | | Defendant objects because the Exhibit is inadmissible under Rules 106, 403, 602, 802, 901, 1002–1005 |
| 221 | Taylor Polygraph Exam Notes | TAYLOR000908-920 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 222 | Taylor typed police notes | TAYLOR000921-926 | City Objections: FRE 901, 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 106, 403, 602, 802, 901, 1002–1005 |
| 223 | Probable cause hearing index | TAYLOR000927-928 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 224 | Probable cause hearing transcript Volume 1 | TAYLOR000929-001031 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 225 | Probable cause hearing transcript Volume 2 | TAYLOR001032-1136 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 226 | Probable cause hearing transcript Volume 3 | TAYLOR001137-1230 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106 |
| 227 | Probable cause hearing transcript Volume 4 | TAYLOR001231 -1345 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 228 | Probable cause hearing transcript Volume 5 part 1 | TAYLOR001346 -1420 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 229 | Probable cause hearing transcript Volume 5 part 2 | TAYLOR001421 -1514 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 230 | Probable cause hearing transcript Volume 6 | TAYLOR001515 -1613 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 231 | Probable cause hearing transcript Volume 7 | TAYLOR001614 -1718 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 232 | Probable cause hearing transcript Volume 8 | TAYLOR001719 -1772 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 233 | PCAO Public Records Request | TAYLOR001773 | City's Objections: As to letter(s) and statements presented | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | therein for records request, the City objections under FRE 401, 402, 403, 802, 805. | 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 234 | TPD Report re Acetylene | TAYLOR001774 -1775 | City's Objections: This is D. Smith's TPD report. No objection to to the report itself if it is complete. Otherwise, Rule 106, and objection to the title Plaintiff has given it. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 235 | TFD Records Request | TAYLOR001776 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Rule 106 | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 236 | TPD Photos Request 5-31-2011 | TAYLOR001777 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 237 | TFD Public Records Request 12-06-2012 | TAYLOR001778 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 402, 403, 602, 802, 901, 1002–1005 |
| 238 | Recorded radio traffic | TAYLOR001779 -1813 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 239 | Recorded telephone calls | TAYLOR001814 -1834 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 240 | Reporter's Transcript of Proceedings February 14, 1972 | TAYLOR001835 -1964 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 241 | Reporter's Transcript of Proceedings February 15, 1972 (part 1) | TAYLOR001965 -2090 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 242 | Reporter's Transcript of Proceedings February 15, 1972 (part 2) | TAYLOR002091 -2138 | City's Objections: Rule 106 – the entirety | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | of the transcripts should be admitted, not cherry-picked parts | inadmissible under Rules 105, 106 |
| 243 | Reporter's Transcript of Proceedings February 16, 1972 Volume 14 | TAYLOR002139-2297 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 244 | Reporter's Transcript of Proceedings February 17, 1972 | TAYLOR002298-2475 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | cherry-picked parts | |
| 245 | Reporter's Transcript of Proceedings February 18, 1972 | TAYLOR002476-2635 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 246 | Reporter's Transcript of Proceedings February 19, 1972 | TAYLOR002636-2746 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| 247 | Reporter's Transcript of Proceedings February 21, 1972 | TAYLOR002747 -2917 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 248 | Reporter's Transcript of Proceedings February 22, 1972 | TAYLOR002918 -3105 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 249 | Reporter's Transcript of Proceedings February 9, 1972 Volume 8 | TAYLOR003106 -3246 | City's Objections: Rule 106 – the entirety | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | of the transcripts should be admitted, not cherry-picked parts | inadmissible under Rules 105, 106 |
| 250 | Reporter's Transcript of Proceedings February 9, 1972 | TAYLOR003247-3387 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 251 | Reporter's Transcript of Proceedings February 10, 1972 | TAYLOR003388-3572 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | cherry-picked parts | |
| 252 | Reporter's Transcript of Proceedings February 11, 1972 | TAYLOR003573-3789 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 253 | Reporter's Transcript of Proceedings February 12, 1972 Volume 11 | TAYLOR003790-3955 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 254 | Reporter's Transcript of Proceedings February 10, 1972 | TAYLOR003956-4114 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 255 | Reporter's Transcript of Proceedings February 23, 1972 (part one) | TAYLOR004115-4222 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 256 | Reporter's Transcript of Proceedings February 23, 1972 (part two) | TAYLOR004223-4329 | City's Objections: Rule 106 – the entirety | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | of the transcripts should be admitted, not cherry-picked parts | inadmissible under Rules 105, 106 |
| 257 | Reporter's Transcript of Proceedings February 24, 1972 | TAYLOR004330-4515 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 258 | Reporter's Transcript of Proceedings February 25, 1972 (part 2) | TAYLOR004516-4566 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | cherry-picked parts | |
| 259 | Reporter's Transcript of Proceedings February 25, 1972 Volume 22 | TAYLOR004567 -4755 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 260 | Reporter's Transcript of Proceedings February 25, 1972 | TAYLOR004756 -4892 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 261 | Reporter's Transcript of Proceedings February 26, 1972 Volume 23 | TAYLOR004893-4956 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 262 | Reporter's Transcript of Proceedings February 28, 1972 | TAYLOR004957-5097 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 263 | Reporter's Transcript of Proceedings February 29, 1972 | TAYLOR005098-5323 | City's Objections: Rule 106 – the entirety | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | of the transcripts should be admitted, not cherry-picked parts | inadmissible under Rules 105, 106 |
| 264 | Reporter's Transcript of Proceedings – Gary Carstensen testimony | TAYLOR005324 -5347 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 265 | Reporter's Transcript of Proceedings – Grace Hope Ballestros examination | TAYLOR005348 -5527 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | cherry-picked parts | |
| 266 | Reporter's Transcript of Proceedings – Larry Gene Kern examination | TAYLOR005528-5591 | City's Objections: Rule 106 – the entirety of the transcripts should be admitted, not cherry-picked parts | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 267 | Reporter's Transcript of Proceedings – Leroy Walter Brockbank testimony 3-2-72 | TAYLOR005592-5607 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 268 | Reporter's Transcript of Proceedings March 1, 1972 – Robert Jackson testimony | TAYLOR005608-5636 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106 |
| 269 | Reporter's Transcript of Proceedings March 1, 1972 Volume 26 pps 1-29 | TAYLOR005637 -5665 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 270 | Reporter's Transcript of Proceedings March 1, 1972 Volume 26 | TAYLOR005666 -5875 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 271 | Reporter's Transcript of Proceedings March 1, 1972 | TAYLOR005876 -6055 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 272 | Reporter's Transcript of Proceedings March 2, 1972 partial transcript | TAYLOR006056 -6106 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106 |
| 273 | Reporter's Transcript of Proceedings March 2, 1972 | TAYLOR006107 -6339 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 274 | Reporter's Transcript of Proceedings March 3, 1972 Volume 28 (Part 1) | TAYLOR006340 -6421 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 275 | Reporter's Transcript of Proceedings March 3, 1972 Volume 28 (Part 2) | TAYLOR006422 -6486 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 276 | Reporter's Transcript of Proceedings March 3, 1972 Volume 28 (Part 3) | TAYLOR006487 -6561 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106 |
| 277 | Reporter's Transcript of Proceedings March 4, 1972 Volume 29 (Part 1) | TAYLOR006562 -6674 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 278 | Reporter's Transcript of Proceedings March 4, 1972 Volume 29 (Part 2) | TAYLOR006675 -6697 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 279 | Reporter's Transcript of Proceedings March 6, 1972 (Part 1) | TAYLOR006698 -6825 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 280 | Reporter's Transcript of Proceedings March 6, 1972 (Part 2) | TAYLOR006826 -6945 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106 |
| 281 | Reporter's Transcript of Proceedings March 7, 1972 (Part 1) | TAYLOR006946 -7048 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 282 | Reporter's Transcript of Proceedings March 7, 1972 (Part 2) | TAYLOR007049 -7130 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 283 | Reporter's Transcript of Proceedings March 8, 1972 (Part 1) | TAYLOR007131 -7240 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 284 | Reporter's Transcript of Proceedings March 8, 1972 (Part 2) | TAYLOR007241 -7345 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 285 | Reporter's Transcript of Proceedings March 15, 1972 Volume 38 | TAYLOR007346 -7554 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 286 | Reporter's Transcript of Proceedings March 15, 1972 | TAYLOR007555 -7766 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 287 | Reporter's Transcript of Proceedings March 16, 1972 | TAYLOR007767 -8009 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106 |
| 288 | Reporter's Transcript of Proceedings March 17, 1972 Volume 40 | TAYLOR008010 -8227 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 289 | Reporter's Transcript of Proceedings March 18, 1972 Volume 41 | TAYLOR008228 -8376 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 290 | Reporter's Transcript of Proceedings March 20, 1972 Volume 42 | TAYLOR008377 -8518 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 291 | Reporter's Transcript of Proceedings March 21, 1972 Volume 43 | TAYLOR008519 -8524 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106 |
| 292 | Reporter's Transcript of Proceedings May 12, 1972 | TAYLOR008525 -8569 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 293 | Reporter's Transcript of Proceedings May 18, 1972 (Robert Jackson) | TAYLOR008570 -8575 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 294 | Reporter's Transcript of Proceedings March 9, 1972 (part 1) | TAYLOR008576 -8665 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 295 | Reporter's Transcript of Proceedings March 9, 1972 (part 2) | TAYLOR008666 -8731 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106 |
| 296 | Reporter's Transcript of Proceedings March 10, 1972 (part 1) | TAYLOR008732 -8828 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 297 | Reporter's Transcript of Proceedings March 10, 1972 (part 2) | TAYLOR008829 -8880 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 298 | Reporter's Transcript of Proceedings March 11, 1972 | TAYLOR008881 -9021 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 299 | Reporter's Transcript of Proceedings March 13, 1972 | TAYLOR009022 -9177 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106 |
| 300 | Reporter's Transcript of Proceedings March 14, 1972 | TAYLOR009178 -9403 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 301 | TFD Pioneer Hotel Fire Review | TAYLOR009404 -9445 | City's Objections: FRE 401, 402, 403, 802, 805; whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002– 1005 |
| 302 | TFD Incident Run Report 9-14-70 | TAYLOR009446 -9447 | City's Objections: FRE 401, 402, 403, | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 802, 805; whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | inadmissible under Rules 105, 106, 402, 403, 802 |
| 303 | Reports from Tucson Fire Dept. | TAYLOR009448 -9452 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 304 | Slate article dated April 13, 2013 | TAYLOR009453 -9460 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 602, 608, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005 |
| 305 | Affidavit of Howard Kashman dated April 23, 2012 | TAYLOR009461 -9464 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 608, 609, 701, 702, 704, 802. Plaintiff also did not disclose Kashman as an expert witness and therefore he cannot render any expert opinions. |
| 306 | Beginning Notes – Smyth Pioneer Dec 21, 1970 GAB-Home Ins. | TAYLOR009465 -9467 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005 |
| 307 | Chronology – Smyth Pioneer Fire Invest 12-21-1970 to 01-13-1971 | TAYLOR009468-9469 | City's Objections: | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005 |
| 308 | Potential State Witnesses – State v. Taylor | TAYLOR009470-9479 | City's Objections: Plaintiff has mistitled this document. It is "Additional Witness List and Addresses" | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 309 | Report of other arson suspects | TAYLOR009480 -9485 | City's Objections: other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 310 | Taylor News Clips | TAYLOR009486 -9492 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 311 | Taylor v. Cardwell – Habeas granted | TAYLOR009493 -9495 | City's Objections: | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| | | | | inadmissible under Rules 402, 403 |
| 312 | Suspect Mario Corral | TAYLOR009496 -9507 | City's Objections: alternative suspects are barred (Dkt. 869, 44:10-46:3)<br><br>Document also has some unknown person's notes. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 313 | Court TV Claus Bergman Interview transcript | TAYLOR009508 -9513 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| | | | | 609, 701, 702, 704, 802, 901, 1002–1005 |
| 314 | Court TV Carmine Brogna Interview transcript | TAYLOR009514-9524 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 315 | Court TV Howard Cashman Interview transcript | TAYLOR009525-9539 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 316 | Court TV Jack Fry Interview transcript | TAYLOR009540-9547 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 317 | Court TV David Smith Interview transcript | TAYLOR009548-9571 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 318 | Court TV Marshall Smythe Interview transcript | TAYLOR009572 -9580 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 319 | Court TV Louis Taylor Interview transcript | TAYLOR009581 -9585 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 320 | 2012 10 23 Rule 32 Petition | TAYLOR009586-9647 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 321 | Terrance Lewis – National Registry of Exonerations | TAYLOR9648-9651 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 402, 403, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 322 | Affidavit of Albert Jackson | TAYLOR009652-9657 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 323 | Mrs. Jackson statement | TAYLOR009658-9659 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 602, 608, 802, 901, 1002–1005 |
| 324 | Albert Jackson signed affidavit | TAYLOR009660 -9661 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 325 | Albert Jackson statement audio | TAYLOR009662 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 326 | Ian Burnett Affidavit 03 07 2011 | TAYLOR009663 -9667 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 327 | Howard Kashman Affidavit Final | TAYLOR009668 -9671 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 608, 609, 701, 702, 704, 802. Plaintiff |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | also did not disclose Kashman as an expert witness and therefore he cannot render any expert opinions. |
| 328 | James Robert Corbett Affidavit | TAYLOR009672-9675 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 608, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Corbett as an |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert witness and therefore he cannot render any expert opinions. |
| 329 | Ken Van Zandt Affidavit Final | TAYLOR009676 -9678 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002– 1005. Plaintiff also did not disclose Van Zandt as an expert witness and therefore he |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | cannot render any expert opinions. |
| 330 | PCAO Invoice 9 20 2010 | TAYLOR009679 | City's Objections: FRE 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 331 | Robert Jackson Statement 051272 | TAYLOR009680 -9724 | City's Objections: FRE 402, 403, 802, 805 (only the Public Defender and a court reporter were present-not under oath) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 332 | Testimony of Robert Jackson | TAYLOR009725 -9730 | City's Objections: Rule 106 – incomplete transcript | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 333 | Robert Jackson Affidavit 050872 | TAYLOR009731 | City's Objections: FRE 402, 403, 802 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 334 | RJ Statement 022772 & Polygraph | TAYLOR009732 -9735 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 335 | TFD Public Records Request Response rcvd 12-20-2012 | TAYLOR009736 | City's Objections: FRE 106, 401, 402 | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 336 | Legal Visit Louis Taylor (#031176) | TAYLOR009737 | City's Objections: FRE 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 337 | Letter to Rick Unklesbay re Exhibits June 19, 2012 | TAYLOR009738 -9741 | City's Objections: Rule 106 - incomplete | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 338 | Smyth Affidavit No 1 - Notarized 2011-11-04 Taylor | TAYLOR009742 -9843 | City's Objections: As to the titled document: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 339 | Origin Determination Significant Excerpts from NFPA 921 | TAYLOR009844 -9851 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 340 | Diagram Comparing Smyth and Holmes Areas of Origin | TAYLOR009852 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | arson is not at issue (Dkt. 869, 28: 19-21) | 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 341 | Addition to Smyth Affidavit DRAFT | TAYLOR009853 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 342 | Civil Trial Significant Documents | TAYLOR009854 | City's Objections: FRE 402, 403 -this appears to be an exhibit index | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert witness and therefore he cannot render any expert opinions. |
| 343 | Try 3A Valerie Char Depth002 | TAYLOR009855 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28:  19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | render any expert opinions. |
| 344 | 3rd-4th North Stairs 001A | TAYLOR009856 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 345 | NFPA 921 Behind the Scenes References | TAYLOR009857-9858 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 346 | Mod 3 - Fire-Related Issues (3) | TAYLOR009859-9860 | City's Objections: FRE 402, 403, 802, | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) – this appears to be someone's notes | inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 347 | Classifying Cause of Pioneer Fire  mls | TAYLOR009861 -9865 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | at issue (Dkt. 869, 28: 19-21) | 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 348 | Civil Trial Significant Documents | TAYLOR009866 | City's Objections: Same document as 342, above. FRE 402, 403 & this appears to be an exhibit index | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005. Plaintiff also |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 349 | Try 7 – Char Measurements | TAYLOR009867 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | witness and therefore he cannot render any expert opinions. |
| 350 | Marshall L. Smyth Curriculum Vitae - 2003 | TAYLOR009868 | City's Objections: FRE 106, 402, 403, 802 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 351 | Arson Fires Investigations by Smyth | TAYLOR009869 -9871 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28:  19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 352 | All Fire Investigations by Marshall L Smyth | TAYLOR009872 -9878 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 353 | Arson-Murder Fire Investigations by Smyth | TAYLOR009879-9882 | City's Objections: FRE 402, 403, 802, 805 & whether the | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | fire was arson is not at issue (Dkt. 869, 28: 19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 354 | Players - Pioneer Fire Investigation-Dates-Docs | TAYLOR009883-9893 | City's Objections: FRE 402, 403, 802, 805 & this appears to be someone's notes | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 355 | Smyth Fire Investigations pre Taylor Trial | TAYLOR009894 -9895 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 356 | All Fire Investigations by Smyth | TAYLOR009896 -9903 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28:  19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | therefore he cannot render any expert opinions. |
| 357 | All Alleged Arson Fires Investigations by Smyth | TAYLOR009904 -9906 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 358 | All Arson-Murder Fire Investigations by Smyth | TAYLOR009907 -9909 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 359 | All Fire Investigations by Smyth rev 09-10-2012 | TAYLOR009910 -9916 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 360 | Ltr to Jim Blank 08-29-03 Fed Hab Corp | TAYLOR009917-9920 | City's Objections: FRE 402, 403, 802, 805 & whether the | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | fire was arson is not at issue (Dkt. 869, 28: 19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 361 | 2010-07-26 Multiple Origins - Who started theory Update | TAYLOR009921 -9922 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 28: 19-21) & this appears to be someone's notes | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 362 | 2010-07-26 Significant Full Scale Structure Fire Texts USA | TAYLOR009923 -9925 | City's Objections: This is a continuation of Ex. 361 & FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | & this appears to be someone's notes | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 363 | 1972-03-0S to 14 Smyth Testimony Dates Index - Taylor Trial | TAYLOR009926 | City's Objections: FRE 402, 403, 802, 805 & this appears to be someone's notes | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | therefore he cannot render any expert opinions. |
| 364 | Air supply for the fire sketch | TAYLOR009927 -9928 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 365 | Burn Variation 001A | TAYLOR009929 | City's Objections: FRE 106, 402, 403, 802, 805 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 366 | Stairs 3rd-4th Floors001C | TAYLOR009930 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| | | | Rule 106 | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 367 | 150NP3A 1970 Pioneer Hotel 003C | TAYLOR009931 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 368 | Final trucks | TAYLOR009932 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28: 19-21) | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 369 | MODEL 3B | TAYLOR009933 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 370 | New section final | TAYLOR009934 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | therefore he cannot render any expert opinions. |
| 371 | Plan copy | TAYLOR009935 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 372 | Section 1 copy | TAYLOR009936 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 373 | Black box 1 | TAYLOR009937 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 374 | 4th N-S Fire Damage Summary 001 | TAYLOR009938 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 375 | Fresh Air Flow Building Pioneer Hotel 001 | TAYLOR009939 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28: 19-21) | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 376 | Fresh Air Flow 4th Floor Pioneer Hotel 001 | TAYLOR009940 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 377 | Fresh Air Flow - Building Pioneer Hotel 001 | TAYLOR009941 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | therefore he cannot render any expert opinions. |
| 378 | New section final smaller | TAYLOR009942 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 379 | Photo B5VA0355 | TAYLOR009943 | City's Objections: Rule 106, 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 380 | Photo B5VA0355A | TAYLOR009944 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| | | | Rule 106, 402, 403 | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 381 | Pioneer Hotel 4th n-s Char Depth 001 | TAYLOR009945 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 382 | 11th Floor Plan TFD Report 001 | TAYLOR009946 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28: 19-21) & contains someone's handwritten notes | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 383 | Prelim plan 8-14-11 | TAYLOR009947 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 384 | Pioneer Hotel 4th floor 001 | TAYLOR009948 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | therefore he cannot render any expert opinions. |
| 385 | 3d layout Pioneer | TAYLOR009949 | City's Objections: FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert opinions. |
| 386 | Smyth Testimony vs NFPA 921 | TAYLOR009950 -9955 | City's Objections: FRE 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28:  19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 387 | Chronology - Smyth Pioneer Fire Invest 12-21-1970---01-13-1971 | TAYLOR009956 -9957 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 106, 901 | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 388 | Beginning Notes - Smyth Pioneer Dec 21-1970  GAB-Home Ins | TAYLOR009958-9960 | City's Objections: FRE 106, 901 | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 389 | Outside Laboratory Fire Tests Feb 1971 - Oct 1974 | TAYLOR009961 | City's Objections: FRE 106, 901 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005. Plaintiff also did not disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 390 | Fire Investigation Evolution | TAYLOR009962 -9978 | City's Objections: Not related to Pioneer Hotel fire or Taylor's case – relates to Knapp Residential Fire & FRE 402, 403, 802 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Smyth as an expert witness and therefore he cannot render any expert opinions. |
| 391 | Holmes Final Report plus Critical Docs_Cy Holmes | TAYLOR009979 -10002 | City's Objections: misrepresents documents included As to some documents: FRE 106, 901 & the City preserves all applicable objections to all other documents for trial | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 392 | Depth of Char Chart | TAYLOR010003 -10007 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 106, 402, 403, 802, 805, 901 & whether the fire was arson is not at issue (Dkt. 869, 28: 19-21) | because the Exhibit is inadmissible under Rules 105, 106 |
| 393 | Taylor Articles from Joyce pt1 | TAYLOR010008 -10043 | City's Objections: FRE 402, 403, 802, 805 – the title does not accurately describe the contents of all documents in this bates stamp range – the City preserves all other applicable | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | objections for trial | |
| 394 | Taylor Articles from Joyce pt2 | TAYLOR010044 -10057 | City's Objections: FRE 402, 403, 802, 805 – all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 395 | Taylor Articles from Joyce pt3 | TAYLOR010058 -10078 | City's Objections: FRE 402, 403, 802, 805 – all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 702, 704, 802, 901, 1002–1005 |
| 396 | Louis Taylor- AZ Ranch School- part one | TAYLOR010079 -10111 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 397 | Louis Taylor - AZ Ranch School- part two | TAYLOR010112 -10148 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 398 | Weiss Articles pt 1 | TAYLOR010149 -10161 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | the County's objections | 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 399 | Weiss Articles pt 2 | TAYLOR010162-10175 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 400 | Weiss Articles pt 3 | TAYLOR010176-10206 | City's Objections: FRE 401, 402, 403, 802, 805, the | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| | | | City joins in the County's objections | under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 401 | Weiss Articles pt 4 | TAYLOR010207-10240 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 402 | Weiss Articles pt 5 | TAYLOR010241-10265 | City's Objections: FRE 401, 402, 403, | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 802, 805, the City joins in the County's objections | inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 403 | Weiss Articles pt 6 | TAYLOR010266 -10290 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 404 | Weiss Articles pt 7 | TAYLOR010291 -10307 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 405 | Weiss Articles pt 8 | TAYLOR010308 -10321 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 406 | Taylor Articles pt 1 | TAYLOR010322 -10336 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 407 | Taylor Articles pt 2 | TAYLOR010337 -10361 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 408 | Taylor Articles pt 3 | TAYLOR010362-10378 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 409 | Taylor Articles pt 4 | TAYLOR010379-10395 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005 |
| 410 | Taylor Articles pt 5 | TAYLOR010396 -10414 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 411 | Taylor Articles pt 6 | TAYLOR010415 -10436 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 702, 704, 802, 901, 1002–1005 |
| 412 | Taylor Articles pt 7 | TAYLOR010437 -10472 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 413 | Taylor Articles pt 8 | TAYLOR010473 -10494 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 609, 701, 702, 704, 802, 901, 1002–1005 |
| 414 | Taylor Articles pt 9 | TAYLOR010495 -10509 | City's Objections: FRE 402, 403, 802, 805 – these are all inadmissible newspaper articles | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 415 | Hardy News Articles | TAYLOR010510 -10532 | City's Objections: Misidentifie d – FRE 402, 403, 802, 805 - this appears to be a list of Taylor's | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 407, 602, 701, 702, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | criminal case citations & other various inadmissible documents & newspaper articles | 704, 802, 901, 1002–1005 |
| 416 | Exhibit Index | TAYLOR010533-10535 | City's Objections: FRE 106, 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. |
| 417 | Exhibit 6, Van Zandt Affidavit | TAYLOR010536-10538 | City's Objections: | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 | inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005. Plaintiff also did not disclose Van Zandt as an expert witness and therefore he cannot render any expert opinions. |
| 418 | Exhibit 7, TPD Officer Biggs Report 12-20-1970 | TAYLOR010539 -10540 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 419 | Exhibit 8, TPD Officer Zylstra Report 12-20-1970 | TAYLOR010541 -10542 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 420 | Exhibit 9, TPD Birmingham Report | TAYLOR010543 -10544 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 421 | Exhibit 12, TPD Douglas H. Scoopmire Report 12-20-1970 | TAYLOR010545 -10546 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 422 | Exhibit 14, TPD Detective Murchek Report 12-21-70 | TAYLOR010547 -10549 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 423 | Exhibit 15, TPD Detective Scoopmire Handwritten Notes Re Polygraph Exam | TAYLOR010550 -10560 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 424 | Exhibit 16, TPD Detective D. Smith Report 12-20-1970 | TAYLOR010561 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 425 | Exhibit 18, TFD Gilmore Report Re TFD Burn Test February 29, 1971 | TAYLOR010562 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Exhibit is inadmissible under Rules 105, 106, 802 |
| 426 | Exhibit 19, TFD Gilmore TFD Burn Test Supplemental Report | TAYLOR010563-10564 | City's Objections: Whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 427 | Exhibit 21, Probable Cause Hearing Transcript February 2, 1971 | TAYLOR010565-10569 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 428 | Exhibit 23, Probable Cause Hearing Transcript February 1, 1971 | TAYLOR010570-10577 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106 |
| 429 | TFD Fire Cause Report 12-31-70 | TAYLOR010578 | City's Objections: Whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 430 | Exhibit 26, Holmes Report January 15, 1971 | TAYLOR010579 -10596 | City's Objections: Whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 431 | Exhibit 28, Arson Review Committee Report and John Lentini Affidavit | TAYLOR010597 -10624 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 404, 403, 602, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | (Dkt. 869, 28:19-21) | 608, 701, 702, 704, 802, 901, 1002–1004 |
| 432 | Exhibit 31, TFD Incident Run Report | TAYLOR010625 -10638 | City's Objections: whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 433 | Exhibit 35, 2011 Edition NFPA 921 Sections | TAYLOR010639 -10652 | City's Objections: FRE 402, 403, 802, 805 & whether the fire was arson is not at issue (Dkt. 869, 28:19-21) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 434 | Exhibit 36, Superior Court Order 4-22-71 | TAYLOR010653 -10656 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106 |
| 435 | Exhibit 37, Judgment of Guilt and Sentence | TAYLOR010657 -10658 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 436 | Exhibit 40, Albert Jackson 2006 Statement and 2008 Affidavit | TAYLOR010659 -10687 | City's Objections: FRE 402, 403, 602, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 437 | Exhibit 43, Audio DS300012 | TAYLOR010688 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 602, 802, 805 | Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 438 | Exhibit 45, Motion for New Trial Hearing Transcript May 18, 1972 | TAYLOR010689 -10690 | City's Objections: Rule 106 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 439 | Exhibit 47, Arizona Supreme Court Order May 3, 1972 | TAYLOR010691 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 440 | Exhibit 48, Minute Entry May 18, 1972 | TAYLOR010692 -10696 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106 |
| 441 | Exhibit 49, District Court Order February 18, 1977 | TAYLOR010697 -10702 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 442 | Exhibit 50, District Court Order May 18, 1981 | TAYLOR010703 -10709 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 443 | Exhibit 51, Ninth Circuit Memorandum Submitted June 7, 1982 | TAYLOR010710 -10712 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 444 | Exhibit 52, Ninth Circuit Memorandum Submitted February 1, 1984 | TAYLOR010713 -10719 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106 |
| 445 | Exhibit 53, Petition for Post-Conviction Relief December 31, 1984 | TAYLOR010720 -10736 | | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, 704, 802, 901, 1002– 1005 |
| 446 | Exhibit 54, Superior Court Order May 1, 1985 | TAYLOR010737 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 447 | Exhibit 55, Superior Court Order June 26, 1985 | TAYLOR010738 -10739 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 448 | Exhibit 56, Arizona Supreme Court Order October 4, 1985 | TAYLOR010740 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 449 | Exhibit 58, Transcripts of Gilmore-Miller Telephone Conversation (undated) | TAYLOR010741 -10746 | City's Objections: Lack chain of custody & Rule 901 authenticatio n (audio never produced) | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002– 1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 450 | Exhibit 60, Transcript of Recording DS300030 | TAYLOR010747 -10753 | City's Objections: FRE 105, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 451 | Exhibit 60, Audio DS300030 | TAYLOR010754 | City's Objections: FRE 105, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 452 | Exhibit 61, Transcript of Recording DS300034 | TAYLOR010755 -10769 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 105, 402, 403, 802, 805 | because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 453 | Exhibit 61, Audio DS300034 | TAYLOR010770 | City's Objections: FRE 105, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 454 | Exhibit 62, Holmes Depth of Char Notes | TAYLOR010771 -10775 | City's Objections: FRE 106, 901 | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 455 | Exhibit 63, Information August 5, 1971 | TAYLOR010776-10784 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 456 | Exhibit 64, State Additional Witness List September 23, 1971 filed 1pm | TAYLOR010785-10788 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 457 | Exhibit 65, State Additional Witness List September 23, 1971 filed 4pm | TAYLOR010789-10792 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106 |
| 458 | Exhibit 66, Defense Request for Clarification September 24, 1971 | TAYLOR010793 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 459 | Exhibit 67, State Additional Witnesses' Addresses September 24, 1971 | TAYLOR010794 -10798 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 460 | Exhibit 68, State Additional Witnesses' Addresses September 30, 1971 | TAYLOR010799 -10805 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 461 | Exhibit 69, Superior Court Pretrial Order November 8, 1971 | TAYLOR010806 -10807 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106 |
| 462 | Exhibit 70, State Tentative List of Proposed Witnesses November 29, 1971 | TAYLOR010808 -10814 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 463 | Exhibit 71, Additional Proposed Witness for the State | TAYLOR010815 -10816 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 464 | Exhibit 72, State Additional Witnesses' Addresses | TAYLOR010817 -10818 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 465 | Exhibit 73, State Additional Proposed Witnesses February 7, 1972 | TAYLOR010819 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106 |
| 466 | Anitza de Aguayo Statement | TAYLOR010820 -10829 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 467 | Taylor Juvenile Transfer Records | TAYLOR010830 -10896 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 468 | Taylor Juvenile Records pt.two | TAYLOR010897 -10977 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 469 | Taylor Juvenile- Ed Mathews | TAYLOR010978-10986 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 470 | Taylor Juvenile- certified copies jun-oct | TAYLOR010987-11027 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 471 | Taylor-juvenile-center social file | TAYLOR011028-11067 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 472 | Taylor-juvenile-court files | TAYLOR011068-11134 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106 |
| 473 | Taylor-TPD-Holloway | TAYLOR011135 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 474 | Taylor-TPD-Hildebrand | TAYLOR011136 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 475 | Taylor-TPD-Harris | TAYLOR011137 -11138 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 476 | Taylor-TPD-Hay | TAYLOR011139 -11141 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 477 | Taylor-TPD-Harrell | TAYLOR011142 -11144 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 478 | Taylor-TPD-Hardyman | TAYLOR011145 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 479 | Taylor-FIRE DEPT-R de la Hanty | TAYLOR011146 -11149 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 480 | Taylor-TPD-Grider | TAYLOR011150 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 481 | Taylor-TPD-Greving | TAYLOR011151 -11152 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 482 | Taylor-TPD-Goodnight | TAYLOR011153 -11154 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 483 | Taylor-TPD-Gerhardt | TAYLOR011155 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 484 | Taylor-TPD-Gomez | TAYLOR011156 -11157 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 485 | Taylor-TPD-Zylstra | TAYLOR011158 -11166 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| 486 | Taylor-TPD-Zimmerman | TAYLOR011167-11169 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 487 | Taylor-TPD-Zaches | TAYLOR011170-11171 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 488 | Taylor-TPD-Woolison | TAYLOR011172-11180 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 489 | Taylor-TPD-T Wilson | TAYLOR011181-11182 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 490 | Taylor-TPD-Woodard | TAYLOR011183 -11186 | City's Objections: Inaccurately titled. 11185 is actually a report of Off. Shoffner | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 491 | Taylor-TPD-Lawrence M Wetzel | TAYLOR011187 | City's Objections: Inaccurately titled. Wetzel is not with TPD. He was actually Police Chief of City of Phoenix in 1972.  This is a 4-20-72 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | letter from Chief Wetzel to Horton Weiss | |
| 492 | Taylor-TPD-White | TAYLOR011188 -11190 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 493 | Taylor-TPD-Webb | TAYLOR011191 -11192 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 494 | Taylor-TPD-Det M Walsh | TAYLOR011193 -11196 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 495 | Taylor-TPD-Sulzbach | TAYLOR011197-11199 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 496 | Taylor-TPD-Thompson | TAYLOR011200-11201 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 497 | Taylor-TPD-Sterner | TAYLOR011202-11203 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 498 | Taylor-TPD-Shoffner | TAYLOR011204 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 499 | Taylor-TPD-Skuta | TAYLOR011205 -11206 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 500 | Taylor-TPD-Sedlmayr | TAYLOR011207 -11208 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 501 | Taylor-TPD-Seitsinger | TAYLOR011209 -11210 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 502 | Taylor-TPD-Schwartz | TAYLOR011211-11212 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 503 | Taylor-TPD-Roche | TAYLOR011213-11214 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 504 | Taylor-TPD-Sanders | TAYLOR011215-11217 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 505 | Taylor-TPD-Pupkoff | TAYLOR011218-11221 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 506 | Taylor-TPD-Rees | TAYLOR011222-11223 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 507 | Taylor-TPD-Pierce | TAYLOR011224-11228 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 508 | Taylor-TPD-Philips | TAYLOR011229 -11232 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 509 | Taylor-TPD-Pascal | TAYLOR011233 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 510 | Taylor-TPD-Patton | TAYLOR011234 -11235 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 511 | Taylor-TPD-Mulleneax | TAYLOR011236 -11237 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 512 | Taylor-TPD-OSullivan | TAYLOR011238 -11241 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 513 | Taylor-TPD- F Muhl | TAYLOR011242 -11243 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 514 | Taylor-TPD-Morrison | TAYLOR011244 -11245 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 515 | Taylor-TPD-Morris | TAYLOR011246 -11249 | City's Objections: Inaccurately titled. 11246 is actually part of Off. Manrequez's report | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 516 | Taylor-TPD-Capt Wes Maudlin | TAYLOR011250 -11255 | City's Objections: Name misspelled. Should be "Mauldin" | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 517 | Taylor-TPD-Molchan | TAYLOR011256 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 518 | Taylor-TPD- R Manriquez | TAYLOR011257 -11260 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 519 | Taylor-FIRE DEPT- Rudy Lopez | TAYLOR011261 -11264 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 520 | Taylor-TPD-M Livingston | TAYLOR011265 -11268 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 521 | Taylor-TPD-Lt Lexchinshy | TAYLOR011269 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Name misspelled. Should be "Leschinsky" | Exhibit is inadmissible under Rules 105, 106, 802 |
| 522 | Taylor-TPD-Sgt T Krieger | TAYLOR011270-11275 | City's Objections: Misidentified. 11271-72 are actually a report from TPD Off. Carstensen; 11273 is actually a report from TPD Sgt. Lingham. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 523 | Taylor-TPD-Leverenz | TAYLOR011276-11277 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 524 | Taylor-TPD-Keeley | TAYLOR011278-11279 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 525 | Taylor-TPD-A Johnson | TAYLOR011280-11281 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 526 | Taylor-TPD-Kalak | TAYLOR011282-11284 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 527 | Taylor-TPD-Sgt J Moore | TAYLOR011285-11310 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Misidentified. Sgt. Moore's reports start at 11285 and continue through and including 11313.  Sgt. Lingham's reports start only at 11314 and continue through and including 11316. | Exhibit is inadmissible under Rules 105, 106, 802 |
| 528 | Taylor-TPD-Lingham | TAYLOR011311-11316 | City's Objections: Misidentified. Sgt. Moore's reports start at 11285 and continue through and including | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 11313.  Sgt. Lingham's reports start only at 11314 and continue through and including 11316. | |
| 529 | Taylor-TPD-Reyna | TAYLOR011317 -11338 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 530 | Taylor-TPD-Det Hacker | TAYLOR011339 -11375 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 531 | Taylor-TPD-Rogers | TAYLOR011376 -11377 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 532 | Taylor-TPD-Hust | TAYLOR011378 -11388 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 533 | Taylor diagrams | TAYLOR011389 -11396 | City's Objections: FRE 401, 402, 403, 802, 805, 901. The mere description of "Taylor diagrams" is inadequate, ambiguous and a | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| | | | misidentification. Not everything listed here is a diagram. These appear to be both diagrams and notes by more than one unidentified person(s), with no separation, identification, or authentication as to who did what now possible. Taylor's guilt or innocence, | |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | and whether fire was arson, is not at issue in this case. (Dkt. 869 at 28:19-21). | |
| 534 | Taylor-TPD- Recorded telephone calls | TAYLOR011397 -11417 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 535 | Taylor-TPD-Recorded Radio traffic | TAYLOR011418 -11452 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 536 | Taylor-TPD Reports- Miscellaneous | TAYLOR011453 -11534 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106, 802 |
| 537 | Taylor-TPD- hotel guests after fire | TAYLOR011535 -11537 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 538 | Taylor-TPD Reports- Hospital reports of vics | TAYLOR011538 -11540 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 539 | Taylor-TPD Reports- Pioneer employees | TAYLOR011541 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 540 | Taylor-TPD Reports-ID Tech | TAYLOR011542-11559 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 541 | Taylor-Tuscon Fire Dept.-Pioneer priors | TAYLOR011560-11567 | City's Objections: Includes "Darling letter" of 10-9-70 re other fires at Pioneer. FRE 401, 402, 403, 802, 805 Other suspects/fires & new theories barred (Dkt. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 869, 44:10-46:3) | |
| 542 | Taylor TPD summary of involvement | TAYLOR011568 -11686 | City's Objections: Misidentified. This is an undated TPD "Preliminary Report" with Appendices A-E. Certain portions of both its text and appendices are then duplicated. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 543 | Taylor-TPD Report-Black Panthers | TAYLOR011687 | City's Objections: Misidentified. This is a Pima County Sheriff's Office report from 3-22- | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 72 (day after Taylor guilty verdict), FRE 402, 403 | |
| 544 | Taylor-TPD handwritten officer notes | TAYLOR011688-11716 | City's Objections: FRE 901. Don't necessarily know whose notes these are. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 545 | Taylor-TPD-Det R Angeley | TAYLOR011717-11875 | City's Objections: Misidentified. Includes both reports, transfer hearing testimony, and trial testimony. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 546 | Taylor-TPD-HL Gassaway | TAYLOR011876-12125 | City's Objections: Misidentified. Includes | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | both reports and testimony. | inadmissible under Rules 105, 106, 802 |
| 547 | Taylor-TPD-Bunting | TAYLOR012126 -12130 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 548 | Taylor-FIRE DEPT-Chief RB Slagel | TAYLOR012131 -12138 | City's Objections: Misidentified.  12131-37 are a report and transcript from Rex Angeley regarding Vincent McMinn. 12138 is the 10-9-70 "Darling | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | letter" re other fires at Pioneer. FRE 401, 402, 403, 802, 805 Other suspects/fires & new theories barred (Dkt. 869, 44:10-46:3) | |
| 549 | 549 Taylor-TPD-Bay | TAYLOR012139 | City's Objections: Misidentified. FRE 901 unknown author. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 550 | 550 Taylor-TPD-Fugate | TAYLOR012140 -12142 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 551 | Taylor-TPD-Fragoso | TAYLOR012143 -12148 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 552 | Taylor-TPD-Farley | TAYLOR012149 -12153 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 553 | Taylor-TPD-Edwards | TAYLOR012154 -12155 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 554 | Taylor-TPD-Elias | TAYLOR012156 -12158 | City's Objections: Inaccurate Bates numbering. This actually includes 12159 as well. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 555 | Taylor-TPD-J Dunfee | TAYLOR012160 -12171 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 556 | Taylor-TPD-Dunagan | TAYLOR012172 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 557 | Taylor-TPD-Sgt Glen Doze | TAYLOR012173 -12174 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 558 | Taylor-TPD-Dotseth | TAYLOR012175 -12176 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 559 | Taylor-TPD-Bowman | TAYLOR012177 -12192 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 560 | Taylor-TPD-Corona | TAYLOR012193 -12194 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106, 802 |
| 561 | Taylor-TPD-Condiss | TAYLOR012195 -12196 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 562 | Taylor-TPD-Cook | TAYLOR012197 -12199 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 563 | Taylor-TPD-Clark | TAYLOR012200 -12201 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 564 | Taylor-TPD-Carstensen | TAYLOR012202-12203 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 565 | Taylor-TPD-Davies | TAYLOR012204-12206 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 566 | Taylor-FIRE DEPT-Capt. Carranza | TAYLOR012207-12212 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 567 | Taylor-TPD-Cantonwine | TAYLOR012213-12214 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 568 | Taylor-TPD- L. Brooks | TAYLOR012215 -12216 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 569 | Taylor-TPD- Bower | TAYLOR012217 -12219 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 570 | Taylor-TPD- Lt. Birmingham | TAYLOR012220 -12223 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 571 | Taylor-TPD-e. Black | TAYLOR012224 -12225 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 572 | Taylor-TPD- Biggs | TAYLOR012226 -12231 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 573 | Taylor-TPD- Lt. Bedient | TAYLOR012232 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 574 | Taylor-TPD- Beaty | TAYLOR012233 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 575 | Taylor-TPD-Lt. O Barnett | TAYLOR012234 -12235 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 576 | Taylor-TPD- Alison | TAYLOR012236 -12237 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 577 | Taylor-TPD-Armstrong | TAYLOR012238 -12239 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 578 | Taylor-TPD- Abbott | TAYLOR012240 | City's Objections: Incomplete identification. Bates numbering for this item actually continues to TAYLOR12242 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 579 | Taylor-TPD reports- Dead and injured | TAYLOR012243 -12276 | City's Objections: Misidentified: These reports deal with both persons and their property. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 580 | Taylor-TPD REPORTS- dead | TAYLOR012277 -12280 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 581 | Taylor list of docs | TAYLOR012281 -12292 | City's Objections: FRE 402, 403 These deal with Taylor's Motion for Change of Venue. Taylor's guilt or innocence, or whether fire was arson, are not at issue in this case. (Dkt. 869) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 582 | Docs from Louis Taylor | TAYLOR012293 -12315 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Taylor's guilt or innocence, or whether fire was arson, are not at issue in this case. (Dkt. 869) | because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002–1005 |
| 583 | Taylor-witness- Ronald E Wooten | TAYLOR012316 -12317 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 584 | Taylor-witness-John Fry Willis | TAYLOR012318 -12319 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 585 | Taylor-witness-Steve Whiting | TAYLOR012320 | | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 586 | Taylor-witness- Marvin Watkins | TAYLOR012321-12330 | City's Objections: Other suspects/fires & new theories barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 587 | Taylor-witness- Mary Tina Trieneus | TAYLOR012331-12332 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 588 | Taylor-witness-Carolyn Ticker | TAYLOR012333-12338 | City's Objections: | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Should be Carolyn Tickler | inadmissible under Rules 105, 106, 802 |
| 589 | Taylor-witness- Gary Thompson | TAYLOR012339-12342 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 590 | Taylor-witness- William Taylor | TAYLOR012343-12348 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 591 | Taylor-witness- Walter Tang | TAYLOR012349 | City's Objections: FRE 106. Only have page 2. Page 1 not included. | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 592 | Taylor-witness- John Swearingen | TAYLOR012350 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 593 | Taylor-witness- Susan Sotelo2 | TAYLOR012351 -12367 | City's Objections: Misidentified. This material has to do with a Diane Stanley. City reserves all applicable objections for trial. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 594 | Taylor-witness- Dr. Avelardo Sotelo | TAYLOR012368 -12377 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106, 802 |
| 595 | Taylor-witness- Susan Sotelo | TAYLOR012378 -12380 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 596 | Taylor-witness- John Sloss | TAYLOR012381 -12382 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 597 | Taylor-witness- Russel Seymour | TAYLOR012383 -12390 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 598 | Taylor-witness-Douglas H Scoopmire | TAYLOR012391 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 599 | Taylor-witness- Eddie Santa Cruz | TAYLOR012392 -12408 | City Objections: other suspects barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 600 | Taylor-witness-Olga Sanchez | TAYLOR012409 -12410 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 601 | Taylor-witness-Rynder | TAYLOR012411 -12420 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Should be "Rynders" | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 602 | Taylor-witness-Jose Martin Rodriguez | TAYLOR012421-12424 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 603 | Taylor-witness-William Riegel | TAYLOR012425-12438 | City's Objections: Misidentified. TAYLOR12429-12434 are not provided by Riegel | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 604 | Taylor-witness- Joseph Pobrislo | TAYLOR012439 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106, 802 |
| 605 | Taylor-witness-Andy Palm | TAYLOR012440 -12442 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 606 | Taylor-witness-Betty Pamaro | TAYLOR012443 -12446 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 607 | Taylor-witness-Maria Constanza Oton | TAYLOR012447 -12450 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 608 | Taylor-witness-Dora Parada de Ojeda | TAYLOR012451 -12472 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 609 | Taylor-witness-S Jeffery Minker | TAYLOR012473 -12486 | City's Objections: Other suspects/fire s & new theories barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 610 | Taylor-witness-Fernando Mendez | TAYLOR012487 -12493 | City's Objections: FRE 901 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 611 | Taylor-witness-Vincent McMinn | TAYLOR012494-12497 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 612 | Taylor-witness-William McKenzie | TAYLOR012498-12504 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 613 | Taylor-witness- Jesse Maxwell | TAYLOR012505-12531 | City's Objections: Other suspects barred (Dkt. 869, 44:10-46:3). | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 614 | Taylor-witness- Freida Lampton | TAYLOR012532-12534 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Misidentified. FRE 402, 403, 802, 805 | because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 615 | Taylor-witness-David Johnson | TAYLOR012535-12554 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 616 | Taylor-witness-Larry Gene Kern | TAYLOR012555-12556 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 617 | Taylor-witness-Frank Larson | TAYLOR012557 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 106, 402, 403, 802, 805, 901. Unclear what this is or its source. Other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 802, 901, 1002–1005 |
| 618 | Taylor-witness-Tadeo Iruretagoyena | TAYLOR012558-12563 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 619 | Taylor-witness- Judith Iruretagoyena | TAYLOR012564-12573 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 620 | Taylor-witness- Ross Hollis | TAYLOR012574 -12575 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 621 | Taylor-witness- Claude Higginbotham | TAYLOR012576 -12580 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 622 | Taylor-witness-Tomas Haskins.pdf | TAYLOR012581 | City's Objections: Should be "Thomas" Haskins | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 623 | Taylor-witness-Carmen Maria Guiterrez | TAYLOR012582-12593 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 624 | Taylor-witness- Pedro Galaz | TAYLOR012594-12597 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 625 | Taylor-witness- Alice Frenda | TAYLOR012598-12599 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 626 | Taylor-witness-Cyrus Ellis Frasure | TAYLOR012600-12603 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 627 | Taylor-witness-Robert Frakes | TAYLOR012604 -12617 | City's Objections: 12616-12617 are misidentified. Those two pages are an interview with TFD Chief Slagle. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 628 | Taylor-witness-Flores | TAYLOR012618 -12632 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 629 | Taylor-witness- Emory Earl Forkum | TAYLOR012633 -12635 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106, 802 |
| 630 | Taylor-witness-Maxwell R Fisher | TAYLOR012636 -12638 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 631 | Taylor-witness-Jose Gabriel Figueroa | TAYLOR012639 -12655 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 632 | Taylor-witness-Mick Geysko | TAYLOR012656 | City's Objections: Should be Mick "Fetsko" | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 633 | Taylor-witness-Christopher Eskew | TAYLOR012657 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 634 | Taylor-witness-Josefina Encinas | TAYLOR012658 -12675 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 635 | Taylor-witness-Rodney Dingle | TAYLOR012676 -12679 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| 636 | Taylor-witness- Alan Carroll Davenport | TAYLOR012680 -12682 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802, 901, 1002–1005 |
| 637 | Taylor-witness- Robert Edgar Cooper | TAYLOR012683 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 638 | Taylor- witness- Eduardo Coker | TAYLOR012684 -12690 | City's Objections: 12684 is a blank page | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 639 | Taylor-witness- Tadeo Carranza | TAYLOR012691 -12704 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 640 | Taylor-witness- Francisca Carranza | TAYLOR012705 -12713 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 641 | Taylor-witness- Authur V Camacho | TAYLOR012714 -12716 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 642 | Taylor-witness- Patricia Bustamante | TAYLOR012717 -12720 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 643 | Taylor-witness- Roy H Bryfogle | TAYLOR012721 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 644 | Taylor- witness- LeRoy Brockbent | TAYLOR012722 -12729 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 645 | Taylor-witness- Carin Sue Bryant | TAYLOR012730 -12731 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 646 | Taylor- witness- Bob Blankenship | TAYLOR012732 -12734 | City's Objections: FRE 106, 402, 403, 802, 805, 901. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802, 901, 1002–1005 |
| 647 | Taylor- witness- Thomas Bertie | TAYLOR012735 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 648 | Taylor-witness- Vincente Beccerra | TAYLOR012736 -12737 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 649 | Taylor- witness Grace Ballesteros | TAYLOR012738 -12741 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 650 | Taylor- witness Miguel Baldenegro | TAYLOR012742 -12744 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 651 | Taylor-witness Jose Cano Avila | TAYLOR012745 -12752 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 652 | Taylor- witness Willie Armstrong | TAYLOR012753 -12756 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 653 | Taylor- witness Dora de Antillon | TAYLOR012757 -12769 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 654 | Taylor- witness Anitza de Agauyo | TAYLOR012770 -12779 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 655 | Taylor-witness Francisco Aguayo | TAYLOR012780 -12800 | | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | Exhibit is inadmissible under Rules 105, 106, 802 |
| 656 | Taylor- witness Judge Royal Bouschor | TAYLOR012801 -12802 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 657 | Taylor- witness Eddie Lopez | TAYLOR012803 -12810 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 658 | Taylor-witness Arnulfo C Riesgo | TAYLOR012811 -12815 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 659 | Taylor-Critical Doc-witness- Victor Simethal | TAYLOR012816 -12817 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 660 | Taylor-Critical Doc-witness James McGuire | TAYLOR012818 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 661 | Taylor-Critical Doc-Suspect- Mario Corral | TAYLOR012819 -12830 | City's Objections: Incorrect identification. These are various statements from persons | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | about Corral. For example, 12829 and 12830 are statement of Pedro Galaz. Other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | |
| 662 | Louis Taylor Witness list | TAYLOR012831 -12997 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106 |
| 663 | Taylor Witness tape recordings | TAYLOR012998 | City's Objections: Misidentified. Recordings not included or provided here. This is | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | simply a list of alleged recordings of various persons. | |
| 664 | Taylor Critical-Report of other arson suspects | TAYLOR012999 -13004 | City's Objections: Other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 665 | Taylor-Critical Doc-witness- Giles Scoggins | TAYLOR013005 -13013 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 666 | Taylor-Critical Doc-witness -TPD Det. Smith | TAYLOR013014 -13050 | | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | under Rules 105, 106, 802 |
| 667 | Taylor-Critical Doc-witness- TPD L Adams | TAYLOR013051 -13056 | City's Objections: Partly misidentified. TAYLOR 013053 is part of Sgt. Rosetti's report. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 668 | Taylor-Critical Doc-witness- TPD Sgt. Rossetti | TAYLOR013057 -13059 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 669 | Taylor-Critical Doc-witness- TPD-Murchek | TAYLOR013060 -13083 | City's Objections: Partly misidentified. Murchek reports actually | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | continue to TAYLOR013085. | 105, 106, 802 |
| 670 | Taylor-Critical Doc-witness TPD McGuire | TAYLOR013084-13101 | City's Objections: Partly misidentified. Murchek reports (see Entry 669 above) actually continue to TAYLOR013085. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 671 | Taylor-Critical Doc-witness- TPD B Kohlman | TAYLOR013102-13163 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 672 | Taylor-Critical Doc-witness- TPD Bergman | TAYLOR013164-13175 | | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | inadmissible under Rules 105, 106, 802 |
| 673 | Taylor-Critical Doc-witness- Joe Palomarez | TAYLOR013176 -13177 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 674 | Taylor-Critical Doc-witness- FJ Castillo | TAYLOR013178 -13184 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 675 | Taylor-Critical Doc-witness- RM Carrillo | TAYLOR013185 -13187 | | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 105, 106, 802 |
| 676 | Taylor-Critical Doc-witness Claude Dunaway | TAYLOR013188 -13239 | City's Objections: FRE 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 802 |
| 677 | Taylor-Critical Doc-witness- LF Estrada | TAYLOR013240 -13247 | City Objections: Misidentified.  Estrada material is only TAYLOR 13240-13241.  TAYLOR13242-13247 has to do with Faustino Jose Castillo. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403. City reserves all applicable objections for trial. | |
| 678 | Detective Smith Report 12-20-1970 | TAYLOR013248 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 679 | Report of fire at five past midnight | TAYLOR013249 -13251 | City's Objections: Misidentified. This is a report by Sgt. J. Moore. It does contain information about when the witness reported the fire. | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 680 | Report re Acetylene_Louis Taylor | TAYLOR013252-13253 | City's Objections: Misidentified. This is a report by Det. D. Smith. It does contain information about an acetylene issue at the Pioneer, but not directly related to Louis Taylor. Taylor's guilt or innocence, and whether fire was arson, is not at sue in this case. (Dkt. 869 at 28:19-21). | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 681 | Pioneer hotel guests after fire | TAYLOR013254-13256 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 682 | TPD reports Misc | TAYLOR013257-13338 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 683 | TPD Reports Hosp Vic Rpts | TAYLOR013339-13341 | | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 684 | TPD reports ID tech | TAYLOR013342-13359 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Duplicating Entry 540 above (Taylor11542 to 11559) | Exhibit is inadmissible under Rules 105, 106, 802 |
| 685 | TPD reports black panthers | TAYLOR013360 | City's Objections: Duplicating Entry 543 above(Taylor11687) Misidentified. This is a Pima County Sheriff's Office report from 3-22-72 (day after Taylor guilty verdict) | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 802 |
| 686 | TPD officer notes | TAYLOR013361-13390 | City's Objections: Duplicates Entry 544, I believe (Taylor11688-11716). | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 106, 402, 403, 802, 805, 901. Don't necessarily know whose notes these are. Taylor's guilt or innocence, and whether fire was arson, are not at issue in this case. (Dkt. 869 at 28:19-21). | 402, 403, 802 |
| 687 | Affidavit of Indigency_Louis Taylor | TAYLOR013391 -13392 | City's Objections: FRE 901— Partly filled out with Taylor ADOC information, | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | but never signed by Taylor. Also undated. We have no idea when this is from. | 402, 403, 802 |
| 688 | ABA:  Fourth Edition (2017) of the Criminal Justice Standards for the Prosecution Function | TAYLOR013393-13449 | City's Objections: FRE 105, 402, 403, 802, 805 & the Court will instruct the jury on the applicable standards to apply to the issues | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 689 | Arizona Prosecuting Attorneys' Advisory Council Prosecutor Manual | TAYLOR013450-14414 | City's Objections: FRE 105, 402, 403, 802, 805 & the Court will instruct | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | the jury on the applicable standards to apply to the issues | 602, 701, 702, 704, 802, 901, 1002–1005 |
| 690 | Barbara LaWall ABA Membership | TAYLOR014415 -14416 | City's Objections: FRE 105, 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002– 1005 |
| 691 | Affidavit of Howard A. Kashman, 3/22/2021 | TAYLOR014417 -14421 | City's Objections: FRE 105, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 608, 609, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802. Plaintiff also did not disclose Kashman as an expert witness and therefore he cannot render any expert opinions. |
| 692 | Ninth Circuit Memorandum Submitted June 7, 1982; Decided September 15, 1982 <u>Taylor v Cardwell</u>, No. 81-5570 | TAYLOR014422 -14424 | City's Objections: FRE 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403 |
| 693 | 2021 0123 emails | TAYLOR014425 -14428 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 502, 602, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 608, 802, 901, 1002–1005 |
| 694 | 2020 0928 Nassen Conover emails | TAYLOR014429 -14431 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 502, 602, 608, 802, 901, 1002–1005 |
| 695 | Contract Struck Love 1 | TAYLOR014432 -14443 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005 |
| 696 | 2020 0922 LaWall-Davis emails | TAYLOR014444 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | the City joins in the County's objections | because the Exhibit is inadmissible under Rules 106, 402, 403, 502, 602, 802, 901, 1002–1005 |
| 697 | 2020 0923 Nassen to LaWall et al | TAYLOR014445 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 698 | 2020 0923 calendar document | TAYLOR014446 | City's Objections: the City joins in the | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | County's objections | under Rules 106, 402, 403, 502, 602, 802, 901, 1002–1005 |
| 699 | 2020 0812 Cramer to LaWall re ethics committee | TAYLOR014447 -14448 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 700 | 2020 1002 Nassen to LaWall, Cramer, Berkman, Flagg re Conover conv | TAYLOR014449 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 701 | 2021 0217 Conover to Nassen, Chin questioning conflict | TAYLOR014450 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 702 | 2021 0217 Conover to Nassen, Chin questioning conflict | TAYLOR014451 -14453 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 608, 701, 702, 704, 802, 901, 1002–1005 |
| 703 | 2021 0304 Flagg, Acedo, LaWall re Steller article | TAYLOR014454 -14455 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 704 | 2021 0304 Nassen LTR to Conover re Steller article w A,B,C | TAYLOR014456 -14468 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 702, 704, 802, 901, 1002–1005 |
| 705 | March, 2021 Arizona Daily Star article | TAYLOR014469 -14526 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 407, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 706 | 2021 0422 Az Daily Star - Pima County's top prosecutor seeks delay in Atwood execution | TAYLOR014527 -14555 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002– 1005 |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 707 | 2021 0624 Az Daily Star – Pima County adopts biggest budget ever: $2.1 billion | TAYLOR 014556-14560 | City's Objections: FRE 105, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002–1005 |
| 708 | 2021 0624 Az Daily Star – Tucson City Council approves $1.9 billion budget | TAYLOR 014561-14563 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, 901, 1002–1005 |
| 709 | Weiss v. Superior Court of Pima County, 12 Ariz.App. 527 (1970) | TAYLOR 014564-14566 | City's Objections: FRE 401, 402, 403,802, 805, the City joins in the | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | County's objections | 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 710 | Weiss v. Superior Court of Pima County, 106 Ariz. 577 (1971) | TAYLOR 014567-14570 | City's Objections: FRE 401, 402, 403,802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 711 | Formal Complaint filed with the Special Local Administrative Committee of the State Bar of Arizona for District No. 4 in the case entitled In the Matter of a Member of the State Bar of Arizona in No. 72-1-54 | TAYLOR 014571-14574 | City's Objections: FRE 401, 402, 403,802, 805, the City joins in the | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | County's objections | 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 712 | State of Arizona Supreme Court Order signed by Chief Justice Jack D. H. Hays dated October 22, 1973 in the case entitled In the Matter of the State Bar of Arizona, Horton C. Weiss in No. SB-36 | TAYLOR 014575-14629 | City's Objections: FRE 401, 402, 403, 802, 805, the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 713 | State v. Moore, 108 Ariz. 215 (1972) | TAYLOR 014630-14637 | City's Objections: This is duplicative to Plaintiff's Ex. 61, above. FRE 401, 402, 403. The | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Court will instruct the jury as to the law they are to apply in this case. | 602, 608, 609, 802, 901, 1002–1005 |
| 714 | State v. Mercer, 13 Ariz.App. 1 (1970) | TAYLOR 014638-14641 | City's Objections: FRE 401, 402, 403. The Court will instruct the jury as to the law they are to apply in this case. | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 715 | State v. Lenahan, 12 Ariz.App. 446 (1970) | TAYLOR 014642-14649 | City's Objections: FRE 401, 402, 403. The Court will instruct the jury as to the law they | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | are to apply in this case. | 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 716 | State v. Shook, 1 Ariz.App. 458 (1965) | TAYLOR 014650-14654 | City's Objections: FRE 401, 402, 403. The Court will instruct the jury as to the law they are to apply in this case. | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 407, 602, 608, 609, 802, 901, 1002–1005 |
| 717 | 2021 0713 Az Daily Star – Pima County's top prosecutor files to have minor weed offenses wiped clean | TAYLOR 014655-14659 | City's Objections: FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 602, 802, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 901, 1002–1005 |
| 718 | 60 minutes TV show entitled Hotel Pioneer detailing information about the case against Louis Taylor aired on CBS in 2002 | TAYLOR 014660 | City's Objections: FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 719 | 60 Minutes TV show in follow-up to Exhibit 718 above; aired on CBS in 2013 | TAYLOR 014661 | City's Objections: FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 704, 802, 901, 1002–1005 |
| 720 | Photograph of Donald Anthony | TAYLOR 014662 | City's Objections: FRE 401, 402, 403, other fires & alternative suspects are barred (Dkt. 869, 44:10-46:3) | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005 |
| 721 | NY Times Article "A Murder 'Solved' in 4 hours Sent the Wrong Man to Prison for 23 Years" printed 7/22/2021 | TAYLOR 014663-14667 | City's Objections: FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 722 | Affidavit of Sherry Van Camp | TAYLOR 014668-14672 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
|  |  |  | FRE 105, 402, 403, 802, 805 | because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 701, 702, 704, 802, 901, 1002–1005 |
| 723 | CV, Fee schedule, and report of Tommy W. Tunson, DBA | TAYLOR 014673-14695 | City's Objections: FRE 401, 402, 403, 802, 805 See also the City's Daubert and/or Motion in Limine re: Tunson | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701–705, 802, 901, 1002–1005, *Daubert* |
| 724 | CV, rate sheet, and report of Andrew Pacheco | TAYLOR 14696-14748 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 401, 402, 403, 802, 805 See also the City's & County's Daubert and/or Motion in Limine re: Pacheco & Dkt. 567 (Order) | because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701–705, 802, 901, 1002–1005, *Daubert* |
| 725 | Transcript of deposition of Marshall Smythe, taken 9/21/2021 | TAYLOR 14749-14822 | City's Objections: FRE 105, 402, 403, 802, 805 & Fed.R.Civ.P. 32 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 602, 701, 702, 704, 802. Plaintiff also did not disclose Smyth as an |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | expert witness and therefore he cannot render any expert opinions. |
| 726 | Affidavit of Katherine Puzauskas | TAYLOR 14823-14826 | City's Objections: FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005 |
| 727 | Letter dated February 14, 2013, from Noel Fidel to Barbara LaWall | TAYLOR 14827-14829 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 105, 402, 403, 802, 805 | 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005 |
| 728 | Letter dated February 20, 2013, from Rick Unklesbay to Michael Piccarreta et al | TAYLOR 14830-31 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rule 105, 106 |
| 729 | Tunson Rebuttal Expert Report | TAYLOR 14832-33 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & impermissible rebuttal – the City did not disclose an expert & FRE 401, 402, 403, | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701–705, 802, 901, 1002–1005, *Daubert* |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 802, 805 See also the City's Daubert and/or Motion in Limine re: Tunson | |
| 730 | Pacheco Rebuttal Expert Report | TAYLOR 14834-14858 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & impermissible rebuttal – the City did not disclose an expert & FRE 401, 402, 403, 802, 805 See also the City's Daubert and/or | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701–705, 802, 901, 1002–1005, *Daubert* |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Motion in Limine re: Pacheco | |
| 731 | CBS News segment regarding a press conference in Phoenix, Arizona on April 3, 2013 | TAYLOR 014859 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404(a), 404(b), 602, 608, 609, 701, 702, 704, 802, 901, 1002– 1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 732 | Photograph of Plaintiff Louis Taylor | TAYLOR 014860 | City's Objections: | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403 (he is pictured crying) | Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 733 | Photograph of Plaintiff Louis Taylor | TAYLOR 014861 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403 (saa) | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| | | | | because it was not timely disclosed. |
| 734 | Documentary entitled "This Damn Town" | TAYLOR 014862 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 735 | Documentary entitled "The Ballad of Louis Taylor" | TAYLOR 014863 | City's Objections: Untimely | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 736 | Video clip entitled "CB long clip" | TAYLOR 014864 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 737 | Video clip entitled "CB long clip enhanced audio" | TAYLOR 014865 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | was not timely disclosed. |
| 738 | Video clip entitled "Claus B" | TAYLOR 014866 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 739 | Video clip entitled "Claus" | TAYLOR 014867 | City's Objections: Untimely disclosure | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 740 | Video clip entitled "IMG_4023" | TAYLOR 014868 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 741 | Video clip entitled "IMG_4024" | TAYLOR 014869 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 742 | Video clip entitled "IMG_4025" | TAYLOR 014870 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 743 | Video clip entitled "IMG_4026" | TAYLOR 014871 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 744 | Video clip entitled "IMG_4028" | TAYLOR 014872 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 745 | ABA Post Conviction Resolution revised 10-31-2016 | TAYLOR 014873-014880 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. *See also* Dkt. 374. This Exhibit is also inadmissible because it |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | was not timely disclosed. |
| 746 | Louis Taylor - letter response to ABA resolution-2 | TAYLOR 014881-014887 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805; the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. *See also* Dkt. 374. This Exhibit is also inadmissible because it was not timely disclosed. |
| 747 | Reply to Response by Pima County Attorney LaWall FINAL | TAYLOR 014888 - 014900 | City's Objections: | Defendant objects |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 402, 403, 802, 805; the City joins in the County's objections | because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. *See also* Dkt. 374. This Exhibit is also inadmissible because it was not timely disclosed. |
| 748 | City of Tucson's Response to Public Records Request re Claus Bergman's personnel documents | TAYLOR 014901 | City's Objections: No objection because this was disclosed as supplement | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | to a discovery request to the City – it is not untimely (unlike all the other documents as noted in the City's objections herein) | 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 749 | NO EXHIBIT | | | |
| 750 | Photograph of Horton Weiss | TAYLOR 015194 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 751 | Photograph of Horton Weiss | TAYLOR 015195 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 752 | Photograph of Horton Weiss | TAYLOR 015196 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 2:12-13 & the City joins in the County's objections | 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 753 | Photograph of Horton Weiss | TAYLOR 015197 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 754 | Photograph of Horton Weiss | TAYLOR 015198 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 755 | Photograph of Horton Weiss | TAYLOR 015199 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | joins in the County's objections | 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 756 | Video clip entitled "IMG_1283" | TAYLOR 015200 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 757 | Mike Brown Video | TAYLOR 015201 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 758 | Ex. A to Notice of Filing Documents (Under Seal) dated January 24, 2023 | TAYLOR 015202-015270 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | FRE 402, 403, 802, 805 | 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 759 | Ex. B to Notice of Filing Documents (Under Seal) dated January 24, 2023 | TAYLOR 015271-015274 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 760 | Conover email | TAYLOR015275 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 761 | Bach PRR Combined | TAYLOR015276 -015278 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 762 | Baird Greene documents | TAYLOR015279 -015299 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 763 | Brad Roach inbox | TAYLOR015300 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 764 | Catie Allen Inbox | TAYLOR 015301 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 765 | Chin 1 | TAYLOR 015302 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 766 | Chin FW_ Meeting per Sam_Redacted | TAYLOR 015303 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 767 | Chin FW_ Statement regarding State v. Louis Taylor | TAYLOR 015304 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 768 | Chin Purges Combined (01008894-12xCDD05) | TAYLOR 015305-015388 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 769 | Chin Teams Msgs Combined (01011643-9xCDD05) | TAYLOR 015389-015400 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 770 | Chins Teams_Redacted | TAYLOR 015401-015412 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 771 | Chin_Inbox_Taylor_Redacted | TAYLOR 015413-015423 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 772 | Conover Inbox.Drafts.Sent - Conover Pages 101-200 (01016083-10xCDD05) | TAYLOR 015424-015506 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 773 | Conover Inbox.Drafts.Sent - Conover Pages 306-406 (01020216-4.2xCDD05) | TAYLOR 01507-015550 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|---------------------|------------------------------|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 774 | Conover Inbox.Drafts.Sent - pgs 201-305 (01016201-10xCDD05) | TAYLOR 015551-015618 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 775 | Conover Inbox.Drafts.Sent Combined, pgs 1-100 (01017331-4xCDD05) | TAYLOR 015619-015654 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 776 | Conover Pages 407-499 (01025074-9xCDD05) | TAYLOR 015655-015662 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 777 | Conover Pages 500-602 (01025076-6xCDD05) | TAYLOR 015663-015679 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 778 | Conover Pages 603-702 (01025077-9xCDD05) | TAYLOR 015680-015700 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 779 | Conover Pages 703-776 (01025079-6xCDD05) | TAYLOR 015701-015719 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 780 | Conover Pages 777-864 (01025084-6xCDD05) | TAYLOR 015720-015726 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 781 | Conover Pages 968-1033 (01025088-6xCDD05) | TAYLOR 015727-015733 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 782 | Conover Pages 1034-1113 (end) original docID01025090 (01028761-3xCDD05) | TAYLOR 015734-015755 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 783 | Deimos inbox | TAYLOR 015736-015752 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 784 | Durkin Inbox | TAYLOR 015753-015773 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 785 | Harris Inbox 2 | TAYLOR 015774-015775 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 786 | Jack Chin Phone Records.pal reduced_Redacted | TAYLOR 015776-015791 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 787 | Laureen.inbox | TAYLOR 015792-015800 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 788 | Mulembo Inbox.Sent - Combined (01015093-4xCDD05) | TAYLOR 015801-015822 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 789 | Original Baird Greene Phone Records.pal.reduced v2_Redacted | TAYLOR 015823-015836 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 790 | Original CT Phone Records.pal_Redacted | TAYLOR 015837-015849 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| | | | | 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 791 | Original Laura Conover Phone Records.pal_Redacted | TAYLOR 015850-015854 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 792 | Responsive Records re Communication with Plaintiff's Attorneys 15-CV-100152 (01028883-3xCDD05) (1) | TAYLOR 015855-015910 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 793 | Sarah.Bach@pcao.pima.gov (Primary)._Redactedv2 | TAYLOR 015911-015995 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 794 | Taylor Statement 080322 | TAYLOR 015996-015997 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 602, 608, 701, 702, 704, 802, 901, 1002– |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 795 | Victoria.Chavarria@pcao.pima.gov resp | TAYLOR 015998-016000 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 796 | Villanes account | TAYLOR 016001-016002 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 797 | 03-09-23 Trasoff Declaration with exhibits | TAYLOR 016003-016013 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13, FRE 105 & the City joins in the County's objections | under Rules 106, 402, 403, 404(a), 404(b), 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 798 | Report of Medical Examiner signed | TAYLOR 016014-016024 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 401, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002– |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 799 | GC20230007 Taylor Probate Investigator Report | TAYLOR 016025-016036 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 800 | 2023 03 10 Herf Declaration | TAYLOR 016037 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 801 | Affidavit of Kathy Lynn Higgins dated January 26, 2023 (Previously disclosed) | TAYLOR 016038-016041 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at | Defendant objects because the Exhibit is inadmissible under Rules |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | 2:12-13 & FRE 402, 403, 802, 805 | 106, 402, 403, 404, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 802 | Billing Invoices from Struck Love Bojanowski & Acedo, PLC regarding Taylor v. Pima County and Special Action Complaint | TAYLOR 016042-016139 | City's Objections: the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 803 | PCAO Privilege Log for 4/4/2023 Public Records Request | TAYLOR 016140-016154 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 502, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 804 | Laura Conover Redacted Email Communications | TAYLOR 016155-016212 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 805 | Struck Love Contract Amendment #5 | TAYLOR 016213-016214 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
| | | | | inadmissible because it was not timely disclosed. |
| 806 | Ediscovery Communications | TAYLOR 016215-016218 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 807 | Benny Gomez Communications | TAYLOR 016219-016222 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 | under Rules 106, 402, 403, 602, 701, 702, 704, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 808 | Deimos Thorne Communications | TAYLOR 016223-016241 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 809 | Sealed Declarant part 1 audio interview | TAYLOR 016242 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 810 | Sealed Declarant part 2 audio interview | TAYLOR 016243 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 | under Rules 105, 106, 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 811 | Sealed Declarant part 3 audio interview | TAYLOR 016244 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 812 | Sealed Declarant transcript | TAYLOR 016245-016355 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 | Defendant objects because the Exhibit is inadmissible under Rules 105, 106, 402, 403, 404, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 813 | PCAO Draft State's Mtn to Vacate Conviction-5.30.2022 | TAYLOR 016356-016402 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 814 | PCAO Draft State's Mtn to Vacate Conviction-5.5.2022 | TAYLOR 016403-016415 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | County's objections | 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 815 | PCAO Draft State's Mtn to Vacate Conviction-5.24.2022 | TAYLOR 016416-016429 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | This Exhibit is also inadmissible because it was not timely disclosed. |
| 816 | PCAO Draft State's Mtn to Vacate Conviction-5.24.2022 | TAYLOR 016430-016443 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 817 | PCAO Draft State's Mtn to Vacate Conviction-5.27.2022 | TAYLOR 016444-016460 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 818 | PCAO Draft State's Mtn to Vacate Conviction-5.29.2022 | TAYLOR 016461-016478 | City's Objections: Untimely | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 819 | PCAO Draft State's Mtn to Vacate Conviction-5.29.2022 | TAYLOR 016479-016522 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | joins in the County's objections | 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert.* This Exhibit is also inadmissible because it was not timely disclosed. |
| 820 | Report and Recommendation-11.28.2021 | TAYLOR 016523-016545 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002– |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | 1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 821 | Report and Recommendation-12.6.2021 | TAYLOR 016546-016572 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 822 | Report and Recommendation-1.9.22 | TAYLOR 016573-016607 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| 823 | Report and Recommendation-1.9.22 | TAYLOR 016608-016642 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 824 | Report and Recommendation-1.9.22 | TAYLOR 016643-016477 | City's Objections: Untimely disclosure Rule 26 & | Defendant objects because the Exhibit is inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | Dkt. 248 at 2:12-13 & the City joins in the County's objections | under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 825 | Report and Recommendation-12.13.21 | TAYLOR 016478-016505 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | County's objections | 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 826 | Report and Recommendation-12.14.21 | TAYLOR 016506-016532 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | This Exhibit is also inadmissible because it was not timely disclosed. |
| 827 | Report and Recommendation-12.14.21 | TAYLOR 016533-016559 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | timely disclosed. |
| 828 | Report and Recommendation | TAYLOR 016560-016579 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 829 | Memorandum CSIU Review of Conviction | TAYLOR 016580-016584 | City's Objections: Untimely | Defendant objects because the |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Exhibit is inadmissible under Rules 106, 402, 403, 404, 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 830 | State's Mtn to Vacate Conviction | TAYLOR 016585-016602 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 404, |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | joins in the County's objections | 502, 602, 608, 609, 701, 702, 704, 802, 901, 1002–1005, *Daubert*. This Exhibit is also inadmissible because it was not timely disclosed. |
| 831 | Howard Kashman's 9.22.23 Affidavit | TAYLOR 016603-016604 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404(a), 404(b), 608, 609, 701, 702, 704, 802. Plaintiff also did not |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | disclose Kashman as an expert witness and therefore he cannot render any expert opinions. This Exhibit is also inadmissible because it was not timely disclosed. |
| 832 | AZ Attorney General's Public Records Request Response | TAYLOR 016605-016633 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & the City joins in the County's objections | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | is also inadmissible because it was not timely disclosed. |
| 833 | Privilege Log. CSIU File | N/A | If Plaintiff is referring to the privilege log for documents disclosed as CSIU 000001 – 4897, the City does not object. | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 834 | 2021 06 21 Privilege log re response to 2nd RFP | N/A | If Plaintiff is referring to the privilege log for | Defendant objects because the Exhibit is |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | documents disclosed as COUNTY005812-26604, the City does not object. | inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 835 | Charlene Smith Declaration (received 02/25/24) | TAYLOR 016634-5 | City's Objections: Untimely disclosure Rule 26 & Dkt. 248 at 2:12-13 & FRE 402, 403, 802, 805 | Defendant objects because the Exhibit is inadmissible under Rules 402, 403, 404, 602, 608, 802, 901, 1002–1005. This Exhibit is also inadmissible |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|---|---|---|---|---|
| | | | | because it was not timely disclosed. |
| 836 | Pima County 13th Supplemental Disclosure | p. 4 | | Defendant objects because the Exhibit is inadmissible under Rules 106, 402, 403, 602, 802, 901, 1002–1005. This Exhibit is also inadmissible because it was not timely disclosed. |
| 837 | State v. Taylor, 112 Ariz. 68 | TAYLOR 016636-60 | City Objections: Rule 106 & the facts will be determined by the jury and the | Defendant objects because the Exhibit is inadmissible under Rule 106. |

| Doc. # | Description | Bates Range | City's Objection[12] | Pima County's Objections[13] |
|--------|-------------|-------------|----------------------|------------------------------|
|        |             |             | Court will instruct the jury as to the applicable law |  |

**Defendant Pima County's Exhibit List:[14]**

Unless otherwise indicated, Plaintiff makes the following standard objections to Defendants Pima County and the City of Tucson's use of all exhibits listed under Fed. R. Evid. 105; 106; 402; 403; 602; 802; 804(b)(1); 901; 1002–1005; Lack of Foundation; Subject to Motion in Limine.

| Exhibit Number | Description | Objections |
|----------------|-------------|------------|
| 1000. |  |  |
| 1001. | Memo in Support of Stipulated Finding on Post-Conviction Relief and Plea Agreement (Pima County 000018 – 27) |  |
| 1002. | April 2, 2013 Change of Plea Hearing and Sentencing Transcript (Pima County 000028 – 53) |  |
| 1003. | Plea Agreement (Pima County 000054 – 62) |  |

---

[14] Defendant Pima County incorporates here Defendant City of Tucson's Exhibit List subject to Pima County's objections noted elsewhere in this Joint Proposed Pretrial Order. Exhibits or portions of Exhibits that were included in PCAO's prosecution file and/or TPD's file and that are listed below are included subject to the objections made in this Joint Proposed Pretrial Order and admissible only for a limited purpose. Defendant Pima County preserves all objections thereto.

| Exhibit Number | Description | Objections |
|---|---|---|
| 1004. | | |
| 1005. | | |
| 1006. | Video of Louis Taylor's April 2, 2013 Sentencing (Pima County 000066) | |
| 1007. | | |
| 1008. | 04/15/1972 Arizona Daily Star Saturday TV Listings (Pima County 000071) | |
| 1009. | 04/15/1972 Tucson Daily Citizen Saturday TV Listings (Pima  County 000072) | |
| 1010. | 04/15/1972 Audio of Face the Issues with Howard Kashman (Pima County 000073) | |
| 1011. | NFPA 921, 2008 Edition Disclaimers (Pima County 000075 – 77) | No objection. |
| 1012. | NFPA 921, 2011 Edition – Disclaimers (Pima County 000078 – 80) | No objection. |
| 1013. | July 2, 1986 Article: Judge Now Sure Taylor Guilty (Pima County 000074) | |
| 1014. | Louis Taylor's Arizona Department of Corrections File (Pima County 039735 – 40528 and 62176 – 64087) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1015. | CourtTV's response to subpoena duces tecum (Pima County 040529 – 40530) | |
| 1016. | | |
| 1017. | | |
| 1018. | | |
| 1019. | | |
| 1020. | Loft Cinema response to subpoena duces tecum (Pima County 040563 – 40571) | |
| 1021. | April 17, 2017 AXON Camera footage from Tucson Police Department (Pima County 061141) | |
| 1022. | April 17, 2017 AXON Camera footage from Tucson Police Department (Pima County 061142) | |
| 1023. | Mug Shots from Pima County Attorneys' Office's prosecution file (Pima County 061149 – 61183) | |
| 1024. | Plea Agreement in State v. Taylor (2017) (Pima County 061184 – 61219) | |
| 1025. | | |
| 1026. | | |
| 1027. | | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1028. | Rose Silver Arizona State Bar Profile<br>(Pima Couty 061986 – 61988) | |
| 1029. | Tucson Daily Citizen Article: First female Pima County Attorney said greatest achievement was her family<br>(Pima County 061989 – 61992) | |
| 1030. | YouTube Video: Rose Silver First Woman County Attorney in the State of Arizona<br>(Pima County 61993 – 61995) | |
| 1031. | Baltimore Sun Article: Rose Silver,90, a former Pima County…<br>(Pima County 061996 – 61997) | |
| 1032. | University of Arizona Women's Plaza of Honor – Rose Silver<br>(Pima County 061998 – 62000) | |
| 1033. | Arizona Daily Star Article: Jury awards Tucson couple $1.35 million in home fire<br>(Pima County 062001) | |
| 1034. | Tucson Daily Citizen Article: Policeman accused of extortion; fired<br>(Pima County 062002) | |
| 1035. | Arizona Daily Star Article: Ex-policeman Fined $110 On Theft Charges<br>(Pima County 062003) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1036. | National Archives and Records Docket for Case No. 71CV20 (Pima County 062004 – 62043) | |
| 1037. | DSM-5: Anti-Social Personality Disorder (Pima County 062044 – 65054) | |
| 1038. | DSM-5: Pyromania (Pima County 62055 – 62059) | |
| 1039. | A Report of Essential Findings From a Study of Serial Arsonists (Pima County 062060 – 62175) | |
| 1040. | Ex Rel Volumes 1 through 3, Pima County Attorney's Office's prosecution file box 14391 (Pima County 62176 – 62790) | |
| 1041. | Ex Rel Volume 4, Pima County Attorney's Office's prosecution file box 14391 (Pima County 62791 – 63240) | |
| 1042. | Ex Rel Volume 5, Pima County Attorney's Office's prosecution file box 14391 (Pima County 063241 – 63750) | |
| 1043. | Ex Rel Volume 6, Pima County Attorney's prosecution file box 14391 (Pima County 063751 – 64143) | |
| 1044. | Ex Rel Volume 6, Pima County Attorney's Office prosecution file box 14391 (Pima County 064144 – 64264) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1045. | December 31, 1970 Transcript of Motion for Transfer (Pima County 49858 – 48894) | |
| 1046. | January 13, 1971 Transcript of Petition to Amend Charges (Pima County 049895 – 49910) | |
| 1047. | January 28, 1971 Transcript of Juvenile Transfer Hearing containing the testimony of: Paul Charters Gerald Jacson Marshall Chazen William Ball Norma Hamilton Allan Cook Steve Vukcevich (Pima County 049911 – 50031) | |
| 1048. | January 28, 1971 Transcript of Probable Cause Hearing (Volume 1) containing testimony of: Robert Edgar Cooper Rodney Dingle Frank G. Armenta David Marios Johnson (Pima County 050032 – 50135) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1049. | January 29, 1971 Transcript of Probable Cause Hearing (Volume 2) containing testimony of:<br>David Marion Johnson<br>Giles Scoggins | |
| 1050. | January 29, 1971 Transcript of Probable Cause Hearing (Volume 3) containing testimony of:<br>Giles Scoggins<br>Art Camacho<br>(Pima County 050242 – 50336) | |
| 1051. | February 1, 1971 Transcript of Probable Cause Hearing (Volume 4) containing testimony of:<br>Cyrillia Holmes<br>(Pima County 050337 – 50452) | |
| 1052. | February 2, 1971 Transcript of Probable Cause Hearing (Volume 5) containing testimony of:<br>Cyrillia Holmes<br>(Pima County 050453 – 50622) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1053. | February 4, 1971 Transcript of Probable Cause Hearing (Volume 6) containing testimony of:<br>Lewis Dwight Adams<br>Milan Paul Murchek<br>Henry Gassaway<br>David N. Smith<br>(Pima County 050623 – 50722) | |
| 1054. | February 4, 1971 Transcript of Probable Cause Hearing (Volume 7) containing testimony of:<br>David N. Smith<br>Paul Charters<br>Rex K. Angeley<br>Douglas Scoopmire<br>Gerald Dean Soop<br>Beryl Kohlman<br>Eugene V. Rossetti<br>Patrick Joseph McGuire<br>Mary Mills<br>(Pima County 050732 – 50827) | |
| 1055. | February 5, 1971 Transcript of Probable Cause Hearing (Volume 8) containing testimony of:<br>James Marcus Holsinger<br>Charles Arthur McGee<br>(Pima County 050828 – 50882) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1056. | February 8, 1971 Transcript of Probable Cause Hearing (Volume 9) containing testimony of: Lewis Dwight Adams Henry Gassaway Eugene V. Rossetti Rex K. Angeley David N. Smith Oscar George Montano Ruth Bradley McEvoy Clause Iver Bergman (Pima County 050883 – 51022) | |
| 1057. | February 9, 1971 Transcript of Probable Cause Hearing (Volume 10) containing testimony of: William F. Briamonte Lynden D. Gilmore (Pima County 055023 – 51173) | |
| 1058. | February 10, 1971 Transcript of Probable Cause Hearing (Volume 11) containing testimony of: Gregory Walter Chmara Mary Mills Robert B. Slagel (Pima County 051174 – 51236) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1059. | June 17, 18, and 23, 1971 Transcript of Preliminary Hearing containing testimony of: John E. Williams Albert M. Felix Cyrillis Holmes (Pima County 051237 – 51359) | |
| 1060. | June 23 and 24, 1971 Transcript of Preliminary Hearing containing testimony of: Cyrillis Holmes Rodney Dingle (Pima County 051360 – 51445) | |
| 1061. | June 24, 1971 Transcript of Preliminary Hearing containing testimony of: Angelo Joseph Palm David M. Smith Edward Marion Johnson Giles Lacey Scoggins (Pima County 051456 – 51561) | |
| 1062. | June 29, 1971 Transcript of Preliminary Hearing containing testimony of: Glenn Idail Louis Dwight Adams Eugene Rossetti (Pima County 051562 – 51658) | |

1

| Exhibit Number | Description | Objections |
|---|---|---|
| 1063. | June 29 and 30, 1971 and July 2, 1971 Transcript of Preliminary Hearing containing testimony of: Milan Murchek H.L. Gassaway Walter Seaman (Pima County 051659 – 51765) | |
| 1064. | July 2, 6, and 8, 1971 Transcript of Preliminary Hearing containing testimony of: Walter R. Seaman Joe B. Welborn (Pima County 051766 – 51838) | |
| 1065. | September 7, 1971 Transcript of Report of Proceedings (Pima County 051839 – 51932) | |
| 1066. | September 16, 1971 Transcript of Report of Proceedings (Pima County 051933 – 51959) | |
| 1067. | September 22, 1971 Transcript of Report of Proceedings (Pima County 051960 – 51975) | |
| 1068. | September 27, 1971 Transcript of Report of Proceedings (Pima County 051976 – 51997) | |
| 1069. | October 4, 1971 Transcript of Report of Proceedings (Pima County 051998 – 52012) | |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Exhibit Number | Description | Objections |
|---|---|---|
| 1070. | October 15, 1971 Transcript of Voluntariness Hearing (Volume 1) containing testimony of: Patrick McGuire Louis Adams Eugene Rossetti H.L. Gassaway (Pima County 052279 – 52528) | |
| 1071. | October 15, 1971 Transcript of Voluntariness Hearing (Volume 2) containing testimony of: Rex Angeley Paul Charters Kenneth Drieger Paul Charters Linda Weiss Alfred Lingham Cary Carstensen William Shoemaker George William Biggs (Pima County 52013 – 52278) | |
| 1072. | October 26, 1971 Transcript of Voluntariness Hearing containing testimony of: Armando A. C. Garcia (Pima County 052529 – 52668) | |
| 1073. | November 3, 1971 Transcript of Status Conference (Pima County 052669 – 52761) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1074. | December 21, 1971  Transcript of Report of Proceedings (Pima County 052762 – 52941) | |
| 1075. | January 10, 1972 Transcript of Continued Voluntariness Hearing (Volume 1) containing testimony of: Edward N. Matthews Paul J. Charters Mary Mills Louis C. Taylor (Pima County 052942 – 53061) | |
| 1076. | January 10, 1972 Transcript of Continued Voluntariness Hearing (Volume 2) containing testimony of: Richard Joseph Gonzales Claudelle Neal (Pima County 053062 – 53192) | |
| 1077. | January 11, 1972 Transcript of Continued Voluntariness Hearing (Volume 1) containing testimony of: Louis C. Taylor (Pima County 053193 – 53301) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1078. | January 11, 1972 Transcript of Continued Voluntariness Hearing (Volume 2) containing testimony of: Lois Dwight Adams Henry L. Gassaway Milan Paul Murchek Rex Angeley Eugene Rossetti (Pima County 053302 – 53371) | |
| 1079. | January 11, 1972 Transcript of Continued Voluntariness Hearing (Volume 3) containing testimony of: Rex Angeley Eugene Rossetti (Pima County 053372 – 53492) | |
| 1080. | January 31, 1972 Trial Transcript (Volume 1) containing testimony of: Marjorie Jackman (Pima County 053516 – 53623) | |
| 1081. | February 1, 1972 Trial Transcript (Volume 2) containing testimony of: Marjorie Jackman Vera Fletcher Madge Beauchamp Fern Syme Ruby McCallister (Pima County 053624 – 53706) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1082. | February 2, 1972 Trial Transcript (Volume 3) (Pima County 053707 – 53787) | |
| 1083. | February 3, 1972 Trial Transcript (Volume 4) (Pima County 053788 – 54043) | |
| 1084. | February 4, 1972 Trial Transcript (Volume 5) (Pima County 054044 – 54254) | |
| 1085. | February 7, 1972 Trial Transcript (Volume 6) (Pima County 054255 – 54479) | |
| 1086. | February 8, 1972 Trial Transcript (Volume 7) (Pima County 054480 – 54678) | |
| 1087. | February 9, 1972 Trial Transcript (Volume 8) containing testimony of: Josefina Encinas (Pima County 054679 – 54818) | |
| 1088. | February 10, 1972 Trial Transcript (Volume 9) containing testimony of: Patricia Maria de Los Angeles Rios Bustamonte Philip L. Judson Richard J. MacLaury Helen Irene Bailey (Pima County 054819 – 55003) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1089. | February 11, 1972 Trial Transcript (Volume 10) containing testimony of: Irving Kasloff Arnulfo Riesgo Emery Forkum Janet Ilene Lerner (Pima County 055004 – 55220) | |
| 1090. | February 12, 1972 Trial Transcript (Volume 11) containing testimony of: Robert Edgar Cooper William Ricketts, Jr. (Pima County 055221 – 55386) | |
| 1091. | February 9, 1972 Trial Transcript (Volume 12) containing testimony of: Richard Lopez Delahanty (Pima County 055387 – 55516) | |
| 1092. | February 15, 1972 Trial Transcript (Volume 13) containing testimony of: Angel J. Carranza Cyrillis Holmes (Pima County 055517 – 55693) | |
| 1093. | February 16, 1972 Trial Transcript (Volume 14) containing testimony of: Cyrillis Holmes (Pima County 055691 – 55849) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1094. | February 17, 1972 Trial Transcript (Volume 15) containing testimony of: Cyrillis Holmes (Pima County 055850 – 56027) | |
| 1095. | February 18, 1972 Trial Transcript (Volume 16) containing testimony of: Cyrillis Holmes (Pima County 056028 – 56186) | |
| 1096. | February 19, 1972 Trial Transcript (Volume 17) containing testimony of: Cyrillis Holmes (Pima County 056187 – 56297) | |
| 1097. | February 21, 1972 Trial Transcript (Volume 18) containing testimony of: Cyrillis Holmes (Pima County 056298 – 56469) | |
| 1098. | February 22, 1972 Trial Transcript (Volume 19) containing testimony of: Cyrillis Holmes Frank G. Armenta Rodney L. Dingle David Dingledine (Pima County 056470 – 56658) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1099. | February 23, 1972 Trial Transcript (Volume 20) containing testimony of: Giles Lacey Scoggins (Pima County 056659 – 56877) | |
| 1100. | February 24, 1972 Trial Transcript (Volume 21) containing testimony of: Louis Dwight Adams Eugene Vincent Rossetti H. L. Gassaway (Pima County 056878 – 57064) | |
| 1101. | February 25, 1972 Trial Transcript (Volume 22) containing testimony of: Rex Angeley James Micus Holsinger David N. Smith Bruce Foy Wallmark (Pima County 057065 – 57253) | |
| 1102. | February 26, 1972 Trial Transcript (Volume 23) containing testimony of: Larry Gene Kern Lynden D. Gilmore William Jerome Martin (Pima County 057254 – 57336) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1103. | February 28, 1972 Trial Transcript (Volume 24) containing testimony of: Bruce Foy Wallmark Arzula Tatum Willie Wheeler Joyce Marie Horn Christine Bradley (Pima County 057337 – 57476) | |
| 1104. | February 29, 1972 Trial Transcript (Volume 25) containing testimony of: Lawrence Frank Estrada Angelo Joseph Palm Glenn Idail Walter Seaman Forrest James William Stephen Daniel Serna (Pima County 057477 – 57704) | |
| 1105. | March 1, 1972 Trial Transcript (Volume 26) containing testimony of: Robert James Jackson Grace Hope Ballesteros Willis Fry Ronald William Geuder Larry Walter Brockbank (Pima County 057705 – 57914) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1106. | March 2, 1972 Trial Transcript (Volume 27) containing testimony of: Leroy Walter Brockbank Mario Valenzuela William Carter David Preston Spencer Michael R. Farley Ernest Pain, Jr. (Pima County 057915 – 58147) | |
| 1107. | March 3, 1972 Trial Transcript (Volume 28) containing testimony of: William Lee Fulton Gregory Walter Chmara Joe L. Bruggeman Richard S. Darling (Pima County 058148 – 58363) | |
| 1108. | March 4, 1972 Trial Transcript (Volume 29) containing testimony of: Robert B. Slagel Kenneth K. Krieger Phillip A. Rankin Milan Murchek (Pima County 058364 – 58500) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1109. | March 6, 1972 Trial Transcript (Volume 30) containing testimony of: Michael R. Farley Steven J. Karp George McEvoy Harold Thomas Delhaye Gary Aegerter Louis C. Taylor (Pima County 058501 – 58749) | |
| 1110. | March 7, 1972 Trial Transcript (Volume 31) containing testimony of: Louis Taylor (Pima County 058750 – 58933) | |
| 1111. | March 8, 1972 Trial Transcript (Volume 32A) in chambers hearing (Pima County 058934 – 58950) | |
| 1112. | March 8, 1972 Trial Transcript (Volume 32B) containing testimony of: Marshall Smythe (Pima County 058951 – 59168) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1113. | March 9, 1972 Trial Transcript (Volume 33) containing testimony of:<br>Dora Perella de Ojeda<br>Dora Laura Ojeda de Antillion<br>Jorge Manuel Flores<br>Jose Gutierrez<br>Marshall Smythe<br>(Pima County 059166 – 59315) | |
| 1114. | March 10, 1972 Trial Transcript (Volume 34) containing testimony of:<br>Marshall Smythe<br>(Pima County 059316 – 59464) | |
| 1115. | March 11, 1972 Trial Transcript (Volume 35) containing testimony of:<br>Marshall Smythe<br>(Pima County 059465 – 59605) | |
| 1116. | March 13, 1972 Trial Transcript (Volume 36) containing testimony of:<br>Norma Elena Lopez de Coker<br>Edward R. Coker Valenzuela<br>Marshall Smythe<br>(Pima County 059606 – 59763) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1117. | March 14, 1972 Trial Transcript (Volume 37) containing testimony of: Marshall Smythe Gregory Walter Chmara John David Carter Michael David Jones (Pima County 059764 – 59990) | |
| 1118. | March 15, 1972 Trial Transcript (Volume 38) containing testimony of: Robert James Jackson Tadeo Iruretaguyena Caranza Anna de Aguayo Warren F. Allison William Briamonte Steven Louis Graving (Pima County 059991 – 60200) | No objection (limited to the testimony of Robert J. Jackson). |
| 1119. | March 16, 1972 Trial Transcript (Volume 39) containing testimony of: Steve Graving Robert R. Frakes Louis Leon Alfred Lingham Clarence John Jacome Ernest Abbott Freda Lampton (Pima County 060201 – 60446) | |

1

| Exhibit Number | Description | Objections |
|---|---|---|
| 1120. | March 17, 1972 Trial Transcript (Volume 40) containing testimony of: Errol D. Barclay Herbert E. Bay Louis C. Taylor (Pima County 060447 – 60666) | |
| 1121. | March 18, 1972 Trial Transcript (Volume 41) containing testimony of: Claus Iver Bergman (Pima County 060667 – 60815) | No objection. |
| 1122. | March 20, 1972 Trial Transcript (Volume 42) of closing arguments and jury instructions (Pima County 060816 – 60957) | |
| 1123. | March 21, 1972 Trial Transcript (Volume 43) of the jury's verdict. (Pima County 060958 – 60983) | |
| 1124. | March 28, 1972 Transcript of Sentencing Hearing (Pima County 060964 – 60985) | |
| 1125. | May 18, 1972 Transcript of Hearing on Motion for New Trial containing testimony of: Robert Jackson Howard Kashman (Pima County 060986 – 61140) | |
| 1126. | | |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Exhibit Number | Description | Objections |
|---|---|---|
| 1127. | Appellant's Opening Brief dated December 27, 1972 (Pima County 000185 – 296) | |
| 1128. | Appellee's Answering Brief filed March 1973 (Pima County 000314 – 443) | |
| 1129. | Appellant's Reply Brief filed May 23, 1973 (Pima County 000297 – 313) | |
| 1130. | Arizona Department of Corrections April 9, 2012 incident report (Pima County 000458 - 459 | |
| 1131. | Record on Appeal for Appellate Case No. 71-12010 (Pima County 000460 – 838 | |
| 1132. | March 13, 2013 Order (Pima County 000839 – 840) | |
| 1133. | Arizona v. Taylor Minute Entries (Pima County 000841 – 1183) | |
| 1134. | April 2, 2013 Minute Entry (Pima County 001193 – 1206) | |
| 1135. | Photos of Pioneer Hotel (Pima County 001207 – 1217) | No objection. |
| 1136. | Marshall Smythe's Chronology of Pioneer Fire Investigation (Pima County 001253 – 1258) | No objection. |
| 1137. | Folder Containing Pioneer Hotel Arson Investigator Report (Pima County 001259 – 1295) | |

1

| Exhibit Number | Description | Objections |
|---|---|---|
| 1138. | April 8, 1969 Arizona Industrial School Incident Report (Pima County 001296 – 1297) | |
| 1139. | February 14, 2013 Order (Pima County 001298) | |
| 1140. | Cross Appellant's Opening Brief filed in February 1973 (Pima County 001299 – 1382) | |
| 1141. | Cross Appellee's Answering Brief filed April 16, 1973 (Pima County 001427 – 1463) | |
| 1142. | Cross-Appellant's Reply Brief filed in May 1973 (Pima County 001383 – 1426) | |
| 1143. | Declaration of Herbert Haley (Pima County 001464 – 1471) | |
| 1144. | Emails between Rick Unklesbay and Dawn Northup (Pima County 001474 – 1477) | |
| 1145. | Emails between Rick Unklesbay and Herbert Haley (Pima County 001478 – 1482) | |
| 1146. | State v. Taylor Felony Complaint filed June 11, 1971 (Pima County 001486 – 1500) | |
| 1147. | | |
| 1148. | February 27, 2013 Novak correspondence to Unklesbay (Pima County 001656) | |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Exhibit Number | Description | Objections |
|---|---|---|
| 1149. | Cy Holmes correspondence to R. B. Slagel (Pima County 001657) | |
| 1150. | | |
| 1151. | | |
| 1152. | | |
| 1153. | Plaintiff's Post-Conviction Exhibit Index and June 19, 2012 Puzauskas correspondence to Unklesbay (Pima County 001699 – 1706) | |
| 1154. | | |
| 1155. | Motion to Extend Time filed November 28, 2012 9Pima County 001768 – 1769) | |
| 1156. | | |
| 1157. | January 25, 2013 Order (Pima County 001944) | |
| 1158. | January 25, 2013 Order Appointing Counsel (Pima County 001945 – 1946) | |
| 1159. | Pamphlet Commemorating the Pioneer Hotel Fire (Pima County 001947 – 1962) | |
| 1160. | Petition and Order to Extend Time filed February 13, 2013 (Pima County 001963 – 1965) | |
| 1161. | Plaintiff's Petition for Post-Conviction Relief (Pima County 001966 – 2027) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1162. | Petition for Writ of Habeas Corpus Ad Prosequendum filed March 13, 2013 (Pima County 002028 – 2032) | |
| 1163. | Exhibit 7 to Cy Holmes Deposition: Qualifications & Background (Pima County 002038 – 2042) | |
| 1164. | | |
| 1165. | | |
| 1166. | State v. Parle – Google Scholar (Pima County 002178 – 2183) | |
| 1167. | | |
| 1168. | | |
| 1169. | Tucson Fire Department Fire Report on the Pioneer International Hotel (Pima County 002306 – 2340) | |
| 1170. | Sergeant Jack Moore's Supplement dated January 3, 1971 (Pima County 002341 – 2343) | |
| 1171. | | |
| 1172. | | |
| 1173. | State's Petition for Writ of Special Action Filed November 8, 1971 (Pima County 002996 – 3105 and Pima County 003237 – 3272) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1174. | Appeal Pleadings, Appellate Court No. 2-CA-CIV 974 (Pima County 003106 – 3224) | |
| 1175. | Trial Exhibit List (Pima County 003225 – 3236) | |
| 1176. | Minute Entries (Pima County 003273 – 3391 – 3547 and Pima County 003685 - 3825) | |
| 1177. | Sentencing Order (Pima County 003547 – 3551) | |
| 1178. | Folder: Pretrial Publicity Phoenix (Pima County 003552 – 3555) | |
| 1179. | 9th Circuit Appellee's Reply to Appellant's Opening Brief (Pima County 03592 – 3645) | |
| 1180. | 9th Circuit Petition for Rehearing Brief of Appellant (Pima County 003646 – 3667) | |
| 1181. | Memo regarding Motion for Discovery and other Miscellaneous Papers (Pima County 003668 – 3684) | |
| 1182. | Folder: In Camera Inspection Materials (Pima County 003871 – 3925) | |
| 1183. | Folder: Robert Jackson for Court (Pima County 003926 – 3930) | |
| 1184. | Form Letters to Trial Witnesses (Pima County 004213 – 4530) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1185. | Witness Lists and Form Letters to Witnesses (Pima County 004232 – 4334) | |
| 1186. | Letter to Trial Witnesses (Pima County 004335 – 4349) | |
| 1187. | Blank copies of Stay Order and State's Tentative List of Witnesses State Will Call 9Pima County 004350 – 4380) | |
| 1188. | State's filings of Additional Proposed Witnesses (Pima County 004381 – 4398) | |
| 1189. | Filed Witness Lists (Pima County 004399 – 4425) | |
| 1190. | Witness List with notes and Affidavits of Service (Pima County 004426 – 4476) | |
| 1191. | Additional filed Witness Lists (Pima County 004477 – 4503) | |
| 1192. | Tentative List of Witnesses State Will Call (Pima County 004504 – 4509) | |
| 1193. | Indictment Form Pima County 004510) | |
| 1194. | Court of Appeals Affidavit of Service (unsigned) (Pima County 004511 – 4512) | |
| 1195. | Additional Witness Lists filed by State (Pima County 004531 – 4548) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1196. | Additional Proposed Witness List filed January 7, 1972 (Pima County 004549 – 4551) | |
| 1197. | State's Filed Witness Lists (Pima County 004552 – 4573) | |
| 1198. | State's Witness List dated September 23, 1971 (Pima County 004596 – 4599) | |
| 1199. | Pleadings and Legal Research (Pima County 004611 – 4710) | |
| 1200. | Trial Hotel Accommodations (Pima County 004712 – 4716) | |
| 1201. | Witness Travel Arrangements (Pima County 004717 – 4787) | |
| 1202. | Trial Subpoenas (Pima County 004788 – 4997) | |
| 1203. | Additional Witness Lists (Pima County 004998 – 5047) | |
| 1204. | Folder of Newspaper Clippings (Pima County 005048 – 5053) | |
| 1205. | Copies of Letters to Witnesses (Pima County 005054 – 5217) | |
| 1206. | Witness Letters Returned (Pima County 005218 – 5230) | |
| 1207. | Appeal Redwell Cover (Pima County 005278) | |
| 1208. | Note regarding Officer Bay (Pima County 005405 – 5407) | |
| 1209. | Motion for New Trial pleadings and appeal filings (Pima County 005408 – 5662) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1210. | Appeal Pleadings<br>(Pima County 005663 – 5752) | |
| 1211. | Waiver of Defendant's Presence<br>(Pima County 005753 – 5755) | |
| 1212. | Certiorari Correspondence<br>(Pima County 005756 – 5757) | |
| 1213. | Identification and Fingerprint<br>Documents<br>(Pima County 005758 – 5774) | |
| 1214. | Juvenile Report regarding Fire at<br>AZ Boys Ranch dated January 9,<br>1972<br>(Pima County 005775 – 5783) | |
| 1215. | Request for Oral Argument in<br>Arizona Supreme Court, Notice<br>of Appeal, Motion to Withdraw<br>Notice of Appeal<br>(Pima County 005784 – 5788) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1216. | Application for Requested Instruction to be Given, Memo Regarding Admissibility of Voluntary Statements Made by Defendant to Staff and Other Juveniles at Pima County Juvenile Center, Memo Regarding Admissibility of Tests Performed by TFD and the State's Expert Outside Courtroom, Memo Regarding Admissibility of Opinion of State's Expert as to Course of Fire at the Pioneer Hotel, and Memo Regarding Admissibility of Proof of Arson (Pima County 005789 – 5814) | |
| 1217. | Folder with Crowd Control Officers' Report (Pima County 007170 – 7186) | |
| 1218. | Folder: Current Pleadings Superior Court (Pima County 007314 – 7526) | |
| 1219. | Media Affidavits (Pima County 007527 – 7545) | |
| 1220. | Miscellaneous Pleadings (Pima County 007546 – 8044) | |
| 1221. | Photo of Footprint (Pima County 009307) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1222. | Folder: Plaintiff's Statements to Officers (Pima County 010391 – 10404) | |
| 1223. | Folder: Jackson's Statements and Polygraph Report (Pima County 010405 – 10409) | |
| 1224. | Folder: Previous Fires Reports at Pioneer Hotel (Pima County 010410 – 10422) | |
| 1225. | District Court Order in CIV 76-734 (Pima County 010785 – 10789) | |
| 1226. | Newspaper Clippings (Pima County 010827 – 10887) | |
| 1227. | Folder: Ed Matthews (Pima County 011266 – 11274) | |
| 1228. | Folder: Copy No. 2 Taylor Police Report (Pima County 011295 – 11311) | |
| 1229. | County Attorney File - Juvenile Court re Pioneer File (Pima County 011312 – 11347) | |
| 1230. | Juvenile Records regarding Plaintiff (Pima County 011347 – 11399) | |
| 1231. | Folder: Files from Juvenile File (Pima County 011400 – 11714) | |
| 1232. | Arizona State Industrial School Records Pima County 011715 – 11871) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1233. | Folder: Juvenile Transfer Hearing<br>(Pima County 011872 – 11910) | |
| 1234. | Certified copies from Juvenile File<br>(Pima County 011912 – 12004) | |
| 1235. | Folder - Taylor v. Cardwell 77-2432 & 76-734 DC 9th Circuit<br>(Pima County 012005 – 12012) | |
| 1236. | Juvenile Transfer Summary and Articles<br>(Pima County 012013 – 12015) | |
| 1237. | Juvenile Detention File<br>(Pima County 012016 – 12184) | |
| 1238. | Arizona State Hospital Records<br>(Pima County 012185 – 12399) | |
| 1239. | County Hospital Records<br>(Pima County 012400 – 12591) | |
| 1240. | Folder: Juveniles Incarcerated with Plaintiff<br>(Pima County 012592 – 12712) | |
| 1241. | Folder: Preliminary Hearing AZ State Hospital Records<br>(Pima County 014477 – 14513) | |
| 1242. | Folder: Preliminary Hearing – Copies of Old Report<br>(Pima County 014515 – 14783) | |
| 1243. | Folder: Juvenile Criminal History Records<br>(Pima County 014816 – 14994) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1244. | Folder: Preliminary Hearing – Juvenile Social Center File (Pima County 014995 – 15032) | |
| 1245. | | |
| 1246. | Package sent to Weiss from Paul Charters (Pima County 015035 – 15074) | |
| 1247. | Plaintiff's Psychological Workup by Kashman's Doctor (Pima County 015075 – 15103) | |
| 1248. | Folder: Reproductions from Juvenile Center Social File (Pima County 015104 – 15144) | |
| 1249. | Folder: State's Psychiatrist Folder (Pima County 015145 – 15152) | |
| 1250. | Bruce Wallmark Affidavit and Polygraph Report (Pima County 015156 – 15164) | |
| 1251. | Case Reports and Officers Inside the Hotel (Pima County 015165 – 16191) | |
| 1252. | Detective's Reports (Pima County 015192 – 15206) | |
| 1253. | First Officers at Scene (Pima County 015206 – 15242) | |
| 1254. | Jury Selection Notes, Questionnaires and research (Pima County 15243 – 15438) | |
| 1255. | Subpoenas and notes (Pima County 015439 – 15438) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1256. | Jury Lists<br>(Pima County 015550 – 15602) | |
| 1257. | Folder: Point and Crowd Control Police Reports<br>(Pima County 015603 – 15640) | |
| 1258. | Folder: Property Inventory<br>(Pima County 015641 – 15718) | |
| 1259. | Russell Seymour Affidavits and District Court Filings<br>(Pima County 015720 – 15800) | |
| 1260. | Trial Subpoenas<br>9Pima County 015156 – 16619) | |
| 1261. | Tucson Police Supplemental Reports<br>(Pima County 016449 – 16601) | |
| 1262. | Subpoenas to William McKenzie and Eddie Santa Cruz<br>(Pima County 016602 – 16619) | |
| 1263. | Folder: Affidavit of Mohr regarding Bobby Jackson's Polygraph<br>(Pima County 016620 – 16634) | |
| 1264. | Folder: Scoopmire Affidavit regarding Wallmark's Polygraph<br>(Pima County 016635 - 16637) | |
| 1265. | Thomas Bertie Affidavit<br>(Pima County 016638 – 16639) | |
| 1266. | Vincente Becerra's Affidavit regarding Wallmark<br>(Pima County 016640 – 11648) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1267. | Bruce Wallmark's Affdaivt dated May 23, 1972 (Pima County 016649 – 16656) | |
| 1268. | Albert Jackson's Visitation Records Pima County 016657 – 16659) | |
| 1269. | Letters regarding Kashman's Complaints of Misconduct (Pima County 016692 – 16714) | |
| 1270. | Research and Pleadings related to Motion for New Trial (Pima County 016715 – 16827) | |
| 1271. | Motion for New Trial, Albert Jackson's Declaration and Angeley notes regarding contacts with Katherine Jackson (Pima County 016828 – 16836) | |
| 1272. | Opposition to Motion for New Trial, filed in Arizona Supreme Court (Pima County 016837 – 16874) | |
| 1273. | Russell Seymour Affidavit (Pima County 016918 – 16922) | |
| 1274. | Claude Higginbotham Affidavit (Pima County 016958 – 16972) | |
| 1275. | Bobby Jacson's South Tucson Police Report (Pima County 016974 – 17031) | |
| 1276. | Marvin Watkins Statement and Polygraph (Pima County 017032 – 17042) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1277. | Joan Fetsko Information and other miscellaneous papers (Pima County 017057 – 17063) | |
| 1278. | Russell Seymour's Affidavit and Miscellaneous Pleadings (Pima County 017064 – 17259) | |
| 1279. | Plaintiff's Polygraph Report and Pima County Public Defender's Office's letter to Bruce Wallmark, and Wallmark's Affidavit (Pima County 017260 – 17282) | |
| 1280. | Police Report regarding confidential informant and William Taylor (Pima County 017284 – 17289) | |
| 1281. | Folder: Royal Inn Data (Pima County 017290 – 17306) | |
| 1282. | Prior Police Reports involving Plaintiff, Manny Soto and Mario Corral (Pima County 017307 – 17334) | |
| 1283. | Index of Audio Box (Pima County 019389 – 19387) | |
| 1284. | January 27, 1972 Audio of Willie McKenzie and Jessie Maxwell Interview (Pima County 019388) | |
| 1285. | December 21, 1971 Horton Weiss and Rex Angeley Note to File | |

| Exhibit Number | Description | Objections |
|---|---|---|
| | (Pima County 019389) | |
| 1286. | December 22, 1971 Betty Ponaro interview (Pima County 019390) | |
| 1287. | Chief Slagel Tunnel Test (Pima County 019391) | **No objection.** |
| 1288. | Conversation with Kashman and County Attorney. (Pima County 019392) | |
| 1289. | Audio Labeled: Cook Kelly (Pima County 019393) | |
| 1290. | February 7, 1972 Interview with Dr. James Neil (Pima County 019400) | |
| 1291. | December 2, 1971 Audio of Eddie Lopez (Pima County 019401) | |
| 1292. | February 23, 1972 Interview of Eddie Santa Cruz (Pima County 019402) | |
| 1293. | Audio Labeled: Farley (Pima County 019403) | |
| 1294. | August 24, 1971 Audio of Gary Thompson and Richard Contreras 9Pima County 019404) | |
| 1295. | May 18, 1972 Hearing (Pima County 019405) | |
| 1296. | Audio Labeled: Angeley and David Lantz (Pima County 019406) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1297. | Audio Labeled: Jackson, Bertie, and Mrs. Jackson (Pima County 019407) | |
| 1298. | Audio Labeled: Jackson Angeley Mrs. Jackson Bertie 051772: Side A (Pima County 19408) | |
| 1299. | Audio Labeled: Jackson Angeley Mrs. Jackson Bertie 051772: Side B (Pima County 019409) | |
| 1300. | Audio Labeled: John Swearingin Jim Lin (Pima County 019410) | |
| 1301. | | |
| 1302. | December 2, 1971 Audio of Leroy Brockbank (Pima County 019412) | |
| 1303. | Audio of Louis Taylor's direct examination March 6, 1972 (Pima County 019413) | |
| 1304. | October 21, 1971 Interview of Max Palmer (Pima County 019414) | |
| 1305. | December 30, 1971 Interview of McMinn (Pima County 019415) | |
| 1306. | Audio Labeled: McMinn 11111971 (Pima County 019416) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1307. | Audio Labeled: No Label Side A (Pima County 019417) | |
| 1308. | September 3, 1971 Interview of Oscar Montano (Tape 2) (Pima County 019418) | |
| 1309. | September 3, 1971 Oscar Montano Interview (Pima County 019419) | |
| 1310. | May 8, 1972 Audio of Robert Jackson (Pima County 019420) | |
| 1311. | Audio Labeled: Robert Frakes (Pima County 019421) | |
| 1312. | August 20, 1971 Interview of Ronnie Wooten and Mike Tatum (Pima County 019422) | |
| 1313. | | |
| 1314. | | |
| 1315. | Audio Labeled: Smythe Side A (Pima County 019424) | |
| 1316. | Audio Labeled: Smythe Side B (Pima County 019426) | |
| 1317. | September 6, 1971 Interview of Soto (Pima County 019427) | |
| 1318. | August 23, 1971 Interview of Tatum and Wooten, Side A (Pima County 019428) | |
| 1319. | August 23, 1972 Interview of Tatum and Wooten, Side B (Pima County 019429) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1320. | Audio Labeled: Taylor 03/07/72 Side A (Pima County 019430) | |
| 1321. | Audio Labeled: Taylor 03/07/72 Side B Morning (Pima County 019431) | |
| 1322. | Audio Labeled: Taylor 4 Side A (Pima County 019432) | |
| 1323. | Audio Labeled: Taylor 4 Side B (Pima County 019433) | |
| 1324. | Audio Labeled: Telephone Communications 08101971 (Pima County 019434) | |
| 1325. | Audio Labeled: Weiss Angeley Estrada (Pima County 019435) | |
| 1326. | Audio Labeled: Weiss Taylor Side A 05181972 (Pima County 019436) | |
| 1327. | Audio Labeled: Weiss Taylor Side B 05181972 (Pima County 019437) | |
| 1328. | Audio Labeled: Weiss Morning 05181972 Side A (Pima County 019438) | |
| 1329. | September 24, 1971 Audio of Williams and Arino Interview (Pima County 019439) | |
| 1330. | August 24, 1972 Interview of Willie Armstrong at Fort Grant (Pima County 019440) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1331. | Audio of January 10, 1972 Hearing, Side A (Pima County 019243) | |
| 1332. | Audio of January 10, 1972 Hearing, Side B (Pima County 019244) | |
| 1333. | May 23, 1972 Interview of Bruce Wallmark with Earlene Marino and Rex Angeley (Pima County 019253) | |
| 1334. | Audio Labeled: Helen and Earlene February 7, 1972 (Pima County 019260) | |
| 1335. | Audio Labeled: Hill and Taylor, Side 1 (Pima County 019266) | |
| 1336. | Audio labeled: Horton to Diane Stanley (Pima County 019276) | |
| 1337. | Audio Labeled: Hust Angeley Wallmark (Pima County 019291) | |
| 1338. | Audio Labeled: R Jackson Angeley Mrs Jackson Bertie 05081972 (Pima County 019301) | |
| 1339. | Audio labeled: Taylor 04151972 1830 Hours (Pima County 019306) | |
| 1340. | | |
| 1341. | | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1342. | Pioneer Hotel Drawings (Pima County 019782 – 19785) | |
| 1343. | Folder: Additional Proposed Witnesses (Pima County 021929 – 22226) | |
| 1344. | Affidavit of Roy Bryfogle (Pima County 022227 – 22231) | |
| 1345. | Affidavit of John Sloss (Pima County 022232 – 22237) | |
| 1346. | Affidavit of Joseph Pobrislo (Pima County 022238 – 22240) | |
| 1347. | Affidavit of Robert Jackson (Pima County 022241 – 22244) | |
| 1348. | Affidavit of Robert Sulzbach (Pima County 022245 – 22249) | |
| 1349. | Affidavit of John Swearingen (Pima County 022250 – 22251) | |
| 1350. | Affidavit of Bruce Wallmark (Pima County 022252 – 22260) | |
| 1351. | Appellant's Opening Brief (AZ Supreme Court No. 2500) (Pima County 022261 – 22370) | |
| 1352. | Appellate Court Argument and Response to Questions (Pima County 022371 – 22486) | |
| 1353. | TPD Report from Callout and Deployment of Officers (Pima County 022487 – 22501) | |
| 1354. | Motion to Quash Subpoenas Duces Tecum (Pima County 022502 – 22524) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1355. | May 17, 1972 Dismissing Special Action Order in Robert Bruce Moore v. Superior Court of Arizona (Pima County 022525 – 22529) | |
| 1356. | Supreme Court Order Setting Oral Argument (Supreme Court No. 2500) (Pima County 022530 – 22531) | |
| 1357. | List of Defendant's Witnesses (Pima County 022532 – 22533) | |
| 1358. | Diane Stanley Statement (Pima County 022534 – 22540) | |
| 1359. | Folder: Faustino Castillo (Pima County 022541 – 22553) | |
| 1360. | Folder: Hotel Roster (empty) (Pima County 022563 – 22563) | |
| 1361. | Folder: Kashman Letter to Freda Lampton (Pima County 022564 – 22570) | |
| 1362. | May 25, 1972 PCAO Letter to Pima County Board of Supervisors (Pima County 022571 – 22573) | |
| 1363. | Lists of Witnesses and Letters Sent (Pima County 022574 – 22588) | |
| 1364. | List of Witnesses Subpoenaed to Testify (Pima County 022589 – 22593) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1365. | May 18, 1972 Minute Entry (Pima County 022594 – 22598) | |
| 1366. | Motion to Quash Subpoenas Duces Tecum (Pima County 022599 – 22624) | |
| 1367. | David M. Johnson Folder (Pima County 022625 – 22674) | |
| 1368. | Article regarding Motion for New trial (Pima County 022675 – 22676) | |
| 1369. | Newspaper Clippings 9Pima County 022677 – 22681) | |
| 1370. | Offense Report: Public Defender's Report regarding Missing Taylor Documents (Pima County 022685 – 22690) | |
| 1371. | Offense Report: Black Panthers Call (Pima County 022691) | |
| 1372. | Folder: Officer Sulzback, Bruce Wallmark, Robert Jackson (Pima County 022692 – 22696) | |
| 1373. | Folder: Maxwell and Burkhart (Pima County 022706 – 22743) | |
| 1374. | Folder: Pleading: Juvenile Court (Pima County 022744 – 22833) | |
| 1375. | Folder: Pleading Superior Court (Pima County 022834 – 23112) | |
| 1376. | Folder: Polygraph – Wallmark (Pima County 023113 – 23115) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1377. | Folder: Pretrial Order (Pima County 023116 – 23126) | |
| 1378. | Folder: Prisoner Witnesses (Pima County 023127 – 23139) | |
| 1379. | Folder: Statement of Jessie Maxwell (Pima County 023141 – 23153) | |
| 1380. | Folder: Statement of Bruce Wallmark (Pima County 023154 – 23164) | |
| 1381. | Folder: Mugshots (Pima County 023165 – 23195) | |
| 1382. | Folder: Witness Interview Transcripts (Pima County 023198 – 23240) | |
| 1383. | 1970 Tucson Fire Department Report (Pima County 023241 – 23269) | |
| 1384. | Folder: Robert Wagner, M.D. (Pima County 023270 – 23286) | |
| 1385. | Folder: Conclusion (Pima County 023477 – 23478) | |
| 1386. | Newspaper Article: High Court to Hear Pioneer Fire Appeal (Pima County 023985) | |
| 1387. | Folder: Worksheets Cross Appeal Question 9Pima County 024036 – 24054) | |
| 1388. | Folder: Bail and Psychiatric Matters (Pima County 024055 – 24065) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1389. | Folder: March 29, 2013 Notice, Hirsh Letter to Unklesbay, Dr. Cutt's Report on Plaintiff, and Police Reports (Pima County 024178 – 24235) | |
| 1390. | Habeas Petition Documents (Pima County 024236 – 24243) | |
| 1391. | Appeal and Supreme Court Documents (Pima County 024244 – 24251) | |
| 1392. | Preliminary Hearing Minute Entries and Pleadings (Pima County 024252 – 24325) | |
| 1393. | Envelope from Hirsh to Rick Unklesbay (Pima County 026063 – 26064) | |
| 1394. | | |
| 1395. | TPD Reports: Officers on Security (Pima County 026122 – 26157) | |
| 1396. | Folder: Property and Releases (Pima County 026159 – 26180) | |
| 1397. | Preliminary Report: A Brief Resume of Police Activity Resulting from the Pioneer Hotel Fire (Pima County 026183 – 26204) | |
| 1398. | Tucson Police Reports (Pima County 026205 – 26376) | |
| 1399. | Folder: Written Statements (Pima County 026377 – 26523) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1400. | TPD Radio Tape Information (Pima County 026524 – 26559) | |
| 1401. | TPD Telephone Information (Pima County 026560 – 26580) | |
| 1402. | Folder: Additional Witness Statements (Pima County 026582 – 26604) | |
| 1403. | | |
| 1404. | Exhibit 1 to Holmes Deposition: Work History (Pima County 024754 – 26760) | |
| 1405. | Exhibit 2 to Holmes Deposition: Testimony List (Pima County 026761 – 26764) | |
| 1406. | Exhibit 3 to Holmes Deposition: January 15, 1971 Letter to City of Tucson (Pima County 026765 – 26768) | |
| 1407. | Exhibit 4 to Holmes Deposition: Expert Report (Pima County 026769 – 26783) | |
| 1408. | Exhibit 5 to Holmes Deposition: Pioneer Hotel Floor Plan (Pima County 026769 – 26783) | |
| 1409. | Exhibit 6 to Holmes Deposition: Depth of Char Summary (Pima County 026769 – 26800) | |
| 1410. | Exhibit 7 to Holmes Deposition: 1971 Qualifications (Pima County 026801 – 26805) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1411. | Exhibit 8 to Holmes Deposition: Letter to Chief Slagel (Pima County 026806) | |
| 1412. | | |
| 1413. | Exhibit 10 to Holmes Deposition: April 27, 1971 Letter (Pima County 026808) | |
| 1414. | | |
| 1415. | Exhibit 12 to Holmes Deposition: Officer Moore's Report (Pima County 026810 – 26812) | |
| 1416. | Exhibit 13 to Holmes Deposition: Floor Plan (Pima County 026816) | |
| 1417. | Exhibit 14 to Holmes Deposition: TFD Report (Pima County 026814 – 26827) | |
| 1418. | Partial 2013 TFD Cause and Origin Report (Pima County 026828 – 26829) | |
| 1419. | | |
| 1420. | | |
| 1421. | | |
| 1422. | | |
| 1423. | | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1424. | Clark County Prosecutor Summary regarding Willingham (Pima County 026970 – 26987) | |
| 1425. | Folder: Bill Dickinson (Pima County 030876 – 31050) | |
| 1426. | Folder: Cy Holmes Deposition and Trial Testimony (Pima County 031051 – 31095) | |
| 1427. | | |
| 1428. | Folder: Documents sent to Holmes (Pima County 031241 – 31271) | |
| 1429. | Folder: Michael Shields' Measurements and Calculations (Pima County 031272 – 31335) | |
| 1430. | | |
| 1431. | Folder: Holmes O&C (Pima County 031430 – 31569) | |
| 1432. | Research Regarding Plaintiff's Petition for Post-Conviction Relief (Pima County 031570 – 31917) | |
| 1433. | Folder: Marshall Smythe Deposition (Pima County 031918 – 32333) | |
| 1434. | Folder: Miscellaneous Reports and Tests (Pima County 032334 – 32474) | |
| 1435. | Folder: NFPA Research (Pima County 032475 – 32526) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1436. | | . |
| 1437. | Exhibit 20 to Plaintiff's Petition for Post-Conviction Relief: TFD Burn Test Video (Pima County 032582) | |
| 1438. | Exhibits 1 through 75 to Plaintiff's Petition for Post-Conviction Relief (Pima County 032583 – 33364) | |
| 1439. | Folder: Arson Review Committee (Pima County 033365 – 33417) | |
| 1440. | Cy Holmes Educational Background (Pima County 033420 – 33430) | |
| 1441. | Folder: Cy Holmes (Pima County 033431 – 33851) | |
| 1442. | Video of Cy Holmes November 1, 2012 Deposition (Pima County 033852) ** Only to the extent that any portion of Holmes' deposition is admitted in evidence. | No objection to what is contained in Plaintiff's deposition designations. Otherwise, Plaintiff does not waive her global objection |
| 1443. | Measurements and Calculations of Construction and Materials Details of 4th Floor (Marshall Smythe) (Pima County 033853 – 33924) | |
| 1444. | Folder: Flashover Arson Research (Pima County 033925 – 34060) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1445. | | |
| 1446. | List of Hotel Occupants and Injuries (Pima County 034073 – 34079) | |
| 1447. | Folder: Louis Taylor DOC (Pima County 034080 – 34153) | |
| 1448. | Folder: Marshal Smythe (Pima County 034154 – 34380) | |
| 1449. | Leonard Everett Letter to Marshall Smythe (Pima County 034381) | |
| 1450. | Miscellaneous Articles regarding Fires/Arson (Pima County 034382 – 34552) | |
| 1451. | Motion for Appointment of Counsel (Pima County 034523 – 34525) | |
| 1452. | | |
| 1453. | 911 Call Transcript (Pima County 034594 – 34606) | |
| 1454. | | |
| 1455. | Folder: Pioneer Hotel Louis Taylor (Pima County 034671 – 34862) | |
| 1456. | Response to State's Motion to Extend Time (Pima County 034865 – 34868) | |
| 1457. | Cy Holmes June 17, 1971 Letter to Tucson City Attorney (Pima County 034869 – 34871) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1458. | Article: Retrial again denied in '70 Pioneer fire (Pima County 034872) | |
| 1459. | Giles Scoggins Written Testimony (Pima County 034874) | |
| 1460. | Folder: Smythe No. 2 (Pima County 034875 – 35102) | |
| 1461. | Folder: TFD Pioneer Hotel (Pima County 035103 – 34184) | |
| 1462. | | |
| 1463. | TPD DIMS Information (Pima County 035188 – 35192) | |
| 1464. | UL Information (Pima County 035193 – 35196) | |
| 1465. | Folder: Willingham Analysis (Pima County 035197 – 35278) | |
| 1466. | Video of Pioneer Hotel Fire (Pima County 035281) | |
| 1467. | Folder: Pictures from Justice Project – Marshall Smythe (Pima County 035282 – 35444) | |
| 1468. | Folder: Pioneer Images (Pima County 035445 – 35911) | |
| 1469. | Folder: TPD Photos (Pima County 036694 – 36856) | |
| 1470. | | |
| 1471. | Folder: 911 and Radio transcripts (Pima County 036858 – 36870) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1472. | Folder: Amy Dickenson CAO (Pima County 036871 – 37144) | |
| 1473. | Pioneer Hotel civil case folder (Pima County 037283 – 37289) | |
| 1474. | | |
| 1475. | Folder: Correspondence (Pima County 037423 – 37434) | |
| 1476. | Folder: First Rule 32 Petition (Pima County 037438 – 37455) | |
| 1477. | Folder: Giles Scoggins (Pima County 037461 – 37466) | |
| 1478. | Folder: Hotel Diagrams (Pima County 37467 – 37487) | |
| 1479. | Index of City of Tucson Boxes (Pima County 037488 – 37491) | |
| 1480. | | |
| 1481. | Folder: Lentini Justice Project (Pima County 037497 – 37540) | |
| 1482. | Folder: List of Dead (Pima County 037546 – 37672) | |
| 1483. | Folder: Petition Rule 32 9Pima County 037546 – 37672) | |
| 1484. | Folder: Rejects (Pima County 037673 – 37964) | |
| 1485. | Folder: State v. Louis Taylor Hot Pion from TPD; Not copied for TFD (Pima County 038048 – 38181) | |
| 1486. | Folder: State v. Taylor TPD Police Reports 1 of 3 (Pima County 038182 – 38378) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1487. | Folder: Taylor ADOC File (Pima County 03380 – 38453) | |
| 1488. | Folder: Burn Tests (Pima County 038454 – 38460) | |
| 1489. | Folder: TFD Cause Folder (Pima County 038461 – 38490) | |
| 1490. | Folder: TFD Reports (Pima County 038491 – 38511) | |
| 1491. | Folder: Hot Pion Photo Copy of Photos from TPD (Pima County 038512 – 38652) | |
| 1492. | Tucson Fire Department Fire Report (Pima County 038653 – 38669) | |
| 1493. | Folder: Deposition of Marshall Smythe (Pima County 038670 – 38671) | |
| 1494. | Folder: Witness Statements (Pima County 038672 – 38729) | |
| 1495. | Folder: First Notebook of Transcripts (Pima County 038730 – 39065) | |
| 1496. | Folder: Second Notebook of Transcripts (Pima County 039066 – 39424) | |
| 1497. | Appellee's Reply to Opening Brief filed in 9th Circuit (Pima County 039425 – 39480) | |
| 1498. | Folder: Old Filed Motions (Pima County 039460 – 39685) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1499. | Index Card Directory (Pima County 039481 – 39545) | |
| 1500. | Mary Elizabeth Rogers Records (Pima County 039546 – 39549) | |
| 1501. | Order Affirming Judgment and Supreme Court Filings (Pima County 39686 – 39732) | |
| 1502. | | |
| 1503. | | |
| 1504. | Pima County's HR Retention Schedule (Pima County 000001 – 2) | |
| 1505. | Pima County's Communications Retention Schedule (Pima County 000003 – 4) | |
| 1506. | Pima County's Personnel Services Retention Schedule (Pima County 000005 – 7) | |
| 1507. | Pima County Board of Supervisor's Retention Schedule (Pima County 000008 – 11) | |
| 1508. | Documents regarding sealed declarant. (XXXXXXXX000001 – 2531) | |
| 1509. | Excerpts of Attorney's Response to Subpoena Duces Tecum (CONFIDENTIAL000001 – 1266) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1510. | Video: Panel on Policing the System (Pima County 069454) | |
| 1511. | Excerpts of PCAO Emails produced in response to David Berkman' public records request (Pima County 069455 – 69480) **Only if determined to be relevant and admissible | |
| 1512. | Excerpts of PCAO Emails produced pursuant to Plaintiff's public records request (Pima County 069481 – 69497) **Only if determined to be relevant and admissible | |
| 1513. | Excerpts of Laura Conover's Gmail Emails (Pima County 069498 – 69517)**Only if determined to be relevant and admissible. | No objection, except under Fed. R. Evid. 106. |
| 1514. | Excerpts of Nina Trasoff's Emails (Pima County 069518 – 69519) **Only if determined to be relevant and admissible. | No objection, except under Fed. R. Evid. 106. |
| 1515. | Deposition of Inspector William J. Martin (15-074 COT000001 – 133) | |
| 1516. | Deposition of Dr. James Church (15-074 COT000134 – 225) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1517. | City of Tucson's files related to Pioneer File Civil Suit (15-074 COT000788 – 1979) | |
| 1518. | Audio: Rose King Interview with Detective Wilson (15-074 COT001980) | |
| 1519. | Audio: Tucson Police Dispatch (15-074 COT001981) | |
| 1520. | Tucson Police Department's Photos of Deceased (15-074 COT001983 – 2145) | |
| 1521. | TPD Report No. 1309240277 (15-074 COT002146) | |
| 1522. | TPD Report No. 1409050324 (15-074 COT02155 – 2166) | |
| 1523. | TPD Report No. 1408110093 (15-074 COT002167 – 2174) | |
| 1524. | TPD Report No. 1703080154 (15-074 COT002175 – 2209) | |
| 1525. | TPD Report No. 1704170337 (15-074 COT002210 – 2218) | |
| 1526. | TPD Report No. 1706080233 (15-074 COT002219 – 2225) | |
| 1527. | TPD Report No. 1706170040 (15-074 COT002226 – 2257) | |
| 1528. | TPD Report No. 1610120243 (15-074 COT002258 – 2261) | |
| 1529. | TPD Report No. 1612010293 (15-074 COT002262 – 2275) | |
| 1530. | TPD Report No. 1612120356 (15-074 COT002276 – 2278) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1531. | TPD Report No. 17012900001 (15-074 COT002279 – 2283) | |
| 1532. | TPD Report No. 1608040127 (15-074 COT002284 – 2290) | |
| 1533. | TPD Report No. 1609020239 (15-074 COT002291 – 2294) | |
| 1534. | TPD Report No. 1609060605 (15-074 COT002295 – 2297) | |
| 1535. | TPD' report regarding Pioneer Hotel Fire (15-074 COT002298 – 3341) | |
| 1536. | | |
| 1537. | John Frye's public records request to Tucson Police Department (15-074 COT004275) | |
| 1538. | Statement by the Board of Inquiry of Pioneer Hotel Fire (15-074 COT004646 – 4663) | |
| 1539. | Index of TFD Boxes (15-074 COT004670 – 4672) | |
| 1540. | Marshall Smythe's file on the Pioneer Hotel Fire (Produced by City of Tucson) | |
| 1541. | Decision denying Motion for Rehearing dated June 26, 1985 (TAYLOR000579 – 581) | |
| 1542. | Order Denying Petition for Review dated October 4, 1985 (TAYLOR000582) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1543. | Email correspondence between ADOC and Katherine Puzauskas (TAYLOR000618 – 621) | |
| 1544. | Katherine Puzauskas public records request to Pima County Attorney's Office (TAYLOR001773) | |
| 1545. | Katherine Puzauskas public records request to Tucson Police Department (TAYLOR001776) | |
| 1546. | Katherine Puzauskas public records request to Tucson Police Department (TAYLOR001777) | |
| 1547. | Katherine Puzauskas public records request to Tucson Fire Department (TAYLOR001778) | |
| 1548. | Transcript of TPD's Radio Traffic (TAYLOR001779 – 1813) | |
| 1549. | Transcript of TPD's Recorded Telephone Calls (TAYLOR001816 – 1834) | |
| 1550. | TFP Run Report (TAYLOR009446 – 9447) | |
| 1551. | Marshall Smythe' Notes (TAYLOR009465 – 9467) | |
| 1552. | Marshall Smythe's Chronology (TAYLOR009468 – 9469) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1553. | CourtTV Interview of Carmine Brogna (TAYLOR009514 – 9524) | |
| | PCAO Invoice for public records request (TAYLOR09679) | |
| 1555. | TFD's response to public records request (TAYLOR009736) | |
| 1556. | Outside Laboratory Fire Tests February 71 (TAYLOR009961) | |
| 1557. | Documents from Plaintiff (TAYLOR012293 – 12315) | |
| 1558. | Taylor – Witness – Steve Whiting (TAYLOR012320) | |
| 1559. | Unklesbay Emails (TAYLOR014425 – 14427) | |
| 1560. | February 20, 2013 Unklesbay Letter to Piccarreta (TAYLOR014830 – 14831) | |
| 1561. | Military Records (TAYLOR015202 – 15272) | |
| 1562. | LaWall Letter to American Bar Association (TAYLOR014881 – 14887) | No objection. |
| 1563. | Broadcast of Weis regarding Jury Verdict | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1564. | Audio of Bruce Wallmark Interview (TAYLOR016242 – 16244) | |
| 1565. | Transcript of Bruce Wallmark's Interview (TAYLOR016245 – 16355) | |
| 1566. | Larry Kern Statement to Tucson Police (15-074COT2339 – 2340) | |
| 1567. | Scoopmire Polygraph Report (Pima County 036102) | |
| 1568. | Matches found on Louis Taylor (15-074COT2385; Pima County 035297 – 35302) | |
| 1569. | Matchbook found in Hotel (Pima County 035320, 035327 – 35329) | |
| 1570. | | |
| 1571. | TFD Run Reports to Pioneer Hotel (15-074COT1428 – 1431 & 1433) | |
| 1572. | Interim Juvenile Report (TAYLOR_000929) | |
| 1573. | Juvenile Report (15-074COT3341) | |
| 1574. | Petition For Adjudication of Delinquency (TAYLOR000301) | |
| 1575. | Amended Petition for Adjudication of Delinquency (TAYLOR000278) | |
| 1576. | Detention Order (TAYLOR000303) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1577. | Petition to Transfer (TAYLOR000236) | |
| 1578. | Psychological Evaluation (TAYLOR000241 – 243) | |
| 1579. | Probable Cause and Transfer Orders (TAYLOR000238 – 239, 244 – 249, 398) | |
| 1580. | Probable Cause Order (Pima County 039553 – 039560) | |
| 1581. | Information (Pima County 036631 – 036639) | |
| 1582. | Declaration of Rick Unklesbay | |
| 1583. | Declaration of Malena Acosta | |
| 1584. | Marshal Smyth Letter to Leonard Everett, dated 01/15/1971 (14-074COT000910 – 912) | |
| 1585. | Marshal Smyth Chronology (TAYLOR009956 – 9957) | |
| 1586. | Marshal Smyth's Preliminary Report, dated 02/08/1971 (15-074COT000913 – 923) | |
| 1587. | Marshal Smyth's Letter to Leonard Everett, dated 05/20/1971 (15-074COT000929 – 949) | |
| 1588. | | |
| 1589. | Motion for Disclosure by Prosecutor (Pima County 061141 – 061146) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1590. | Order on Motion for Disclosure (Pima County 003332) | |
| 1591. | David Dingledine Memo to Horton Weiss (Pima County 003668 – 003671) | |
| 1592. | Disclosure of Materials for In Camera Inspection by the Court (Pima County 061147 – 061148) | |
| 1593. | Materials produced for *in camera* inspection (Pima County 003871 – 003925) | |
| 1594. | Order on Motion for Disclosure (Pima County 003321 – 003322) | |
| 1595. | Motion for Discovery and Inspection (Pima County 007338 – 007339) | |
| 1596. | State's Disclosure of Additional Witnesses (TAYLOR010799 – 010805) | |
| 1597. | *Taylor v. Cardwell*, No. CIV 76-734 PHX–CAM (D. Ariz. Feb. 18, 1977) (TAYLOR010697 – 10702) | |
| 1598. | *Taylor v. Cardwell*, No. 81-5570 (9th Cir. Sept. 15, 1982) (TAYLOR009493 – 9495) | |
| 1599. | Bruce Wallmark Statement (Pima County 023155 – 023157) | |
| 1600. | Bruce Wallmark Polygraph Report (Pima County 023114) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1601. | Robert Jackson Statement (Pima County 036469 – 036470) | |
| 1602. | Robert Jackson Waiver (Pima County (15162) | |
| 1603. | Robert Jackson Polygraph Report (Pima County 015161) | |
| 1604. | Additional Proposed Witness for the State (Pima County 021930) | |
| 1605. | Motion for New Trial filed in Maricopa County Superior Court, dated 04/12/1972 (Pima County 016771 – 016772) | |
| 1606. | Motion for New Trial filed in Arizona Supreme Court, dated 04/21/1972 (Pima County 016753 – 016754) | |
| 1607. | Bruce Wallmark Affidavit (Pima County 022257 – 022260) | |
| 1608. | Robert Jackson Affidavit (Pima County 022242 – 022243) | |
| 1609. | Carl Mohr Affidavit (Pima County 015159 – 015161) | |
| 1610. | Taylor's Opening Brief filed in the Arizona Supreme Court (Pima County 022261 – 022370) | |
| 1611. | State's Reply to Appellant's Opening Brief filed in the Ninth Circuit Court of Appeals (Pima County 039425 – 039480) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Exhibit Number | Description | Objections |
|---|---|---|
| 1612. | Taylor's Plea Agreement in CR-20173320 (Pima County 061184 – 061219) | |
| 1613. | Rick Unklesbay Letter to Michael Piccarreta, dated February 20, 2013 (TAYLOR014830 – 14831) | |
| 1614. | Ed Novak Response Letter to Rick Unklesbay, dated February 20, 2013 (Pima County 001656) | |
| 1615. | Excerpt of Marshall Smyth's "Diary – Pioneer Hotel Fire – recent activities" (SMYTH000046 – 50) | |
| 1616. | | |
| 1617. | Article – Judge Says He Regrets Taylor Quote (TAYLOR009488) | |
| 1618. | Article – Police Accused of Extortion (Pima County 062002) | |
| 1619. | Article – Ex-Police Fined for Theft (Pima County 062003) | |
| 1620. | Carmine Brogna CourtTV Interview Transcript (TAYLOR009514 – 009524) | |
| 1621. | Taylor's Arizona Department of Correction Result of Disciplinary Hearing (Pima County 038398 – 038399) | |
| 1622. | Motion for New Trial, filed 03/23/1972 (Pima County 007523 – 007526) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1623. | Responses and objection to Defendant's subpoenas *duces tecum* | |
| 1624. | Order remanding for hearing dated 05/02/1972 (Pima County 016750) | |
| 1625. | Motion for New Trial, dated 09/16/1972 (Pima County 16759 – 16764) | |
| 1626. | Order denying Motion for New Trial (Pima County 005713) | |
| 1627. | | |
| 1628. | Plaintiff's Responses to Combined Requests for Admissions from Defendants, dated 07/27/2020 | |
| 1629. | Plaintiff's Responses to Pima County's Second Requests for Admissions, dated 08/13/2020 | |
| 1630. | Plaintiff's Responses to Pima County's Third Requests for Admission, dated September 27, 2021 | |
| 1631. | Plaintiff's Supplemental Responses to Pima County's First Interrogatories, dated 05/11/2021 | |
| 1632. | Plaintiff's Response to Pima County's Second Set of Requests for Production, dated 06/2/2021 | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1633. | Plaintiff's Response to Defendant Pima County's Third Set of Requests for Production, dated 09/27/2021 | |
| 1634. | Plaintiff's Response to Defendant Pima County's Second Set of Non-Uniform Interrogatories, dated 09/27/2021 | |
| 1635. | Tucson Fire Department Report by Cpt. Gilmore (TAYLOR010562) | |
| 1636. | Probable Cause Order, dated 1/21/72 (PC000932 – 000933) | |
| 1637. | *Taylor v. Cardwell*, CIV 78-277-TUC (D. Ariz. May 18, 1981) (Pima County 001485.0644 – 001485.650) | |
| 1638. | *Taylor v. Cardwell*, No. 81-5570 (9th Cir. Apr. 30, 1984). (TAYLOR010713–10719.) | |
| 1639. | Rule 32 Petition for Post-Conviction Relief dated 12/31/1984 (Pima County 001485.0661 – 1485.677) | |
| 1640. | Order denying Petition for Post-Conviction Relief dated 5/1/1985 (TAYLOR010737) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1641. | Order denying Petition for Review dated 10/4/1985 (TAYLOR010740) | |
| 1642. | *State v. Taylor*, 537 P.2d 938 (1975) | |
| 1643. | *Taylor v. Cardwell*, 579 F .2d 13 80 (9th Cir. 1982) | |
| 1644. | *Cardwell v. Taylor*, 461 U.S. 571 (1982) | |
| 1645. | *In re Anonymous, Juv. Ct. No. 6358-4*, 484 P.2d 235, 240–41 (Ariz. App. 1971) | |
| 1646. | Emails filed as Exhibit 5 at Dkt. 838-5 | |
| 1647. | Emails filed Exhibit 7 at Dkt. 838-7 | |
| 1648. | Affidavit of Lawrence Hust (15-074COT5677 – 15-074COT5689) | |
| 1649. | Akmajian Email, dated January 29, 2024 (15-074COT5690 – 5752) | |
| 1650. | Akmajian Email, dated February 2, 2024 (15-074COT5753 – 5757) | |
| 1651. | Akmajian Email to Pima County, dated January 29, 2024 (Pima County 069520 – 69521) | |
| 1652. | SEALED EXHIBIT | |
| 1653. | SEALED EXHIBIT | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1654. | SEALED EXHIBIT | |
| 1655. | SEALED EXHIBIT | |
| 1656. | SEALED EXHIBIT | |
| 1657. | SEALED EXHIBIT | |
| 1658. | SEALED EXHIBIT | |
| 1659. | SEALED EXHIBIT | |
| 1660. | SEALED EXHIBIT | |
| 1661. | SEALED EXHIBIT | |
| 1662. | SEALED EXHIBIT | |
| 1663. | SEALED EXHIBIT | |
| 1664. | SEALED EXHIBIT | |
| 1665. | SEALED EXHIBIT | |
| 1666. | Petition for Special Action (Pima County 069522 – 69583) | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1667. | Opposition of the Pima County Attorney to Motion for Leave to Take Depositions and Motion to Claw Back Confidential Information (Pima County 069584 – 69614) | |
| 1668. | Exhibit to Opposition of the Pima County Attorney to Motion for Leave to Take Depositions and Motion to Claw Back Confidential Information (Pima County 069615 – 69617) | |
| 1669. | Exhibit to Pima County's Response to Plaintiff's Motion for Leave to Take Depositions (Pima County 069618 – 69621) | |
| 1670. | Notice of Post-Conviction Relief (Pima County 069622 – 69625) | |
| 1671. | Post Conviction Relief: Request for Private Informal Conference (Pima County 069626 – 69628) | |
| 1672. | Motion for Closed Status Conference Hearing (Pima County 069629 – 69639) | |
| 1673. | August 2, 2022 Meeting Agenda Board of Supervisors | |
| 1674. | February 28, 2024 Order, *Alley v. Pima County*, C20224158 | |

| Exhibit Number | Description | Objections |
|---|---|---|
| 1675. | Marshall Smyth Deposition dated October 22, 1973 and Exhibits (Pima County 69666 – 70186) | |
| 1676. | All Admissible Exhibits Identified by Defendant City of Tucson | |
| 1677. | All Admissible Exhibits Identified by Plaintiff | |
| 1678. | Demonstrative Exhibits | |

Unless otherwise indicated, Plaintiff makes the following standard objections to Defendants Pima County and the City of Tucson's use of all exhibits listed under Fed. R. Evid. 105; 106; 402; 403; 602; 802; 804(b)(1); 901; 1002–1005; Lack of Foundation; Subject to Motion in Limine.

| City's No. | Description | Bates Range |
|---|---|---|
| | | |
| 2000 | Bergman's report | COT2298-99 |
| 2001 | Dingle stmt  w/hotel diagram | COT2304-06 |
| 2002 | Willis Fry stmt | COT2327 |
| 2003 | Carolyn Tickler stmt | COT2329-30 |
| 2004 | Maxwell Fisher stmt | COT2331 |
| 2005 | Wallmark's stmt 8/11/71 | COT2333-2334 |
| 2006 | Larry Estrada stmt | COT2347 |
| 2007 | Christopher Eskew stmt 8/12/71 | COT2348 |

| 2008 | Thomas Haskins stmt 8/13/71 | COT2349 |
|------|------------------------------|---------|
| 2009 | Larry Kern stmt  8/30/71 | COT2339-40 |
| 2010 | Kenneth Cotton stmt 2/12/72 | COT2341-42 |
| 2011 | Jackson's stmt 2/27/72 | COT2335-36 |
| 2012 | Pedro Galaz stmt 8/17/71 | COT2345-46 |
| 2013 | Booking document dated December 28, 1970 | COT2375-76 |
| 2014 | Booking document dated June 11, 1971 | COT2373-74 |
| 2015 | Property Control cards | COT2380 |
| 2016 | Found Evidence | COT2385-86 |
| 2017 | List of Exhibits Motion for New Trial | COT2405 |
| 2018 | Francisco Amaya & Anitza (Mrs.) stmt 9/14/71 | COT2451-58 |
| 2019 | Mrs. Antillion's interview 9/24/71 | COT2473-78 |
| 2020 | Jorge Flores interview 9/14/71 | COT2479-2485 |
| 2021 | Dora Parada De Ojeda interview 9/15/71 | COT2486-95 |
| 2022 | Information obtained by TPD from the Arizona State Hospital re: Taylor 12/21/70 | COT2510-11 |
| 2023 | Fingerprint testing sent to FBI | COT2512-17 |
| 2024 | FBI Fingerprint results | COT2546 |

| 2025 | Booking Record | COT2545 |
|------|----------------|---------|
| 2026 | Arrest Warrant for Taylor for arson 6/11/71 | COT2568 |
| 2027 | Preliminary Report "A BRIEF RESUME OF POLICE ACTIVITY RESULTING FROM THE PIONEER HOTEL FIRE" | COT2569-2646 |
| 2028 | Cy Holmes revised letter dated Jan. 6, 1971 to Mr. Murphy (City Attorney) | COT2648-2650 |
| 2029 | Polygraph Report Miguel Balldenegro 2/3/71 | COT2652 |
| 2030 | Polygraph Report Victor Simental 2/1/71 | COT2653 |
| 2031 | Polygraph Report Manny "Boy" Soto 10/17/74 | COT2654 |
| 2032 | Giles Scoggins' stmts 12/20/70 | COT2722-25 |
| 2033 | David Johnson's stmt 12/20/70 | COT2726-27 |
| 2034 | Robert Cooper's stmt 12/20/20 | COT2728 |
| 2035 | Cyrus Frasure stmt 12/30/70 | COT2729-30 |
| 2036 | Judge Royal Bouschor stmt | COT2731-32 |
| 2037 | Faustino Jose Castillo interview | COT2733-36 |
| 2038 | JUDITH TIRADO de IRURETAGOYENA interview 9/14/71 | COT2737-48 |
| 2039 | Andy Palm interview 12/22/70 | COT2749 |
| 2040 | Anulfo Riesgo stmt 12/21/70 | COT2750-2751 |

| | | |
|---|---|---|
| | Harry Rynders stmt12/24/70 | |
| 2041 | Emory Earl Forkum stmt 12/21/70 | COT2752-2754 |
| 2042 | William Taylor stmt 12/22/70 | COT2755-2756 |
| 2043 | Arthur Camacho stmt 12/24/70 | COT2757 |
| 2044 | Grace Ballesteros stmt 12/24/70 | COT2758-2759 |
| 2045 | Harry Rynders stmt 12/24/70 | COT2760<br><br>COT2838 |

| 2046 | Phone call from Kashman 12/24/71 | |
|------|----------------------------------|---|
| 2047 | Report supplement to FBI re: cause of 28 deaths = arson 1/14/71 | COT2839-40 |
| 2048 | TPD Photos black and white (victims redacted) | COT2850-2986 |
| 2049 | Avelardo Garza telephone interview 10/12/71 | COT2990-2993 |
| 2050 | Ronald  Wooten stmt 8/20/71 | COT2996-2997 |
| 2051 | Patricia Bustamante interview | COT3009-3010 |
| 2052 | TPD police reports relating to the Pioneer Hotel fire | COT3016-3341 |
| 2053 | Affidavit of John Swearingen (if the Court allows Plaintiff to present affidavits or declarations at trial over Defendants' objections) | Taylor012350 |
| 2054 | Affidavit of Claude Higginbotham (if the Court allows Plaintiff to present affidavits or declarations at trial over Defendants' objections) | Taylor012579-80 |

| 2055 | William Martin Deposition dated June 26, 1974 | | COT0001-0133 |
|---|---|---|---|
| 2056 | TPD Report 1609060605 Redacted | COT2295-2297 | |
| 2057 | TPD Report 1609020239 Redacted | COT2291-2294 | |
| 2058 | TPD Report 1608040127 Redacted | COT2284-2290 | |
| 2059 | TPD Report 1612120356 Redacted | COT2276-2278 | |
| 2060 | TPD Report 1706170040 Redacted | COT2226-2257 | |
| 2061 | TPD Report 1706080233 Redacted | COT2219-2225 | |
| 2062 | TPD Report 1704170337 Redacted | COT2210-2218 | |
| 2063 | TPD Photos 1704170337 | COT5562-5576 | |

| 2064 | AXON Body 2 Video 2017-04-17 1603 Brian Harwood (#48029) REDACTED | COT5593 | |
| 2065 | AXON Body 2 Video 2017-04-17 1603 Michael Gannon (#49562) REDACTED | COT5594 | |
| 2067 | TPD Photographs | COT1983-2118 | |
| 2068 | PCAO Letter to TPD Chief re Louis Taylor 03/15/2013 | COT3345 | |
| 2069 | Audit & Best Practices Rsp | COT3342-3344 | |
| 2070 | TPD Tape 1 - Sides 1 & 2 Radio transmissions | COT1981 | |
| 2071 | Taylor 2012 Petition for Post-Conviction Relief | COT3346-4274 | |
| 2072 | Statement by the Board of Inquiry on Pioneer Hotel Fire 1/7/71 | COT4646-4648 | |
| 2073 | Cyrillis Holmes 1/4/71 letter to City Attorney L. Murphy | COT4649-4651 | |

| 2074 | Index from TFD Boxes | COT4670-4672 | |
| 2075 | Truesdail Email re Subpoena Search Findings | COT5559 | |
| 2076 | Decl COT HR Analyst Carol Van Gelder | COT5596-5597 | |
| 2077 | Decl COT TPD Superintendent Molly Wise | COT5598-5599 | |
| 2078 | Patrick Robles PRR and COT Rsp | COT5600-5669 | |
| 2079 | Limperis PRR & COT Rsp | COT5670-5676 | |
| 2080 | Deposition: James Church 07/27/1972 (civil cases) | COT0134-0225 | |
| 2081 | TFD R.B. Slagel's responses to interrogatories (civil cases) | COT0818-0821 | |
| 2082 | Ltr to Burr Udall from Leonnard Everett 7/16/71 | COT0847-849 | |
| 2083 | Ltr to City Attorney Murphy from Cy Holmes 6/17/71 | COT0864-866 | |

| | | | |
|---|---|---|---|
| 2084 | Preliminary Report of Pioneer Hotel Fire | COT0880-882 | |
| 2085 | Preliminary Report on Pioneer Hotel Fire No. 2 | COT0878-879 | |
| 2086 | CAO1, Folder C: Material re: Pioneer Hotel Fire | COT0884-0977 | |
| 2087 | CAO1, Folder D: Not Labeled | COT0978-1011 | |
| 2088 | Tucson Citizen article 7/27/02 "Pioneer fire probe turns up no new evidence" (if Plaintiff is permitted to admit newspaper articles over the City's objection) | COT1455-1456 | |
| 2089 | PRR 4/12/02 and response | COT1457-1459 | |
| 2090 | Tucson Citizen article 4/11/02 "Police may test Pioneer Hotel fire evidence – if any exists" (if Plaintiff is permitted to admit newspaper articles over the City's objection) | COT1462-1463 | |

| | | | |
|---|---|---|---|
| 2091 | Various Newspaper article clippings (if Plaintiff is permitted to admit newspaper articles over the City's objection) | COT1464-1493 | |
| 2092 | Ltr to City Attorney Murphy from Cy Holmes 3/1/71 | COT1496 | |
| 2093 | Answers of Defendants Pioneer Hotel Co. to Plaintiffs' Interrogatories Case No. 125881 | COT1844-1893, 1920 | |
| 2094 | Lawrence Hust Affidavit 12/21/2023 | COT5677-5689 | |
| 2095 | Akmajian Email to Kozachik/Romero 1/29/2024 | COT5690-5752 | |
| 2096 | FW: Louis Taylor (email from Peter Akmajian) 1/30/2024 | COT5733-5757 | |
| 2097 | Pima 1st Supp Rsp to Taylor 2nd RFP (Pima County Prosecution File) and attachments | COUNTY000081-5814 | |

| | | | |
|---|---|---|---|
| | (excluding the documents the City specifically objects to in this Joint Proposed Pretrial Order ("JPTO")) | | |
| 2098 | Pima 2nd Supp Rsp to Taylor 2nd RFP (Pima County Prosecution File) and attachments (excluding the documents the City specifically objects to in this JPTO) | COUNTY005812-26604 | |
| 2099 | Pima 3rd Supp Rsp to Taylor 2nd RFP (Pima County Prosecution File) and attachments (excluding the documents the City specifically objects to in this JPTO | COUNTY038730-38729 | |
| 2100 | PCAO's Conviction and Sentencing | CSIU 000001 – 4897 | |

| | | | |
|---|---|---|---|
| | Integrity Unit's file and accompanying privilege log (excluding the documents the City specifically objects to in this JPTO | | |
| 2101 | Pima County's Exhibits Nos. 1-168 submitted in support of its Motion for Summary Judgment (see Index to Exhibits Dkt. 335-1) | Various | |
| 2102 | City of Tucson's Exhibits submitted in support its Motion for Summary Judgment (see Index of Exhibits Dkt. 333-1) | COTMSJ1-1549 | |
| 2103 | Cyrillis W. Holmes Probable Cause Hearing Testimony February 1, 1971 and February 2, 1971 | County 050337 -50622 | |
| 2104 | Cyrillis W. Holmes Trial Testimony February 15, 16, | Taylor2057-2956 | |

| | | | |
|---|---|---|---|
| | | 17, 18, 19, 21 and 22, 1972 | Feb 15: County020175-20256 |
| | | | Feb 16: County020257-020414 |
| | | | Feb 17: County020416-020594 |
| | | | Feb 18: County 020595-020753 |
| | | | Feb 19: County 020754-020864 |
| | | | Feb 21: County 020865-021036 |
| | | | Feb 22: County 021037-021070; 021040-021069 |
| | 2105 | Cyrillis W. Holmes Report dated January 15, 1971 | TAYLOR009985-9987 TAYLOR009988-10002 |
| | 2106 | Officer Louis Dwight Adams Report | COT003017 – 3018 |
| | 2107 | Officer Louis Dwight Adams Probable Cause Hearing Testimony | TAYLOR001515–1562 & PimaCounty050887:3-050905:25 |
| | 2108 | Officer Louis Dwight Adams Trial Testimony | TAYLOR004330–4421 |
| | 2109 | Sergeant H. L. Gassaway Reports | COT003334 – 3336 COT003337 – 3338 COT003270 |
| | 2110 | Sergeant H. L. Gassaway Probable Cause | County050686-50707 (Tayor001578-1599) and |

| | | Hearing Testimony | County050906:5-50931:6 | |
|---|---|---|---|---|
| | 2111 | Sergeant H. L. Gassaway Trial Testimony | Taylor004443-4511<br><br>County056991-57060 | |
| | 2112 | Officer Milan Paul Murchek Report | COT002324–2325 | |
| | 2113 | Officer Milan Paul Murchek Probable Cause Hearing Testimony | Taylor001563-1578<br><br>County050671-50686 | |
| | 2114 | Officer Milan Paul Murchek Trial Testimony | Taylor006667-6696<br><br>County058470-58499 | |
| | 2115 | Detective David Smith Reports | COT003288 – 3290<br><br>COT003153 – 3154<br><br>COT002755 – 2756<br><br>COT2721, COT2385 | |
| | 2116 | Detective David Smith Probable Cause Hearing Testimony | TAYLOR1600-1630:2 | |
| | 2117 | Detective David Smith Trial Testimony | TAYLOR004567,4659-4693 | |
| | 2118 | Rex Angeley Report | TAYLOR011717–11875 | |
| | 2119 | Rex Angeley Probable Cause Hearing Testimony | TAYLOR001614–1718 | |
| | 2120 | Rex Angeley Trial Testimony | TAYLOR004567–4755 | |
| | 2121 | Frank G. Armenta Probable Cause Hearing Testimony | TAYLOR000929–1031 | |
| | 2122 | Frank G. Armenta Trial Testimony | TAYLOR002918–3105 | |
| | 2123 | Paul Charters Probable Cause Hearing Testimony | TAYLOR001614–1718 | |
| | 2124 | Douglas Scoopmire Probable Cause | TAYLOR001137–1230<br><br>TAYLOR001614–1718 | |

| | | Hearing Testimony | |
|---|---|---|---|
| 2125 | Sergeant Jack Moore Reports | COT003331 COT003139 - 3141 | |
| 2126 | Lyn Gilmore Reports | COT001101 TAYLOR009448 – 9452 TAYLOR010741 – 10746 County 000012-000017 | |
| 2127 | Lyn Gilmore Trial Testimony | TAYLOR004935-4944 | |
| 2128 | William (Billy) Martin Trial Testimony | TAYLOR004944-4949 | |
| 2129 | R.B. Slagel Reports | TAYLOR012131 – 12138 COT001101 | |
| 2130 | R.B. Slagel Trial Testimony | COT000649–661 TAYLOR006562–6571 | |
| 2131 | Bruce Wallmark Trial Testimony | TAYLOR004516 – 4566 TAYLOR004567 – 4755 TAYLOR004893 – 4956 TAYLOR004957 – 5097 | |
| 2132 | Detective Lawrence Hust Reports | COT002333 – 2334 COT002347 COT002348 COT003302–3303 COT003039–3040 COT002349 | |
| 2133 | Additional Witnesses' Addresses in Case No. A-19672 | Taylor010794-10798 | |
| 2134 | Bruce Wallmark 8/11/71 signed statement | COT2333-2334 | |

| 2135 | Det. R. Sulzbach Report | COT3311-3312 | |
| 2136 | Polygraph Report | Taylor009735 | |
| 2137 | Robert Jackson 2/27/72 signed statement | Taylor009732-9733 | |
| 2138 | Transcript re: State moving to reopen case & Robert Jackson Testimony | Taylor005666-5694 | |
| 2139 | Robert Jackson Trial Testimony | Taylor7346-7554 | |
| 2140 | Motion for New Trial | Taylor009652-9657 | |
| 2141 | May 18, 1972 hearing transcript (excerpt) | Taylor009725-9730 | |
| 2142 | Motion for New Trial Minute Entry | Taylor000383-387 | |
| 2143 | TFD Wayne Cummings Investigative Report | Taylor009404-9445 | |
| 2144 | Appellant's Opening Brief filed December 29, 1972 | Taylor000477-578 | |
| 2145 | Denial of Petition for Post-Conviction Relief 5/3/1985 | Taylor000579 | |
| 2146 | Denial of Motion for Rehearing 7/1/1985 | Taylor000580-581 | |
| 2147 | Petition for Review Denied 10/4/1985 | Taylor000582 | |
| 2148 | Memorandum in Support of Stipulated Finding on Post-Conviction Relief and Plea Agreement | County026830-026839 | |
| 2149 | Taylor's Petition for Post-Conviction Relief 10/23/12 | Taylor9586-9647 | |

| 2150 | Motion for Transfer 12/31/1970 | County49858-48894 | |
|------|--------------------------------|-------------------|--|
| 2151 | Hearing – Petition to Amend Charges 1/13/1971 | County49895-49910 | |
| 2152 | Juvenile Transfer 1/28/1971 | County49911-50031 | |
| 2153 | Probable Cause Hearing 1/28/1971 | County50032-50135 | |
| 2154 | Probable Cause Hearing 1/29/1971 | County50136-50241 | |
| 2155 | Probable Cause Hearing 1/291971 | County50242-50336 | |
| 2156 | Probable Cause Hearing 2/1/1971 | County50337-50452 | |
| 2157 | Probable Cause Hearing 2/2/1971 | County50453-50622 | |
| 2158 | Probable Cause Hearing 2/4/1971 | County50623-50722 | |
| 2159 | Probable Cause Hearing 2/4/1971 | County50723-50827 | |
| 2160 | Probable Cause Hearing 2/5/1971 | County50828-50882 | |
| 2161 | Probable Cause Hearing 2/8/1971 | County50883-51022 | |
| 2162 | Probable Cause Hearing 2/9/1971 | County501023-51236 | |
| 2163 | Preliminary Hearing 6/17, 6/18, & 6/23/1971 | County51237-51359 | |
| 2164 | Preliminary Hearing 6/23, 6/24/1971 | County51360-51455 | |
| 2165 | Preliminary Hearing 6/24/1971 | County51456-51561 | |
| 2166 | Preliminary Hearing 6/29/1971 | County51562-51658 | |
| 2167 | Preliminary Hearing 6/29, 6/30, & 7/1/1971 | County51659-51765 | |
| 2168 | Preliminary Hearing 7/2, 7/6, & 7/8/1971 | County51766-51838 | |
| 2169 | Transcripts from hearings 9/7/1971 through 1/11/1972 | County51839-53492 | |
| 2170 | Ruling - *State v. Taylor*, No. CR- | N/A | |

| | | | |
|---|---|---|---|
| | | 69983 (Maricopa County Superior Court, filed Dec. 31, 1984) (petition denied) | |
| | 2171 | Ruling - *Taylor v. Cardwell,* No. CIV 76-734 PHX (D. Ariz., filed October 8, 1976) (petition denied) | N/A |
| | 2172 | Ruling - *Taylor v. Cardwell*, 579 F.2d 1380 (9th Cir. 1978) (convictions vacated, remanded to district court for evidentiary hearing on voluntariness of statements to police) *Taylor v. Cardwell,* No. CIV 78-277. TUC (D. Ariz., on remand from 579 F.2d 1380) (petition denied) | N/A |
| | 2173 | Ruling - *Cardwell,* --- Fed.Appx. --- (9th Cir. 1982) (convictions reversed) *Cardwell* v. *Taylor,* 461 U.S. 571 (1983) (Ninth Circuit decision reversed, | N/A |

| | | | |
|---|---|---|---|
| | | convictions affirmed), *rehearing denied, Cardwell v. Taylor,* 463 U.S. 1236 (1983) | | |
| | 2174 | Ruling - *State v. Taylor,* No. CR-69983 (Maricopa County Superior Court, filed Dec. 31, 1984) (petition denied) | N/A |
| | 2175 | Ruling - *Taylor v. Cardwell,* No. CIV 76-734 PHX (D. Ariz., filed October 8, 1976) (petition denied) | N/A |
| | 2176 | Ruling - *Taylor v. Cardwell,* 579 F.2d 1380 (9th Cir. 1978) (convictions vacated, remanded to district court for evidentiary hearing on voluntariness of statements to police) *Taylor v. Cardwell,* No. CIV 78-277. TUC (D. Ariz., on remand from 579 F.2d 1380) (petition denied) | N/A |
| | 2177 | Ruling - *Cardwell,* --- Fed.Appx. --- (9th Cir. 1982) | N/A |

| | | | | |
|---|---|---|---|---|
| | | (convictions reversed)<br><br>*Cardwell* v. *Taylor,* 461 U.S. 571 (1983) (Ninth Circuit decision reversed, convictions affirmed), *rehearing denied, Cardwell v. Taylor,* 463 U.S. 1236 (1983) | | |
| | 2178 | Ruling - *State v. Taylor,* No. CR-69983 (Maricopa County Superior Court, filed Dec. 31, 1984) (petition denied) | N/A | |
| | 2179 | COT Initial Dscl | N/A | |
| | 2180 | COT 1st Supp Dscl | N/A | |
| | 2181 | COT 2nd Supp Dscl | N/A | |
| | 2182 | COT 4th Supp Dscl | N/A | |
| | 2183 | COT 5th Supp Dscl | N/A | |
| | 2184 | COT 6th Supp Dscl | N/A | |
| | 2185 | COT 7th Supp Dscl | N/A | |
| | 2186 | COT 8th Supp Dscl | | |
| | 2187 | Defendant City of Tucson's Response to Plaintiff's First Requests for Admission and | N/A | |

| | | | |
|---|---|---|---|
| | Requests for Production to Defendant City of Tucson 6/5/2020 and attachments | | |
| 2188 | Pima 1st Supp Rsp to Taylor 2nd RFP 5/3/2021 and attachments | N/A | |
| 2189 | Pima 2nd Supp Rsp to Taylor 2nd RFP 6/21/2021 and attachments | N/A | |
| 2190 | Pima 3rd Supp Rsp to Taylor 2nd RFP 8/13/2021 and attachments | N/A | |
| 2191 | Pima 4th Supp Rsp to Taylor 2nd RFP 7/5/2023 and attachments | N/A | |
| 2192 | Pima 5th Supp Rsp to Taylor 2nd RFP 7/21/2023 and attachments | N/A | |
| 2193 | Pima Rsp to Taylor 1st RFA RFP 6/5/2020 and attachments Pima Rsp to Taylor 1st RFA | N/A | |

| | | | |
|---|---|---|---|
| | Supp 10/1/2021 and attachments | | |
| 2194 | Pima Rsp to Taylor 2nd Set of NUI 6/10/2021 and attachments | N/A | |
| 2195 | Taylor Rsp to Combined RFA 7/27/2020 and attachments | N/A | |
| 2196 | Taylor Rsp to COT 1st RFA 9/27/2021 and attachments | N/A | |
| 2197 | Taylor Rsp to COT 1st RFP 9/20/2021 and attachments | N/A | |
| 2198 | Taylor Rsp to COT 1st Set of NUI 9/20/2021 and attachments | N/A | |
| 2199 | Taylor Rsp to Pima 1st RFP 8/5/2021 and attachments | N/A | |
| 2200 | Taylor Rsp to Pima 2nd RFA | N/A | |

| | | | |
|---|---|---|---|
| | 8/13/2020 and attachments | | |
| 2201 | Taylor Rsp to Pima 2nd Set of NUI 9/27/2021 and attachments | N/A | |
| 2202 | Taylor Rsp to Pima 2nd Set of RFP 6/21/2021 and attachments | N/A | |
| 2203 | Taylor Rsp to Pima 3rd Set of RFA 9/27/2021 and attachments | N/A | |
| 2204 | Taylor Rsp to Pima 3rd Set of RFP 9/27/2021 and attachments | N/A | |
| 2205 | Taylor Supp Rsp to Pima 1st Interrogatories and RFP 5/11/2021 and attachments | N/A | |
| 2206 | Plaintiff's Disclosure Statements and attachments | N/A | |
| 2207 | Pima County's Disclosure Statements and attachments | N/A | |
| 2208 | Marshal Smyth Deposition on September 21, 2012and all Exhibits | N/A | |
| 2209 | Cy Holmes Deposition on November 1, 2012 and all Exhibits | N/A | |
| 2210 | Howard Kashman Deposition on September 9, 2021 and all Exhibits | N/A | |
| 2211 | Any of Plaintiff's Exhibits that the | N/A | |

| 2212 | City does not object to. | | |
| | Any of Pima County's Exhibits that the City does not object to. | N/A | |

## G. DEPOSITIONS TO BE OFFERED

1.     List the depositions that may be used at trial, identifying by page and line number the portions that will be read or submitted and whether any such portions are objected to.  If the party against whom a deposition will be offered objects to the use of any portion of the deposition, succinctly state the grounds for the objection and the offering party's position.  Additionally, the party offering the deposition shall provide the Court with a hard copy of the offered deposition testimony.  The offering party shall highlight, in color, the portions of the deposition to be offered.  If multiple parties are offering the same deposition, only one copy of such deposition shall be provided, and such copy shall contain each party's highlighting (each party should use a different color).

**Plaintiff's Designations:**

| Witness | Page:Line | City's Objections[15] | Pima County's Objections[16] |
|---|---|---|---|
| Claus     Bergman (Jan. 14, 2022) | 10:4–12:22 City adds: 5:16-19,     6:5-19, 13:3-19,     15:20-16:16 | City's Objections: 10:18-19 (this is counsel's comment) 11:6-12:22 (relevance-see objections stated therein) | 11:2-14: Rules 402, 403; calls for a narrative. 11:17-21: Rules 402, 403; no question before the witness. |

---

[15] The City of Tucson joins in Pima County's objections to Plaintiff's deposition designations in addition to what is set forth herein.
[16] Defendant Pima County joins in Defendant City of Tucson's objections.

| | | | |
|---|---|---|---|
| | | | 11:22-12:8: Rules 402, 403, 802; misstates the witness' prior testimony. 12:9-22: Rules 402, 403. |
| | 20:20–21:4 City adds: 21:10-17,   19-20, 21:25-22:6 | | |
| | 22:19–23:18 | | |
| | 24:21–25:12 | City's Objections: 24:24-25:12 (foundation, relevance, character evidence, leading-see objections stated therein) | 24:24-25:12: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); improper character evidence (Rule 608). |
| | 26:6-25 | City's Objections: 26:6-15 (foundation, relevance-see objections stated therein) | 26:6-15: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602); leading. |

| | | | 26:16-25: Rules 402, 403. |
|---|---|---|---|
| | 29:20–30:23 | City's Objections: 30:8-23 (foundation, relevance, speculation-see objections stated therein) | 29:20-30:7: Rules 402, 403. 30:8-15: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). 30:16-23: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 35:5-15 | City's Objections: 35:5-15 (non-disclosure, foundation, relevance-see objections stated therein) | Rules 402, 403; this testimony was not previously disclosed. |

| | | | |
|---|---|---|---|
| | 36:3-6 | City's Objections:<br><br>36:3-6 (non-disclosure, foundation, relevance-see objections stated therein) | Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 38:9–40:19 | City's Objections:<br><br>38:9-25 (relevance)<br><br>39:7-24 (foundation, relevance, leading, speculation-see objections stated therein) | 38:14-25: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br>39:7-24: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
| | 41:9-14 | | |
| | 41:20–42:24<br>City adds:<br>42:25-43:5 | | |

| | | | |
|---|---|---|---|
| | 43:6–45:20 | City's Objections:<br><br>44:11-14 (foundation-see objections stated therein)<br><br>44:22-25 (foundation-see objections stated therein)<br><br>45:6-11 (foundation, speculation-see objections stated therein) | 44:11-14: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br>44:22-45:14: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 46:2-21 | City's Objections:<br><br>46:2-21 (foundation, leading, speculation-see objections stated therein) | 46:2-15:  Rules 402, 403; leading; compound; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701).<br>46:16-21: Rules 402, 403; leading; calls for |

| | | | |
|---|---|---|---|
| | | | speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). 46:22-47:15: Rules 402, 403 |
| | 46:22–49:11 City adds: 49:12-17 | City's Objections: 47:16-20 (foundation, leading-see objections stated therein) 48:13-16 (relevance, foundation-see objections stated therein) 48:20-49:11 (relevance, foundation, leading-see objections therein) | 46:22-47:15: Rules 402, 403. 47:16-25: Rules 402, 403; leading; compound; calls for speculation; lacks foundation; no personal knowledge (Rule 602). 48:1-12: Rules 402, 403; leading; compound; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |

| | | | |
|---|---|---|---|
| | | | 48:13-49:2:  Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). 49:3-11: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 50:12–52:4 | | 51:15-16: Rules 402, 403; Detective Smith's alleged statements are inadmissible hearsay (Rule 802). |
| | 52:11-22 | | 52:11-22: Rules 402, 403; leading; calls for speculation; lacks |

| | | | |
|---|---|---|---|
| | | | foundation; no personal knowledge (Rule 602); inadmissible hearsay (Rule 802). |
| | 53:1-22 | City's Objections: 53:7-22 (hearsay, foundation, leading-see objections therein) | 53:4-6: Rules 42, 403; calls for a legal conclusion; calls for speculation; lacks foundation; no personal knowledge (Rule 602). 53:7-14: Rules 402, 403; inadmissible hearsay (Rule 802). 53:15-22: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 54:13-24 City adds: | | 54:13-15: Rules 402, 403; calls for |

| | | | |
|---|---|---|---|
| | 54:25-55:2, 10-12 | | speculation; lacks foundation; no personal knowledge (Rule 602). 54:17-20: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). 54:21-24:  Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 56:15–57:21 | City's Objections: 56:15-24 (this is counsel discussions) 57:13-21 (relevance, speculation-see | 56:15-24: Rules 402, 403; this exchange is arguments by counsel. 56:25-57:8: Rules 402, 403; inadmissible |

| | | objection stated therein) | hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). 57:9-12: Rules 402, 403. 57:13-21:  Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
|---|---|---|---|
| | 58:3 | City's Objections: (relevance, speculation-see objection stated therein) | Rules 402, 403; there is no question designated; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
| | 59:22–59:6 | Must be a typographical | Rules 402, 403; calls for |

| | | error. Cannot state whether there is an objection. | speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
|---|---|---|---|
| | 61:3-17 | City's Objections: (relevance, foundation, speculation-see objections stated therein) | Rules 402, 403; misstates the witness' prior testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
| | 62:1-12 | | Rules 402, 403; leading; inadmissible hearsay (Rule 802); calls for |

| | | | speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
|---|---|---|---|
| | 62:19–63:5 | City's Objections: (relevance, foundation, nonresponsive-see objections stated therein) | 62:19-21: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). 62:22-63:5: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule |

| | | | |
|---|---|---|---|
| | | | 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 63:14-25 | City's Objections: (relevance, foundation -see objections stated therein) | Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 65:16–66:21 | City's Objections: (relevance, foundation, hearsay -see objections stated therein) | 65:16-66:6: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed |

| | | | |
|---|---|---|---|
| | | | and improper expert testimony; improper lay testimony (Rule 701). 66:7-21: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 67:9-25 | City's Objections: (relevance, foundation, hearsay -see objections stated therein) | Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper |

| | | | |
|---|---|---|---|
| | | | expert testimony; improper lay testimony (Rule 701). |
| | 68:20–70:14 | City's Objections: (relevance, foundation, hearsay -see objections stated therein) | 68:20-69:5: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). 69:6-14: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper |

| | | | |
|---|---|---|---|
| | | | expert testimony; improper lay testimony (Rule 701). |
| | | | 69:15-24: Rules 402, 403; compound question; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701); non-responsive. |
| | | | 69:25-70:14: Rules 402, 403; compound question; inadmissible hearsay (Rule 802); calls for speculation; lacks |

| | | | |
|---|---|---|---|
| | | | foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 72:9-18 | | Rules 402, 403; undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 77:17–78:8 | | Rules 402, 403; inadmissible hearsay (Rule 802). |
| | 79:22–80:18 | | 80:13-18:  Rules 402, 403; |

| | | | |
|---|---|---|---|
| 1 | | | undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | | 81:2-11 | 80:13-18:  Rules 402, 403; undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay |

| | | | testimony (Rule 701). |
|---|---|---|---|
| | 82:15–85:23 | City's Objections: 83:6-9 (foundation, nonresponsive, speculation-see objection therein) 85:6-23 (foundation, leading-see objections therein) | 83:4-8:  Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). 83:16-84:2: Rules 402, 403; non-responsive answer; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). 84:12-17: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |

| | | | |
|---|---|---|---|
| | | | 85:6-11: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br><br>85:12-23: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 85:25–88:9 | City's Objections: (relevance, foundation, hearsay-see objections stated therein) | 85:25-86:10: Rules 402, 403; leading; undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal |

| | | | |
|---|---|---|---|
| | | | knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701).<br><br>86:12-87:1: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); calls for a legal conclusion.<br><br>87:2-88:2: Rules 402, 403; leading; undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; |

| | | | improper lay testimony (Rule 701). 88:6-9: Rules 402, 403; leading; undisclosed testimony; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
|---|---|---|---|
| | 88:16-18 City adds: 88:19-89:1 | | |
| | 92:12–93:17 | City's Objections: (nondisclosure, foundation, hearsay, leading- see objections therein) | Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |

| | 94:5–95:8 | City's Objections: (nondisclosure, foundation, hearsay, leading- see objections therein) | 94:5-95:5: Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br><br>95:6-8: Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| | 98:23–99:23 | City's Objections: | 98:23-99:8: Rules 402, 403; |

| | | | (foundation, hearsay, leading- see objections therein) | undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). 99:9-23: Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay |

| | | | testimony (Rule 701). |
|---|---|---|---|
| | 100:19–101:3 City adds: 105:5-12 | City's Objections: (foundation, leading-see objections stated therein) | 99:9-23: Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed and improper expert testimony; improper lay testimony (Rule 701). |
| (Continued on Jan. 18, 2022) | 126:13-20 City adds: 118:12-20 118:24-119:15 120:9-11 120:16-122:9 122:13-125:7 125:12-20 126:21-127:6 | | Rules 402, 403; undisclosed testimony; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |

| | | | |
|---|---|---|---|
| 1 | | 129:9-130:24 | 129:9-130:5: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| 2 | | City adds: | |
| 3 | | 127:18-129:8 | |
| | | | 130:6-10: Rules 402, 403; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | | | 130:11-17: Rules 402, 403. |
| | | | 130:18-20: Rules 402, 403; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |

| | | | |
|---|---|---|---|
| | | | 130:21-24: Rules 402, 403. |
| | 131:18-132:21<br>City adds:<br>131:7-17 | | Rules 402, 403; lacks foundation; no personal knowledge (Rule 602). |
| | 133:7-17<br>City adds:<br>133:18-134:9<br>134:12-21<br>135:2-5 and 8-14 | | Rules 402, 403; lacks foundation; no personal knowledge (Rule 602). |
| | 135:15-21<br>City adds:<br>136:17-137:9<br>137:21-138:6<br>138:10-20<br>139:23-140:25<br>141:17-20<br>142:5-18<br>142:21-143:12<br>143:20-25<br>144:13-145:2<br>145:4-146:5 | | Rules 402, 403. |
| | 146:6-24<br>City adds:<br>147:13-148:12<br>148:22-150:16<br>151:3-5<br>151:7-21 | | Rules 402, 403; leading; non-responsive; counsel is testifying; calls for speculation; lacks foundation; |

| | | | |
|---|---|---|---|
| | 152:2-157:14 | | no personal knowledge (Rule 602). |
| | 158:17–159:3<br>City adds:<br>158:12-16<br>159:4-16 | | Rules 402, 403; leading; non-responsive; counsel is testifying; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 159:17–160:10<br>City adds:<br>160:11-161:12<br>161:18-24 | | Rules 402, 403; counsel is testifying; leading; non-responsive; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 162:11–163:1<br>City adds:<br>163:17-165:12<br>165:15-166:15<br>167:1-5<br>172:19-174:14 | | 162:11-15: Rules 402, 403; non-responsive; based on inadmissible hearsay (Rule 802); calls for |

| | | | |
|---|---|---|---|
| | | | speculation; lacks foundation; no personal knowledge (Rule 602). 162:16-163:3: Rules 402, 403; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 174:15-25 City adds: 176:18-177:11, 16, 19-21 178:5-17, 21-179:10, 18-25 | | Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
| | 180:24–181:1 City adds: 180:1-23 181:2-185:5 | | Rules 402, 403. |

| | | | |
|---|---|---|---|
| 1 | | 185:9–186:20 | | 185:9-17: Rules 402, 403; inadmissible hearsay (Rule 802). |
| 2 | | City adds: | | |
| 3 | | 186:21-189:4 | | |
| 4 | | 189:11-190:16 | | |
| 5 | | 191:1-25 | | 185:18-185:24: Rules 402, 403; leading; undisclosed expert testimony; improper lay testimony (Rule 701). |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | 185:25-186:5: Rules 402, 403. |
| 12 | | | | |
| 13 | | | | 186:6-16: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701). |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | 186:17-20: Rules 402, 403; leading; calls for speculation; lacks |
| 24 | | | | |
| 25 | | | | |

| | | | |
|---|---|---|---|
| | | | foundation; no personal knowledge (Rule 602). |
| | 192:1–196:6<br>City adds:<br>196:7-198:25<br>199:2-12, 15-25<br>200:1-201:6<br>201:16-202:16 | | 192:9-193:5: Rules 402, 403.<br>193:6-194:25: Rules 402, 403; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br>195:1-5: Rules 402, 403; counsel is testifying; leading; calls for speculation; lacks foundation; no personal knowledge (Rule 602); undisclosed expert testimony; improper lay testimony (Rule 701).<br>195:6-23: Rules 402, 403; counsel is testifying; |

| | | | |
|---|---|---|---|
| | | | leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br>195:24-196:6: Rules 402, 403; counsel is testifying; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 206:15–207:17<br>City adds:<br>206:7-14<br>208:3-14,17-209:22<br>210:4-23<br>214:1-215:16<br>216:9-217:21<br>221:10-25 | | |

| | | | |
|---|---|---|---|
| | 222:1-18<br>City adds:<br>223:4-12<br>229:8-14<br>229:23-230:6<br>232:23-233:10, 13-234:22<br>235:2-6, 8, 11-25<br>236:2-23, 237:1-2 | City's Objections:<br>222:16-20 (foundation-see objection state therein) | 222:1-3: Rules 402, 403; calls for a legal conclusion.<br>222:4-12: Rules 402, 403; counsel is testifying; inadmissible hearsay (Rule 802).<br>222:13-15: Rules 402, 403; leading; counsel is testifying; calls for a legal conclusion; calls for speculation; lacks foundation; no personal knowledge (Rule 602).<br>222:16-18: Rules 402, 403; calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
| | 239:2-21<br>City adds:<br>238:15-239:1<br>239:22-240:11 | | 239:2-4: Rules 402, 403; there is no question before the witness. |

| | | | 239:5-21: Rules 402, 403; leading; inadmissible hearsay (Rule 802); calls for speculation; lacks foundation; no personal knowledge (Rule 602). |
|---|---|---|---|
| Argument re Bruce Wallmark testimony; TT 2/25/72, V22 | 128:2–138:21 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and |

| | | admissible in this civil trial. All opening and closing should be admitted for the same reasons. | rulings, should be admitted in evidence, and Pima County counter-designates them here (see designations above). |
|---|---|---|---|
| Bruce Wallmark; TT 2/25/72, V22 | 140:3–187:25 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be |

| | | civil trial. All opening and closing should be admitted for the same reasons. | admitted in evidence, and Pima County counter-designates them here (see designations above). |
|---|---|---|---|
| Discussion re Bruce Wallmark; TT 2/26/72, V23 | 2:18–3:15<br>4:1–7:25 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in |

| | | | |
|---|---|---|---|
| | | opening and closing should be admitted for the same reasons. | evidence, and Pima County counter-designates them here (see designations above). |
| Larry Kern, TT 2/26/72, V23 | 20:9–10 21:25–22:8 23:2–13 24:13–25 26:14–23 33:23–34:23 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and |

| | | | closing should be admitted for the same reasons. | Pima County counter-designates them here (see designations above). |
|---|---|---|---|---|
| Bruce Wallmark (con't); TT 2/28/72, V24 | 2:22–9:4 | | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County |

| | | admitted for the same reasons. | counter-designates them here (see designations above). |
|---|---|---|---|
| Lawrence F. Estrada; TT 2/29/72, V25 | 3:17–23 4:20–7:9 9:10–55:13 57:8–74:21 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates |

| | | admitted for the same reasons. | them here (see designations above). |
|---|---|---|---|
| Robert Jackson argument, Court examination; TT 3/1/72; V26 | 2:18–30:7 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be admitted for the same reasons. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | designations above). |
|---|---|---|---|
| Reopening discussion; TT 3/15/72, V38 | 2:16–4:14 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be admitted for the same reasons. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | designations above). |
|---|---|---|---|
| Robert Jackson, TT 3/15/72, V38 | 4:21–48:20 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be admitted for the same reasons. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | designations above). |
|---|---|---|---|
| Horton Weiss Closing Argument, TT 3/18/72, V43 | 65:9–147:19 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be admitted for the same reasons. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | designations above). |
|---|---|---|---|
| Horton Weiss Rebuttal closing argument, TT 3/20/72, V42 | 72:20–125:6 | City's Objections: Rule 106 – all of the trial testimony is relevant and admissible at the very least for the expungement claim. The 1972 jury that convicted Taylor heard all of the testimony in 1972, and the jury in this civil trial should too. In addition, any side bar or ruling outside the presence of the 1972 jury is relevant and admissible in this civil trial. All opening and closing should be admitted for the same reasons. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | |
|---|---|---|---|
| | | | designations above). |
| Robert Jackson; Statement of Robert James Jackson, 5/12/72 | 2:7–44:17 | City's Objections: Rule 106- the transcript of the May 12, 1972 Motion for New Trial hearing should be admitted in its entirety. | Pursuant to Rule 106, the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings, should be admitted in evidence, and Pima County counter-designates them here (see |

| | | | |
|---|---|---|---|
| | | | designations above). |
| Deposition of Cyrillis Holmes dated Nov. 1, 2012 | 4:25–5:7 | City's Objections[17]: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in |

[17] The City objects to the admission of any of Holmes' 2012 deposition to prove the truth of the matters asserted against the City. If the Court allows any part of his deposition into evidence, over the City's objection, the City's position is that all of the deposition should be read to the jury under FRE 106.

| | | | |
|---|---|---|---|
| | | | evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 37:20–38:18 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were noat represented or protected during this proceeding. This deposition is inadmissible as to | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely |

| | | the claims against the City. See the City's motion in *limine* regarding this deposition. | disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 41:14-17 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a |

| | | | |
|---|---|---|---|
| | | deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |

| | | 46:13–47:5 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the |

| | | | |
|---|---|---|---|
| | | | following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 48:23–49:11 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any |

| | | | portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 49:20-25 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under |

| | | this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 52:6–53:6 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no | Pima County objects to the designation of any portion of this deposition.  It is inadmissible |

| | | | opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | 121:3-135:22, 136:14-144:2. |
| | 53:11-19 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima |

| | | | |
|---|---|---|---|
| | | | County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 54:13-21 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and |

| | | *limine* regarding this deposition. | opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 56:22–57:19 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the |

| | | | |
|---|---|---|---|
| | | represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 61:7-16 | City's Objections: the City was not a party to the 2012-2013 criminal | Pima County objects to the designation of any portion of this |

| | | | |
|---|---|---|---|
| | | proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, |

| | | | 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 62:6-12 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over |

| | | | |
|---|---|---|---|
| | | | Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 63:5-22 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent |

| | | the City. See the City's motion in *limine* regarding this deposition. | to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 65:7-10 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the |

| | | City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 65:16-22 | City's Objections: the City was not a | Pima County objects to the |

| | | | |
|---|---|---|---|
| | | party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20- |

| | | | |
|---|---|---|---|
| | | | 65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 73:14–75:11 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is |

| | | | admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 75:16–76:6 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff |

| | | | |
|---|---|---|---|
| | | inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 77:16–79:7 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima |

| | | during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is | County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | |
| | 81:9–93:16 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the |

| | | | |
|---|---|---|---|
| | | | deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 93:21–95:10 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, |

| | | | This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | | 95:24–96:3 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, |

| | | | |
|---|---|---|---|
| | | question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, |

| | | | 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 96:18-23 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima |

| | | | County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 97:18–99:14 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and |

| | | | |
|---|---|---|---|
| | | *limine* regarding this deposition. | opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 102:2–103:3 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the |

| | | | |
|---|---|---|---|
| | | represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 121:3-18 | City's Objections: the City was not a party to the 2012-2013 criminal | Pima County objects to the designation of any portion of this |

| | | proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, |
|---|---|---|---|

| | | | 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|
| | 122:11–123:18 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over |

| | | | |
|---|---|---|---|
| | | | Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 127:10-14 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against | Pima County objects to the designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent |

| | | the City. See the City's motion in *limine* regarding this deposition. | to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 129:24–131:5 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The | Pima County objects to the designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the |

| | | | | |
|---|---|---|---|---|
| | | | City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 131:21–132:10 | | City's Objections: the City was not a | Pima County objects to the |

| | | | party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | designation of any portion of this deposition.  It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20- |

| | | | |
|---|---|---|---|
| | | | 65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 132:13-25 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | Pima County objects to the designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is |

| | | | |
|---|---|---|---|
| | | | admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
| | 133:22–134:3 | City's Objections: the City was not a party to the 2012-2013 criminal proceedings, and therefore had no opportunity to question Holmes during this deposition. The City's interest were not represented or protected during this proceeding. This deposition is | Pima County objects to the designation of any portion of this deposition. It is inadmissible hearsay (including, e.g., because Pima County was not a party to the criminal proceeding or the deposition) and inadmissible under Rules 105, 106, 402, 403. Plaintiff |

| | | inadmissible as to the claims against the City. See the City's motion in *limine* regarding this deposition. | also did not timely disclose his intent to rely on the testimony and opinions in the deposition. If any portion of the deposition is admitted in evidence (over Pima County's objection), Pima County counter-designates the following portions: 4:25-49:15, 49:20-65:25, 67:5-77:22, 80:2-15, 96:4-17, 96:24-113:9, 113:11-120:21, 121:3-135:22, 136:14-144:2. |
|---|---|---|---|

**<u>Defendant Pima County's Counter Designations/Designations</u>:**[18]

  Plaintiff's General Objection: Plaintiff objects to the designation of Taylor's entire deposition transcript and nearly all (if not all) transcripts from Taylor's 1972 trial and hearings. By including thousands of pages, Plaintiff is prevented from providing any meaningful objections.

---

[18] Defendant City of Tucson joins in Defendant Pima County's Counter Designations/Designations.

| Witness | Page:Line | Objections |
|---|---|---|
| Claus Bergman (given January 14, 2022) | 6:5 – 16 | Fed. R. Evid. 402 |
| | 7:18 – 19 | Fed. R. Evid. 402 |
| | 9:17 – 10:25 | |
| | 13:3 – 24 | |
| | 16:19 – 21 | |
| | 16:24 – 17:3 | |
| | 21:5 – 6 | |
| | 21:9 – 17 | Fed. R. Evid. 402; 403 |
| | 21:25 – 22:2 | Fed. R. Evid. 106; 402; 403 |
| | 23:20 – 25 | |
| | 24:6 - 12 | Fed. R. Evid. 106; 402; 403; 602 |
| | 31:1 – 8 | Fed. R. Evid. 106; 402 |
| | 36:8 – 37:6 | Fed. R. Evid. 106; 402; 602 |
| | 40:20 – 24 | Fed. R. Evid. 106; 402; 403 |
| | 41:6 – 8 | Fed. R. Evid. 402; 403 |
| | 41:25 – 42:24 | Fed. R. Evid. 106 |
| | 49:16 – 17 | Fed. R. Evid. 106 |
| | 49:24 – 50:11 | Fed. R. Evid. 106 |
| | 52:5 – 8 | Fed. R. Evid. 106; 402; 602 |
| | 53:23 | Fed. R. Evid. 106 |
| | 54:1 – 2 | Fed. R. Evid. 106 |
| | 54:25 – 55:2 | Fed. R. Evid. 106; 402; 403; 602 |

| Witness | Page:Line | Objections |
|---|---|---|
|  | 55:8 – 12 | Fed. R. Evid. 106; 402; 403; 602 |
|  | 55:16 – 56:13 | Fed. R. Evid. 106; 402; 403 |
|  | 60:3 – 10 | Fed. R. Evid. 106 |
|  | 66:23 – 24 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 68:6 – 8 | Fed. R. Evid. 106 |
|  | 68:15 | Fed. R. Evid. 106 |
|  | 70:15 – 16 | Fed. R. Evid. 106 |
|  | 71:9 – 72:8 | Fed. R. Evid. 106 |
|  | 78:9 – 18 | Fed. R. Evid. 106; 402; 403; 602; 1002 |
|  | 81:12 – 13 | Fed. R. Evid. 106 |
|  | 81:15 – 82:5 | Fed. R. Evid. 106; 402; 403 |
|  | 82:11 – 14 |  |
|  | 88:12 – 15 | Fed. R. Evid. 106 |
|  | 88:19 – 20 | Fed. R. Evid. 106 |
|  | 95:10 – 14 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 96:12 – 20 | Fed. R. Evid. 106; 402; 403 |
|  | 96:25 – 97:7 | Fed. R. Evid. 106; 402; 403 |
|  | 100:13 – 15 | Fed. R. Evid. 106; 402; 403 |
|  | 105:5 – 12 | Fed. R. Evid. 106; 402; 403; 602 |

| Witness | Page:Line | Objections |
|---|---|---|
| | 105:14 – 106:4 | |
| Claus Bergman (given and January 18, 2022) | 119:1 – 2 | Fed. R. Evid. 106; 402; 403 |
| | 119:11 – 13 | Fed. R. Evid. 106; 402; 403; 602; 1002 |
| | 121:15 – 18 | Fed. R. Evid. 106 |
| | 122:10 – 18 | Fed. R. Evid. 106; 402 |
| | 123:4 – 125:7 | Fed. R. Evid. 106; 402; 403 |
| | 125:12 – 126:12 | Fed. R. Evid. 106; 402 |
| | 126:21 – 127:7 | Fed. R. Evid. 106; 402 |
| | 127:10 – 13 | Fed. R. Evid. 106 |
| | 127:18 – 129:8 | Fed. R. Evid. 106; 402 |
| | 131:7 – 17 | Fed. R. Evid. 106; 402 |
| | 132:22 – 133:6 | Fed. R. Evid. 106; 402 |
| | 133:18 – 134:2 | Fed. R. Evid. 106 |
| | 134:12 – 135:5 | Fed. R. Evid. 106; 402 |
| | 135:10 – 14 | Fed. R. Evid. 106 |
| | 135:22 – 136:12 | Fed. R. Evid. 106; 402; 403 |
| | 136:14 – 137:9 | Fed. R. Evid. 106; 402; 403 |
| | 137:23 – 138:6 | Fed. R. Evid. 106; 402; 403 |
| | 138:12 – 141:4 | Fed. R. Evid. 106; 402; 403 |
| | 142:7 – 18 | Fed. R. Evid. 106 |
| | 142:21 – 143:16 | Fed. R. Evid. 106 |
| | 143:20 – 25 | Fed. R. Evid. 106 |

| Witness | Page:Line | Objections |
|---|---|---|
| | 144:13 – 145:2 | Fed. R. Evid. 106; 402; 403 |
| | 145:4 – 146:5 | Fed. R. Evid. 106; 402; 403 |
| | 147:6 – 16 | Fed. R. Evid. 106 |
| | 147:22 – 148:21 | Fed. R. Evid. 106; 402; 403; 802 |
| | 149:16 – 150:16 | Fed. R. Evid. 106 |
| | 151:3 – 5 | Fed. R. Evid. 106 |
| | 151:7 – 14 | Fed. R. Evid. 106; 402; 403 |
| | 151:19 – 21 | Fed. R. Evid. 106; 402; 403 |
| | 152:2 – 156:6 | Fed. R. Evid. 106; 402; 403; 802; 1002 |
| | 156:19 – 157:24 | Fed. R. Evid. 106; 402; 403; 802; 1002 |
| | 158:13 – 16 | Fed. R. Evid. 106; 402 |
| | 159:4 – 16 | Fed. R. Evid. 106 |
| | 160:11 – 161:12 | Fed. R. Evid. 106; 402; 403 |
| | 161:18 – 24 | Fed. R. Evid. 106; 402; 403 |
| | 163:17 – 165:5 | Fed. R. Evid. 106; 402; 403 |
| | 165:15 – 166:16 | Fed. R. Evid. 106; 402; 403 |
| | 167:18 – 168:5 | Fed. R. Evid. 106; 402; 403; 602; 802 |

| Witness | Page:Line | Objections |
|---|---|---|
|  | 168:13 – 169:7 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 169:10 – 12 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 170:20 – 25 | Fed. R. Evid. 106; 402; 403 |
|  | 172:22 – 174:14 | Fed. R. Evid. 106; 402; 403; 602 |
|  | 175:1 – 18 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 175:25 – 176:13 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 176:15 – 17 | Fed. R. Evid. 106; 402; 403 |
|  | 177:1 – 11 | Fed. R. Evid. 106; 402; 403; 602 |
|  | 177:16 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 177:19 – 21 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 177:25 – 178:1 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 178:3 | Fed. R. Evid. 106; 402; 403; 602; 802 |
|  | 178:10 – 19 | Fed. R. Evid. 106; 402; 403 |
|  | 178:21 – 179:10 | Fed. R. Evid. 106; 402; 403 |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
| | 179:18 – 180:23 | Fed. R. Evid. 106; 402; 403 |
| | 181:2 – 16 | Fed. R. Evid. 106; 402; 403 |
| | 181:22 – 185:8 | Fed. R. Evid. 106; 402; 403; 802; 901; 1002 |
| | 186:21 – 189:4 | Fed. R. Evid. 106; 402; 403; 802; 901; 1002 |
| | 189:11 – 21 | Fed. R. Evid. 106; 402; 403; 1002 |
| | 189:23 – 190:22 | Fed. R. Evid. 106; 402; 403 |
| | 191:9 – 25 | Fed. R. Evid. 106; 402; 403 |
| | 196:7 – 198:25 | Fed. R. Evid. 106; 402; 403 |
| | 199:2 – 12 | Fed. R. Evid. 106; 402; 403 |
| | 199:15 – 201:6 | Fed. R. Evid. 106; 402; 403; 1002 |
| | 201:16 – 203:3 | Fed. R. Evid. 106; 402; 403 |
| | 203:7 – 206:14 | Fed. R. Evid. 106; 402; 403 |
| | 207:18 – 208:14 | Fed. R. Evid. 106; 402; 403; 602; 802 |
| | 208:17 – 209:22 | Fed. R. Evid. 106; 402; 403; 602; 802 |

| Witness | Page:Line | Objections |
|---|---|---|
|  | 210:4 – 212:22 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 212:25 – 213:20 | Fed. R. Evid. 106; 402; 403; 602 |
|  | 213:23 – 217:21 | Fed. R. Evid. 106; 402; 403; 609 |
|  | 218:2 – 6 | Fed. R. Evid. 106; 402; 403; 609 |
|  | 218:9 – 19 | Fed. R. Evid. 106; 402; 403; 609 |
|  | 218:23 – 220:3 | Fed. R. Evid. 106; 402; 403; 609 |
|  | 221:7 – 9 | Fed. R. Evid. 106; 402 |
|  | 221:17 – 25 | Fed. R. Evid. 106; 402; 602; 1002 |
|  | 231:14 – 15 | Fed. R. Evid. 106; 402; 403 |
|  | 232:23 – 233:10 | Fed. R. Evid. 106; 402; 403; 1002 |
|  | 233:13 – 235:6 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 235:8 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 235:11 – 25 | Fed. R. Evid. 106; 402; 403; 802 |
|  | 236:2 – 21 | Fed. R. Evid. 106; 402; 403; 802; 1002 |
|  | 237:1 – 2 | Fed. R. Evid. 106 |

| Witness | Page:Line | Objections |
|---|---|---|
| | 238:15 – 18 | Fed. R. Evid. 106; 402; 403 |
| | 238:21 – 239 | Incomplete designation, Fed. R. Evid. 106; 402; 403 |
| | 239:22 – 242:10 | Fed. R. Evid. 106; 402; 403; 802; 1002 |
| | 242:12 – 18 | Fed. R. Evid. 106; 402; 403; 602; 802 |
| | 242:24 – 243:9 | Fed. R. Evid. 106; 402; 403; 602 |
| | 243:17 – 23 | |
| | 244:8 – 247:22 | Fed. R. Evid. 106; 402; 403 |
| | 248:1 – 23 | Fed. R. Evid. 106; 402; 403; 802; 1002 |
| Gabriel Jack Chin (given September 15, 2023) | 10:3 – 7 | |
| | 11:17 – 12:10 | |
| | 12:19 – 22 | Fed. R. Evid. 106; 402 |
| | 15:18 – 21 | Fed. R. Evid. 402 |
| | 15:25 – 16:25 | |
| | 17:25 – 18:2 | Fed. R. Evid. 106; 402 |
| | 19:10- 17 | Fed. R. Evid. 106; 402 |
| | 23:2 – 25:17 | Fed. R. Evid. 106 |
| | 26:25 – 27:4 | Fed. R. Evid. 106; 402 |
| | 27:7 – 13 | Fed. R. Evid. 106; 402 |
| | 28:1 – 24 | Fed. R. Evid. 106 |
| | 30:7 – 31:21 | Fed. R. Evid. 106 |

| Witness | Page:Line | Objections |
|---|---|---|
|  | 33:12 – 34:16 | Fed. R. Evid. 106; 402 |
|  | 35:19 – 37:11 | Fed. R. Evid. 106; 402; 403 |
|  | 39:21 – 40:15 | Fed. R. Evid. 106; 402; 403 |
|  | 45:7 – 9 | Fed. R. Evid. 106; 402; 403 |
|  | 45:11 | Fed. R. Evid. 106; 402 |
|  | 46:12 – 15 | Fed. R. Evid. 106; 402; 403 |
|  | 46:17 – 10 | Fed. R. Evid. 106; 402; 403 |
|  | 48:9 – 11 | Fed. R. Evid. 106; 403 |
|  | 48:17 – 18 | Fed. R. Evid. 106; 403 |
|  | 48:20 – 23 | Fed. R. Evid. 106; 403 |
|  | 49:5 | Fed. R. Evid. 106; 403 |
|  | 49:7 – 9 | Fed. R. Evid. 106 |
|  | 49:12 – 14 | Fed. R. Evid. 106; 402 |
|  | 49:21 – 50:5 | Fed. R. Evid. 106; 402 |
|  | 54:9 – 21 | Fed. R. Evid. 106; 402 |
|  | 54:23 – 62:12 | Fed. R. Evid. 106 |
|  | 68:12 – 18 | Fed. R. Evid. 106; 402 |
|  | 70:19 – 23 | Fed. R. Evid. 106 |
|  | 71:5 – 16 | Fed. R. Evid. 106 |
|  | 73:5 – 12 | Fed. R. Evid. 106; 402; 403 |
|  | 77:2 – 5 | Fed. R. Evid. 402 |
|  | 94:25 – 95:2 | Fed. R. Evid. 106; 402 |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
|  | 95:4 – 7 | Fed. R. Evid. 106; 402; 403 |
|  | 96:7 – 9 | Fed. R. Evid. 106; 402 |
|  | 96:17 – 22 | Fed. R. Evid. 106 |
|  | 96:24 – 97:13 | Fed. R. Evid. 106; 403; 602 |
|  | 97:15 – 20 | Fed. R. Evid. 106; 402 |
|  | 104:5 – 7 | Fed. R. Evid. 106 |
|  | 105:5 – 14 | Fed. R. Evid. 106; 402; 403 |
|  | 106:7 – 14 | Fed. R. Evid. 106; 402 |
|  | 106:21 – 24 | Fed. R. Evid. 106 |
|  | 107:1 – 7 | Fed. R. Evid. 106 |
|  | 108:1 – 6 | Fed. R. Evid. 106; 402 |
|  | 108:11 – 19 | Fed. R. Evid. 106; 402; 403 |
|  | 110:12 – 20 | Fed. R. Evid. 106; 402; 403 |
|  | 112:10 – 14 | Fed. R. Evid. 106; 402 |
|  | 112:21 – 113:1 | Fed. R. Evid. 106; 402; 403 |
|  | 113:3 – 19 | Fed. R. Evid. 106 |
|  | 116:16 – 117:11 | Fed. R. Evid. 106 |
|  | 117:16 – 18 | Fed. R. Evid. 106 |
|  | 118:18 – 120:11 | Fed. R. Evid. 106 |
|  | 123:4 – 5 | Fed. R. Evid. 106 |
|  | 123:21 – 124:3 | Fed. R. Evid. 106 |
|  | 124:13 – 22 | Fed. R. Evid. 106 |
|  | 126:2 – 8 | Fed. R. Evid. 106 |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
|  | 129:15 – 130:3 | Fed. R. Evid. 106 |
|  | 130:13 – 131:25 | Fed. R. Evid. 106 |
|  | 132:9 – 133:1 | Fed. R. Evid. 106; 402; 403 |
|  | 133:6 – 23 | Fed. R. Evid. 106; 402 |
|  | 134:11 – 135:15 | Fed. R. Evid. 106; 402 |
|  | 135:23 – 10 | Fed. R. Evid. 106; 402 |
|  | 138:7 – 140:20 | Fed. R. Evid. 106; 402 |
|  | 141:1 – 7 | Fed. R. Evid. 106; 402 |
|  | 141:24 – 25 | Fed. R. Evid. 106; 402 |
|  | 142:4 – 12 | Fed. R. Evid. 106; 402 |
|  | 142:17 – 144:5 | Fed. R. Evid. 106; 402 |
|  | 144:11 – 25 | Fed. R. Evid. 106; 402; 403; 1002 |
|  | 145:2 – 146:9 | Fed. R. Evid. 106; 402; 403; 1002 |
|  | 146:15 – 147:21 | Fed. R. Evid. 106; 1002 |
|  | 150:3 – 14 | Fed. R. Evid. 106; 402; 1002 |
|  | 151:4 – 152:2 | Fed. R. Evid. 106; 402; 403 |
|  | 152:12 – 25 | Fed. R. Evid. 106; 402; 403; 602 |
|  | 153:8 – 18 | Fed. R. Evid. 106; 402; 403 |
|  | 156:5 – 18 | Fed. R. Evid. 106; 402 |
|  | 157:1 – 3 | Fed. R. Evid. 106; 402 |
|  | 160:22 – 161:24 | Fed. R. Evid. 106 |
|  | 163:10 – 15 | Fed. R. Evid. 106; 1002 |

| Witness | Page:Line | Objections |
|---|---|---|
|  | 165:16 – 22 | Fed. R. Evid. 106; 402 |
|  | 166:6 – 167:5 | Fed. R. Evid. 106 |
|  | 167:17 – 169:25 | Fed. R. Evid. 106; 602; 1002 |
|  | 170:8 – 24 | Fed. R. Evid. 106 |
|  | 172:10 – 173:22 | Fed. R. Evid. 106; 602 |
|  | 181:18 – 21 | Fed. R. Evid. 106; 402; 1002 |
|  | 183:15 – 23 | Fed. R. Evid. 106; 402; 602 |
|  | 186:13 – 14 | Fed. R. Evid. 106; 402; 602 |
|  | 186:22 – 187:21 | Fed. R. Evid. 106 |
| Howard Kashman (given September 9, 2021) | 51:11 – 52:7 |  |
|  | 52:18 – 78:17 | Fed. R. Evid. 402; 403 |
|  | 78:24 – 85:3 |  |
|  | 85:21 – 93:23 | Fed. R. Evid. 402; 403 |
|  | 94:6 – 115:20 | Fed. R. Evid. 106; 402; 403 |
|  | 116:6 – 121:18 | Fed. R. Evid. 106; 402; 403 |
|  | 122:19 – 124:18 |  |
|  | 126:16 – 177:14 | Fed. R. Evid. 106; 402; 403 |
|  | 177:21 – 183:10 | Fed. R. Evid. 402 |
|  | 195:15 – 198:21 | Fed. R. Evid. 402; 403 |
|  | 199:3 – 23 |  |

| Witness | Page:Line | Objections |
|---|---|---|
| Plaintiff Louis Taylor (given September 30, 2021) | 5:8 – 13:5 | Taylor will be available to testify at the trial so no part of his deposition should be offered at trial. |
| | 13:12 – 30:13 | |
| | 30:21 – 44:17 | |
| | 44:22 – 49:2 | |
| | 49:11 – 71:4 | |
| | 71:11 – 83:21 | |
| | 84:24 – 96:23 | |
| | 98:19 – 102:1 | |
| | 102:11 – 15 | |
| | 102:21 – 108:22 | |
| | 110:6 – 111:18 | |
| | 112:1 – 8 | |
| | 112:20 – 115:5 | |
| | 115:22 – 117:2 | |
| | 117:11 – 120:3 | |
| | 120:13 – 21 | |
| | 121:10 – 125:23 | |
| | 126:6 – 134:15 | |
| | 134:23 – 24 | |
| | 135:5 – 136:8 | |
| | 136:15 – 140:15 | |
| | 141:2 – 148:7 | |
| | 148:23 – 156:12 | |
| | 157:21 – 159:9 | |
| | 161:19 – 163:11 | |
| | 165:24 – 171:12 | |
| | 172:19 – 175:20 | |

| Witness | Page:Line | Objections |
|---|---|---|
| | 176:9 – 181:19 | |
| | 182:10 – 182:20 | |
| | 183:2 – 184:22 | |
| | 185:19 – 186:14 | |
| | 187:16 – 206:8 | |
| | 206:17 – 212:15 | |
| | 213:6 – 221:5 | |
| | 221:14 – 229:21 | |
| | 229:25 – 231:19 | |
| | 231:24 – 235:4 | |
| | 237:1 – 7 | |
| | 237:21 – 238:17 | |
| | 239:3 – 242:9 | |
| | 242:18 – 243:21 | |
| | 244:6 – 245:14 | |
| | | |
| | | |
| Marshall Smyth (given October 22, 1973) | 27:18-28:2 | Fed. R. Evid. 802, 804(b)(1); Untimely Disclosure; Plaintiff reserves all evidentiary objections; |
| | 68:15-20 | Fed. R. Evid. 802, 804(b)(1); Untimely Disclosure; Plaintiff reserves all evidentiary objections; |

| Witness | Page:Line | Objections |
|---|---|---|
| | 194:6-196:6 | Fed. R. Evid. 802, 804(b)(1); Untimely Disclosure; Plaintiff reserves all evidentiary objections; |
| Paul Charters (December 31, 1970: Motion for Transfer)[19] | 14:12 – 21:9 | Fed. R. Evid. 802; 804(b)(1) |
| | 22:22 – 24:10 | Fed. R. Evid. 802; 804(b)(1) |
| | 25:15 – 27:13 | Fed. R. Evid. 802; 804(b)(1) |
| Paul Charters (January 28, 1971: Juvenile Transfer Hearing) | 3:8 – 4112 | Fed. R. Evid. 802; 804(b)(1) |
| Gerald T. Jacobs (January 28, 1971: Juvenile Transfer Hearing) | 41:25 – 49:23 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall H. Chazen (January 28, 1971: Juvenile Transfer Hearing) | 50:18 – 65:9 | Fed. R. Evid. 802; 804(b)(1) |
| William H. Ball (January 28, 1971: Juvenile Transfer Hearing) | 65:19 – 70:20 | Fed. R. Evid. 802; 804(b)(1) |
| Norma Hilton (January 28, 1971: Juvenile Transfer Hearing) | 71:3 – 78:10 | Fed. R. Evid. 802; 804(b)(1) |

[19] Pima County intends to designate the entirety of every transcript from all hearings in Taylor's prosecution (In Re Louis Taylor, No. 6358-4, State v. Taylor, No. A-19672, No. C.R. 69983), from December 31, 1970 through May 18, 1972, including but not limited to testimony, arguments, statements, objections, and rulings.

| Witness | Page:Line | Objections |
|---|---|---|
| Allan B. Cook (January 28, 1971: Juvenile Transfer Hearing) | 81:15 – 102:4 | Fed. R. Evid. 802; 804(b)(1) |
| Steven John Vukoevich (January 28, 1971: Juvenile Transfer Hearing) | 103:5 – 115:15 | Fed. R. Evid. 802; 804(b)(1) |
| Robert Egar Cooper (January 28, 1971: Probable Cause Hearing, Volume 1) | 3:3 – 39:20 | Fed. R. Evid. 802; 804(b)(1) |
| Rodney Lee Dingle (January 28, 1971: Probable Cause Hearing, Volume 1) | 40:21 – 73:1 | Fed. R. Evid. 802; 804(b)(1) |
| Frank G. Armenta (January 28, 1971: Probable Cause Hearing, Volume 1) | 73:15 – 83:26 | Fed. R. Evid. 802; 804(b)(1) |
| David Marion Johnson (January 28, 1971: Probable Cause Hearing, Volume 1) | 84:19 – 97:20 | Fed. R. Evid. 802; 804(b)(1) |
| David Marion Johnson (January 29, 1971: Probable Cause Hearing, Volume 2) | 100:13 – 148:2 | Fed. R. Evid. 802; 804(b)(1) |
| Giles Lacy Scoggins (January 29, 1971: | 149:11 – 200:26 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Probable Cause Hearing, Volume 2) | | |
| Giles Lacey Scoggins (January 29, 1971: Probable Cause Hearing, Volume 3) | 201:1 – 272:3 | Fed. R. Evid. 802; 804(b)(1) |
| Art Camacho (January 29, 1971: Probable Cause Hearing, Volume 3) | 273:1 – 289:11 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 1, 1971: Probable Cause Hearing, Volume 4) | 292:8 – 402:1 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 2, 1971: Probable Cause Hearing, Volume 5) | 403:10 – 569:4 | Fed. R. Evid. 802; 804(b)(1) |
| Lewis Dwight Adams (February 4, 1971: Probable Cause Hearing, Volume 6) | 571:8 – 614:10 | Fed. R. Evid. 802; 804(b)(1) |
| Milan Paul Murchek (February 4, 1971: Probable Cause Hearing, Volume 6) | 615:18 – 629:25 | Fed. R. Evid. 802; 804(b)(1) |
| Henry Gassaway (February 4, 1971: Probable Cause Hearing, Volume 6) | 630:19 – 651:9 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
| Dave N. Smith (February 4, 1971: Probable Cause Hearing, Volume 6) | 652:7 – 665:18 | Fed. R. Evid. 802; 804(b)(1) |
| Dave N. Smith (February 4, 1971: Probable Cause Hearing, Volume 7) | 666:2 – 678:20 | Fed. R. Evid. 802; 804(b)(1) |
| Paul Charters (February 4, 1971: Probable Cause Hearing, Volume 7) | 679:16 – 696:11 | Fed. R. Evid. 802; 804(b)(1) |
| Rex Angeley (February 4, 1971: Probable Cause Hearing, Volume 7) | 697:7 – 707:8 | Fed. R. Evid. 802; 804(b)(1) |
| Douglas Scoopmire (February 4, 1971: Probable Cause Hearing, Volume 7) | 708:3 – 715:13 | Fed. R. Evid. 802; 804(b)(1) |
| Gerald Dean Soop (February 4, 1971: Probable Cause Hearing, Volume 7) | 716:3 – 733:10 | Fed. R. Evid. 802; 804(b)(1) |
| Beryl L. Kohlman (February 4, 1971: Probable Cause Hearing, Volume 7) | 734:1 – 742:25 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene V. Rossetti (February 4, 1971: Probable Cause Hearing, Volume 7) | 743:11 – 758:15 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Mary Mills (February 4, 1971: Probable Cause Hearing, Volume 7) | 759:3 – 765:2 | Fed. R. Evid. 802; 804(b)(1) |
| James Marcus Holsinger (February 5, 1971: Probable Cause Hearing, Volume 8) | 767:19 – 793:6 | Fed. R. Evid. 802; 804(b)(1) |
| Charles Arthur McGee (February 5, 1971: Probable Cause Hearing, Volume 8) | 793:25 – 817:1 | Fed. R. Evid. 802; 804(b)(1) |
| Lewis Dwight Adams (February 8, 1971: Probable Cause Hearing, Volume 9) | 819:9 – 837:21 | Fed. R. Evid. 802; 804(b)(1) |
| Henry Gassaway (February 8, 1971: Probable Cause Hearing, Volume 9) | 838:11 – 863:4 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene V. Rossetti (February 8, 1971: Probable Cause Hearing, Volume 9) | 863:14 – 875:20 | Fed. R. Evid. 802; 804(b)(1) |
| Rex K. Angeley (February 8, 1971: Probable Cause Hearing, Volume 9) | 876:12 – 890:7 | Fed. R. Evid. 802; 804(b)(1) |
| Dave N. Smith (February 8, 1971: Probable Cause Hearing, Volume 9) | 890:16 – 906:8 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Oscar George Montano (February 8, 1971: Probable Cause Hearing, Volume 9) | 907:11 – 925:4 | Fed. R. Evid. 802; 804(b)(1) |
| Ruth Bradley McEvoy (February 8, 1971: Probable Cause Hearing, Volume 9) | 926:3 – 927:4 | Fed. R. Evid. 802; 804(b)(1) |
| Claus Bergman (February 8, 1971: Probable Cause Hearing, Volume 9) | 928:10 – 953:6 | Fed. R. Evid. 802; 804(b)(1) |
| William F. Briamonte (February 9, 1971: Probable Cause Hearing, Volume 10) | 954:14 – 975:21 | Fed. R. Evid. 802; 804(b)(1) |
| Lynden D. Gilmore (February 9, 1971: Probable Cause Hearing, Volume 10) | 976:14 – 1098:23 | Fed. R. Evid. 802; 804(b)(1) |
| Gregory Walter Chmara (February 10, 1971: Probable Cause Hearing, Volume 11) | 1101:16 – 1146:25 | Fed. R. Evid. 802; 804(b)(1) |
| Mary Mills (February 10, 1971: Probable Cause Hearing, Volume 11) | 1147:13 – 1148:18 | Fed. R. Evid. 802; 804(b)(1) |
| Robert B. Slagel (February 10, 1971: | 1149:3 – 1158:10 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Probable Cause Hearing, Volume 11) | | |
| John E. Williams (June 17, 18 and 23, 1971: Preliminary Hearing, Volume 1) | 21:15 – 35:22 | Fed. R. Evid. 802; 804(b)(1) |
| Albert M. Felix (June 17, 18 and 23, 1971: Preliminary Hearing, Volume 1) | 37:14 – 52:12 | Fed. R. Evid. 802; 804(b)(1) |
| CY Holmes (June 17, 18 and 23, 1971: Preliminary Hearing, Volume 1) | 55:17 – 121:24 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (June 23 and 24, 1971: Preliminary Hearing, Volume 2) | 122:1 – 196:14 | Fed. R. Evid. 802; 804(b)(1) |
| Rodney Dingle (June 23 and 24, 1971: Preliminary Hearing, Volume 2) | 197:26 – 213:26 | Fed. R. Evid. 802; 804(b)(1) |
| Angelo Joseph Palm (June 24, 1971: Preliminary Hearing, Volume 3) | 215:8 – 232:6 | Fed. R. Evid. 802; 804(b)(1) |
| David N. Smith (June 24, 1971: Preliminary Hearing, Volume 3) | 236:5 – 244:6 | Fed. R. Evid. 802; 804(b)(1) |
| David Marion Johnson (June 24, 1971: Preliminary Hearing, Volume 3) | 245:3 – 273:20 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Giles Lacy Scoggins (June 24, 1971: Preliminary Hearing, Volume 3) | 276:22 – 317:1 | Fed. R. Evid. 802; 804(b)(1) |
| Glenn Idail (June 29, 1971: Preliminary Hearing, Volume 4) | 322:24 – 347:6 | Fed. R. Evid. 802; 804(b)(1) |
| Louis Dwight Adams (June 29, 1971: Preliminary Hearing, Volume 4) | 349:26 – 392:2 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene Rossetti (June 29, 1971: Preliminary Hearing, Volume 4) | 394:19 – 409:15 | Fed. R. Evid. 802; 804(b)(1) |
| Milan Murchek (June 29 and 30, 1971 and July 1, 1971: Preliminary Hearing, Volume 5) | 413:8 – 424:14 | Fed. R. Evid. 802; 804(b)(1) |
| Henry Gassaway (June 29 and 30, 1971 and July 1, 1971: Preliminary Hearing, Volume 5) | 425:13 – 446:26 | Fed. R. Evid. 802; 804(b)(1) |
| Walter Seaman (June 29 and 30, 1971 and July 1, 1971: Preliminary Hearing, Volume 5) | 473:3 – 516:11 | Fed. R. Evid. 802; 804(b)(1) |
| Walter Seaman (July 2, 6 and 8 1971: Preliminary Hearing, Volume 6) | 517:5 – 524:15 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Joe B. Welborn (July 2, 6 and 8 1971: Preliminary Hearing, Volume 6) | 535:23 – 553:20 | Fed. R. Evid. 802; 804(b)(1) |
| Patrick McGuire (October 15, 1971: Voluntariness Hearing, Volume 1) | 20:19 – 34:4 | Fed. R. Evid. 802; 804(b)(1) |
| Lewis Dwight Adams (October 15, 1971: Voluntariness Hearing, Volume 1) | 35:9 – 138:5 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene Rossetti (October 15, 1971: Voluntariness Hearing, Volume 1) | 139:19 – 170:1 | Fed. R. Evid. 802; 804(b)(1) |
| Henry Gassaway (October 15, 1971: Voluntariness Hearing, Volume 1) | 171:1 – 245:7 | Fed. R. Evid. 802; 804(b)(1) |
| Rex Angeley (October 15, 1971: Voluntariness Hearing, Volume 2) | 247:7 – 286:21 | Fed. R. Evid. 802; 804(b)(1) |
| Paul Charters (October 15, 1971: Voluntariness Hearing, Volume 2) | 296:19 – 334:19 | Fed. R. Evid. 802; 804(b)(1) |
| Kenneth Krieger (October 15, 1971: Voluntariness Hearing, Volume 2) | 339:10 – 377:12 | Fed. R. Evid. 802; 804(b)(1) |
| Paul Charters (October 15, 1971: Voluntariness Hearing, Volume 2) | 378:5 – 383:18 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Linda Weiss (October 15, 1971: Voluntariness Hearing, Volume 2) | 383:24 – 398:8 | Fed. R. Evid. 802; 804(b)(1) |
| Paul Charters (October 15, 1971: Voluntariness Hearing, Volume 2) | 398:14 – 413:11 | Fed. R. Evid. 802; 804(b)(1) |
| Kenneth Krieger (October 15, 1971: Voluntariness Hearing, Volume 2) | 414:13 – 429:25 | Fed. R. Evid. 802; 804(b)(1) |
| Alfred Lingham (October 15, 1971: Voluntariness Hearing, Volume 2) | 430:15 – 452:15 | Fed. R. Evid. 802; 804(b)(1) |
| Gary Carstensen (October 15, 1971: Voluntariness Hearing, Volume 2) | 452:21 – 474:11 | Fed. R. Evid. 802; 804(b)(1) |
| William Shoemaker (October 15, 1971: Voluntariness Hearing, Volume 2) | 475:26 – 491:20 | Fed. R. Evid. 802; 804(b)(1) |
| George William Biggs (October 15, 1971: Voluntariness Hearing, Volume 2) | 494:18 – 498:15 | Fed. R. Evid. 802; 804(b)(1) |
| Armando Garcia (October 26, 1971: Voluntariness Hearing) | 9:20 – 35:6 | Fed. R. Evid. 802; 804(b)(1) |
| Edward N. Matthews (January 10, 1972: | 16:26 – 39:14 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Continued Voluntariness Hearing, Volume 1) | | |
| Paul J. Charters (January 10, 1972: Continued Voluntariness Hearing, Volume 1) | 46:16 – 74:12 | Fed. R. Evid. 802; 804(b)(1) |
| Mary Mills (January 10, 1972: Continued Voluntariness Hearing, Volume 1) | 74:25 – 100:26 | Fed. R. Evid. 802; 804(b)(1) |
| Louis C. Taylor (January 10, 1972: Continued Voluntariness Hearing, Volume 1) | 110:2 – 115:11 | Fed. R. Evid. 802; 804(b)(1) |
| Richard Jospeh Gonzales (January 10, 1972: Continued Voluntariness Hearing, Volume 2) | 119:13 – 154:24 | Fed. R. Evid. 802; 804(b)(1) |
| Claudine Neal (January 10, 1972: Continued Voluntariness Hearing, Volume 2) | 155:14 – 175:4 | Fed. R. Evid. 802; 804(b)(1) |
| Louis C. Taylor (January 10, 1972: Continued Voluntariness Hearing, Volume 2) | 175:19 – 245:7 | Fed. R. Evid. 802; 804(b)(1) |
| Louis C. Taylor (January 11, 1972: Continued | 2:11 – 51:18 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Voluntariness Hearing, Volume 1) | | |
| Louis Dwight Adams (January 11, 1972: Continued Voluntariness Hearing, Volume 1) | 118:2 – 127:23 | Fed. R. Evid. 802; 804(b)(1) |
| Henry L. Gassaway (January 11, 1972: Continued Voluntariness Hearing, Volume 1) | 129:18 – 146:12 | Fed. R. Evid. 802; 804(b)(1) |
| Milan Paul Murchek (January 11, 1972: Continued Voluntariness Hearing, Volume 1) | 147:10 – 173:22 | Fed. R. Evid. 802; 804(b)(1) |
| Rex Angeley (January 11, 1972: Continued Voluntariness Hearing, Volume 1) | 174:20 – 184:16 | Fed. R. Evid. 802; 804(b)(1) |
| Rex Angeley (January 11, 1972: Continued Voluntariness Hearing, Volume 3) | 185:10 – 207:7 | Fed. R. Evid. 802; 804(b)(1) |
| Milan Paul Murchek (January 11, 1972: Continued Voluntariness Hearing, Volume 3) | 207:26 – 215:8 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene Rossetti (January 11, 1972: Continued | 216:7 – 227:8 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
| Voluntariness Hearing, Volume 3) | | |
| Milan Paul Murchek (January 11, 1972: Continued Voluntariness Hearing, Volume 3) | 285:9 – 300:19 | Fed. R. Evid. 802; 804(b)(1) |
| Josefina Bustamonte (February 9, 1972: Jury Trial, Volume 8) | 102:3 – 137:137:10 | Fed. R. Evid. 802; 804(b)(1) |
| Patricia Maria de Los Angeles Frios Bustamonte (February 10, 1972: Jury Trial, Volume 9) | 3:7 – 56:18 | Fed. R. Evid. 802; 804(b)(1) |
| Phillip L. Judson (February 10, 1972: Jury Trial, Volume 9) | 59:3 - 108:19 | Fed. R. Evid. 802; 804(b)(1) |
| Richard J. MacLaury (February 10, 1972: Jury Trial, Volume 9) | 111:7 – 159:1 | Fed. R. Evid. 802; 804(b)(1) |
| Helen Irene Bailey (February 10, 1972: Jury Trial, Volume 9) | 160:7 – 182:22 | Fed. R. Evid. 802; 804(b)(1) |
| Irving Kasloff (February 11, 1972: Jury Trial, Volume 10) | 3:12 – 49:4 | Fed. R. Evid. 802; 804(b)(1) |
| Arnulfo Riesgo (February 11, 1972: Jury Trial, Volume 10) | 49:24 – 120:24 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
| Emory Forkum (February 11, 1972: Jury Trial, Volume 10) | 121:11 – 175:24 | Fed. R. Evid. 802; 804(b)(1) |
| Janet Ilene Lerner (February 11, 1972: Jury Trial, Volume 10) | 178:7 – 216:4 | Fed. R. Evid. 802; 804(b)(1) |
| Robert Edgar Cooper (February 12, 1972: Jury Trial, Volume 11) | 3:13 – 96:26 | Fed. R. Evid. 802; 804(b)(1) |
| William F. Ricketts, Jr. (February 12, 1972: Jury Trial, Volume 11) | 102:23 – 161:12 | Fed. R. Evid. 802; 804(b)(1) |
| Richard Lopez Delahanty (February 14, 1972: Jury Trial, Volume 12) | 2:26 – 129:9 | Fed. R. Evid. 802; 804(b)(1) |
| Angel J. Carranza (February 15, 1972: Jury Trial, Volume 13) | 4:7 – 91:26 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 15, 1972: Jury Trial, Volume 13) | 94:3 – 171:23 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 16, 1972: Jury Trial, Volume 14) | 3:3 – 157:19 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 17, 1972: Jury Trial, Volume 15) | 3:3 – 177:2 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Cy Holmes (February 18, 1972: Jury Trial, Volume 16) | 3:9 – 157:18 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 19, 1972: Jury Trial, Volume 17) | 3:26 – 109:22 | Fed. R. Evid. 802; 804(b)(1) |
| CY Holmes (February 21, 1972: Jury Trial, Volume 18) | 4:12 – 170:7 | Fed. R. Evid. 802; 804(b)(1) |
| Cy Holmes (February 22, 1972: Jury Trial, Volume 19) | 4:24 – 34:22 | Fed. R. Evid. 802; 804(b)(1) |
| Frank G. Armenta (February 22, 1972: Jury Trial, Volume 19) | 39:17 – 56:21 | Fed. R. Evid. 802; 804(b)(1) |
| Rodney Lee Dingle (February 22, 1972: Jury Trial, Volume 19) | 57:7 – 96:12 | Fed. R. Evid. 802; 804(b)(1) |
| David G. Dingledine (February 22, 1972: Jury Trial, Volume 19) | 98:17 - 187:11 | Fed. R. Evid. 802; 804(b)(1) |
| Deposition of David Johnson (February 23, 1972: Jury Trial, Volume 20) | 11:18 – 72:22 | Fed. R. Evid. 802; 804(b)(1) |
| Giles Lacey Scoggins (February 23, 1972: Jury Trial, Volume 20) | 73:7 – 217:6 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Louis Dwight Adams (February 24, 1972: Jury Trial, Volume 21) | 5:18 – 92:2 | Fed. R. Evid. 802; 804(b)(1) |
| Eugene Vincent Rossetti (February 24, 1972: Jury Trial, Volume 21) | 92:14 – 113:25 | Fed. R. Evid. 802; 804(b)(1) |
| Henry L. Gassaway (February 24, 1972: Jury Trial, Volume 21) | 114:12 – 183:11 | Fed. R. Evid. 802; 804(b)(1) |
| Rex Angeley (February 25, 1972: Jury Trial, Volume 22) | 3:18 – 48:25 | Fed. R. Evid. 802; 804(b)(1) |
| James Micus Holsinger (February 25, 1972: Jury Trial, Volume 22) | 49:21 – 92:18 | Fed. R. Evid. 802; 804(b)(1) |
| David Smith (February 25, 1972: Jury Trial, Volume 22) | 93:3 – 127:24 | Fed. R. Evid. 802; 804(b)(1) |
| Bruce Foy Wallmark (February 25, 1972: Jury Trial, Volume 22) | 140:3 – 188:18 | Fed. R. Evid. 802; 804(b)(1) |
| Larry Gene Kern (February 26, 1972: Jury Trial, Volume 23) | 20:9 – 40:9 | Fed. R. Evid. 802; 804(b)(1) |
| Allyne Turner Nieme (February 26, 1972: Jury Trial, Volume 23) | 40:25 – 59:25 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---------|-----------|------------|
| Lynden Gilmore (February 26, 1972: Jury Trial, Volume 23) | 62:7 – 71:1 | Fed. R. Evid. 802; 804(b)(1) |
| William Jerome Martin (February 26, 1972: Jury Trial, Volume 23) | 71:20 – 77:2 | Fed. R. Evid. 802; 804(b)(1) |
| Bruce Foy Wallmark (February 28, 1972: Jury Trial, Volume 24) | 3:3 – 83:18 | Fed. R. Evid. 802; 804(b)(1) |
| Arzula Tatum (February 28, 1972: Jury Trial, Volume 24) | 85:3 – 97:17 | Fed. R. Evid. 802; 804(b)(1) |
| Willie Wheeler (February 28, 1972: Jury Trial, Volume 24) | 98:3 – 104:6 | Fed. R. Evid. 802; 804(b)(1) |
| Joyce Marie Horn (February 28, 1972: Jury Trial, Volume 24) | 106:3 – 124:4 | Fed. R. Evid. 802; 804(b)(1) |
| Christine Bradley (February 28, 1972: Jury Trial, Volume 24) | 124:13 – 133:15 | Fed. R. Evid. 802; 804(b)(1) |
| Lawrence Frank Armenta (February 29, 1972: Jury Trial, Volume 25) | 3:17 – 74:26 | Fed. R. Evid. 802; 804(b)(1) |
| Angelo Joseph Palm (February 29, 1972: Jury Trial, Volume 25) | 75:22 – 134:21 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Glen Idail (February 29, 1972: Jury Trial, Volume 25) | 135:10 – 158:25 | Fed. R. Evid. 802; 804(b)(1) |
| Walter R. Seaman (February 29, 1972: Jury Trial, Volume 25) | 159:16 – 189:5 | Fed. R. Evid. 802; 804(b)(1) |
| Forrest James William (February 29, 1972: Jury Trial, Volume 25) | 190:14 – 199:12 | Fed. R. Evid. 802; 804(b)(1) |
| Stephen Daniel Serna (February 29, 1972: Jury Trial, Volume 25) | 199:22 – 220:25 | Fed. R. Evid. 802; 804(b)(1) |
| Robert James Jackson (March 1, 1972: Jury Trial, Volume 26) | 6:10 – 30:7 | Fed. R. Evid. 802; 804(b)(1) |
| Grace Hope Ballesteros (March 1, 1972: Jury Trial, Volume 26) | 31:20 – 93:23 | Fed. R. Evid. 802; 804(b)(1) |
| Willis Fry (March 1, 1972: Jury Trial, Volume 26) | 95:7 – 141:11 | Fed. R. Evid. 802; 804(b)(1) |
| Ronald William Geuder (March 1, 1972: Jury Trial, Volume 26) | 142:8 – 172:2 | Fed. R. Evid. 802; 804(b)(1) |
| Leroy Walter Brockbank (March 1, 1972: Jury Trial, Volume 26) | 172:11 – 209:5 | Fed. R. Evid. 802; 804(b)(1) |
| Leroy Walter Brockbank (March 2, 1972: Jury Trial, Volume 27) | 3:21 – 23:20 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Mario Valnzuela (March 2, 1972: Jury Trial, Volume 27) | 24:3 – 77:19 | Fed. R. Evid. 802; 804(b)(1) |
| William Carter (March 2, 1972: Jury Trial, Volume 27) | 78:8 – 138:10 | Fed. R. Evid. 802; 804(b)(1) |
| David Preston Spencer (March 2, 1972: Jury Trial, Volume 27) | 138:18 – 160:17 | Fed. R. Evid. 802; 804(b)(1) |
| Michael R. Farley (March 2, 1972: Jury Trial, Volume 27) | 161:3 – 208:14 | Fed. R. Evid. 802; 804(b)(1) |
| Ernest Pain, Jr. (March 2, 1972: Jury Trial, Volume 27) | 208:24 – 233:8 | Fed. R. Evid. 802; 804(b)(1) |
| William Lee Fulton (March 3, 1972: Jury Trial, Volume 28) | 3:21 – 50:24 | Fed. R. Evid. 802; 804(b)(1) |
| Gregory Walter Chmara (March 3, 1972: Jury Trial, Volume 28) | 51:17 – 152:3 | Fed. R. Evid. 802; 804(b)(1) |
| Joe L. Bruggeman (March 3, 1972: Jury Trial, Volume 28) | 152:20 – 169:14 | Fed. R. Evid. 802; 804(b)(1) |
| Richard S. Darling (March 3, 1972: Jury Trial, Volume 28) | 169:25 – 221:11 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Robert B. Slagel (March 4, 1972: Jury Trial, Volume 29) | 5:15 – 10:17 | Fed. R. Evid. 802; 804(b)(1) |
| Kenneth K. Krieger (March 4, 1972: Jury Trial, Volume 29) | 12:3 – 47:24 | Fed. R. Evid. 802; 804(b)(1) |
| Phillip A. Rankin (March 4, 1972: Jury Trial, Volume 29) | 48:7 – 105:15 | Fed. R. Evid. 802; 804(b)(1) |
| Milan Murchek (March 4, 1972: Jury Trial, Volume 29) | 106:11 – 135:11 | Fed. R. Evid. 802; 804(b)(1) |
| Michael R. Farley (March 6, 1972: Jury Trial, Volume 30) | 4:8 – 53:18 | Fed. R. Evid. 802; 804(b)(1) |
| Steven J. Karp (March 6, 1972: Jury Trial, Volume 30) | 54:3 – 86:17 | Fed. R. Evid. 802; 804(b)(1) |
| George McEvoy (March 6, 1972: Jury Trial, Volume 30) | 87:8 – 131:11 | Fed. R. Evid. 802; 804(b)(1) |
| Harold Thomas Delhaye (March 6, 1972: Jury Trial, Volume 30) | 133:3 – 158:26 | Fed. R. Evid. 802; 804(b)(1) |
| Gary Aegerter (March 6, 1972: Jury Trial, Volume 30) | 159:8 – 171:26 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Louis C. Taylor (March 6, 1972: Jury Trial, Volume 30) | 180:23 – 248:23 | Fed. R. Evid. 802; 804(b)(1) |
| Louis C. Taylor (March 7, 1972: Jury Trial, Volume 31) | 3:15 – 181:26 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall Smyth (March 8, 1972: Jury Trial, Volume 32) | 2:23 – 214:15 | Fed. R. Evid. 802; 804(b)(1) |
| Dora Perella de Ojeda (March 9, 1972: Jury Trial, Volume 33) | 17:25 – 69:1 | Fed. R. Evid. 802; 804(b)(1) |
| Dora Laura Ojeda de Antillion (March 9, 1972: Jury Trial, Volume 33) | 69:24 – 82:15 | Fed. R. Evid. 802; 804(b)(1) |
| Jorge Manuel Flores (March 9, 1972: Jury Trial, Volume 33) | 83:3 – 99:11 | Fed. R. Evid. 802; 804(b)(1) |
| Jose Gutierrez (March 9, 1972: Jury Trial, Volume 33) | 100:5 – 123:4 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall Smyth (March 9, 1972: Jury Trial, Volume 33) | 140:15 – 155:19 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall Smyth (March 10, 1972: Jury Trial, Volume 34) | 2:25 – 149:12 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Marshall Smyth (March 11, 1972: Jury Trial, Volume 35) | 3:3 – 141:7 | Fed. R. Evid. 802; 804(b)(1) |
| Norma Elena Lopez de Coker (March 13, 1972: Jury Trial, Volume 36) | 3:23 – 34:26 | Fed. R. Evid. 802; 804(b)(1) |
| Edward R. Coker Valenzuela (March 13, 1972: Jury Trial, Volume 36) | 36:10 – 70:9 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall Smyth (March 13, 1972: Jury Trial, Volume 36) | 71:7 – 158:13 | Fed. R. Evid. 802; 804(b)(1) |
| Marshall Smyth (March 14, 1972: Jury Trial, Volume 37) | 2:25 – 122:15 | Fed. R. Evid. 802; 804(b)(1) |
| Gregory Walter Chmara (March 14, 1972: Jury Trial, Volume 37) | 122:23 - 132:15 | Fed. R. Evid. 802; 804(b)(1) |
| John David Carter (March 14, 1972: Jury Trial, Volume 37) | 147:3 – 166:13 | Fed. R. Evid. 802; 804(b)(1) |
| Michael David Jones (March 14, 1972: Jury Trial, Volume 37) | 166:21 – 205:25 | Fed. R. Evid. 802; 804(b)(1) |
| Robert Jackson (March 15, 1972: Jury Trial, Volume 38) | 4:22 – 63:14 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Tadeo Iruretaguyena Caranza (March 15, 1972: Jury Trial, Volume 38) | 64:3 – 86:26 | Fed. R. Evid. 802; 804(b)(1) |
| Anna de Aguayo (March 15, 1972: Jury Trial, Volume 38) | 89:3 – 119:4 | Fed. R. Evid. 802; 804(b)(1) |
| Warren F. Allison (March 15, 1972: Jury Trial, Volume 38) | 121:3 – 140:10 | Fed. R. Evid. 802; 804(b)(1) |
| William Briamonte (March 15, 1972: Jury Trial, Volume 38) | 141:3 – 174:8 | Fed. R. Evid. 802; 804(b)(1) |
| Steven Louis Graving (March 15, 1972: Jury Trial, Volume 38) | 174:17 – 187:26 | Fed. R. Evid. 802; 804(b)(1) |
| Steve Graving (March 16, 1972: Jury Trial, Volume 39) | 8:14 – 32:15 | Fed. R. Evid. 802; 804(b)(1) |
| Robert Frakes (March 16, 1972: Jury Trial, Volume 39) | 32:24 – 46:5 | Fed. R. Evid. 802; 804(b)(1) |
| Louis Leon (March 16, 1972: Jury Trial, Volume 39) | 46:15 – 57:6 | Fed. R. Evid. 802; 804(b)(1) |
| Alfred Lingham (March 16, 1972: Jury Trial, Volume 39) | 57:21 – 113:15 | Fed. R. Evid. 802; 804(b)(1) |

| Witness | Page:Line | Objections |
|---|---|---|
| Clarence John Jacome (March 16, 1972: Jury Trial, Volume 39) | 113:25 – 153:3 | Fed. R. Evid. 802; 804(b)(1) |
| Ernest Abbott (March 16, 1972: Jury Trial, Volume 39) | 153:12 – 191:9 | Fed. R. Evid. 802; 804(b)(1) |
| Freda Lampton (March 16, 1972: Jury Trial, Volume 39) | 192:13 – 244:25 | Fed. R. Evid. 802; 804(b)(1) |
| Errol D. Barclay (March 17, 1972: Jury Trial, Volume 40) | 2:26 – 9:1 | Fed. R. Evid. 802; 804(b)(1) |
| Herbert E. Bay (March 17, 1972: Jury Trial, Volume 40) | 10:18 – 79:11 | Fed. R. Evid. 802; 804(b)(1) |
| Louis C. Taylor (March 17, 1972: Jury Trial, Volume 40) | 115:21 – 120:6 | Fed. R. Evid. 802; 804(b)(1) |
| Claus Bergman (March 18, 1972: Jury Trial, Volume 41) | 3:3 – 49:25 | Fed. R. Evid. 802; 804(b)(1) |
| Robert Jackson (May 18, 1972: Hearing on Motion for New Trial) | 69:19 – 115:22 | Fed. R. Evid. 802; 804(b)(1) |
| Howard Kashman (May 18, 1972: Hearing on Motion for New Trial) | 144:20 – 151:24 | Fed. R. Evid. 802; 804(b)(1) |

**Defendant City of Tucson**[20]

| Witness | Page:Line | Objections |
|---|---|---|
| Howard Kashman (if he does not appear live) | 5:1-6:11 | Plaintiff incorporates the objections made to the County's Designations of Howard Kashman's deposition. Furthermore, Mr. Kashman will be available to testify at the trial so no part of his deposition should be offered at trial. |
| | 9:16-16:11 | |
| | 16:17-18 | |
| | 28:10-17 | |
| | 56:6-11-22 | |
| | 56:22-57:7 | |
| | 57:22-58:18 | |
| | 66:17-67:23 | |
| | 68:12-70:24 | |
| | 70:25-73:4 | |
| | 75:12-79:12 | |
| | 79:19-85:4 | |
| | 85:21-90:7 | |
| | 90:12-95:7 | |
| | 95:11-98:12 | |
| | 107:13-108:13 | |
| | 113:15-114:2-6 | |
| | 139:1-142:4 | |
| | 142:9-13 | |
| | 145:17-25 | |
| | 146:16-19 | |
| | 147:9-14 | |
| | 147:19-149:16 | |

---

[20] Defendant Pima County adopts Defendant City of Tucson's designations.

| | | |
|---|---|---|
| | 150:8-19 | |
| | 151:20-152:23 | |
| | 164:9-19<br>165:13-24 | |
| | 166:24-167:2 | |
| | 167:6-11 | |
| | 167:13-168:24 | |
| | 175:17-177:10 | |
| | 179:14-15 | |
| | 180:3-7 | |
| | 180:12-182:10 | |
| Lawrence Hust (if he is unavailable to appear live) | This will be supplemented. | |

## H. MOTIONS *IN LIMINE* AND *DAUBERT* MOTIONS

Motions *in limine* and *Daubert* motions shall be filed separately in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

## I.  LIST OF ANY PENDING MOTIONS

Defendants' Motion to Transfer Venue.

## J.  ESTIMATED LENGTH OF TRIAL

**90**   minutes for Plaintiff's opening statements

**90**   minutes for Defendants' opening statements

**50**   hours for Plaintiff's case

**40**   hours for Defendants' case

**6.5**  hours for rebuttal

**90**   minutes for Plaintiff's closing arguments

**90**   minutes for Defendants' closing arguments

## K. FOR A BENCH TRIAL

Not applicable.

**L.  FOR A JURY TRIAL**

A stipulated description of the case, proposed jury questionnaire, proposed *voir dire* questions, proposed jury instructions, and proposed forms of verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**M. CERTIFICATION**

1.      All discovery has been completed.

2.      The identity of each witness has been disclosed to opposing counsel.

3.      Each exhibit listed herein: (a) is in existence; (b) is numbered, and (c) has been disclosed and shown to opposing counsel.

4.      The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

5.      The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**N.  ADOPTION**

The Court may adopt this Proposed Joint Final Pretrial Order at the Final Pre-Trial Conference or subsequent hearing.

DATED March 6, 2024.

1

**APPROVED AS TO FORM AND CONTENT**

2

MILLER, PITT, FELDMAN &                    STRUCK LOVE BOJANOWSKI &
McANALLY, P.C.                             ACEDO, PLC

3

4

*/s/ Stanley G. Feldman____*               */s/Nicholas D. Acedo*
Stanley G. Feldman                         Daniel P. Struck

5

Peter Timoleon Limperis                    Nicholas D. Acedo
Timothy P. Stackhouse                      Jacob B. Lee

6

7

THE LEADER LAW FIRM, P.C.                  CITY OF TUCSON

8

*/s/ John P. Leader___*                    */s/ Michelle Saavedra*
John P. Leader                             Michelle Saavedra

9

Dennis McLaughlin

10

I hereby certify that on March 6, 2024, I electronically transmitted the attached

11

document to the Clerk's Office using the CM/ECR System for filing and transmittal of a

12

Notice of Electronic Filing to the following CM/ECR registrants:

13

Daniel P. Struck

14

Nicholas D. Acedo
Jacob B. Lee

15

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

16

3100 West Ray Road, Suite 300
Chandler, Arizona 85226

17

Phone: (480) 420-1600
dstruck@strucklove.com

18

nacedo@strucklove.com
*Attorneys for Defendant Pima County*

19

20

Michelle Saavedra
Dennis McLaughlin

21

Principal Assistant City Attorneys for
Michael G. Rankin

22

CITY OF TUCSON
PO Box 27210

23

Tucson, AZ 85726-7210
Dennis.McLaughlin@tucsonaz.gov

24

Michelle.Saavedra@tucsonaz.gov
*Attorneys for Defendant City of Tucson*

25