WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Nina Alley, | No. CV-15-00152-TUC-RM |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendants. | |

Pending before the Court are the parties' Motions in Limine.  (Docs. 911, 916, 938, 939, 940, 941, 942, 943, 944, 945, 946, 947, 948, 951, 952, 954, 956, 957, 958, 960, 962, 963, 965, 967, 968, 969, 970, 971, 972, 973, 974, 975, 976).[1]  Defendants Pima County and the City of Tucson join in one another's Motions (Docs. 978, 991) and in one another's Responses to Plaintiff's Motions (Docs. 1041, 1065).

## I.    Background

On December 19-20, 1970, a fire killed 28 people at the Pioneer Hotel in downtown Tucson, Arizona.  (Doc. 343 at ¶ 56; Doc. 365 at ¶ 56; Doc. 374 at ¶ 56.)  On March 21, 1972, a jury convicted former Plaintiff Louis Taylor[2] of 28 counts of murder arising from the deaths.  (Doc. 340-9 at 10-12.)  Taylor was sentenced to life imprisonment.  (Doc. 340-9 at 36-37.)  In 2012, Taylor filed a Petition for Post-Conviction Relief, and the Pima

---

[1] Also pending are Motions in Limine that were filed under seal.  (Docs. 898, 982, 983, 984.)  The Court will address those Motions in a separate, sealed Order.

[2] Taylor's Guardian and Conservator, Nina Alley, has been substituted in place of Taylor as the named plaintiff in this action.  (Doc. 624.)  The Court uses the term "Plaintiff" herein to refer interchangeably to Taylor.

County Attorney's Office ("PCAO") began a review of his case.  (Doc. 348-3; Doc. 341-4 at 2-15; *see also* Doc. 335 at ¶¶ 624, 631, 642; Doc. 367 at ¶¶ 624, 631, 642.)  Following the review, the Pima County Attorney offered Taylor a plea by which Taylor received a time-served sentence and was released from prison in exchange for pleading no-contest to the original 28 counts of murder.  (Doc. 348-10; Doc. 348-11.)  After his release, Plaintiff filed the above-entitled civil action, raising claims under 42 U.S.C. § 1983.  (Doc. 1.)

On March 16, 2017, this Court ruled that—due to his outstanding 2013 convictions—Plaintiff is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), from premising his § 1983 claims "on the alleged constitutional injuries of being wrongfully charged, convicted, and imprisoned" and that Plaintiff is precluded from seeking incarceration-based compensatory damages.  (Doc. 63 at 10-11, 19-20.)  The Court further held that the interplay between *Heck* and the statute of limitations sharply limits Plaintiff's claims.  (*Id.* at 13-17.)  Specifically, the Court found that the statute of limitations bars Plaintiff from premising his claims on allegations that he was arrested without probable cause or that he was unlawfully interrogated.  (*Id.* at 11-12.)  The Court found that neither *Heck* nor the statute of limitations bars Plaintiff from premising his claims on allegations that his "rights to due process and a constitutionally fair, racially unbiased trial were violated during his original trial proceedings by the non-disclosure of the Truesdail Report, the hiring of an expert who believed Plaintiff was guilty because 'black boys' are more likely to start fires, and the presentation of false testimony from two 'jailhouse snitches.'"  (*Id.* at 16.)  On interlocutory appeal, the Ninth Circuit affirmed this Court's finding that *Heck* bars Plaintiff from seeking incarceration-related damages, holding that "[a] plaintiff in a § 1983 action may not recover incarceration-related damages for any period of incarceration supported by a valid, unchallenged conviction and sentence." *Taylor v. Cnty. of Pima*, 913 F.3d 930, 936 (9th Cir. 2019).

Plaintiff then moved for leave to amend his operative complaint to include a request for a declaratory judgment expunging his 2013 convictions "as unconstitutional, and thus invalid." (Doc. 103; *see also* Doc. 169 at 26.)  The Court granted Plaintiff leave to file the

now-operative Third Amended Complaint, determining that "Plaintiff's factual allegations concerning his 2013 post-conviction proceedings are sufficient to raise an inference that this case may be one of the 'unusual or extreme cases' in which expungement" is appropriate under *Shipp v. Todd*, 568 F.2d 133 (9th Cir. 1978) (per curiam). (Doc. 167 at 8.) The Court later granted the City of Tucson's Motion to Dismiss Counts Six and Seven of the TAC but denied Pima County's Motion to Dismiss the TAC's request for a declaratory judgment. (Doc. 227.)

On January 19, 2024, this Court resolved the parties' summary judgment motions, dismissing Count Two of the Third Amended Complaint and ruling that Counts One, Three, Four, and Five remain at issue in this case but cannot be premised on underlying violations of *Brady v. Maryland*, 373 U.S. 83 (1963), arising from a failure to disclose evidence of other suspects or a failure to disclose exculpatory testimony from Tucson Police Department ("TPD") Officer Claus Bergman. (Doc. 869.) The Court also clarified that Plaintiff cannot obtain damages based on the alleged unlawfulness of his arrest and interrogation. (*Id.*) The Court denied summary judgment on Plaintiff's expungement claim and found that the *Heck* bar will be lifted if the jury finds certain facts rendering expungement appropriate under *Shipp*. (*Id.* at 20-28.) However, on April 18, 2024, the Court granted Defendants' Motion for Reconsideration and dismissed Plaintiff's expungement claim. (Doc. 1115.) Accordingly, the only claims remaining for trial are Counts One, Three, Four, and Five of Plaintiff's Third Amended Complaint relating to Taylor's 1970-72 criminal proceedings.

The parties filed a Joint Proposed Pretrial Order on March 6, 2024. (Doc. 932.) The Court heard oral argument on the pending Motions in Limine at a Pretrial Conference held on April 11, 2024. (Doc. 1093.) Trial is scheduled to begin on July 8, 2024. (Doc. 1111.)

. . . .

. . . .

. . . .

. . . .

## II.    Applicable Law[3]

Evidence is relevant if it has any tendency to make a fact of consequence in determining the action either more or less probable. Fed. R. Evid. 401. Relevant evidence is generally admissible, Fed. R. Evid. 402, though it may be excluded "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

### A. Hearsay

Generally, an out-of-court statement offered to prove the truth of the matter asserted constitutes inadmissible hearsay. Fed. R. Evid. 801(c); Fed. R. Evid. 802. However, under Federal Rule of Evidence 801(d)(1), a declarant-witness's prior statement is non-hearsay if the declarant testifies and is subject to cross-examination about the prior statement, and the prior statement:

>    (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
>    (B) is consistent with the declarant's testimony and is offered:
>        (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>        (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; or
>    (C) identifies a person as someone the declarant perceived earlier.

Fed. R. Evid. 801(d)(1).

Furthermore, under Rule 802(d)(2), an out-of-court statement offered against an opposing party is non-hearsay if it:

>    (A) was made by the party in an individual or representative capacity;
>    (B) is one the party manifested that it adopted or believed to be true;
>    (C) was made by a person whom the party authorized to make a statement on the subject;
>    (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>    (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).

---

[3] The Court discusses herein principles of law that are applicable to multiple pending Motions in Limine. The Court discusses more specific principles of law in its analyses of the specific pending Motions.

1   Hearsay is not excluded by the rule against hearsay if it falls within an exception

2   delineated in Federal Rules of Evidence 803, 804, or 807.  When hearsay contains hearsay

3   within it, each part of the combined statements must conform with a hearsay exception to

4   be admissible.  Fed. R. Evid. 805.

5   Federal Rule of Evidence 803 sets forth hearsay exceptions that apply regardless of

6   whether the declarant is available to testify live.  Rule 804 sets forth exceptions that apply

7   only if the declarant is unavailable.  Among the Rule 804 exceptions are the exception for

8   prior testimony under Rule 804(b)(1) and the exception for statements against interest

9   under Rule 804(b)(3)(A).   Under Rule 804(b)(1), an unavailable declarant's former

10  testimony given at a trial, hearing, or lawful deposition is admissible if "offered against a

11  party who had—or, in a civil case, whose predecessor in interest had—an opportunity and

12  similar motive to develop it by direct, cross-, or redirect examination."  Fed. R. Evid.

13  804(b)(1).  Under Rule 804(b)(3)(A), an unavailable witness's out-of-court statement is

14  admissible as a statement against interest if "a reasonable person in the declarant's position

15  would have made" the statement "only if the person believed it to be true because, when

16  made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great

17  a tendency to invalidate the declarant's claim against someone else or to expose the

18  declarant to civil or criminal liability."  Fed. R. Evid. 804(b)(3)(A).[4]

19  The residual hearsay exception set forth in Federal Rule of Evidence 807 provides

20  that, even if a hearsay statement is not admissible under an exception set forth in Rules 803

21  or 804, it is nevertheless admissible if:

22  (1) the statement is supported by sufficient guarantees of trustworthiness—
    after considering the totality of circumstances under which it was made and
23  evidence, if any, corroborating the statement; and
    (2) it is more probative on the point for which it is offered than any other
24  evidence that the proponent can obtain through reasonable efforts.

25  Fed. R. Evid. 807(a).

26  When a hearsay statement or a statement described in Rule 801(d)(2)(C), (D), or (E)

27

28  _____
[4] If "offered in a criminal case" as a statement "that tends to expose the declarant to criminal liability," then the statement against interest must also be "supported by corroborating circumstances that clearly indicate its trustworthiness."  Fed. R. Evid. 804(3)(B).

has been admitted in evidence, "the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. "The Court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." *Id.*

## B. Fact Witness Testimony

A lay "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Lay witnesses may testify in the form of opinions only if the opinions are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 701 "makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements." Fed. R. Evid. 701, advisory committee notes to 2000 amendments.

## C. Expert Witness Testimony

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule imposes a special gatekeeping obligation on the trial court to ensure that "the reasoning or methodology" underlying an expert's testimony is valid and can properly "be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The gatekeeping function articulated in *Daubert* applies to "all

- 6 -

expert testimony," including testimony based on "technical" and "other specialized" knowledge in addition to testimony based on "scientific" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999).

A Rule 702 inquiry must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595; *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

"Unlike an ordinary witness…an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 592; *see* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of or* personally observed." (emphasis added)). Rule 703 likens an expert's ability to offer opinions without firsthand knowledge to how a physician bases diagnoses on numerous sources, including reports from other medical professionals, hospital records, and X rays. Fed. R. Evid. 703, Advisory Committee Notes (1972); *see also In re Bard IVC Filters Prods. Liab. Litig.,* No. MDL 15-02641-PHX-DGC, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2017) (permitting expert testimony based on the opinions of other experts and rejecting defendant's argument that expert opinions must be excluded where they "cite, refer to, or even rely on the opinions of other experts in this litigation").

However, for purposes of Rule 702, the term "'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Furthermore, "[e]xpert testimony should be excluded if it concerns a subject improper for expert testimony" such as "one that invades the province of the jury." *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (internal quotation marks omitted). Determining the credibility of witnesses, resolving evidentiary conflicts, and drawing reasonable inferences from proven facts are functions within the exclusive province of the jury. *Bruce v. Terhune*,

376 F.3d 950, 957 (9th Cir. 2004) (per curiam) (internal quotation marks omitted). "Resolving doubtful questions of law" and instructing the jury on the law are functions within the "exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (internal quotation marks omitted).   Accordingly, expert witnesses cannot opine on other witnesses' credibility, *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006), nor can they tell the jury what result to reach, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).   Furthermore, although an expert's "opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law*," Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation omitted, emphasis in original).   Expert testimony may constitute an impermissible legal conclusion if the terms used by the expert witness "have a specialized meaning in law" or "represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017).

Expert testimony is also inadmissible if it simply "present[s] a narrative of the case which a lay juror is equally capable of constructing." *Taylor v. Evans*, No. 94-CV-8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997); *see also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) ("expert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence").

### D. Disclosure Requirements and Rule 37 Sanctions

Under Federal Rule of Civil Procedure 26(a)(1), a party must make specified initial disclosures without awaiting a discovery request.  Among other requirements, a party must disclose—unless the use would be solely for impeachment—the names of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses, "along with the subjects of that information," and a copy or description "of all documents, electronically stored information, and tangible things that the disclosing

party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). A party must also disclose "a computation of each category of damages claimed by the disclosing party" and must make available "the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). In addition to initial disclosures under Rule 26(a)(1), a party must make expert disclosures under Rule 26(a)(2) and pretrial disclosures under Rule 26(a)(3). The disclosure of an expert who is "retained or specially employed to provide expert testimony in the case" must be accompanied by a written report. Fed. R. Civ. P. 26(a)(2)(B). If a written report is not required, the expert disclosure must state the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). A party must supplement or correct Rule 26(a) disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

Federal Rule of Civil Procedure 37(c)(1) provides that, if a party fails to "provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." The rule "has been described as a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (internal quotation marks omitted). District courts have "particularly wide latitude" to issue sanctions under Rule 37(c). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

"[T]the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd.*, 259 F.3d at 1107. A court may consider the following factors in determining whether a discovery violation is justified or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3)

the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

### III.  Plaintiff's Motions in Limine

#### A.  Motion in Limine re: Judicial Estoppel (Doc. 911)

Plaintiff moves to judicially estop Pima County from arguing or offering evidence to show that it would have and was prepared to retry Taylor in 2013.  (Doc. 911.)  Evidence concerning whether the Pima County Attorney was prepared to retry Taylor in 2013 is relevant to Plaintiff's expungement claim, which this Court has dismissed.  Because it is not clear that Pima County will seek to make the arguments or elicit the evidence at issue given this Court's dismissal of Plaintiff's expungement claim, the Court will deny Plaintiff's Motion as moot, with leave for the parties to re-raise the issue at trial if necessary.

#### B.  Motion in Limine re: Executive Session Privilege (Doc. 916)

Plaintiff argues that evidence concerning an August 1, 2022 executive session of the Pima County Board of Supervisors is relevant to his expungement claim, and he moves to preclude Pima County from asserting that Arizona's executive session privilege precludes admission of such evidence.  (Doc. 916.)  Because the Court has dismissed Plaintiff's expungement claim and the evidence at issue is irrelevant to the remaining claims in this case, the Court will deny Plaintiff's Motion as moot.  The Court may reconsider this ruling depending on its resolution of Plaintiff's Memorandum re: Equitable Estoppel (Doc. 1112).

#### C.  Motion in Limine re: Prior Testimony (Doc. 942)

Plaintiff moves to preclude Defendants from introducing into evidence testimony from Taylor's prior criminal proceedings.  (Doc. 942.)  Plaintiff argues that such testimony is hearsay and that Defendants cannot show the testimony qualifies for the hearsay exception of Federal Rule of Evidence 804(b)(1) because Taylor did not have an opportunity and similar motive to develop the testimony by cross-examination during the criminal trial.  (*Id.*)  Specifically, Plaintiff identifies evidence that he did not possess at the

time of his criminal trial and that he asserts would have been crucial to cross-examination of the witnesses at issue. (*Id.* at 5-7.)  Plaintiff further argues that testimony concerning his guilt or innocence, or whether the Pioneer Hotel fire was arson, is not relevant to the issues in this case. (*Id.* at 7-8.)  Finally, Plaintiff argues that the eyewitness testimony of Rodney Dingle is inadmissible because he was intoxicated when he observed Taylor inside the Pioneer Hotel on December 30, 1970. (*Id.* at 9.)

Both the City of Tucson and Pima County filed Responses in opposition. (Docs. 1000, 1028.)  Pima County confirms that it intends to read into evidence portions of or the entirety of sworn testimony from Taylor's 1972 criminal trial, including testimony by deceased witnesses Rodney Dingle, David Johnson, Giles Scoggins, Cyrillis Holmes, Henry Gassaway, Rex Angeley, William Briamonte, Lynden Gilmore, and Robert Slagel. (Doc. 1028 at 1-2 n.1.)[5]  Defendants argue that the prior testimony of witnesses from Taylor's 1972 trial is not hearsay because Defendants will offer it not to prove the truth of the matters asserted but to prove the knowledge, intent, and motive of the TPD officers who investigated and arrested Taylor and of the Pima County attorneys who prosecuted him and offered him a no-contest plea in 2013. (Doc. 1000 at 3-5; Doc. 1028 at 2-3.)  Defendants also argue that the prior testimony is admissible under Federal Rule of Evidence 804(b)(1) because Taylor had an opportunity and similar motive to cross-examine the witnesses during his criminal trial. (Doc. 1000 at 5-13; Doc. 1028 at 3-6.)  In addition, Pima County asserts that the prior testimony is admissible under the residual hearsay exception of Rule 807. (Doc. 1028 at 7.)  Defendants argue that statements Taylor made to the trial witnesses are admissible as opposing party statements under Federal Rule of Evidence 801(d)(2). (Doc.1000 at 3; Doc. 1028 at 7-8.)  Pima County argues that the probative value of the prior testimony is high and outweighs any concerns of prejudice. (Doc. 1028 at 8.)  Finally, Defendants argue that there is no evidence in the record showing

---

[5] Pima County indicates it intends to introduce live testimony by witnesses who testified in the 1972 trial and are believed to be alive, including Lewis Adams, Milan Murchek, David Smith, Douglas Scoopmire, Beryl Kohlman, Eugene Rossetti, and Patrick McGuire. (*Id.*)  The hearsay arguments in Plaintiff's Motion in Limine do not apply to this anticipated live testimony.

1    that Dingle was intoxicated when he saw Taylor in the Pioneer Hotel, and that Taylor could

2    have, but failed to, question Dingle about this issue during the 1972 trial.  (Doc. 1000 at

3    13; Doc. 1028 at 8-10.)  The City urges the Court to preclude Plaintiff from arguing at trial

4    that Dingle was intoxicated or impaired.  (Doc. 1000 at 13.)

5         To the extent Defendants intend to introduce prior testimony for purposes other than

6    proving the truth of the matters asserted, the prior testimony is not hearsay.  *See* Fed. R.

7    Evid. 801(c)(2).  Furthermore, the Court finds that the prior testimony of unavailable

8    witnesses, even if hearsay, is admissible under Federal Rule of Evidence 804(b)(1).

9    Deceased witnesses are unavailable for purposes of Rule 804.  *United States v. Duenas*,

10   691 F.3d 1070, 1086 (9th Cir. 2012).  It is undisputed that Taylor had the opportunity to

11   cross-examine the witnesses at issue when they testified during his criminal trial.  In

12   addition, the Court finds that Taylor had a similar motive for cross-examination of the

13   witnesses.  A "similar motive" for purposes of Rule 804(b)(1) does not mean an "identical

14   motive."  *Id.* at 1087 (internal quotation marks omitted).  A party's motive for cross-

15   examination is "similar" if the party had the same "fundamental objective" in questioning

16   the witness.  *United States v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009).  Plaintiff cites no

17   authority for the proposition that a party did not have an opportunity and similar motive

18   for cross-examination, for purposes of Rule 804(b)(1), merely because the party lacked

19   certain evidence at the time of the cross-examination.  Even assuming that this proposition

20   is true as a matter of law, Plaintiff has not shown that the evidence he cites in his Motion

21   was so critical to effective cross-examination of the trial witnesses that the witnesses'

22   testimony is rendered inadmissible under Rule 804(b)(1).  Nor has Plaintiff shown that

23   Dingle's prior testimony is inadmissible under Rule 804(b)(1) due to a potential

24   intoxication issue that Taylor could have but did not explore through cross-examination

25   during the 1972 trial.

26        Prior testimony from Taylor's criminal proceedings has limited relevance,

27   particularly given the Court's dismissal of Plaintiff's expungement claim.  Taylor's guilt

28   or innocence, and whether the Pioneer Hotel fire was or was not arson, are not at issue in

the trial in this matter.  Furthermore, evidence concerning Unklesbay and Acosta's review of Taylor's case in 2012-2013 is largely irrelevant to Plaintiff's remaining claims. However, the prior testimony of witnesses from Taylor's 1972 criminal trial may be admissible to show the knowledge and intent of the City and County officials who investigated and prosecuted Taylor, and particular testimony—such as the testimony of Holmes, Robert, and Wallmark—has specific relevance to Plaintiff's alleged constitutional violations.  The Court notes that, given the extensive nature of the prior testimony and its limited relevance, Rule 403 concerns—including the presentation of cumulative evidence and wasting time—may outweigh the probative value of specific prior testimony. However, to the extent Plaintiff requests a blanket ruling that all prior testimony is inadmissible, his Motion will be denied.  The Court addresses the admissibility of statements Taylor made to trial witnesses in Section III(G), *infra*.

### D.  Motion in Limine re: Former County Attorney Witnesses (Doc. 943)

Pima County disclosed Bill Dickinson, Bill Druke, Ronald Stolkin, and Steve Neely as former employees of the PCAO,[6] who are expected to testify regarding their careers; their employment and responsibilities with the PCAO; their "knowledge of other prosecutors in the PCAO, including Bill Schafer, Rose Silver, David Dingeldine, Randy Stevens, Horton Weiss, and Carmine Brogna"; their "knowledge of PCAO policies and practices" during their employment, "including training, supervision, and prosecutorial decisions"; their "knowledge and understanding regarding the law at the time governing evidentiary disclosures and other prosecutorial functions"; and their "knowledge of or work on Taylor's criminal prosecution."  (Doc. 1059-3 at 56-58.)  In addition, each witness is "expected to testify that PCAO did not have a policy or practice of racial discrimination or unethical or unlawful prosecutions."  (*Id.*)

Plaintiff asks the Court to limit the testimony of Dickinson, Druke, and Stolkin, and to preclude or limit the testimony of Neely.  (Doc. 943.)  Plaintiff argues that Pima County should be precluded from eliciting testimony from these witnesses on any subject not

---

[6] Pima County's disclosure states that Neely began working as a Deputy Pima County Attorney in 1969 and became the Pima County Attorney in 1976.  (Doc. 1059-3 at 56-57.)

1   included in their disclosed anticipated testimony, including Taylor's guilt or innocence, a
2   conspiracy between Pima County and the City of Tucson to violate Taylor's constitutional
3   rights, the adequacy of training that prosecutors received at the time Weiss was employed
4   at the PCAO, a policy or practice of deliberate indifference to prosecutorial misconduct,
5   and any knowledge or work done by the witnesses on Taylor's criminal prosecution.  (*Id.*
6   at 2-3, 5.)  Plaintiff further argues that testimony concerning any prosecutors other than
7   Weiss and Silver—in addition to testimony concerning racial discrimination in the PCAO
8   and a policy or practice, or lack thereof, of unethical or unlawful prosecutions—is
9   irrelevant.  (*Id.* at 3-4.)  Plaintiff urges preclusion of any testimony concerning knowledge
10  of Taylor's case based on hearsay.  (*Id.* at 5.)  Finally, Plaintiff argues that, if Neely did not
11  work for the PCAO before he was elected County Attorney in 1976, his testimony should
12  be precluded in its entirety as irrelevant.  (*Id.* at 6.)

13          In response, Pima County avers that it timely and adequately disclosed the testimony
14  of Dickinson, Druke, Stolkin, and Neely, and that each is expected to provide highly
15  relevant testimony concerning their personal knowledge of the PCAO's training, policies,
16  and practices prior to and during Taylor's 1972 prosecution; their knowledge of
17  prosecutors involved in Taylor's criminal case, including Dingeldine, Brogna, Schafer, and
18  Stevens; their personal knowledge of and work on Taylor's criminal prosecution; and
19  whether they were aware of the PCAO engaging in conspiracies to deprive criminal
20  defendants of their constitutional rights.  (Doc. 1030.)  Pima County avers that it does not
21  intend to elicit testimony from Dickinson, Stolkin, or Neely regarding whether they believe
22  Taylor was guilty, as these witnesses did not work on Taylor's prosecution and do not have
23  personal knowledge of the evidence presented at Taylor's 1972 trial; however, Pima
24  County avers that Druke assisted with Taylor's prosecution and "should be permitted to
25  testify as to his involvement in the prosecution and recall of the evidence."  (*Id.* at 2.)[7]
26  Pima County further avers that it will elicit testimony that the PCAO did not have a policy

_____

[7] Pima County indicates it does not at this time intend to elicit Druke's opinion that Taylor
28  is guilty but argues that the opinion may become relevant depending on the evidence
presented at trial.  (*Id.* at 2-3 n.1.)  The Court will rule on this issue if it arises during trial.

or practice of racial discrimination only if Plaintiff elicits evidence that Weiss was a racist. (*Id.* at 4-5.)  Finally, Pima County avers—consistent with its disclosure—that Neely began working for the PCAO in 1969.  (*Id.* at 6.)

Plaintiff's Motion will be partially granted and partially denied.  The Motion will be granted to the extent that the testimony of Dickinson, Druke, Stolkin, and Neely will be limited to matters within their personal knowledge and within the scope of Pima County's disclosure.  However, the Court does not construe Pima County's disclosure as narrowly as does Plaintiff.  The disclosure properly encompasses testimony concerning the existence of a conspiracy between Pima County and the City of Tucson to violate Taylor's constitutional rights during his criminal prosecution; training provided to PCAO prosecutors; and the existence of PCAO policies or practices, including any policy or practice of deliberate indifference to prosecutorial misconduct.  Furthermore, the Court finds that the existence of policies or practices of unethical or unlawful prosecutions is relevant to the issue of whether Pima County was deliberately indifferent to a policy or practice of prosecutorial misconduct.  Testimony concerning other PCAO prosecutors is relevant if Pima County presents evidence or testimony showing the prosecutors at issue were involved in Taylor's criminal prosecution.  Based on Pima County's averments in its disclosure and Response, Neely began working for the PCAO prior to Taylor's criminal prosecution, and therefore it appears he has personal knowledge of PCAO training, policies, and practices during the time of the criminal prosecution.  Accordingly, Dickinson, Druke, Stolkin, and Neely may testify regarding the above matters to the extent they have personal knowledge.  However, these witnesses may not offer opinions on legal issues or testify to inadmissible hearsay.  For example, the witnesses may describe training provided to PCAO prosecutors at the time of Taylor's criminal prosecution, but they may not opine that such training was adequate.  Furthermore, if Druke testifies that he was involved in Taylor's criminal prosecution, he may testify to his involvement, but Pima County may not elicit hearsay from witnesses not involved in the criminal prosecution. . . . .

### E.  Motion in Limine re: Unklesbay and Acosta (Doc. 944)

Plaintiff moves to preclude former Deputy Pima County Attorneys Rick Unklesbay and Malena Acosta from testifying that admissible evidence against Taylor in 2013 constituted proof beyond a reasonable doubt.  (Doc. 944.)  Because it is not clear that Pima County will seek to elicit the evidence at issue given this Court's dismissal of Plaintiff's expungement claim, the Court will deny Plaintiff's Motion as moot, with leave for the parties to re-raise the issue at trial if necessary.

### F.  Motion in Limine re: Unklesbay, Acosta and LaWall (Doc. 945)

Plaintiff moves to preclude Unklesbay and Acosta from testifying to the reasons why former Pima County Attorney Barbara LaWall offered Taylor a no-contest plea in 2013.  (Doc. 945.)  Because it is not clear that Pima County will seek to elicit the evidence at issue given this Court's dismissal of Plaintiff's expungement claim, the Court will deny Plaintiff's Motion as moot, with leave for the parties to re-raise the issue at trial if necessary.

### G.  Motion in Limine re: Taylor's Statements (Doc. 946)

Plaintiff moves to preclude the admission of statements he made when hotel employees saw him inside the hotel at the time of the fire, as well as statements he made to police officers.  (Doc. 946.)  Plaintiff argues that the prior testimony of hotel employees and police officers is hearsay that does not qualify for the prior testimony exception under Federal Rule of Evidence 804(b)(1) because, as a result of evidence concealed or unknown at the time of his criminal trial, Taylor lacked an opportunity and similar motive to develop the testimony through cross-examination.  (*Id.* at 4-6.)  Plaintiff further argues that statements he made to the police are inadmissible because he was unlawfully arrested and interrogated, and his statements were involuntary and obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  (*Id.* at 6-12.)

Both the City of Tucson and Pima County filed Responses in opposition, asserting that Plaintiff's arguments concerning the admissibility of prior testimony should be rejected for the reasons stated in Defendants' Responses to Plaintiff's Motion in Limine

re: Prior Testimony, and that this Court has already dismissed Plaintiff's allegations concerning probable cause for his arrest and the lawfulness of his interrogation.  (Docs. 1001, 1036.)

To the extent Plaintiff argues that the prior testimony of unavailable hotel employee witnesses is inadmissible under Federal Rule of Evidence 804(b)(1), the Court rejects that argument for the reasons stated in the discussion of Plaintiff's Motion in Limine re: Prior Testimony, Section III(C), *supra*.  Statements that Plaintiff made to trial witnesses are admissible as opposing party statements under Federal Rule of Evidence 801(d)(2).  Furthermore, Plaintiff has not shown that statements he made to police officers are inadmissible in this case due to Fifth Amendment violations.  "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that no person shall be compelled *in any criminal case* to be a *witness* against himself."  *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (internal citation, quotation, and alteration marks omitted; emphasis in original).  Because this is a civil case, rather than a criminal prosecution of Taylor, the admission of Plaintiff's statements to the police *in this case* does not violate the Fifth Amendment, regardless of any voluntariness or *Miranda* issues.  *See id.* at 766-73.  Accordingly, the Court will deny Plaintiff's Motion in Limine.

### H. Motion in Limine re: Bad Acts (Doc. 947)

Plaintiff moves to preclude Defendants from introducing any evidence of his conduct in prison and after his release, arguing that the evidence is irrelevant, prejudicial, and inadmissible under Federal Rules of Evidence 401, 402, 403, 404, and 609.  (Doc. 947 at 1.)

Both the City of Tucson and Pima County filed Responses in opposition.  (Docs. 1004, 1037.)  The City argues that this Court should defer ruling on the admissibility of Taylor's prison or arrest records, or his 2018 felony conviction, until the time of trial.  (Doc. 1004 at 1-3.)  The City argues that the admissibility of the records depends on what Taylor testifies to at trial.  (*Id.* at 1-2.)  The City similarly argues that this Court should wait until there is a testimonial record and context to balance the probative value and prejudice

1  associated with Taylor's 2018 felony conviction.  (*Id.* at 2-3.)  Finally, the City argues that
2  Taylor's drug use is relevant to his claim for emotional distress damages, if Plaintiff is
3  permitted to present evidence of such damages.  (*Id.* at 3-4.)

4      Pima County argues that evidence of drug use and additional felonies, prison time,
5  and disciplinary actions is relevant to Plaintiff's claim for emotional distress damages, and
6  that Plaintiff's failure to provide any details regarding the prison and post-release acts,
7  combined with his failure to provide any details concerning his emotional distress damages,
8  prevents Pima County from being more specific as to what evidence of other acts it may
9  seek to introduce at trial. (Doc. 1037.)  Pima County also argues that Taylor's recent felony
10  conviction is admissible under Federal Rule of Evidence 609(a).  (*Id.* at 4 n.3.)  Pima
11  County urges the Court to deny Plaintiff's Motion in Limine and "deal with these issues as
12  they come up in the context of trial."  (*Id.* at 4.)

13      Evidence of a witness's conviction for a crime punishable by imprisonment for more
14  than one year "must be admitted, subject to Rule 403, in a civil case" for purposes of
15  attacking the witness's character for truthfulness.  Fed. R. Evid. 609(a)(1)(A).  In addition,
16  evidence of a witness's conviction for any crime regardless of the punishment "must be
17  admitted if the court can readily determine that establishing the elements of the crime
18  required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R.
19  Evid. 609(a)(2).  However, if more than 10 years have passed since the witness's conviction
20  or release from confinement for it, evidence of the conviction is admissible only if "its
21  probative value, supported by specific facts and circumstances, substantially outweighs its
22  prejudicial effect."  Fed. R. Evid. 609(b).  The parties have not provided sufficient details
23  for the Court to be able to determine the admissibility of Taylor's 2018 felony conviction
24  under Rules 403 and 609.  Accordingly, the Court defers ruling on that issue until trial.

25      "Evidence of any other crime, wrong, or act is not admissible to prove a person's
26  character in order to show that on a particular occasion the person acted in accordance with
27  the character."  Fed. R. Evid. 404(b)(1).  However, such evidence "may be admissible for
28  another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,

1   identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  It appears that

2   Defendants may potentially seek to introduce certain evidence—such as evidence of Taylor

3   setting fires in prison—for the impermissible purpose of proving that Taylor is an arsonist.

4   However, the parties have not provided sufficient information to allow the Court to

5   determine whether other-act evidence may be admissible for a proper purpose at trial, and

6   the Court accordingly defers ruling on the issue.  The Court will deny Plaintiff's Motion to

7   the extent it seeks a ruling in limine, with leave for the parties to raise the issues addressed

8   in the Motion at trial.

9   **I.  Motion in Limine re: Opinions of Dr. Tommy Tunson (Doc. 948)**

10   Plaintiff moves to preclude the City of Tucson from introducing any evidence or

11   testimony contesting the opinions of Plaintiff's police practices expert, Dr. Tommy

12   Tunson, on the grounds of non-disclosure.  (Doc. 948 at 1.)  Specifically, Plaintiff argues

13   that the City should be precluded from presenting any evidence or witnesses concerning

14   whether the City had racially discriminatory policies or practices at the time of Taylor's

15   arrest and prosecution.  (*Id.* at 3.)

16   The City avers in response that it timely disclosed TPD and Tucson Fire Department

17   ("TFD") members as witnesses who would testify regarding their recollection of events

18   prior to, during, and after the Pioneer Hotel fire.  (Doc. 1012 at 2-3.)  The City further avers

19   that it adopted Plaintiff's disclosed witnesses, which broadly included all past or present

20   employees of Defendants with relevant knowledge.  (*Id.* at 3-5.)  The City argues that

21   former TPD officers with personal knowledge regarding the alleged existence of racially

22   discriminatory policies or practices can, under Federal Rules of Evidence 602 and 701,

23   provide lay testimony contradicting Tunson's opinions.  (*Id.* at 5.)

24   To the extent Plaintiff contends in his Motion that the City can rebut Tunson's

25   opinions only through expert rather than lay testimony, the Court rejects that proposition.

26   The Court notes that all parties appear to have had issues with untimely and insufficiently

27   detailed disclosures in this case.  Although the City's disclosure of TPD and TFD officers

28   could certainly have been more detailed, the Court finds, given the entirety of the record

1   and the parties' knowledge of one another's evidence and legal positions, that the City

2   adequately disclosed TPD and TFD employees to testify regarding their personal

3   knowledge of City policies and practices at the time of Taylor's arrest and prosecution.

4   Accordingly, Plaintiff's Motion will be denied.

5   **IV.   Defendants' Motions in Limine**

6         **A. City of Tucson's Motion in Limine No. 1 re: Untimely Disclosed**

7             **Witnesses and Documents (Doc. 938)**

8         The City of Tucson asks the Court to preclude Plaintiff from introducing specified

9   witnesses and exhibits that the City argues were not timely disclosed during discovery,

10  including the following witnesses: Lindsay Herf; Lesley Hoyt-Croft; Jeanette Mare;

11  Tamara Mulembo; Jan Lesher; Mavis J. Donnelly, M.D.; Kathy Lynn Higgins; Nina

12  Trasoff; Charlene Smith; and Randy Downer.  (Doc. 938.)

13        In response, Plaintiff avers that all parties have made extensive disclosures since the

14  close of discovery, and that Plaintiff timely disclosed documents as they were obtained.

15  (Doc. 1005.)   Plaintiff further argues that, even assuming Plaintiff's complained-of

16  disclosures were untimely, there is no prejudice, and the City could have filed motions

17  years ago instead of waiting until the eve of trial for purposes of gaining a tactical

18  advantage.  (*Id.* at 6-7.)

19        Rule 37(c)(1) provides that, if a party fails to "identify a witness as required by Rule

20  26(a) or (e), the party is not allowed to use that information or witness to supply evidence

21  . . . at a trial, unless the failure was substantially justified or is harmless."   Although the

22  Court recognizes that it is Plaintiff's burden to prove harmlessness, *Yeti by Molly, Ltd.*, 259

23  F.3d at 1107, the Court notes that the City's Motion in Limine does not allege any prejudice

24  or harm resulting from the timing of Plaintiff's disclosures.   Furthermore, Plaintiff cites

25  authority supporting his position that his disclosures, even if untimely, may be considered

26  harmless where Defendants had months to review the disclosed information prior to trial.

27  *See Alliance Commc'ns Techs., Inc. v. AT&T Corp.*, 245 F. App'x 583, 585 (9th Cir. 2007)

28  (district court did not abuse discretion in finding harmlessness where opposing party had

- 20 -

1   many months to review the challenged information before trial).  To the extent other

2   Motions in Limine raise more specific arguments concerning the effect of untimely

3   disclosures of particular witnesses, the Court addresses those arguments in the context of

4   the specific Motions in which they are raised.  However, the City's Motion will be denied

5   to the extent it seeks a blanket ruling precluding all witnesses and evidence disclosed by

6   Plaintiff after the close of discovery.

7        **B. City of Tucson's Motion in Limine No. 2 re: Robert Jackson's and**

8            **Albert Jackson's Statements and Affidavits (Doc. 939)**

9        The City of Tucson moves to preclude Plaintiff from introducing, referring to,

10  arguing, or eliciting testimony concerning the contents of out-of-court statements and

11  affidavits by Robert and Albert Jackson for the purpose of proving the truth of such

12  statements. (Doc. 939.)  The City argues that such statements are inadmissible hearsay that

13  do not fall under any hearsay exception. (*Id.* at 2-8.)  The City argues that Robert Jackson's

14  out-of-court recantation does not qualify as a statement against interest under Federal Rule

15  of Evidence 804(b)(3)(A), because it was superseded by Robert's May 18, 1972 sworn

16  testimony given at a hearing during which Robert was offered immunity from perjury

17  charges. (*Id.* at 3.)  The City further argues that Robert's statement is not an opposing party

18  statement under Federal Rule of Evidence 801(d)(2), and that Rule 801(d)(1) is

19  inapplicable because Robert is deceased and will not be subject to cross-examination at

20  trial. (*Id.* at 3-4.)  Finally, the City argues that Robert's statement is not admissible under

21  the residual exception to the rule against hearsay, because the statement is not trustworthy

22  and there is more probative evidence available. (*Id.* at 4-5.)  The City similarly argues that

23  Albert's out-of-court statements are not opposing party statements under Rule 801(d)(2)

24  and are inadmissible under the residual exception. (*Id.* at 6-8.)  The City further argues

25  that Albert's statements contain hearsay within hearsay. (*Id.* at 6.)

26       Plaintiff argues in response that the statements of Robert and Albert Jackson are

27  admissible under numerous hearsay exceptions. (Doc. 1018.)  Specifically, Plaintiff argues

28  that Robert's statement is admissible under Federal Rules of Evidence 801(d)(1), 803(3),

and 804(b)(3).  (*Id.* at 2-3.)  Plaintiff argues that Albert's 1972 affidavit is admissible as an ancient document under Rule 803(16), that his 2008 affidavit and interview are admissible under Rule 807, and that, to the extent Albert discussed statements made by Robert, Robert's statements to Albert are admissible under Rules 803(3) and 804(b)(3).  (*Id.* at 4-5.)  Plaintiff further argues that, to the extent Robert and Albert discussed statements made by Horton Weiss, Rex Angeley, and Lawrence Hust, the statements of those individuals are not hearsay pursuant to Rule 801(d)(2).  (*Id.* at 3-4.)  Finally, Plaintiff argues that his experts, including Andrew Pacheco, relied on Albert's affidavit, rendering the affidavit admissible under Rule 703.  (*Id.* at 6.)

An unavailable witness's out-of-court statement is admissible if "a reasonable person in the declarant's position would have made" the statement "only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to . . . to expose the declarant to civil or criminal liability."  Fed. R. Evid.  804(b)(3)(A).[8]  In ruling on the parties' summary judgment motions, the Court determined that Robert's recantation may be admissible as a statement against interest under Federal Rule of Evidence 804(b)(3)(A) because it exposed Robert to criminal liability for perjury.  (Doc. 869 at 44.)  The Court noted that, over the course of the recantation, Robert expressed concern numerous times regarding his criminal exposure for perjury.  (*Id.* at 44 n.28.)  Although the City notes that Robert later affirmed his trial testimony despite being offered immunity from perjury charges, the City cites no binding authority supporting the proposition that Robert's subsequent affirmation of his trial testimony affects the admissibility of his recantation under Rule 804(b)(3)(A).

Furthermore, it appears that Robert's prior testimony will be offered pursuant to the prior testimony hearsay exception of Rule 804(b)(1), and when a hearsay statement is admitted into evidence, "the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified

---

[8] If "offered in a criminal case" as a statement "that tends to expose the declarant to criminal liability," then the statement against interest must also be "supported by corroborating circumstances that clearly indicate its trustworthiness."  Fed. R. Evid. 804(b)(3)(B).

as a witness."  Fed. R. Evid. 806.  Rule 801(d)(1) provides for the admissibility of a declarant-witness's prior statements under certain circumstances.  Although the rule provides that the declarant must testify and be subject to cross-examination about the prior statement, Rule 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible . . . if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."  Fed. R. Evid. 613(b).  If Robert's prior inculpatory testimony is admitted pursuant to Rule 804(b)(1), then justice may require the admission of extrinsic evidence of his recantation under Rule 613(b).[9]

The City's argument concerning whether Robert's recantation is an opposing party statement is misplaced.  Robert's recantation is not admissible as an opposing party statement.  As discussed above, it is admissible under the statement-against-interest hearsay exception of Rule 804(b)(3)(A), and potentially also under Rule 613(b).  However, to the extent Robert's recantation contains an additional level of out-of-court statements made to Robert by TPD officers, the officers' statements are admissible as opposing party statements under Rule 801(d)(2).

Under the ancient documents hearsay exception of Federal Rule of Evidence 803(16), "[a] statement in a document that was prepared before January 1, 1998, and whose authenticity is established," is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness.  To authenticate a document as ancient, the proponent must present evidence that the document "is in a condition that creates no suspicion about its authenticity"; "was in a place where, if authentic, it would likely be"; and "is at least 20 years old when offered."  Fed. R. Evid. 901(b)(8).  If Plaintiff authenticates Albert's 1972 affidavit as an ancient document under Rule 901(b)(8), then the statements in the affidavit would be admissible under Rule 803(16).

The Court also finds that Albert's 1972 affidavit, as well as his 2008 interview and

---

[9] The Court rejects Plaintiff's assertion that Robert's recantation is admissible under Rule 803(3), as it is not a statement of Robert's then-existing state of mind or emotional, sensory, or physical condition.

affidavit, are admissible under the residual hearsay exception.  (*See* Doc. 869 at 44.)  The residual hearsay exception set forth in Federal Rule of Evidence 807 provides that, even if a hearsay statement is not admissible under an exception set forth in Rules 803 or 804, it is nevertheless admissible if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).  Here, Albert is deceased, and his prior statements are more probative than any other evidence that Plaintiff can obtain through reasonable efforts.  Albert had no obvious motive to lie regarding the matters in his statements and, though some details vary, his statements are generally supported by other evidence, including Robert's recantation and the testimony of Charlene Smith and Kathy Higgins.  To the extent Albert's prior statements include an additional layer of out-of-court statements made by Robert, Robert's statements to Albert are admissible under the statement-against-interest hearsay exception, as discussed above.  The City of Tucson's Motion will be denied.

### C. City of Tucson's Motion in Limine No. 3 re: Rubin Salter (Doc. 940)

Plaintiff disclosed Rubin Salter, an African American criminal defense attorney who worked with the PCAO and Horton Weiss in the late 1960s, as a witness who will testify that TPD "had policies of racial discrimination against Blacks."  (Doc. 932 at 288.)  In an affidavit filed with the parties' summary judgment briefs, Salter stated that he had frequent contact with TPD officers during his work as a prosecutor and that it is his "opinion" and "recollection" that TPD "engaged in pervasive racially discriminatory law enforcement practices."  (Doc. 372-2 at 3.)

The City of Tucson moves to preclude Plaintiff from calling Salter as a fact witness to testify regarding TPD policies in the 1970s.  (Doc. 940.)  The City argues that Salter lacks personal knowledge under Federal Rule of Evidence 602 because he never worked for the TPD and has no non-speculative knowledge regarding TPD policies.  (*Id.* at 2-3.)  The City further argues that, even if admissible, Salter's testimony should be precluded

1   under Federal Rule of Evidence 403 because it has limited probative value, would unfairly

2   prejudice the City, and would only confuse and mislead the jury.  (*Id.* at 3-4.)  Plaintiff

3   argues in response that Salter's testimony is based on his personal experience with the City

4   and TPD, that the testimony is relevant and probative, and that the City's arguments go to

5   the weight rather than the admissibility of the testimony.  (Doc. 1007.)

6          As a fact witness, Salter may testify to opinions regarding TPD policies only if those

7   opinions are "rationally based" on his "perception."  Fed. R. Evid. 701(a).  Furthermore,

8   Salter may testify regarding TPD policies and practices only if Plaintiff introduces

9   evidence sufficient to show he has personal knowledge of those policies and practices.

10  Based on the current record, it does not appear that Salter has such personal knowledge.

11  The Court will grant the City's Motion in Limine but will also grant Plaintiff leave to seek

12  reconsideration of this ruling at trial if Plaintiff can offer evidence sufficient to show Salter

13  has personal knowledge of TPD policies and practices.

14          **D.  City of Tucson's Motion in Limine No. 4 re: Andrew Pacheco (Doc. 968)**

15          The City of Tucson moves to preclude Plaintiff from calling Andrew Pacheco as an

16  expert witness.  (Doc. 968.)  The City argues that this Court has already found that all of

17  Pacheco's opinions relating to the City are inadmissible.  (*Id.* at 4-6.)  The City further

18  argues that Pacheco's rebuttal expert report should be excluded as untimely and improper

19  under Federal Rule of Civil Procedure 26.  (*Id.* at 6.)  The City argues, without prejudice

20  to its other arguments, that Pacheco was not disclosed to testify regarding Count One of

21  the operative Third Amended Complaint.  (*Id.* at 6.)  Finally, the City argues that Pacheco's

22  testimony is inadmissible under Federal Rule of Evidence 403 because any probative value

23  of the testimony is outweighed by the possibility of unfair prejudice and confusing the jury.

24  (*Id.* at 7.)

25          In response, Plaintiff argues that this Court's prior Order regarding the admissibility

26  of Pacheco's opinions is controlling, and that the City's Motion in Limine is improper

27  because it does not address any specific evidence that this Court did not already address in

28  the prior Order.  (Doc. 1022.)  Plaintiff further argues that he disclosed Pacheco's second

report less than two months after receiving disclosure from Pima County regarding Unklesbay's testimony, and the second report responds to that disclosure and therefore constitutes a proper and timely supplement to Pacheco's initial report. (*Id.* at 3-4.)

This Court previously found that the opinions set forth in Pacheco's expert report are inadmissible, except for the following "potentially admissible opinions":

> (1) that any prosecutor's office with which [Pacheco] is familiar would immediately note and act upon a published appellate opinion that criticized a prosecutor by name; (2) that it is improper for a prosecutor to require a defendant to plead no contest when the prosecutor knows guilt cannot be proven beyond a reasonable doubt; (3) that LaWall improperly instructed Unklesbay regarding the scope of his review of Taylor's Petition for Post-Conviction Relief; and (4) that any experienced prosecutor would understand that an exonerated defendant poses a greater risk of financial exposure to the prosecutor's office than a convicted felon.

(Doc. 567 at 8 (internal record citations omitted).)  Plaintiff affirms in the Joint Proposed Pretrial Order that Pacheco's testimony will conform to the Court's prior ruling. (Doc. 932 at 289.)  To the extent the City's Motion in Limine is seeking reconsideration of the Court's prior ruling, it is untimely.  *See* LRCiv 7.2(g)(2).  To the extent the City's Motion in Limine is seeking application of the Court's prior ruling, it is unnecessary.  The Court's prior Order (Doc. 567) is controlling, subject to the limitations on relevance that arise from this Court's subsequent dismissal of Plaintiff's expungement claim.

### E.  City of Tucson's Motion in Limine No. 5 re: Dr. Thomas Tunson (Doc. 957)

The City of Tucson asks the Court to preclude Dr. Thomas Tunson from testifying as an expert witness. (Doc. 957.)  The City argues that Dr. Tunson bases his opinions on speculation and subjective beliefs, that he does little more than summarize Plaintiff's opinions, that he improperly makes credibility determinations and impermissibly offers legal conclusions, and that he reviewed only evidence cherry-picked by Plaintiff's counsel. (*Id.* at 4-5.)  The City further argues that Dr. Tunson is not qualified to opine on issues involving fire science, that he offers opinions on topics this Court has foreclosed, and that his reports include fundamental factual errors. (*Id.* at 5.)  The City also argues that Dr. Tunson's rebuttal expert report is improper under Federal Rule of Civil Procedure 26 and

was not timely disclosed.  (*Id.* at 6.)[10]  Finally, the City argues that any probative value of Dr. Tunson's testimony is outweighed by a danger of unfair prejudice and confusing the jury.  (*Id.*)

Plaintiff argues in response that Dr. Tunson is qualified to provide expert testimony concerning police and prosecution standards and practices, that such testimony will be helpful to the jury, and that the City fails to show that the testimony would be unfairly prejudicial.  (Doc. 1008.)  Plaintiff avers that he does not intend to elicit testimony from Dr. Tunson concerning the credibility of witnesses or the resolution of evidentiary conflicts, nor will Dr. Tunson instruct the jury on the law or provide opinions that invade the province of the jury.  (*Id.* at 7-8.)  Plaintiff avers that Dr. Tunson will instead testify as to police and prosecution practices, which practices were violated in Taylor's criminal case, and the importance such violations have in the above-captioned case.  (*Id.* at 6-8.)

Dr. Tunson has 32 years of experience in law enforcement, including 10 years of experience as a police chief. (Doc. 343-14 at 1.)  He also has experience as a professor of criminal justice.  (*Id.*)  The Court finds that Dr. Tunson may permissibly provide expert testimony concerning police and prosecution standards and practices, and whether those standards and practices were followed in Taylor's case.  However, Dr. Tunson may not opine on the credibility of witnesses, instruct the jury on the law, or offer opinions on ultimate legal issues, nor may he opine on fire science.

**F.  City of Tucson's Motion in Limine No. 6 re: Sherry Van Camp (Doc. 941)**

In the parties' Joint Proposed Pretrial Order, Plaintiff lists Sherry Van Camp as an employee of the law firm representing Plaintiff in this action, who will testify as a fact witness regarding a conversation she had with now-deceased Judge Michael Brown regarding Taylor's criminal prosecution and Horton Weiss.  (Doc. 932 at 290.)  Plaintiff also listed as an exhibit an affidavit by Van Camp.  (*Id.* at 587.)  In the affidavit, Van Camp avers that on March 4, 2016, she spoke to Judge Brown, who was a criminal defense lawyer

---

[10] The rebuttal report simply reiterates Dr. Tunson's initial opinions and states that he has no rebuttal opinions.  (Doc. 957-2 at 20-21.)

1    around the time of Taylor's arrest and criminal trial, who was later appointed to the Pima

2    County Superior Court, and who passed away in August 2018.  (Doc. 941-2 at 4.)  Van

3    Camp avers that Judge Brown recalled an incident during which Weiss used a racial slur,

4    and a second incident during which a different deputy county attorney used the same racial

5    slur.  (*Id.* at 5.)

6        The City of Tucson moves to preclude Van Camp from testifying at trial under

7    Federal Rules of Evidence 403, 602, 701, 802, and 805, arguing that she has no personal

8    knowledge of the matters in this case and that her proffered testimony is based entirely on

9    hearsay and speculation.  (Doc. 941.)  In response, Plaintiff argues that the Court should

10   defer ruling on the admissibility of Van Camp's testimony, because the testimony may be

11   admissible for purposes of impeachment if Unklesbay or Acosta testify that they were not

12   aware of Weiss's racism.   (Doc. 1009.)   Plaintiff does not dispute that Van Camp's

13   testimony is inadmissible for purposes of proving the truth of Judge Brown's statements.

14   (*See id.*)  In response to a separate Motion in Limine filed by Pima County, Plaintiff avers

15   that he does not intend to call Van Camp as a witness "unless necessary to establish the

16   reliability of Judge Brown's interview under Rule 807."  (Doc. 1029 at 5 n.1.)

17       The Court will grant the City of Tucson's Motion in Limine to the extent that the

18   Court will preclude Plaintiff from calling Van Camp to testify for purposes of proving the

19   truth of statements that Judge Brown made to Van Camp, as such testimony is inadmissible

20   hearsay.  Given the Court's dismissal of Plaintiff's expungement claim and the resulting

21   limitations on the relevance of the testimony of Unklesbay and Acosta, Van Camp's

22   testimony does not appear to be admissible for purposes of impeaching Unklesbay and

23   Acosta.  The Court reserves ruling on whether Van Camp may permissibly testify for

24   another purpose, as it is not clear whether Plaintiff will call her for another purpose.

25       **G. City of Tucson's Motion in Limine No. 8 re: David Smith, 60 Minutes**

26       **(Doc. 970)**

27       In the Joint Proposed Pretrial Order, Plaintiff lists David Smith as a witness who

28   will testify "regarding any knowledge relevant to the Taylor prosecution," as well as

"statements he made" to the media and "his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes"/Court TV and/or CBS." (Doc. 932 at 293-94.)  Plaintiff also indicates he may seek to utilize the media programs themselves pursuant to the "previous statements" provisions of Federal Rule of Civil Procedure 26(b)(3)(C).  (*Id.* at 294.)  Plaintiff first disclosed Smith as a witness in his Initial Disclosure Statement on June 5, 2020, stating that he was a TPD officer who spoke to Taylor shortly after the Pioneer Hotel fire and who "will testify regarding any knowledge relevant to the Taylor prosecution."  (Doc. 971-2 at 9.)  On July 27, 2021, Plaintiff supplemented his disclosure of Smith's anticipated testimony to include "Smith's statements made in media interviews" and "his knowledge of the matters discussed" in the media interviews and programs.  (Doc. 958-4 at 9-10.)

The City of Tucson moves to limit Smith's testimony to his personal involvement in the criminal investigation of Taylor and his personal knowledge of TPD policies and practices, and to preclude Plaintiff from eliciting testimony about, or referring to, comments made by Smith or other individuals to 60 Minutes, Court TV, or any other media program or station.  (Doc. 970 at 1-4.)  The City also moves to preclude Plaintiff from using newspaper articles or clippings at trial.  (*Id.* at 1, 4-9.)  The City argues that the provisions of Rule 26(b)(3)(C) are inapplicable to determining the admissibility of statements at trial.  (Doc. 970 at 3.)  The City further argues that Smith's statements in media interviews are hearsay and do not constitute opposing party statements under Federal Rule of Evidence 801(d)(2) because Smith was not a City employee when he made the statements, Defendants did not authorize him to make the statements, and Defendants did not adopt or believe the statements to be true.  (*Id.* at 3-4.)  The City further argues that the media statements of Smith contain double hearsay, lack foundation, and are inadmissible under Federal Rule of Evidence 403.  (*Id.* at 4.)  The City also argues that the 60 Minutes and Court TV programs, and other media publications, are hearsay, contain double hearsay, are fraught with speculation, discuss issues the Court has already foreclosed, and are inadmissible under Rule 403.  (*Id.* at 4-9.)

In response, Plaintiff argues that Smith should be permitted to testify as to his personal employment and experiences while working for TPD, that he is also qualified to offer expert opinions concerning the investigation into the Pioneer Hotel fire, and that Plaintiff timely disclosed Smith's expert opinions pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).  (Doc. 1045 at 2-3.)  With respect to the 60 Minutes segment aired in 2013, Plaintiff argues that questions to and responses by LaWall are admissible under Federal Rule of Evidence 801(d)(2), and that the rest of the segment is admissible to show its effect on Pima County Attorney Laura Conover and Deputy County Attorney Jack Chin, and on Unklesbay and Acosta if it is revealed at trial that they reviewed the segment during their review of Taylor's 2012-2013 post-conviction proceedings.  (*Id.* at 3-4.)  Plaintiff urges the Court to defer ruling on the admissibility of newspaper articles, contending that "[i]t is too early to determine whether these exhibits will be admissible for a proper purpose at trial."  (*Id.* at 4.)  Plaintiff argues that the evidence at issue is not unfairly prejudicial, and its probative value is not substantially outweighed by Rule 403 concerns.  (*Id.* at 4-5.)

As an initial matter, the Court agrees with the City that Federal Rule of Civil Procedure 26(b)(3)(C) does not govern the admissibility of statements at trial.  The Court also agrees that Smith's statements to the media do not qualify as non-hearsay opposing party statements because it appears that Smith was no longer employed by TPD when he made the statements, and Defendants did not authorize him to make the statements, nor did Defendants manifest that they adopted or believed the statements to be true.  *See* Fed. R. Evid. 801(d)(2).  The Court reserves ruling on the admissibility of Smith's statements to the media under Federal Rules of Evidence 613(b), 801(d)(1)(B), or any hearsay exceptions.  Smith may testify as a fact witness to matters within his personal knowledge.  *See* Fed. R. Evid. 602.  Plaintiff has not shown that he timely disclosed Smith as a non-retained expert witness under Federal Rule of Civil Procedure 26(a)(2)(C), nor has Plaintiff shown that the disclosure violation was substantially justified or harmless.  Accordingly, Plaintiff will be precluded pursuant to Federal Rule of Civil Procedure 37(c)(1) from eliciting expert testimony from Smith.

1    With respect to media segments and newspaper articles, the Court agrees that
2  statements made to 60 Minutes by LaWall are non-hearsay opposing party statements
3  under Rule 801(d)(2), as LaWall was authorized to make statements on the subject and
4  made the statements within the scope of her employment as the Pima County Attorney.
5  Other portions of the 60 Minutes segment are hearsay if offered for purposes of proving
6  the truth of the matters asserted therein.  The Court reserves ruling on whether any portions
7  of the 60 Minutes segment, and any portions of other media publications and newspaper
8  articles, may be admissible for other purposes or under any hearsay exceptions, but notes
9  that there are significant Rule 403 concerns and the probative value of the evidence is
10 limited, particularly given the Court's dismissal of Plaintiff's expungement claim.

11      **H. City of Tucson's Motion in Limine No. 9 re: Cyrillis Holmes' 2012**
12                  **Deposition Testimony (Doc. 951)**
13     The City moves to preclude Plaintiff from introducing Cyrillis Holmes' November
14 1, 2012 deposition testimony, arguing that the testimony is inadmissible under Federal Rule
15 of Evidence 804(b)(1) because neither the City nor Pima County was a party to Taylor's
16 2012-2013 criminal proceedings and neither had an opportunity to cross-examine Holmes
17 during the 2012 deposition.  (Doc. 951.)

18     In response, Plaintiff argues that Holmes's statements during the 2012 deposition
19 testimony concerning "blacks" starting fires are not hearsay because Plaintiff will not be
20 introducing the statements to prove the truth of the matters asserted and, in fact, Plaintiff
21 disagrees with Holmes's racist beliefs and asserts that his statements are not true.  (Doc.
22 1042 at 2-3.)   Plaintiff argues that Holmes's deposition testimony will be offered to
23 establish what Holmes said and its effect on Unklesbay and Acosta's review of Taylor's
24 2012-2013 Petition for Post-Conviction Relief.  (*Id.*)  Plaintiff also argues that his experts
25 rely on Holmes's testimony, creating an independent basis for admission under Rule 703.
26 (*Id.* at 3-4.)  Plaintiff further argues that many of the statements made by Holmes during
27 his deposition qualify as statements against interest under Federal Rule of Evidence 804(3)
28 because a reasonable person in 2012 would know that admitting to racist beliefs, admitting

1   to using a pocket knife to measure char depth, and claiming to be able to accurately
2   determine depth to 1/32 of an inch without a measuring device "would subject him to
3   professional ridicule and invalidate his opinions." (*Id.* at 5-6.)  Finally, Plaintiff argues
4   that the deposition testimony is admissible under Federal Rule of Civil Procedure 32
5   because the City is not prejudiced by its introduction. (*Id.* at 4-6.)

6        Holmes's statements during the 2012 deposition concerning his racially based
7   profiling conclusions are non-hearsay because Plaintiff is not seeking to introduce them to
8   prove the truth of the matters asserted but, rather, to show that Holmes made the statements
9   and to show the effect of the statements on Unklesbay and Acosta's review of Taylor's
10  2012-2013 Petition for Post-Conviction Relief.  However, it appears that Plaintiff will
11  likely seek to introduce other statements made by Holmes during the deposition for
12  purposes of proving the truth of the matters asserted.  For example, Holmes testified that
13  he told his racially based profiling conclusions to City of Tucson officials during his
14  investigation of the Pioneer Hotel fire, and it appears likely that Plaintiff will seek to
15  introduce this statement for purposes of proving its truth.  The City of Tucson was not a
16  party to Taylor's 2012-2013 post-conviction proceedings, was not present at Holmes's
17  2012 deposition, and did not have an opportunity to cross-examine Holmes during the
18  deposition.  Accordingly, Holmes's statements during the deposition do not qualify under
19  the former testimony exception to the rule against hearsay.  *See* Fed. R. Evid. 804(b)(1).
20  However, the Court finds that the statements are admissible under the residual hearsay
21  exception of Rule 807.  Holmes made the statements under oath, with no motive to lie
22  concerning what he told City of Tucson officials.  Holmes is now deceased, and his
23  statements on the issue are more probative than any other evidence that Plaintiff can obtain
24  through reasonable efforts.  The City's Motion will be denied.

25        **I.  City of Tucson's Motion in Limine No. 10 re: Charlene Smith (Doc. 952)**
26        Discovery in this case closed on October 1, 2021.  (Doc. 248.)[11]  On February 26,
27  2024, Plaintiff disclosed Charlene Smith as a witness, along with a declaration in which
28
_____
[11] The Court thereafter reopened discovery several times, but only for limited purposes not
relevant to the City of Tucson's Motion in Limine No. 10 re: Charlene Smith.

Smith states that she is the sister of Robert and Albert Jackson, and that both Robert and Albert told her that Robert provided false testimony against Taylor at his criminal trial because of pressure from the police.  (Doc. 952-2 at 2-8.)

The City of Tucson moves to preclude Plaintiff from calling Smith as a witness, arguing that her proffered testimony was not timely disclosed; that she lacks personal knowledge and foundation; that her testimony is based on hearsay, speculation, and inadmissible opinion; and that her testimony is contradicted by credible and admissible evidence.  (Doc. 952.)  The City also argues that Smith's testimony should be precluded under Federal Rule of Evidence 403 because it is unfairly prejudicial and will serve only to confuse and mislead the jury.  (*Id.* at 5.)

Plaintiff urges the Court to deny the City of Tucson's Motion in Limine on several grounds: (1) the City fails to specify which portions of the Smith declaration it claims are inadmissible; (2) Plaintiff timely disclosed the Smith declaration one day after receiving it; (3) Smith has personal knowledge and her testimony is either non-hearsay or falls under a hearsay exception; and (4) even if the disclosure of Smith's testimony was untimely, the timing of the disclosure was harmless because the City has had nearly two months to review the testimony.  (Doc. 1014.)  Plaintiff argues that Robert's statement to Smith that he provided false inculpatory testimony at Taylor's criminal trial is admissible under Federal Rule of Evidence 804(b)(3) as a statement against interest.  (*Id.* at 5.)  Plaintiff further argues that Albert's statements to Smith are admissible under the residual hearsay exception of Rule 807.  (*Id.* at 5-6.)

The Court finds that Plaintiff has shown the timing of his disclosure of Smith's testimony is substantially justified or harmless pursuant to Federal Rule of Civil Procedure 37(c)(1) because Plaintiff disclosed the testimony promptly after receiving it, and Defendants had months to review the testimony before trial.  Smith will be limited to testifying to matters within her personal knowledge, but statements made to her by Robert are admissible under the statement-against-interest hearsay exception and statements made to her by Albert are admissible under the residual hearsay exception, for the reasons

addressed in Section IV(B), *supra*.  Smith's testimony is probative, as it corroborates Robert's recantation and other evidence, including Albert's statements, concerning that recantation.  The City has not shown that Rule 403 concerns outweigh the probative value of the testimony.  The City's Motion will be granted to the extent it seeks to limit Smith's testimony to matters within her personal knowledge but otherwise denied.

**J.  City of Tucson's Motion in Limine No. 11 re: Claus Bergman (Doc. 960)**

The City of Tucson moves to limit the testimony of Claus Bergman to relevant matters within his personal knowledge; to preclude Plaintiff from eliciting or referring to Bergman's or other individual's comments to media programs or stations; to preclude Plaintiff from using any media programs; and to preclude Plaintiff from asserting at trial any belated new claim regarding Defendants allegedly prohibiting Bergman from testifying truthfully at Taylor's criminal trial.  (Doc. 960.)  Specifically, the City argues that Bergman should be precluded from testifying to his personal opinions about the investigation of the Pioneer Hotel fire, whether the fire was arson, and whether Taylor is guilty or innocent. (*Id.* at 2-3.)  The City also argues that Bergman's statements to media programs lack foundation and are hearsay, that the programs themselves are hearsay and fraught with speculation, and that the media programs and newspaper articles are inadmissible under Rule 403.  (*Id.* at 4-8.)  Finally, the City argues that, for the same reasons this Court ruled that Plaintiff cannot assert a new claim that Defendants failed to disclose exculpatory testimony from Bergman, Plaintiff should also be precluded from asserting that Defendants prohibited Bergman from providing truthful testimony.  (*Id.* at 9-10.)

In response, Plaintiff contends that the City fails to specify which portions of Bergman's testimony it challenges as inadmissible.  (Doc. 1019 at 1-3.)  Furthermore, Plaintiff argues that Bergman's testimony concerning statements by officers involved in Taylor's investigation is not inadmissible as hearsay because the officers' statements are party admissions and Plaintiff is not seeking to admit officers' use of racial slurs for the truth of the matters asserted.  (*Id.* at 2.)  Plaintiff further argues that he may properly introduce Bergman's former, consistent statements made at his deposition and to 60

Minutes and Court TV in order to rehabilitate Bergman's credibility should Defendants attack his credibility at trial.  (*Id.* at 3.)  Plaintiff avers that he will not seek to admit Bergman's testimony to prove a *Brady* claim but that he may permissibly use testimony concerning Defendants coercing Bergman into testifying falsely at Taylor's trial in support of his claim that Defendants conspired to violate his constitutional rights.  (*Id.* at 3-4.)

Bergman may testify to matters within his personal knowledge.  *See* Fed. R. Evid. 602.  Because Bergman is testifying as a lay witness, and in part due to relevancy concerns, Bergman may not opine on whether the Pioneer Hotel fire was arson, whether the investigation of the fire was adequate, and whether Taylor is guilty or innocent.  Testimony concerning other officers using racial slurs is not hearsay because it will not be offered to prove the truth of the other officers' statements.  *See* Fed. R. Evid. 801(c)(2).  Bergman's statements to media programs are hearsay if offered to prove the truth of the matters asserted, but the Court reserves ruling on whether they may be used as prior consistent statements to rehabilitate Bergman's credibility at trial.  *See* Fed. R. Evid. 801(c), (d)(1)(B).  Plaintiff may not assert at trial that Defendants violated *Brady* by failing to disclose Bergman's exculpatory testimony or preventing him from testifying truthfully.  The Court has already ruled that Plaintiff failed to allege in his operative Third Amended Complaint that Defendants violated his constitutional rights by failing to disclose exculpatory testimony from Bergman, and that Plaintiff cannot premise his claims in this case on that newly asserted underlying constitutional violation.  (*See* Doc. 869 at 47.)  However, Bergman's testimony that Defendants pressured him to testify adversely to Taylor may be relevant to his credibility, as it may explain any differences between Bergman's current testimony and the testimony he gave during Taylor's criminal proceedings.  The Court has addressed the parties' arguments concerning the admissibility of media programs and newspaper articles in Section IV(G), *supra*.

### K. City of Tucson's Motion in Limine No. 12 re: Jack Frye (Doc. 962)

Plaintiff intends to call as an expert witness Jack Frye, who was hired by CBS and Court TV to investigate the Pioneer Hotel fire.  (Doc. 932 at 294; Doc. 1015 at 2.)  It

appears that Plaintiff listed Frye as a witness in the last supplemental disclosure statement that he served prior to the close of discovery in this case.  (See Doc. 956-3.)  Specifically, Plaintiff  disclosed Frye as "an arson expert hired by CBS and Court TV (60 Minutes) to conduct his own investigation of the fire," and Plaintiff stated that Frye was anticipated to testify "about his investigation and findings, regarding the statements he made and regarding his knowledge of the matters discussed in the interviews conducted by and the programs aired by "60 Minutes"/Court TV and/or CBS."  (*Id.* at 13-14.)  Plaintiff also indicated he may utilize the media programs pursuant to the "previous statements" provisions of Federal Rule of Civil Procedure 26(b)(3)(C).  (*Id.*)

The City moves to preclude Plaintiff from calling Frye or using any material prepared by, communicated to or referring to him.  (Doc. 962.)  The City argues that Plaintiff never disclosed Frye as an expert witness under Rule 26(a)(2), that Frye cannot properly testify as a lay witness because he has no relevant personal knowledge, and that Frye's statements would cause unfair prejudice and jury confusion.  (*Id.* at 2-3.)  The City further urges the Court to preclude Plaintiff from using Frye as a conduit to introduce inadmissible 60 Minutes/Court TV programs.  (*Id.* at 3-7.)  Finally, the City argues that Frye should be precluded from testifying regarding other suspects, as that subject has been foreclosed by the Court.  (*Id.* at 7.)

In response, Plaintiff argues that he was not required to disclose a written expert report by Frye because he did not retain or employ Frye as an expert in this case; Plaintiff then asserts that Defendants do not challenge his disclosure of Frye under Federal Rule of Civil Procedure 26(a)(2)(C).  (Doc. 1015 at 2.)  Plaintiff further argues that Frye is qualified to testify as an expert on fire investigations, and that his opinions concerning reasonable investigative procedures and whether those procedures were followed in Taylor's case are relevant and admissible.  (*Id.* at 3.)  Plaintiff argues that, although an expert need not base opinions on admissible evidence, many of the facts Frye relied on in forming his opinions are admissible as party admissions.  (*Id.* at 3-4.)  Plaintiff avers that he will introduce Frye's testimony concerning Defendants' failure to investigate other suspects not in support of a

*Brady* claim but to show that the City's lackluster investigation of the fire resulted from a custom of racial discrimination. (*Id.* at 5.) Plaintiff further avers that he does not intend to use Frye as a conduit to admit statements made in media segments. (*Id.* at 4.) Plaintiff contends that Chin, and potentially Unklesbay and Acosta, reviewed the 60 Minutes features that include Frye's conclusions. (*Id.* at 5.)

The City's argument that Frye was never disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2) encompasses an argument that he was not disclosed as a Rule 26(a)(2)(C) expert. A party's disclosure under Rule 26(a)(2)(C) of a non-retained expert need not be accompanied by a written report, but it "must state the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). Although Plaintiff's disclosure could have been clearer, the Court finds it was nevertheless sufficient under Rule 26(a)(2)(C), as Plaintiff disclosed Frye as "an arson expert" who will testify regarding his investigations and findings and the statements he made to CBS/Court TV. Furthermore, although it does not appear that Plaintiff disclosed Frye before expiration of the deadline for initial expert disclosures, he disclosed him prior to the close of discovery, and Defendants had years to seek to depose Frye or discover further information related to him. *See* Fed. R. Civ. P. 37(c)(1) (discovery violation need not result in preclusion if it was substantially justified or harmless). It appears that Frye's testimony, including his testimony concerning other suspects, may be relevant to show the thoroughness of the investigation of the Pioneer Hotel fire, which may be relevant to whether the prosecution of Taylor resulted from a proper investigation or from racist practices and customs. However, the relevance of Frye's testimony appears to be limited given the Court's dismissal of Plaintiff's expungement claim. The parties have provided insufficient detail for the Court to definitively rule on whether Frye is qualified to testify as an expert and whether his testimony is admissible under Federal Rule of Evidence 702. Accordingly, the Court will deny the City's Motion to the extent it seeks a ruling in limine, and will reserve until trial a definitive ruling on the admissibility of Frye's

1    testimony.

2           **L.  City of Tucson's Motion in Limine No. 13 re: Robert Cannon (Doc. 963)**

3           In the Joint Proposed Pretrial Order, Plaintiff lists Robert Cannon as a witness who

4    is expected to testify regarding his interactions with and familiarity with Taylor stemming

5    from Cannon's work for the adult probation department.  (Doc. 932 at 290.)  The City

6    moves to preclude Plaintiff from calling Cannon as a witness at trial, arguing that Cannon's

7    interactions with Taylor, and the probation department's belief as to Taylor's guilt or

8    innocence, are irrelevant, and that Cannon's testimony is inadmissible under Rule 403.

9    (Doc. 963.)  In response, Plaintiff argues that Cannon's testimony may be admissible at

10   trial for purposes of impeachment of Unklesbay and Acosta and/or to rebut their claims

11   about the sufficiency of their 2012-2013 review of Taylor's case.  Given the Court's

12   dismissal of Plaintiff's expungement claim, the Court finds that Cannon's anticipated

13   testimony is irrelevant even for the limited purposes of impeachment or rebuttal.  If the

14   testimony has any probative value, it is outweighed by Rule 403 concerns.  The Court will

15   grant the City's Motion in Limine No. 13 and preclude Cannon's testimony.

16          **M. City of Tucson's Motion in Limine No. 14 re: Lesley Hoyt-Croft (Doc.
17          954)**

18          In the Joint Proposed Pretrial Order, Plaintiff lists Lesley Hoyt-Croft, a documentary

19   filmmaker and a member of the Justice Project with a Ph.D. in behavioral science, as a

20   "fact and damage witness" who will testify about "Taylor's history, his damages, her

21   experiences with him and about the documentaries she produced."  (Doc. 932 at 289.)

22   Plaintiff further indicates that Hoyt-Croft will lay foundation for audio and visual clips

23   regarding Taylor's case and the Pioneer Hotel fire.  (*Id.*)  Plaintiff first disclosed Hoyt-

24   Croft as a witness in his Thirteenth Supplemental Disclosure Statement on November 24,

25   2021 (Doc. 954-1)—after the close of discovery in this case (*see* Doc. 248)—although it

26   appears he previously disclosed members of the Arizona Justice Project team generally,

27   without specifically identifying Hoyt-Croft by name (*see* Doc. 954-1 at 3).

28          The City moves to preclude Plaintiff from calling Hoyt-Croft as a witness at trial

and to further preclude Plaintiff from introducing Hoyt-Croft's documentaries and any related video or audio clips. (Doc. 954.) The City argues that Plaintiff did not timely disclose Hoyt-Croft as a witness; that Plaintiff did not disclose her as an expert witness; that Hoyt-Croft lacks any personal knowledge of the matters at issue so as to testify as a lay witness; that Hoyt-Croft's testimony and documentaries are inadmissible as hearsay; and that Hoyt-Croft's testimony and documentaries are inadmissible under Rule 403. (*Id.* at 1-5.)

In response, Plaintiff concedes that he did not disclose Hoyt-Croft and the media exhibits at issue until after the close of discovery, but Plaintiff argues that the disclosure violation was harmless because Defendants had years to move to depose Hoyt-Croft or other witnesses. (Doc. 1034 at 2-3.) Plaintiff also argues that the 60 Minutes segment is admissible because it contains party-opponent statements and Plaintiff will introduce other portions for purposes other than proving the truth of the matters asserted. (*Id.* at 3-4.) Plaintiff urges the Court to defer ruling until trial on the admissibility of the other contested media exhibits. (*Id.* at 4-5.) In response to a separate Motion in Limine, Plaintiff indicates that Hoyt-Croft is a non-retained expert in behavioral science, and Plaintiff avers that he intends to elicit expert testimony from her. (Doc. 1038 at 12-14.)

As discussed in Section IV(P), *infra*, the Court will take under advisement the issue of whether Plaintiff may seek or introduce evidence of emotional distress damages, pending resolution of Plaintiff's Memorandum re: Equitable Estoppel. Accordingly, the Court will also take under advisement the City of Tucson's Motion in Limine No. 14 re: Lesley Hoyt-Croft.

### N. City of Tucson's Motion in Limine No. 15 re: Limitation on Issues and Evidence Based on Prior Rulings by the Court (Doc. 965)

The City moves to preclude any evidence, opinions, or arguments regarding matters already precluded by prior Orders of the Court, including: (1) any alleged failure to disclose evidence of other suspects or other fires; (2) the existence of probable cause to arrest Taylor; (3) the legality of Taylor's interrogation or the admissibility of the statements he

1   made during his interrogation; and (4) any alleged failure to disclose allegedly exculpatory

2   testimony from Bergman.  (Doc. 965.)

3          In response, Plaintiff argues that the City's Motion confuses evidence with claims.

4   (Doc. 1016 at 2.)  Plaintiff argues that this Court has already recognized that most of the

5   evidence at issue is relevant to Plaintiff's remaining claims in this case.  (*Id.* at 1-2.)

6   Plaintiff concedes that the Court has determined that evidence relating to other suspects is

7   not at issue but argues that it may be relevant for impeachment or other purposes and should

8   not be precluded in limine.  (*Id.* at 2-3.)

9          In its summary judgment Order, the Court found that Plaintiff cannot premise his

10  claims on underlying *Brady* violations arising from a failure to disclose evidence of other

11  suspects or a failure to disclose exculpatory testimony from Bergman.  (Doc. 869 at 59.)

12  The Court also found that Plaintiff cannot obtain damages based on the alleged

13  unlawfulness of his arrest and interrogation.  (*Id.*)  However, the Court recognized that

14  evidence of Taylor being arrested without probable cause or unlawfully interrogated may

15  be relevant to whether the PCAO believed in 2013 that it had sufficient evidence to prove

16  Taylor's guilt beyond a reasonable doubt at a retrial.  (*Id.* at 35.)  Given the Court's

17  dismissal of Plaintiff's expungement claim, the evidence is no longer relevant for that

18  purpose.  However, evidence concerning the circumstances of Taylor's interrogation is still

19  relevant to the reliability of statements that Taylor made during that interrogation, if those

20  statements are admitted into evidence at trial.  *See Crane v. Kentucky*, 476 U.S. 683, 688

21  (1986) ("evidence surrounding the making of a confession bears on its credibility as well

22  as its voluntariness" (internal quotation marks omitted)).

23         The Court has never concluded that evidence of other suspects or other fires, and

24  evidence of pressuring Bergman to withhold exculpatory testimony, is irrelevant for all

25  purposes.   Bergman's testimony concerning pressure placed on him to withhold

26  exculpatory testimony is relevant to his credibility and the reasons for the changes in his

27  prior and current testimony.  The Court reserves ruling on whether evidence of other

28  suspects or other fires may be admissible for a proper purpose at trial.

1

**O. City of Tucson's Motion in Limine No. 16 re: Lindsay Herf (Doc. 967)**

In the Joint Proposed Pretrial Order, Plaintiff lists Lindsay Herf, a member of the Justice Project, as a "fact and damage witness" who will testify about her work on Taylor's behalf and her analysis of the psychological impact on Taylor of being wrongly convicted, including but not limited to matters discussed in a documentary called "This Damn Town." (Doc. 932 at 291.)  Plaintiff first disclosed Herf in his Thirteenth Supplemental Disclosure Statement on November 24, 2021 (Doc. 967-1)—after the close of discovery in this case (*see* Doc. 248)—although it appears he previously disclosed members of the Arizona Justice Team generally, without specifically identifying Herf by name (*see* Doc. 967-1 at 3).

The City moves to preclude Plaintiff from calling Herf as a witness, arguing that she was not timely disclosed; was never disclosed as an expert witness; lacks personal knowledge so as to testify as a lay witness; and cannot permissibly opine on Taylor's guilt or innocence.  (Doc. 967 at 1-5.)  The City also urges the Court to preclude Plaintiff from using Herf as a conduit for introducing the documentary "This Damn Town," or any statements therein.  (*Id.* at 5-7.)  Finally, the City argues that Herf's proffered testimony and the documentary "This Damn Town" are inadmissible under Rule 403 because they are unfairly prejudicial and will only confuse and mislead the jury.  (*Id.* at 7.)

In response, Plaintiff argues that Herf will provide lay testimony concerning her interactions with and observations of Plaintiff after his release from prison, which Plaintiff contends is relevant to his emotional damages claim.  (Doc. 1020 at 2, 4-5.)[12]  Plaintiff further argues that the timing of his disclosure of Herf as a witness did not harm the City because the City has had years to discover further information about Herf's observations. (*Id.* at 3-4.)  Plaintiff avers that he does not intend to use Herf as a conduit to admit hearsay statements from the documentary "This Damn Town."  (*Id.* at 4.)

As discussed in Section IV(P), *infra*, the Court will take under advisement the issue

---

[12] In response to Defendants' Joint Motion in Limine re: Compensatory Damages, Plaintiff avers that Herf will also testify, based on her experience as a lawyer, "about the types of problems and hardships that wrongly convicted people suffer."  (Doc. 1038 at 13.)

of whether Plaintiff may seek or introduce evidence of emotional distress damages, pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.  Accordingly, the Court will also take under advisement the City of Tucson's Motion in Limine No. 16 re: Lindsay Herf.

### P.  Defendants' Joint Motion in Limine re: Compensatory Damages (Doc. 956)

Defendants jointly move for a ruling that Plaintiff is not entitled to recover, argue for, or present any evidence of compensatory damages.  (Doc. 956.)  They argue that Plaintiff is not entitled to any compensatory damages if he does not succeed on his expungement claim because he has no non-incarceration-based compensatory damages. (*Id.* at 5-7.)  Defendants further argue that Plaintiff should be precluded from presenting evidence of compensatory damages even if he succeeds on his expungement claim because he did not timely disclose evidence of compensatory damages, did not disclose damages witnesses as experts, did not disclose witnesses who can offer permissible lay testimony concerning damages, never disclosed a computation of damages, and stonewalled Defendants' efforts to discover any damages evidence during discovery.  (*Id.* at 7-10.)

In response, Plaintiff argues that, even if his expungement claim fails, he is not *Heck*-barred from seeking non-incarceration-based compensatory damages for constitutional violations that affected his 1972 convictions.  (Doc. 1038 at 1-8.)  Plaintiff also contends that *Heck* does not apply to no-contest pleas.  (*Id.* at 8-10.)  Finally, Plaintiff concedes that some of his damages disclosures occurred after the discovery deadline, but he contends that all parties made substantial disclosures after discovery had closed, and he argues that some evidence—such as a psychiatric report prepared during Taylor's guardianship proceedings—could not have been disclosed within the discovery deadline. (*Id.* at 11-12.)  Finally, Plaintiff argues that Herf and Jeanette Mare will provide lay witness testimony regarding their observations of Taylor and his difficulties re-entering society, and that Hoyt-Croft will provide testimony as a non-retained expert in behavioral science, in addition to testimony laying foundation for the video archives she developed.  (*Id.* at 12-

14.)

In a Memorandum re: Equitable Estoppel filed on April 16, 2024, Plaintiff argues that *Heck* is an affirmative defense that may be waived or forfeited, and that this Court should equitably estop Defendants from asserting a *Heck* bar in this case. (Doc. 1112; *see also* Doc. 1109.)  Plaintiff contends that applying equitable estoppel is appropriate here because Pima County Attorney Laura Conover would have moved to dismiss his 2013 convictions if not for misconduct by Pima County in 2022, and therefore a *Heck* bar would not exist in this case if not for Pima County's misconduct. (*Id.*)  The Court has construed the Memorandum as a Motion and ordered Defendants to respond. (Doc. 1115 at 7.)

The Ninth Circuit has already held that Plaintiff "cannot seek to collect damages for the time that he served pursuant to his [2013] plea agreement." *Taylor v. Pima Cnty.*, 913 F.3d 930, 936 (9th Cir. 2019).  Given the Court's dismissal of Plaintiff's expungement claim, the *Heck* bar and the Ninth Circuit's ruling continue to apply, unless the Court accepts the position asserted in Plaintiff's Memorandum re: Equitable Estoppel.  Although *Heck* may not bar Plaintiff from seeking non-incarceration-based compensatory damages, Plaintiff has failed to disclose or identify any emotional distress damages that can be disentangled from incarceration-based damages.  As an example, during his deposition, Plaintiff's attorney indicated Taylor was emotionally impacted by the non-disclosure of the Truesdail Report, separate and apart from the emotional impact of his imprisonment, but when Taylor was asked about the Report, he indicated the non-disclosure affected him because he probably never would have gone to prison had the Report been disclosed. (Doc. 341-2 at 163-64.)

The Court will take Defendants' Motion in Limine re: Compensatory Damages under advisement pending resolution of the Memorandum re: Equitable Estoppel.

### Q. Pima County's Motion in Limine re: Dismissed Theories and Claims (Doc. 958)

Pima County moves to preclude Plaintiff from arguing or introducing evidence regarding theories and claims that Pima County asserts are foreclosed by this Court's prior

rulings.   (Doc. 958.)   Specifically, Pima County seeks to preclude any evidence or argument concerning the PCAO's 2020 conflict-of-interest determination and retention of outside counsel to represent Pima County in this lawsuit; any alleged custom, practice, or policy of racial prosecutions by Pima County; any alleged racism of  Horton Weiss or the PCAO; the existence of or alleged failure to disclose other suspects; the alleged failure to disclose Claus Bergman's exculpatory testimony; and the legality of Taylor's arrest and interrogation.  (*Id.*)  Pima County argues that Plaintiff continues to assert these issues even though they have been foreclosed by the Court, and that allowing Plaintiff to assert the issues at trial would be unduly prejudicial.  (*Id.* at 3-4.)  Pima County also argues that Plaintiff's evidence concerning a custom, practice, or policy of racial prosecutions—the proffered testimony and affidavit of Sherry Van Camp and a videotaped interview of Mike Brown—is irrelevant to the remaining claims in this case, was not timely disclosed, and is inadmissible hearsay.  (*Id.* at 5-11.)  Pima County argues that the videotaped interview abruptly cuts off, that Brown had no personal knowledge of Weiss's alleged reputation in the legal community, that statements Weiss allegedly made to Brown are improper character evidence, and that the videotape lacks proper foundation and authentication.  (*Id.* at 8-9.)  Finally, Pima County argues that the evidence should be excluded under Rule 403 because it is unfairly prejudicial.  (*Id.* at 11.)

In response, Plaintiff argues that this Court has already ruled that evidence related to the timing of Taylor's arrest and the voluntariness of his statements, as well as Bergman's testimony, is relevant to Plaintiff's existing claims.   (Doc. 1029 at 2-3.) Plaintiff contends that, while the Court did not allow him to raise a claim relating to the former Pima County Attorney's conflict-of-interest determination regarding current Pima County Attorney Laura Conover, evidence concerning that conflict-of-interest determination is nevertheless relevant to show that Pima County, for financial or other improper reasons, wanted to prevent an independent review of its 2013 plea agreement. (*Id.* at 3.)  Plaintiff concedes that the Court has determined he may not assert a *Brady* claim based on a failure to disclose Donald Anthony as an alternative suspect but argues that

evidence regarding Anthony is relevant to his conspiracy claim and may be relevant for impeachment or other purposes.  (*Id.*)  Plaintiff argues that evidence of Weiss' racism is directly relevant to his conspiracy claim and also relevant to show improper training and supervision and a failure to terminate Weiss.  (*Id.* at 3-4.)  Finally, Plaintiff concedes that Judge Brown's videotaped interview is hearsay but argues that it is admissible under Rule 803(21) as a statement regarding Weiss's reputation in the legal community and that it also qualifies under the residual hearsay exception of Rule 807.  (*Id.* at 5.)  Plaintiff argues that statements made to Judge Brown by Weiss are party admissions under Rule 801(d)(2).  (*Id.*)  Plaintiff contends that he properly disclosed Judge Brown's statement regarding Weiss using a racial slur, as Plaintiff referenced the slur in his Second Amended Complaint and identified Judge Brown in his response to Pima County's first set of interrogatories.  (*Id.* at 6.)  Plaintiff avers that he does not intend to call Van Camp as a witness "unless necessary to establish the reliability of Judge Brown's interview under Rule 807."  (*Id.* at 5 n.1.)  Plaintiff further avers that he does not intend to use "any of Judge Brown's opinions regarding Taylor's conviction."  (*Id.*)

To the extent Pima County's Motion seeks to preclude evidence of the PCAO's 2020 conflict-of-interest determination and retention of outside counsel in this matter, the Court will take the Motion under advisement pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.  The Court will partially grant and partially deny the Motion to the extent it seeks rulings in limine on the admissibility of the other evidence at issue.  Bergman's testimony concerning pressure placed upon him to withhold exculpatory testimony at Taylor's trial is relevant to Bergman's credibility and the reasons why his prior testimony differs from his current testimony.  Similarly, evidence concerning the circumstances of Taylor's interrogation is relevant to the reliability and credibility of statements he made during the interrogation.  *See Crane*, 476 U.S. at 688.

The alleged racism of Weiss may be relevant to Plaintiff's failure-to-terminate claim, but the videotaped interview of Judge Brown is hearsay, and Plaintiff has not shown that it falls within a hearsay exception.  Judge Brown's recollection of a specific incident

with Weiss does not constitute testimony of a reputation in the community concerning Weiss's character under Rule 803(21).   The Court reserves ruling on whether the videotaped interview may be admissible for purposes of impeachment.   As discussed in Section IV(F), *supra*, the Court will preclude Plaintiff from calling Van Camp to testify for purposes of proving the truth of statements that Judge Brown made to Van Camp, as such testimony is inadmissible hearsay.

Plaintiff may not premise his claims on an alleged failure to disclose evidence of other suspects, and given the dismissal of Plaintiff's expungement claim, evidence of other suspects is not relevant for purposes of showing whether Unklesbay and Acosta believed they had sufficient evidence to retry Taylor in 2013.   However, it is unclear whether evidence of other suspects may be admissible for another purpose, such as rebutting claims regarding the thoroughness of the investigation of Taylor.   Accordingly, the Court defers until trial a definitive ruling on the admissibility of other-suspect evidence.

### R.  Pima County's Motion in Limine re: Taylor's Criminal Attorneys (Doc. 969)

In the Joint Proposed Pretrial Order, Plaintiff lists Edward Novak, Andy Silverman, Michael Piccarreta, Lindsey Herf, and Noel Fidel as trial witnesses who will testify regarding Taylor's criminal prosecution and post-conviction relief proceedings, including the work of the Arizona Justice Project on Taylor's case.  (Doc. 925 at 290-291, 293-294.)

Pima County moves to preclude Plaintiff from calling his criminal attorneys as trial witnesses, arguing that Taylor did not timely disclose Herf, Piccarreta, or Fidel; that Plaintiff invoked the attorney-client privilege and work-product doctrine to block Pima County's attempts to discover relevant information from Taylor's criminal attorneys; that the attorneys cannot testify to opinions because they were not disclosed as experts; and that the probative value of the attorneys' testimony is substantially outweighed by Rule 403 concerns, including undue prejudice, confusing the jury, needlessly presenting cumulative evidence, and wasting time.  (Doc. 969.)

In response, Plaintiff argues that he sufficiently disclosed his criminal attorneys as

witnesses and that they will offer relevant fact witness testimony concerning the work they performed on Taylor's criminal case and the opinions they necessarily formed to perform that work. (Doc. 1044.) Plaintiff also argues that it would be unfair to allow Unklesbay and Acosta to testify regarding opinions they formed as part of their review of Taylor's 2012-2013 Petition for Post-Conviction Relief, but not to allow Taylor's criminal attorneys to do the same. (*Id.* at 4-5.) Finally, Plaintiff argues that the testimony of the Justice Project attorneys is not unfairly prejudicial under Rule 403. (*Id.* at 5-6.)

It is unclear whether Plaintiff's Justice Project attorneys can offer any relevant testimony given the Court's dismissal of Plaintiff's expungement claim. Testimony concerning the 2012 deposition of Holmes is potentially still relevant to the remaining claims in this case, but it appears that testimony concerning the attorneys' work on Plaintiff's 2012-2013 Petition for Post-Conviction Relief is no longer relevant. Because it is not clear that Plaintiff will seek to elicit the evidence at issue given this Court's dismissal of the expungement claim, the Court will deny Pima County's Motion as moot, with leave for the parties to re-raise the issue at trial if necessary.

**S. Pima County's Motion in Limine re: Arson Review Committee (Doc. 971)**

Pima County moves to preclude Plaintiff from introducing the Arson Review Committee's report ("ARC Report") into evidence and from calling members of the Arson Review Committee ("ARC") as trial witnesses. (Doc. 971.) In response, Plaintiff argues that the ARC Report and testimony of ARC members is relevant to show the information that Unklesbay and Acosta reviewed and to prove whether Pima County knew in 2013 that the charges against Taylor were unprovable at a retrial. (Doc. 1046 at 2-4.) Due to the dismissal of Plaintiff's expungement claim, it appears that the ARC Report and the testimony of ARC members is no longer relevant to any claim remaining for trial. Because it is not clear that Plaintiff will seek to elicit the evidence at issue given this Court's dismissal of the expungement claim, the Court will deny Pima County's Motion as moot, with leave for the parties to re-raise the issue at trial if necessary.

**T.  Pima County's Motion in Limine re: Documentaries (Doc. 972)**

Pima County moves to preclude Plaintiff from admitting or introducing testimony regarding the content of programs regarding Taylor's case aired by 60 Minutes/Court TV/CBS, as well as documentaries and a videotaped interview of Claus Bergman produced by Lesley Hoyt-Croft, the documentary This Damn Town, and the Ballad of Louis Taylor. (Doc. 972.)  Pima County argues that Plaintiff failed to timely disclose Hoyt-Croft and the documentaries and videotaped interview she produced.  (*Id.* at 9-10.)  Pima County further argues that the documentaries and videotaped interview are inadmissible hearsay, they contain numerous inadmissible lay and expert witness opinions, and any probative value they may have is substantially outweighed by Rule 403 concerns.  (*Id.* at 10-13.)  Finally, Pima County argues that Federal Rule of Civil Procedure 26(b)(3)(C), cited by Plaintiff in the Joint Proposed Pretrial Order, does not govern the admissibility of evidence at trial. (*Id.* at 13.)

In response, Plaintiff argues that the untimeliness of his disclosure was harmless because he disclosed the evidence less than two years after the close of discovery and Defendants had years to move to depose Hoyt-Croft and other witnesses.  (Doc. 1048 at 2-3.)  Plaintiff further argues that the 2013 60 Minutes segment is not hearsay because it contains party-opponent statements and other portions will not be offered to prove the truth of the matters asserted.  (*Id.* at 3-4.)  Finally, Plaintiff urges the Court to defer ruling on the admissibility of other contested media exhibits.  (*Id.* at 4-5.)

As discussed above in Section IV(G), *supra*, the Court finds that statements made to 60 Minutes by LaWall are non-hearsay opposing party statements under Rule 801(d)(2), but that other portions of the documentaries and media segments are hearsay if offered for purposes of proving the truth of the matters asserted therein.  The Court reserves ruling on whether any portions of the documentaries and media segments may be admissible for other purposes or under any hearsay exceptions, but notes that there are significant Rule 403 concerns.

. . . .

- 48 -

**U. Pima County's Motion in Limine re: David Smith (Doc. 973)**

Pima County moves to preclude David Smith from providing any expert fire testimony and moves to preclude his Court TV interview transcript, statements he made that were broadcasted on 60 Minutes or printed in the Arizona Daily Star, and any testimony about such statements. (Doc. 973.) Pima County argues that Plaintiff cannot permissibly elicit expert fire testimony from Smith because Plaintiff failed to disclose Smith as an expert. (*Id.* at 4-6.) Pima County further argues that the 60 Minutes broadcast, transcript, and Arizona Daily Star article are all inadmissible hearsay and that Smith's statements are not admissible as opposing party statements under Federal Rule of Evidence 801(d)(2) because he was not a City of Tucson employee when he made the statements. (*Id.* at 6-7.) Finally, Pima County argues that Federal Rule of Civil Procedure 26(b)(3)(C) is inapplicable to the admissibility of evidence. (*Id.* at 7-8.)

In response, Plaintiff argues that statements Smith made to 60 Minutes, Court TV, and the Arizona Daily Star are admissible as party opponent statements of the City under Federal Rule of Evidence 801(d)(2), and that Plaintiff does not object to the Court providing a limiting instruction that the statements are admissible against the City only. (Doc. 1033.) Plaintiff further argues that his disclosures were adequate. (*Id.* at 3.) Plaintiff confirms that he intends to admit statements that Smith made in 2002 to 60 Minutes and statements he made in 2006 to the Arizona Daily Star, although he is uncertain if he will seek to admit any of Smith's Court TV statements. (*Id.* at 2-3.)

As discussed in Section IV(G), *supra*, the Court finds that Smith's statements to the media do not qualify as non-hearsay opposing party statements under Federal Rule of Evidence 801(d)(2), and that Federal Rule of Civil Procedure 26(b)(3)(C) does not govern the admissibility of evidence at trial. Smith may testify as a fact witness to matters within his personal knowledge, but Plaintiff is precluded pursuant to Federal Rule of Civil Procedure 37(c)(1) from eliciting expert testimony from Smith. The Court reserves ruling on whether Smith's statements to the media are admissible under Federal Rules of Evidence 613(b) or 801(d)(1)(B).

**V.  Pima County's Motion in Limine re: Relationship Between Pima County and Pima County Attorney (Doc. 974)**

Pima County moves to preclude Plaintiff from arguing that Pima County Attorney Laura Conover represents Pima County in this matter, that Pima County's counsel in this matter represents Conover, or that Conover is a party to this lawsuit.  (Doc. 974.)  Pima County notes that Plaintiff has repeatedly made these assertions but that none are factually or legally true, and that any argument concerning the assertions is irrelevant and risks undue prejudice and juror confusion.  (*Id.*)

In response, Plaintiff concedes that Pima County's attorneys of record in this matter do not represent Conover, and Plaintiff accordingly requests a negative inference be drawn for communications between Struck Love and Conover or her counsel withheld by Pima County on the basis of attorney-client privilege.  (Doc. 1031 at 3.)  Plaintiff argues, however, that Conover is an officer of Pima County and therefore a party to this lawsuit, and that she represents Pima County in this lawsuit because Pima County has produced no evidence that the County Board of Supervisors declined her representation in this matter due to a conflict of interest or lack of harmony.  (*Id.* at 1-3.)

Conover is an official of Pima County, and her actions may thus be attributed to Pima County under certain circumstances.  However, the Court will grant Pima County's Motion to the extent it seeks to preclude Plaintiff from arguing at trial that Conover represents Pima County in this matter or that Pima County's counsel represents Conover.  Given Pima County's averment that its counsel in this matter does not represent Conover, the Court grants Plaintiff leave to seek a negative inference instruction regarding any relevant communications between Pima County's counsel of record in this matter and Conover that were withheld on the basis of attorney-client privilege.

**W. Pima County's Motion in Limine re: Unsworn Transcript (Doc. 975)**

Pima County moves to preclude Plaintiff from introducing a purported transcript of a telephone conversation between Lynden Gilmore and Glen Miller, and any testimony about the conversation.  (Doc. 975.)  Pima County argues that the transcript has not been,

and cannot be, authenticated, as it is unknown when the conversation occurred, what number was called, when the conversation was transcribed, and who transcribed it, and both Gilmore and Miller are believed to be deceased. (*Id.* at 2-4.) Pima County also argues that the transcript is inadmissible hearsay. (*Id.* at 4-5.)

In response, Plaintiff argues that he can sufficiently authenticate the transcript under Federal Rule of Evidence 901(b)(4) and that the transcript also falls within Rule 901(b)(6). (Doc. 1047 at 2-3.) Plaintiff avers that, upon information and belief, the transcript was generated by the City and found in the early 2000s in the City's file on Taylor. (*Id.* at 3.) Plaintiff argues that Gilmore's statements in the transcript are admissible as party opponent and co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), and that Miller's statements are not hearsay because Plaintiff will not admit them to prove the truth of the matters asserted. (*Id.* at 4-5.) Finally, Plaintiff argues that Defendants should be judicially estopped from disputing the admissibility of the statements because they relied on the transcript in their summary judgment motions. (*Id.* at 5.)

The proponent of an item of evidence must authenticate it by producing "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The requirement of authentication may be satisfied in a number of ways, including through the testimony of a witness with knowledge, Fed. R. Evid. 901(b)(1); through the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(4); and, for a telephone conversation, through "evidence that a call was made to the number assigned at the time to . . . a particular person, if circumstances, including self-identification, show that the person answering was the one called," Fed. R. Evid. 901(b)(6). In addition, ancient documents may be authenticated through evidence that the document "is in a condition that creates no suspicion about its authenticity"; "was in a place where, if authentic, it would likely be"; and "is at least 20 years old when offered." Fed. R. Evid. 901(b)(8).

As an initial matter, the Court does not find that Defendants should be estopped—

based on their reliance on the transcript at the summary judgment stage—from arguing that the transcript is admissible only if properly authenticated.  Plaintiff has not presented evidence that a call was made to the number assigned at the time to Miller or Gilmore; accordingly, it does not appear that Plaintiff can authenticate the transcript of the phone call under Federal Rule of Evidence 901(b)(6).  The contents of the phone call reveal information that only individuals involved in the Pioneer Hotel fire investigation would have known, which provides some support for authentication under Rule 901(b)(4).  The Court is troubled, however, that there is no information in the record concerning when and by whom the phone call was transcribed.  The Court finds that Plaintiff may authenticate the transcript by calling a witness who will testify that the transcript was found in the City's files, that its condition has not been altered since it was found, and that it is at least twenty years old.  *See* Fed. R. Evid. 901(b)(8).  Statements in the document would then be admissible under the hearsay exception of Rule 803(16), and Gilmore's statements are also admissible as non-hearsay party opponent statements under Rule 801(d)(2).  Accordingly, the Court will deny Pima County's Motion, with leave to re-raise the issue if Plaintiff fails to elicit testimony authenticating the transcript as an ancient document under Rule 901(b)(8).

## X. Pima County's Motion in Limine re: Post-2013 Conduct (Doc. 976)

Pima County moves to preclude Plaintiff from introducing evidence of or discussing any alleged conduct by the PCAO, Laura Conover, Jack Chin, Pima County, Pima County's counsel, or David Berkman that occurred after Taylor accepted his April 2, 2013 no-contest plea.  (Doc. 976.)  The Court will take the Motion under advisement pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.

**IT IS ORDERED**:

1. Plaintiff's Motion in Limine re: Judicial Estoppel (Doc. 911) is **denied as moot**, with leave for the parties to re-raise the issue at trial if necessary.

2. Plaintiff's Motion in Limine re: Executive Session Privilege (Doc. 916) is **denied as moot**.

3. Plaintiff's Motion in Limine re: Prior Testimony (Doc. 942) is **denied**, as set forth above.

4. Plaintiff's Motion in Limine re: Former County Attorney Witnesses (Doc. 943) is **partially granted and partially denied**, as set forth above.

5. Plaintiff's Motion in Limine re: Unklesbay and Acosta (Doc. 944) is **denied as moot**, with leave for the parties to re-raise the issue at trial if necessary.

6. Plaintiff's Motion in Limine re: Unklesbay, Acosta and LaWall (Doc. 945) is **denied as moot**, with leave for the parties to re-raise the issue at trial if necessary.

7. Plaintiff's Motion in Limine re: Taylor's Statements (Doc. 946) is **denied**.

8. Plaintiff's Motion in Limine re: Bad Acts (Doc. 947) is **denied without prejudice** to the extent it seeks a ruling in limine.  The parties may re-raise the issues addressed in the Motion at trial.

9. Plaintiff's Motion in Limine re: Opinions of Tommy Tunson (Doc. 948) is **denied**.

10. City of Tucson's Motion in Limine No. 1 re: Untimely Disclosed Witnesses and Documents (Doc. 938) is **denied**, as set forth above.

11. City of Tucson's Motion in Limine No. 2 re: Robert Jackson's and Albert Jackson's Statements and Affidavits (Doc. 939) is **denied**.

12. City of Tucson's Motion in Limine No. 3 re: Rubin Salter (Doc. 940) is **granted**, with leave for Plaintiff to seek reconsideration of this ruling at trial, as set forth above.

13. City of Tucson's Motion in Limine No. 4 re: Andrew Pacheco (Doc. 968) is **denied**, as set forth above.  The Court's prior ruling regarding the admissibility of Pacheco's opinions (Doc. 567) is controlling.

14. City of Tucson's Motion in Limine No. 5 re: Dr. Thomas Tunson (Doc. 957) is **partially granted and partially denied**, as set forth above.

15. City of Tucson's Motion in Limine No. 6 re: Sherry Van Camp (Doc. 941)

is **granted**, as set forth above, but the court reserves ruling on whether Van Camp may testify for a purpose other than proving the truth of statements made to her by Judge Brown.

16. City of Tucson's Motion in Limine No. 8 re: David Smith, 60 Minutes (Doc. 970) is **partially granted and partially denied**, as set forth above.

17. City of Tucson's Motion in Limine No. 9 re: Cyrillis Holmes' 2012 Deposition Testimony (Doc. 951) is **denied**.

18. City of Tucson's Motion in Limine No. 10 re: Charlene Smith (Doc. 952) is **partially granted and partially denied**, as set forth above.

19. City of Tucson's Motion in Limine No. 11 re: Claus Bergman (Doc. 960) is **partially granted and partially denied**, as set forth above.

20. City of Tucson's Motion in Limine No. 12 re: Jack Frye (Doc. 962) is **denied** to the extent it seeks a ruling in limine, as set forth above. The Court defers until trial a definitive ruling on the admissibility of Frye's testimony under Federal Rules of Evidence 403 and 702.

21. City of Tucson's Motion in Limine No. 13 re: Robert Cannon (Doc. 963) is **granted**.

22. City of Tucson's Motion in Limine No. 14 re: Lesley Hoyt-Croft (Doc. 954) is **taken under advisement**, pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.

23. City of Tucson's Motion in Limine No. 15 re: Limitation on Issues and Evidence Based on Prior Rulings by the Court (Doc. 965) is **denied** to the extent it seeks a ruling in limine, as set forth above.

24. City of Tucson's Motion in Limine No. 16 re: Lindsay Herf (Doc. 967) is **taken under advisement**, pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.

25. Defendants' Motion in Limine re: Compensatory Damages (Doc. 956) is **taken under advisement**, pending resolution of Plaintiff's Memorandum re:

Equitable Estoppel.

26. Pima County's Motion in Limine re: Dismissed Theories and Claims (Doc. 958) is **partially denied, partially granted, and partially taken under advisement**, as discussed above.

27. Pima County's Motion in Limine re: Taylor's Criminal Attorneys (Doc. 969) is **denied as moot**, with leave for the parties to re-raise the issue at trial if necessary.

28. Pima County's Motion in Limine re: Arson Review Committee (Doc. 971) is **denied as moot**, with leave for the parties to re-raise the issue at trial if necessary.

29. Pima County's Motion in Limine re: Documentaries (Doc. 972) is **partially granted and partially denied**, as set forth above.

30. Pima County's Motion in Limine re: David Smith (Doc. 973) is **partially granted and partially denied**, as set forth above.

31. Pima County's Motion in Limine re: Relationship Between Pima County and Pima County Attorney (Doc. 974) is **granted**, as set forth above. The Court grants Plaintiff leave to seek a negative inference instruction regarding communications between Pima County's counsel of record in this matter and Conover that were withheld on the basis of attorney-client privilege.

32. Pima County's Motion in Limine re: Unsworn Transcript (Doc. 975) is **denied**, with leave for Defendants to re-raise the issue of the admissibility of the transcript at trial if Plaintiff fails to authenticate the transcript, as set forth above.

. . . .

. . . .

. . . .

. . . .

. . . .

33. Pima County's Motion in Limine re: Post-2013 Conduct (Doc. 976) is **taken under advisement**, pending resolution of Plaintiff's Memorandum re: Equitable Estoppel.

Dated this 30th day of April, 2024.

_____
Honorable Rosemary Márquez
United States District Judge