**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Nina Alley,

      Plaintiff,

v.

County of Pima, et al.,

      Defendants.

No. CV-15-00152-TUC-RM

**ORDER**

On June 7, 2024, the Court vacated the firm jury trial that had been set in the above-captioned matter and stayed all proceedings pending resolution of former Plaintiff Louis Taylor's[1] state post-conviction proceedings challenging his 2013 convictions. (Doc. 1174.) The Court later administratively closed this matter pending the resolution of the post-conviction proceedings. (Doc. 1192.) After the denial of Taylor's state Petition for Post-Conviction Relief, the parties filed a Joint Motion to Reopen (Doc. 1202), which the Court granted (Doc. 1204). Trial is now set for September 14, 2026. (Doc. 1209.)

The Court resolves herein the following Motions which were pending at the time the June 7, 2024 stay went into effect: Plaintiff's Motion re: Equitable Estoppel (Doc. 1112), Defendants' Motion to Disregard New Arguments (Doc. 1159), Defendants' Motion to Bifurcate Trial (Doc. 1086), Defendants' Motion for Order re: Sealed Declarant (Doc. 1088), Plaintiff's Motion to Permit Witness Charlene Smith to Testify by

---

[1] Taylor's Guardian and Conservator, Nina Alley, has been substituted in place of Taylor as the named plaintiff in this action. (Doc. 624.) The Court uses the term "Plaintiff" herein to refer interchangeably to Taylor.

Contemporaneous Transmission (Doc. 1123), Plaintiff's Motion for Order re: Other-Act Evidence (Doc. 1145), Plaintiff's Motion to Reconsider Ruling re: Privilege (Doc. 1169), and several Motions in Limine previously taken under advisement (Docs. 954, 956, 958, 967, 976).[2]

## I.   Background

During the night of December 19-20, 1970, a fire killed 28 people at the Pioneer Hotel in downtown Tucson, Arizona.  (Doc. 343 at ¶ 56; Doc. 365 at ¶ 56; Doc. 374 at ¶ 56.)[3]  On March 21, 1972, a jury convicted Taylor of 28 counts of murder arising from the deaths.  (Doc. 340-9 at 10-12.)  Taylor was sentenced to life imprisonment.  (*Id.* at 36-37.)  In 2012, Taylor filed a Petition for Post-Conviction Relief, and the Pima County Attorney's Office began a review of his case.  (Doc. 335 at ¶ 624; Doc. 348-3; Doc. 367 at ¶ 624.)  Following the review, the Pima County Attorney offered Taylor a plea by which Taylor received a time-served sentence and was released from prison in exchange for pleading no-contest to the original 28 counts of murder.  (Doc. 348-10; Doc. 348-11.)  After his release, Plaintiff filed the above-entitled civil action, raising claims under 42 U.S.C. § 1983.  (Doc. 1.)

On March 16, 2017, this Court ruled that—due to his outstanding 2013 convictions—Plaintiff is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), from premising his § 1983 claims "on the alleged constitutional injuries of being wrongfully charged, convicted, and imprisoned" and that Plaintiff is precluded from seeking incarceration-based compensatory damages.  (Doc. 63 at 10-11, 19-20.)  On interlocutory appeal, the Ninth Circuit Court of Appeals affirmed, holding that "[a] plaintiff in a § 1983 action may not recover incarceration-related damages for any period of incarceration supported by a valid, unchallenged conviction and sentence." *Taylor v. Cnty. of Pima*, 913 F.3d 930, 936 (9th Cir. 2019).

---

[2] Defendant Pima County's renewed Motion for Summary Judgment (Doc. 1213)—which was filed after the lifting of the stay and administrative reopening of this case—will be resolved separately.

[3] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

Plaintiff then obtained leave (Doc. 167) to file a Third Amended Complaint that added a claim for a declaratory judgment expunging his 2013 convictions as unconstitutional and invalid (Doc. 169 at 26).  The Court originally denied summary judgment on the expungement claim (Doc. 869 at 20-28), but later reconsidered its decision and dismissed the claim (Doc. 1115).

Taylor filed a state-court Petition for Post-Conviction Relief challenging his 2013 convictions, and the state court denied relief on November 6, 2025.  (Doc. 1202 at 15-40.)

## II.     Motion re: Equitable Estoppel and Motion to Disregard New Arguments

On April 16, 2024, Plaintiff submitted a sealed Memorandum re: Equitable Estoppel (lodged at Doc. 1105 and filed at 1109), which this Court construed as a Motion (Doc. 1115) and ordered filed publicly in redacted form (Doc. 1108; Doc. 1112).[4]  In the Motion, Plaintiff argues that a *Heck* bar is an affirmative defense that may be waived or forfeited, and that this Court should equitably estop Defendants from asserting a *Heck* bar in this case.  (Doc. 1112.)  Plaintiff contends that applying equitable estoppel is appropriate here because Pima County Attorney Laura Conover would have moved to dismiss his 2013 convictions if not for misconduct by Pima County, and therefore a *Heck* bar would not exist in this case if not for the alleged misconduct.  (*Id.*)  Plaintiff further argues that the doctrine if "in [pari] delicto" also applies to bar "a party who has participated in wrongdoing from recovering damages resulting from the wrongdoing." (*Id.* at 4.)  Plaintiff concedes in the Motion that he has been unable to locate any case in which a government defendant was precluded from asserting a *Heck* bar due to misconduct, but he argues that "[e]quity does not wait upon precedent." (*Id.* at 15, 17.)  Plaintiff indicates he may move to amend his Complaint to assert equitable estoppel but argues that "a motion to amend is likely unnecessary." (*Id.* at 1-3.)

Defendants responded to Plaintiff's Motion re: Equitable Estoppel.  (Docs. 1157, 1160.)[5]  Defendants argue that Plaintiff's Motion is legally baseless because the doctrine

_____

[4] The Court later ordered the unredacted Motion unsealed.  (Doc. 1215.)  The Court cites herein to the redacted version at Document 1112, as that is the version that appears as pending on the docket.
[5] Defendants filed an unredacted Response under seal (Doc. 1157) and publicly filed a

of equitable estoppel applies only when a party detrimentally relies on an opposing party's inconsistent position or affirmative misrepresentation—circumstances that Plaintiff does not allege. (Doc. 1157 at 19-23.) Defendants dispute that *Heck* is an affirmative defense and argue that, even if it is, they did not waive or forfeit the defense, having raised it in their first responsive pleading. (*Id.* at 23-24.) Defendants further argue that Plaintiff's allegations of misconduct by Pima County are factually baseless, and that Plaintiff cannot prove his 2013 convictions would have been vacated if not for the alleged misconduct. (*Id.* at 25-36.) Finally, Defendants argue that Plaintiff's Motion is untimely, as Plaintiff has known of the allegations underlying the Motion since at least August 2022 and January 2023 but waited until the eve of the previously scheduled trial to file the Motion. (*Id.* at 37.)

Plaintiff filed a Reply in support of the Motion. (Docs. 1149, 1158.)[6] Plaintiff clarifies that his Motion relies on federal equitable estoppel law, and he contends that equitable estoppel applies to preclude a party, based on the party's misconduct, from asserting a right the party would otherwise have. (Doc. 1158 at 3-4.) Plaintiff further contends that he need not amend his Complaint for the Court to invoke equitable estoppel, but that the Court may treat his Motion re: Equitable Estoppel as a motion to amend. (*Id.* at 4.) Plaintiff also argues that his no-contest plea should be treated as the functional equivalent of a release-dismissal agreement and found invalid as against the public interest under the reasoning of *Newton v. Rumery*, 480 U.S. 386 (1987). (*Id.* at 5-9.)[7] Plaintiff argues that Defendants should be equitably estopped from asserting *Heck* upon a showing of the factual predicates that this Court previously determined would support expungement of Taylor's 2013 convictions under *Shipp v. Todd*, 568 F.2d 133 (9th Cir. 1978) (per

redacted Response (Doc. 1160). The Court later unsealed the unredacted Response. (Doc. 1215.) The Court cites herein to the now unsealed, unredacted version of Defendants' Response. (Doc. 1157.)

[6] Plaintiff filed an unredacted Reply under seal (Doc. 1158) and publicly filed a redacted Reply (Doc. 1149). The Court later unsealed the unredacted Reply. (Doc. 1215.) The Court cites herein to the now unsealed, unredacted Reply. (Doc. 1158.)

[7] This Court has previously found Plaintiff's reliance on *Rumery* misplaced because that case did not involve a *Heck* bar. (Doc. 1115 at 6.) Furthermore, Plaintiff failed to raise any arguments concerning *Rumery* in his Motion re: Equitable Estoppel. Accordingly, the Court declines to address the arguments raised in Plaintiff's Reply concerning *Rumery*.

curiam). (*Id.* at 9; *see also* Doc. 869 at 27-28.) Plaintiff then argues that Defendants should be precluded from asserting *Heck* based on the equitable doctrine of "unclean hands." (Doc. 1149 at 9-11.) Plaintiff argues that neither the doctrine of equitable estoppel nor the doctrine of unclean hands requires him to prove that his 2013 convictions would have been dismissed if not for the alleged misconduct of Pima County. (*Id.* at 11-13.) Plaintiff details alleged misconduct by Pima County and its attorneys in 2013 and since 2020. (*Id.* at 14-22.) He reiterates his argument that *Heck* is an affirmative defense under Ninth Circuit precedent. (*Id.* at 22-23.) Finally, he argues that the timing of his Motion "was dictated in large part by Defendant's 11th hour maneuvering regarding *Shipp* expungement," and that Defendants need not conduct any additional discovery related to the equitable estoppel arguments. (*Id.* at 23-24.)

After the filing of Plaintiff's Reply, Defendants filed a Motion asking the Court to disregard new arguments raised for the first time in the Reply. (Doc. 1159.) Defendants argue that Plaintiff's Reply relies on case law not cited in Plaintiff's Motion; that it sets forth for the first time a specific definition of misconduct; that it expands the factual allegations underlying Plaintiff's request for application of the doctrine of equitable estoppel; that it raises a new argument concerning an alleged ethical rule violation; that it argues the doctrine of unclean hands for the first time; and that it requests for the first time that the Motion re: Equitable Estoppel be treated as a motion to amend Plaintiff's operative complaint. (*Id.* at 2-3.) In response, Plaintiff argues that his Reply properly responds to arguments raised in Defendants' Response and cites new authority in support of existing arguments. (Doc. 1164.)

On May 21, 2024, Plaintiff filed an ethical report by Lynda C. Shely as a supplemental exhibit to his Motion re: Equitable Estoppel. (Doc. 1163.) In the report, Shely opines that counsel for Pima County may have committed ethical violations by submitting an affidavit contradicting Conover's deposition testimony, by threatening Conover with a bar complaint if she moved to dismiss Taylor's 2013 convictions, and by failing to provide a sealed declaration to Conover. (*Id.*) Defendants argue that the Court

should strike the report from the docket because the deadline for disclosing expert testimony has expired and Plaintiff did not seek leave to modify that deadline, nor did Plaintiff seek leave to file evidence directly on the docket, which the Court has previously ordered Plaintiff not to do. (Doc. 1170 at 5 (citing Doc. 561).)[8] Defendants argue that the expert report is based on incorrect assumptions and allegations, and that Defendants are prejudiced by the timing of the report, as they have had no opportunity to provide a rebuttal expert report. (*Id.* at 5-10.)

The Ninth Circuit has held that "*Heck* is an affirmative defense that may be waived or forfeited." *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024). But Defendants did not waive or forfeit *Heck*; they raised *Heck* in their first Motions to Dismiss at the outset of this case (Docs. 5, 6), and the impact of *Heck* on Plaintiff's claims has been heavily litigated ever since. The issue before the Court is whether, given that *Heck* is an affirmative defense under Ninth Circuit case law, a party may be equitably estopped from asserting it.

Equitable estoppel "is used to bar a party from raising a defense or objection it otherwise would have." *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981).[9] The doctrine is flexibly "invoked to avoid injustice in particular cases" when a party reasonably and detrimentally relied on its adversary's misleading conduct or misrepresentations. *Heckler v. Cmn'ty Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). Under Ninth Circuit precedent, equitable estoppel may be applied against the government "where justice and fair play require it." *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989). A plaintiff seeking to equitably estop a government defendant must show: (1) the defendant's "knowledge of the true facts"; (2) the defendant's "intent to

---

[8] Defendants also preemptively objected to the filing of the expert report in their Motion to Disregard New Arguments. (Doc. 1159 at 4.) Because the Court finds that Plaintiff's factual allegations, even if proven, do not implicate the elements of the doctrine of equitable estoppel, the Court has not relied on the expert report; however, the Court declines to strike the report from the docket.

[9] Defendants argue that Plaintiff should be precluded from relying on *Jablon* because he cited the case for the first time in his Reply. (Doc. 1159 at 2-3.) The Court does not find it improper to cite additional authority in support of existing arguments in a reply; furthermore, the Court is not limited to considering only those cases cited in a party's motion. However, as discussed below, neither *Jablon* nor any other case cited by Plaintiff supports a finding that the doctrine of equitable estoppel applies here.

induce reliance"; (3) the plaintiff's "ignorance of the true facts"; (4) the plaintiff's "detrimental reliance"; and (5) "affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (finding application of equitable estoppel appropriate to preclude government defendant from raising a statute of limitations defense where the defendant's affirmative misrepresentations and misconduct dissuaded the plaintiff from timely bringing a 42 U.S.C. § 1983 claim). The "affirmative misconduct prong . . . requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991) (internal quotation marks omitted).

Plaintiff's Motion re: Equitable Estoppel does not address the elements of equitable estoppel, nor does it show that Plaintiff can prove them. Although Plaintiff alleges misconduct by Pima County and its counsel in this matter, he does not allege the type of affirmative misrepresentations and detrimental reliance that implicate the doctrine of equitable estoppel. Plaintiff does not allege that Defendants misrepresented or affirmatively concealed material facts from him, resulting in his detrimental reliance.[10] None of the cases cited by Plaintiff involve factual allegations remotely similar to those at issue here, and the Court has been unable to locate any case in which a defendant in a 42 U.S.C. § 1983 action was equitably estopped from asserting a *Heck* bar.

Neither is the doctrine of in pari delicto applicable. That doctrine provides that "a plaintiff who has participated in wrongdoing cannot recover when he suffers injury as a

---

[10] Plaintiff alleges that Pima County's attorneys in this matter concealed the Bruce Wallmark declaration from Conover (Doc. 1109 at 10-13), but those allegations do not implicate the doctrine of equitable estoppel because the declaration was not concealed from Plaintiff, nor did the alleged concealment result in Plaintiff's detrimental reliance. Plaintiff also alleges that Defendants should be equitably estopped from asserting *Heck* if a jury finds that the prosecution in 2013 leveraged Taylor's existing incarceration to obtain a no-contest plea for purposes of creating a *Heck* bar to civil liability. (Doc. 1112 at 2.) If Defendants affirmatively misrepresented or affirmatively concealed the consequences of Plaintiff's no-contest plea on their future civil liability, and Plaintiff was ignorant of the consequences and detrimentally relied on Defendants' affirmative misconduct, then this theory could potentially align with principles of equitable estoppel. However, Plaintiff does not contend that he was unaware of the consequences of his plea on Defendants' civil liability, he does not contend that Defendants affirmatively misrepresented or concealed those consequences, and he does not allege detrimental reliance.

result of the wrongdoing." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1040 (9th Cir. 2016). Here, Plaintiff is not seeking to preclude Defendants from recovering for injury they suffered as a result of their wrongdoing.[11]

Plaintiff's recitation of general principles that "no party may benefit from its own misconduct" and "[e]quity does not wait upon precedent" (Doc. 1112 at 16-17) is insufficient to overcome his failure to establish the elements of equitable estoppel. Plaintiff has raised serious allegations of potential misconduct by Pima County, but the alleged conduct is not the type of misconduct that implicates the doctrine of equitable estoppel. Court will accordingly deny Plaintiff's Motion re: Equitable Estoppel. Defendant's Motion to Disregard New Arguments re: Plaintiff's Reply will be partially granted and partially denied, as set forth in footnotes 7, 9, and 11, *supra*.

### III.   Previously Filed Motion to Reopen Discovery

While this matter was stayed pending Taylor's state post-conviction proceedings, Plaintiff filed a Supplemental Exhibit to the Motion re: Equitable Estoppel, as well as a Motion to Reopen Discovery. The Court struck both documents because they were filed in violation of the stay of litigation in this matter. (Doc. 1185 at 3.) Plaintiff seeks to re-file the documents. (Doc. 1202 at 3.) However, the insurance carrier letters in the previously filed Supplemental Exhibit do not alter the Court's conclusion that the misconduct alleged by Plaintiff does not implicate the doctrine of equitable estoppel, and further discovery based on those letters is unwarranted. Accordingly, the Court will not

---

[11] Plaintiff argues for the first time in his Reply that Defendants should be precluded from asserting *Heck* under the doctrine of unclean hands. Defendants accused Plaintiff of having unclean hands in their Response. (Doc. 1160 at 4.) Plaintiff's new argument that the doctrine of unclean hands precludes Defendants from asserting *Heck*, however, is not a response to Defendants' argument that Plaintiff has unclean hands; rather, it is an entirely new ground for relief that is not raised in Plaintiff's Motion. Accordingly, the Court declines to consider the argument. *See Charles v. Ariz. Legal Document Servs. LLC*, No. CV-16-3544-PHX-DKD, 2017 WL 11607029, at *2 (D. Ariz. June 1, 2017) ("It is hornbook law that arguments raised for the first time in a reply will not be considered[.]"). Even if the Court were to consider the argument, the doctrine of unclean hands is not applicable here. The doctrine applies as a defense when a plaintiff's alleged misconduct relates to a claim for which he seeks relief. *See Slep-Tone Entm't Corp. v. Granito*, No. CV 12-298-TUC-DCB, 2013 WL 3816737, at *2 (D. Ariz. July 23, 2013). Plaintiff does not cite any authority applying the doctrine of unclean hands to preclude a defendant from asserting an affirmative defense.

entertain a refiled Supplemental Exhibit or Motion to Reopen Discovery.

## IV. Motions in Limine

On May 1, 2024, the Court resolved numerous Motions in Limine and took several others under advisement pending resolution of Plaintiff's Motion re: Equitable Estoppel. (Doc. 1136.)  The Court addresses below the Motions in Limine taken under advisement.

### A. Defendants' Joint Motion in Limine re: Compensatory Damages

Defendants move for a ruling that Plaintiff is not entitled to recover, argue for, or present any evidence of compensatory damages. (Doc. 956.)  The Court previously found that, if the *Heck* bar in this action stands, Plaintiff cannot obtain incarceration-based damages. (Doc. 1136 at 43.)  The Court noted that "*Heck* may not bar Plaintiff from seeking non-incarceration-based compensatory damages," but that "Plaintiff has failed to disclose or identify any emotional distress damages that can be disentangled from incarceration-based damages." (*Id.*)

Given the Court's denial of Plaintiff's Motion re: Equitable Estoppel, *Heck* continues to bar Plaintiff from seeking incarceration-based damages.  And given this Court's prior finding that Plaintiff has failed to disclose or identify any damages that can be disentangled from incarceration-based damages, the Court will grant Defendants' Motion in Limine re: Compensatory Damages.  Plaintiff will be limited to seeking nominal damages at trial.

### B. City of Tucson's Motion in Limine No. 14 re: Lesley Hoyt-Croft

In the Joint Proposed Pretrial Order, Plaintiff identifies Lesley Hoyt-Croft as a "fact and damage witness" who will testify regarding Taylor's history, his damages, and her experiences with him. (Doc. 932 at 289.)  The City of Tucson moves to preclude Plaintiff from calling Hoyt-Croft as a witness at trial and from introducing her documentaries and any related video or audio clips. (Doc. 954.)  Because Hoyt-Croft's testimony appears to be relevant only to compensatory damages, and the Court finds for the reasons set forth above that Plaintiff is precluded from introducing evidence of compensatory damages, the Court will grant the City's Motion in Limine.

### C.  City of Tucson's Motion in Limine No. 16 re: Lindsay Herf

In the Joint Proposed Pretrial Order, Plaintiff identifies Lindsay Herf as a "fact and damage witness" who will testify about her work on Taylor's behalf with the Arizona Justice Project and her analysis of the psychological impact on Taylor of being wrongfully convicted.  (Doc. 932 at 291.)  The City of Tucson moves to preclude Plaintiff from calling Herf as a witness or using her as a conduit to introduce matters set forth in documentaries and related video or audio clips, including a documentary entitled "This Damn Town." (Doc. 967.)  Because Herf's testimony appears to be relevant only to compensatory damages, and the Court finds for the reasons set forth above that Plaintiff is precluded from introducing evidence of compensatory damages, the Court will grant the City's Motion in Limine.

### D.  Pima County's Motion in Limine re: Post-2013 Conduct

Pima County moves to preclude Plaintiff from introducing evidence of or discussing any alleged conduct by the Pima County Attorney's Office, Conover, Jack Chin, Pima County, Pima County's counsel, or David Berkman that occurred after Taylor accepted his 2013 no-contest plea.  (Doc. 976.)  Because the Court has dismissed Plaintiff's expungement claim and denied his Motion re: Equitable Estoppel, and the evidence at issue poses a risk of prejudice and confusion of the issues and is irrelevant to the remaining claims in this case, the Court will grant Pima County's Motion.

### E.  Pima County's Motion in Limine Re: Dismissed Theories and Claims

Pima County moves to preclude Plaintiff from arguing or introducing evidence regarding theories and claims that Pima County asserts are foreclosed by this Court's prior rulings. (Doc. 958.) In its May 1, 2024 Order, the Court took the Motion under advisement pending resolution of Plaintiff's Motion re: Equitable Estoppel to the extent the Motion seeks to preclude evidence of the Pima County Attorney's Office 2020 conflict-of-interest determination and retention of outside counsel in this matter.  (Doc. 1136 at 45.)  Given the dismissal of Plaintiff's expungement claim and the denial of Plaintiff's Motion re: Equitable Estoppel, evidence of the 2020 conflict-of-interest determination and Pima

County's retention of outside counsel is irrelevant to the remaining claims in this case. Accordingly, the under-advisement portion of Pima County's Motion will be granted.

### V.    Motion to Bifurcate Trial

Defendants previously moved to bifurcate the trial of Plaintiff's 1972 damages claims and Plaintiff's request for a declaratory judgment expunging his 2013 convictions, and to also bifurcate trial on causation and damages.  (Doc. 1086.)  Because Plaintiff's request for a declaratory judgment expunging the 2013 convictions has been dismissed on summary judgment, and the Court herein denies Plaintiff's Motion re: Equitable Estoppel and finds that Plaintiff will be limited to seeking nominal damages at trial, Defendants' Motion to Bifurcate Trial will be denied as moot.

### VI.    Motion for Order re: Sealed Declarant

Defendants ask the Court to rule on whether restrictions previously put in place concerning the Sealed Declarant shall remain in place during trial and, if so, to determine procedures for conducting the trial.  (Doc. 1088.)  It is now public information that the Sealed Declarant testified in Taylor's 1972 trial as "Bruce Wallmark."  (*See* Docs. 1201, 1202, 1206.)  If the witness testifies during the trial in the above-captioned matter, his true current name and identifying information will be sealed and he will be referred to as Bruce Wallmark in all public proceedings.  Defendants' Motion for Order re: Sealed Declarant will be granted to the extent this Order provides the clarification sought.

### VII.    Motion to Reconsider Ruling re: Privilege

Plaintiff asks the Court to reconsider a ruling made during Conover's deposition upholding claims of privilege by Pima County.  (Doc. 1169.)  Plaintiff asserts that the communications withheld as privileged "are directly related to [his] equitable estoppel claim."  (*Id.* at 2.)  As discussed above, even if the factual allegations made in Plaintiff's Motion re: Equitable Estoppel are assumed true, the Motion fails because the conduct at issue does not implicate the doctrine of equitable estoppel.  Because the withheld documents at issue in Plaintiff's Motion to Reconsider are relevant only to Plaintiff's failed equitable estoppel arguments, the Court will deny the Motion to Reconsider as moot.

### VIII. Motion to Permit Charlene Smith to Testify by Contemporaneous Transmission

Plaintiff requested permission for witness Charlene Smith to testify by contemporaneous transmission because she had plans to travel to Washington during the previously scheduled trial dates. (Doc. 1123.) It is unclear whether Smith is available to testify in person during the currently scheduled trial dates; accordingly, the Court will deny this Motion as moot, with leave to refile if necessary.

### IX.    Motion for Order re: Other-Act Evidence

Plaintiff previously moved in limine to preclude Defendants from introducing any evidence of his conduct in prison or after his release, arguing that the evidence is irrelevant, prejudicial, and inadmissible under Federal Rules of Evidence 401, 402, 403, 404, and 609. (Doc. 947.) The Court found that the parties had "not provided sufficient information to allow the Court to determine whether other-act evidence may be admissible for a proper purpose at trial," and accordingly denied Plaintiff's Motion to the extent it sought a ruling in limine, with leave for the parties to raise the issues addressed in the Motion at trial. (Doc. 1136 at 19.)

Plaintiff then filed a Motion asking the Court to prohibit Defendants from offering or referencing other-act evidence at trial without first demonstrating its admissibility outside the presence of the jury. (Doc. 1145.) Defendants argue that Plaintiff's Motion is, in substance, either a motion for reconsideration of this Court's Order resolving Plaintiff's Motion in Limine re: Bad Acts or an untimely and procedurally improper new motion in limine. (Doc. 1166.) In reply, Plaintiff argues that his Motion is neither a motion in limine nor a motion for reconsideration, as he is not asking the Court to exclude other-act evidence or to reconsider its deferment of ruling on the admissibility of such evidence; rather, Plaintiff is merely requesting a rule concerning the conduct of trial. (Doc. 1172.)

The Court agrees that Plaintiff's Motion does not constitute a new motion in limine, as it is not requesting to exclude other-act evidence. Nor is the motion seeking reconsideration of the Court's deferment of ruling on the admissibility of other-act

evidence. The Court will partially grant and partially deny Plaintiff's Motion. If Defendants intend to introduce evidence of Taylor's criminal history (other than the 1972 criminal proceedings at issue) or Taylor's prison disciplinary record, they should provide advance notice outside the presence of the jury, either at a sidebar or when the jury is not present in the courtroom. Plaintiff's Motion is otherwise denied.

**IT IS ORDERED**:

1. The City of Tucson's Motion in Limine No. 14 re: Lesley Hoyt-Croft (Doc. 954) is **granted**.

2. Defendants' Motion in Limine re: Compensatory Damages (Doc. 956) is **granted**.

3. The under-advisement portion of Pima County's Motion in Limine re: Dismissed Theories and Claims (Doc. 958) is **granted**, as set forth above.

4. The City of Tucson's Motion in Limine No. 16 re: Lindsay Herf (Doc. 967) is **granted**.

5. Pima County's Motion in Limine re: Post-2013 Conduct (Doc. 976) is **granted**.

6. Defendants' Motion to Bifurcate Trial (Doc. 1086) is **denied as moot**.

7. Defendants' Motion for Order re: Sealed Declarant (Doc. 1088) is **granted** to the extent this Order provides the clarification sought.

8. Plaintiff's Motion re: Equitable Estoppel (Doc. 1112) is **denied**.

9. Plaintiff's Motion to Permit Witness Charlene Smith to Testify by Contemporaneous Transmission (Doc. 1123) is **denied as moot**, with leave to refile if necessary.

10. Plaintiff's Motion for Order re: Other-Act Evidence (Doc. 1145) is **partially granted and partially denied**, as set forth above.

11. Defendants' Motion to Disregard New Arguments (Doc. 1159) is **partially granted and partially denied**, as set forth above.

. . . .

12. Plaintiff's Motion to Reconsider Ruling re: Privilege (Doc. 1169) is **denied as moot**.

Dated this 31st day of March, 2026.

_____

Honorable Rosemary Márquez
United States District Judge