**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Louis Taylor, et al.,<br>Plaintiffs,<br>v.<br>County of Pima, et al.,<br>Defendants. | No. CV-15-00152-TUC-RM<br>**ORDER** |

On March 31, 2026, the Court issued an Order resolving various Motions, including Plaintiff's Motion re: Equitable Estoppel and Defendants' Motion in Limine re: Compensatory Damages. (Doc. 1218.) The Court declined to equitably estop Defendants from asserting *Heck v. Humphrey*, 512 U.S. 477 (1994), concluding that Plaintiff[1] had failed to adequately address the elements of equitable estoppel. (*Id.* at 3-8.)[2] The Court then held that Plaintiff will be limited to seeking nominal damages at trial because *Heck* bars him from seeking incarceration-based damages and he failed to disclose or identify compensatory damages "that can be disentangled from incarceration-based damages." (*Id.* at 9.) Plaintiff seeks reconsideration of the Court's rulings on equitable estoppel and compensatory damages. (Docs. 1220, 1222.)[3]

---

[1] Nina Alley, the Guardian and Conservator of former Plaintiff Louis Taylor, has been substituted as the named plaintiff in this action. (Doc. 624.) The Court uses the term "Plaintiff" herein to refer interchangeably to Taylor.

[2] All record citations refer to the page numbers generated by the Court's electronic filing system.

[3] Plaintiff's Motion to Stay Trial and Vacate Deadlines (Docs. 1242) will be resolved separately.

For the following reasons, the Court will deny Plaintiff's Motion for Reconsideration re: Equitable Estoppel and partially grant Plaintiff's Motion for Reconsideration re: Compensatory Damages.

**I. Motions for Reconsideration**

In his Motion for Reconsideration re: Equitable Estoppel, Plaintiff concedes that his original Motion re: Equitable Estoppel "probably did fail to adequately prove all elements of equitable estoppel and in pari delicto," but he asserts that "it shouldn't matter" because the Court may preclude Defendants from asserting *Heck* under the Court's inherent equitable powers. (Doc. 1220.) The Court ordered Defendants to respond to the Motion for Reconsideration with respect to the issue of whether equitably estopping Defendants from asserting *Heck* would be appropriate in this action "if Defendants misrepresented or concealed the consequences of Louis Taylor's 2013 no-contest plea on Taylor's ability to obtain damages in a future civil lawsuit." (Doc. 1224.) Defendants filed a Response as to that issue (Doc. 1229), and Plaintiff filed a Reply (Doc. 1232).

In his Motion for Clarification or Reconsideration re: Compensatory Damages, Plaintiff argues that, based on the Ninth Circuit's interlocutory ruling in this matter, Plaintiff may claim that he was wrongly convicted and sentenced in 1972, and he may obtain all damages related to alleged constitutional violations that occurred during his original criminal proceedings. (Doc. 1222 at 2-6.) Plaintiff further argues that he has disclosed evidence of non-incarceration-based damages related to his 1972 conviction, and he did not thwart discovery on the issue during his deposition. (*Id.* at 7-14.) Plaintiff argues that limiting him to nominal damages "would work a profound injustice." (*Id.* at 19.)

In response to the Motion, the Court clarified that based on the Ninth Circuit's interlocutory ruling, *Heck* poses no bar to Plaintiff challenging the validity of his 1972 conviction and resulting sentence, so long as he does not seek incarceration-based damages; furthermore, Plaintiff will be free to present to the jury his theory that the alleged constitutional violations at issue in this case resulted in an invalid jury verdict and an

invalid life sentence during his original criminal proceedings. (Doc. 1244 at 1-2.) The Court further clarified that, because Plaintiff's 2013 conviction was based on a no-contest plea, the 2013 judgment would not necessarily be undermined by his protestations of innocence. (*Id.* at 2.) The Court ordered Defendants to respond to Plaintiff's Motion for Reconsideration with respect to the issue of whether Plaintiff should be limited to seeking nominal damages. (*Id.*)

**A. Legal Standard**

Motions for reconsideration "will ordinarily" be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). Nevertheless, the Court "ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016).

**B. Compliance with Local Rules**

Defendants argue that Plaintiff's Motions for Reconsideration are untimely and exceed the presumptive page limit without leave of Court. (Doc. 1229 at 2-3; Doc. 1251 at 9-10.) Absent good cause shown, motions for reconsideration are due within fourteen days after the date of the filing of the subject Order. LRCiv 7.2(g)(2). Furthermore, a party must obtain leave of Court to file a motion in excess of 17 pages. LRCiv 7.2(e)(1). Plaintiff filed the pending Motions 15 days after the date of the subject Order,[4] and he improperly filed two Motions addressing the same Order, with the Motions together exceeding 27

[4] Defendants argue that Plaintiff's Motion for Reconsideration re: Compensatory Damages seeks reconsideration of a ruling made by the Court in an Order dated April 30, 2024, and that it therefore is untimely by approximately two years. (Doc. 1251 at 10.) In the April 30, 2024 Order, the Court noted that, "[a]lthough *Heck* may not bar Plaintiff from seeking non-incarceration-based compensatory damages, Plaintiff has failed to disclose or identify any emotional distress damages that can be disentangled from incarceration-based damages." (Doc. 1136 at 43.) However, the Court did not rule at that time on Defendants' Motion in Limine re: Compensatory Damages, instead taking the Motion under advisement pending its resolution of Plaintiff's Motion re: Equitable Estoppel. (*Id.*) Given that the April 30, 2024 Order took the Motion in Limine re: Compensatory Damages under advisement, the Court finds it reasonable that Plaintiff waited until the Court had resolved the Motion in Limine before moving for reconsideration.

pages, and with the Motion for Reconsideration re: Compensatory Damages alone exceeding 17 pages.

Plaintiff is warned that he must strictly comply with the Local Rules of Civil Procedure and he must obtain leave of Court for any divergence from the Local Rules. Given the importance of the issues raised in Plaintiff's Motions, however, the Court will address the substance of the Motions despite Plaintiff's failure to strictly comply with the Local Rules.

**C. Equitable Estoppel**

As this Court noted in its March 31, 2026 Order (Doc. 1218 at 6), the Ninth Circuit has held that "*Heck* is an affirmative defense that may be waived or forfeited." *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024). Furthermore, the doctrine of equitable estoppel may be used to bar a party from raising an affirmative defense. *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981). Equitable estoppel may be applied against the government "where justice and fair play require it." *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989). A plaintiff seeking to equitably estop a government defendant must show: (1) the defendant's "knowledge of the true facts"; (2) the defendant's intent to induce reliance"; (3) the plaintiff's "ignorance of the true facts"; (4) the plaintiff's detrimental reliance"; and (5) "affirmative misconduct . . . and a serious injustice outweighing the damage to the public interest of estopping the government." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011).

In their Response, Defendants argue that Plaintiff has waived and forfeited any equitable estoppel claim, because he has never alleged in this action that Defendants misrepresented or concealed the consequences of his 2013 plea on his ability to obtain damages in a future civil lawsuit, and he conceded in his Motion for Reconsideration that he could not establish the elements of equitable estoppel. (Doc. 1229 at 4-5.) Defendants argue that "[i]t is incredibly prejudicial and unfair to inject this theory now . . . when Taylor has never pursued it and Defendants have not had an opportunity to defend against it." (*Id.* at 5.)

Defendants further argue that Plaintiff cannot prove the elements of equitable estoppel. (*Id.* at 5-14.) They argue that there is no evidence showing misrepresentation or concealment by Defendants, and that Defendants could not have engaged in any such conduct because neither the City of Tucson nor Pima County were involved in procuring Taylor's 2013 plea, and the consequences of that plea on Plaintiff's ability to obtain damages is not a "fact" but a legal conclusion—one that Plaintiff has repeatedly asserted was unclear at the time of the plea. (*Id.* at 5-6, 11-12.) Defendants also contend that Plaintiff cannot show he was ignorant of the potential consequences of his plea agreement, as Plaintiff was represented by at least 14 lawyers during his 2012 post-conviction proceeding, and statements the lawyers made to the press show they were aware that Plaintiff's no-contest plea could lead to a *Heck* bar in a future civil lawsuit. (*Id.* at 7-9, 12.) Defendants also note that Plaintiff cited the attorney-client privilege in refusing to answer questions during his deposition regarding whether he knew the consequences of his plea. (*Id.* at 8-9.) Furthermore, Defendants argue that Plaintiff's own statements regarding his reasons for accepting the plea agreement show that he would have accepted the plea regardless of its effect on his ability to obtain damages in a future civil lawsuit, meaning he cannot prove detrimental reliance. (*Id.* at 9-10, 13.) Finally, Defendants argue that there is no injustice outweighing the damage to the public interest in estopping the government. (*Id.* at 13-14.)

In reply, Plaintiff argues that Defendants offered him a no-contest plea to set a *Heck* trap, they concealed the implications from him, and his own criminal lawyers never discussed a civil action or monetary damages when they negotiated the plea because they were retained to represent him on the criminal charges only. (Doc. 1232 at 2-8.) Plaintiff submits a declaration by attorney Noel Fidel, who represented him during the 2012 post-conviction proceeding, stating that at no time during the negotiation of Taylor's plea agreement did attorneys for either side raise the subject of Taylor's potential later ability to seek civil damages for his prosecution and conviction, nor of any impact the plea might have on such a lawsuit. (Doc. 1232-1 at 2.) Fidel further avers that, "during that process,"

Taylor's lawyers did not discuss the subject among themselves or with Taylor. (*Id.*) Plaintiff also submits a declaration by attorney Stanley Feldman, who represented Taylor during the 2012 post-conviction proceeding and represents him in this civil action. (Doc. 1232-2.) Feldman avers it was obvious to him that "any guilty plea would have a damaging effect should Taylor ever assert any damage claim," but that Feldman had not previously "considered proceeding past the post-conviction hearing," and he had not discussed any damage claim with his colleagues. (*Id.* at 2.) Plaintiff's Reply is not accompanied by a declaration by Taylor averring whether he was aware of the potential consequences of his 2013 plea agreement on his ability to obtain damages in a future civil lawsuit, or whether he would have rejected the plea had he known of those potential consequences.

The parties' briefs raise factual disputes concerning some of the elements of equitable estoppel, but Plaintiff has still not shown that he can prove all the requisite elements. Furthermore, the Court agrees with Defendants that it would be highly prejudicial to allow Plaintiff to insert this theory of equitable estoppel at this juncture. The above-captioned case has been pending for over a decade. Plaintiff has amended his complaint in this matter multiple times, but in no version of the pleading has he asserted an equitable estoppel theory. He first raised the issue of equitable estoppel in his Motion re: Equitable Estoppel filed in April 2024, but he did not argue or show in that Motion that he could prove the elements of equitable estoppel.

The Court noted in its March 31, 2026 Order:

> If Defendants affirmatively misrepresented or affirmatively concealed the consequences of Plaintiff's no-contest plea on their future civil liability, and Plaintiff was ignorant of the consequences and detrimentally relied on Defendants' affirmative misconduct, then this theory could potentially align with principles of equitable estoppel.

(Doc. 1218 at 7 n.10.) But even after the Court identified that plausible theory of equitable estoppel, when Plaintiff moved for reconsideration of the Court's denial of his Motion re: Equitable Estoppel, he still did not assert that theory. Instead, he conceded that his original Motion re: Equitable Estoppel "probably did fail to adequately prove all elements of equitable estoppel." (Doc. 1220 at 2.) Plaintiff's Reply in support of his Motion for

Reconsideration marks the first time that Plaintiff has claimed he can prove that Defendants affirmatively misrepresented or concealed the consequences of his no-contest plea on their future civil liability, and that Plaintiff was unaware of those consequences. Given Plaintiff's failure to assert this theory earlier in this litigation, Defendants have had no opportunity to conduct discovery to defend against the theory, and they would be severely prejudiced if Plaintiff were allowed to assert the theory at this stage of the proceedings.

Rather than asserting the theory of equitable estoppel identified by the Court, Plaintiff's Motion for Reconsideration re: Equitable Estoppel urges the Court to preclude Defendants from asserting *Heck* based on its inherent equitable powers. (Doc. 1220.) But Plaintiff has not shown that the Court erred in declining to invent an equitable remedy untethered to any existing doctrine. The Court will deny Plaintiff's Motion for Reconsideration.

**D. Compensatory Damages**

Discovery in this case closed on October 1, 2021. (Doc. 248.)[5] Prior to the close of discovery, Taylor served a supplemental disclosure statement indicating that he would testify as a fact witness regarding the mental and emotional suffering he experienced as a result of the alleged constitutional violations relating to his 1972 conviction that are at issue in this action. (Doc. 956-3 at 3.) He also disclosed unnamed members of the Arizona Justice Project team, indicating that they were expected to testify regarding their work on his case. (*Id.* at 14.) He stated that he would seek as general damages the reasonable monetary value of his pain, suffering, emotional distress, and loss of enjoyment of life. (*Id.* at 50.)

Approximately 2 months after the close of discovery, Plaintiff disclosed witnesses Lindsay Herf, Lesley Hoyt-Croft, and Jeanette Mare. (Doc. 956-4 at 16-17.) Approximately 17 months after the close of discovery, Plaintiff disclosed a psychiatric evaluation completed by psychiatrist Mavis J. Donnelly, along with a probate investigator report. (Doc. 956-7 at 63; Doc. 956-8; Doc. 956-9.) Plaintiff disclosed Donnelly as a

[5] The Court later reopened discovery multiple times for limited purposes not relevant here.

witness approximately 23 months after the close of discovery. (Doc. 956-10 at 20-21.) Plaintiff listed Herf, Hoyt-Croft, Mare, and Donnelly as fact witnesses—with Herf and Hoyt-Croft specified as "fact and damage witnesses"—in the parties' Joint Proposed Pretrial Order. (Doc. 932 at 289, 291-292.)

At Plaintiff's deposition conducted prior to the close of discovery, defense counsel asked Plaintiff what he is claiming as damages in this case. (Doc. 341-2 at 159-161, 232-233.) Plaintiff's counsel directed Plaintiff not to answer if he would have to refer to conversations he had had with his attorneys, and Plaintiff followed that advice. (*Id.* at 159-161, 233-240.) Plaintiff's counsel suggested that defense counsel ask Plaintiff's lawyers how much Plaintiff is seeking in damages, and that defense counsel ask Plaintiff questions not involving what Plaintiff's attorneys had spoken to Plaintiff about, such as questions about how the alleged constitutional violations at issue affected Plaintiff. (*Id.* at 159-161, 237-238.)

In a Joint Motion in Limine re: Compensatory Damages, Defendants argued that Plaintiff should be precluded from presenting evidence of compensatory damages because he failed to timely disclose—and thwarted Defendants' efforts to discover—any such evidence, and because his damages witnesses are not qualified or competent to testify as experts. (Doc. 956 at 7-10.) In response, Plaintiff argued that he could not have disclosed Donnelly's psychiatric report earlier, because it was prepared in December 2022 as part of Plaintiff's guardianship proceeding; that it would be unfair to preclude him from presenting witnesses and evidence disclosed after the close of discovery when Defendants also served multiple post-discovery supplemental disclosure statements; and that Herf and Mare are fact witnesses while Hoyt-Croft is a non-retained expert who will testify under Federal Rule of Civil Procedure 26(a)(2)(C). (Doc. 1038 at 11-14.)

The Court granted Defendants' Motion in Limine re: Compensatory Damages, finding that *Heck* bars Plaintiff from seeking incarceration-based damages and Plaintiff failed to disclose or identify compensatory damages that can be disentangled from

incarceration-based damages. (Doc. 1218 at 9.)[6] The Court finds that it erred in precluding Plaintiff's evidence of compensatory damages based on disclosure violations without fully analyzing the disclosure violations under Federal Rule of Civil Procedure 37. The Court analyzes below whether the sanction of preclusion is warranted based on (1) Plaintiff's refusal to answer questions about his damages during his deposition; and (2) Plaintiff's untimely disclosure of damage witnesses and evidence.

**1. Plaintiff's Deposition**

If a deponent fails to answer a question asked during a deposition, the party seeking discovery may move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B)(i). If the Court orders the deponent to answer the question and the deponent still fails to do so, the Court may impose a variety of sanctions, including "prohibiting the disobedient party . . . from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

Here, Defendants did not move to compel Plaintiff to answer the questions asked during his deposition concerning his damages. Plaintiff's failure to answer the questions did not violate any Order of the Court, and sanctions under Rule 37(b)(2)(A) are therefore inappropriate. Furthermore, Plaintiff's refusal to answer Defendants' questions concerning damages resulted from a good-faith disagreement amongst counsel regarding the attorney-client privilege. Defendants could have, but largely did not, re-phrase their questions to attempt to elicit information concerning the emotional impact on Plaintiff of the constitutional violations alleged in this action, while avoiding privileged information. The Court does not find that Plaintiff's conduct during the deposition warrants the extreme sanction of precluding Plaintiff from testifying to the jury regarding non-incarceration-based emotional damages arising from the alleged constitutional violations that occurred during Plaintiff's original criminal proceedings.

**2. Plaintiff's Disclosures**

Under Federal Rule of Civil Procedure 26(a)(1), a party must, without awaiting a

[6] The Court also granted Motions in Limine that the City of Tucson had filed seeking specifically to exclude the testimony of Hoyt-Croft and Herf, on the grounds that their testimony was relevant only to compensatory damages. (Doc. 1218 at 9-10.)

discovery request, disclose to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses[.]" A party's disclosure of non-retained experts not subject to the written report requirement of Rule 26(a)(2)(B) must include "the subject matter on which the witness is expected" to present expert testimony, and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A party must supplement or correct its Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A).

Pursuant to Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, the Court may impose other appropriate sanctions in addition to or instead of the sanction of exclusion, including ordering the payment of reasonable expenses, including attorney's fees, caused by the failure to disclose. Fed. R. Civ. P. 37(c)(1)(A).

Plaintiff argues in his Motion for Reconsideration re: Compensatory Damages that he adequately disclosed his damages for mental and emotional suffering caused by the alleged constitutional violations relating to his 1972 conviction, and that he disclosed medical witnesses, including Hoyt-Croft, "who has a Ph.D. in behavioral science," Herf, who has "expertise in the psychological effects of wrongful convictions," and Donnelly, who conducted a psychiatric evaluation during Taylor's guardianship proceedings. (Doc. 1222 at 7-11.)

The Court finds that Plaintiff timely and adequately disclosed his own testimony and his intent to seek compensatory damages arising from the emotional impact of the alleged constitutional violations at issue in this case. Accordingly, the Court erred in

finding that Plaintiff should be limited to seeking nominal damages based on a failure to disclose non-incarceration-based compensatory damages.

However, Plaintiff has not justified his untimely and incomplete disclosure of the testimony of Hoyt-Croft, Herf, Mare, and Donnelly. Hoyt-Croft, Herf, and Mare were all known to Plaintiff prior to the close of discovery, and Plaintiff has not explained why he could not have disclosed them as witnesses earlier. Although Donnelly's evaluation was conducted after the close of discovery, Plaintiff does not explain why he failed to hire an expert to conduct a psychiatric evaluation prior to the close of discovery, and he does not explain why he waited approximately three months after Donnelly's evaluation to disclose her report, and then waited an additional six months to disclose her as a witness. (*See* Doc. 956-8 (report dated December 14, 2022); Doc. 956-7 at 63, 75 (report disclosed March 10, 2023); Doc. 956-10 at 20-21, 77 (Donnelly disclosed as witness September 14, 2023).)

Furthermore, it appears that Plaintiff is seeking to introduce expert testimony from Hoyt-Croft, Herf, and Donnelly, but Plaintiff failed to adequately disclose them as expert witnesses. In his disclosure statements, Plaintiff stated that Herf will testify about her work on Plaintiff's behalf with the Arizona Justice Project, including her evaluation of the psychological effects on Plaintiff of being wrongly convicted; that Hoyt-Croft is a documentary filmmaker and member of the Arizona Justice Project who has a Ph.D. in behavioral science who will testify about Plaintiff's history, his damages, and her experiences with him; and that Donnelly will testify regarding her report and "her observations, analysis, diagnosis, conclusions and treatment" regarding Plaintiff. (Doc. 956-4 at 16-17; Doc. 956-10 at 20-21.) Plaintiff did not identify Herf, Hoyt-Croft, or Donnelly as Rule 26(a)(2)(C) experts, nor did he disclose "a summary of the facts and opinions" to which he expected each witness to testify.[7] Even in the Joint Proposed Pretrial Order, Plaintiff failed to identify Herf, Hoyt-Croft, and Donnelly as Rule 26(a)(2)(C) expert witnesses; he identified Herf and Hoyt-Croft as "fact and damage" witnesses, and he identified Donnelly as a "fact witness" who would also testify "based on her medical

[7] Furthermore, in his Response to Defendants' Motion in Limine re: Compensatory Damages, Plaintiff asserted that Herf is a fact witness. (Doc. 1038 at 13.)

training and experience." (Doc. 932 at 289, 291-292.) Plaintiff did not summarize the facts and opinions to which each witness is expected to testify in the Joint Proposed Pretrial Order. (*See id.*)

The Court finds that sanctions under Rule 37(c)(1) are appropriate because Plaintiff's failure to adequately and timely disclose Herf, Hoyt-Croft, Mare, and Donnelly as witnesses was neither "substantially justified" nor "harmless." To the extent Plaintiff seeks to introduce expert testimony from Herf, Hoyt-Croft, and Donnelly, the Court finds that preclusion is the appropriate sanction, as Plaintiff's disclosure violations prevented Defendants from conducting expert depositions and hiring rebuttal experts. To the extent Plaintiff seeks to introduce fact testimony from Herf, Hoyt-Croft, and Mare, the Court finds that preclusion is too harsh a sanction. Plaintiff disclosed unnamed members of the Arizona Justice Project prior to the close of discovery, and he disclosed Herf, Hoyt-Croft, and Mare within two months of the close of discovery, in 2021. The Court will allow Plaintiff to present fact witness testimony from Herf, Hoyt-Croft, and Mare regarding their observations of Plaintiff, but the Court will order as a sanction that, if Defendants seek to depose Herf, Hoyt-Croft, and Mare before trial, they may do so at Plaintiff's expense.

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration re: Equitable Estoppel (Doc. 1220) is **denied**.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration re: Compensatory Damages (Doc. 1222) is **partially granted**. Plaintiff may seek non-incarceration-based compensatory damages at trial, and he may testify regarding the emotional impact of his 1972 conviction and sentence and the emotional impact of the alleged constitutional violations affecting his original trial proceedings, so long as he does not testify regarding the emotional impact of his incarceration. Plaintiff may also present fact witness testimony from Lindsay Herf, Lesley Hoyt-Croft, and Jeanette Mare regarding their observations of Plaintiff. If Defendants seek to depose Herf, Hoyt-Croft, and Mare before trial, they may do so at Plaintiff's expense.

Dated this 6th day of August, 2026.

Honorable Rosemary Márquez
United States District Judge